# EXHIBIT B

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
FREEPLAY MUSIC, LLC,                                              :
                                                                  :
                                                   Plaintiff,     :
                                                                  :
                           -v -                                   :
                                                                  :
THERMALTAKE USA, INC. AND                                         :
THERMALTAKE TECHNOLOGY CO., LTD.,                                 :
                                                                  :
                                                   Defendants.    :
                                                                  :
----------------------------------------------------------------- X
```

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 7/9/19

1:19-cv-1674-GHW

SUMMARY ORDER

GREGORY H. WOODS, District Judge:

Before the Court is Defendants' motion to transfer this case to the Central District of California. For the reasons that follow, that motion is GRANTED.

I.  **Background**

On February 25, 2019, Plaintiff Freeplay Music, LLC ("Freeplay"), a Delaware corporation headquartered in New York, New York, filed this case, contending that Defendants Thermaltake USA, Inc. ("Thermaltake US"), a California corporation headquartered in Los Angeles, California, and Thermaltake Technology Co., Ltd. ("Thermaltake Taiwan" and, collectively, "Thermaltake"), a Taiwan company headquartered in Taipei City, Taiwan, infringed on their copyrighted works. Dkt. No. 1. Thermaltake US is a wholly-owned subsidiary of Thermaltake Taiwan. *Id.*

Freeplay discovered the alleged infringement via its copyright administrator TuneSat, LLC ("TuneSat"). Opp., Dkt. No, 28-17, 6. TuneSat is a New York company with the same founders, CEO, and COO as Freeplay. Br., Dkt, No. 25, 2. On May 1, 2019, Defendants served a motion to transfer this case to the United States District Court for the Central District of California (Western Division) in Los Angeles. Dkt. No. 24. On May 15, 2019, Plaintiff opposed that motion. Opp. Defendants served their reply on March 22, 2019. Reply, Dkt. No. 29.

**II.     Standard**

28 U.S.C. § 1404(a) allows a district court to transfer a case for the convenience of parties and witnesses to "any other district or division where it might have been brought" if doing so is "in the interest of justice." *See* 28 U.S.C. § 1404(a). The Court evaluates a potential transfer pursuant to § 1404(a) in two steps. First, the Court must ask whether the case might have been brought in the proposed transferee district. *See Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004). An action "might have been brought" in the proposed transferee district if venue, personal jurisdiction, and subject matter jurisdiction would have been proper in the transferee court at the time of filing. *City of Pontiac Gen. Employees Ret. Sys. v. Dell Inc.*, 14-cv-3644-VSB, 2015 WL 12659925, at *2 (S.D.N.Y. Apr. 30, 2015).

If the threshold inquiry is satisfied, the Court proceeds to the second step and determines whether a transfer is appropriate. *See id.*, at *2. In so doing, the Court considers the following factors to determine whether to grant the requested transfer:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Multiwave Sensor Inc. v. Sunsight Instruments, LLC*, 16-cv-1361-GHW, 2017 WL 1498058, at *6 (S.D.N.Y. Apr. 26, 2017). The list of factors is not exhaustive. *Pausch Med. GmbH v. Pausch LLC*, 14-cv-1945-PAC, 2015 WL 783365, at *1 (S.D.N.Y. Feb. 24, 2015). Furthermore, "[t]here is no rigid formula for balancing these factors[,] and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). Rather, "weighing the balance is essentially an equitable task left to the Court's discretion." *Id.* (internal quotation marks omitted). District courts have broad discretion in deciding, on a case-by-case basis, whether to transfer the venue of a given litigation based on "notions of convenience and fairness." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

### III. Discussion

#### A. Venue is proper in the Central District of California

There is no dispute that venue would be proper in the Central District of California. Opp., 8. Thermaltake US is incorporated in California with its principal place of business in Los Angeles County. May 1, 2019, Decl. of Kenny. Lin Dkt. No. 26, ("Lin Decl.") ¶ 4. And Thermaltake Taiwan has consented to personal jurisdiction in the proposed transferee district. Br., 6. In addition, and as discussed in greater depth below, the majority of the pertinent operative facts in this case all occurred in the proposed transferee district. Accordingly, this case could have been brought in the Central District of California.

#### B. The § 1404(a) factors weigh in favor of transfer

While Plaintiff's choice of forum weighs in favor of retaining this case, all of the other factors either weigh in favor of transfer or are neutral. Accordingly, for the reasons that follow, Defendants' motion to transfer venue is granted.

