ALTVIEW LAW GROUP, LLP
JOHN M. BEGAKIS CASBN 278681
john@altviewlawgroup.com
12100 Wilshire Blvd., Suite 800
Los Angeles, California 90025
Telephone: (310) 230-5580
Facsimile: (562) 275-8954

*Attorneys for Defendant/Counterclaimant*
HYPHY MUSIC, INC.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELLOWCAKE, INC., California corporation,<br><br>Plaintiff,<br><br>v.<br><br>HYPHY MUSIC, INC.,<br><br>Defendant. | Case No.: 1:20-cv-00988-AWI-BAM<br><br>**DEFENDANT/COUNTERCLAIMANT'S MOTION FOR PROTECTIVE ORDER FROM PLAINTIFF/COUNTER-DEFENDANTS' NOTICE OF DEPOSITION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JOHN BEGAKIS IN SUPPORT THEREOF** |
| HYPHY MUSIC, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>YELLOWCAKE, INC.; COLONIZE MEDIA, INC; JOSE DAVID HERNANDEZ; and JESUS CHAVEZ SR,<br><br>Counterdefendants. | Date:  September 16, 2022<br>Time: 9:00 a.m.<br>Dept.: Courtroom 8 (6th Floor)<br>      2500 Tulare Street<br>      Fresno, CA 93721<br>Judge: Hon. Barbara A. McAuliffe |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on September 16, 2022, at 9:00 a.m., in the United States District Court for the Eastern District of California, located at 2500 Tulare Street, Fresno, California 93721, the Honorable Magistrate Judge Barbara A. McAuliffe presiding, Defendant/Counterclaimant HYPHY MUSIC, INC., a California corporation ("Hyphy"), will and hereby does move for an order preventing or limiting Plaintiff/Counterdefendant YELLOWCAKE, INC., a California corporation, and Counterdefendants COLONIZE MEDIA, INC., a California corporation, and JOSE DAVID HERNANDEZ, an individual (collectively, "Counterdefendants") from questioning Hyphy as to certain topics subject to the attorney-client privilege and the parties' confidentiality obligations set forth via contract (the "Motion ").

The Motion is made, pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure ("FRCP"), on the grounds that a protective order is necessary to protect Hyphy from annoyance, embarrassment, oppression, or undue burden or expense that would result from being forced to testify as to information protected by the attorney-client privilege, and the parties' confidentiality obligations set forth via a fully executed confidential settlement agreement.

The Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities and Declaration of John Begakis in support thereof, the Court's file, and any other oral and/or documentary evidence considered at or before the hearing hereon.

DATED:  August 15, 2022          **ALTVIEW LAW GROUP, LLP**

By: _____
JOHN M. BEGAKIS
*Attorneys for Defendant/Counterclaimant*
HYPHY MUSIC, INC., a California
corporation

# TABLE OF CONTENTS

**I.  INTRODUCTION** ...............................................................................................1

**II.  STATEMENT OF FACTS** ..............................................................................1

**A.  The Underlying Dispute**................................................................................1

**B.  The Deposition Of Counterclaimant Hyphy**..................................................2

**III.  HYPHY'S COUNSEL HAS PROPERLY MET AND CONFERRED** ......3

**IV.  ARGUMENTS**....................................................................................................4

**A.  General Authority** .........................................................................................4

**B.  Good Cause Exists To Justify The Granting Of Hyphy's Motion For A Protective Order**........................................................................................6

1.  Information Regarding The Substance Of Hyphy's Relationship With Its Counsel Is Privileged ..................................................................6

2.  Information Regarding A Previously-Executed Settlement Agreement Is Confidential And Irrelevant To This Matter .................................8

**C.  The Balance Of Interests Favors The Granting Of Hyphy's Motion For A Protective Order**....................................................................................11

**V.  CONCLUSION** ................................................................................................12

MOTION FOR PROTECTIVE ORDER

# TABLE OF AUTHORITIES

## CASES

*Cook v. Yellow Freight System, Inc.,* 132 F.R.D. 548 (E.D. Cal. 1990) ....................5

*Detoy v. City & Cnty. of San Francisco*, 196 F.R.D. 362 (N.D. Cal. 2000) ..............5

*Fisher v. U.S.*, 425 U.S. 391 (1976) ........................................................................5, 6

