1   **ALTVIEW LAW GROUP, LLP**
    JOHN M. BEGAKIS (SBN 278681)
2   john@altviewlawgroup.com
    12100 Wilshire Blvd., Suite 800
3   Los Angeles, California 90025
    Telephone: (310) 230-5580
4   Facsimile: (562) 275-8954

5   **SHERMAN LAW GROUP, LLP**
    RICHARD LLOYD SHERMAN (SBN 106597)
6   richard@shermanlawgroup.com
    9454 Wilshire Blvd., Suite 850
7   Beverly Hills, California 90212
    Telephone: (310) 246-0321
8   Facsimile: (310) 246-0305

9
    *Attorneys for Defendant/Counterclaimant* HYPHY MUSIC, INC.
10

11              UNITED STATES DISTRICT COURT

12              EASTERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14 YELLOWCAKE, INC., California corporation, | Case No.: 1:20-cv-00988-AWI-BAM |
| 15        Plaintiff, | [Assigned to the Hon. Jennifer L. Thurston] |
| 16        v. | **DEFENDANT/COUNTERCLAIMANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 17 HYPHY MUSIC, INC., | |
| 18        Defendant. | |
| 19 | |
| 20 HYPHY MUSIC, INC., | Date:  June 27, 2023 |
| 21        Counterclaimant, | Time: 9:00 a.m.<br>Dept.: Courtroom 4 (7th Floor)<br>      2500 Tulare Street |
| 22        v. |       Fresno, CA 93721<br>Judge: Hon. Jennifer L. Thurston |
| 23 YELLOWCAKE, INC.; COLONIZE MEDIA, INC; JOSE DAVID HERNANDEZ; and JESUS CHAVEZ SR, | |
| 24 | |
| 25 | |
| 26        Counter-Defendants. | |
| 27 | |
| 28 | |

i

DEFENDANT/COUNTERCLAIMANT HYPHY MUSIC INC.'S MOTION FOR
SUMMARY JUDGMENT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 27, 2023 at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 4 of the United States District Court, Eastern District of California, located at 2500 Tulare Street, Fresno, California 93721, the Honorable Jennifer L. Thurston presiding, Defendant/Counterclaimant HYPHY MUSIC, INC. ("*Hyphy*") will and hereby does move the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("*FRCP*"), for summary judgment, or, in the alternative, summary adjudication (the "*Motion*") (a) as to the Complaint filed by Plaintiff YELLOWCAKE, INC. ("*Yellowcake*") against Hyphy, in its entirety, and (b) in Hyphy's favor as to its Second and Sixth Claims for Relief set forth in its Amended Counterclaim against Counter-Defendants Yellowcake, JOSE DAVID HERNANDEZ ("*Hernandez*")*,* and COLONIZE MEDIA, INC. ("*Colonize*") (collectively "*Cross-Defendants*").

**With respect to Yellowcake's Complaint**, this Motion is made on the grounds that:

- Yellowcake does not have standing to sue Hyphy for copyright infringement because its claims are premised upon Yellowcake having obtained certain rights from Counter-Defendant JESUS CHAVEZ ("*Chavez*"), but any alleged transfer of rights from Chavez was insufficient to create standing for Yellowcake to sue any other party for infringement;

- *Even if* Yellowcake had obtained sufficient rights from Chavez to file a lawsuit for copyright infringement against third parties, Hyphy is a co-author and co-owner of the music albums at issue in the Complaint, and it is a well-settled axiom of copyright law that copyright co-owners cannot sue each other for infringement; and

- Finally, Yellowcake has not and cannot prove one of the key elements of a copyright infringement claim – that it is entitled to any damages. Summary judgment of such copyright claim is therefore proper, or in the alternative,

ii

summary adjudication that Plaintiff is not entitled to seek any remedy beyond injunctive relief at the time of trial.

**With respect to Hyphy's Amended Counterclaim**, it is undisputed that Hyphy is the exclusive owner of the copyrights to certain artwork exploited without authorization by one or more of the Counter-Defendants. Counter-Defendants' efforts to deny their exploitation of such artwork at issue run contrary to all written evidence, and summary adjudication of Hyphy's Second Claim for Relief against Yellowcake and Colonize, as well as its Sixth Cause of Action for Relief against all Counter-Defendants, are therefore proper.

The Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Jose Martinez, Domingo Torres Flores, Alfonso Vargas, and John Begakis filed concurrently herewith, all pleadings, files, and records in this proceeding, all matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

DATED:  May 19, 2023

**ALTVIEW LAW GROUP, LLP**

By: _____

JOHN M. BEGAKIS

*Attorneys for Defendant/Counterclaimant*
HYPHY MUSIC, INC., a California corporation

DEFENDANT/COUNTERCLAIMANT HYPHY MUSIC INC.'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................1

II.    UNDISPUTED MATERIAL FACTS ...................................2

   A.  Hyphy's Agreement With The Group To Record The Albums.................2

   B.  Counter-Defendants' Surreptitious "Acquisition" Of The Albums And Infringement Of The Album Artwork .......................................5

III.   PROCEDURAL HISTORY .........................................6

IV.    LEGAL STANDARD..................................................7

V.     THE COMPLAINT MUST BE DISMISSED .....................7

   A.  Yellowcake's First Claim For Copyright Infringement Fails Because Yellowcake Does Not Have Standing To Sue Hyphy ...........................7

   B.  Yellowcake's First Claim For Copyright Infringement Fails Because Hyphy Is A Joint Owner In The Albums.........................................10

   C.  Yellowcake's First Claim For Copyright Infringement Fails Because Yellowcake Has No Provable Damages.......................................12

