**ALTVIEW LAW GROUP, LLP**
JOHN M. BEGAKIS (SBN 278681)
john@altviewlawgroup.com
12100 Wilshire Blvd., Suite 800
Los Angeles, California 90025
Telephone: (310) 230-5580
Facsimile: (562) 275-8954

**SHERMAN LAW GROUP, LLP**
RICHARD LLOYD SHERMAN (SBN 106597)
richard@shermanlawgroup.com
9454 Wilshire Blvd., Suite 850
Beverly Hills, California 90212
Telephone: (310) 246-0321
Facsimile: (310) 246-0305

*Attorneys for Defendant/Counterclaimant* HYPHY MUSIC, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELLOWCAKE, INC., California corporation,<br><br>Plaintiff,<br><br>v.<br><br>HYPHY MUSIC, INC.,<br><br>Defendant. | **Case No.: 1:20-cv-00988-AWI-BAM**<br><br>[Assigned to the Hon. Jennifer L. Thurston]<br><br>**DECLARATIO OF JOSE MARTINEZ IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |
| HYPHY MUSIC, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>YELLOWCAKE, INC.; COLONIZE MEDIA, INC; JOSE DAVID HERNANDEZ; and JESUS CHAVEZ SR,<br><br>Counter-Defendants. | Date:  June 27, 2023<br>Time: 9:00 a.m.<br>Dept.: Courtroom 4 (7th Floor)<br>        2500 Tulare Street<br>        Fresno, CA 93721<br>Judge: Hon. Jennifer L. Thurston |

DECLARATION OF JOSE MARTINEZ

## DECLARATION OF JOSE MARTINEZ

I, Jose Martinez, declare and state as follows:

1.      I am an individual currently residing in Fresno, California, and am over 18 years of age. I am the owner and Chief Executive Officer of Defendant/Counterclaimant HYPHY MUSIC, INC., a California corporation ("Hyphy") in this action. I know all of the following facts of my own personal knowledge and, if called upon and sworn as a witness, could and would competently testify thereto.

2.      Hyphy is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings, coupled with artwork.

3.      In or about February 2013, Hyphy and the musical group Los Originales De San Juan ("the *Group*") began working together to co-create various sound recordings to be embodied on multiple albums, which they orally agreed were to be owned by Hyphy (the "*Agreement*"). The Group, which was comprised of Chavez, as the lead singer, Domingo Torres Flores, as the accordion player ("*Flores*"), and Alfonso Vargas, as the drummer ("*Vargas*"), performs a style of accordion music originating from Northern Mexico, and is popular with listeners primarily because of the accordion music contained within the songs the Group performs and records. It should also be noted that Counter-Defendant JOSE DAVID HERNANDEZ ("*Hernandez*"), a party to this action who also co-owns and controls Plaintiff/Cross-Defendant YELLOWCAKE, INC. ("*Yellowcake*") and Counter-Defendant COLONIZE MEDIA, INC. ("*Colonize*"), is someone who also used to work with Hyphy. As such, Hernandez obtained valuable information about Hyphy throughout the course of his work with Hyphy – including the knowledge that Hyphy's Agreement with the Group was oral.

4.      The albums created pursuant to the Agreement are entitled (1) "Amigos y Contrarios"; (2) "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La

Cantina de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the ***Los Originales Albums***" or "***Albums***"). One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded by Chavez.

5.    Though the Agreement was not initially memorialized in writing, Flores and Vargas executed Copyright Assignment Agreements on or about March 22, 2022 (collectively, the "***Assignments***"), which reflected their respective understandings of the Agreement's existence, and their respective original intent to convey all rights in and to their recording services rendered pursuant to the Agreement to Hyphy. Attached hereto as Exhibit "A" and incorporated herein by this reference are true and correct copies of the Assignments.

6.    Unlike the types of large, corporate record labels that most people think of when they think of a "record label," Hyphy closely collaborated with the Group to create the Albums. For the first three (of five) Albums, which were recorded in studio, Hyphy's close collaboration with the Group included, without limitation: (a) helping determine the "theme" and overall creative direction of each such Album; (b) selecting the songs to be included in each such Album; (c) selecting the recording studio, and paying for all costs associated with the recording of each such Album; (d) hiring the sound engineer; (e) paying the Group a substantial amount to record the Albums; and (f) overseeing and generally supervising the recording and production of each Album. For the final two (of five) Albums, which are each comprised of recordings from a previous live performance by the Group, Hyphy's close collaboration with the Group included, without limitation: (a) selecting and paying for the venue where the live performance occurred; (b) selecting the songs to be performed at the live performance; (c) directly employing, supervising and directing the services of the sound engineer and videographer who each recorded the audio and video of the live performance, respectively; (d) writing the script for the history of the Group as part of the Group's live performance, and hiring a

"MC"/commentator to narrate the script; and (e) re-recording whole portions of the guitarist's contributions to the live performance afterwards, using a new guitarist selected, hired and paid for by Hyphy.

