1  **ALTVIEW LAW GROUP, LLP**
   JOHN M. BEGAKIS (SBN 278681)
2  john@altviewlawgroup.com
   12100 Wilshire Blvd., Suite 800
3  Los Angeles, California 90025
   Telephone: (310) 230-5580
4  Facsimile: (562) 275-8954

5  **SHERMAN LAW GROUP, LLP**
   RICHARD LLOYD SHERMAN (SBN 106597)
6  richard@shermanlawgroup.com
   9454 Wilshire Blvd., Suite 850
7  Beverly Hills, California 90212
   Telephone: (310) 246-0321
8  Facsimile: (562) 246-0305

9
   *Attorneys for Defendant/Counterclaimant* HYPHY MUSIC, INC.
10

11             UNITED STATES DISTRICT COURT

12            EASTERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  YELLOWCAKE, INC., California corporation, | **Case No.: 1:20-cv-00988-AWI-BAM** |
| 15                          Plaintiff, | [Assigned to the Hon. Jennifer L. Thurston] |
| 16              v. | **SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT'S MOTION FOR SUMMARY JUDGMENT** |
| 17  HYPHY MUSIC, INC., | |
| 18                          Defendant. | |
| 19 | |
| 20  HYPHY MUSIC, INC., | Date:  June 27, 2023 |
|    | Time: 9:00 a.m. |
| 21                          Counterclaimant, | Dept.: Courtroom 4 (7th Floor) |
|    |           2500 Tulare Street |
| 22              v. |           Fresno, CA 93721 |
|    | Judge: Hon. Jennifer L. Thurston |
| 23  YELLOWCAKE, INC.; COLONIZE MEDIA, INC; JOSE DAVID HERNANDEZ; and JESUS CHAVEZ SR, | |
| 24 | |
| 25 | |
| 26                          Counter-Defendants. | |
| 27 | |
| 28 | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

Defendant/Counterclaimant HYPHY MUSIC INC. ("*Hyphy*") hereby submits the following Separate Statement of Undisputed Facts together with references to supporting evidence, pursuant to Federal Rules of Civil Procedure ("*FRCP*") and Local Rule 260 of the Eastern District of California in support of its Motion for Summary Judgment, or, in the alternative, summary adjudication (the "*Motion*") (a) as to the Complaint filed by Plaintiff YELLOWCAKE, INC. ("*Yellowcake*") against Hyphy, in its entirety, and (b) in Hyphy's favor as to its Second and Sixth Claims for Relief set forth in its Amended Counterclaim filed against Counter-Defendants Yellowcake, JOSE DAVID HERNANDEZ ("*Hernandez*"), and COLONIZE MEDIA, INC. ("*Colonize*") (collectively "*Cross-Defendants*").

**I.      THE COMPLAINT MUST BE DISMISSED**

**A.      Yellowcake's First Claim For Copyright Infringement Fails Because Yellowcake Does Not Have Standing to Sue Hyphy**

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
| --- | --- |
| 1.  Defendant/Counterclaimant HYPHY MUSIC, INC. ("*Hyphy*") is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings, coupled with artwork. <br><br> Declaration of John Begakis ("*Begakis Decl.*") at ¶ 8, Exhibit "G" thereto, Jose Martinez Deposition Transcript ("*Martinez Depo*") at 13:6-14:6. | |
| 2.  Counter-Defendant JESUS CHAVEZ, SR ("*Chavez*") is the lead singer of the Spanish-language musical group Los Originales De San Juan (the "*Group*"). | |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Begakis Decl. at ¶ 13, Exhibit "L" thereto, Jesus Chavez, Sr. Deposition, Volume I ("***Chavez Depo I***") at 25:13-14; Begakis Decl. at ¶ 14, Exhibit "M" thereto, Jesus Chavez, Sr. Deposition, Volume II ("***Chavez Depo II***") at 16:22-17:5. | |
| 3.    The Group operates as a co-equal partnership comprised of Chavez and fellow band members Domingo Torres Flores ("***Flores***"), who plays the accordion, and Alfonso Vargas ("***Vargas***"), who plays the drums.<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:16-19:3, 20:8-16, 21:16-19; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Deposition Transcript of Alfonso Vargas ("***Vargas Depo***") at 17:16-19, 27:17-22, 143:14-16; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Deposition Transcript of Domingo Torres Flores ("***Flores Depo***") at 47:15-25, 48:19-23. | |
| 4.    In or about February 2013, Hyphy and the Group began working together to co-create various sound recordings to be embodied on multiple albums, which they orally agreed were to be owned by Hyphy (the "***Agreement***").<br><br>Declaration of Jose Martinez ("***Martinez Decl.***") at ¶ 3; Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 34:7-11; Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 19:14-17, 32:16-20, 35:12-21. | |

3

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 5.  The albums created pursuant to the Agreement were entitled (1) "Amigos y Contrarios"; (2) "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La Cantina de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the "*Los Originales Albums*" or "*Albums*").<br><br>Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23, 51:22-25. | |
| 6.  One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded by Chavez.<br><br>Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:24:-9, 154:11-155:25. | |
| 7.  Though this Agreement was not initially memorialized in writing, Flores and Vargas understood that such Agreement existed.<br><br>Martinez Decl. at ¶ 5. Declaration of Domingo Torres Flores ("*Flores Decl.*") at ¶ 3; Declaration of Alfonso Vargas ("*Vargas Decl.*") at ¶ 3. | |
| 8.  Flores and Vargas, as co-equal members of the Group, also intended that all rights in and to their recording services rendered pursuant to the Agreement be conveyed Hyphy. | |

4

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Martinez Decl. at ¶ 4. Flores Decl. at ¶¶ 3-5; Vargas Decl. at ¶¶ 3-5. | |
| 9.  Flores and Vargas also later confirmed their belief and intent to convey all rights to Hyphy by executing enforceable Copyright Assignment Agreements on or about March 22, 2022 (collectively, the "***Assignments***"). | |
| Martinez Decl. at ¶ 5, Exhibit "A" thereto. | |
| 10. It should be noted here that Flores and Vargas were plainly joint authors of the Albums, including based on the fact that Flores and Vargas were equally involved in all activities of the Band, which existed as an unincorporated partnership in which all Band members were joint owners, participants and contributors. | |
| Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:23-19:3; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | |
| 11. It should be noted here that Flores and Vargas were plainly joint authors of the Albums, including based on the fact that Flores and Vargas were equally credited on all | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Albums in which each of them made contributions. _See_ Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | |
| 12. It should be noted here that Flores and Vargas were plainly joint authors of the Albums, including based on the fact that Flores and Vargas shared equally in all profits of the Band, and were granted equal access to inspect all records related to the Band's receipt of all such profits. Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 20:20-21:16, 26:13-20, 31:8-16, 33:18-34:1, 38:8-18, 41:13-42:2; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | |
| 13. Yellowcake is a competing record label and distributor of sound recordings, utilizing Colonize as its "distribution arm" to release and exploit rights that Yellowcake acquires. | |

