**ABRAMS FENSTERMAN, LLP**
Seth L. Berman, Esq. (*admitted pro hac vice*)
    sberman@abramslaw.com
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Telephone: 516.328.2300
Facsimile: 516.328.6638

**HEFNER STARK & MAROIS, LLP**
Thomas P. Griffin Jr., Esq. (SBN 155133)
    tgriffin@hsmlaw.com
2150 River Plaza Drive, Suite 450
Sacramento, CA  95833
Telephone: 916.925.6620
Facsimile: 916.925.1127

Attorneys for Plaintiff YELLOWCAKE, INC., and Counterdefendants
YELLOWCAKE, INC., COLONIZE MEDIA, INC., and JOSE DAVID
HERNANDEZ

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| YELLOWCAKE, INC., a California corporation, <br><br>                  Plaintiff, <br><br>        v. <br><br> HYPHY MUSIC, INC., <br><br>                  Defendant. | **Case No.: 1:20-cv-00988-JLT-BAM** <br><br> **PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION** <br> Judge: Hon. Jennifer L. Thurston <br> Date:  August 4, 2023 <br> Courtroom: Courtroom 4, 7th floor |

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York  11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

HYPHY MUSIC, INC.,                              )
                                               )
              Counterclaimant,                 )
                                               )
       v.                                      )
                                               )
YELLOWCAKE, INC., A CALIFORNIA                 )
CORPORATION; COLONIZE MEDIA,                   )
INC.; JOSE DAVID HERNANDEZ; and                )
JESUS CHAVEZ SR,                               )
                                               )
              Counterdefendants.               )
                                               )

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 56, on August 4, 2023, at 10:00 a.m. before the Honorable Jennifer L. Thurston, at the Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, CA 93721, Courtroom 4, 7th floor, Plaintiff Yellowcake, Inc. ("Yellowcake") and Counterdefendants Yellowcake, and Colonize Media, Inc. ("Counterdefendants") will move and hereby move for summary judgment, with prejudice.

As shown below in Plaintiff/Counterdefendants' supporting Memorandum of Points and Authorities, Yellowcake is entitled to Summary Judgment under Federal Rule of Civil Procedure 56 and Local Rule 260 on its First Cause of Action for Copyright Infringement against the Defendant as to the following issues:

1. That Yellowcake possesses valid copyright registrations in the albums of sound recordings at issue and that Yellowcake is the sole and exclusive owner of the albums;

2. That Defendant Hyphy Music, Inc. unlawfully infringed those copyrighted albums by, *inter alia*, selling, distributing and making unauthorized derivative works of the sound recordings comprising the albums and

3. That Yellowcake is entitled to $120,000 in damages from Hyphy in the form

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

of profits received by Hyphy Music, Inc. as a result of its acts of infringement.

In addition, Counterclaim Defendants are entitled to summary adjudication in their favor on Defendant/Counterclaimant Hyphy Music, Inc.'s Second Counterclaim for copyright infringement of certain album artwork on the grounds that:

1. Counterclaim Defendants never used Counterclaimant Hyphy Music Inc.'s album artwork;

2. Hyphy Music, Inc. has produced no admissible evidence that Counterclaim Defendants ever used Hyphy Music, Inc.'s album artwork and

3. Hyphy Music, Inc. did not produce any evidence of damages from the alleged infringement of its artwork.

This motion is based on this notice of motion and the attached Memorandum of Points and Authorities, Plaintiff/Counterdefendants' Statement of Undisputed Material Facts, the Declaration of Seth L. Berman Esq., and all exhibits thereto, the Declarations of Kevin Berger and Jose David Hernandez, the pleadings and records filed in this action, and such further evidence and argument that may be presented before the hearing on this motion.

Dated:  July 14, 2023                    Respectfully submitted,


**ABRAMS FENSTERMAN, LLP**

By: /s/ Seth L. Berman
Seth L. Berman, Esq. (*admitted pro hac vice*)
***Attorneys for Plaintiff Yellowcake, Inc., and Counterdefendants Colonize Media, Inc., and Jose David Hernandez***

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

---

3

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

I.    INTRODUCTION ......................................................................................... 1

II.   Statement of Facts ....................................................................................... 1

      *The Copyrighted Albums at Issue* ............................................................ 1

      *The Oral Distribution Agreement Between Chavez and Hyphy* ..................... 3

      *Yellowcake's Ownership of the Albums* ..................................................... 3

      *Hyphy's Unauthorized Exploitation of the Copyrighted Albums* .................. 4

III.  Relevant Procedural History ....................................................................... 5

      Discovery ............................................................................................... 6

      Fed. R. Civ. P. 56 Legal Standard .............................................................. 7

ARGUMENT ................................................................................................... 8

I.    THERE IS NO GENUINE DISPUTE THAT HYPHY INFRINGED
      YELLOWCAKE'S COPYRIGHTED ALBUMS ............................................. 8

      A. The Record Clearly Shows that Yellowcake is the Owner of the
         Copyrighted Works .............................................................................. 9

      B. Defendants Infringed the Copyrighted Albums ...................................... 10

      C. Yellowcake's Damages ........................................................................ 11

II.   THE RECORD SHOWS THAT THERE IS NO GENUINE ISSUE OF
      FACT CONCERNING YELLOWCAKE'S OWNERSHIP OF THE
      ALBUMS ................................................................................................ 13

      1. Hyphy's First Failed Co-Ownership Claim : Hyphy is Not a
         Co-Owner Via A Work-For-Hire Agreement with Chavez. .................... 13

      2. Hyphy Second Failed Co-Ownership Claim : Hyphy is Not a
         Co-Author with Chavez. ..................................................................... 13

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE
MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY
ADJUDICATION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**3. Hyphy's Third Failed Co-Ownership Claim : Hyphy is Not a Co-Owner of the Albums by Virtue of the Contrived Assignments from the Former Backing Musicians** ............................... 17

**III. HYPHY HAS PRODUCED NO ADMISSIBLE OR CREDIBLE EVIDENCE AT ALL THAT YELLOWCAKE OR COLONIZE INFRINGED HYPHY'S ALBUM ARTWORK.** ........................................ 21

**CONCLUSION** ............................................................................................. 24

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

# TABLE OF AUTHORITIES

## Cases

*Aalmuhammed v. Lee*,
  202 F.3d 1227 (9th Cir. 2000) .................................................................. 14, 15, 17

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ............................................. 7

*Ashton-Tate v. Ross*,
  916 F.2d 516 (9th Cir. 1990) .............................................................................. 15, 16

*Burrow-Giles Lithographic Co. v. Sarony*,
  111 U.S. 53 (1884).................................................................................................. 14

*Canada v. Blain's Helicopter, Inc.*,
  831 F.2d 920, 9 Fed. R. Serv.3d 727 .................................................................... 23

*Cmty. for Creative Non-Violence v. Reid*,
  490 U.S. 730 (1989)................................................................................................ 14

*Corbello v. Devito*,
  777 F.3d 1058 (9th Cir. 2015) ................................................................................. 9

*Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*,
  140 F.2d 266, 267 (2d Cir.), modified by 140 F.2d 268 (2d Cir. 1944) ................. 14

*Ets-Hokin v. Skyy Spirits, Inc.*,
  225 F.3d 1068 (9th Cir. 2000) ................................................................................. 9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991).................................................................................................. 8

*Great Minds v. Office Depot, Inc.*,
  945 F.3d 1106 (9th Cir. 2019) ................................................................................. 8

