Whitney, Thompson & Jeffcoach LLP
Mandy L. Jeffcoach, #232313
  mjeffcoach@wtjlaw.com
William H. Littlewood, #202877
  blittlewood@wtjlaw.com
Jaskarn S. Chahal, #348641
  jchahal@wtjlaw.com
970 W. Alluvial Ave.
Fresno, California 93711
Telephone:   (559) 753-2550
Facsimile:    (559) 753-2560

Attorneys for JESUS CHAVEZ, SR.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| YELLOWCAKE, INC., a California corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>HYPHY MUSIC, INC.,<br><br>  Defendant. | Case No. 1:20-CV-00988-JLT-BAM<br><br>**JESUS CHAVEZ, SR.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   September 29, 2023<br>Time:  9:00 a.m.<br>Crtrm.: 4<br><br>The Hon. District Judge Jennifer L. Thurston |
| HYPHY MUSIC, INC.,<br><br>  Cross-Complainant,<br><br>  v.<br><br>YELLOWCAKE, INC.; COLONIZE MEDIA, INC.; JOSE DAVID HERNANDEZ; and JESUS CHAVEZ SR.,<br><br>  Cross-Defendants. | |

337.0 05907510.000

JESUS CHAVEZ, SR.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. RELEVANT FACTUAL AND PROCEDURAL HISTORY .....................................................2

III. LAW AND ARGUMENT ......................................................................................................3

    A.    General Legal Authority Regarding Motions For Summary Judgment ....................3

    B.    Counterclaimant's Eighth Claim for Relief Should Be Adjudicated in Favor of Chavez Because Copyright Ownership Requires a Signed Writing ......................5

    C.    Counterclaimant's Eighth Claim for Relief Should Be Adjudicated in Favor of Chavez Because the Los Originales Albums are not a Work Made for Hire ..........................................................................................................................6

    D.    Counterclaimant's Attempt to Avoid Summary Judgment Based on Alleged Co-Ownership or Co-Authorship of the Copyrighted Albums Is Both Factually and Legally Infirm ....................................................................................7

        1.    *Counterclaimant is not a co-owner of the Albums via a work-for-hire with Chavez* ..................................................................................................7

        2.    *Counterclaimant is not a co-author with Chavez* ............................................8

        3.    *Counterclaimant is not a co-owner of the Albums by virtue of the contrived assignments from the backing musicians* .....................................11

IV. CONCLUSION .....................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Aalmuhammed v. Lee* (9th Cir. 2000) 202 F.3d 1227 ........................................................................ 9

*Anderson v. Liberty Lobby, Inc*. (1986) 477 U.S. 242, 247, 248, 255 ......................................... 3, 4

*Ashton-Tate v. Ross* (9th Cir. 1990) 916 F.2d 516, 521 .................................................................. 10

*Burrow-Giles Lithographic Co. v. Sarony* (1884) 111 U.S. 53, 6 ..................................................... 9

*Celotex Corp. v. Catrett* (1986) 477 U.S. 314, 317, 322, 323, 324, 325.................................. 3, 4, 5

*Community for Creative Non-Violence v. Reid* (1989) 490 U.S. 730, 737. ................................. 6, 9

*Corbello v. Devito* (9th Cir. 2015) 777 F.3d 1058, 1062 .................................................................. 5

*Crawford-El v. Britton* (1998) 523 U.S. 574, 600............................................................................ 4

*Edward B. Marks Music Corp. v. Jerry Vogel Music Co.* (2d Cir. 1944) 140 F.2d 266, 267........... 9

*Effects Associates, Inc. v. Cohen* (9th Cir. 1990) 908 F.2d 555, 556, 557 ....................................... 5

*Eichman v. Fotomat Corp.* (9th Cir. 1989) 880 F.2d 149, 157 ......................................................... 8

*Estate of Phillips v. City of Milwaukee* (7th Cir.1997) 123 F.3d 586, 591 ...................................... 4

*Gleason v. Mesirow Financial, Inc.* (7th Cir.1997) 118 F.3d 1134, 1139 ....................................... 4

*Hasan v. AIG Prop. Cas. Co*. (10th Cir. 2019) 935 F.3d 1092, 1098 .............................................. 4

*Konigsberg Intern. Inc. v. Rice* (9th Cir. 1994) 16 F.3d 355, 357 .................................................... 5

*Lockert v. United States Dept. of Labor* (9th Cir. 1989) 867 F.2d 513, 518.................................... 7

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*. (1986) 475 U.S. 574, 586, 587................. 4

*McCoy v. Harrison* (7th Cir. 2003) 341 F.3d 600, 604.................................................................... 4

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.* (9th Cir. 2000) 210 F.3d
   1099, 1102............................................................................................................................ 3

*Pyramid Lake Tribe v. Hode*l (9th Cir.1989) 882 F.2d 364, 369, fn. 5............................................ 7

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.* (9th Cir. 2008) 531 F.3d 962.............................. 10