##### a. Weight accorded to Plaintiff's choice of forum

Typically, the plaintiff's choice of forum is given substantial deference, especially if it is the plaintiff's home state or where the plaintiff is engaged in ongoing business activity. *See Atlantic Recording Corp. v. Project Playlist Inc.*, 603 F. Supp. 3d. 690, 698 (S.D.N.Y. 2009). ("'[A] plaintiff's choice of forum is presumptively entitled to substantial deference' . . . That presumption is even stronger where the chosen forum is also the plaintiff's home") (quoting *Gross v. BBC*, 386 F.3d 224, 230 (2d Cir. 2004); *Pollux Holding, Ltd. v. Chase Manhattan Bank,* 329 F.3d 64, 71 (2d Cir. 2003)). Here, Freeplay, a company headquartered in New York City, chose to bring suit in their home state. Accordingly, this factor weighs against transfer because Plaintiff is a New York based corporation that conducts business in New York. *See* Opp., 2-4.

"[B]ecause the [Court's] discretion under Section 1404 'must be exercised at the very outset of the case, when relatively little is known about how the case will develop, courts have typically accorded substantial weight to the [eighth] factor, plaintiff's choice of forum.'" *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 616 (S.D.N.Y. 2016) (quoting *Atlantic Recording Corp*, 603 F. Supp. 3d at 695) (quotation marks omitted). However, the deference accorded to a plaintiff's choice of its home forum

3

diminishes when the chosen forum lacks a material connection to the operative facts. *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 368 (S.D.N.Y. 2009). As discussed below, the bulk of pertinent operative facts in this case occurred at the place of the alleged infringement—the Central District of California. Accordingly, while Plaintiff's choice of forum is weighty, it is not dispositive.

      **b.  The locus of operative facts**

The factor that weighs most heavily in favor of transfer is the locus of operative facts. "The location of operative facts is a primary factor in determining a § 1404(a) motion to transfer." *Rosen v. Ritz-Carlton Hotel Co. LLC*, 14-cv-1385-RJS, 2015 WL 64736, at *4 (S.D.N.Y. Jan. 5, 2015) (quoting *Whitehaus Collection v. Barclay Prod.*, Ltd., 11-cv-217-LBS, 2011 WL 4036097, at *2 (S.D.N.Y. Aug. 29, 2011)). "The operative facts in infringement cases usually relate to the design, development[,] and production of an infringing product." *Capitol Records*, 611 F.Supp.2d at 367. The allegedly infringing videos were designed and produced in the Central District of California. Br., 10-11. The design and production of the accused videos took place in California, the incorporation of the copyrighted material at issue into those videos took place in California, and any decisions to use the copyrighted materials was likely made in California. Indeed, Thermaltake does not have any offices, agents, or employees located in New York, is not registered to do business in New York, and does not own or maintain any property in New York. Lin Decl., ¶ 8. Against that backdrop, the creation of the copyrighted material in New York is insufficient to shift the locus of operative fact away from the Central District of California. *Gibson*, 195 F. Supp. 3d at 619. Accordingly, the locus of operative facts concerning the infringement of the copyrighted material is in California, and, on these facts, this factor weighs heavily in favor of transfer.

      **c.  The convenience of the witnesses and the availability of process to compel the attendance of unwilling witnesses**

"The convenience of both party and nonparty witnesses is probably considered the single most important factor in the analysis of whether a transfer should be granted," and the convenience of non-party witnesses is given greater weight than that of party witnesses. *See Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000). "To succeed on a transfer motion, the moving party must 'clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.'" *AEC One Stop*

4

*Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp 2d. 525, 529 (S.D.N.Y. 2004) (quoting *Marcotte v. Joyce Beverages, Inc.*, 87-cv-7412-KMW, 1990 WL 52123 at *2 (S.D.N.Y. April 17, 1990). The Court "does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum," but rather "must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Herbert*, 325 F. Supp. 2d at 286. The key witnesses in copyright infringement cases are those who are knowledgeable about the design, production, operation, and launch of the allegedly infringing products. *Capitol Records*, 611 F.Supp.2d at 367. "Testimony about the ownership or validity of the registered copyrights at issue, [is unlikely to be] lengthy or nuanced." *Id.*

Thermaltake has specifically identified five witnesses who are located in the Central District of California. Three of those witnesses work at Thermaltake US's California headquarters. The other two witnesses are former employees and therefore non-party witness. The employee witnesses are Michael Guo, Vice President, Joy Hsu, Director of Sales and Marketing, and Mike Fierheller, Product Marketing Manager. The two former employees are Kitty Mach, former Marketing Manager, and Weller Pohan Chen, former Director of Brand Management. Both of the non-party witnesses reside in the Central District of California. Reply, 4. Defendants also name four witnesses who reside in Taiwan and work for Thermaltake Tawain. *Id.* The presence of party witness in Taiwan weighs in favor of transfer because it is easier, cheaper and faster to travel from Taiwan to the west coast then it would be to travel to this district. Additionally, it would be a "less dramatic disruption" for those witnesses to testify in California where Thermaltake can provide access to its fully staffed offices. *Dynamic Data Technologies, LLC. v. HTC Corp.*, 18-cv-10180-GHW, 2019 WL 2433549, at *3. For the reasons discussed above, Thermaltake is not equally well-position to provide such amenities in New York.