*Hasbrouck v. BankAmerica Housing Services*, 187 F.R.D. 453 (N.D.N.Y. 1999) ................................................................................................................. passim

*Hickman v. Taylor*, 329 U.S. 495 (1947) ................................................................7

*Hulse v. A.B. Dick Co.*, 162 Misc.2d 263 (N.Y. Sup. Ct. 1994) ..............................11

*Kalinauskas v. Wong*, 151 F.R.D. 363 (D. Nev. 1993) ............................................8

*Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002) ...................................................................................................................5

*Seattle Times Co. v. Rhineheart*, 467 U.S. 20 (1984)...........................................4, 11

*U.S. v. Contra Costa County Water Dist.*, 678 F.2d 90 (9th Cir. 1982)...................11

*U.S. v. Margolis*, 557 F.2d 209 (9th Cir. 1977).............................................5, 6, 11

*United States v. CBS, Inc.*, 666 F.2d 364 (9th Cir. 1982)........................................4

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) .................................................6

## STATUTES

FRCP 26(b)(1)..........................................................................................................4

FRCP 26(c)(1) ..........................................................................................................5

MOTION FOR PROTECTIVE ORDER

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant/Counterclaimant HYPHY MUSIC, INC., a California corporation ("Hyphy") hereby moves, pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure ("FRCP"), for an order from this Court preventing or otherwise limiting Plaintiff/Counterdefendants YELLOWCAKE, INC., a California corporation ("Yellowcake"), and Counterdefendants COLONIZE MEDIA, INC., a California corporation ("Colonize"), and JOSE DAVID HERNANDEZ, an individual ("Hernandez") (collectively, "Counterdefendants") from questioning Hyphy as to certain topics subject to the attorney-client privilege and the parties' confidentiality obligations set forth via contract (the "Motion").

## I. INTRODUCTION

While the scope of discovery is broad, this general right permitted merely by legislative grace does not grant Counterdefendants *carte blanche* authority to probe into any topic they desire. As set forth herein, good cause exists for the Court to grant an order preventing or otherwise limiting Counterdefendants' counsel from asking further deposition questions regarding (i) the nature of Hyphy's relationship with its attorneys, or (ii) the details of a confidential settlement agreement entered into by the parties in a separate, unrelated dispute. Such an order is also justified when the public policy behind protecting an attorney client relationship, as well as confidentiality rights mutually bargained for between parties to an agreement, are balanced against the countervailing interest in acquiring discoverable information.

## II. STATEMENT OF FACTS

### A. The Underlying Dispute

Hyphy is a record label in the business of producing, manufacturing, distributing, exploiting, selling and licensing sound and audiovisual recordings in the United States. ECF 15, ¶ 14. Counterdefendant JESUS CHAVEZ SR, an individual ("Chavez"), is the lead singer and one of the original founding members of the popular Spanish-language musical group Los Originales De San Juan, which

band Hyphy commissioned (the "Agreement") to record various albums (the "Los Originales Albums" or "Albums"). ECF 15, ¶¶ 15-16; Exhibit A thereto; Declaration of John Begakis ("Begakis Decl.") at ¶ 2. In producing the Albums, Hyphy also rendered creative contributions thereto. ECF 15, ¶ 15.

Yellowcake and Colonize purport to be engaged in the business of intellectual property rights exploitation and digital music distribution, respectively. ECF 23, 2:8-10. Hernandez is a principal of both Yellowcake and Colonize. ECF 23, 2:10-11. In or about April 2019, Hernandez met with Chavez and intentionally and willfully induced him into breaching his Agreement with Hyphy by convincing him to transfer his ownership of, and rights in, the Los Originales Albums to Yellowcake. ECF 15, ¶¶ 21-22. This wrongful resale of rights, in which Hyphy was already a co-owner, was memorialized by an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019. ECF 23, 2:11-17.

In or about May and/or June 2019, Hyphy discovered that Counterdefendants were distributing, selling and commercially exploiting derivative versions of the Los Originales Albums without authorization. ECF 15, ¶ 24. In order to be perceived as the victim and the sole owner of such Albums, though, Yellowcake rushed to sue Hyphy first – even though Hyphy cannot be sued for infringement as a co-author in such works. Begakis Decl. at ¶ 3. Counterdefendants have also demanded statutory damages and attorneys' fees in their Complaint, despite such statutory remedies being unavailable due to Counterdefendants' failure to timely register copyrights in the Los Originales Albums. Begakis Decl. at ¶ 4; *see also* 17 U.S.C. § 412(2).