     1.   Yellowcake's Fatal Failure to Provide a Damage Calculation ...................12

     2.   Yellowcake Is Not Entitled To Actual Damages.........................................14

     3.   Yellowcake Is Not Entitled To Statutory Damages....................................14

   D.  Yellowcake's Second Claim For Injunctive Relief Fails Because Yellowcake's First Claim For Copyright Infringement Fails.........................15

VI.    SUMMARY ADJUDICATION IS PROPER AS FOR THE SECOND AND SIXTH COUNTERCLAIMS OF THE COUNTERCLAIM ....................15

   A.  Summary Adjudication Is Proper As To Hyphy's Second Counterclaim For Copyright Infringement Because Yellowcake And Colonize Infringed Upon Hyphy's Album Artwork ..........................................15

     1.   Ownership of the Artwork is Undisputed.................................16

     2.   Copying of the Artwork is Undisputed.................................16

iv

DEFENDANT/COUNTERCLAIMANT HYPHY MUSIC INC.'S MOTION FOR SUMMARY JUDGMENT

3.  Counter-Defendants' Infringement was Willful...........................................19

**B.  Summary Adjudication Is Proper As To Hyphy's Sixth Counterclaim For Unfair Competition Because Hyphy Has Established That Yellowcake And Colonize Engaged In Copyright Infringement........................................21**

**VII.  CONCLUSION.............................................................................................21**

DEFENDANT/COUNTERCLAIMANT HYPHY MUSIC INC.'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## CASES

*Abs Entm't v. CBS Corp.*, 908 F.3d 405 (9th Cir. 2018) ....................................15, 16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............................................12

*Ashton-Tate Corp. v. Ross*, 916 F.2d 516 (9th Cir. 1990)........................................15

*Bastidas v. Good Samaritan Hosp.*, 2017 WL 1345604 (2017, N.D. Cal.) .............18

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)........................................................12

*Effects Associates, Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990)..............................17

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340 (1991) 20

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985) ..19

*Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175 (9th Cir. 2008) .............18

*Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803 (9th Cir. 2019).............18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................17

*Oddo v. Ries*, 743 F.3d 630 (9th Cir. 1984) .............................................................15

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.2d 1146 (9th Cir. 2007)......................20

*Richlin v. Metro-Goldwyn Mayer Pictures, Inc.*, 531 F.3d 962 (9th Cir. 2008) .......13

*Silvers v. Sony Pictures Entm't*, 402 F.3d 881 (9th Cir. 2005) ................................13

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) ...........13, 14

*United Fabrics Intern., Inc. v. C&J Wear, Inc.*, 630 F.3d 1255 (9th Cir. 2011).......21

*Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668 (9th Cir. 2012).............24

*Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747 (E.D. Cal. 2021) ......16

## STATUTES

17 U.S.C. § 101 ..........................................................................................................14

17 U.S.C. § 201(a)......................................................................................................13

17 U.S.C. § 201(d)(2)..................................................................................................14

17 U.S.C. § 410(c).......................................................................................................21

DEFENDANT/COUNTERCLAIMANT HYPHY MUSIC INC.'S MOTION FOR
SUMMARY JUDGMENT

17 U.S.C. § 412(2) ...................................................................................... 20

17 U.S.C. § 501(b) ...................................................................................... 13

17 U.S.C. § 502(a) ...................................................................................... 20

17 U.S.C. § 504(b) ...................................................................................... 21

Cal. Bus. and Prof. Code § 17200 .............................................................. 25

FRCP 56(a) .................................................................................................. 12

FRCP 56(c) .................................................................................................. 12

Rule 26(a)(1)(A)(iii) .................................................................................... 18

Rule 37(c)(1) ............................................................................................... 18

DEFENDANT/COUNTERCLAIMANT HYPHY MUSIC INC.'S MOTION FOR
SUMMARY JUDGMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant/Counterclaimant HYPHY MUSIC, INC., a California corporation ("***Hyphy***") hereby moves, pursuant to Federal Rule of Civil Procedure ("***FRCP***") 56, for summary judgment, or, in the alternative, summary adjudication in its favor (a) as to each of the two Causes of Action asserted by Plaintiff/Counter-Defendant YELLOWCAKE, INC. ("***Yellowcake***") in its Complaint filed on or about July 16, 2020 (Dkt. No. 1) (the "***Complaint***"), and (b) as to Hyphy's Second Cause of Action asserted against Yellowcake and Counter-Defendant COLONIZE MEDIA, INC. ("***Colonize***"), and its Sixth Cause of Action asserted against Yellowcake, Colonize and JOSE DAVID HERNANDEZ ("***Hernandez***") in Hyphy's First Amended Counterclaim filed on or about August 28, 2020 (Dkt No. 15) (the "***Counterclaim***"), on the grounds set forth below.

## I.    INTRODUCTION

The instant case concerns a classic example of a "copyright troll" attempting to exploit the "letter of the law" to obtain an anti-competitive advantage over a competing music distributor. What Yellowcake and its fellow Counter-Defendants Colonize and Hernandez (collectively, "***Plaintiffs***") failed to account for, however, was Hyphy's own willingness to defend itself and its claim to the copyrighted works at issue. Ironically, in the process of attempting to surreptitiously acquire and distribute certain rights Hyphy already owned, it was *Plaintiffs* who ultimately engaged in copyright infringement of Hyphy's rights in the artwork associated with the distributed works.

From in or around 2013 to in or around 2019, Hyphy enjoyed an amicable working relationship with the musical group Los Originales De San Juan (the "***Group***"). The Group was at all relevant times comprised of lead singer (and Cross-Defendant) JESUS CHAVEZ SR. ("***Chavez***"), accordion player Domingo Torres Flores ("***Flores***") and drummer Alfonso Vargas ("***Vargas***"). Together, Hyphy and the Group co-created at least five musical albums that Hyphy then distributed.