7.     In addition to Hyphy's original contributions to the production, recording and overall creation of the Los Originales Albums, Hyphy also designed and created artwork featured on the cover of each Album (the "*Album Artwork*").

8.     Hyphy released the Albums, with the Album Artwork, for distribution through all available digital service providers (the "*DSPs*") upon each Album's creation, between 2013 and 2017. When each of such Albums were released, they were each assigned unique International Standard Recording Codes ("*ISRCs*") and Universal Product Codes ("*UPCs*"). Attached hereto as Exhibit "B" and incorporated herein by this reference are true and correct copies of screenshots evidencing the UPCs associated with each of the Albums as distributed by Hyphy.

9.     In or about May of 2020, Hyphy obtained copyright registrations for all of the Album Artwork. True and correct copies of the copyright registrations for all of such Album Artwork are attached hereto as Exhibit "C" and incorporated herein by this reference.

10.     Hyphy was never, at any point during all times alleged, made aware by Yellowcake or anyone else that Yellowcake had apparently entered into an "Asset Purchase and Assignment Agreement" with Chavez on or about March 21, 2019 (the "*Asset Purchase Agreement*"), which purportedly granted Yellowcake rights in the Albums. I and everyone else at Hyphy had a healthy, working relationship with the Group, and Hyphy was making significant efforts to revive the Group's popularity, including by investing in radio and social media advertising campaigns promoting the Group, and by providing the Group with all of the financial support the Group needed to produce albums. As such, no one in the Group ever told anyone for Hyphy that they were unhappy with their arrangement with Hyphy, wanted to terminate such arrangement, or believed that anyone other than Hyphy actually

DECLARATION OF JOSE MARTINEZ

possessed the rights in the Albums Hyphy possesses. In fact, at the time of apparent execution of the Asset Purchase Agreement, the Group had just posed for pictures to be incorporated into the Album Artwork of a new album to be released.

11.    If Chavez did indeed have the ability to assign rights in the Albums to any other record label, Hyphy would have expected such record label to reach out to Hyphy to coordinate the transfer of the sound recording files, and the unique ISRCs and UPCs assigned to each Album upon initial release by Hyphy. Instead, Hyphy simply discovered in or about April of 2019 that Yellowcake was distributing versions of the Albums with Hyphy's Album Artwork.

12.    When this Complaint was first initiated by Yellowcake, various DSPs showed that Yellowcake's versions of the Albums were being distributed with Hyphy's Album Artwork. I know because I saw such instances of unauthorized use myself. However, almost all of those instances of unauthorized use of Hyphy's Album Artwork quickly disappeared from the internet. Therefore, it took me a long time to find evidence of infringement online. Fortunately, I did eventually find proof, via one of the DSP located at <daddykoolrecords.com> (the "***Website***"). Attached hereto as Exhibit "D" and incorporated herein by this reference, are true and correct copies of screenshots from the Website, showing "Corridos de Poca M," "El Campesino" and "Desde La Cantina De Mi Barrio" being distributed by Yellowcake (as verified by the non-Hyphy UPC referenced under the "Details" of each such distribution) with Hyphy's Album Artwork.

13.    Accordingly, Hyphy brought Counterclaims against Yellowcake, Colonize and Hernandez, including a Second Counterclaim for Copyright Infringement of the Album Artwork and a Sixth Counterclaim for Unfair Competition.

14.    If Yellowcake and Hernandez are able to avoid liability with respect to Hyphy's Second Counterclaim for Copyright Infringement simply because Colonize was, technically speaking, the only part that actually distributed the Albums with

Hyphy's Album Artwork, Hyphy will suffer significant injustice by not having sufficient recourse against all relevant parties in response to such wrongdoing.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed on May 19, 2023, at Fresno, California.


JOSE MARTINEZ

DECLARATION OF JOSE MARTINEZ

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing electronically filed document has been served via a "Notice of Electronic Filing" automatically generated by the CM/ECF System and sent by e-mail to all attorneys in the case who are registered as CM/ECF users and have consented to electronic service pursuant to L.R. 5-3.3.

Dated: May 19, 2023                    By:   /s/ John Begakis
                                             John M. Begakis

CERTIFICATE OF SERVICE