6

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Begakis Decl. at ¶ 9, Exhibit "H" thereto, Deposition Transcript of Kevin Berger ("**Berger Depo**") at 91:19-23; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Deposition Transcript of Jose David Hernandez, Volume I ("**Hernandez Depo I**") at 77:19-21. | |
| 14. Hernandez is a co-owner of both Yellowcake and Colonize.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 51:9-11, 116:18-117:14. | |
| 15. In his position as co-owner of both Yellowcake and Colonize, Hernandez has admitted that both entities have operated – and continue to operate – as one single economic entity, with common ownership, common business operations, common office space, common staff, and many other common resources.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 80:3-20. | |
| 16. In or about March 2019, Hernandez approached Chavez about selling the Los Originales Albums to Yellowcake.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 148:24-149:5. | |
| 17. Hernandez had previously worked with Hyphy and had secretly gained | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| valuable information on Hyphy's business and relationship with Chavez. Hernandez therefor knew that Hyphy only had an oral agreement with the Group.<br><br>Martinez Decl. at ¶ 3; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 26:2-12. | |
| 18. Hernandez approached and convinced Chavez, without Hyphy or the rest of the Group's knowledge, to assign the Albums to Yellowcake in exchange for payment of $500,000.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 80:5-13, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 107:4-20. | |
| 19. Chavez and Yellowcake codified their purported agreement via an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019 (the "***Asset Purchase Agreement***").<br><br>Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF000021-PLF000039). | |
| 20. In Section 13.e. of the Asset Purchase Agreement, Chavez represented and warranted to Yellowcake that Chavez was "the only owner of" the Albums, and possessed "good and marketable | |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| title" thereto at the time of sale.<br><br>Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF00024). | |
| 21. Chavez, however, never obtained signed written agreements from Flores, Vargas or Hyphy acquiring each party's respective contributions to, and rights in, the Albums and sound recordings embodied thereon.<br><br>Begakis Decl. at ¶ 6, Exhibit "E" thereto, Yellowcake Interrogatory Responses at pp. 4-5; Begakis Decl. at ¶ 7, Exhibit "F" thereto, Yellowcake Responses to Request for Production at p. 4. | |

**B.    Yellowcake's First Claim for Copyright Infringement Fails Because Hyphy Is A Joint Owner In The Albums**

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 22. Defendant/Counterclaimant HYPHY MUSIC, INC. ("*Hyphy*") is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings, coupled with artwork.<br><br>Declaration of John Begakis ("*Begakis* | |

9
SEPARATE STATEMENT OF UNDISPUTED FACTS

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| ***Decl.***") at ¶ 8, Exhibit "G" thereto, Jose Martinez Deposition Transcript ("***Martinez Depo***") at 13:6-14:6. | |
| 23.  Counter-Defendant JESUS CHAVEZ, SR ("***Chavez***") is the lead singer of the Spanish-language musical group Los Originales De San Juan (the "***Group***"). <br><br> Begakis Decl. at ¶ 13, Exhibit "L" thereto, Jesus Chavez, Sr. Deposition, Volume I ("***Chavez Depo I***") at 25:13-14; Begakis Decl. at ¶ 14, Exhibit "M" thereto, Jesus Chavez, Sr. Deposition, Volume II ("***Chavez Depo II***") at 16:22-17:5. | |
| 24.  The Group operates as a co-equal partnership comprised of Chavez and fellow band members Domingo Torres Flores ("***Flores***"), who plays the accordion, and Alfonso Vargas ("***Vargas***"), who plays the drums. <br><br> Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:16-19:3, 20:8-16, 21:16-19; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Deposition Transcript of Alfonso Vargas ("***Vargas Depo***") at 17:16-19; 27:17-22; 143:14-16; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Deposition Transcript of Domingo Torres Flores ("***Flores Depo***") at 47:15-25, 48:19-23. | |
| 25.  In or about February 2013, Hyphy and the Group began working together to co-create various sound recordings to be embodied on multiple albums, which they orally | |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| agreed were to be owned by Hyphy (the "**Agreement**").<br><br>Declaration of Jose Martinez ("**Martinez Decl.**") at ¶ 3; Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 34:7-11; Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 19:14-17, 32:16-20, 35:12-21. | |
| 26. The albums created pursuant to the Agreement were entitled (1) "Amigos y Contrarios"; (2) "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La Cantina de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the "**Los Originales Albums**" or "**Albums**").<br><br>Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23, 51:22-25. | |
| 27. One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded by Chavez.<br><br>Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:24:-9, 154:11-155:25. | |
| 28. Unlike larger record labels, however, Hyphy closely collaborated with the Group to create the Albums. | |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-76:25, 83:11-84:22, 84:24-85:8, 85:14-86:16. | |
| 29. For the first three (of five) of the Los Originales Albums, Hyphy helped determine the "theme" and overall creative direction of each Album.<br><br>Martinez Decl. at ¶ 6. | |
| 30. For the first three (of five) of the Los Originales Albums, Hyphy selected the songs to be included in each Album.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 83:11-84:22. | |
| 31. For the first three (of five) of the Los Originales Albums, Hyphy selected the recording studio, and paid for all costs associated with the recording of each Album.<br><br>Martinez Decl. at ¶ 6. | |
| 32. For the first three (of five) of the Los Originales Albums, Hyphy hired the sound engineer.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 59:21-60:7, 61:10-16. | |
| 33. For the first three (of five) of the Los Originales Albums, Hyphy paid the Group a substantial amount for recording the Albums. | |

12
SEPARATE STATEMENT OF UNDISPUTED FACTS

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| Martinez Decl. at ¶ 6. | |
| 34. And for the first three (of five) of the Los Originales Albums, Hyphy oversaw and generally supervised the recording and production of each Album.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 85:14-86:16. | |
| 35. For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also selected and paid for the venue of the live performance.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | |
| 36. For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also selected the songs to be performed at the live performance and recorded for the Albums.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | |
| 37. For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also directly employed, supervised, and directed the services of the sound engineer and videographer who each | |

13
SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| recorded the audio and video of the live performance, respectively.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | |
| 38. For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also wrote a script for the history of the band as presented at the live performance, and hired a "MC"/commentator who narrated the script.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | |
| 39. For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also re-recorded whole portions of the guitarist's contributions to the live performance afterwards, using a new guitarist selected, hired and paid for by Hyphy.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | |
| 40. In addition to its original creative contributions to the production, recording and overall creation of the Los Originales Albums, Hyphy also designed and created the artwork featured on the cover of each Album (the "**Album Artwork**"). | |