*Jules Jordan Video, Inv. v. 144942 Canada, Inc.*,
  617 F.3d 1146 (9th Cir. 2010) ................................................................................. 9

*Mahon v. Mainsail LLC*,
  20-cv-01523, 2020 U.S. Dist. LEXIS 145591, at *15 (N.D. Cal. Aug. 7, 2020)...... 11

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) ................................................................................. 8

*Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ............................................. 7

*Monge v. Maya Magazines, Inc.*,
   688 F.3d 1164 (9th Cir. 2012) ................................................................................. 8

*Mophie, Inc. v. Shah*, cv-13-1321,
   2014 U.S. Dist. LEXIS 185196 (C.D. Cal. November 12, 2014) ............................. 9

*Radio Television Espanola S.A. v. New World Ent't, Ltd.*,
   183 F.3d 922 (9th Cir. 1999) ................................................................................... 10

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
   531 F.3d 962 (9th Cir. 2008) ............................................................................. 15, 16

*S.O.S. Inc. v. Payday Inc.*,
   886 F.2d 1081 (9th Cir. 1989) ................................................................................ 15

*Shropshire v. Canning*,
   809 F. Supp. 2d 1139 (N.D. Cal. 2011) ................................................................... 11

*Stillwater Ltd. v. Basilotta*,
   2020 U.S. Dist. LEXIS 137746 ................................................................................ 15

*Studio S Imports, LLC v. Deutsch Imports, LLC*,
   CV1910666CJRAOX, 2021 WL 3598571, at *4-5 (CD Cal June 21, 2021) ........... 18

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
   52 F.4th 1054, 1075, n. 9 (9th Cir. 2022) ................................................................ 12

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
   853 F.3d 980 (9th Cir. 2017) ..................................................................................... 9

*VMG Salsoul, LLC v. Ciccone*,
   824 F.3d 871, 881-82 (9th Cir. 2016) ........................................................................ 9

*Wool v. Tandem Computers, Inc.*,
   818 F.2d 1433 (9th Cir. 1987) ................................................................................... 7

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

**<u>Statutes</u>**

17 U.S.C. § 101 ...................................................................................................4, 10

17 U.S.C. § 102 ........................................................................................................9

17 U.S.C. § 106 ......................................................................................................11

17 U.S.C. §201(d)(2) ...............................................................................................9

17 U.S.C. § 204(a) ..............................................................................................9, 10

17 U.S.C. § 410(c) ...................................................................................................9

17 U.S.C. § 501(a) ...................................................................................................1

17 U.S.C. § 504(b) .................................................................................................12

17 U.S.C. § 512 *et seq.* ...........................................................................................5

Fed.R.Civ.P. 56(a) ...................................................................................................7

Fed.R.Civ.P. 56(c) ...................................................................................................7

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is a straightforward case of copyright infringement concerning six copyrighted albums of sound recordings owned by Plaintiff-Counterclaim Defendant Yellowcake, Inc. ("Yellowcake"), that were recorded by the artist and Counterdefendant Jesus Chavez Sr. ("Chavez"), founder, principal performer and manager of the band known as Los Originales De San Juan (the "Band"). Defendant-Counterclaimant Hyphy Music, Inc. ("Hyphy"), a record label and music distributor knowingly continued to exploit these albums after they were lawfully sold by Mr. Chavez to Yellowcake after Chavez had terminated a prior oral distribution agreement with Hyphy. Despite Yellowcake's demands, Hyphy refused to stop exploiting the albums necessitating the filing of this action. As set forth herein, Yellowcake is the lawful owner of the albums and Hyphy exploited them without authorization, and as a result, Yellowcake is entitled to summary judgment on its causes of action for copyright infringement against Hyphy under 17 U.S.C. § 501(a), which is essentially a strict liability tort. None of Hyphy's affirmative defenses have any merit and do not preclude a finding of summary judgment in Yellowcake's favor.

Furthermore, the evidence in the record shows that despite claims by Hyphy, Hyphy is not a co-owner of the albums with Yellowcake and, therefore, any such claims do not bar Yellowcake from summary judgment.  Lastly, Hyphy has produced no legitimate admissible evidence that Counterdefendants Yellowcake or Colonize Media, Inc. ("Colonize") infringed Hyphy's alleged copyrighted album artwork, and, therefore, Yellowcake and Colonize are entitled to summary adjudication in their favor on Hyphy's sole remaining counterclaim for copyright infringement of its album artwork.

## II.    Statement of Facts

### *The Copyrighted Albums at Issue*

Chavez is a legendary Mexican musical artist and the founder of the band Los Originales de San Juan ( "Band"). *See* Declaration of Jesus Chavez, Sr. in Support of

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

Plaintiff and Counterdefendants' Motion to Dismiss Defendant's Counterclaims and Supplemental Brief ("Chavez Dec.") Dkt. 46-2, ¶ 3-4. Chavez was always the bandleader, principal performer, and principal songwriter of the Band. This has been acknowledged by Hyphy. *See* Counterclaim, Dkt. 7, ¶ 15; First Amended Counterclaim, Dkt. 15, ¶ 15, Hyphy's Opposition to Yellowcake's Motion to Dismiss, Dkt. 27, Pg. 1, Ln. 17-Pg. 2, Ln. 1; *Id.* Chavez has always owned all intellectual property produced by the Band including all copyrights in its sound recordings and trademarks. Chavez Dec. Dkt. 46-2.

Between 2013 and 2015, Chavez, recording under the moniker Los Originales de San Juan, recorded six albums titled: (i) *Los Originales de San Juan- "El Campesino"*; (ii) *Los Originales de San Juan-"Corridos de Poca M"*; (iii) *Los Originales de San Juan-"En Vivo Desde La Cantina de Mi Barrio"*; (iv) *Los Originales de San Juan-"Nuestra Historia En Vivo"*; (v) *Los Originales de San Juan- "Amigos y Contrarios"*; and (vi) *Los Originales de San Juan-"Naci Con Suerte de Rey Con Mariachi"* (collectively "Albums"). Chavez Dec. Dkt. 46-2, ¶ 7. Hector Omar Rosales ("Rosales") acted as the audio engineer for four (4) of the Albums recorded in his studio.[1] *See* Declaration of Hector O. Rosales in Support of Plaintiff and Counterdefendants' Motion to Dismiss Defendants' Counterclaims and In Support of Supplemental Brief ("Rosales Dec.") Dkt. 46-1, ¶ 5; Chavez Dec Dkt. 46-2, ¶ 11. A track listing of all of the songs on the Albums is annexed to the Complaint, Dkt. 1, Exh. "A". Chavez was the sole producer of the Albums and no employee or anybody else affiliated with Hyphy produced any songs on the Albums or provided any co-authorship original creative input into the recording of the Albums. Rosales Dec. Dkt. 46-1, ¶ 9; Chavez Dec. Dkt. 46-2, ¶ 8.

At no time during their recording or subsequent existence were there any other co-owners of the copyrighted sound recordings in the albums besides Chavez. Chavez Dec. Id. at ¶¶ 8-19.

---

1 The Albums *En Vivo Desde La Cantina de Mi Barrio and Nuestra Historia En Vivo* were recordings of two of Chavez's live performances and were recorded at music venues and not in a recording studio.