*S.O.S. Inc. v. Payday Inc.* (9th Cir. 1989) 886 F.2d 1081, 1087 ............................................... 9, 10

*Schiller & Schmidt, Inc. v. Nordisco Corp.* (7th Cir. 1992) 969 F.2d 410, 412, 413.................... 5, 6

*Stillwater Ltd. v. Basilotta* (C.D. Cal. 2020) WL 1486825.............................................................. 9

337.0 05907510.000                                             ii
JESUS CHAVEZ, SR.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

WHITNEY
THOMPSON &
JEFFCOACH

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*Studio S Imports, LLC v. Deutsch Imports, LLC* (C.D. Cal. 2021) WL 3598571 ............................ 13

*T. W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*. (9th Cir. 1987) 809 F.2d 626, 630 .......... 4

*Triton Energy Corp. v. Square D Co*. (9th Cir. 1995) 68 F.3d 1216, 1221 ....................................... 4

*Valente-Kritzer Video v. Pinckney* (9th Cir. 1989) 881 F.2d 772, 774 ............................................. 5

**FEDERAL CASES**

Fed. Rules Civ. Proc., rule 56(a), (c) .................................................................................................. 3

*Richardson v. United States* (9th Cir. 1988) 841 F.2d 993, 996 ....................................................... 7

*United States v. Mills* (9th Cir. 1987) 810 F.2d 907, 909 ................................................................. 7

**STATUTES**

17 U.S.C. § 204, subd. (a) ............................................................................................................ 1, 15

Counter-Defendant JESUS CHAVEZ, SR. ("Chavez") submits this Memorandum of Points and Authorities in Support of his Motion for Summary Judgment as to the eighth claim for relief (the only claim asserted against him in this action) set forth in the First Amended Counterclaim filed by Counterclaimant HYPHY MUSIC, INC. ("Counterclaimant") on August 28, 2020.

# I.
# INTRODUCTION

This action arises out of the transfer of a number of copyrighted sound recordings comprising albums ("Los Originales Albums") by Jesus Chavez, Sr., the founder and principal of the musical group known as Los Originales De San Juan (the "Band") to Counter-Defendant YELLOWCAKE, INC. ("Yellowcake"). Counterclaimant asserts in the only claim for relief alleged against Chavez that the transfer to Yellowcake constitutes a breach of contract because Counterclaimant previously entered into a five-year ***oral agreement*** (the "Oral Agreement") with Chavez pursuant to which Counterclaimant would be the owner of all title, right, and interest in and to the Los Originales Albums (including without limitation the copyrights and any extensions and renewals thereto) from the inception of the creation of each Los Originales Album. This claim is fatally defective, and fails as a matter of undisputed fact and law, because the purported transfer championed by Counterclaimant (the transfer of right, title and interest to the albums) could only be effectuated by way of a written agreement. No such written agreement exists as confirmed by Counterclaimant's own pleadings and the testimony of its own witnesses.

It is undisputed that Counterclaimant's only claim against Chavez is for breach of contract, and that the agreement underlying such claim was ***oral***. As more thoroughly discussed herein, the breach of contract claim fails as a matter of law because the Oral Agreement is not in writing as required by the Copyright Act of 1976. (17 U.S.C. § 204, subd. (a).)

Moreover, the undisputed facts in this case conclusively demonstrate (through Counterclaimant's own admissions) that none of the narrow exceptions to this well-settled rule apply: (1) the Los Originales Albums are not a work made for hire as Chavez, and the other Band members, were admittedly not employees of Counterclaimant, and (2) Chavez did not have a written work for hire agreement with Counterclaimant. Based on the foregoing, and as fully analyzed

below, there was never any valid transfer of the Los Orginales Albums to Counterclaimant; thus, Chavez did not breach any agreement with Counterclaimant when he subsequently transferred those rights to Yellowcake, Inc.

Accordingly, summary judgment in favor of Chavez, and against Counterclaimant, as to the Eighth Claim for Relief should be granted.

## II.
## RELEVANT FACTUAL AND PROCEDURAL HISTORY

Chavez is the founder and principal of the Band which he founded in approximately 1987. (Declaration of Jesus Chavez Sr. in Support of Motion for Summary Judgment ("Chavez Dec."), ¶1, attached as Exhibit "H" to the Statement of Evidence filed herewith.) Since its inception, the Band has recorded approximately 39 albums and over 900 songs. (Chavez Dec., ¶1.) Yellowcake is primarily engaged in the business of exploiting intellectual property rights. On or about March 21, 2019, Yellowcake and Chavez entered into an Asset Purchase and Assignment Agreement ("APA Agreement") whereby Yellowcake purchased the entirety of Chavez's ownership of the rights, title, and interest in the sound recordings that comprise the Los Originales Albums. (Chavez Dec., ¶7.)