Thermaltake has further demonstrated that its proposed witnesses are likely to provide testimony material to the outcome of the case. In particular, the proposed-witness testimony will be as to the design and production of the allegedly infringing videos—a central issue in this case. Reply, 4-5. Accordingly, the Court assigns meaningful weight to Thermaltake's argument that transferring this case to the Central District of California would be substantially more convenient for its potential witnesses. *Dynamic Data*, 2019 WL

5

2433549, at *3.  The same cannot be said for Plaintiff's proposed party witnesses.  Plaintiff's "ownership of the allegedly infringed copyrights . . . is relatively easily established and may very well be the subject of a stipulation by the time of trial."  *Id.*  Accordingly, the Court affords less weight to the convenience of Plaintiff's party witnesses.

Thermaltake also claims that documents and testimony from YouTube and Facebook may be required in this case because they control the mediums on which the allegedly-infringing videos were published.  Accordingly, to the extent that any issue as to the veracity of the allegedly-infringing videos arises, witnesses or documents from Facebook and YouTube may be required.[1]  Reply, 6.  However, while the Court accepts Defendants' contention that third-party witnesses from YouTube and Facebook may be required in this case, the weight accorded to that finding is somewhat diminished by Defendants' failure to specify the relevant employees, or adequately explain why those employees would be inconvenienced by testifying in New York.[2]  *See Sentegra, LLC v. ASUS Computer Int'l*, 15-cv-3768-GHW, 2016 WL 3093988, at *4 (S.D.N.Y. June 1, 2016).

Freeplay has also identified third-party witnesses from TuneSat who will provide information regarding the alleged infringement.  However, for the reasons that follow, those third-party witnesses weigh less heavily on this analysis.  Freeplay admits that TuneSat is its "agent"—located in the same office, and with the same CEO and COO—whose raison d'être appears to be discovering potential copyright infringements on Freeplay's behalf.  *See* Compl. ¶¶ 55-58.  Additionally, the CEO and COO of TuneSat are both officers of Freeplay, and have been named by Plaintiffs as potential witnesses on Freeplay's behalf.  *See* Reply, 6 (citing TuneSat, *About*, https://tunesat.com/tunesatportal/home/about (last visited July 8, 2019)); *see* Opp., 11.; Compl. ¶55.  As they will be testifying in their party-witness capacity in any event, Freeplay cannot plausibly contend that

---

[1] Freeplay's assertion that TuneSat is in possession of the videos may not foreclose the potential need for third-party witnesses from Facebook and YouTube to verify, inter alia, the authenticity, content, posting date, and duration of posting for the allegedly infringing videos.  *Id.* at 6.

[2] YouTube and Facebook are both large corporations with offices in New York, a fact which may diminish any inconvenience suffered if its employees were to testify in New York.  *See* Opp., Ex. F.  However, the Court also notes that YouTube's copyright issues are resolved at their California headquarters.  *See* Br. at 8 n.3 (citing Youtube, *Copyright Contact Information*, YouTube Help, https://support.google.com/youtube/answer/6005908?hl=en-GB&ref_topic=2778544 (last visited July 2, 2019).

6

those same individuals will be more than marginally inconvenienced if called upon to testify in their capacity as officers of TuneSat.

Freeplay has not specified the identities of any potential third-party witnesses other than those from TuneSat. Opp., 10-11. And while certain of the TuneSat witnesses may not be dual-employees of Freeplay, under these circumstances the weight accorded to any inconvenience suffered by any TuneStat witnesses who are not dual employees is diminished. Accordingly, the third party-witnesses identified by Freeplay are accorded comparatively little weight in the Court's analysis.

A corollary to the convenience of witnesses factor is the availability of service of process to compel the testimony of non-cooperating witnesses. Freeplay contends that it may need to compel employees of TuneSat to testify. However, given the fact that both companies are founded and controlled by the same two individuals (Scott Schreer and Chris Woods) and that both Mr. Schreer and Mr. Woods may testify in this case as party witnesses, the Court affords little weight to that contention. *See* Opp., 11. On balance, the Court views the availability of process to compel testimony of non-cooperating witnesses as a more significant factor as to the third-party witnesses proposed by Thermltake than it is to Freeplay's proposed third-party witnesses. For all these reasons, these factors weigh in favor of transfer.