In response to the Complaint, Hyphy brought its own Amended Counterclaims, and this lawsuit has progressed accordingly. *See* ECF 15.

**B.** **The Deposition Of Counterclaimant Hyphy**

On or about July 26, 2022, Jose Martinez appeared at the deposition of the "Person Most Knowledgeable" (the "Deposition") to testify on each topic in Counterdefendants' Notice of Deposition (the "Notice"). Begakis Decl. at ¶ 5;

MOTION FOR PROTECTIVE ORDER

Exhibit "A" thereto. At the Deposition, however, Counterdefendants' counsel quickly veered away from the topics identified in the Notice, and attempted to ask questions regarding Hyphy's attorney-client privileged relationship with its former litigation counsel.[1] *Id*. at ¶ 6; Exhibit "B" thereto. Counsel also tried to bait Mr. Martinez into addressing a completely unrelated prior dispute, and then ambushed him with questions about a confidential settlement agreement executed therein (the "Confidential Settlement Agreement"). *Id*. at ¶¶ 7-8; Exhibits "C"-"D" thereto.

Out of an abundance of caution, Hyphy's counsel instructed Mr. Martinez not to answer any questions about Hyphy's attorney-client privileged relationship with counsel, or about the Confidential Settlement Agreement. *Id*. at ¶¶ 9-11. At no point, however, did Hyphy's counsel instruct Mr. Martinez to leave the deposition – only to refrain from answering questions on such sensitive topics until counsel for the parties could meet and confer on a controlled scope of questions related thereto. *Id*. at ¶ 11. Hyphy's counsel was even willing to discuss a controlled scope of questioning on the day of the deposition, but Counterdefendants' counsel made such an option impossible by insisting that he had the right to ambush Mr. Martinez, rather than "telegraph" his questions. *Id*. at ¶ 10.

Due to Hyphy's counsel's refusal to risk having Mr. Martinez potentially waive Hyphy's attorney-client privilege, or violate its confidentiality obligations set forth in the Confidential Settlement Agreement, Counterdefendants elected, on their own, to terminate the deposition with nearly four (4) hours remaining. *Id*. at ¶¶ 9-11.

### III.   HYPHY'S COUNSEL HAS PROPERLY MET AND CONFERRED

On or about August 1, 2022, Counterdefendants' counsel sent a meet and confer letter, wherein counsel falsely claimed (i) that he was "forced to stop the deposition"; (ii) that only questions about communications between Hyphy and its counsel were privileged; and (iii) that questions regarding the unrelated Confidential

---

1 While Hyphy's counsel cannot speak to whether such counsel presently represent Hyphy in any other matters, such counsel have withdrawn from this dispute as of August 21, 2020 and May 17, 2021. ECF 11 & 40.

MOTION FOR PROTECTIVE ORDER

Settlement Agreement were permissible because "Mr. Martinez was the first to raise the Settlement Agreement…" Begakis Decl. at ¶ 12; Exhibit "E" thereto. Hyphy's counsel responded on or about August 3, 2022, addressing each falsity in turn. *Id*. at ¶ 13; Exhibit "F" thereto. On or about August 9, 2022, Counterdefendants' counsel sent a follow up correspondence insisting they were entitled to ask any questions they wanted about such topics, and again falsely claiming that questions regarding the unrelated Confidential Settlement Agreement were permissible because Mr. Martinez "specifically testified that he believed the Settlement Agreement released certain claims" even though he never did. *Id*. at ¶ 14; Exhibit "G" thereto.

Accordingly, this Motion for a Protective Order necessarily results.

## IV. <u>ARGUMENTS</u>

### A. <u>General Authority</u>

In general, discovery of relevant, non-privileged information is permissible. FRCP 26(b)(1). However, the "liberality of the discovery rules provides significant opportunity for abuse by the parties seeking discovery." *Hasbrouck v. BankAmerica Housing Services*, 187 F.R.D. 453, 455 (N.D.N.Y. 1999) (citing *Seattle Times Co. v. Rhineheart*, 467 U.S. 20, 34 (1984)). In light of the broad reach of discovery, protective orders are meant to provide a safeguard for parties and other persons. *United States v. CBS, Inc.*, 666 F.2d 364, 368-369 (9th Cir. 1982).