1

DEFENDANT/COUNTERCLAIMANT HYPHY MUSIC INC.'S MOTION FOR SUMMARY JUDGMENT

In or about March 2019, however, Chavez was approached by Hernandez, a disgruntled former associate of Hyphy, with a scheme to profit off of Hyphy. Through his companies Yellowcake and Colonize, Hernandez would (a) enter into an "Asset Purchase Agreement" purportedly buying rights to the relevant albums from Chavez, but without alerting the Hyphy or any of the other members of the Group; (b) distribute newly-released, pirated versions of the albums over the internet via various digital service providers ("*DSPs*"); and (c) then sue Hyphy for "copyright infringement" on the basis that Hyphy was "competing" with their pirated versions.

As is common with copyright trolls and the frivolous claims they bring, however, Yellowcake's lawsuit makes little sense legally. Most importantly, Yellowcake failed to acquire sufficient rights to the relevant albums to have standing to sue Hyphy for copyright infringement. Furthermore, Hyphy is a co-owner, or, at a minimum, licensee of the relevant albums based on its creative contributions and acquisition of Flores and Vargas' rights therein, and Yellowcake therefore cannot sue Hyphy. Perhaps most tellingly, Yellowcake has no coherent claim for damages, having failed to even disclose any calculation of damages via an Initial Disclosure statement.

Put simply, this is nothing more than a "stick up", for which summary judgment and/or summary adjudication is proper.

## II.   UNDISPUTED MATERIAL FACTS

### A.   Hyphy's Agreement With The Group To Record The Albums

Hyphy is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings, coupled with artwork. Separate Statement of Undisputed Material Fact ("*UMF*") No. ¶¶ 1, 22, 49, 90, 126, 156. Chavez is the lead singer of the Group. UMF No. ¶¶ 2, 23, 50, 91, 127, 157. The Group operates as a co-equal partnership comprised of Chavez and band members Flores and Vargas. UMF No. ¶¶ 3, 24, 51, 92, 128, 158.

2

In or about February 2013, Hyphy and the Group began working together to co-create various sound recordings to be embodied on multiple albums, which they orally agreed were to be owned by Hyphy (the "*Agreement*"). UMF No. ¶¶ 4, 25, 52, 93, 129, 159. The albums created pursuant to the Agreement were entitled (1) "Amigos y Contrarios"; (2) "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La Cantina de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the "*Los Originales Albums*" or "*Albums*"). UMF No. ¶¶ 5, 26, 53, 94, 130, 152, 160. One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded by Chavez. UMF No. ¶¶ 6, 27, 54, 95, 131, 161.

Though the Agreement was not initially memorialized in writing, Flores and Vargas understood that it existed. UMF No. ¶¶ 7, 55, 96. Such co-equal members of the Group also intended that all rights in and to their recording services rendered pursuant to the Agreement be conveyed to Hyphy. UMF No. ¶¶ 8, 56, 97. Flores and Vargas also later confirmed their belief and intent to convey all rights to Hyphy by executing enforceable Copyright Assignment Agreements on or about March 22, 2022 (collectively, the "*Assignments*"). UMF No. ¶¶ 9, 57, 98.

Unlike larger record labels, however, Hyphy closely collaborated with the Group to create the Albums, including as follows:

- For the first three (of five) of the Los Originales Albums, Hyphy:
  - Helped determine the "theme" and overall creative direction of each Album;
  - Selected the songs to be included in each Album;
  - Selected the recording studio, and paid for all costs associated with the recording of each Album;
  - Hired the sound engineer;
  - Paid the Group a substantial amount for recording the Albums; and

3

DEFENDANT/COUNTERCLAIMANT HYPHY MUSIC INC.'S MOTION FOR SUMMARY JUDGMENT

o Oversaw and generally supervised the recording and production of each Album. UMF No. ¶¶ 29-34, 59-64, 100-105.

- For the final two (of five) Albums (which are each comprised of recordings from a previous live performance by the Group), Hyphy also:

  o Selected and paid for the venue of the live performance;

  o Selected the songs to be performed at the live performance (and then recorded for the Albums);

  o Directly employed, supervised, and directed the services of the sound engineer and videographer who each recorded the audio and video of the live performance, respectively;

  o Wrote a script for the history of the Group as presented as part of the Group's live performance, and hired a "MC"/commentator who narrated the script; and

  o Re-recorded whole portions of the guitarist's contributions to the live performance afterwards, using a new guitarist selected, hired and paid for by Hyphy. UMF No. ¶¶ 35-39, 65-69, 106-110.

It should also be noted here that Flores and Vargas were plainly joint authors of the Albums:

- Flores and Vargas were equally involved in all activities of the Band, which existed as an unincorporated partnership in which all Band members were joint owners, participants and contributors;

- Flores and Vargas were equally credited on all Albums in which each of them made contributions; and

- Flores and Vargas shared equally in all profits of the Band, and were granted equal access to inspect all records related to the Band's receipt of all such profits. UMF No. ¶¶ 10-12, 70-72, 111-113.

In addition to its original creative contributions to the production, recording and overall creation of the Los Originales Albums, Hyphy also designed and created

4

the artwork featured on the cover of each Album (the "***Album Artwork***"). UMF No. ¶¶ 40, 73, 114, 132, 162. Hyphy released the Albums, with the Album Artwork, for distribution through all available digital service providers (the "***DSPs***") between 2013 and 2017. UMF No. ¶¶ 74, 115, 133, 163. Thereafter, Hyphy obtained copyright registrations for all Album Artwork. UMF No. ¶¶ 75, 116, 134, 164.