14
SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Martinez Decl. at ¶ 7; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 127:12-21. | |
| 41. Yellowcake is a competing record label and distributor of sound recordings, utilizing Colonize as its "distribution arm" to release and exploit rights that Yellowcake acquires.<br><br>Begakis Decl. at ¶ 9, Exhibit "H" thereto, Deposition Transcript of Kevin Berger ("**Berger Depo**") at 91:19-23; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Deposition Transcript of Jose David Hernandez, Volume I ("**Hernandez Depo I**") at 77:19-21. | |
| 42. Hernandez is a co-owner of both Yellowcake and Colonize.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 51:9-11, 116:18-117:14. | |
| 43. In his position as co-owner of both Yellowcake and Colonize, Hernandez has admitted that both entities have operated – and continue to operate – as one single economic entity, with common ownership, common business operations, common office space, common staff, and many other common resources.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 80:3-20. | |
| 44. In or about March 2019, Hernandez | |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| approached Chavez about selling the Los Originales Albums to Yellowcake.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 148:24-149:5. | |
| 45. Hernandez had previously worked with Hyphy and had secretly gained valuable information on Hyphy's business and relationship with Chavez. Hernandez therefor knew that Hyphy only had an oral agreement with the Group.<br><br>Martinez Decl. at ¶ 3; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 26:2-12. | |
| 46. Hernandez approached and convinced Chavez, without Hyphy or the rest of the Group's knowledge, to assign the Albums to Yellowcake in exchange for payment of $500,000.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 80:5-13, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 107:4-20. | |
| 47. Chavez and Yellowcake codified their purported agreement via an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019 (the "***Asset Purchase Agreement***"). | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF000021-PLF000039). | |
| 48. Chavez may have been the lead singer, but the instrumentation of the recordings is a major factor in their appeal, as Hyphy has confirmed.<br><br>Martinez Decl. at ¶ 3; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo. at 111:24-112:3. | |

## C.    Yellowcake's First Claim For Copyright Infringement Fails Because Yellowcake Has No Provable Damages

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 49. Defendant/Counterclaimant HYPHY MUSIC, INC. ("**Hyphy**") is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings, coupled with artwork.<br><br>Declaration of John Begakis ("**Begakis Decl.**") at ¶ 8, Exhibit "G" thereto, Jose Martinez Deposition Transcript ("**Martinez Depo**") at 13:6-14:6. | |
| 50. Counter-Defendant JESUS CHAVEZ, SR ("**Chavez**") is the lead singer of the Spanish-language | |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| musical group Los Originales De San Juan (the "***Group***").<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Jesus Chavez, Sr. Deposition, Volume I ("***Chavez Depo I***") at 25:13-14; Begakis Decl. at ¶ 14, Exhibit "M" thereto, Jesus Chavez, Sr. Deposition, Volume II ("***Chavez Depo II***") at 16:22-17:5. | |
| 51. The Group operates as a co-equal partnership comprised of Chavez and fellow band members Domingo Torres Flores ("***Flores***"), who plays the accordion, and Alfonso Vargas ("***Vargas***"), who plays the drums.<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:16-19:3, 20:8-16, 21:16-19; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Deposition Transcript of Alfonso Vargas ("***Vargas Depo***") at 17:16-19; 27:17-22; 143:14-16; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Deposition Transcript of Domingo Torres Flores ("***Flores Depo***") at 47:15-25, 48:19-23. | |
| 52. In or about February 2013, Hyphy and the Group began working together to co-create various sound recordings to be embodied on multiple albums, which they orally agreed were to be owned by Hyphy (the "***Agreement***").<br><br>Declaration of Jose Martinez ("***Martinez Decl.***") at ¶ 3; Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at | |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 34:7-11; Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 19:14-17, 32:16-20, 35:12-21. | |
| 53. The albums created pursuant to the Agreement were entitled (1) "Amigos y Contrarios"; (2) "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La Cantina de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the "*Los Originales Albums*" or "*Albums*"). <br><br> Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23, 51:22-25. | |
| 54. One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded by Chavez. <br><br> Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:24:-9, 154:11-155:25. | |
| 55. Though this Agreement was not initially memorialized in writing, Flores and Vargas understood that such Agreement existed. <br><br> Martinez Decl. at ¶ 5. Declaration of Domingo Torres Flores ("*Flores Decl.*") at ¶ 3; Declaration of Alfonso Vargas ("*Vargas Decl.*") at ¶ 3. | |
| 56. Flores and Vargas, as co-equal members of the Group, also intended that all rights in and to their | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| recording services rendered pursuant to the Agreement be conveyed Hyphy.<br><br>Martinez Decl. at ¶ 4. Flores Decl. at ¶¶ 3-5; Vargas Decl. at ¶¶ 3-5. | |
| 57. Flores and Vargas also later confirmed their belief and intent to convey all rights to Hyphy by executing enforceable Copyright Assignment Agreements on or about March 22, 2022 (collectively, the "**Assignments**").<br><br>Martinez Decl. at ¶ 5, Exhibit "A" thereto. | |
| 58. Unlike larger record labels, however, Hyphy closely collaborated with the Group to create the Albums.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-76:25, 83:11-84:22, 84:24-85:8, 85:14-86:16. | |
| 59. For the first three (of five) of the Los Originales Albums, Hyphy helped determine the "theme" and overall creative direction of each Album.<br><br>Martinez Decl. at ¶ 6. | |
| 60. For the first three (of five) of the Los Originales Albums, Hyphy selected the songs to be included in each Album.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo | |

20
SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| at 83:11-84:22. | |
| 61. For the first three (of five) of the Los Originales Albums, Hyphy selected the recording studio, and paid for all costs associated with the recording of each Album.<br><br>Martinez Decl. at ¶ 6. | |
| 62. For the first three (of five) of the Los Originales Albums, Hyphy hired the sound engineer.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 59:21-60:7, 61:10-16. | |
| 63. For the first three (of five) of the Los Originales Albums, Hyphy paid the Group a substantial amount for recording the Albums.<br><br>Martinez Decl. at ¶ 6. | |
| 64. And for the first three (of five) of the Los Originales Albums, Hyphy oversaw and generally supervised the recording and production of each Album.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 85:14-86:16. | |
| 65. For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also selected and paid for the venue of the live performance.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at | |

21

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | |
| 66.  For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also selected the songs to be performed at the live performance and recorded for the Albums.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | |
| 67. For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also directly employed, supervised, and directed the services of the sound engineer and videographer who each recorded the audio and video of the live performance, respectively.<br><br> Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | |
| 68. For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also wrote a script for the history of the band as presented at the live performance, and hired a "MC"/commentator who narrated the script.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | |