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

### *The Oral Distribution Agreement Between Chavez and Hyphy*

In or around February 2013, Chavez and Hyphy entered into an *oral distribution agreement* for the Albums to be *recorded by Chavez* under the name Los Originales de San Juan and distributed by Hyphy ("Hyphy Distribution Agreement"). Chavez Dec., Dkt. 46-2, Hyphy's Counterclaims, Dkt. 7, ¶ 16; and First Amended Counterclaim, Dkt. 15, ¶ 16; Opposition to Motion to Dismiss, Dkt. 27, Pg. 2 Lns. 1-5.

Moreover, Hyphy claimed on multiple occasions that it had allegedly "commissioned" Chavez, *and Chavez alone*, to record the Albums. *See* Hyphy's Counterclaims, Dkt. 7, ¶ 16; Hyphy's Amended Counterclaims, Dkt. 15, ¶ 16; Defendant's Opposition to Plaintiff-Counterdefendants' Motion to Dismiss Defendant-Counterclaimant's Counterclaims Dkt. 27, Pg. 1, Ln. 27-Pg. 2, Ln. 5; Hyphy's Reply to Counterdefendants' Challenge to The Validity of Certain Copyright Registrations Dkt. 45, Pg. 1, Lns. 16-18; Declaration of Jose Martinez in Support of Reply to Counterdefendants' Challenge to the Validity of Certain Copyright Registrations , Dkt. 45-1, Pg. 1, Lns. 8-16.

Chavez had no intent to transfer any ownership interest in the Albums to Hyphy nor is there any evidence in the record to suggest that he did.  Chavez Dec. Dkt. 46-2, ¶ 14. Furthermore, Jose Martinez[2] ("Martinez"), as a sophisticated music business executive, testified that he intentionally entered into an oral-only agreement with Chavez and other artists to distribute albums so that either party could terminate their arrangement at any time even though Martinez had retained lawyers in the past to draft written distribution and acquisition agreements. *See* Pg. 114, Ln. 25- Pg. 115, Lns. 1-3 of the Deposition Transcript of Jose Martinez ("Martinez Trans.") annexed to the Declaration of Seth L. Berman, Esq. ("Berman Dec.") as **Exh. "A"**.

### *Yellowcake's Ownership of the Albums*

Yellowcake is primarily engaged in the business of owning, managing and

---

[2] Martinez is the chief executive officer and owner of Hyphy Music, Inc. *See* Martinez Trans., Berman Dec. Exh. "A", Pg. 12, Lns. 4-5.

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

exploiting various intellectual property rights. *See* the Declaration of Kevin Berger ("Berger Dec."), ¶ 2. Colonize is a company engaged in the business of digital music distribution and distributes the Albums on behalf of Yellowcake. *See* Berger Dec., ¶ 13. Hernandez is a principal of Colonize. *See* the Declaration of David Hernandez ("Hernandez Dec."), ¶ 1.

On or about March 21, 2019, Yellowcake and Chavez entered into an Asset Purchase and Assignment Agreement ("APA Agreement"), whereby Yellowcake purchased Chavez's entire ownership of the rights, title and interests in the sound recordings which comprised the works of Los Originales De San Juan, including the Albums. *See* Berger Dec., ¶ 9.  A copy of the APA Agreement is annexed to the Berman Dec. as **Exh. "B"**.  In the APA, Chavez represented that he owned all rights transferred to Yellowcake therein. *See* Berman Dec. Exh. "B" ¶ 13(e).

Prior to entering into the APA, Yellowcake did due diligence and searched the United States Copyright Office ("USCO") to determine whether there were any potential competing copyright registrations filed for the Albums and found none, *because there were none*. *See* Berger Dec., ¶¶ 7-8. Following its execution of the APA Agreement, Yellowcake complied with all requirements set forth by the Copyright Act, 17 U.S.C. § 101, *et seq.*, by registering copyrights for each sound recording acquired by the APA Agreement, and also recorded the APA with the USCO. *See* Berger Decl., ¶¶ 11-12.  The USCO then issued Yellowcake a Certificate of Registration for each copyrighted Album. Complaint Dkt. 1, ¶ 2.[3]

### ***Hyphy's Unauthorized Exploitation of the Copyrighted Albums***

Sometime after execution of the APA Agreement and the issuance of the copyright registrations by the USCO, Yellowcake learned that Hyphy had been distributing copies of sound recordings from the Albums and created and/or uploaded videos containing unauthorized derivative works of the sound recordings to www.YouTube.com when

---

[3] This Court already took judicial notice of Yellowcake's copyright registrations in the Albums in its prior Order dated March 1, 2021. Order on Counter-Defendants' Motion to Dismiss ("Order") Dkt. 42, Pg. 5, fn. 1.

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

Colonize found that YouTube was reporting "conflicts" between Yellowcake and Hyphy because both were distributing videos with the same sound recordings. *See* Complaint, Dkt. 1, Exh. "A", ¶ 1. Berger Dec. at ¶ 18.

Shortly thereafter, in or about June 2020, Yellowcake filed "Takedown Notices" pursuant to 17 U.S.C. § 512 *et seq.* through YouTube claiming ownership of the songs and notified Hyphy's distributor, The Orchard, that Hyphy was infringing Yellowcake's copyrighted Albums. *See* the correspondence to The Orchard annexed to Berman Dec. as **Exh. "C"**.

Hyphy completely disregarded these notices and continued to exploit the copyrighted Albums, including but not limited to selling and streaming them on multiple digital service provider platforms such as Spotify, Apple Music, and Amazon Music, even after Yellowcake filed this lawsuit. *See* Hyphy's royalty reports extending to 2022 subpoenaed from The Orchard annexed to Berman Dec. as **Exh. "D"**. As such, Yellowcake was required under 17 U.S.C. § 512 *et seq.* and YouTube's protocols to file this action to protect its rights and to resolve any conflicts with the digital service provider platforms.

III. **Relevant Procedural History**

Accordingly, Yellowcake commenced this action for copyright infringement on July 16, 2020 (Complaint Dkt. 1). Defendant, Hyphy Music, filed its answer (Dkt. 8) and counterclaims (Dkt. 7) against Yellowcake, Colonize and Jose David Hernandez ("Hernandez") on August 19, 2020. On August 28, 2020, Defendant Hyphy Music, filed its First Amended Counterclaim (Dkt. 15). On October 2, 2020, Counterdefendants moved to dismiss causes of action numbers 1, 3, 4, 5 and 6 of the First Amended Counterclaims. (Dkt. 23). On October 16, 2020, Hyphy opposed Plaintiff-Counterdefendants' Motion to Dismiss. (Dkt. 27). Plaintiff-Counterdefendants replied to Hyphy's Opposition on October 27, 2020 (Dkt. 28), and Plaintiff Yellowcake submitted to the Court a request for Judicial Notice in support of Plaintiff and Counterdefendants' Rule 12(b)(6) Motion (Dkt. 29). By Order dated July 20, 2021 (Dkt.

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

42), the Court dismissed the counterclaims with leave to amend certain causes of action. No second amended counterclaim was filed by Hyphy leaving only Hyphy's second counterclaim against Yellowcake and Colonize for copyright infringement of certain copyrighted album artwork.  Also as a result of the motion to dismiss, there are no remaining counterclaims against Hernandez.  On August 3, 2021, Hyphy supplemented its reply to Plaintiff Yellowcake's challenge of validity of certain copyright registrations (Dkt. 45).  On August 10, 2021, following the Order dated July 20, 2021 (Dkt. 42), Plaintiff-Counterdefendants submitted its reply to Hyphy's supplemental briefing (Dkt. 46).  On August 17, 2021, Counterdefendants filed their Answer to Hyphy's First Amended Counterclaims (Dkt. 47).