Counterclaimant alleges that Chavez's entering into the APA Agreement constitutes a breach of contract because Counterclaimant allegedly entered into the Oral Agreement with Chavez in or about February 2013. (UMF 1,4.) The Oral Agreement was for a period of five years pursuant to which Chavez was to exclusively provide services as a recording artist in the making of sound and audio-visual recordings with respect to the Los Originales Albums. (UMF 2.) Counterclaimant alleges that, in consideration for the services provided and payment thereto, Chavez agreed that Counterclaimant would be the owner of all title, right, and interest in and to the Los Originales Albums (including without limitation the copyrights and any extensions and renewals thereto) from the inception of the creation of each Los Originales Album. (UMF 3.)

Counterclaimant is under the assumption that, at the time of the transfer to Yellowcake, Chavez possessed no transferable rights with respect to the Los Originales Albums. (UMF 5.) It is undisputed that there is no writing memorializing the Oral Agreement between Counterclaimant and

Chavez whereby Chavez allegedly agreed that Counterclaimant would be the owner of all title, right, and interest in the Los Originales Albums. (UMF 9.)

Counterclaimant admits that Chavez and the other Band members were not employees of Counterclaimant. (UMF 6-7.) It is undisputed that there is no written agreement between Counterclaimant and Chavez with respect to a work for hire relationship between the parties. (UMF 8.)

Counterclaimants counterclaims arise out of the aforementioned dispute, including a claim of breach of oral contract against Chavez. (See generally Counterclaimant's First Amended Counterclaim ("Amended Counterclaim"), attached as Exhibit "B" to the Statement of Evidence filed herewith; Request for Judicial Notice ("RJN"), ¶ 2, attached as Exhibit "C" to the Statement of Evidence filed herewith.)

## III.
## LAW AND ARGUMENT

**A.   General Legal Authority Regarding Motions For Summary Judgment**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (Fed. Rules Civ. Proc., rule 56(a), (c); *Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 322.) A fact is "material" when, under the governing substantive law, it could affect the outcome of the case or is essential to the proper disposition of the claim. (*Anderson v. Liberty Lobby, Inc*. (1986) 477 U.S. 242, 248.)

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. (*Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.) The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. (*Id*. at 322 – 323; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.* (9th Cir. 2000) 210 F.3d 1099, 1102.)

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that there remains a genuine issue of disputed

fact. (*Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 314.) A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (*Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at p. 248.) If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment. (*Ibid.*)

The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." (*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.* (1986) 475 U.S. 574, 586; *Triton Energy Corp. v. Square D Co*. (9th Cir. 1995) 68 F.3d 1216, 1221.) Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." (*Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 324 [quoting FRCP 56(e)].) "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." (*T. W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*. (9th Cir. 1987) 809 F.2d 626, 630.)

While considering a motion for summary judgment, the Court must consider all of the available pleadings, depositions, transcripts, exhibits, and affidavits in the light most favorable to the nonmoving party. (*Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at p. 247; *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, *supra*, 475 U.S. at 587.) However, the court is not required to draw every conceivable inference from the record and mere speculation, conjecture or surmise on the part of the nonmoving party will not defeat a summary judgment motion. (*McCoy v. Harrison* (7th Cir. 2003) 341 F.3d 600, 604; *Gleason v. Mesirow Financial, Inc.* (7th Cir.1997) 118 F.3d 1134, 1139; *Estate of Phillips v. City of Milwaukee* (7th Cir.1997) 123 F.3d 586, 591; *Hasan v. AIG Prop. Cas. Co*. (10th Cir. 2019) 935 F.3d 1092, 1098.) The court must also not weigh the evidence, draw legitimate inferences or make credibility determinations in evaluating a motion for summary judgment. (*Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at p. 255.)

Summary judgment plays a critical gatekeeping role in federal court as it serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial. (*Crawford-El v. Britton* (1998) 523 U.S. 574, 600.) One of the principal purposes of the rule is to dispose of factually unsupported

claims or defenses. (*Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 325.)

B. **Counterclaimant's Eighth Claim for Relief Should Be Adjudicated in Favor of Chavez Because Copyright Ownership Requires a Signed Writing**

An individual claiming to own copyrightable work through a transfer or because it was a work made for hire must generally establish the fact through a signed writing. The Copyright Act of 1976 defines "transfer of copyright ownership" as an "assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license." (17 U.S.C.A. § 101.) Copyright owners may transfer any exclusive rights comprised in a copyright so long as the transfer is evidence by a signed writing. (*Corbello v. Devito* (9th Cir. 2015) 777 F.3d 1058, 1062.) A transfer of copyright ownership is not valid unless the instrument of conveyance is in writing and signed by the owner of the rights conveyed. (17 U.S.C. § 204(a).) In other words, a contract transferring an exclusive license in a copyrighted work is invalid without a signed writing. (*Valente-Kritzer Video v. Pinckney* (9th Cir. 1989) 881 F.2d 772, 774; *Effects Associates, Inc. v. Cohen* (9th Cir. 1990) 908 F.2d 555, 556 ["…section 204 of the Copyright Act invalidates a purported transfer of ownership unless it is in writing."].)