### d. The convenience of the parties

Thermaltake repeatedly points out that California is closer to Taiwan than New York and argues that this should sway the convenience factor. While, in general, "[d]istrict courts have given little, if any, weight to the convenience of witnesses who reside in neither the transferor nor transferee forum." *Elec. Workers Pension Fund, Local 103, I.B.E.W. v. Nuvelo, Inc.*, 07-cv-1229-HB, 2007 WL 2068107, at *4 (S.D.N.Y. July 20, 2007), here the Court acknowledges that it would be less disruptive for witnesses traveling from Taiwan to travel to California because they would have access to and be able to work from Thermaltake US's offices. *Dynamic Data*, 2019 WL 2433549, at *4. As discussed above, Thermaltake does not have any offices or employees in New York. Typically convenience of the parties would not favor transfer when it would simply shift the inconvenience from the defendants to the plaintiffs. *Kiss My Face Corp. v. Bunting*, 02-cv-2645-RCC, 2003 WL

7

22244587 at *3. In this case, however, the inconvenience faced by Thermaltake Taiwan absent a transfer weighs somewhat in favor of transfer.

### e. The location of relevant documents and the ease of access to sources of proof

"The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." *Am. S.S. Owners Mut. Prot. and Indem. Ass'n v. Lafarge N. Am.*, 474 F. Supp. 2d. 474, 484 (S.D.N.Y. 2007); *see also McGraw-Hill Companies Inc. v. Jones*, 12-cv-7085-AJN, 2014 WL 988607, at *9 (S.D.N.Y. Mar. 12, 2014). However, "it is improper to ignore [it] entirely." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011). In copyright infringement cases, the bulk of the evidence typically comes from the infringer, which therefore weighs in favor of transferring the action to where the infringer's documents are kept. *Capitol Records* 611 F. Supp. 2d at 368 (S.D.N.Y. 2009). Here, a substantial majority of the pertinent evidence is located in California, with the remainder located in Taiwan. Accordingly, this factor weighs somewhat in favor of transfer. *See Dynamic Data*, 2019 WL 2433549, at *6 (S.D.N.Y. June 11, 2019). Additionally, the Court here notes that Thermaltake Taiwan's records are more easily transported to a subsidiary office (Thermaltake USA's Los Angeles offices) and that it is easier for a company's employees to work out of a subsidiary office. *Id.* at *6. Accordingly, this factor weighs somewhat favor of transfer.

### f. Relative means of the parties

All parties are corporations, and there is no contention that any party lacks the means to litigate this case, in either forum. As no evidence as to the means of the parties has been adduced, the Court infers that the burden associated with litigating away from their home state would be felt equally by either party. Accordingly, this factor is neutral.

### g. The forum's familiarity with the governing law, trial efficiency, and the interests of justice

This Court is equally familiar with trademark law as are the courts of the Central District of California, and no evidence or argument demonstrates that trial efficiency and interests of justice would be served by either transfer or retention. Therefore, the Court finds that these factors are also neutral.

      h. **Conclusion**

Weighing the factors as described above, the Court finds that, on these facts, the deference owed to Plaintiff's choice of forum is outweighed by the substantial efficiencies and conveniences gained by transfer. Accordingly, the motion to transfer is granted.

This order does not contradict Judge Marrero's decision in *Freeplay Music. LLC. v. Gibson Brands, Inc.* 195 F. Supp. 3d 613 (S.D.N.Y. 2016). In that case Judge Marrero declined to transfer, relying heavily on the deference owed to the plaintiff's choice of forum, and the fact that that "New York is where the alleged infringement was discovered by TuneSat and where the injury to Freeplay occurred." *Id.* at 619. However, Judge Marrero also found that two of the 1404(a) factors—convenience to witnesses and convenience to parties—also weighed against transfer, and only found that one factor—the locus of operative facts—weighed in favor of transfer. *Id.* at 617-621. In this case, however, the only factor that weighs against transfer is Plaintiff's choice of forum, and five of the other § 1404(a) factors, including the weighty factor of the convenience of witnesses, weigh in favor of transfer to the Central District. Accordingly, on these facts the balance of factors is weighted heavily enough towards transfer to disturb the deference owed to Plaintiff's choice of its home forum.

## IV. Conclusion

For the reasons stated above, Defendants' motion to transfer to the Central District of California is GRANTED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 24 and transfer this case to the Central District of California (Western Division) without delay.

SO ORDERED.

Dated: July 9, 2019
New York, New York

                                                  GREGORY H. WOODS
                                                  United States District Judge