"A party…from whom discovery is sought may move for a protective order in the court where the action is pending…" FRCP 26(c)(1). Upon such a motion, "[t]he court may, for good cause, issue an order to protect a party…from annoyance embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A)  forbidding the disclosure of discovery;

(B)  specifying the terms, including time and place or the allocation of expenses, for the disclosure of discovery; [and]

…

(D)     forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters…" FRCP 26(c)(1)(A)-(D).

A party intending to seek a protective order pursuant to the above-referenced grounds may adjourn the deposition in order to obtain the same. *Detoy v. City & Cnty. of San Francisco*, 196 F.R.D. 362, 365-66 (N.D. Cal. 2000).

To establish good cause for the issuance of a protective order, the moving party must make a clear showing of a particular and specific need for the order. *Hasbrouck*, 187 F.R.D. at 455; *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210-1211 (9th Cir. 2002) (stating that for good cause to exist, the "party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted."). For example, any disclosure of information between a client and attorney, including the disclosure of communications, is protected by the attorney-client privilege. *Fisher v. U.S.*, 425 U.S. 391, 403 (1976); *U.S. v. Margolis*, 557 F.2d 209, 211 (9th Cir. 1977). Additionally, evidence from settlement negotiations is protected by privilege. *See Hasbrouck,* 187 F.R.D. at 458; *see also Cook v. Yellow Freight System, Inc.,* 132 F.R.D. 548, 554 (E.D. Cal. 1990).

If such party establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order. *Hasbrouck*, 187 F.R.D. at 455; *Phillips*, 307 F.3d at 1211. In balancing the interests after a showing of good cause, the court may look to public policy to determine whether to grant a protective order. Serious public policy considerations underpin both the disclosure of attorney-client privileged information, and information subject to a confidential settlement agreement. *See Fisher*, 425 U.S. at 403 ("The purpose of the [attorney-client] privilege is to encourage clients to make full disclosure to their attorneys."); *see also Hasbrouck*, 187 F.R.D. at 458-459.

As the Court will see herein, Hyphy has established good cause for issuance of a protective order preventing Counterdefendants from probing further into the

MOTION FOR PROTECTIVE ORDER

details of Hyphy's attorney-client relationship with its counsel, as well as into the unrelated Settlement Agreement to which Hyphy previously entered.

**B.  Good Cause Exists To Justify The Granting Of Hyphy's Motion For A Protective Order**

Given Counterdefendants' counsel's efforts to seek attorney client privileged and confidential information during Mr. Martinez's deposition, good cause exists to seek an order from the Court prohibiting, or at least substantially limiting, counsel's ability to probe into such topics during any further deposition testimony.

1.  Information Regarding The Substance Of Hyphy's Relationship With Its Counsel Is Privileged

Further inquiry into the substance of Hyphy's relationship with its former counsel should be prohibited, or at least substantially limited, because it will violate Hyphy's right to prevent the disclosure of information protected by the attorney-client privilege. The attorney-client privilege extends to any **disclosure** of information between a client and attorney, **including** communications. *Fisher*, 425 U.S. at 403; *Margolis*, 557 F.2d at 211 (emphasis added). Whether the privilege applies in any given situation also depends on the particular circumstances at hand. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

During the relevant portion of Mr. Martinez's deposition, Counterdefendants' counsel began with questions regarding the identity of Hyphy's counsel, which Hyphy's counsel permitted. However, Counterdefendants' counsel moved quickly into questions that would necessarily require the disclosure of information between Hyphy and such counsel, when he asked whether Mr. Martinez believed his attorneys were "capable." Begakis Decl. at ¶ 6; Exhibit "B" thereto. Because of the argumentative, harassing and irrelevant nature of this question, and the inherent need for Mr. Martinez to disclose the substance of such counsel's representation of Hyphy in answering the same, it became clear to Hyphy's counsel that no further questions regarding any attorneys' representation of Hyphy should be permitted.

This position was further bolstered by statements opposing counsel made later in the deposition, which indicated how far counsel was willing to go to uncover attorney-client privileged information. For one, opposing counsel falsely stated that he was intitled to *any* information other than "the substance of a conversation" regarding Hyphy's relationship with counsel. Additionally, opposing counsel insisted that he could ask anything he wanted without "telegraphing" where his questions would go – thereby eliminating any possibility that counsel for the parties could agree, via a sidebar conversation on the day of the deposition, to a more limited scope of questions. *Id*. at ¶ 10.