B.    <u>**Counter-Defendants' Surreptitious "Acquisition" Of The Albums And Infringement Of The Album Artwork**</u>

Yellowcake is a competing record label and distributor of sound recordings, utilizing Colonize as its "distribution arm" to release and exploit rights that Yellowcake acquires. UMF No. ¶¶ 13, 41, 76, 117, 135, 165. Hernandez is a co-owner of both Yellowcake and Colonize. UMF No. ¶¶ 14, 42, 77, 118, 136, 166. In that position, Hernandez has admitted that both corporations have operated – and continue to operate – as one single economic entity, with common ownership, common business operations, common office space, common staff, and many other common resources. UMF No. ¶¶ 15, 43, 78, 119, 137, 167.

In or about March 2019, Hernandez approached Chavez about selling the Los Originales Albums to Yellowcake. UMF No. ¶¶ 16, 44, 79, 120, 138, 168. Hernandez had previously worked with Hyphy and had secretly gained valuable information on Hyphy's business and relationship with Chavez. UMF No. ¶¶ 17, 45, 80, 121, 139, 169. Hernandez therefor knew that Hyphy only had an oral agreement with the Group, and thus approached and convinced Chavez, without Hyphy or the rest of the Group's knowledge, to assign the Albums to Yellowcake in exchange for payment of $500,000. UMF No. ¶¶ 18, 46, 81, 122, 140, 170.

Chavez and Yellowcake attempted to codify their purported agreement via an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019 (the "***Asset Purchase Agreement***"). UMF No. ¶¶ 19, 47, 82, 123, 141, 171. In Section 13.e. thereof, Chavez represented and warranted to Yellowcake that Chavez was "the only owner of" the Albums, and possessed "good and marketable title"

5

1  thereto at the time of sale. UMF No. ¶¶ 20, 83, 124. However, Chavez never

2  obtained signed written agreements from Flores, Vargas or Hyphy acquiring each

3  party's respective contributions to, and rights in, the Albums and sound recordings

4  embodied thereon. UMF No. ¶¶ 21, 84, 125.

5  **III.    PROCEDURAL HISTORY**

6      On July 16, 2020, Yellowcake filed its Complaint for Copyright Infringement

7  against Hyphy. Dkt. 1. In response, Hyphy filed its Counterclaims against

8  Yellowcake and Counter-Defendants Colonize and Hernandez on August 19, 2020.

9  Dkt. 7. On August 28, 2020, Hyphy filed First Amended Counterclaims, asserting

10  Causes of Action for (1) Copyright Infringement of the Albums; (2) Copyright

11  Infringement of the Album Artwork; (3) Injunctive Relief; (4) Intentional

12  Interference with Prospective Business Advantages; (5) Intentional Interference with

13  Contractual Relations; (6) Unfair Competition; (7) Conversion; and (8) Breach of

14  Oral Contract. Dkt. 15.

15      On October 2, 2020, Plaintiffs filed a Motion to Dismiss. Dkt. 23. On July 20,

16  2021, the Court issued an Order granting, in part, and denying, in part, such Motion

17  (the "Order"). Dkt. 42. Specifically, the Order allowed Hyphy's Second Cause of

18  Action for Copyright Infringement of the relevant Album artwork, as well as its

19  Sixth Cause of Action for Unfair Competition, to proceed against Counter-

20  Defendants Yellowcake and Colonize (collectively, "***Counter-Defendants***"). *Id*.

21      Although the Court dismissed Hyphy's First Cause of Action for Copyright

22  Infringement of the Albums, the Court recognized that Hyphy was likely a co-author

23  of the Albums. Specifically, it (a) cited *Abs Entm't v. CBS Corp.*, 908 F.3d 405,

24  410-11 (9th Cir. 2018) for the proposition that record producers can contribute

25  sufficient originality to be co-owners in a copyright of a sound recording, and (b)

26  explicitly noted that "recent Ninth Circuit authority indicates some of the

27  requirements for a joint ownership as co-authors can at least be plausibly inferred

28  from the Counterclaim." *Id*. at 12:3-24.

**DEFENDANT/COUNTERCLAIMANT HYPHY MUSIC INC.'S MOTION FOR SUMMARY JUDGMENT**

## IV.   **LEGAL STANDARD**

A court may grant summary judgment if the moving party can show that there is no genuine dispute of material fact, and that the moving party is entitled to judgment as a matter of law. FRCP 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Substantive law determines which facts are material, as material facts are those necessary to the proof or defense of a claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Partial summary judgment upon all or any part of a claim is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim. FRCP 56(a).

The moving party has the initial burden of establishing either the absence of a material fact, or that the nonmoving party failed to present evidence establishing an essential element of its case on which it bears the ultimate burden of proof. *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 322-23. The moving party need not support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323. Once the moving party meets its initial burden, the burden shifts to the nonmoving party to show a genuine dispute of material fact exists. *Id.* at 324.

## V.   **THE COMPLAINT MUST BE DISMISSED**

### A.   **Yellowcake's First Claim For Copyright Infringement Fails Because Yellowcake Does Not Have Standing To Sue Hyphy**

In executing the Asset Purchase Agreement, Yellowcake obtained an assignment of rights in the Albums ***only*** from Chavez, and not any of the other members of the Group. At all relevant times, however (and notwithstanding Hyphy's claim to co-ownership discussed below), the Group operated as a co-equal partnership wherein each member possessed co-equal rights in each of the Albums. Yet, Chavez never acquired any rights in the Albums from any of the Group's other members, and none of the other members of the Group ***besides Chavez*** have ever entered into an agreement to convey any of their rights to Yellowcake or Chavez.

This undisputed fact is legally fatal to Yellowcake's claims.