22

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 69. For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also re-recorded whole portions of the guitarist's contributions to the live performance afterwards, using a new guitarist selected, hired and paid for by Hyphy.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | |
| 70. It should be noted here that Flores and Vargas were plainly joint authors of the Albums, including based on the fact that Flores and Vargas were equally involved in all activities of the Band, which existed as an unincorporated partnership in which all Band members were joint owners, participants and contributors.<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:23-19:3; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | |
| 71. It should be noted here that Flores and Vargas were plainly joint authors of the Albums, including based on the fact that Flores and Vargas were equally credited on all | |

| | **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|---|
| | Albums in which each of them made contributions. | |
| | *See* Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | |
| | 72. It should be noted here that Flores and Vargas were plainly joint authors of the Albums, including based on the fact that Flores and Vargas shared equally in all profits of the Band, and were granted equal access to inspect all records related to the Band's receipt of all such profits. | |
| | Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 20:20-21:16, 26:13-20, 31:8-16, 33:18-34:1, 38:8-18, 41:13-42:2; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | |
| | 73. In addition to its original creative contributions to the production, recording and overall creation of the Los Originales Albums, Hyphy also designed and created the artwork featured on the cover of each Album (the "***Album Artwork***"). | |

24

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Martinez Decl. at ¶ 7; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 127:12-21. | |
| 74. Hyphy released the Albums, with the Album Artwork, for distribution through all available digital service providers (the "**DSPs**") between 2013 and 2017.<br><br>Martinez Decl. at ¶ 8, Exhibit "B" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23; 51:18-25; 67:24-69:5. | |
| 75. Thereafter, Hyphy obtained copyright registrations for all of such Album Artwork.<br><br>Martinez Decl. at ¶ 9, Exhibit "C" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 133:9-136:5. | |
| 76. Yellowcake is a competing record label and distributor of sound recordings, utilizing Colonize as its "distribution arm" to release and exploit rights that Yellowcake acquires.<br><br>Begakis Decl. at ¶ 9, Exhibit "H" thereto, Deposition Transcript of Kevin Berger ("**Berger Depo**") at 91:19-23; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Deposition Transcript of Jose David Hernandez, Volume I ("**Hernandez Depo I**") at 77:19-21. | |
| 77. Hernandez is a co-owner of both Yellowcake and Colonize. | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 51:9-11, 116:18-117:14. | |
| 78. In his position as co-owner of both Yellowcake and Colonize, Hernandez has admitted that both entities have operated – and continue to operate – as one single economic entity, with common ownership, common business operations, common office space, common staff, and many other common resources.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 80:3-20. | |
| 79. In or about March 2019, Hernandez approached Chavez about selling the Los Originales Albums to Yellowcake.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 148:24-149:5. | |
| 80. Hernandez had previously worked with Hyphy and had secretly gained valuable information on Hyphy's business and relationship with Chavez. Hernandez therefor knew that Hyphy only had an oral agreement with the Group.<br><br>Martinez Decl. at ¶ 3; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 26:2-12. | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| 81. Hernandez approached and convinced Chavez, without Hyphy or the rest of the Group's knowledge, to assign the Albums to Yellowcake in exchange for payment of $500,000.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 80:5-13, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 107:4-20. | |
| 82. Chavez and Yellowcake codified their purported agreement via an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019 (the "***Asset Purchase Agreement***").<br><br>Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF000021-PLF000039). | |
| 83. In Section 13.e. of the Asset Purchase Agreement, Chavez represented and warranted to Yellowcake that Chavez was "the only owner of" the Albums, and possessed "good and marketable title" thereto at the time of sale.<br><br>Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF00024). | |
| 84. Chavez, however, never obtained signed written agreements from Flores, Vargas or Hyphy acquiring each party's respective | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| contributions to, and rights in, the Albums and sound recordings embodied thereon.<br><br>Begakis Decl. at ¶ 6, Exhibit "E" thereto, Yellowcake Interrogatory Responses at pp. 4-5; Begakis Decl. at ¶ 7, Exhibit "F" thereto, Yellowcake Responses to Request for Production at p. 4. | |
| 85. Since commencing this litigation, Yellowcake entirely failed to serve any Initial Disclosures.<br><br>Begakis Decl. at ¶ 3. | |
| 86. Since commencing this litigation, Yellowcake has also never claimed that it is entitled to any damages besides alleged actual and punitive damages.<br><br>Begakis Decl. at ¶ 4. | |
| 87. Since commencing this litigation, Yellowcake failed to submit any evidence, whether in discovery or by way of the opinion of any expert as to what a willing buyer would pay for the Albums.<br><br>Begakis Decl. at ¶ 5. | |
| 88. Hyphy has been exploiting each of the Albums since their respective publication between 2013 and 2017.<br><br>*See* Martinez Decl. at ¶ 8, Exhibit "B" thereto. | |
| 89. Yellowcake did not obtain copyright registrations in the albums until | |

28
SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| March of 2020.<br><br>Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF000001-PLF000021). | |

### D.    Yellowcake's Second Claim for Injunctive Relief Fails Because Yellowcake's First Claim For Copyright Infringement Fails

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 90. Defendant/Counterclaimant HYPHY MUSIC, INC. ("*Hyphy*") is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings, coupled with artwork.<br><br>Declaration of John Begakis ("*Begakis Decl.*") at ¶ 8, Exhibit "G" thereto, Jose Martinez Deposition Transcript ("*Martinez Depo*") at 13:6-14:6. | |
| 91. Counter-Defendant JESUS CHAVEZ, SR ("*Chavez*") is the lead singer of the Spanish-language musical group Los Originales De San Juan (the "*Group*").<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Jesus Chavez, Sr. Deposition, Volume I ("*Chavez Depo I*") at 25:13-14; Begakis Decl. at ¶ 14, Exhibit "M" thereto, Jesus Chavez, Sr. Deposition, | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Volume II ("***Chavez Depo II***") at 16:22-17:5. | |
| 92. The Group operates as a co-equal partnership comprised of Chavez and fellow band members Domingo Torres Flores ("***Flores***"), who plays the accordion, and Alfonso Vargas ("***Vargas***"), who plays the drums.<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:16-19:3, 20:8-16, 21:16-19; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Deposition Transcript of Alfonso Vargas ("***Vargas Depo***") at 17:16-19; 27:17-22; 143:14-16; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Deposition Transcript of Domingo Torres Flores ("***Flores Depo***") at 47:15-25, 48:19-23. | |
| 93. In or about February 2013, Hyphy and the Group began working together to co-create various sound recordings to be embodied on multiple albums, which they orally agreed were to be owned by Hyphy (the "***Agreement***").<br><br>Declaration of Jose Martinez ("***Martinez Decl.***") at ¶ 3; Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 34:7-11; Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 19:14-17, 32:16-20, 35:12-21. | |
| 94. The albums created pursuant to the Agreement were entitled (1) "Amigos y Contrarios"; (2) "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La Cantina | |