Hyphy filed an *ex parte* application seeking to supplement its initial disclosure and to further respond to document production on October 12, 2022 (Dkt. 55).  The Court issued an order dated October 20, 2022 granting Hyphy's *ex parte* application (Dkt. 59).

Yellowcake now brings this Motion for Summary Judgment under Fed. R. Civ. P. 56.

## Discovery

Yellowcake served its first set of interrogatories on November 24, 2021, as well as two sets of Requests for Production, served on November 24, 2021, and October 27, 2022, respectively.  On February 4, 2022, Yellowcake served a subpoena to produce documents on The Orchard for which documents were produced on April 13, 2022, May 4 and 6, 2022, and May 11, 2022 (*see* Berman Dec. Exh. "D").  Hyphy responded to the First Set of Interrogatories (Berman Dec. **Exh. "E"**) and First Request for Production on January 18, 2022 (via email) (Berman Dec. **Exh. "F"**) and March 31, 2022 (Berman Dec. **Exh. "G"**). Hyphy served a Supplemental Response to the First Request for Production on October 10, 2022 (Berman Dec. **Exh. "H"**) and Response to Yellowcake's Section Set of Request for Production on November 28, 2022 (Berman Dec. **Exh. "I"**).

/ / /

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

6

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

## Fed. R. Civ. P. 56 Legal Standard

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

A party seeking summary judgment bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Celotex Corp v. Catrett,* 477 U.S. 317, 323 (1986). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). A moving party demonstrates summary judgment is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323 (quoting Fed.R.Civ.P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that demonstrate there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); *Matsuhita,* 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586, n. 11; Fed.R.Civ.P. 56(c). Where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id.* at 587.

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

7

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

# ARGUMENT

## I.    THERE IS NO GENUINE DISPUTE THAT HYPHY INFRINGED YELLOWCAKE'S COPYRIGHTED ALBUMS

The record indisputably shows that Yellowcake is the sole owner of the Albums which it purchased directly from Chavez, who Hyphy acknowledged on multiple occasions was the sole author, pursuant to the terms of a valid written instrument, the APA. Furthermore, the record shows that Yellowcake conducted proper due diligence before purchasing the Albums, found no other copyright registrations for the Albums and then properly filed registrations for the Albums after their purchase.  The record also shows that Hyphy infringed Yellowcake's rights by selling copies of the Albums, making derivative videos for some of the songs on the Albums and publicly performing those videos without authorization from Yellowcake, even after being made aware of Yellowcake's rights and that Hyphy profited from such acts of infringement. As such, Yellowcake is entitled to summary judgment on its first cause of action for copyright infringement.

"The Copyright Act affords copyright owners the 'exclusive rights' to display, perform, reproduce, or distribute copies of a copyrighted work, to authorize others to do those things, and to prepare derivative works based upon the copyrighted work." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017); *see* 17 U.S.C. § 106.

To prove a claim for copyright infringement, a plaintiff must establish the following: (1) ownership of a valid copyright, and (2) the defendant's exploitation of at least one exclusive right granted to the copyright owner under 17 U.S.C. § 106. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 351 (1991); *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019). Plaintiff easily establishes both requirements. Furthermore, copyright infringement is essentially a strict liability tort. *See Monge v. Maya Magazines, Inc.,* 688 F.3d 1164, 1170 (9th Cir. 2012) ("[T]he innocent intent of the defendant constitutes no defense to liability.").

/ / /

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

## A. **The Record Clearly Shows that Yellowcake is the Owner of the Copyrighted Works**

To establish ownership in a copyrighted work, a plaintiff must first establish that it owns a valid copyright registration for its work. *See Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017) ("[Plaintiff] was required to show registration as an element of an infringement claim.") Copyright registration is considered prima facie evidence of the validity of the copyright (*see* 17 U.S.C. § 410(c); *Mophie, Inc. v. Shah*, cv-13-1321, 2014 U.S. Dist. LEXIS 185196, at *35 (C.D. Cal. November 12, 2014)), and a plaintiff's certificates of registration entitle him to a "rebuttable presumption of originality." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1075 (9th Cir. 2000) (internal citation omitted).

Furthermore, "Copyright owners may transfer '[a]ny exclusive rights comprised in a copyright, including any subdivision of any of the rights specified in [17 U.S.C. § 106],' . . . so long as the transfer is evidenced by a signed writing." *Corbello v. Devito*, 777 F.3d 1058, 1062 (9th Cir. 2015) (citing 17 U.S.C. §§ 201(d)(2) and 204(a)); *see also Jules Jordan Video, Inv. v. 144942 Canada, Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010). Specifically, the Copyright Act provides that a "transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. 204(a).

Here, on or about March 21, 2019, Yellowcake and Chavez, entered into the APA, whereby Yellowcake, among other things, purchased Chavez's entire ownership of the rights, title and interest in the Albums. *See* the APA, Berman Dec., Exh. "B". The works constituting Albums are sound recordings and are original works of authorship constituting copyrightable subject matter within the meaning of 17 U.S.C. § 102. *See VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 881-82 (9th Cir. 2016) ("[17 U.S.C. 102] treats sound recordings identically to all other types of protected works.")

The APA, among other things, warranted and represented that Chavez

transferred his rights in the Albums "free and clear" of any prior obligation. *See* Berman Dec., Exh. "B" ¶ 3(e). In addition, prior to entering into the APA, Yellowcake diligently searched the USCO in order to ascertain whether anyone else had filed a copyright registration for any of the Albums. *Yellowcake found no such registrations because none existed.* *See* Berger Dec., ¶¶ 7-8.

Thus, Yellowcake is the rightful owner of the copyrighted Albums. *See* 17 U.S.C. § 204(a); 17 U.S.C. § 101; *see also Radio Television Espanola S.A. v. New World Ent't, Ltd., 183 F.3d 922, 927 (9th Cir. 1999)* (holding that a transfer of copyright ownership, is valid if the instrument of the transfer is in writing and signed by the owner of the rights conveyed or by such owner's duly authorized agent.) This contention cannot be in dispute as this Court has previously held, prior decision on Yellowcake's motion to dismiss Defendants' counterclaims that "[t]here is no dispute that Chavez entered into a written transfer agreement with YCH ["Yellowcake"]". *See* Dkt. 42 at pp. 11-12.

Indeed, Yellowcake's ownership of the copyrighted works is further evidenced by the fact that, following the APA Agreement, Yellowcake complied with all requirements set forth by the Copyright Act, 17 U.S.C. § 101, *et seq.*, by registering copyrights for each Album acquired by the APA Agreement in addition to recording the written assignment with the USCO. Further, this Court has already taken notice of Yellowcake's registrations and Hyphy did not file a counterclaim for declaratory judgment contesting the registrations or Yellowcake's ownership of the Albums. *See* Complaint, Dkt. 1, Exh. "A"; Order Dkt. 42, Pg. 5; Amended Counterclaims, Dkt. 15.

Accordingly, Yellowcake is the undisputed owner of the Albums thus satisfying the first prong of its cause of action.

### B.  Defendants Infringed the Copyrighted Albums

Yellowcake has also sufficiently established that Defendants infringed upon its copyrighted Albums as Defendants' have exploited the exclusive right(s) granted to Yellowcake under 17 U.S.C. § 106. Among the exclusive rights granted to copyright owners include, among others, (1) the right to reproduce the work, (2) the right to prepare

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

derivative works, (3) the right to distribute copies, (4) the right to perform the work publicly, and (5) the right to display the work publicly. *See* 17 U.S.C. § 106; *Mahon v. Mainsail LLC*, 20-cv-01523, 2020 U.S. Dist. LEXIS 145591, at *15 (N.D. Cal. Aug. 7, 2020).