The Ninth Circuit has explained that "section 101's requirement of a written statement for copyright ownership of works for hire 'is not merely a statute of frauds'; its second purpose is 'to make the ownership of property rights in intellectual property clear and definite, so that such property will be readily marketable.'" (*Konigsberg Intern. Inc. v. Rice* (9th Cir. 1994) 16 F.3d 355, 357 quoting *Schiller & Schmidt, Inc. v. Nordisco Corp.* (7th Cir. 1992) 969 F.2d 410, 412.) The signed writing "doesn't have to be the Magna Charta; a one-line pro forma statement will do." (*Effects Associates, Inc. v. Cohen*, *supra*, 908 F.2d at p. 557.) But without a signed writing, Section 204(a) bars breach of contract claims based on oral agreements. (*Valente-Kritzer Video v. Pinckney*, *supra*, 881 F.2d at p. 774.)

Here, it is undisputed that the purported agreement between Counterclaimant and Chavez for the transfer of all right, title and interest in the Los Originales Album was an oral agreement. (UMF 1.) As such, there is no written agreement between Counterclaimant and Chavez whereby

Chavez agreed that Counterclaimant would be the owner of all title, right, and interest in the Los Originales Albums. (UMF 9.) Without a signed writing, Section 204(a) bars breach of contract claims based on oral agreements. (*Valente-Kritzer Video v. Pinckney*, *supra*, 881 F.2d at p. 774.) Therefore, Counterclaimants breach of contract claim fails as a matter of law.

**C.     Counterclaimant's Eighth Claim for Relief Should Be Adjudicated in Favor of Chavez Because the Los Originales Albums are not a Work Made for Hire**

A work made for hire, unless made by an employee within the scope of his or her employment, requires a writing because copyright "initially vests in the author or authors of the work." (17 U.S.C. § 201(a).) The Supreme Court has explained that "the author," as a general rule, is "the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." (*Community for Creative Non-Violence v. Reid* (1989) 490 U.S. 730, 737.) For a work to be considered a work made for hire it needs to be either: (1) prepared by an employee within the scope of his or her employment; or (2) prepared by an independent contractor and falls within one of the categories of specially ordered or commissioned works specified in the statute, provided that the parties expressly agree in a signed writing that the work is made for hire. (17 U.S.C.A. § 101.) "The creator of the property is the owner, unless he is an employee creating the property within the scope of his employment or the parties have agreed in a writing signed by both that the person who commissioned the creation of the property is the owner. The writing must precede the creation of the property in order to serve its purpose of identifying the (noncreator) owner unequivocally." (*Schiller & Schmidt, Inc. v. Nordisco Corp.*, *supra*, 969 F.2d at p. 413.)

Here, there is no written agreement substantiating any work for hire relationship between Counterclaimant and Chavez. (UMF 8.) Furthermore, Chavez and the Band members were never employees of Counterclaimant. (UMF 6, 7.) For a work to be considered a work made for hire it needs to be either: (1) prepared by an employee within the scope of his or her employment; or (2) prepared by an independent contractor and falls within one of the categories of specially ordered or commissioned works specified in the statute, provided that the parties expressly agree in a signed writing that the work is made for hire. (17 U.S.C.A. § 101.) It is undisputed that neither of these

337.0 05907510.000                                6
JESUS CHAVEZ, SR.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

scenarios exists. (UMF 6, 7 and 8.) Therefore, as a matter of law, a work for hire relationship did not exist between Counterclaimant and Chavez.

**D.  Counterclaimant's Attempt to Avoid Summary Judgment Based on Alleged Co-Ownership or Co-Authorship of the Copyrighted Albums Is Both Factually and Legally Infirm**

   1.  *Counterclaimant is not a co-owner of the Albums via a work-for-hire with Chavez*

Knowing that Counterclaimant has no legitimate excuse for its actions, Counterclaimant, only after getting sued by Yellowcake, manufactured the theory that it is the owner of the Albums. This theory is obviously manufactured by counsel and only asserted in a desperate attempt by Counterclaimant to avoid strict liability for its acts of infringement.