In the parties' subsequent exchange of written correspondences, Hyphy's counsel provided the above-referenced case law evidencing that the privilege extends to any disclosure. *Id*. at ¶ 13; Exhibit "F" thereto. Counterdefendants' counsel, however, continued to insist that he was entitled to anything other than the substance of communications. *Id*. at ¶ 14; Exhibit "G" thereto. And opposing counsel continues to unreasonably refuse to agree on a scope of potential questions that Hyphy's counsel would permit Mr. Martinez to answer, even though the purpose of discovery is to "make trial less of a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947).

Allowing Opposing Counsel free reign to ask any questions he desires regarding the nature of Hyphy's relationship with its counsel would substantially harm Hyphy. In such a scenario, there is real risk that Mr. Martinez inadvertently discloses privileged information and thereby causes of a waiver of Hyphy's right to prevent the disclosure of attorney-client privileged information. Such a scenario is also exactly what opposing counsel wants, so that he can pounce on any such waiver and harass Mr. Martinez with further questions regarding the substance of Hyphy's privileged relationship with counsel.

///

Thus, Hyphy has good cause to seek an order from this Court either restricting all questions regarding Hyphy's relationship with counsel, or expressly limiting such questions to only certain, non-privileged, categories of information.

    2.    Information Regarding A Previously-Executed Settlement Agreement Is Confidential And Irrelevant

Further inquiry into the details of the Confidential Settlement Agreement should also be prevented because it would deny Hyphy the benefit of its prior bargain with Yellowcake, and would constitute an annoyance and undue burden on Hyphy. *Hasbrouck*, 187 F.R.D. at 457-458. The rights of parties set forth in a bargained-for contract, including the maintenance of secrecy over confidential information therein, "deserve the protection of the court." *Id.* at 458 (citing *Kalinauskas v. Wong*, 151 F.R.D. 363, 365 (D. Nev. 1993)). Furthermore, justice can require an order from the court protecting a party from discovery that would subject such party to annoyance, embarrassment, oppression, or undue burden or expense. *Id*. at 456 (citing FRCP 26(c)).

Hyphy and Yellowcake negotiated the terms of the Confidential Settlement Agreement in connection with a wholly unrelated matter. One of such expressly bargained-for terms was a confidentiality clause requiring the parties and their counsel keep the terms of such agreement confidential. *See* Begakis Decl. at ¶ 8. Accordingly, any questions regarding the terms of the Confidential Settlement Agreement should be restricted.

Hyphy would also suffer annoyance if its principal, Mr. Martinez, was required to refamiliarize himself (as is the obligation of any PMK deposition witness) with information concerning an unrelated dispute resolved nearly three years ago. If Counterdefendants were permitted to obtain such information – likely for no other purpose than to color the mind of the court as to Hyphy's character – then Hyphy would also be unduly burdened by having to conduct discovery into the

merits of such matter, in order to defend itself from any insinuations or aspersions cast by Counterdefendants regarding Hyphy's prior involvement therein.

In response to counsel's refusal to permit questions regarding the unrelated Confidential Settlement Agreement, Counterdefendants' counsel has falsely claimed that such questions are permissible because Mr. Martinez "referred" to it, and "specifically testified that he believed the Settlement Agreement released certain claims…" However, Mr. Martinez did not voluntarily refer to, or testify about, the Settlement Agreement, as evidenced by the exchange below:

> Q: Was there any written agreement [in] connection with the ending of the lawsuit?
>
> A: [Counterdefendants' counsel] Mr. Griffin would be able to answer that.
>
> Q: Well, I'm asking you if you have any independent recollection as to whether or not any sort of settlement agreement was entered into in connection with that lawsuit?
>
> …
>
> A: What I can verify for a fact is that there's still an outstanding balance that has not been recouped.
>
> Q: That's not my question. My question is whether or not there was a written settlement agreement entered into in connection with the lawsuit…

Later in the deposition, Counterdefendants' counsel revisited such questions, in an effort to trick Mr. Martinez into referring to, and testifying about, the Confidential Settlement Agreement. However, counsel still could not get Mr. Martinez to voluntarily refer to, or testify about, such agreement. All counsel could do was extract a "yes" when counsel himself referenced the Confidential Settlement