Even if Chavez was the lead singer of the Group, the other members of the Group were plainly joint authors of the Albums (along with Hyphy). *See, e.g., Richlin v. Metro-Goldwyn Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008) ("even if a person's contribution is minor, once he is accorded joint authorship status, he enjoys all benefits of joint authorship"). Joint authors to a copyright are co-owners thereof with rights, as tenants in common, to possess undivided and equal fractional interests therein. 17 U.S.C. § 201(a); *Sybersound Records, Inc. v. UAV Corp.,* 517 F.3d 1137, 1144-1145 (9th Cir. 2008) ("***Sybersound***").

Yellowcake may have received an Assignment from Chavez, but a transfer from one co-owner <u>does not</u> and <u>cannot</u> result in a transfer of ***exclusive rights*** in the copyright. For a transfer of ***exclusive rights***, <u>all of the co-owners</u> in a copyright must join in granting such exclusive rights to a third party, or else the transfer is invalid and the purported transferee does not possess standing to enforce any exclusive rights. *Sybersound*, 517 F.3d at 1146; 17 U.S.C. § 501(b) (conferring standing only to the legal or beneficial owner of an exclusive right" who "is entitled…to institute an action for any infringement…while he or she is the owner of it"); *see also, Silvers v. Sony Pictures Entm't*, 402 F.3d 881, 887 (9th Cir. 2005) (a transfer of copyright ownership may be effectuated but can still result in exclusive rights in such copyright being owned separately).

Without a transfer of exclusive rights, Yellowcake does not have standing to sue Hyphy for infringement of the Los Originales Albums. 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled…to institute an action for any infringement of that particular right committed while he or she is the owner of it.").

As cited above, *Sybersound* is directly on point. In *Sybersound*, the plaintiff sued for infringement after allegedly obtaining an "exclusive license" to certain works from a transferor (who was only one of several co-owners), arguing that as a co-owner of the copyrights, it did not have to join the other co-owners to sue for

8

infringement. But the Ninth Circuit spotted the obvious flaw in this reasoning –
Sybersound was *not* a <u>true</u> co-owner of the copyrights because the transferor alone
could not transfer exclusive rights to Sybersound without the written consent of the
other co-owners. Thus, the Ninth Circuit held as follows:

> Sybersound assumes that because its assignment agreement with TVT
> says that TVT is transferring all its karaoke-use interests in the
> copyrights to Sybersound, and says that Sybersound became exclusive
> assignee of TVT's copyrighted interest in karaoke use and of TVT's
> right to sue, Sybersound became a co-owner upon execution of the
> agreement. Sybersound is mistaken. Although the 1976 Copyright Act
> permits exclusive rights to be chopped up and owned separately, to be
> effective, the assignment or other type of alienation permitted by 17
> U.S.C. §§ 101 and 201(d)(2) must be exclusive. Since TVT's
> assignment was admittedly non-exclusive, TVT succeeded only in
> transferring what it could under 17 U.S.C. § 201(d), **a non-exclusive
> license, which gives Sybersound no standing to sue for copyright
> infringement**. See 3–10 Nimmer, supra, § 10.02[B][1] (2007). We hold
> that because Sybersound is neither an exclusive licensee nor a co-owner
> in the nine copyrights, it lacks standing to bring the copyright
> infringement claims alleged in the FAC, and, thus, its copyright
> infringement claims fail.

<u>Sybersound</u>, 517 F.3d at 1146 (emphasis added).

The same exact reasoning applies in equal measure here. Regardless of his
role as the lead singer, Chavez did *not* possess exclusive rights in the Albums – he
had bandmates. Therefore, he could not alone assign exclusive rights in the Albums
to Yellowcake via the Asset Purchase Agreement, making Yellowcake, at best, a

DEFENDANT/COUNTERCLAIMANT HYPHY MUSIC INC.'S MOTION FOR
SUMMARY JUDGMENT

non-exclusive licensee. However, a mere non-exclusive licensee does not have standing to sue for copyright infringement, and Yellowcake does not have standing to sue Hyphy.

Accordingly, this Claim for Relief for Copyright Infringement must be dismissed for lack of standing.

### B.    Yellowcake's First Claim For Copyright Infringement Fails Because Hyphy Is A Joint Owner In The Albums

Beyond its failure to acquire exclusive rights in the Albums from the entire Group, Yellowcake cannot sue Hyphy because *Hyphy itself* is also a co-owner in the Albums. As noted by the Court in its July 20, 2021 Order, co-authors cannot be liable to other co-authors for infringement. *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 522 (9th Cir. 1990); *Oddo v. Ries*, 743 F.3d 630, 632-33 (9th Cir. 1984). Here, Hyphy is a co-author of the Albums for two indisputable reasons.

*First*, Hyphy contributed more than a modicum of creativity to the creation of the Albums, as the Court itself previously recognized. The Ninth Circuit in *Abs Entm't v. CBS Corp.*, 908 F.3d 405, 410-11 (9th Cir. 2018) recently held that a music producer's work is a copyrightable contribution as follows:

> "The initial [producer's] role is often to work in collaboration with the performing artists to make many of the creative decision that define the overall sound of the recording…including such things as microphone choice, microphone placement, setting sound levels, equipment used, processing filters employed, tapes selected, session structure, and other similar decision analogous to the creative choices of photographers" can be original and copyrightable.

*Abs Entm't v. CBS Corp.*, 908 F.3d at 410-11 (internal citations omitted).

In this case, Hyphy provided the creative direction for each of the Albums, selected to the songs to be included in each, paid for the recording studio or venue

10

where each Album was recorded, hired the sound engineer who recorded all of the Albums, and even hired a guitarist to re-record portions of certain Albums.

As this Court pointed out in the sister case of *Yellowcake v. Morena Music, Inc.*, "in the absence of a contract, courts consider whether (1) a purported author superintends the work by exercising control; (2) the putative co-authors make objective manifestations of a shared intent to be co-authors; and (3) the audience appeal of the work turns on both contributions and the share of each in its success cannot be appraised. The first factor, control, will often be the most important consideration." *Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747, 763 (E.D. Cal. 2021).