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the "***Los Originales Albums***" or "***Albums***"). Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23, 51:22-25. | |
| 95. One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded by Chavez. Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:24:-9, 154:11-155:25. | |
| 96. Though this Agreement was not initially memorialized in writing, Flores and Vargas understood that such Agreement existed. Martinez Decl. at ¶ 5. Declaration of Domingo Torres Flores ("***Flores Decl.***") at ¶ 3; Declaration of Alfonso Vargas ("***Vargas Decl.***") at ¶ 3. | |
| 97. Flores and Vargas, as co-equal members of the Group, also intended that all rights in and to their recording services rendered pursuant to the Agreement be conveyed Hyphy. Martinez Decl. at ¶ 4. Flores Decl. at ¶¶ 3-5; Vargas Decl. at ¶¶ 3-5. | |
| 98. Flores and Vargas also later confirmed their belief and intent to | |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| convey all rights to Hyphy by executing enforceable Copyright Assignment Agreements on or about March 22, 2022 (collectively, the "***Assignments***"). <br><br> Martinez Decl. at ¶ 5, Exhibit "A" thereto. | |
| 99. Unlike larger record labels, however, Hyphy closely collaborated with the Group to create the Albums. <br><br> Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-76:25, 83:11-84:22, 84:24-85:8, 85:14-86:16. | |
| 100.  For the first three (of five) of the Los Originales Albums, Hyphy helped determine the "theme" and overall creative direction of each Album. <br><br> Martinez Decl. at ¶ 6. | |
| 101.  For the first three (of five) of the Los Originales Albums, Hyphy selected the songs to be included in each Album. <br><br> Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 83:11-84:22. | |
| 102.  For the first three (of five) of the Los Originales Albums, Hyphy selected the recording studio, and paid for all costs associated with the recording of each Album. | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Martinez Decl. at ¶ 6. | |
| 103.    For the first three (of five) of the Los Originales Albums, Hyphy hired the sound engineer.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 59:21-60:7, 61:10-16. | |
| 104.    For the first three (of five) of the Los Originales Albums, Hyphy paid the Group a substantial amount for recording the Albums.<br><br>Martinez Decl. at ¶ 6. | |
| 105.    And for the first three (of five) of the Los Originales Albums, Hyphy oversaw and generally supervised the recording and production of each Album.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 85:14-86:16. | |
| 106.    For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also selected and paid for the venue of the live performance.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | |
| 107.    For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also selected the songs to be | |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| performed at the live performance and recorded for the Albums.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | |
| 108.   For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also directly employed, supervised, and directed the services of the sound engineer and videographer who each recorded the audio and video of the live performance, respectively.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | |
| 109.   For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also wrote a script for the history of the band as presented at the live performance, and hired a "MC"/commentator who narrated the script.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | |
| 110.   For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also re-recorded whole portions of | |

34
SEPARATE STATEMENT OF UNDISPUTED FACTS

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| the guitarist's contributions to the live performance afterwards, using a new guitarist selected, hired and paid for by Hyphy.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | |
| 111.   It should be noted here that Flores and Vargas were plainly joint authors of the Albums, including based on the fact that Flores and Vargas were equally involved in all activities of the Band, which existed as an unincorporated partnership in which all Band members were joint owners, participants and contributors.<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:23-19:3; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | |
| 112.   It should be noted here that Flores and Vargas were plainly joint authors of the Albums, including based on the fact that Flores and Vargas were equally credited on all Albums in which each of them made contributions.<br><br>*See* Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, | |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | |
| 113.   It should be noted here that Flores and Vargas were plainly joint authors of the Albums, including based on the fact that Flores and Vargas shared equally in all profits of the Band, and were granted equal access to inspect all records related to the Band's receipt of all such profits.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 20:20-21:16, 26:13-20, 31:8-16, 33:18-34:1, 38:8-18, 41:13-42:2; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | |
| 114.   In addition to its original creative contributions to the production, recording and overall creation of the Los Originales Albums, Hyphy also designed and created the artwork featured on the cover of each Album (the "**Album Artwork**").<br><br>Martinez Decl. at ¶ 7; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 127:12-21. | |
| 115.   Hyphy released the Albums, with | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| the Album Artwork, for distribution through all available digital service providers (the "**DSPs**") between 2013 and 2017.<br><br>Martinez Decl. at ¶ 8, Exhibit "B" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23; 51:18-25; 67:24-69:5. | |
| 116.   Thereafter, Hyphy obtained copyright registrations for all of such Album Artwork.<br><br>Martinez Decl. at ¶ 9, Exhibit "C" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 133:9-136:5. | |
| 117.   Yellowcake is a competing record label and distributor of sound recordings, utilizing Colonize as its "distribution arm" to release and exploit rights that Yellowcake acquires.<br><br>Begakis Decl. at ¶ 9, Exhibit "H" thereto, Deposition Transcript of Kevin Berger ("**Berger Depo**") at 91:19-23; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Deposition Transcript of Jose David Hernandez, Volume I ("**Hernandez Depo I**") at 77:19-21. | |
| 118.   Hernandez is a co-owner of both Yellowcake and Colonize.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 51:9-11, 116:18-117:14. | |
| 119.   In his position as co-owner of | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
| --- | --- |
| both Yellowcake and Colonize, Hernandez has admitted that both entities have operated – and continue to operate – as one single economic entity, with common ownership, common business operations, common office space, common staff, and many other common resources.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 80:3-20. | |
| 120.   In or about March 2019, Hernandez approached Chavez about selling the Los Originales Albums to Yellowcake.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 148:24-149:5. | |
| 121.   Hernandez had previously worked with Hyphy and had secretly gained valuable information on Hyphy's business and relationship with Chavez. Hernandez therefor knew that Hyphy only had an oral agreement with the Group.<br><br>Martinez Decl. at ¶ 3; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 26:2-12. | |
| 122.   Hernandez approached and convinced Chavez, without Hyphy or the rest of the Group's knowledge, to assign the Albums to | |

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| Yellowcake in exchange for payment of $500,000.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 80:5-13, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 107:4-20. | |
| 123.  Chavez and Yellowcake codified their purported agreement via an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019 (the "***Asset Purchase Agreement***").<br><br>Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF000021-PLF000039). | |
| 124.  In Section 13.e. of the Asset Purchase Agreement, Chavez represented and warranted to Yellowcake that Chavez was "the only owner of" the Albums, and possessed "good and marketable title" thereto at the time of sale.<br><br>Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF00024). | |
| 125.  Chavez, however, never obtained signed written agreements from Flores, Vargas or Hyphy acquiring each party's respective contributions to, and rights in, the Albums and sound recordings embodied thereon. | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
| --- | --- |
| Begakis Decl. at ¶ 6, Exhibit "E" thereto, Yellowcake Interrogatory Responses at pp. 4-5; Begakis Decl. at ¶ 7, Exhibit "F" thereto, Yellowcake Responses to Request for Production at p. 4. | |