After entering into the APA Agreement, and after the USCO issued Certificates of Registration for each Album, Yellowcake came to learn that Hyphy was distributing videos with some of the sound recordings on YouTube and still selling the Albums on multiple digital service provider platforms like Apple Music and Spotify because Yellowcake had received "conflict notices" from YouTube. *See* Berger Dec., ¶¶ 15-19.

After this lawsuit was commenced, Hyphy admitted in its interrogatory responses that it exploited the Albums in direct violation of Yellowcake's exclusive rights provided by 17 U.S.C. § 106 by selling the Albums through multiple digital service provider platforms through its distributor, The Orchard. *See* Berman Dec., Exh. "E", Responses 2, 3 and 4. Furthermore, documents produced by Hyphy itself and those subpoenaed from Hyphy's distributor, The Orchard, also show that Hyphy continued to sell copies of the Albums after receiving the Takedown Notices from YouTube and even after this litigation was commenced. *See* Berman Dec. Exh. "C".

Furthermore, Hyphy's admission that it also created and uploaded videos which were unauthorized derivative works of Yellowcake's copyrighted sound recordings to www.YouTube.com, is a separate violation of 17 U.S.C. § 106. *See* Berman Dec., Exhs. "C" and "E", Responses 2, 3 and 4. The uploading of the infringing videos to YouTube itself constitutes an act of direct infringement of the copyrighted sound recordings on the Albums. *See* *Shropshire v. Canning*, 809 F. Supp. 2d 1139 (N.D. Cal. 2011). As such, there is no genuine dispute that Hyphy violated Yellowcake's rights under 17 U.S.C. § 106.

## C. **Yellowcake's Damages**

Since Yellowcake has sufficiently established that Defendants impermissibly infringed its copyrighted Albums, Yellowcake is entitled to its actual damages suffered

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

as a result of Defendants' infringements. 17 U.S.C. § 504(b) provides, in relevant part, that: "The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue…"

Accordingly, as a matter of law, all Plaintiff must provide in order to establish Defendants' profits is proof of the Defendants' gross revenue emanating from their infringing conduct. *See id*; *see also Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1075, n. 9 (9th Cir. 2022) ("As the sales price of the Xue Xu products and the number of units sold can be used to calculate H&M's gross revenue from the Xue Xu products with nothing more than simple arithmetic, Unicolors satisfied its burden in proving disgorgement damages, even without placing an expert damages witness on the stand.") (citing 17 U.S.C. § 504(b)).

Plaintiff easily satisfies its burden through, among other things, the responses provided by Defendants themselves to Plaintiff's interrogatories in which Defendants admitted the revenue they have received as a result of their infringing conduct.

In response to Yellowcake's interrogatories, Hyphy admitted to receiving the following gross amounts for the exploitation of each Album:

       (i) "*El Campesino*," –$20,000;

       (ii) "*Des de la Cantina de Mi Barrio (En Vivo)*," –$20,000;

       (iii) "*Nuestra Historia en Vivo*," –$20,000;

       (iv) "*Corridos de Poca M*," –$20,000;

       (v) "*Amigos y Contrarios*" –$20,000; and

       (vi) "*Naci Con Suerte de Rey (Mariachi)*" –$20,000.

*See* Berman Dec. Exh. "E", Response 2(vii) and 4(iii).  As such, Yellowcake is entitled to $120,000 in profits from Hyphy.

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

## II.    THE RECORD SHOWS THAT THERE IS NO GENUINE ISSUE OF FACT CONCERNING YELLOWCAKE'S OWNERSHIP OF THE ALBUMS

### 1.    Hyphy's First Failed Co-Ownership Claim : Hyphy is Not a Co-Owner Via A Work-For-Hire Agreement with Chavez.

Knowing that Hyphy has no legitimate excuse for its actions, Hyphy, only after getting sued by Yellowcake, manufactured the theory that it is the owner of the Albums. This theory was obviously manufactured by counsel and only asserted in a desperate attempt by Hyphy to avoid strict liability for its acts of infringement.

Hyphy initially claimed in its Answer and Counterclaims to be the sole owner of the Albums based on an oral work-for-hire agreement with Chavez. *See* Counterclaim Dkt. 7, ¶ 16. However, this theory was found legally deficient and the Court dismissed Hyphy's counterclaim against Yellowcake for copyright infringement of the Albums, in part because Hyphy could not be the owner of the copyrights in the Albums by virtue of an oral agreement with Chavez due to the copyright statute of frauds found in 17 U.S.C. § 204.  *See* Order Dkt. 42.

Furthermore, Chavez denied ever selling or assigning any interest in the Albums to Hyphy or ever being an employee of Hyphy. *See* Chavez Dec. Dkt. 46-2. Moreover, when Yellowcake first sent the Takedown Notices to Hyphy in June of 2020, surely Hyphy would have challenged Yellowcake's ownership claim and filed a declaratory judgment action if it believed it truly owned the Albums.  Hyphy did not file such an action, thereby tacitly admitting that it did not own them. It is obvious that Hyphy's claim of ownership is nothing more than a contrived defensive and leverage strategy that was first asserted only *after* Hyphy was sued for refusing to stop exploiting the Albums.

### 2.    Hyphy Second Failed Co-Ownership Claim : Hyphy is Not a Co-Author with Chavez.

Hyphy also baselessly claimed that it was a co-author with Chavez because it marketed the albums and provided the typical functions of a record label and record

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

distributor.  *See* First Amended Counterclaim Dkt. 15, ¶ 17; Hyphy's Interrogatory Responses 5, 6, 9 and 10 Berman Decl. Exh. "E".  As set forth in detail below, this claim was refuted by Chavez and Rosales, the audio engineer who recorded most of the Albums. *See* Chavez Dec. Dkts. 46-2 and Rosales Dec. 46-1. Even if such claims were true, which they are not, such general record label  activities are not sufficient works of original authorship to deem Hyphy a co-owner with Chavez as a matter of law.

Under the Copyright Act, a "joint work" is a work prepared by two or more authors with the *intention* that their contributions be merged into inseparable or interdependent parts of a unitary whole. 17 U.S.C. § 101. An "author" is "the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence v. Reid,* 490 U.S. 730, 737 (1989).

*In Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000), the Ninth Circuit Court of Appeals set forth three factors for determining whether a work is jointly authored. "First, an author superintend[s] the work by exercising control." *Id. at 1234* (quoting *Burrow-Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 61 (1884)). "Second, putative coauthors make objective manifestations of a shared intent to be coauthors . . . ." *Id.* "[T]hird, the audience appeal of the work turns on both contributions and 'the share of each in its success cannot be appraised.'" *Id.* (quoting *Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 266, 267 (2d Cir.), modified by 140 F.2d 268 (2d Cir. 1944)).

The creativity one must contribute to be an author must be more than merely de minimis. *Stillwater Ltd. v. Basilotta*, 2020 U.S. Dist. LEXIS 137746. Even if there is an agreement to collaborate, if there is only a non-copyrightable contribution made by the party in question that contribution will not be enough, in the Ninth Circuit, to meet the requirements for joint authorship. *Ashton-Tate v. Ross*, 916 F.2d 516 (9th Cir. 1990); *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962 (9th Cir. 2008).