Counterclaimant initially claimed in its Answer and Counterclaim to be the sole owner of the Albums based on an oral work-for-hire agreement with Chavez. (See Counterclaimant's Counterclaim ("Counterclaim") ¶ 16, attached to the Statement of Evidence ("SOE") filed herewith as Exhibit "A"; RJN, ¶ 1.) However, this theory was found legally deficient and the Court dismissed Counterclaimant's counterclaim against Yellowcake for copyright infringement of the Albums, in part because Counterclaimant could not be the owner of the copyrights in the Albums by virtue of an oral agreement with Chavez due to the copyright statute of frauds found in 17 U.S.C. § 204. (See generally Order on Counter-Defendants' Motion to Dismiss, attached to SOE filed herewith as Exhibit "K"; RJN, ¶ 3.) Chavez submits that the Court's prior Order on the issue is the law of the case. The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs. (*Lockert v. United States Dept. of Labor* (9th Cir. 1989) 867 F.2d 513, 518.) Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case. (*Richardson v. United States* (9th Cir. 1988) 841 F.2d 993, 996.) Application of the doctrine is discretionary. (*United States v. Mills* (9th Cir. 1987) 810 F.2d 907, 909.) Accordingly, a trial judge's decision to depart from the principle of finality is reviewed for an abuse of discretion. (*Pyramid Lake Tribe v. Hodel* (9th Cir.1989) 882 F.2d 364, 369, fn. 5.) A court properly exercises its discretion to reconsider an issue previously decided in only three instances: (1) the first decision was clearly erroneous and would result in manifest injustice; (2) an intervening change in the law has occurred; or (3) the evidence on remand was

substantially different. (*Eichman v. Fotomat Corp.* (9th Cir. 1989) 880 F.2d 149, 157.) None of these discretionary bases to depart from the law of the case are present here.

Furthermore, Chavez denied ever selling or assigning any interest in the Albums to Counterclaimant or ever being an employee of Counterclaimant. (See Declaration of Jesus Chavez, Sr. in Support of Plaintiff and Counter-Defendants' Motion to Dismiss Defendant's Counterclaims and Supplemental Brief ("Chavez Dec. ISO Motion to Dismiss"), ¶ 14, attached to SOE filed herewith as Exhibit "N"; RJN, ¶ 6.) Moreover, when Yellowcake first sent the Takedown Notices to Counterclaimant in June of 2020, surely Counterclaimant would have challenged Yellowcake's ownership claim and filed a declaratory judgment action if it believed it truly owned the Albums. Counterclaimant did not file such an action, thereby tacitly admitting that it did not own them. It is obvious that Counterclaimant's claim of ownership is nothing more than a contrived defensive and leverage strategy that was first asserted only *after* Counterclaimant was sued for its refusal to stop exploiting the Albums.

2. *Counterclaimant is not a co-author with Chavez*

Counterclaimant also baselessly claimed that it was a co-author with Chavez because it marketed the albums and provided the typical functions of a record label and record distributor. (See First Amended Counterclaim, ¶ 17; Counterclaimant's Reponses to Counter-Defendants' First Set of Interrogatories 5, 6, 9 and 10, attached to SOE filed herewith as Exhibit "F"; Declaration of William H. Littlewood in Support of Counter-Defendant Chavez's Motion for Summary Judgment ("Littlewood Dec."), ¶ 4.) As set forth in detail below, this claim was refuted by Chavez and Rosales, the audio engineer who recorded most of the Albums. (See Chavez Dec. ISO Motion to Dismiss, ¶ 8; The Declaration of Hector O. Rosales in Support of Plaintiff and Counter-Defendants' Motion to Dismiss Defendant's Counterclaims and in Support of Supplemental Brief ("Rosales Dec."), ¶¶ 7 and 9, attached to SOE filed herewith as Exhibit "M"; RJN, ¶ 5.) Even if such claims were true, which they are not, such general record label activities are not sufficient works of original authorship to deem Counterclaimant a co-owner with Chavez as a matter of law.

Under the Copyright Act, a "joint work" is a work prepared by two or more authors with the *intention* that their contributions be merged into inseparable or interdependent parts of a unitary

whole. 17 U.S.C. §101. An "author" is "the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." (*Cmty. for Creative Non-Violence v. Reid* (1989) 490 U.S. 730, 737.)

In *Aalmuhammed v. Lee* (9th Cir. 2000) 202 F.3d 1227, the Ninth Circuit Court of Appeals set forth three factors for determining whether a work is jointly authored. "First, an author superintend[s] the work by exercising control." (*Id*. at 1234 quoting *Burrow-Giles Lithographic Co. v. Sarony* (1884) 111 U.S. 53, 6) "Second, putative coauthors make objective manifestations of a shared intent to be coauthors . . . ." (*Ibid.*) "[T]hird, the audience appeal of the work turns on both contributions and 'the share of each in its success cannot be appraised.'" (*Ibid* quoting *Edward B. Marks Music Corp. v. Jerry Vogel Music Co.* (2d Cir. 1944) 140 F.2d 266, 267.) The creativity one must contribute to be an author must be more than merely de minimis. (*Stillwater Ltd. v. Basilotta* (C.D. Cal. 2020) WL 1486825.) Even if there is an agreement to collaborate, if there is only a non-copyrightable contribution made by the party in question that contribution will not be enough, in the Ninth Circuit, to meet the requirements for joint authorship. *Ashton-Tate v. Ross* (9th Cir. 1990) 916 F.2d 516; *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.* (9th Cir. 2008) 531 F.3d 962.)