MOTION FOR PROTECTIVE ORDER

Agreement via an intentionally vague and leading question, as evidenced by the exchange below:

> Q: And you – correct me if I'm wrong, but I believe you testified earlier that you believe that the album Chuy Chavez y Sus Amigos was subject to one of the prior lawsuits; is that correct?
>
> A: It was not subject to one of the prior lawsuits…
>
> Q: And you recall being – or Hyphy being sued in or about September 20, 2019, by Yellowcake in Fresno County Superior Court, correct?
>
> …
>
> A: Can you remind me of the case?
>
> Q: Okay. I will. … Before we do that, do you recall ever entering into any sort of settlement agreement between Hyphy and Yellowcake?
>
> A: Yes.
>
> Q: Okay. Please mark this document as Exhibit E.

Hyphy will be harmed if the benefit of confidentiality that it expressly bargained for in entering into the Confidential Settlement Agreement is eviscerated by its obligation in discovery to respond to Deposition questions. Hyphy will also be harmed from the annoyance it will suffer it is required to answer questions regarding a dispute that has already been completely resolved. Additionally, Hyphy will be harmed by being forced to expend resources to probe for facts regarding the dispute that led to the execution of the Confidential Settlement Agreement, even though such dispute is unrelated to the current matter.

///

///

///

Thus, Hyphy has good cause to seek an order from this Court either restricting all questions regarding the Confidential Settlement Agreement, or limiting such line of questioning to certain categories of information.

## C. The Balance Of Interests Favors The Granting Of Hyphy's Motion For A Protective Order

Despite counsel's position regarding the broad scope of discovery, important underlying public policy considerations far outweigh any such litigation right. Even though communications are privileged, "the privilege is not limited to the actual communication by the client to the attorney" due to the rationale of encouraging clients "to confide fully in their attorneys without fear of future disclosure…" *Margolis*, 557 F.2d at 211. Protecting the confidentiality of a settlement agreement also promotes the important public policy of encouraging settlements. *Hasbrouck*, 187 F.R.D at 458 (citing *Hulse v. A.B. Dick Co.*, 162 Misc.2d 263, 268 (N.Y. Sup. Ct. 1994) for the proposition that "[m]ost importantly, a settlement produces finality and repose upon which people can order their affairs."); *see also U.S. v. Contra Costa County Water Dist.*, 678 F.2d 90, 92 (9th Cir. 1982) (noting that by "preventing settlement negotiations from being admitted as evidence, full and open disclosure is encouraged, thereby furthering the policy toward settlement.").

Such policy concerns outweigh any countervailing public interest in affording litigants the broad right to discovery in litigation because such right is not limitless. In fact, the right to discovery is not even constitutional, but, rather, permitted by "legislative grace." *Hasbrouck*, 187 F.R.D. at 459; *Seattle Times*, 467 U.S. at 32. Accordingly, any evidence Counterdefendants would glean from learning about Hyphy's attorneys, or of Hyphy's settlement of an unrelated prior dispute, is of nominal value in this copyright infringement action, and the need for such information is therefore far outweighed by the important public policy of preventing opposing counsel from having free reign to question Mr. Martinez about such topics.

///

Accordingly, the balance of interests favors Hyphy and necessitates the imposition of a protective order preventing, or at least significantly limiting, Counterdefendants' anticipated questions on such topics.

**V.    CONCLUSION**

For the foregoing reasons, Hyphy respectfully requests this Court to issue an order preventing, or otherwise limiting, Counterdefendants from questioning Hyphy as to certain topics subject to the attorney-client privilege, or the parties' contractual confidentiality obligations.

DATED:  August 15, 2022             **ALTVIEW LAW GROUP, LLP**

By: _____
            JOHN M. BEGAKIS
*Attorneys for Defendant/Counterclaimant*
HYPHY MUSIC, INC., a California
corporation

### **DECLARATION OF JOHN BEGAKIS**

I, John Begakis, declare and state as follows:

1.      I am an attorney licensed to practice in California and before this Court. I am a founding partner of AltView Law Group, LLP, and counsel for Defendant/Counterclaimant HYPHY MUSIC, INC., a California corporation ("Hyphy") in this matter. I hereby submit this declaration in support of Hyphy's Motion for Protective Order. I have personal knowledge of the facts stated herein, and, if called as a witness, could and would testify competently thereto.