Here, Hyphy not only made copyrightable contributions to the Albums, but was also the party who "superintended" the work. Not only did Hyphy superintend the work of the sound engineer who record the studio Albums, but, with respect to the live Albums, it was Hyphy that decided to re-record the original guitarist's contributions, oversaw those alterations to the sound recording, and paid all of the expenses in connection therewith. Chavez may have been the lead singer, but the genre of music that the Group performs makes the instrumentation of the recordings (rather than contributed vocals) a major factor in their appeal. *See*, UMF No. ¶ 48.

Hyphy was thus plainly a joint author, and a crucial one.

**Second**, even if Hyphy did not contribute enough creatively to the creation of some or all of the Albums, Hyphy became a co-owner when it acquired all of Flores and Vargas' respective interests in their creative contributions thereto. Because Flores and Vargas never conveyed any rights in their contributions to the Albums to Chavez or Yellowcake (and assuming the Court finds Hyphy's Agreement with the Group unenforceable because it is oral), Flores and Vargas have been in possession of their own rights this entire time. Therefore, such rights were available to be acquired, and have been acquired, by Hyphy via the Assignments.

///

DEFENDANT/COUNTERCLAIMANT HYPHY MUSIC INC.'S MOTION FOR SUMMARY JUDGMENT

***Third,*** even if Agreement is unenforceable *and* the Assignments are somehow disregarded, Hyphy still had, at a minimum, an oral and irrevocable non-exclusive license from the very outset of the parties' Agreement and at all relevant times thereafter to exploit the Albums. *See*, *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990). Neither Yellowcake nor Hernandez have ever been in any position to cancel the non-exclusive license to Hyphy. Flores and Vargas are not even parties to this case, and this Court is therefore in no position to rescind, negate or rule upon the legitimacy of the Assignments or the non-exclusive license(s), even if Yellowcake were to request intervention on such issue from the Court.

Because of Hyphy's original contributions, and its acquisition of rights from Flores and Vargas, Yellowcake cannot maintain a Copyright Infringement claim against Hyphy.

## C.  Yellowcake's First Claim For Copyright Infringement Fails Because Yellowcake Has No Provable Damages

Notwithstanding the foregoing deficiencies, Yellowcake also cannot maintain a Copyright Infringement Claim against Hyphy because Yellowcake is not entitled to recover any damages thereon. It is axiomatic that there can be no legal claim for relief in the absence of damages. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, Yellowcake is not entitled to any damages on either of its claims because Yellowcake (a) failed to disclose the basis for, or a computation of, any damage claim in its Initial Disclosures, or otherwise, (b) failed to produce any evidence in discovery of actual damages incurred as to Yellowcake; and (c) failed to timely obtain registered copyrights that would allow for statutory damages.

### 1.  Yellowcake's Fatal Failure to Provide a Damage Calculation

"Rule…26(a)(1)(A)(iii) requires the disclosure of 'a computation of each category of damages claimed by the disclosing party – who must also make available…the documents or other evidentiary material…on which each computation is based…,' regardless of whether the opposing party requests such

12

information." *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 821 (9th Cir. 2019). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008).

In accordance with Rule 37(c)(1), Ninth Circuit courts have forbidden plaintiffs who fail to make substantive disclosures under Rule 26(a)(1)(A)(iii) from offering a damage case at trial. For example, in *Ingenco*, 921 F.3d at 821, the Ninth Circuit upheld the exclusion of damages when a plaintiff's initial disclosures "were never supplemented" and "never disclosed any damages information related to statutory claims," even though the plaintiff's Rule 30(b)(6) designee arguably provided the information. In *Bastidas v. Good Samaritan Hosp.*, 2017 WL 1345604 (2017, N.D. Cal.), the Court even granted a motion to exclude damage calculations submitted after the discovery cut-off date regarding "financial losses that plaintiff claims to have suffered" because the plaintiff "failed to turn over each computation until the last minute."

Here, Yellowcake entirely failed to serve any Initial Disclosures, and the discovery cut-off date has come and gone. Yellowcake thus failed to identify its damages beyond the mere categories of damages set out in its Complaint. Yellowcake had an obligation under Rule 26 to quantify its damages, but never did, and therefore cannot present a case for actual damages at trial now.

Yellowcake has also never claimed in its Complaint that it is entitled to any damages besides alleged actual and punitive damages, and Yellowcake therefore should not be permitted to seek any other damages or relief. For example, Yellowcake may attempt to argue that it was somehow entitled to Hyphy's profits, as copyright claimants sometimes argue. Yellowcake, however, never sought this or any other types of damages in its Complaint or non-existent Initial Disclosures, and

DEFENDANT/COUNTERCLAIMANT HYPHY MUSIC INC.'S MOTION FOR SUMMARY JUDGMENT

Hyphy would be plainly prejudiced now if Yellowcake were allowed to seek damages on any theory of damages that it failed to allege or disclose.

2. <u>Yellowcake Is Not Entitled To Actual Damages</u>

Actual damages are calculated as "the extent to which the market value of [the] copyrighted work has been injured or destroyed by [the] infringement." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 512 (9th Cir. 1985) (setting forth the test for determining market value as "what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work.") Here, Yellowcake failed to submit any evidence, whether in discovery or by way of the opinion of any expert, as to what a willing buyer (other than Yellowcake itself, which, in determining its price, was motivated by a bad faith desire to abscond with Hyphy's rights in the Albums) would pay. *Frank Music Corp.*, 772 F.2d at 513 ("In a copyright action, a trial court is entitled to reject a proffered measure of damages if it is too speculative.") Thus, even if Yellowcake had disclosed how it intended to calculate damages, it is clear from Yellowcake's actions in discovery that no damages actually exist.