## II.    SUMMARY ADJUDICATION IS PROPER AS FOR THE SECOND AND SIXTH COUNTERCLAIMS OF THE COUNTERCLAIM

### A.    Summary Adjudication Is Proper As To Hyphy's Second Counterclaim For Copyright Infringement Because Yellowcake And Colonize Infringed Upon Hyphy's Album Artwork

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
| --- | --- |
| 126.   Defendant/Counterclaimant HYPHY MUSIC, INC. ("*Hyphy*") is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings, coupled with artwork.<br><br>Declaration of John Begakis ("*Begakis Decl.*") at ¶ 8, Exhibit "G" thereto, Jose Martinez Deposition Transcript ("*Martinez Depo*") at 13:6-14:6. | |
| 127.   Counter-Defendant JESUS CHAVEZ, SR ("*Chavez*") is the lead singer of the Spanish-language musical group Los Originales De San Juan (the "*Group*").<br><br>Begakis Decl. at ¶ 13, Exhibit "L" | |

40
SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| thereto, Jesus Chavez, Sr. Deposition, Volume I ("***Chavez Depo I***") at 25:13-14; Begakis Decl. at ¶ 14, Exhibit "M" thereto, Jesus Chavez, Sr. Deposition, Volume II ("***Chavez Depo II***") at 16:22-17:5. | |
| 128.   The Group operates as a co-equal partnership comprised of Chavez and fellow band members Domingo Torres Flores ("***Flores***"), who plays the accordion, and Alfonso Vargas ("***Vargas***"), who plays the drums.<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:16-19:3, 20:8-16, 21:16-19; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Deposition Transcript of Alfonso Vargas ("***Vargas Depo***") at 17:16-19; 27:17-22; 143:14-16; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Deposition Transcript of Domingo Torres Flores ("***Flores Depo***") at 47:15-25, 48:19-23. | |
| 129.   In or about February 2013, Hyphy and the Group began working together to co-create various sound recordings to be embodied on multiple albums, which they orally agreed were to be owned by Hyphy (the "***Agreement***").<br><br>Declaration of Jose Martinez ("***Martinez Decl.***") at ¶ 3; Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 34:7-11; Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 19:14-17, 32:16-20, 35:12-21. | |

41
SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 130.   The albums created pursuant to the Agreement were entitled (1) "Amigos y Contrarios"; (2) "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La Cantina de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the "*Los Originales Albums*" or "*Albums*"). <br><br> Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23, 51:22-25. | |
| 131.   One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded by Chavez. <br><br> Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:24:-9, 154:11-155:25. | |
| 132.   In addition to its original creative contributions to the production, recording and overall creation of the Los Originales Albums, Hyphy also designed and created the artwork featured on the cover of each Album (the "*Album Artwork*"). <br><br> Martinez Decl. at ¶ 7; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 127:12-21. | |
| 133.   Hyphy released the Albums, with the Album Artwork, for distribution through all available digital service providers (the "*DSPs*") between | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 2013 and 2017.<br><br>Martinez Decl. at ¶ 8, Exhibit "B" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23; 51:18-25; 67:24-69:5. | |
| 134.   Thereafter, Hyphy obtained copyright registrations for all of such Album Artwork.<br><br>Martinez Decl. at ¶ 9, Exhibit "C" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 133:9-136:5. | |
| 135.   Yellowcake is a competing record label and distributor of sound recordings, utilizing Colonize as its "distribution arm" to release and exploit rights that Yellowcake acquires.<br><br>Begakis Decl. at ¶ 9, Exhibit "H" thereto, Deposition Transcript of Kevin Berger ("***Berger Depo***") at 91:19-23; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Deposition Transcript of Jose David Hernandez, Volume I ("***Hernandez Depo I***") at 77:19-21. | |
| 136.   Hernandez is a co-owner of both Yellowcake and Colonize.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 51:9-11, 116:18-117:14. | |
| 137.   In his position as co-owner of both Yellowcake and Colonize, Hernandez has admitted that both entities have operated – and | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| continue to operate – as one single economic entity, with common ownership, common business operations, common office space, common staff, and many other common resources.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 80:3-20. | |
| 138.   In or about March 2019, Hernandez approached Chavez about selling the Los Originales Albums to Yellowcake.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 148:24-149:5. | |
| 139.   Hernandez had previously worked with Hyphy and had secretly gained valuable information on Hyphy's business and relationship with Chavez. Hernandez therefor knew that Hyphy only had an oral agreement with the Group.<br><br>Martinez Decl. at ¶ 3; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 26:2-12. | |
| 140.   Hernandez approached and convinced Chavez, without Hyphy or the rest of the Group's knowledge, to assign the Albums to Yellowcake in exchange for payment of $500,000. | |