In *Stillwater Ltd.*, three parties attempted to argue joint authorship of the songs

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

14

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

in question, Radialchoice Ltd. (a recording company formed by Lait), Stillwater (the recording company Lait transferred ownership of the disputed sound recordings and the "Mix and Spanish Recordings" to), and Greg Mathieson (music producer of the songs). *Stillwater Ltd.*, 2020 U.S. Dist. LEXIS 137746 (C.D. Cal. 2020). The court determined it was not enough of a contribution for Radialchoice as the record label, to be considered a coauthor just because they had financed, approved, marketed, and distributed the work. *Id.* The court also found that Lait's direction, vision, or idea for the songs did not amount to a copyrightable contribution because they were not "fixed" in a "tangible medium of expression" and the mere supply of direction or ideas was not enough. *Stillwater Ltd.*, 2020 U.S. Dist. LEXIS 137466 (C.D. Cal. 2020); *S.O.S. Inc. v. Payday Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989). Finally, the court concluded Mathieson's contributions failed to meet the *Aalmuhammed* criteria.

Again, "[T]o be an author, one must supply more than mere direction or ideas; one must 'translate an idea into a fixable tangible expression entitled to copyright protection." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989); *Ashton-Tate*, 916 F.2d at 521. "[A] person who merely describes to an author what the commissioned work should do or look like is not a joint author for the purposes of the Copyright Act." *See S.O.S., Inc.*, 886 F.2d at 1087. In S.O.S., Inc., the Ninth Circuit found that the defendant, Payday, Inc., "did nothing more than describe the sort of programs Payday wanted S.O.S. to write." *See id.* Even if there is an agreement to collaborate, if there is only a noncopyrightable contribution made by the party in question that contribution will not be enough, in the Ninth Circuit, to meet the requirements for joint authorship. *Ashton-Tate v. Ross*, 916 F.2d 516 (9th Cir. 1990); *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962 (9th Cir. 2008).

First, Chavez and Rosales, the audio engineer, declared that Chavez had complete control over the production and recording of the Albums. *See* Chavez Dec. Dkt. 46-2 and Rosales Dec. Dkt. 46-1. Furthermore, in its Initial Counterclaims, Hyphy admitted that *Chavez alone* was the original author of the albums and that Hyphy only

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

offered nominal artistic direction typical of a record label or distributor and not that anyone affiliated with Hyphy made any copyrightable contribution. Specifically, Hyphy alleged that:

> 16. On February 2013, Counterclaimant Hyphy Music entered into an oral exclusive recording agreements with Jesus Chavez (hereinafter, "Agreement") whereby Counterclaimant commissioned Chavez, for a period of five (5) years, to exclusively provide services as a recording artist in the making of sound and audiovisual recordings embodied in albums (hereinafter, "Los Originales Albums"). Pursuant to the Agreement, Counterclaimant agreed to: 1) select the musical compositions to be recorded on the Los Originales Albums; 2) commission and/or provide the sound engineers and audiovisual directors; 2) produce the musical performances to be embodied on the Los Originales Albums; 3) direct the recording and filming of musical and the audiovisual performances to be embodied on the Los Originales Albums; and 4) pay Chavez a fixed amount per Los Originales Album. In turn, Chavez agreed to follow Hyphy's artistic direction, perform and record the sound and audiovisual recordings embodying the musical compositions chosen and produced by Hyphy Music, as well as to grant Counterclaimant the non-exclusive right to utilize Counterdefendant Chavez's name and likeness as well as his musical group's name in connection with the exploitation of the Los Originales Albums in perpetuity. In consideration for the services provided and payment thereto, Chavez agreed that Counterclaimant would be the owner of all title, right, and interest in and to the Los Originales Albums (including without limitation the copyrights and any extensions and renewals thereto) from the inception of the creation of each Los Originales Album.

> 17. In reliance on the above Agreement, in addition to commissioning Counterdefendant Chavez to perform the musical performances embodied on the Masters and paying Chavez for all right title and interest in the Los Originales Albums, Counterclaimant contributed sufficient original authorship in the creation of the Los Originales Albums by selecting the musical compositions, commissioning and directing engineers and directors and/or providing the services itself, directing the recording and filming of the musical and audiovisual performances to be embodied on the Los Originales Albums and producing the Los Originales Albums. In doing so, Counterclaimant contributed sufficient originality to these works so as to make Counterclaimant, at minimum, the co-author, co-owner, and joint owner of the works under the Copyright Act. *See* Dkt. 7, ¶¶ 16 and 17.

Hyphy then made the same allegations in its First Amended Counterclaim. *See* Dkt. 15, ¶¶ 16 and 17.

None of these actions if true, which they are not, constitute the contribution of any original authorship which can be fixed in a tangible medium and thus are legally insufficient to be deem either Martinez or Hyphy a co-author of any of the Albums.

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

Second, there is absolutely no objective evidence in the record to prove that Chavez and Hyphy or Martinez knowingly intended to be co-authors of the Albums which is Hyphy's and Martinez's burden to prove in order to claim co-authorship.

Third, since Hyphy provided no performance or other creative contributions to the Albums, Hyphy did not provide any copyrightable contribution to the Albums that contributed to their success and there can be no audience appeal that can be associated with Hyphy. As such, Hyphy was not a joint author of the Albums under the *Aalmuhammed* criteria and cannot claim co-ownership as an affirmative defense.

### 3. Hyphy's Third Failed Co-Ownership Claim : Hyphy is Not a Co-Owner of the Albums by Virtue of the Contrived Assignments from the Former Backing Musicians

On the eve of the initial deadline to dispositive motions in this action, Hyphy realized that its theory of ownership was defective and changed it again for a third time. Hyphy now claims that it is a co-owner of the Albums because it allegedly acquired an interest from Domingo Torres Flores ("Torres") and Alfonso Vargas ("Vargas") two former backing musicians who often toured with Chavez and who acted as studio musicians who played on the Albums when they were recorded. Conveniently, Hyphy now claims Vargas and Torres were coauthors and that Hyphy obtained their interest in the Albums pursuant to two Assignment Agreements (*see* Dkt. 55-4) (the "Alleged Assignments").[4]  However, this new "ownership through assignment" theory is also refuted by the record and Hyphy's prior admissions.

First and foremost, Chavez is the only author of the Albums as Hyphy previously admitted in its own pleadings and declarations. Specifically, Hyphy acknowledged in the record that Los Originales de San Juan was Chavez's band and *allegedly commissioned him*, *and him alone*, to allegedly record the Albums for Hyphy

---

[4] However, Hyphy did not bother to amend its First Amended Counterclaim and there is no such allegations of co-ownership of the Albums by virtue of assignments from Torres or Vargas alleged in the First Amended Counterclaim.  Nor did Torres or Vargas ever file their own actions claiming ownership.  *See* First Amended Counterclaim Dkt. 15.

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

*and that Chavez alone had the authority to allegedly transfer all of the rights to the Albums to Hyphy when they were asserting their initial debunked theory of ownership by work-for-hire through Chavez*. See <u>Dkt.</u> 42 This was admitted by Hyphy in its initial Counterclaim (*see* <u>Dkt. 7</u>, ¶ 16 ); First Amended Counterclaims (*see* <u>Dkt. 15</u>, ¶ 16); and most tellingly, in the sworn declaration of Hyphy's owner, Jose Martinez (*see* <u>Dkt. 45-1</u>).  This was further corroborated by Rosales, the audio engineer who helped record the studio Albums who denied that anyone other than Chavez was the author of the Albums or that anyone else provided artistic and creative input other than Chavez. *See* Rosales Dec. <u>Dkt. 46-1</u>.  Hyphy produced no objective evidence to refute the facts alleged in Rosales' declaration.