In *Stillwater Ltd.*, three parties attempted to argue joint authorship of the songs in question, Radialchoice Ltd. (a recording company formed by Lait), Stillwater (the recording company Lait transferred ownership of the disputed sound recordings and the "Mix and Spanish Recordings" to), and Greg Mathieson (music producer of the songs). (*Stillwater Ltd. v. Basilotta* (C.D. Cal. 2020) WL 1486825.) The court determined it was not enough of a contribution for Radialchoice as the record label, to be considered a coauthor just because they had financed, approved, marketed, and distributed the work. (*Ibid.*) The court also found that Lait's direction, vision, or idea for the songs did not amount to a copyrightable contribution because they were not "fixed" in a "tangible medium of expression" and the mere supply of direction or ideas was not enough. (*Stillwater Ltd. v. Basilotta* (C.D. Cal. 2020) WL 1486825; *S.O.S. Inc. v. Payday Inc.* (9th Cir. 1989) 886 F.2d 1081, 1087.) Finally, the court concluded Mathieson's contributions failed to meet the *Aalmuhammed* criteria.

Again, "[T]o be an author, one must supply more than mere direction or ideas; one must

'translate an idea into a fixable tangible expression entitled to copyright protection." (*S.O.S., Inc. v. Payday, Inc.*, *supra*, 886 F.2d at p. 1087 (9th Cir. 1989); *Ashton-Tate*, *supra*, 916 F.2d at p. 521.) "[A] person who merely describes to an author what the commissioned work should do or look like is not a joint author for the purposes of the Copyright Act." (*S.O.S., Inc.*, *supra*, 886 F.2d at 1087.) In *S.O.S., Inc.*, the Ninth Circuit found that the defendant, Payday, Inc., "did nothing more than describe the sort of programs Payday wanted S.O.S. to write." (*Ibid*.) Even if there is an agreement to collaborate, if there is only a non-copyrightable contribution made by the party in question that contribution will not be enough, in the Ninth Circuit, to meet the requirements for joint authorship. (*Ashton-Tate v. Ross* (9th Cir. 1990) 916 F.2d 516; *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.* (9th Cir. 2008) 531 F.3d 962.)

First, Chavez and Rosales declared that Chavez had complete control over the production and recording of the Albums. (See Chavez Dec. ISO Motion to Dismiss, ¶ 8; Rosales Dec., ¶ 7.) Furthermore, in its initial Counterclaims, Counterclaimant admitted that *Chavez alone* was the original author of the albums and that Counterclaimant only offered nominal artistic direction typical of a record label or distributor and not that anyone affiliated with Counterclaimant made any copyrightable contribution. Specifically, Counterclaimant alleged that:

> 16. On February 2013, Counterclaimant Hyphy Music entered into an oral exclusive recording agreements with Jesus Chavez (hereinafter, "Agreement") whereby Counterclaimant <u>commissioned Chavez</u>, for a period of five (5) years, to exclusively provide services as a recording artist in the making of sound and audiovisual recordings embodied in albums (hereinafter, "Los Originales Albums"). Pursuant to the Agreement, Counterclaimant agreed to: 1) select the musical compositions to be recorded on the Los Originales Albums; 2) commission and/or provide the sound engineers and audiovisual directors; 2) produce the musical performances to be embodied on the Los Originales Albums; 3) direct the recording and filming of musical and the audiovisual performances to be embodied on the Los Originales Albums; and 4) pay Chavez a fixed amount per Los Originales Album. In turn, Chavez agreed to follow Hyphy's artistic direction, perform and record the sound and audiovisual recordings embodying the musical compositions chosen and produced by Hyphy Music, as well as to grant Counterclaimant the non-exclusive right to utilize Counterdefendant Chavez's name and likeness as well as his musical group's name in connection with the exploitation of the Los Originales Albums in perpetuity. In consideration for the services provided and payment thereto, Chavez agreed that Counterclaimant would be the owner of all title, right, and interest in and to the Los Originales Albums (including without limitation the copyrights and any extensions and renewals thereto) from the inception of the creation of each Los Originales Album.

17. In reliance on the above Agreement, in addition to commissioning Counterdefendant Chavez to perform the musical performances embodied on the Masters and paying Chavez for all right title and interest in the Los Originales Albums, Counterclaimant contributed sufficient original authorship in the creation of the Los Originales Albums by selecting the musical compositions, commissioning and directing engineers and directors and/or providing the services itself, directing the recording and filming of the musical and audiovisual performances to be embodied on the Los Originales Albums and producing the Los Originales Albums. In doing so, Counterclaimant contributed sufficient originality to these works so as to make Counterclaimant, at minimum, the co-author, co-owner, and joint owner of the works under the Copyright Act. (See Counterclaim, ¶¶ 16 and 17.)

Counterclaimant then made the same allegations in its First Amended Counterclaim. (See First Amended Counterclaim, ¶¶ 16 and 17.)