### **A.      The Underlying Dispute**

2.      Hyphy is a record label in the business of producing, manufacturing, distributing, exploiting, selling and licensing sound and audiovisual recordings in the United States. Counterdefendant JESUS CHAVEZ SR, an individual ("Chavez"), is the lead singer and one of the original founding members of the popular Spanish-language musical group Los Originales De San Juan, who Hyphy commissioned (the "Agreement") to record various albums (the "Los Originales Albums" or "Albums"), to which Hyphy also provided creative contributions. Plaintiff/Counterdefendant YELLOWCAKE, INC., a California corporation ("Yellowcake"), and Counterdefendant COLONIZE MEDIA, INC., a California corporation ("Colonize"), purport to be engaged in the business of intellectual property rights exploitation and digital music distribution, respectively.

3.      In its Amended Counterclaims, Hyphy alleges that, in or about April 2019, Hernandez met with Chavez and intentionally induced Chavez into breaching his Agreement with Hyphy by convincing him to transfer his ownership of, and rights in, the Los Originales Albums to Yellowcake. Hyphy later discovered, in or about April 2019, that Yellowcake and Colonize were distributing, selling and commercially exploiting derivative versions of the Los Originales Albums without authorization. Before Hyphy could file a Complaint, however, Yellowcake rushed to

sue Hyphy first, even though Hyphy cannot be sued for infringement as a co-owner of such Albums.

4. Despite Yellowcake's outlandish claim for over a million dollars in damages, a review of the relevant copyright registrations filed by Yellowcake establishes that no statutory damages or attorneys' fees will be awardable to Counterdefendants, given the timing in which such works were published relative to when the copyright registrations were filed. Counterdefendants' counsel knows this, and it is likely the reason why he now seeks irrelevant, but nevertheless privileged, information regarding Hyphy's relationship with its attorneys, in addition to irrelevant, but nevertheless confidential, information regarding an unrelated settlement agreement that Hyphy executed back in 2019.

**B.** **The Deposition of Counterclaimant Hyphy**

5. On or about July 26, 2022, Jose Martinez ("Martinez") appeared at the Deposition of the "Person Most Knowledgeable" to testify on behalf of Hyphy (the "Deposition"), regarding each topic identified in Counterdefendants' Notice of Deposition (the "Notice"). A true and correct copy of the Notice is attached hereto as Exhibit "A" and incorporated herein by this reference.

6. At the Deposition, however, Counterdefendants' counsel quickly veered away from topics of questioning identified in the Notice, and attempted to ask questions regarding the substance of Hyphy's attorney-client privileged relationship with attorneys who were at one point – but are no longer – Hyphy's litigation counsel in this case. In fact, counsel's *first question* after identifying such attorneys was as follows:

> Q: And clearly you believe Mr. Lopez and [Mr. Prajin] to
> be capable counsel?
>
> …
>
> A: …I can't say whether or not they're good attorneys.

///

True and correct copies of pages 20 through 21 from the Deposition transcript, which evidence the above exchange, are attached hereto as Exhibit "B" and incorporated herein by this reference.

7. Counterdefendants' counsel also tried to bait Mr. Martinez into referencing and/or addressing a completely unrelated prior dispute, and the confidential settlement agreement the parties entered into in or about December of 2019 as a result of such dispute (the "Confidential Settlement Agreement"), as evidenced by the exchange below:

> Q: Was there any written agreement [in] connection with the ending of the lawsuit?
>
> A: [Counterdefendants' counsel] Mr. Griffin would be able to answer that.
>
> Q: Well, I'm asking you if you have any independent recollection as to whether or not any sort of settlement agreement was entered into in connection with that lawsuit?
>
> …
>
> A: What I can verify for a fact is that there's still an outstanding balance that has not been recouped.
>
> Q: That's not my question. My question is whether or not there was a written settlement agreement entered into in connection with the lawsuit…
>
> A: I don't remember signing anything.

True and correct copies of pages 47 through 48 from the Deposition transcript, which evidence the above exchange, are attached hereto as Exhibit "C" and incorporated herein by this reference.