3. <u>Yellowcake Is Not Entitled To Statutory Damages</u>

It is undisputed that Hyphy has been exploiting each of the Albums since their respective publication between 2013 and 2017. Yellowcake, however, did not obtain copyright registrations in the Albums until March of 2020. To the extent the Asset Purchase Agreement did, therefore, constitute a lawful acquisition by Yellowcake of exclusive rights in the Albums on March 21, 2019, Hyphy's infringement occurred well ***after*** the Albums' initial publication between 2013 and 2017 and a year ***before*** Yellowcake's registration in 2020 of copyrights therein – unequivocally precluding any possibility that Yellowcake can obtain statutory damages. 17 U.S.C. § 412(2).

Accordingly, Yellowcake has no claim for actual or statutory damages upon which it can base its cause of action for Copyright Infringement, and Hyphy is,

14

therefore, entitled to summary judgment, or, in the alternative, summary adjudication of such claim.

**D.    Yellowcake's Second Claim For Injunctive Relief Fails Because Yellowcake's First Claim For Copyright Infringement Fails**

A court may grant injunctive relief in a copyright infringement action to prevent or restrain further infringement of a copyright. 17 U.S.C. § 502(a); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.2d 1146, 1158 (9th Cir. 2007). This remedy, however, is not available to Yellowcake because it is predicated on Yellowcake having a valid copyright infringement claim, and Yellowcake does not have such a claim because it does not have standing to sue Hyphy, as set forth in detail above. Since no genuine dispute exists regarding Yellowcake's lack of exclusive rights in the Albums, Yellowcake also cannot, therefore, maintain its Second Cause of Action for Injunctive Relief.

**VI.    SUMMARY ADJUDICATION IS PROPER AS FOR THE SECOND AND SIXTH COUNTERCLAIMS OF THE COUNTERCLAIM**

**A.    Summary Adjudication Is Proper As To Hyphy's Second Counterclaim For Copyright Infringement Because Yellowcake And Colonize Infringed Upon Hyphy's Album Artwork**

"To establish [Copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991) (citing *Harper & Row Publishers, Inc., v. Nation Enterprises*, (1985) 471 U.S. 539, 541). A copyright registration certificate is "prima facie evidence of the validity of the copyright and the facts stated in the certificate." 17 U.S.C. § 410(c); *United Fabrics Intern., Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011). Once infringement is established, "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the

---

15

DEFENDANT/COUNTERCLAIMANT HYPHY MUSIC INC.'S MOTION FOR SUMMARY JUDGMENT

infringement, and any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b).

Hyphy will address each of these elements *in seriatim*.

### 1. Ownership of the Artwork is Undisputed

Here, there is no genuine dispute concerning Hyphy's ownership of the Album Artwork, as evidenced by Hyphy's possession of Copyright registration certificates therefore. UMF No. ¶¶ 75, 116, 134. There is also no genuine dispute that Hyphy distributed the Albums with the Album Artwork during all times in which Hyphy believed it possessed the exclusive right to distribute the Albums. UMF No. ¶¶ 74, 115, 133. Additionally, and in spite of Counter-Defendants' intentional efforts to conceal the truth of their wrongdoing, there is no genuine dispute that Counter-Defendants engaged in the unauthorized distribution of their pirated versions of the Albums with such Album Artwork, as set forth below. UMF No. ¶¶ 150, 180.

### 2. Copying of the Artwork is Undisputed

Cross-Defendants may attempt to manufacture a "question of fact" regarding their willful copying of the Album Artwork, but any such argument disingenuously ignores the "smoking gun" evidence Hyphy has obtained in discovery in this case.

When first distributed by Hyphy, each Album was assigned a unique International Standard Recording Code ("*ISRC*") and Universal Product Code ("*UPC*"), as is standard when new sound recordings are first placed into the stream of distribution. UMF No. ¶¶ 144, 174. Because these unique codes – sometimes referred to as "digital social security numbers" for products – are used to track data regarding the distribution and exploitation of each respective Album, and the sound recordings thereon, such codes should not have ever been duplicated. UMF No. ¶¶ 146, 176. Therefore, Yellowcake should have requested that Hyphy transfer the Albums and their assigned ISRCs and UPCs to Yellowcake, in the event Yellowcake actually acquired the Albums lawfully. UMF No. ¶¶ 148, 178.

DEFENDANT/COUNTERCLAIMANT HYPHY MUSIC INC.'S MOTION FOR SUMMARY JUDGMENT

Following its purported "acquisition" of the Albums, however, Yellowcake ignored such established industry norms governing how the Albums should have been transferred, and instead simply re-released unauthorized duplicate (i.e., pirated) versions **with the Album Artwork**, and with newly assigned ISRCs and UPCs. UMF No. ¶¶ 149, 179. In so doing, however, Yellowcake inadvertently created a means of confirming Yellowcake's infringing distribution of **their** versions of the Albums **with** Hyphy's Album Artwork. UMF No. ¶¶ 150, 180. Although Counter-Defendants later attempted to scrub the internet of their initial, infringing distribution of the Albums, Hyphy obtained proof thereof in discovery, via one of the DSPs located at <daddykoolrecords.com> (the "**Website**"), as set forth below.