44
SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 80:5-13, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 107:4-20. | |
| 141.   Chavez and Yellowcake codified their purported agreement via an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019 (the "**Asset Purchase Agreement**").<br><br>Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF000021-PLF000039). | |
| 142.   Hyphy distributed the Albums with the Album Artwork during all times in which Hyphy believed it possessed the exclusive right to distribute the Albums.<br><br>Martinez Decl. at ¶ 8, Exhibit "B" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 67:24-68:24. | |
| 143.   Counter-Defendants engaged in the unauthorized distribution of their own, pirated version of the Albums with such Album Artwork.<br><br>Martinez Decl. at ¶ 12, Exhibit "D" thereto. | |
| 144.   When first distributed by Hyphy, each Album was assigned a unique International Standard Recording Code ("**ISRC**") and Universal Product Code ("**UPC**"). | |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Begakis Decl. at ¶ 15, Exhibit "N" thereto, Deposition Transcript of Lawrence H. Katz, Esq. ("**Katz Depo**") at 68:8-18. | |
| 145.   It is standard for a new sound recording placed into the stream of distribution to be assigned a unique ISRC and UPC.<br><br>Begakis Decl. at ¶ 15, Exhibit "N" thereto, Katz Depo at 46:1-47:4. | |
| 146.   ISRCs and UPCs are sometimes referred to as "digital social security numbers" for products, and are used to track data regarding the distribution and exploitation of each respective Albums, and the sound recordings thereon.<br><br>Begakis Decl. at ¶ 15, Exhibit "N" thereto, Katz Depo at 46:1-47:4, 46:23-47:4, 47:5-18. | |
| 147.   Because ISRCs and UPCs are used to track data regarding each Album, and all sound recordings contained thereon, such codes should not have ever been duplicated.<br><br>Begakis Decl. at ¶ 15, Exhibit "N" thereto, Katz Depo at 48:23-49:14. | |
| 148.   Yellowcake should have requested that Hyphy transfer Albums and their assigned ISRCs and UPCs to Yellowcake, in the event Yellowcake actually acquired the Albums lawfully. | |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Begakis Decl. at ¶ 15, Exhibit "N" thereto, Katz Depo at 74:1-22. | |
| 149.   Yellowcake ignored established industry norms governing how the Albums should have been transferred, and instead simply re-released unauthorized duplicate (i.e., pirated) versions with the Album Artwork, and with newly assigned ISRC and UPCs.<br><br>Martinez Decl. at ¶ 11; Begakis Decl. at ¶ 15, Exhibit "N" thereto, Katz Depo at 70:23-71:9, 74:1-22, 74:23-75:17. | |
| 150.   Although Counter-Defendants later attempted to scrub the internet of their initial, infringing distribution of the Albums, Hyphy obtained proof of such distribution via one of the DSPs located at <daddykoolrecords.com>.<br><br>Martinez Decl. at ¶ 12, Exhibit "D" thereto. | |
| 151.   With respect to the Album entitled "Corridos de Poca M", Hyphy's originally assigned UPC Code is 889176663055. Yellowcake's later-acquired UPC Code is 758381471406. Yellowcake distributed this Album with Hyphy's Album Artwork, as confirmed by the display of such Album with Hyphy's Album Artwork and Yellowcake's later-acquired UPC Code offered for download on | |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| <daddykoolrecords.com>.<br><br>Martinez Decl. at ¶¶ 8, 12, Exhibits "B" and "D" thereto. | |
| 152.  With respect to the Album entitled "El Campesino", Hyphy's originally assigned UPC Code is 190374798310. Yellowcake's later-acquired UPC Code is 758381471420. Yellowcake distributed this Album with Hyphy's Album Artwork, as confirmed by the display of such Album with Hyphy's Album Artwork and Yellowcake's later-acquired UPC Code offered for download on <daddykoolrecords.com>.<br><br>Martinez Decl. at ¶¶ 8, 12, Exhibits "B" and "D" thereto. | |
| 153.  With respect to the Album entitled "Desde La Cantina De Mi Barrio", Hyphy's originally assigned UPC Code is 191018998417. Yellowcake's later-acquired UPC Code is 758381471413. Yellowcake distributed this Album with Hyphy's Album Artwork, as confirmed by the display of such Album with Hyphy's Album Artwork and Yellowcake's later-acquired UPC Code offered for download on <daddykoolrecords.com>.<br><br>Martinez Decl. at ¶¶ 8, 12, Exhibits "B" | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| and "D" thereto. | |
| 154.  Before Counter-Defendants knew that Hyphy had discovered proof of their infringement, Hernandez lied under oath during his deposition as the person most knowledgeable for Colonize by claiming that Yellowcake and Colonize would never distribute the Albums with Hyphy's Album Artwork (even though they had).<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 211:24-212:6. | |
| 155.  If Counter-Defendants are able to avoid liability for their infringement of Hyphy's Album Artwork, by arguing that only Colonize distributed the Albums, Hyphy will suffer significant injustice by not have any recourse in response to such wrongdoing.<br><br>Martinez Decl. at ¶ 14. | |

**B.  Summary Adjudication Is Proper As To Hyphy's Sixth Counterclaim For Unfair Competition Because Hyphy Has Established That Yellowcake And Colonize Engaged In Copyright Infringement**

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 156.  Defendant/Counterclaimant HYPHY MUSIC, INC. ("*Hyphy*") is a record label in the business of | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings, coupled with artwork.<br><br>Declaration of John Begakis ("***Begakis Decl.***") at ¶ 8, Exhibit "G" thereto, Jose Martinez Deposition Transcript ("***Martinez Depo***") at 13:6-14:6. | |
| 157.  Counter-Defendant JESUS CHAVEZ, SR ("***Chavez***") is the lead singer of the Spanish-language musical group Los Originales De San Juan (the "***Group***").<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Jesus Chavez, Sr. Deposition, Volume I ("***Chavez Depo I***") at 25:13-14; Begakis Decl. at ¶ 14, Exhibit "M" thereto, Jesus Chavez, Sr. Deposition, Volume II ("***Chavez Depo II***") at 16:22-17:5. | |
| 158.  The Group operates as a co-equal partnership comprised of Chavez and fellow band members Domingo Torres Flores ("***Flores***"), who plays the accordion, and Alfonso Vargas ("***Vargas***"), who plays the drums.<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:16-19:3, 20:8-16, 21:16-19; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Deposition Transcript of Alfonso Vargas ("***Vargas Depo***") at 17:16-19; 27:17-22; 143:14-16; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Deposition Transcript of Domingo Torres Flores ("***Flores*** | |

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| ***Depo***") at 47:15-25, 48:19-23.. | |
| 159.   In or about February 2013, Hyphy and the Group began working together to co-create various sound recordings to be embodied on multiple albums, which they orally agreed were to be owned by Hyphy (the "***Agreement***"). <br><br> Declaration of Jose Martinez ("***Martinez Decl.***") at ¶ 3; Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 34:7-11; Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 19:14-17, 32:16-20, 35:12-21. | |
| 160.   The albums created pursuant to the Agreement were entitled (1) "Amigos y Contrarios"; (2) "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La Cantina de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the ***Los Originales Albums***" or "***Albums***"). <br><br> Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23, 51:22-25. | |
| 161.   One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded by Chavez. <br><br> Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo | |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| at 44:24:-9, 154:11-155:25. | |
| 162.  In addition to its original creative contributions to the production, recording and overall creation of the Los Originales Albums, Hyphy also designed and created the artwork featured on the cover of each Album (the "***Album Artwork***"). Martinez Decl. at ¶ 7; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 127:12-21. | |
| 163.  Hyphy released the Albums, with the Album Artwork, for distribution through all available digital service providers (the "***DSPs***") between 2013 and 2017. Martinez Decl. at ¶ 8, Exhibit "B" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23; 51:18-25; 67:24-69:5. | |
| 164.  Thereafter, Hyphy obtained copyright registrations for all of such Album Artwork. Martinez Decl. at ¶ 9, Exhibit "C" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 133:9-136:5. | |
| 165.  Yellowcake is a competing record label and distributor of sound recordings, utilizing Colonize as its "distribution arm" to release and exploit rights that Yellowcake acquires. Begakis Decl. at ¶ 9, Exhibit "H" | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| thereto, Deposition Transcript of Kevin Berger ("**Berger Depo**") at 91:19-23; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Deposition Transcript of Jose David Hernandez, Volume I ("**Hernandez Depo I**") at 77:19-21. | |
| 166.   Hernandez is a co-owner of both Yellowcake and Colonize.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 51:9-11, 116:18-117:14. | |
| 167.   In his position as co-owner of both Yellowcake and Colonize, Hernandez has admitted that both entities have operated – and continue to operate – as one single economic entity, with common ownership, common business operations, common office space, common staff, and many other common resources.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 80:3-20. | |
| 168.   In or about March 2019, Hernandez approached Chavez about selling the Los Originales Albums to Yellowcake.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 148:24-149:5. | |
| 169.   Hernandez had previously worked with Hyphy and had secretly gained valuable information | |