Second, when Hyphy filed its baseless copyright registrations on a work-for-hire basis, Hyphy's registrations did not identify Vargas or Torres as coauthors in their registrations. *See* Counterclaim <u>Dkt. 7</u>.  Since Hyphy allegedly obtained its interest as a work-for-hire when it filed its registrations in 2020, it could not have obtained its alleged interest by virtue of an assignment from Vargas and Torres which were not even allegedly executed until March 22, 2022.  *See* <u>Dkt. 55-4;</u> *Studio S Imports, LLC v. Deutsch Imports, LLC*, CV1910666CJRAOX, 2021 WL 3598571, at *4-5 (CD Cal June 21, 2021).

Third, the terms, circumstances and timing of the disclosure of the Alleged Assignments proves that they have absolutely no credibility whatsoever and that they were contrived by Hyphy to try and create the appearance of an issue of fact on the eve of the prior deadline to file a summary judgment motion in order to try and fend off Yellowcake's obvious right to summary judgment on its claims for copyright infringement.

Specifically, *both Alleged Assignments were allegedly signed on March 22, 2022, but they were not disclosed by Hyphy until October 10, 2022*, well after the June 28, 2022 cutoff for fact discovery under the Court's initial scheduling order and only fourteen days before the October 24, 2022 cutoff for filing summary judgment motions.

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

*See* the Initial Scheduling Order, Dkt. 50; Hyphy's late service of the Alleged Assignments on October 10, 2022, Berman Dec. Exh. "H", and Hyphy's motion to compel acceptance of late disclosure, Dkt. 55. *Telling, nowhere in its motion to supplement its disclosure did Hyphy explain why it only just produced the Alleged Assignments in October of 2022 when they were allegedly executed on March 22, 2022.* *See* Hyphy's *Ex Parte* Application for Leave to Supplement Initial Disclosures and Responses to Request for Production of Documents Dkt. 55.

Furthermore, when Martinez was deposed on July 26, 2022, a mere four months after the Alleged Assignments were executed on March 22, 2022 *he made no mention of these Alleged Assignments at all,* even though Vargas and Torres testified that Martinez gave them the Alleged Assignments and they executed them in Hyphy's office. *See* Deposition Transcript of Alfonso Vargas ("Vargas Trans.") annexed to Berman Dec. as **Exh. "J"** Pg. 55 Lns. 8-13; Pg. 56, Lns. 8-12, and Deposition Transcript of Domingo Torres Flores ("Torres Trans.") annexed to Berman Dec. as **Exh. "K"** Pg. 57, Ln. 9-11; Pg. 58, Lns. 1-19; Pg. 60, Lns. 11-16. It is hard to believe that Hyphy would be in possession of such allegedly critical original documents but *not even mention their existence during Martinez's deposition and then mistakenly fail to disclose them for nearly eight months after their execution (and then only produce them right before the deadline for filing summary judgment motions).*

Furthermore, the terms of the Alleged Assignments themselves are also so suspect that the only logical inference that can be drawn from them is that they were created after the fact for the purpose of trying to create a new theory of ownership of the Albums after Hyphy's first two theories failed. First, both Vargas and Torres allegedly assigned their alleged interests in the Albums to Hyphy for only one dollar ($1.00) each. *See* Dkt. 55-4. Meanwhile, Yellowcake paid Chavez fair-market value in the amount of Five Hundred Thousand Dollars ($500,000.00) for the entire interest in the Albums. *See* Berger Dec., ¶ 10. It is hard to believe that Vargas and Torres would assign their alleged interest in such valuable copyrights to Hyphy for only one dollar

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

each if they truly owned such interests. Torres and Vargas also testified that they never even read the Alleged Assignment before they executed them and did not know what they were for. *See* Torres Trans. Berman <u>Exh. "K"</u>, Pg. 60, Lns. 11-16; and Vargas Trans. Berman Dec. <u>Exh. "J"</u>, Pg. 56, Lns. 8-12. It is also suspect that the Alleged Assignments do not state what percentage of the Albums Vargas and Torres allegedly own and therefore these alleged Assignment Agreements are invalid on their face as vague. *See* <u>Dkt. 55-4</u>.

Vargas also admitted to having a motive in helping Hyphy with this farce. Unfortunately, Chavez had two strokes that left him unable to perform anymore. Vargas and Torres then attempted to tour and release new music as Los Originales De San Juan through Hyphy Music, Inc. without Chavez, even though it was his band. In response, Chavez, as owner of the trademark for Los Originales De San Juan, sent a cease and desist letter to Vargas and Torres who acknowledged Chavez's ownership of the mark and complied with the cease and desist letter and stopped using the name. *See* Berman Dec. **<u>Exh. "L"</u>**. Vargas also then admitted that they went to Martinez, who said that he would help them release new music for their new band if they signed the Alleged Assignments for both Hyphy and Morena Music, Inc. ("Morena") and helped Hyphy and Morena, who was also sued by Yellowcake for similar acts of copyright infringement, in their lawsuits with Yellowcake. *See* Berman Dec. <u>Exh. "J"</u>, Vargas Trans. Pg. 56, Ln. 25-Pg. 58, Lns. 1-17, Pg, 59, Lns. 8-21.[5]

Furthermore, Hyphy never produced any written co-author agreement or partnership agreement amongst Chavez, Torres and Vargas, and never produced any objective evidence whatsoever that there was an understanding that Vargas and Torres were coauthors of the Albums with Chavez. Nor did Vargas or Torres ever file any copyright registrations for their alleged ownership of the Albums, or demanded any

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

---

5 It should be noted that both Vargas and Torres also admitted that they were sitting in Hyphy's conference room when they were deposed in this action. *See*, Vargas Trans, Berman Dec., <u>Exh. "J"</u>, Pg. 55, Lns. 14-17, Torres Trans. Berman Dec, <u>Exh. "K"</u>, Pg. 58, Lns 10-19.

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

royalties from Chavez from the sale of the Albums which obviously they would have had they truly believed that they were co-owners. Lastly, notably, neither Vargas nor Torres ever filed an action for declaratory judgment or otherwise against Chavez or Yellowcake claiming to be a co-owner of the Albums even though they were released between 2013 and 2015.

Simply put, there is not a shred of credible objective evidence to prove that either Vargas or Torres were ever co-authors of the Albums and the timing, circumstances and terms of the Alleged Assignments show that they lack any credibility. As such, Hyphy did not obtain any valid ownership interest in the Albums by virtue of the Alleged Assignments. As such, Hyphy does not have an affirmative defense that it is a co-owner of the Albums which would preclude granting Yellowcake summary judgment.

Lastly, even if Hyphy did take assignment of a percentage of the Albums from Vargas and Torres, it would not be a defense to Yellowcake's claim of copyright infringement. In fact, the Alleged Assignments act as admissions of infringement. Specifically, Hyphy is now claiming that it took assignment from Vargas and Torres on March 22, 2022 and ,therefore, by its own admission, could not be an alleged co-owner until March 22, 2022. However, Yellowcake purchased the Albums from Chavez on March 21, 2019, and Hyphy immediately started infringing them by selling them and uploading videos on YouTube. Thus, at a minimum, Hyphy has admitted to infringing Yellowcake's interest in the Albums between March 21, 2019 and at least March 22, 2022 when it first allegedly obtained its interest in the Albums from Torres and Vargas by virtue of the Alleged Assignments, although it did not.