None of these actions if true, which they are not, constitute the contribution of any original authorship which can be fixed in a tangible medium and thus are legally insufficient to be deem either Martinez or Counterclaimant a co-author of any of the Albums.

Second, there is absolutely no objective evidence in the record to prove that Chavez and Counterclaimant knowingly intended to be co-authors of the Albums which is Counterclaimant's burden to prove in order to claim co-authorship.

Third, since Counterclaimant provided no performance or other creative contributions to the Albums, Counterclaimant did not provide any copyrightable contribution to the Albums that contributed to their success and there can be no audience appeal that can be associated with Counterclaimant. As such, Counterclaimant was not a joint author of the Albums under the *Aalmuhammed* criteria and cannot claim co-ownership as an affirmative defense.

3. <u>Counterclaimant is not a co-owner of the Albums by virtue of the contrived assignments from the backing musicians</u>

On the eve of the initial deadline to file dispositive motions in this action, Counterclaimant realized that its theory of ownership was defective and changed it again for a third time. Counterclaimant now claims that it is a co-owner of the Albums because it allegedly acquired an interest from Domingo Torres Flores ("Torres") and Alfonso Vargas ("Vargas") two former backing musicians who often toured with Chavez and who acted as studio musicians who played on the Albums when they were recorded. Conveniently, Counterclaimant now claims Vargas and

Torres were coauthors and that Counterclaimant obtained their interest in the Albums pursuant to two Assignment Agreements (the "Assignments")[1]. (See generally Copyright Assignment Agreement, attached to SOE filed herewith as Exhibit "Q"; RJN, ¶ 9.) However, this new "ownership through assignment" theory is also refuted by the record and Counterclaimant's prior admissions.

First and foremost, Chavez is the only author of the Albums as Counterclaimant previously admitted in its own pleadings and declarations. Specifically, Counterclaimant acknowledged in the record that Los Originales de San Juan was Chavez's band and *allegedly commissioned him, and him alone*, to allegedly record the Albums for Counterclaimant *and that Chavez alone had the authority to allegedly transfer all of the rights to the Albums to Counterclaimant when they were asserting their initial debunked theory of ownership by work-for-hire through Chavez*. This was admitted by Counterclaimant in its initial Counterclaim (See Counterclaim, ¶ 16; First Amended Counterclaim, ¶ 16; The Declaration of Jose Martinez in Support of Reply to Counter-Defendants' Challenge to the Validity of Certain Copyright Registrations ("Martinez Dec.") attached to SOE filed herewith as Exhibit "L"; RJN ¶ 4.) This is further corroborated by Rosales, the audio engineer who helped record the studio Albums, who denies that anyone other than Chavez was the author of the Albums or that anyone else provided artistic and creative input other than Chavez. (See Rosales Dec., ¶ 7.) Counterclaimant produced no objective evidence to refute the facts alleged in Rosales' Declaration.

Second, when Counterclaimant filed its baseless copyright registrations on a work-for-hire basis, Counterclaimant's registrations did not identify Vargas or Torres as coauthors in their registrations. (See generally Counterclaim.) Since Counterclaimant allegedly obtained its interest as a work-for-hire when it filed its registrations in 2020, it could not have obtained its alleged interest by virtue of an assignment from Vargas and Torres which were not even allegedly executed until March 22, 2022. (See Copyright Assignment Agreement; *Studio S Imports, LLC v. Deutsch*

---

[1] However, Hyphy did not bother to amend its First Amended Counterclaim and there is no such allegations of co-ownership of the Albums by virtue of assignments from Torres or Vargas alleged in the First Amended Counterclaim. Nor did Torres or Vargas ever file their own actions claiming ownership. (See Amended Counterclaim.)

*Imports, LLC* (C.D. Cal. 2021) WL 3598571.)

Third, the terms, circumstances and timing of the disclosure of the alleged Assignments proves that they have absolutely no credibility whatsoever and that they were contrived by Counterclaimant to try and create the appearance of an issue of fact on the eve of the prior deadline to file a summary judgment motion in order to try and fend off Chavez's obvious right to summary judgment on Counterclaimant's legally defective breach of oral agreement claim for relief alleged against Chavez.

Specifically, *both alleged Assignments were allegedly signed on March 22, 2022, but they were not disclosed by Counterclaimant until October 10, 2022*, well after the June 28, 2022 cutoff for fact discovery under the Court's initial scheduling order and only fourteen days before the October 24, 2022 cutoff for filing summary judgment motions. (See generally Initial Scheduling Order ("Scheduling Order"), attached to SOE filed herewith as Exhibit "O"; RJN, ¶ 7; Defendant/Counterclaimant's Ex Parte Application for Leave to Supplement Initial Disclosures and Responses to Requests for Production of Documents ("Application for Leave"), attached to SOE filed herewith as Exhibit "P"; RJN, ¶ 8.) *Telling, nowhere in its motion to supplement its disclosure did Counterclaimant explain why it only just produced the alleged Assignments in October of 2022 when they were allegedly executed on March 22, 2022*. (See generally Application for Leave.)