8. Later in the deposition, Counterdefendants' counsel revisited such questions, in an effort to trick Mr. Martinez into referring to, and testifying about,

DECLARATION OF JOHN BEGAKIS

the Confidential Settlement Agreement. However, counsel still could not get Mr. Martinez to voluntarily refer to, or testify about, such agreement. All counsel could do was extract a "yes" when counsel himself referenced the Confidential Settlement Agreement via an intentionally vague and leading question, as evidenced by the exchange below:

> Q: And you – correct me if I'm wrong, but I believe you testified earlier that you believe that the album Chuy Chavez y Sus Amigos was subject to one of the prior lawsuits; is that correct?
>
> A: It was not subject to one of the prior lawsuits…
>
> Q: And you recall being – or Hyphy being sued in or about September 20, 2019, by Yellowcake in Fresno County Superior Court, correct?
>
> …
>
> A: Can you remind me of the case?
>
> Q: Okay. I will. … Before we do that, do you recall ever entering into any sort of settlement agreement between Hyphy and Yellowcake?
>
> A: Yes.
>
> Q: Okay. Please mark this document as Exhibit E.

True and correct copies of pages 138 through 140 from the Deposition transcript, are attached hereto as Exhibit "D" and incorporated herein by this reference.

9. As set forth above, it became clear to me during the Deposition that Counterdefendants' counsel was using tactics to try to trick Mr. Martinez into making statements on the record that would have a prejudicial effect on Hyphy. For example, if Mr. Martinez had accidentally testified to anything regarding the substance of his attorney-client relationship with counsel, opposing counsel would have seized on the potential "waiver" of the privilege and pushed for more. This

DECLARATION OF JOHN BEGAKIS

actually proved to be the case regarding the Confidential Settlement Agreement, which counsel is now claiming is fair game because Mr. Martinez "referenced" it – even though Mr. Martinez's sole "reference" to the Confidential Settlement Agreement is a loan "yes" in response to a leading question from counsel.

10.    It also became clear to me during the Deposition that opposing counsel would not side bar and agree to a limited scope of questions on such topics. I came to this conclusion because, at one point, I suggested to opposing counsel that we have a sidebar about a line of questions that I believed was irrelevant and outside the scope of the Notice he served, and opposing counsel refused – claiming that he was "not going to telegraph" his questions.

11.    Accordingly, out of an abundance of caution, I instructed my client not to answer any further questions regarding either topic. I did not, however, instruct my client to leave the Deposition. That decision was made solely by opposing counsel. At the time Counterdefendants' counsel walked out, there was four (4) hours and twenty-six (26) minutes left.

### C.    The Parties' Meet And Confer Efforts

12.    On or about August 1, 2022, I received a meet and confer letter from Counterdefendants' counsel sent me a meet and confer letter, wherein he falsely claimed (i) that he was "forced to stop the deposition"; (ii) that only questions about the substance of communications between Hyphy and its counsel were privileged; and (iii) that questions regarding the unrelated Confidential Settlement Agreement were permissible because "Mr. Martinez was the first to raise the Settlement Agreement…" A true and correct copy of counsel's August 1, 2022 correspondence is attached hereto as Exhibit "E" and incorporated herein by this reference.

13.    I responded on or about August 3, 2022, by addressing each falsity in turn, and providing case law evidencing that the attorney-client privilege extends to **any disclosure**. A true and correct copy of my August 3, 2022 correspondence is attached hereto as Exhibit "F" and incorporated herein by this reference.

14.     My response, unfortunately, did not stop Counterdefendants' counsel from again falsely asserting in a follow up correspondence on August 9, 2022 that Mr. Martinez "specifically testified that he believed the Settlement Agreement released certain claims" even though he never did. Counterdefendants' counsel also continued to insist that he was entitled to anything other than actual communications between Hyphy and its counsel. A true and correct copy of opposing counsel's August 9, 2022 correspondence is attached hereto as Exhibit "G" and incorporated herein by this reference.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed on August 15, 2022, at Los Angeles, California.

JOHN BEGAKIS

DECLARATION OF JOHN BEGAKIS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing electronically filed document has been served via a "Notice of Electronic Filing" automatically generated by the CM/ECF System and sent by e-mail to all attorneys in the case who are registered as CM/ECF users and have consented to electronic service pursuant to L.R. 5-3.3.

Dated: August 15, 2022          By: __/s/ John Begakis_____
                                       John M. Begakis