Regarding "Corridos de Poca M", Hyphy's originally assigned UPC is 88917663055. UMF No. ¶ 151, 181. Yellowcake's later-acquired UPC is 758381471406. *Id*. Below is a screenshot evidencing *Yellowcake's* distribution of the Album (confirmed by the Website's display of Yellowcake's later-acquired UPC (under "Details")) **with Hyphy's Album Artwork** (confirmed by both Hyphy's copyright registration materials for this particular Album Artwork and the watermark showing Hyphy's name displayed thereon):



DEFENDANT/COUNTERCLAIMANT HYPHY MUSIC INC.'S MOTION FOR SUMMARY JUDGMENT

Regarding "El Campesino", Hyphy's originally assigned UPC is 190374798310. UMF No. ¶¶ 152, 182. Yellowcake's later-acquired UPC is 758381471420. *Id*. Below is a screenshot evidencing *Yellowcake's* distribution of this Album (confirmed by the Website's display of Yellowcake's later-acquired UPC (under "Details")) **with Hyphy's Album Artwork** (confirmed by Hyphy's copyright registration materials for this particular Album Artwork):



Regarding "Desde La Cantina De Mi Barrio", Hyphy's originally assigned UPC is 191018998417. UMF No. ¶¶ 153, 183. Yellowcake's later-acquired UPC is 758381471413. *Id*. Below is a screenshot evidencing *Yellowcake's* distribution of this Album (confirmed by the Website's display of Yellowcake's later-acquired UPC Code (under "Details")) **with Hyphy's Album Artwork** (confirmed by both Hyphy's copyright registration materials for this particular Album Artwork and the watermark showing Hyphy's name displayed thereon):

///

///

DEFENDANT/COUNTERCLAIMANT HYPHY MUSIC INC.'S MOTION FOR SUMMARY JUDGMENT

1



11

12    The evidence above therefore eliminates any "question of fact" as to Cross-
13    Defendants' unlawful distribution of the Album Artwork in connection with their
14    distribution of the Albums. The Albums could only have distributed with the Album
15    Artwork through the Website **by Counter-Defendants** because the Website shows
16    Counter-Defendants "digital social security" number associated with such
17    distribution, rather than Hyphy's. Put simply, Hyphy's evidence of actual
18    infringement has Counter-Defendants' (digital) "fingerprints" all over it.

19            3.    Counter-Defendants' Infringement was Willful

20    Not only is Counter-Defendants' infringement of Hyphy's rights in the
21    Album Artwork without question, there is also no genuine dispute that Counter-
22    Defendants have done so knowingly and intentionally. "[T]o prove 'willfulness'
23    under the Copyright Act, the plaintiff must show (1) that the defendant was actually
24    aware of the infringing activity, or (2) that the defendant's actions were the result of
25    'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights."
26    _Wash. Shoe Co. v. A-Z Sporting Goods, Inc._, 704 F.3d 668, 674 (9th Cir. 2012).
27    Here, Counter-Defendants' knowing concealment of their initial distribution of the

28

Albums with Hyphy's Album Artwork definitively establishes that Counter-Defendants were actually aware of their infringing activity.

Counter-Defendants first concealed their distribution of the Albums with Hyphy's Album Artwork by re-releasing such Albums with new ISRCs and UPCs – thereby giving Hyphy no mechanism for discovering that the Albums, as distributed by Hyphy with existing ISRCs and UPCs, were also being distributed by Counter-Defendants. Then, Counter-Defendants concealed their infringement by uploading new Album cover art and attempting (unsuccessfully) to scrub the internet of all proof of their initial distribution of the Albums with the Album Artwork. Finally, and before Counter-Defendants knew that Hyphy had discovered proof of their infringement, Hernandez lied under oath during his deposition by claiming that Yellowcake and Colonize would never distribute the Albums with Hyphy's Album Artwork (even though they had). UMF No. ¶¶ 154, 184.

Hyphy anticipates that Counter-Defendants will attempt to avoid liability by claiming that only Colonize distributed the Albums, and, therefore, Yellowcake cannot also be liable. However, there is also no genuine dispute that Yellowcake and Colonize operated – and continue to operate – as one single economic entity, with common ownership, common business operations, common office space, common staff, and many other common resources. UMF No. ¶¶ 15, 43, 78, 119, 137, 167. Furthermore, Yellowcake ability to avoid liability now could create a significant injustice to Hyphy by affording Hyphy no recourse for such parties' knowing and intentional infringement of Hyphy's rights in the Album Artwork.

Accordingly, there is no genuine dispute that Counter-Defendants willfully distributed the Los Originales Albums with Hyphy's Album Artwork.

///

///

///

///

DEFENDANT/COUNTERCLAIMANT HYPHY MUSIC INC.'S MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.    Summary Adjudication Is Proper As To Hyphy's Sixth Counterclaim For Unfair Competition Because Hyphy Has Established That Yellowcake And Colonize Engaged In Copyright Infringement**

A plaintiff or counterclaimant may allege a violation of California Business and Professions Code § 17200, *et seq.* predicated on the violation of any state or federal law. Here, Hyphy has established copyright infringement on the part of Yellowcake and Colonize, as set forth in detail above. Accordingly, Counter-Defendants are liable under Hyphy's Sixth Cause of Action for Unfair Competition.

**VII.    CONCLUSION**

Based on the foregoing, Hyphy respectfully requests that summary judgment be granted as to every Cause of Action in Yellowcake's Complaint, and as to Hyphy's Second Cause of Action in its Counterclaims.

DATED:  May 19, 2023                    **ALTVIEW LAW GROUP, LLP**

By: _____
    JOHN M. BEGAKIS
    *Attorneys for Defendant/Counterclaimant*
    HYPHY MUSIC, INC., a California
    corporation

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing electronically filed document has been served via a "Notice of Electronic Filing" automatically generated by the CM/ECF System and sent by e-mail to all attorneys in the case who are registered as CM/ECF users and have consented to electronic service pursuant to L.R. 5-3.3.

Dated: May 19, 2023                    By:   /s/ John Begakis
                                              John M. Begakis