53
SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| on Hyphy's business and relationship with Chavez. Hernandez therefor knew that Hyphy only had an oral agreement with the Group.<br><br>Martinez Decl. at ¶ 3; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 26:2-12. | |
| 170.  Hernandez approached and convinced Chavez, without Hyphy or the rest of the Group's knowledge, to assign the Albums to Yellowcake in exchange for payment of $500,000.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 80:5-13, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 107:4-20. | |
| 171.  Chavez and Yellowcake codified their purported agreement via an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019 (the "***Asset Purchase Agreement***").<br><br>Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF000021-PLF000039). | |
| 172.  Hyphy distributed the Albums with the Album Artwork during all times in which Hyphy believed it possessed the exclusive right to distribute the Albums. | |

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| Martinez Decl. at ¶ 8, Exhibit "B" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 67:24-68:24. | |
| 173.  Counter-Defendants engaged in the unauthorized distribution of their own, pirated version of the Albums with such Album Artwork.

Martinez Decl. at ¶ 12, Exhibit "D" thereto. | |
| 174.  When first distributed by Hyphy, each Album was assigned a unique International Standard Recording Code ("*ISRC*") and Universal Product Code ("*UPC*").

Begakis Decl. at ¶ 15, Exhibit "N" thereto, Deposition Transcript of Lawrence H. Katz, Esq. ("*Katz Depo*") at 68:8-18. | |
| 175.  It is standard for a new sound recording placed into the stream of distribution to be assigned a unique ISRC and UPC.

Begakis Decl. at ¶ 15, Exhibit "N" thereto, Katz Depo at 46:1-47:4. | |
| 176.  ISRCs and UPCs are sometimes referred to as "digital social security numbers" for products, and are used to track data regarding the distribution and exploitation of each respective Albums, and the sound recordings thereon.

Begakis Decl. at ¶ 15, Exhibit "N" thereto, Katz Depo at 46:1-47:4, 46:23- | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 47:4, 47:5-18. | |
| 177.   Because ISRCs and UPCs are used to track data regarding each Album, and all sound recordings contained thereon, such codes should not have ever been duplicated.<br><br>Begakis Decl. at ¶ 15, Exhibit "N" thereto, Katz Depo at 48:23-49:14. | |
| 178.   Yellowcake should have requested that Hyphy transfer Albums and their assigned ISRCs and UPCs to Yellowcake, in the event Yellowcake actually acquired the Albums lawfully.<br><br>Begakis Decl. at ¶ 15, Exhibit "N" thereto, Katz Depo at 74:1-22. | |
| 179.   Yellowcake ignored established industry norms governing how the Albums should have been transferred, and instead simply re-released unauthorized duplicate (i.e., pirated) versions with the Album Artwork, and with newly assigned ISRC and UPCs.<br><br>Martinez Decl. at ¶ 11; Begakis Decl. at ¶ 15, Exhibit "N" thereto,  Katz Depo at 70:23-71:9, 74:1-22, 74:23-75:17. | |
| 180.   Although Counter-Defendants later attempted to scrub the internet of their initial, infringing distribution of the Albums, Hyphy obtained proof of such distribution via one of the DSPs located at <daddykoolrecords.com>. | |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Martinez Decl. at ¶ 12, Exhibit "D" thereto. | |
| 181.   With respect to the Album entitled "Corridos de Poca M", Hyphy's originally assigned UPC Code is 889176663055. Yellowcake's later-acquired UPC Code is 758381471406. Yellowcake distributed this Album with Hyphy's Album Artwork, as confirmed by the display of such Album with Hyphy's Album Artwork and Yellowcake's later-acquired UPC Code offered for download on <daddykoolrecords.com>.<br><br>Martinez Decl. at ¶¶ 8, 12, Exhibits "B" and "D" thereto. | |
| 182.   With respect to the Album entitled "El Campesino", Hyphy's originally assigned UPC Code is 190374798310. Yellowcake's later-acquired UPC Code is 758381471420. Yellowcake distributed this Album with Hyphy's Album Artwork, as confirmed by the display of such Album with Hyphy's Album Artwork and Yellowcake's later-acquired UPC Code offered for download on <daddykoolrecords.com>.<br><br>Martinez Decl. at ¶¶ 8, 12, Exhibits "B" and "D" thereto. | |
| 183.   With respect to the Album | |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| entitled "Desde La Cantina De Mi Barrio", Hyphy's originally assigned UPC Code is 191018998417. Yellowcake's later-acquired UPC Code is 758381471413. Yellowcake distributed this Album with Hyphy's Album Artwork, as confirmed by the display of such Album with Hyphy's Album Artwork and Yellowcake's later-acquired UPC Code offered for download on <daddykoolrecords.com>.<br><br>Martinez Decl. at ¶¶ 8, 12, Exhibits "B" and "D" thereto. | |
| 184.   Before Counter-Defendants knew that Hyphy had discovered proof of their infringement, Hernandez lied under oath during his deposition as the person most knowledgeable for Colonize by claiming that Yellowcake and Colonize would never distribute the Albums with Hyphy's Album Artwork (even though they had).<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 211:24-212:6. | |
| 185.   If Counter-Defendants are able to avoid liability for their infringement of Hyphy's Album Artwork, by arguing that only Colonize distributed the Albums, Hyphy will suffer significant injustice by not have any recourse in response to | |

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| such wrongdoing.<br><br>Martinez Decl. at ¶ 14. | |

DATED:  May 19, 2023          **ALTVIEW LAW GROUP, LLP**

By: _____
                    JOHN M. BEGAKIS
                *Attorneys for Defendant/Counterclaimant*
                HYPHY MUSIC, INC., a California
                corporation

SEPARATE STATEMENT OF UNDISPUTED FACTS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing electronically filed document has been served via a "Notice of Electronic Filing" automatically generated by the CM/ECF System and sent by e-mail to all attorneys in the case who are registered as CM/ECF users and have consented to electronic service pursuant to L.R. 5-3.3.

Dated: May 19, 2023                    By:  /s/ John Begakis
                                            John M. Begakis