## III. HYPHY HAS PRODUCED NO ADMISSIBLE OR CREDIBLE EVIDENCE AT ALL THAT YELLOWCAKE OR COLONIZE INFRINGED HYPHY'S ALBUM ARTWORK.

Not only is Yellowcake entitled to summary judgment on its cause of action for copyright infringement against Hyphy, Yellowcake and Colonize are also entitled

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

to summary judgment in their favor on Hyphy's second counterclaim for copyright infringement which alleges that Yellowcake and Colonize had used artwork that Hyphy created for the Albums without Hyphy's permission.  *See* Dkt. 15 ¶¶ 42-52.

As set forth in detail below, Yellowcake and Colonize are entitled to summary judgment on this alleged claim of copyright infringement for the single reason that neither Yellowcake nor Colonize ever used this artwork, and Hyphy has failed to provide any admissible or credible proof that either Yellowcake or Colonize did.  *See* Berger Dec. ¶ 26; Hernandez Dec., ¶ 11.

Not only that but, Yellowcake and Colonize came to discover that Hyphy, in collusion with Morena Music, Inc., a defendant in another action *Yellowcake, Inc. v. Morena Music, Inc., et al.,* Case No. 1:0-cv-787-JLT-BAM, who has colluded with Hyphy and is represented by the same counsel, have committed a fraud on the Court. Specifically, Yellowcake discovered that in fact it was Hyphy and Morena who were the parties who uploaded the alleged infringing uses of Hyphy's artwork to the online record store even though it is Hyphy who is trying to blame Yellowcake for doing so. *See*, Hernandez Dec. ¶¶ 11-19.

It is Hyphy's obligation to submit proof that Yellowcake and Colonize actually infringed one of Hyphy's rights under § 106 of the Copyright Act and to prove damages. However, during the course of discovery, Hyphy never produced any legitimate evidence that either Yellowcake or Colonize had used any of Hyphy's copyrighted album cover artwork.  The only alleged evidence of infringement produced by Hyphy was screenshots of Hyphy's alleged album covers on an online record store named Daddy Kool Records. See Dkt. 55-3.

However, as set forth in the Berger and Hernandez Declarations, Yellowcake created its own artwork for the Albums after their acquisition and neither Yellowcake nor Colonize ever sold or distributed any of the Albums through Daddy Kool Records. In fact, Daddy Kool Records was never a distribution customer of either Yellowcake or Colonize, and neither entity distributed any titles, let alone the Albums with Hyphy's

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

artwork.  *See* Berger Dec. 25-33; Hernandez Dec. 11-19.

Furthermore, the "evidence" relied on by Hyphy, which are screenshots of the Daddy Kool Records store, produced by Hyphy *do not reference either Yellowcake or Colonize anywhere on the documents*.

Tellingly, Hyphy failed to authenticate any of the screenshots.  There is no evidence in the record as to who actually uploaded the album artwork or sound recordings to the Daddy Kool Records website. The documents were not produced pursuant to a valid subpoena or accompanied by a business records certification from Daddy Kool Records. Since there is no foundation to identify who created these documents or when they were created, they are inadmissible for the purposes of supporting a claim of copyright infringement against Yellowcake or Colonize.  *See*, *Canada v. Blain's Helicopter, Inc.*, 831 F.2d 920, 9 Fed. R. Serv.3d 727 (evidence that lacks a foundation cannot be considered on a motion for summary judgment).

Most disturbingly, by submitting these documents as alleged proof of Yellowcake and Colonize's infringement of Hyphy's artwork, both Hyphy and nonparty Morena have essentially committed a fraud on this Court.

Specifically, when Hyphy first disclosed these screenshots and alleged that it was Yellowcake who uploaded the artwork to Daddy Kool Records online store, Yellowcake and Colonize decided to investigate these claims as they had no knowledge of or business dealings with Daddy Kool Records. Yellowcake and Colonize were able to track down the digital distributor who distributes to Daddy Kool Records and discovered that it was Morena Music, Inc. d/b/a Long Play Music who allegedly uploaded Hyphy's album covers and sound recordings to Daddy Kool Records' website, not Yellowcake or Colonize. *See* the Hernandez Declaration at ¶¶ 15-17 and Exh. "A" to the Hernandez Declaration.

As such, Hyphy and Morena knowingly uploaded the album artwork and sound recordings to Daddy Kool Records and then attempted to blame Yellowcake and Colonize for it. This is further supported by the fact that Hyphy did not produce these

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

documents until after the initial close of discovery and on the verge of the prior deadline for filing summary judgment because they knew they had no evidence to support their claims of copyright infringement against Yellowcake or Colonize. *See* Hyphy's *Ex Parte* Application for Leave to Supplement Initial Disclosures and Responses to Request for Production of Documents Dkt. 55.

Furthermore, the document also actually strengthens Yellowcake's claim of ownership of the sound recordings of these albums because under where it says "label" it is followed by the letters "JC" which stands for Jesus Chavez which means that Hyphy acknowledged that Jesus Chavez was the owner of the albums at the time they were being distributed by Hyphy and not owned by Hyphy. *See* Hyphy's *Ex Parte* Application for Leave to Supplement Initial Disclosures and Responses to Request for Production of Documents Dkt. 55-3.

Lastly, even if Yellowcake and Colonize did use Hyphy's album artwork, which they did not, Hyphy has failed to produce any admissible evidence to substantiate that they suffered any monetary damages as a result.

As such, Yellowcake and Colonize are entitled to Summary Judgment in their favor on Hyphy's Second Counterclaim for copyright infringement.

## **CONCLUSION**

For all of the foregoing reasons, it is respectfully requested that this Court: (i) grant Yellowcake's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 on its first cause of action for copyright infringement against Defendants; (ii) issue a judgment holding that Hyphy is liable to Yellowcake for damages in the amount of $120,000; (iii) issue a declaratory judgment that Yellowcake is the sole and exclusive owner of the Albums; (iv) direct the United States Copyright Office to cancel Hyphy's copyright registrations in the following albums ((a) Los Originales de San Juan- El Campesino - SR 0000810777; (b) Los Originales de San Juan- Corridos de Poca M - SR 0000869114 (2020-04-13); (c) Los Originales de San Juan- En Vivo Desde La Cantina de Mi Barrio – SR 0000820139; and (d) Los Originales de San Juan- Nuestra

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

24

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

1   Historia En Vivo – SR 0000876925; (v) issue an permanent injunction pursuant to 17

2   U.S.C. § 502 prohibiting Hyphy, Martinez or any of their employees or agents from

3   exercising any of the rights provided by 17 U.S.C. § 106 with regards to the Albums;

4   and (vi) issue an order finding that Yellowcake and Colonize are entitled to summary

5   adjudication on Hyphy's second counterclaim for copyright infringement; and (vii)

6   together with such other and further relief as the court may deem just and proper.

7   Dated:  July 14, 2023

8                                              Respectfully submitted,

9                                              **ABRAMS FENSTERMAN, LLP**

10                                             By: /s/ Seth L. Berman

11                                             Seth L. Berman, Esq. (*admitted pro hac vice*)
                                               ***Attorneys for Plaintiff Yellowcake, Inc., and***
12                                             ***Counterdefendants Yellowcake, Inc., and***
                                               ***Colonize Media, Inc.***
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system on this 14th day of July 2023, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those that are indicated as non-registered participants, if any.


/s/ Seth L. Berman
Seth L. Berman, Esq.

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S RULE 56 MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638