Furthermore, when Martinez was deposed on July 26, 2022, a mere four months after the alleged Assignments were executed on March 22, 2022 *he made no mention of these alleged Assignments at all,* even though Vargas and Torres testified that Martinez gave them the alleged Assignments and they executed them in Counterclaimant's office. (See Deposition Transcript of Alfonso Vargas ("Vargas Trans."), p. 55:8-13, p. 56:8-12, attached to SOE filed herewith as Exhibit "I"; Littlewood Dec., ¶ 6; Deposition Transcript of Domingo Torres Flores ("Torres Trans."), p. 57:9 – p. 58:1-19, p. 60:11-16, attached to SOE filed herewith as Exhibit "J"; Littlewood Dec., ¶ 7.)  It is hard to believe that Counterclaimant would be in possession of such allegedly critical original documents but *not even mention their existence during Martinez's deposition and then mistakenly fail to disclose them for nearly eight months after their execution*

*(and then only produce them right before the deadline for filing summary judgment motions)*.

Furthermore, the terms of the alleged Assignments themselves are also so suspect that the only logical inference that can be drawn from them is that they were created after the fact for the purpose of trying to create a new theory of ownership of the Albums after Counterclaimant's first two theories failed. First, both Vargas and Torres allegedly assigned their alleged interests in the Albums to Counterclaimant for only one dollar ($1.00) each. (See generally Application for Leave.) It is hard to believe that Vargas and Torres would assign their alleged interest in such valuable copyrights to Counterclaimant for only one dollar each if they truly owned such interests. Torres and Vargas also testified that they never even read the alleged Assignments before executing them and did not know what they were for. (See Torres Trans., p. 60:11-16; Vargas Trans., p. 56:8-12.) It is also suspect that the alleged Assignments do not state what percentage of the Albums Vargas and Torres allegedly own and therefore these alleged Assignment Agreements are invalid on their face as vague. (See generally Copyright Assignment Agreement.)

Vargas also admitted to having a motive in helping Counterclaimant with this farce. Unfortunately, Chavez had two strokes that have left him unable to perform. Vargas and Torres then attempted to tour and release new music as Los Originales De San Juan through Counterclaimant without Chavez, even though it was his band. In response, Chavez, as owner of the trademark for Los Originales De San Juan, sent a cease and desist letter to Vargas and Torres who acknowledged Chavez's ownership of the mark and complied with the cease and desist letter and stopped using the name. Vargas also then admitted that they went to Martinez, who said that he would help them release new music for their new band if they signed the alleged Assignments for both Counterclaimant and Morena Music, Inc. ("Morena") and helped Counterclaimant and Morena, who was also sued by Yellowcake for similar acts of copyright infringement, in their lawsuits with Yellowcake. (See Vargas Trans. p. 56:25 – p. 58:1-17; p. 59:8-21.)[2]

Furthermore, Counterclaimant never produced any written co-author agreement or

---

[2] It should be noted that both Vargas and Torres also admitted that they were sitting in Hyphy's conference room when they were deposed in this action. (See Vargas Trans, p. 55:14-17; Torres Trans., p. 58:10-19.)

partnership agreement amongst Chavez, Torres and Vargas, and never produced any objective evidence whatsoever that there was an understanding that Vargas and Torres were coauthors of the Albums with Chavez. Nor did Vargas or Torres ever file any copyright registrations for their alleged ownership of the Albums, or demanded any royalties from Chavez from the sale of the Albums which obviously they would have had they truly believed that they were co-owners. Lastly, notably, neither Vargas nor Torres ever filed an action for declaratory judgment or otherwise against Chavez or Yellowcake claiming to be a co-owner of the Albums even though they were released between 2013 and 2015.

Simply put, there is not a shred of credible objective evidence to prove that either Vargas or Torres were ever co-authors of the Albums and the timing, circumstances and terms of the alleged Assignments show that they lack any credibility. As such, Counterclaimant did not obtain any valid ownership interest in the Albums by virtue of the alleged Assignments.

## IV.
## CONCLUSION

In summary, Counterclaimant's breach of contract claim fails as a matter of law because the Oral Agreement is not in writing as required by the Copyright Act of 1976 . (17 U.S.C. § 204, subd. (a).) Likewise, there is no written agreement regarding a potential work for hire relationship between the parties and Counterclaimant admits that it never employed Chavez or the other Band members. Based on the foregoing, Chavez respectfully requests that the Court grant his Motion for Summary Judgment as to the eighth claim for relief set forth in the First Amended Counterclaim, and enter judgment in favor of Chavez and against Counterclaimant in this action.

Dated: July 14, 2023                WHITNEY, THOMPSON & JEFFCOACH LLP

By: _____
Mandy L. Jeffcoach
William H. Littlewood
Jaskarn S. Chahal
Attorneys for JESUS CHAVEZ, SR.