1  Whitney, Thompson & Jeffcoach LLP
   Mandy L. Jeffcoach, #232313
2   mjeffcoach@wtjlaw.com
   William H. Littlewood, #202877
3   blittlewood@wtjlaw.com
   Jaskarn S. Chahal, #348641
4   jchahal@wtjlaw.com
   970 W. Alluvial Ave.
5  Fresno, California 93711
   Telephone:    (559) 753-2550
6  Facsimile:    (559) 753-2560

7

8  Attorneys for JESUS CHAVEZ, SR.

9

10                      UNITED STATES DISTRICT COURT

11            EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

12

13 YELLOWCAKE, INC., a California          Case No. 1:20-CV-00988-AWI-BAM
   corporation,
14                                         **REQUEST FOR JUDICIAL NOTICE IN**
               Plaintiff,                  **SUPPORT OF MOTION FOR SUMMARY**
15                                         **JUDGMENT**
          v.
16                                         Date:      September 29, 2023
   HYPHY MUSIC, INC.,                      Time:      9:00 a.m.
17                                         Crtrm.:    4
               Defendant.
18                                         The Hon.  District Judge Jennifer L. Thurston
   ─────────────────────────────
19 HYPHY MUSIC, INC.,

20             Cross-Complainant,

21        v.

22 YELLOWCAKE, INC.; COLONIZE MEDIA,
   INC.; JOSE DAVID HERNANDEZ; and
23 JESUS CHAVEZ SR.,

24             Cross-Defendant.

25        Counter-Defendant JESUS CHAVEZ SR. ("Chavez") hereby requests that this Court,

26 pursuant to the Federal Rules of Evidence, Rule 201, take judicial notice of the following

27 documents:

28        1.    Counterclaimant's Counterclaim filed on August 19, 2020, a true and correct copy

WHITNEY
THOMPSON &
JEFFCOACH

1    of which is attached as **Exhibit "A"** to the Statement of Evidence ("SOE") filed herewith.

2         2.     Counterclaimant's First Amended Counterclaim filed on August 28, 2020, a true and

3    correct copy of which is attached as **Exhibit "B"** to the SOE filed herewith.

4         3.      The July 20, 2021, Order on Counter-Defendants' Motion to Dismiss, a true and

5    correct copy of which is attached as **Exhibit "K"** to the SOE filed herewith.

6         4.     The Declaration of Jose Martinez in Support of Reply to Counter-Defendants'

7    Challenge to the Validity of Certain Copyright Registrations filed on August 3, 2021, a true and

8    correct copy of which is attached as **Exhibit "L"** to the SOE filed herewith.

9         5.     The Declaration of Hector O. Rosales in Support of Plaintiff and Counter-

10   Defendants' Motion to Dismiss Defendant's Counterclaims and in Support of Supplemental Brief

11   filed on August 10, 2021, a true and correct copy of which is attached as **Exhibit "M"** to the SOE

12   filed herewith.

13        6.     The Declaration of Jesus Chavez, Sr. in Support of Plaintiff and Counter-Defendants'

14   Motion to Dismiss Defendant's Counterclaims and Supplemental Brief filed on August 10, 2021, a

15   true and correct copy of which is attached as **Exhibit "N"** to the SOE filed herewith.

16        7.     The Scheduling Order issued by the court on November 30, 2021, a true and correct

17   copy of which is attached as **Exhibit "O"** to the SOE filed herewith.

18        8.     Defendant/Counterclaimant's Ex Parte Application for Leave to Supplement Initial

19   Disclosures and Responses to Requests for Production of Documents filed on October 12, 2022, a

20   true and correct copy of which is attached as **Exhibit "P"** to the SOE filed herewith.

21        9.     A copy of the Copyright Assignment Agreement submitted to the court on October

22   12, 2022, a true and correct copy of which is attached as **Exhibit "Q"** to the SOE filed herewith.

23   Dated:  July 14, 2023                    WHITNEY, THOMPSON & JEFFCOACH LLP

24

25

26   By: _____
                    Mandy L. Jeffcoach
27                  William H. Littlewood
                    Jaskarn S. Chahal
28              Attorneys for JESUS CHAVEZ, SR.

Exhibit "A"

LAW OFFICES LOPEZ & ASSOCIATES
ANTHONY R. LOPEZ, CASBN 149653
9025 Wilshire Blvd., Suite 500
Beverly Hills, California 90211
Telephone: (310)276-4700
Facsimile:(310)861-0509
alopez@musicatty.com

UNITED STATES DISTRICT COURT

EASTERN DISCTRICT OF CALIFORNIA

| | |
|---|---|
| YELLOWCAKE, INC., A CALIFORNIA CORPORATION,<br><br>PLAINTIFF,<br>v.<br><br>HYPHY MUSIC, INC.,<br><br>DEFENDANT. | **CASE NO.: 1:20-CV-00988-DAD-BAM**<br><br>**COUNTERCLAIM** |
| HYPHY MUSIC, INC.,<br><br>COUNTERLAIMANT<br><br>v.<br><br>YELLOWCAKE, INC.; COLONIZE MEDIA, INC.; JOSE DAVID HERNANDEZ; JESUS CHAVEZ SR.<br><br>COUNTERDEFFENDANTS | |

Counterclaimant Hyphy Music, Inc. ("Hyphy Music" or "Counterclaimant"), by and through their undersigned attorneys, allege as follows:

## NATURE OF THE ACTION

1.      Counterclaimant bring this action seeking to put an immediate stop to, and to obtain redress for, Counterdefendants' ongoing and willful infringement of Counterclaimants' copyrighted recordings and album cover art.

## THE PARTIES

2.      Counterclaimant Hyphy Music, Inc. is a California Corporation with its headquarters in the County of Fresno that does business in the Eastern District of California.

3.      Counterdefendant Yellowcake, Inc. (hereinafter "Yellowcake") is a California corporation with its headquarters in the County of Stanislaus that does business in the Eastern District of California.

4.      Counterdefendant Colonize Media, Inc. (hereinafter "Colonize") is a California corporation with its headquarters in the County of Stanislaus that does business in the Eastern District of California.

5.      Counterdefendant Jose David Hernandez (hereinafter "Hernandez") is an individual and principal of Yellowcake and Colonize, who is informed and believes resides in the County of Fresno and does business in the Eastern District of California.

6.      Counterdefendant Jesus Chavez Sr. (hereinafter "Chavez") is an individual who resides in the County of Fresno and does business in the Eastern District of California.

7.      Counterclaimant does not know the true names nor capacities of Counterdefendants sued as ROES 1 through 10, inclusive, and therefore sues those Counterdefendants by such fictitious names. When Counterclaimant ascertain the

true names and capacities of those Counterdefendants, Counterclaimant will seek leave of court to amend this Counterclaim. Counterclaimant is informed and

believes and thereon allege that Counterdefendants sued as ROES 1 through 10, inclusive, authorized, participated in, consented to, and otherwise ratified the actions and omissions of the named Counterdefendants.

8.     Counterclaimant is informed and believes and thereon allege that at all times relevant to the facts and circumstances of this Counterclaim, each of the Counterdefendants was the subsidiary, parent, agent, principal, manager, officer, director, instrument, alter ego, franchisee, franchisor, employee, employer, master, servant, partner, co-conspirator, and/or successor or predecessor in interest of the other Counterdefendants, and in committing the acts and omissions hereinafter alleged, was acting within the scope of such agency, management, instrumentality, office, directorship, employment, franchise, servitude, partnership, conspiracy, or interest, and with the consent of his, her, or its Counterdefendants.

## <u>JURISDICTION</u>

9.     This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101 et seq.

10.     his Court has subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a). The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C § 1367.

11.     This Court has personal jurisdiction over Counterdefendants because, among other things, Counterclaimants Yellowcake and Colonize maintain offices and do business in this District. Counterdefendant Hernandez also does business and resides in the Eastern District. Also, a substantial part of the acts of infringement complained of herein have occurred in the State of California and in this District, and/or Counterdefendants have caused injury to Counterclaimant in

the State of California and in this District.

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c) and 1400(a) in that in this District pursuant to 28 U.S.C. §§ 1391(c) and 1400(a) for the reasons set forth above in Paragraph 9. Additionally, this Counterclaim is compulsory based on the filing of the action entitled Yellowcake, Inc. v. Hyphy Music, Inc., Case No. 1:20-CV-00988-DAD-BAM.

## GENERAL ALLEGATIONS

13.     Counterclaimant repeats and realleges every allegation contained in paragraphs 1 through 12 as if fully set forth herein.

14.     Counterclaimant Hyphy Music is a record label which is in the business of producing, manufacturing, distributing, exploiting, selling, and licensing sound and audiovisual recordings and artwork in the United States.

15.     Counterdefendant Chavez is the founder and principal of a musical group by the name of Los Originales De San Juan. Los Originales De San Juan is a popular musical group in the area of Spanish-language Regional Mexican music.

16.     On February 2013, Counterclaimant Hyphy Music entered into an oral exclusive recording agreements with Jesus Chavez (hereinafter, "Agreement") whereby Counterclaimant commissioned Chavez, for a period of five (5) years, to exclusively provide services as a recording artist in the making of sound and audiovisual  recordings embodied in albums (hereinafter, "Los Originales Albums"). Pursuant to the Agreement, Counterclaimant agreed to: 1) select the musical compositions to be recorded on the Los Originales Albums; 2) commission and/or provide the sound engineers and audiovisual directors; 2) produce the musical performances to be embodied on the Los Originales Albums; 3) direct the recording and filming of musical and the audiovisual performances to be embodied on the Los Originales Albums; and 4) pay Chavez a fixed amount per Los Originales Album. In turn, Chavez agreed to follow Hyphy's artistic direction, perform and record the sound and audiovisual recordings embodying the musical compositions chosen and produced by Hyphy Music, as well as to grant

Counterclaimant the non-exclusive right to utilize Counterdefendant Chavez's name and likeness as well as his musical group's name in connection with the exploitation of the Los Originales Albums in perpetuity. In consideration for the services provided and payment thereto, Chavez agreed that Counterclaimant would be the owner of all title, right, and interest in and to the Los Originales Albums (including without limitation the copyrights and any extensions and renewals thereto) from the inception of the creation of each Los Originales Album.

17.     In reliance on the above Agreement, in addition to commissioning Counterdefendant Chavez to perform the musical performances embodied on the Masters and paying Chavez for all right title and interest in the Los Originales Albums, Counterclaimant contributed sufficient original authorship in the creation of the Los Originales Albums by selecting the musical compositions, commissioning and directing engineers and directors and/or providing the services itself, directing the recording and filming of the musical and audiovisual performances to be embodied on the Los Originales Albums and producing the Los Originales Albums. In doing so, Counterclaimant contributed sufficient originality to these works so as to make Counterclaimant, at minimum, the co-author, co-owner, and joint owner of the works under the Copyright Act.

18.     Counterclaimant also produced, created and designed the album cover art associated with the Los Originales Albums. This included, without limitation, Counterclaimant locating and scouting locations where the album cover photos were taken, hiring the photographer(s), designing sets/ props, assisting in wardrobe, and providing graphic design work (hereinafter, "Los Originales Cover Art").

19.     Counterclaimant has also registered the copyrights in the Los Originales Albums, including the cover art. The copyright registration numbers associated with each of the Los Originales Albums are set forth in Exhibit A. Counterclaimant also registered the copyrights in the Los Originales Cover Art.

True and accurate copies of the Los Originales Cover Art and their corresponding copyright registration numbers are set forth in Exhibit B.

20.     Accordingly, Counterclaimant is the exclusive copyright owner of the Los Originales Albums and Los Originales Cover Art.

21.     On April 2019, Counterdefendant Hernandez had a meeting with Counterdefendant Chavez in the County of Fresno wherein he expressed his interest in exploiting the Los Originales Albums. Counterclaimant is informed and believes that at that time, Counterdefendant Chavez advised Counterdefendant Hernandez that he had entered into a contract with Counterclaimant and that Counterclaimant was the owner of the Los Originales Albums.

22.     Counterdefendant Hernandez intentionally and willfully misled Counterdefendant Chavez when he wrongfully and mistakenly told him that Counterclaimant had no rights to the Los Originales Albums, was free to sell the subject works to Hernandez's companies, Yellowcake and Colonize, and offered Chavez a significant sum of money to purportedly purchase the rights in the Los Originales Albums. Counterdefendant further induced Counterdefendant Chavez to to ignore his contractual obligations to Counterclaimant by promising to to indemnify Chavez in the event Counterclaimant sought legal redress from Chavez. Counterdefendant Hernandez engaged in this conduct, both individually and in his capacity as a principal of Counterdefendants Yellowcake and Colonize, in in an effort to disrupt the contractual relations between Counterclaimant and Counterdefendant Chavez.

23.     As a result thereof, Counterdefendant Chavez purportedly entered into an agreement with Counterdefendant Yellowcake whereby in exchange for these monies and promises, he wrongfully transferred his ownership and rights in the Los Originales Albums and Cover Art to Counterdefendant Yellowcake. At the time he entered into said agreement with Counterdefendant Yellowcake, Chavez had no such rights to grant.

24.     On May and/or June 2019, Counterclaimant discovered that Counterdefendant Yellowcake and Colonize had created or caused to be created derivative works of the Los Originales Albums and Cover Art, and was distributing, selling, and commercially exploiting these derivative works via such online platforms as ITunes, Apple Music, Spotify, Amazon Music and YouTube, without Counterclaimant's authorization. Counterclaimant is informed and believes and thereon alleges that Counterdefendants Yellowcake and Colonize uploaded derivative works of the Los Originales Albums and Cover Art on YouTube.

25.     On May and June 2020, Counterclaimant first learned that Counterdefendant Yellowcake was unlawfully claiming ownership in the masters and sound recordings embodied in the Los Originales Albums when it sent correspondence to Counterclaimant. These infringing works have previously been included in Exhibit A to Plaintiff Yellowcake's Complaint. As set forth above, Counertclaimant had previously purchased ownership in the masters, sound recordings, and cover art associated with the Los Originales Albums.

26.     In addition, Counterdefendants Yellowcake and Colonize are also commercially exploiting the Los Originales Cover Art which Counterclaimant created, designed, and owns the copyrights in. The only modification to the cover art being distributed, displayed, and exploited over streaming platforms by Counterdefendants Yellowcake and Colonize that they have removed the logos belonging to Hyphy Music and instead substituted their respective logos. Aside from this substitution of these logos, Counterdefendants' Album Cover Art is identical to Counterclaimant's.

27.     Counterdefendants Yellowcake and Colonize have no direct license from Counterclaimants for the use of the Los Originales Albums and Cover Art. Accordingly, Counterdefendants do not currently possess any license or authority, nor do they pay any royalties for their ongoing reproduction, and/or display of the

Los Originales Album and Cover Art.

28.     Counterdefendant Colonize and Yellowcake also sent fraudulent DMCA takedown notices to YouTube falsely claiming that Counterclaimant had no right to post or upload the Los Originales Albums and Cover Art. Prior to that time, Counterclaimant had received significant revenue from YouTube and its uploads provided an important and lucrative marketing channel for the Los Originales Albums and Cover Art.

29.     To date, Counterdefendants' uploads of the Los Originales Albums and Cover Art which are rightfully owned by Plaintiff have generated substantial views on their respective YouTube channels. Counterclaimant is also informed and believes and thereon alleges that Counterdefendants have generated significant sums of monies from their unlawful distribution, licensing, and commercial exploitation of the Los Originales Albums and Cover Art.

30.     Counterdefendants' use of Counterclaimant's copyrighted materials is a blatant violation of Plaintiffs' rights under federal copyright law and California law.

## FIRST CLAIM FOR RELIEF

### Direct Infringement of Plaintiffs' Rights Under 17 U.S.C. § 101 et seq. as to the Los Originales Albums

### (Against Counterdefendants Yellowcake and Colonize)

31.     Counterclaimants repeat and reallege every allegation contained in paragraphs 1 through 30 as if fully set forth herein.

32.     This claim for relief arises under 17 U.S.C. § 501.

33.     At all times relevant, Counterclaimant has owned the Los Originales Albums and Los Originales Cover Art and has been the owner of the exclusive rights provided under 17 U.S.C. § 106.

34.     Counterclaimants' copyrighted works in the Los Originales Albums are sound and audiovisual recordings and are original works of authorship

constituting copyrightable subject matter within the meaning of 17 U.S.C. § 102.

35. Without authorization or compensation, Counterdefendants Yellowcake and Colonize are willfully and unlawfully reproducing, displaying, and/or publicly performing the Los Originales Albums in violation of 17 U.S.C. §§ 106 and 501.

36. These unauthorized reproductions, public performances and/or displays are distributed, uploaded, and exploited by Counterdefendants on such streaming services as Spotify, Apple ITunes, Apple Music Pandora, as well as YouTube. In the case of the Los Originales Cover Art, Counterdefendants reproduced such works and made them available without Counterclaimant's permission and/or license.

37. Counterdefendants' infringement of Counterclaimants' rights in each of the Los Originales Albums constitutes a separate and distinct act of infringement.

38. Counterdefendants' acts of infringement are knowing, willful and intentional and in disregard of and indifference to Counterclaimants' rights. As set forth above, Counterdefendants' were aware of Counterclaimant's claim of ownership in the Los Originales Albums.

39. As a direct and proximate result of Counterdefendants' infringement of Counterclaimants' copyrights and exclusive rights under copyright, Counterclaimants are entitled to maximum statutory damages pursuant to 17 U.S.C. Section 504(c) in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. Section 504(c). Alternatively, at Counterclaimants election, pursuant to 17 U.S.C. Section 504(b), Counterclaimant is entitled to its actual damages, including Counterdefendant's profits from the infringement, as will be proven at trial.

40. Counterdefendants' conduct is causing and, unless enjoined by this Court, will continue to cause Counterclaimant great and irreparable injury that

cannot be fully compensated or measured in money damages. Counterclaimant has no adequate remedy at law. Accordingly, Counterclaimant is entitled to a permanent injunction prohibiting infringement of Counterclaimant's copyrights and exclusive rights under copyright pursuant to 17 U.S.C. § 502.

41.    Counterclaimant is entitled to its costs and reasonable attorneys' fees pursuant to 17 U.S.C. Section 505.

### SECOND CLAIM FOR RELIEF

### Direct Infringement of Plaintiffs' Rights Under 17 U.S.C. § 101 et seq. as to the Los Originales Cover Art

### (Against Counterdefendants Yellowcake and Colonize)

42.    Counterclaimants repeat and reallege every allegation contained in paragraphs 1 through 41 as if fully set forth herein.

43.    This claim for relief arises under 17 U.S.C. § 501.

44.    At all times relevant, Counterclaimant has owned the Los Originales Cover Art and has been the owner of the exclusive rights provided under 17 U.S.C. § 106.

45.    Counterclaimants' copyrighted works in the Los Originales Albums and  Visual Art are sound and audiovisual recordings and are original works of authorship constituting copyrightable subject matter within the meaning of 17 U.S.C. § 102.

46.    Without authorization or compensation, Counterdefendants Yellowcake and Colonize are willfully and unlawfully reproducing, exploiting, and displaying the Los Originales Cover Art in violation of 17 U.S.C. §§ 106 and 501.

47.    Based on information and belief, it was Counterdefendants Yellowcake and Colonize that determined what cover art should accompany a stream of a sound recording, and selected the cover art to be displayed. The cover art which Counterdefendants Yellowcake and Colonize are displaying, exploiting, and reproducing is identical to the Los Originales Cover Art, with the minor

exception that Counterdefendants have replaced Counterclaimant's logo with their own logo.

48. Counterdefendants' infringement of Counterclaimants' rights in each of the Los Originales Cover Art constitutes a separate and distinct act of infringement.

49. Counterdefendants' acts of infringement are knowing, willful and intentional and in disregard of and indifference to Counterclaimants' rights. As set forth above, Counterdefendants' were aware of Counterclaimant's claim of ownership in the Los Originales Cover Art.

50. As a direct and proximate result of Counterdefendants' infringement of Counterclaimants' copyrights and exclusive rights under copyright, Counterclaimants are entitled to maximum statutory damages pursuant to 17 U.S.C. Section 504(c) in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. Section 504(c).

51. Counterdefendants' conduct is causing and, unless enjoined by this Court, will continue to cause Counterclaimant great and irreparable injury that cannot be fully compensated or measured in money damages. Counterclaimant has no adequate remedy at law. Accordingly, Counterclaimant is entitled to a permanent injunction prohibiting infringement of Counterclaimant's copyrights and exclusive rights under copyright pursuant to 17 U.S.C. § 502.

52. Counterclaimant is entitled to its costs and reasonable attorneys' fees pursuant to 17 U.S.C. Section 505.

## THIRD CLAIM FOR RELIEF
### Temporary, Permanent, and Injunctive Relief
### (Against Counterdefendants Yellowcake and Colonize)

53. Counterclaimant realleges and incorporates by references the allegations set forth in Paragraphs 1 through 52, inclusive, and incorporates them by reference as though fully set forth herein.

54.     The continuing wrongful acts of Counterdefendants have harmed and continues to harm the interest of Counterclaimant and as a result, Counterclaimant has sustained and will continue to sustain substantial injury and damage to its ownership rights in the Los Originales Albums and Los Originales Cover Art. Unless enjoined, Counterclaimant will suffer irreparable harm for which there is no adequate remedy at law. As such, Counterclaimant seeks injunctive relief prohibiting Counterdefendants from engaging in further infringement and ordering Counterdefendants to destroy any and all copies of infringing work pursuant to 17 U.S.C. §§ 502 and 503.

## FOURTH CLAIM FOR RELIEF

### Intentional Interference with Prospective Business Advantage
### (Against Counterdefendants Yellowcake and Colonize)

55.     Counterclaimant repeats, re-alleges and incorporates by reference in this paragraph the allegations set forth in Paragraphs 1 through 53, inclusive, and incorporates them by reference as though set forth fully herein.

56.     Counterclaimant was in an economic relationship with YouTube that, if not impeded by Counterdefendants, would have resulted in an economic benefit to Counterclaimant; specifically, by uploading and commercially exploiting the Los Originales Albums and Los Originales Cover Art which generated substantial views. Advertisements would be placed on Plaintiff's videos embodying the Los Originales Masters and Cover Art. The revenue derived from these advertisements would be shared between YouTube and Plaintiff.

57.     Counterdefendants knew of this economic relationship between Counterclaimants and YouTube and intended to disrupt it. Counterdefendants engaged in wrongful conduct by, among other things, sending fraudulent DMCA takedown notices to YouTube. In doing so, Counterdefendants knew that that their actions were substantially likely to result in interference with Counterclaimant's economic relationship with YouTube.

58. Counterclaimant's relationship with YouTube with regard to their video channels was disrupted when YouTube agreed to block Counterclaimant's posting of videos in their YouTube channels and to cease payments of advertising revenues to Plaintiff for advertisements placed on Counterclaimant's videos embodying the Los Originales Masters and Los Originales Cover Art. This deprived Counterclaimants of the revenue that would have earned through the placement of advertisements on Counterclaimant's videos. As such, Counterclaimants were damaged as a result of the disruption of this relationship in an amount to be proven at trial. Counterdefendant's wrongful conduct was a substantial factor in causing this harm to Counterclaimant.

59. As such, Counterclaimants have been damages by Counterdefendants and each of them with Counterclaimant's economic relations in an amount to be determined.

### FIFTH CLAIM FOR RELIEF

### Intentional Interference with Contractual Relations

### (Against Counterdefendants Hernandez, Yellowcake, and Colonize)

60. Counterclaimant repeats, re-alleges and incorporates by reference in this paragraph the allegations set forth in Paragraphs 1 through 59, inclusive, and incorporate them by reference as though set forth fully herein.

61. Counterdefendant Hernandez is a principal of Counterdefendants Yellowcake and Colonize.

62. On April 2019, Counterdefendant Hernandez had a meeting with Counterdefendant Chavez in the County of Fresno wherein he expressed his interest in exploiting the Los Originales Albums. Counterclaimant is informed and believes that at that time, Counterdefendant Chavez advised Counterdefendant Hernandez that Counterclaimant was the owner of the Los Originales Albums.

63. Counterdefendant Hernandez intentionally and willfully misled Counterdefendant Chavez when he wrongfully and mistakenly told him that

Counterclaimant had no rights to the Los Originales Albums, was free to sell the subject works to Hernandez's companies, Yellowcake and Colonize, and offered Chavez a significant sum of money to purportedly purchase the rights in the Los Originales Albums. Counterdefendant Hernandez further induced Countedefendant Chavez to ignore is contractual obligations to Counterclaimant by promising to indemnify Chavez in the event Counterclaimant sought legal redress from Chavez. Counterdefendant Hernandez engaged in this conduct, both individually and in his capacity as a principal of Counterdefendants Yellowcake and Colonize, in an effort to disrupt the contractual relations between Counterclaimant and Counterdefendant Chavez.

64.     As a result thereof, Counterdefendant Chavez purportedly entered into an agreement with Counterdefendant Yellowcake whereby in exchange for these monies and promises, he wrongfully transferred his ownership and rights in the Los Originales Albums and Cover Art to Counterdefendant Yellowcake. At the time he entered into said agreement with Counterdefendant Yellowcake, Chavez had no such rights to grant.

65.     Counterclaimant has now been harmed by Counterdefendants' interference with its Agreement with Chavez. Counterdefendants' conduct was a substantial factor in causing the harm.

66.     Counterclaimant's damages will be determined in an amount according to proof at time of trial.

## SIXTH CLAIM FOR RELIEF
### Unfair Competition Under California Business and Professions Code § 17200 Against all Counterdefendants Yellowcake, Colonize, and Hernandez

67.     Counterclaimant repeats and realleges every allegation contained in paragraphs 1 through 66 as if fully set forth herein.

68.     Without authorization, Counterdefendants Yellowcake and Colonize

are reproducing and performing, or benefitting financially from, aiding, encouraging, enabling, inducing, causing, materially contributing to, or otherwise facilitating the reproduction and performance of Counterclaimant's statutory and common law rights in the Los Originales Albums and Cover Art and have engaged in common law misappropriation. Counterdefendant Hernandez also induced Chavez to breach his agreement with Counterclaimant, in order to purportedly obtain rights which Chavez had no right to give.

69. Counterdefendants' conduct as alleged herein constitutes an unfair method of competition and/or an unfair, unlawful, or deceptive practice within the meaning of Section 17200 of the California Business and Professions Code that has caused, and continues to cause, irreparable injury to Plaintiffs' business, goodwill and reputation.

70. Counterdefendants' actions, if not enjoined, will continue. Plaintiffs have no adequate remedy at law and are entitled to permanent injunctive relief.

71. As a result of Counterdefendants' unfair, unlawful or deceptive practices as set forth herein, Counterclaimant has suffered damage and is entitled to restitution in such amounts as will be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### Conversion

### (Against Counterdefendant Yellowcake)

72. Counterclaimant repeats and reallege every allegation contained in paragraphs 1 through 71 as if fully set forth herein.

73. Counterclaimant owns the master recordings embodying the musical performances contained in the Los Originales Albums (hereinafter, "Masters").

74. Counterdefendant Yellowcake intentionally interfered with Counterclaimant's ownership and rights in the Masters by claiming ownership in such property, exercising dominion in such property, exploiting such property, and interfering with Counterclaimants' ability to commercially exploit such property.

Counterdefendant's use and exploitation of the Masters was done without the consent of Counterclaimant.

75. As a result, Counterclaimant has been harmed and Counterdefendant's conduct was a substantial factor in causing Counterclaimant's harm, the amount which will be proven at time of trial.

## EIGHTH CLAIM FOR RELIEF
### Breach of Oral Contract
### (Against Counterdefendant Jesus Chavez Sr.)

76. Counterclaimant repeats, re-alleges and incorporates by reference in this paragraph the allegations set forth in Paragraphs 1 through 75, inclusive, and incorporate them by reference as though set forth fully herein.

77. Counterdefendant Chavez is the founder and principal of a musical group by the name of Los Originales De San Juan. Los Originales De San Juan is a popular musical group in the genre of Spanish-language Regional Mexican music.

78. On February 2013, Counterclaimant Hyphy Music entered into an oral exclusive recording agreements with Jesus Chavez (hereinafter, "Agreement") whereby Counterclaimant commissioned Chavez, for a period of five (5) years, to exclusively provide services as a recording artist in the making of sound and audiovisual  recordings embodied in albums (hereinafter, "Los Originales Albums"). Pursuant to the Agreement, Counterclaimant agreed to: 1) select the musical compositions to be recorded on the Los Originales Albums; 2) commission and/or provide the sound engineers and audiovisual directors; 2) produce the musical performances to be embodied on the Los Originales Albums; 3) direct the recording and filming of musical and the audiovisual performances to be embodied on the Los Originales Albums; and 4) pay Chavez a fixed amount per Los Originales Album. In turn, Chavez agreed to follow Hyphy's artistic direction, perform and record the sound and audiovisual recordings embodying the musical compositions chosen and produced by Hyphy Music, as well as to grant

Counterclaimant the non-exclusive right to utilize Counterdefendant Chavez's name and likeness as well as his musical group's name in connection with the exploitation of the Los Originales Albums in perpetuity. In consideration for the services provided and payment thereto, Chavez agreed that Counterclaimant would be the owner of all title, right, and interest in and to the Los Originales Albums (including without limitation the copyrights and any extensions and renewals thereto) from the inception of the creation of each Los Originales Album.

79.     On April 2019, Counterdefendant Chavez, breached the agreement by without limitation, purportedly transferring, licensing, selling, and/or authorizing Counterdefendants Yellowcake and Colonize to exploit the Los Originales Albums and Visual Art.

80.     As a proximate result of Counterdefendant Chavez's breach, Counterclaimant has been damaged in an amount to be proven at trial, but which is believed to exceed $1,000,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimant prays for judgment as follows:

### ON THE FIRST AND SECOND CLAIMS FOR RELIEF

1.     For actual or statutory damages for each of the Los Originales Albums and Los Originales Cover Art infringed upon pursuant to 17 U.S.C. §504, in an amount that is believed to exceed $1,000,000.00

2.     For damages in such amount as may be found, and requiring Defendants to account for and pay over to Plaintiff all profits derived from all acts of copyright infringement; alternatively, for statutory damages in the amount of $150,000 with respect to each copyright work involved in the action, for all infringements with respect to the copyrighted work concerned, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

3.     For Counterclaimant's reasonable attorney's fees and costs.

4.     For such other relief as the Court deems just and proper.

## ON THE THIRD CLAIM FOR RELIEF

For a temporary, preliminary and permanent injunction enjoining Counterdefendants, and each of them and their agents, servants, employees and co-venturers, and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, fron engaging in or performing any of the following acts:

1. Commercially exploiting, displaying, reproducing, licensing, selling, distributing, or uploading the Los Originales Albums set forth in Exhibit A and works defined and/or described by Yellowcake in its Complaint as "Yellowcake's Copyrighted Works". In furtherance thereof, Counterdefendants shall not upload any of the Los Originales Albums or works defined and/or described as "Yellowcake's Copyrighted Works" onto any streaming platform including without limitation, YouTube, Spotify, ITunes, Apple Music, Spotify, or Amazon Music.

2. Commercially exploiting, displaying, reproducing, licensing, selling, distributing, or uploading the Los Originales Cover Art set forth in Exhibit B. In furtherance thereof, Counterdefendants shall not upload any of the Los Originales Cover Art onto any streaming platform including without limitation, YouTube, Spotify, ITunes, Apple Music, Spotify, or Amazon Music.

3. The Court shall also order Countedefendants to remove from the Internet and any and all online platforms any of the Los Originales Albums which Counterdefendants are presently exploiting, distributing, licensing, or selling. This includes removing all works described by Yellowcake in its Complaint as "Yellowcake's Copyrighted Works".

3. The Court shall also order Counterdefendants to reverse the strikes associated with any DMCA takedown notices as to the Los Originales Albums.

4. The Court shall order Counterdefendants to destroy all copies of the Los Originales Albums or works defined and/or described by Yellowcake in its

Complaint as "Yellowcake's Copyrighted Works" that Counterdefendants have downloaded, uploaded, stored, or maintained in any way.

5. The Court shall order Counterdefendants from engaging in any other activity constituting an infringement of Counterclaimants' Los Originales Albums and Cover Art.

6. For Counterdefendants' profits from its infringement in an amount according to proof.

7. For actual damages in an amount according to proof.

8. For Counterclaimant's reasonable attorneys fee and costs.

9. For such other relief as the Court deems just and proper.

## ON THE FOURTH CLAIM FOR RELIEF

1. For actual and compensatory damages in an amount in excess of One Million Dollars ($1,000,000.00).

2. For exemplary or punitive damages in an amount according to proof.

## ON THE FIFTH CLAIM FOR RELIEF

1. For actual and compensatory damages in an amount according to proof.

2. For exemplary or punitive damages in an amount according to proof.

## ON THE SIXTH CLAIM FOR RELIEF

1. For actual and compensatory damages according to proof, and to pay statutory damages, and restitution

## ON THE SEVENTH CLAIM FOR RELIEF

1. For actual and compensatory damages in an amount not less than $1,000,000.00

2. For punitive damages.

## ON THE EIGHTH CLAIM FOR RELIEF

1. For actual damages in an amount according to proof, but not less than $1,000,000.00

## <u>ON ALL CLAIM FOR RELIEF</u>

1.     For all costs of suit herein.

2. For such other relief as the Court deems just and proper.

Dated: August 19, 2020            LAW OFFICES LOPEZ & ASSOCIATES

By: /s/ *Anthony R. Lopez*

        Anthony R. Lopez, Attorney for
        Counterclaimant -Defendant

## DEMAND FOR JURY TRIAL

Counterclaimant hereby demands a trial by jury.

Dated:    August 10, 2020                    LAW OFFICES LOPEZ & ASSOCIATES


/s/ *Anthony R. Lopez*

Anthony R. Lopez, Esq. Attorneys
for the Counterclaimant

## EXHIBIT "A"
## LOS ORIGINALES ALBUMS
### Sound Recording

1.      **Los Originales de San Juan- El Campesino-**
        **SR 0000810777**

2.      **Los Originales de San Juan- Corridos de Poca M...-**
        **SR 0000869114**

3.      **Los Originales de San Juan- En Vivo Desde La Cantina de Mi**
        **Barrio – SR 0000820139**

4.      **Los Originales de San Juan- Nuestra Historia En Vivo-**
        **SR 0000876925**

### AUDIOVISUAL WORKS
### Motion Picture DVDs

1.      **Los Originales de San Juan - Desde La Cantina de Mi Barrio –**
        **PA 0002117425**

2.      **Los Originales de San Juan- Nuestra Histeria (En Vivo)-**
        **PA 0002251974**

### Music Videos

1.      **Los Originales De San Suan- El Cara de Chango (En Vivo) –**
        **PA 0002198824**

2.       **Los Originales De San Juan- El Morralito (En Vivo)**
         **PA 0002204506)**

## LOS ORIGINALES
## COVER ART

1. **Los Originales de San Juan "En Vivo Desde la Cantina de Mi Barrio" - VA 0002204940**

2. **Los Originales de San Juan "El Campesino" - VA 0002204942**

3. **Los Originales de San Juan "Corridos de Poca M..." – VA 0002204354**

4. **Los Originales de San Juan "Amigos y Contrarios" – VA 0002204356**

5. **Los Originales de San Juan "Naci Con Suerte de Rey" – VA 0002204941**

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 19,2020, I electronically filed the foregoing with the document with the Clerk of the Court using the CM/ECF filing system.  I also certify that the foregoing document is being served this date on all counsel of record or pro se parties as follows:

THOMAS P. GRIFFIN, JR. Esq.
HEFNER, STARK & MAROIS, LLP
2150 RIVER PLAZA DRIVE, SUITE 450
SACRAMENTO, CA 95833

SETH L. BERMAN, sq.
ABRAMS, FENSTERMAN, FERNSTERMAN,
EISMAN, FORMATO, FERRARA, WOLF &
CARONE, LLP

In the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Anthony R. Lopez
Anthony R. Lopez

Exhibit "B"

GEORGE L. PRAJIN CASBN 280055
LOPEZ & PRAJIN
ATTORNEYS AT LAW
500 Newport Center Dr., Suite 600
Newport Beach, California 92660
Telephone: (949) 706-1141
Email: gp@lopezprajin.com

ALEJANDRO MENCHACA CASBN220471
9025 Wilshire Blvd., Suite 500
Beverly Hills, California 90211
Telephone: (626) 554-4744
Email: amenchaca@ymail.com

UNITED STATES DISTRICT COURT

EASTERN DISCTRICT OF CALIFORNIA

| | |
|---|---|
| YELLOWCAKE, INC., A CALIFORNIA CORPORATION,<br><br>PLAINTIFF,<br>v.<br><br>HYPHY MUSIC, INC.,<br><br>DEFENDANT. | CASE NO.: 1:20-CV-00988-DAD-BAM<br><br>**FIRST AMENDED COUNTERCLAIM** |
| HYPHY MUSIC, INC.,<br><br>COUNTERLAIMANT<br><br>v.<br><br>YELLOWCAKE, INC.; COLONIZE MEDIA, INC.; JOSE DAVID HERNANDEZ; JESUS CHAVEZ SR. | |

**FIRST AMENDED COUNTERCLAIM**
- 1 -

Counterclaimant Hyphy Music, Inc. ("Hyphy Music" or "Counterclaimant"), by and through their undersigned attorneys, allege as follows:

### NATURE OF THE ACTION

1. Counterclaimant bring this action seeking to put an immediate stop to, and to obtain redress for, Counter-defendants' ongoing and willful infringement of Counterclaimants' copyrighted recordings and album cover art.

### THE PARTIES

2. Counterclaimant Hyphy Music, Inc. is a California Corporation with its headquarters in the County of Fresno that does business in the Eastern District of California.

3. Counter-defendant Yellowcake, Inc. (hereinafter "Yellowcake") is a California corporation with its headquarters in the County of Stanislaus that does business in the Eastern District of California.

4. Counter-defendant Colonize Media, Inc. (hereinafter "Colonize") is a California corporation with its headquarters in the County of Stanislaus that does business in the Eastern District of California.

5. Counter-defendant Jose David Hernandez (hereinafter "Hernandez") is an individual and principal of Yellowcake and Colonize, who is informed and believes resides in the County of Fresno and does business in the Eastern District of California.

6. Counter-defendant Jesus Chavez Sr. (hereinafter "Chavez") is an individual who resides in the County of Fresno and does business in the Eastern District of California.

7. Counterclaimant alleges that at all times relevant to the facts and circumstances of this Counterclaim, each of the Counter-defendants was the subsidiary, parent, agent, principal, manager, officer, director, instrument, alter ego, franchisee, franchisor, employee, employer, master, servant, partner, co-conspirator, and/or successor or predecessor in interest of the other Counter-defendants, and in committing the acts and omissions hereinafter alleged, was acting within the scope of such agency, management, instrumentality, office, directorship, employment, franchise, servitude, partnership, conspiracy, or interest, and with the consent of his, her, or its Counter-defendants.

## JURISDICTION

9.      This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101 et seq.

10.     This Court has subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a). The Court has supplemental jurisdiction over Counterclaimant's state law claims under 28 U.S.C § 1367.

11.     This Court has personal jurisdiction over Counter-defendants because, among other things, Counterclaimants Yellowcake and Colonize maintain offices and do business in this District. Counter-defendant Hernandez also does business and resides in the Eastern District. Also, a substantial part of the acts of infringement complained of herein have occurred in the State of California and in this District, and/or Counter-defendants have caused injury to Counterclaimant in the State of California and in this District.

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c) and 1400(a) in that in this District pursuant to 28 U.S.C. §§ 1391(c) and 1400(a) for the reasons set forth above in Paragraph 9. Additionally, this Counterclaim is compulsory based on the filing of the action entitled Yellowcake, Inc. v. Hyphy Music, Inc., Case No. 1:20-CV-00988-DAD-BAM.

## GENERAL ALLEGATIONS

13.     Counterclaimant repeats and realleges every allegation contained in paragraphs 1 through 12 as if fully set forth herein.

14.     Counterclaimant Hyphy Music is a record label which is in the business of producing, manufacturing, distributing, exploiting, selling, and licensing sound and audiovisual recordings and artwork in the United States.

15.     Counter-defendant Chavez is the founder and principal of a musical group by the name of Los Originales De San Juan. Los Originales De San Juan is a popular musical group in the area of Spanish-language Regional Mexican music.

16.     On or about February 2013, Counterclaimant Hyphy Music entered into an oral exclusive recording agreements with Jesus Chavez (hereinafter, "Agreement") whereby Counterclaimant commissioned Chavez, for a period of five (5) years, to exclusively provide

services as a recording artist in the making of sound and audio-visual recordings embodied in albums listed on Exhibit A (hereinafter, "Los Originales Albums"). Pursuant to the Agreement, Counterclaimant agreed to: 1) select the musical compositions to be recorded on the Los Originales Albums; 2) commission and/or provide the sound engineers and audio visual directors; 2) produce the musical performances to be embodied on the Los Originales Albums; 3) direct the recording and filming of musical and the audio visual performances to be embodied on the Los Originales Albums; and 4) pay Chavez a fixed amount per Los Originales Album. In turn, Chavez agreed to follow Hyphy's artistic direction, perform and record the sound and audiovisual recordings embodying the musical compositions chosen and produced by Hyphy Music, as well as to grant Counterclaimant the non-exclusive right to utilize Counterdefendant Chavez's name and likeness as well as his musical group's name in connection with the exploitation of the Los Originales Albums in perpetuity. In consideration for the services provided and payment thereto, Chavez agreed that Counterclaimant would be the owner of all title, right, and interest in and to the tangible masters of Los Originales Albums and all intellectual property rights in the musical performances embodied in the tangible masters of Los Originales Albums (including without limitation the copyrights and any extensions and renewals thereto) from the inception of the creation of each Los Originales Album.

17. In reliance on the above Agreement, in addition to commissioning Counter-defendant Chavez to perform the musical performances embodied on the Masters and paying Chavez for all right title and interest in the Los Originales Albums, Counterclaimant contributed sufficient original authorship in the creation of the Los Originales Albums by selecting the musical compositions, commissioning and directing engineers and directors and/or providing the services itself, directing the recording and filming of the musical and audio visual performances to be embodied on the Los Originales Albums and producing the Los Originales Albums. In doing so, Counterclaimant contributed sufficient originality to these works so as to make Counterclaimant, at minimum, the co-author, co-owner, and joint owner of the Copyrights in works under the Copyright Act.

18. Counterclaimant also produced, created, and designed the album cover art associated with the Los Originales Albums. This included, without limitation, Counterclaimant

FIRST AMENDED COUNTERCLAIM
- 4 -

locating and scouting locations, taking the photography and/or commissioning photographers, for the album cover photos were taken, hiring the photographer(s), designing sets/ props, assisting in wardrobe, and providing graphic design work (hereinafter, "Los Originales Cover Art").

19.     Counterclaimant has also registered the copyrights in the Los Originales Albums listed on Exhibit B ("Originales Copyrights"), including the cover art. The copyright registration numbers associated with each of the Los Originales Albums are set forth in Exhibit B. Counterclaimant also registered the copyrights in the Los Originales Cover Art. True and accurate copies of the Los Originales Cover Art and their corresponding copyright registration numbers are set forth in Exhibit C.

20.     Accordingly, Counterclaimant is the exclusive copyright owner of the Los Originales Albums and Los Originales Cover Art.

21.     On or about April 2019, Counter-defendant Hernandez had a meeting with Counter-defendant Chavez in the County of Fresno wherein he expressed his interest in exploiting the Los Originales Albums. Counterclaimant is informed and believes that at that time, Counter-defendant Chavez advised Counter-defendant Hernandez that he had entered into a contract with Counterclaimant and that Counterclaimant was the owner of the Los Originales Albums.

22.     Counter-defendant Hernandez intentionally and willfully misled Counter-defendant Chavez when he wrongfully and mistakenly told him that Counterclaimant had no rights to the Los Originales Albums, was free to sell the subject works to Hernandez's companies, Yellowcake and Colonize, and offered Chavez a significant sum of money to purportedly purchase the rights in the Los Originales Albums. Counter-defendant further induced Counter-defendant Chavez to to ignore his contractual obligations to Counterclaimant by promising to indemnify Chavez in the event Counterclaimant sought legal redress from Chavez. Counter-defendant Hernandez engaged in this conduct, both individually and in his capacity as a principal of Counter-defendants Yellowcake and Colonize, in in an effort to disrupt the contractual relations between Counterclaimant and Counter-defendant Chavez.

23.     As a result, thereof, Counter-defendant Chavez purportedly entered into an

**FIRST AMENDED COUNTERCLAIM**

- 5 -

agreement with Counter-defendant Yellowcake whereby in exchange for these monies and promises, he wrongfully transferred his ownership and rights in the Los Originales Albums and Cover Art to Counter-defendant Yellowcake. At the time he entered into said agreement with Counter-defendant Yellowcake, Chavez had no such rights to grant.

24.     On or about May and/or June 2019, Counterclaimant discovered that Counter-defendant Yellowcake and Colonize had created or caused to be created derivative works of the Los Originales Albums and Cover Art, and was distributing, selling, and commercially exploiting these derivative works via such online platforms as ITunes, Apple Music, Spotify, Amazon Music and YouTube, without Counterclaimant's authorization. Counterclaimant is informed and believes and thereon alleges that Counter-defendants Yellowcake and Colonize uploaded derivative works of the Los Originales Albums and Cover Art on YouTube.

25.     On or about May and June 2020, Counterclaimant first learned that Counter-defendant Yellowcake was unlawfully claiming ownership in the masters and sound recordings embodied in the Los Originales Albums when it sent correspondence to Counterclaimant. These infringing works have previously been included in Exhibit A to Plaintiff Yellowcake's Complaint. As set forth above, Counterclaimant had previously purchased ownership in the masters, sound recordings, and cover art associated with the Los Originales Albums.

26.     In addition, Counter-defendants Yellowcake and Colonize are also commercially exploiting the Los Originales Cover Art which Counterclaimant created, designed, and owns the copyrights in. The only modification to the cover art being distributed, displayed, and exploited over streaming platforms by Counter-defendants Yellowcake and Colonize that they have removed the logos belonging to Hyphy Music and instead substituted their respective logos. Aside from this substitution of these logos, Counter-defendants' Album Cover Art is identical to Counterclaimant's.

27.     Counter-defendants Yellowcake and Colonize have no direct license from Counterclaimant for the use of the Los Originales Albums and Cover Art. Accordingly, Counter-defendants do not currently possess any license or authority, nor do they pay any royalties for their ongoing reproduction, and/or display of the Los Originales Album and Cover Art.

28.     Counter-defendant Colonize and Yellowcake also sent fraudulent DMCA takedown notices to YouTube falsely claiming that Counterclaimant had no right to post or upload the Los Originales Albums and Cover Art. Prior to that time, Counterclaimant had received significant revenue from YouTube and its uploads provided an important and lucrative marketing channel for the Los Originales Albums and Cover Art.

29.     To date, Counter-defendants' uploads of the Los Originales Albums and Cover Art which are rightfully owned by Plaintiff have generated substantial views on their respective YouTube channels. Counterclaimant is also informed and believes and thereon alleges that Counter-defendants have generated significant sums of monies from their unlawful distribution, licensing, and commercial exploitation of the Los Originales Albums and Cover Art.

30.     Counter-defendants' use of Counterclaimant's copyrighted materials is a blatant violation of Plaintiffs' rights under federal copyright law and California law.

## FIRST CLAIM FOR RELIEF

### Direct Infringement of Plaintiffs' Rights Under 17 U.S.C. § 101 et seq. as to the Los Originales Albums

### (Against Counter-defendants Yellowcake and Colonize)

31.     Counterclaimants repeat and reallege every allegation contained in paragraphs 1 through 30 as if fully set forth herein.

32.     This claim for relief arises under 17 U.S.C. § 501.

33.     At all times relevant, Counterclaimant has owned the Los Originales Albums and Los Originales Cover Art and has been the owner of the exclusive rights provided under 17 U.S.C. § 106.

34.     Counterclaimants' copyrighted works in the Los Originales Albums are sound and audiovisual recordings and are original works of authorship constituting copyrightable subject matter within the meaning of 17 U.S.C. § 102.

35.     Without authorization or compensation, Counter-defendants Yellowcake and Colonize are willfully and unlawfully reproducing, displaying, and/or publicly performing the Los Originales Copyrights in violation of 17 U.S.C. §§ 106 and 501.

36.     These unauthorized reproductions, public performances and/or displays are distributed, uploaded, and exploited by Counter-defendants on such streaming services as Spotify, Apple ITunes, Apple Music Pandora, as well as YouTube. In the case of the Los Originales Cover Art, Counter-defendants reproduced such works and made them available without Counterclaimant's permission and/or license.

37.     Counter-defendants' infringement of Counterclaimants' rights in each of the Los Originales Copyrights constitutes a separate and distinct act of infringement.

38.     Counter-defendants' acts of infringement are knowing, willful and intentional and in disregard of and indifference to Counterclaimants' rights. As set forth above, Counter-defendants were aware of Counterclaimant's claim of ownership in the Los Originales Copyrights.

39.     As a direct and proximate result of Counter-defendants' infringement of Counterclaimants' copyrights and exclusive rights under copyright, Counterclaimants are entitled to maximum statutory damages pursuant to 17 U.S.C. Section 504(c) in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. Section 504(c). Alternatively, at Counterclaimants election, pursuant to 17 U.S.C. Section 504(b), Counterclaimant is entitled to its actual damages, including Counterdefendant's profits from the infringement, as will be proven at trial.

40.     Counter-defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Counterclaimant great and irreparable injury that cannot be fully compensated or measured in money damages. Counterclaimant has no adequate remedy at law. Accordingly, Counterclaimant is entitled to a permanent injunction prohibiting infringement of Counterclaimant's copyrights and exclusive rights under copyright pursuant to 17 U.S.C. § 502.

41.      Counterclaimant is entitled to its costs and reasonable attorneys' fees pursuant to 17 U.S.C. Section 505.

///

////

////

**SECOND CLAIM FOR RELIEF**

**Direct Infringement of Plaintiffs' Rights Under 17 U.S.C. § 101 et seq. as to**

**the Los Originales Cover Art**

**(Against Counter-defendants Yellowcake and Colonize)**

42.     Counterclaimants repeat and reallege every allegation contained in paragraphs 1 through 41 as if fully set forth herein.

43.     This claim for relief arises under 17 U.S.C. § 501.

44.     At all times relevant, Counterclaimant has owned the Los Originales Cover Art and has been the owner of the exclusive rights provided under 17 U.S.C. § 106.

45.     Counterclaimants' copyrighted works in the Los Originales Albums and Cover Art are sound and audiovisual recordings and are original works of authorship constituting copyrightable subject matter within the meaning of 17 U.S.C. § 102.

46.     Without authorization or compensation, Counter-defendants Yellowcake and Colonize are willfully and unlawfully reproducing, exploiting, and displaying the Los Originales Cover Art in violation of 17 U.S.C. §§ 106 and 501.

47.     Based on information and belief, it was Counter-defendants Yellowcake and Colonize that determined what cover art should accompany a stream of a sound recording and selected the cover art to be displayed. The cover art which Counter-defendants Yellowcake and Colonize are displaying, exploiting, and reproducing is identical to the Los Originales Cover Art, with the minor exception that Counter-defendants have replaced Counterclaimant's logo with their own logo.

48.     Counter-defendants' infringement of Counterclaimants' rights in each of the Los Originales Cover Art constitutes a separate and distinct act of infringement.

49.     Counter-defendants' acts of infringement are knowing, willful and intentional and in disregard of and indifference to Counterclaimants' rights. As set forth above, Counter-defendants' were aware of Counterclaimant's claim of ownership in the Los Originales Cover Art.

50.     As a direct and proximate result of Counter-defendants' infringement of

Counterclaimants' copyrights and exclusive rights under copyright, Counterclaimants are entitled to maximum statutory damages pursuant to 17 U.S.C. Section 504(c) in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. Section 504(c).

51.     Counter-defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Counterclaimant great and irreparable injury that cannot be fully compensated or measured in money damages. Counterclaimant has no adequate remedy at law. Accordingly, Counterclaimant is entitled to a permanent injunction prohibiting infringement of Counterclaimant's copyrights and exclusive rights under copyright pursuant to 17 U.S.C. § 502.

52.     Counterclaimant is entitled to its costs and reasonable attorneys' fees pursuant to 17 U.S.C. Section 505.

### THIRD CLAIM FOR RELIEF

### Temporary, Permanent, and Injunctive Relief

### (Against Counter-defendants Yellowcake and Colonize)

53.     Counterclaimant realleges and incorporates by references the allegations set forth in Paragraphs 1 through 52, inclusive, and incorporates them by reference as though fully set forth herein.

54.     The continuing wrongful acts of Counter-defendants have harmed and continues to harm the interest of Counterclaimant and as a result, Counterclaimant has sustained and will continue to sustain substantial injury and damage to its ownership rights in the Los Originales Albums and Los Originales Cover Art. Unless enjoined, Counterclaimant will suffer irreparable harm for which there is no adequate remedy at law. As such, Counterclaimant seeks injunctive relief prohibiting Counter-defendants from engaging in further infringement and ordering Counter-defendants to destroy any and all copies of infringing work pursuant to 17 U.S.C. §§ 502 and 503.

///

///

////

# FOURTH CLAIM FOR RELIEF

## Intentional Interference with Prospective Business Advantage

## (Against Counter-defendants Yellowcake and Colonize)

55. Counterclaimant repeats, re-alleges and incorporates by reference in this paragraph the allegations set forth in Paragraphs 1 through 53, inclusive, and incorporates them by reference as though set forth fully herein.

56. Counterclaimant was in an economic relationship with YouTube that, if not impeded by Counter-defendants, would have resulted in an economic benefit to Counterclaimant; specifically, by uploading and commercially exploiting the Los Originales Albums and Los Originales Cover Art which generated substantial views. Advertisements would be placed on Plaintiff's videos embodying the Los Originales Masters and Cover Art. The revenue derived from these advertisements would be shared between YouTube and Plaintiff.

57. Counter-defendants knew of this economic relationship between Counterclaimants and YouTube and intended to disrupt it. Counter-defendants engaged in wrongful conduct by, among other things, sending fraudulent DMCA takedown notices to YouTube. In doing so, Counter-defendants knew that that their actions were substantially likely to result in interference with Counterclaimant's economic relationship with YouTube.

58. Counterclaimant's relationship with YouTube with regard to their video channels was disrupted when YouTube agreed to block Counterclaimant's posting of videos in their YouTube channels and to cease payments of advertising revenues to Plaintiff for advertisements placed on Counterclaimant's videos embodying the Los Originales Masters and Los Originales Cover Art. This deprived Counterclaimants of the revenue that would have earned through the placement of advertisements on Counterclaimant's videos. As such, Counterclaimants were damaged as a result of the disruption of this relationship in an amount to be proven at trial. Counter-defendant's wrongful conduct was a substantial factor in causing this harm to Counterclaimant.

59. As such, Counterclaimants have been damages by Counter-defendants and each of them with Counterclaimant's economic relations in an amount to be determined.

## FIFTH CLAIM FOR RELIEF

### Intentional Interference with Contractual Relations

### (Against Counter-defendants Hernandez, Yellowcake, and Colonize)

60.    Counterclaimant repeats, re-alleges and incorporates by reference in this paragraph the allegations set forth in Paragraphs 1 through 59, inclusive, and incorporate them by reference as though set forth fully herein.

61.    Counter-defendant Hernandez is a principal of Counter-defendants Yellowcake and Colonize.

62.    On or about April 2019, Counter-defendant Hernandez had a meeting with Counter-defendant Chavez in the County of Fresno wherein he expressed his interest in exploiting the Los Originales Albums. Counterclaimant is informed and believes that at that time, Counter-defendant Chavez advised Counter-defendant Hernandez that Counterclaimant was the owner of the Los Originales Albums.

63.    Counterdefendant Hernandez intentionally and willfully misled Counter-defendant Chavez when he wrongfully and mistakenly told him that Counterclaimant had no rights to the Los Originales Albums, was free to sell the subject works to Hernandez's companies, Yellowcake and Colonize, and offered Chavez a significant sum of money to purportedly purchase the rights in the Los Originales Albums. Counter-defendant Hernandez further induced Counter-defendant Chavez to ignore is contractual obligations to Counterclaimant by promising to indemnify Chavez in the event Counterclaimant sought legal redress from Chavez. Counter-defendant Hernandez engaged in this conduct, both individually and in his capacity as a principal of Counterdefendants Yellowcake and Colonize, in an effort to disrupt the contractual relations between Counterclaimant and Counterdefendant Chavez.

64.    As a result, thereof, Counter-defendant Chavez purportedly entered into an agreement with Counter-defendant Yellowcake whereby in exchange for these monies and promises, he wrongfully transferred his ownership and rights in the Los Originales Albums and Cover Art to Counter-defendant Yellowcake. At the time he entered into said agreement with Counter-defendant Yellowcake, Chavez had no such rights to grant.

65.     Counterclaimant has now been harmed by Counter-defendants' interference with its Agreement with Chavez. Counter-defendants' conduct was a substantial factor in causing the harm.

66.     Counterclaimant's damages will be determined in an amount according to proof at time of trial.

### SIXTH CLAIM FOR RELIEF

### Unfair Competition Under California Business and Professions Code § 17200
### (Against all Counter-defendants Yellowcake, Colonize, and Hernandez)

67.     Counterclaimant repeats and realleges every allegation contained in paragraphs 1 through 66 as if fully set forth herein.

68.     Without authorization, Counter-defendants Yellowcake and Colonize are reproducing and performing, or benefitting financially from, aiding, encouraging, enabling, inducing, causing, materially contributing to, or otherwise facilitating the reproduction and performance of Counterclaimant's statutory and common law rights in the Los Originales Albums and Cover Art and have engaged in common law misappropriation. Counter-defendant Hernandez also induced Chavez to breach his agreement with Counterclaimant, in order to purportedly obtain rights which Chavez had no right to give.

69.     Counter-defendants' conduct as alleged herein constitutes an unfair method of competition and/or an unfair, unlawful, or deceptive practice within the meaning of Section 17200 of the California Business and Professions Code that has caused, and continues to cause, irreparable injury to Plaintiffs' business, goodwill and reputation.

70.     Counter-defendants' actions, if not enjoined, will continue. Plaintiffs have no adequate remedy at law and are entitled to permanent injunctive relief.

71.     As a result of Counter-defendants' unfair, unlawful or deceptive practices as set forth herein, Counterclaimant has suffered damage and is entitled to restitution in such amounts as will be proven at trial.

///

///

**FIRST AMENDED COUNTERCLAIM**
- 13-

## SEVENTH CLAIM FOR RELIEF

### Conversion

### (Against Counter-defendant Yellowcake)

72.     Counterclaimant repeats and realleges every allegation contained in paragraphs 1 through 71 as if fully set forth herein.

73.     Counterclaimant owns the tangible master recordings embodying the musical performances contained in the Los Originales Albums (hereinafter, "Masters").

74.     Counter-defendant Yellowcake intentionally interfered with Counterclaimant's ownership and rights in the Masters by claiming ownership in such property, exercising dominion in such property, exploiting such property, and interfering with Counterclaimants' ability to commercially exploit such property. Counter-defendant's use and exploitation of the Masters was done without the consent of Counterclaimant.

75.     As a result, Counterclaimant has been harmed and Counter-defendant's conduct was a substantial factor in causing Counterclaimant's harm, the amount which will be proven at time of trial.

## EIGHTH CLAIM FOR RELIEF

### Breach of Oral Contract

### (Against Counter-defendant Jesus Chavez Sr.)

76.     Counterclaimant repeats, re-alleges and incorporates by reference in this paragraph the allegations set forth in Paragraphs 1 through 75, inclusive, and incorporate them by reference as though set forth fully herein.

77.     Counter-defendant Chavez is the founder and principal of a musical group by the name of Los Originales De San Juan. Los Originales De San Juan is a popular musical group in the genre of Spanish-language Regional Mexican music.

78.     On February 2013, Counterclaimant Hyphy Music entered into an oral exclusive recording agreements with Jesus Chavez (hereinafter, "Agreement") whereby Counterclaimant commissioned Chavez, for a period of five (5) years, to exclusively provide services as a recording artist in the making of sound and audio-visual  recordings embodied in albums

(hereinafter, "Los Originales Albums"). Pursuant to the Agreement, Counterclaimant agreed to: 1) select the musical compositions to be recorded on the Los Originales Albums; 2) commission and/or provide the sound engineers and audio visual directors; 2) produce the musical performances to be embodied on the Los Originales Albums; 3) direct the recording and filming of musical and the audio visual performances to be embodied on the Los Originales Albums; and 4) pay Chavez a fixed amount per Los Originales Album. In turn, Chavez agreed to follow Hyphy's artistic direction, perform and record the sound and audiovisual recordings embodying the musical compositions chosen and produced by Hyphy Music, as well as to grant Counterclaimant the non-exclusive right to utilize Counter-defendant Chavez's name and likeness as well as his musical group's name in connection with the exploitation of the Los Originales Albums in perpetuity. In consideration for the services provided and payment thereto, Chavez agreed that Counterclaimant would be the owner of all title, right, and interest in and to the Los Originales Albums (including without limitation the copyrights and any extensions and renewals thereto) from the inception of the creation of each Los Originales Album.

79. On April 2019, Counter-defendant Chavez breached the agreement by without limitation, purportedly transferring, licensing, selling, and/or authorizing Counter-defendants Yellowcake Colonize to exploit the Los Originales Albums and Cover Art.

80. As a proximate result of Counter-defendant Chavez's breach, Counterclaimant has been damaged in an amount of $1,000,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimant prays for judgment as follows:

### ON THE FIRST AND SECOND CLAIMS FOR RELIEF

1. For actual or statutory damages for each of the Los Originales Albums and Los Originales Cover Art infringed upon pursuant to 17 U.S.C. §504.

2. For damages in such amount as may be found, and requiring Counter-Defendants to account for and pay over to Plaintiff all profits derived from all acts of copyright infringement; alternatively, for statutory damages in the amount of $150,000 with respect to each copyright work involved in the action, for all infringements with respect to the copyrighted work concerned, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

3. For Counterclaimant's reasonable attorney's fees and costs.

4. For such other relief as the Court deems just and proper.

**ON THE THIRD CLAIM FOR RELIEF**

For a temporary, preliminary and permanent injunction enjoining Counter-defendants, and each of them and their agents, servants, employees and co-venturers, and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from engaging in or performing any of the following acts:

1. Commercially exploiting, displaying, reproducing, licensing, selling, distributing, or uploading the Los Originales Albums set forth in Exhibit B and works defined and/or described by Yellowcake in its Complaint as "Yellowcake's Copyrighted Works". In furtherance thereof, Counter-defendants shall not upload any of the Los Originales Albums or works defined and/or described as "Yellowcake's Copyrighted Works" onto any streaming platform including without limitation, YouTube, Spotify, ITunes, Apple Music, Spotify, or Amazon Music.

2. Commercially exploiting, displaying, reproducing, licensing, selling, distributing, or uploading the Los Originales Cover Art set forth in Exhibit C. In furtherance thereof, Counterdefendants shall not upload any of the Los Originales Cover Art onto any streaming platform including without limitation, YouTube, Spotify, ITunes, Apple Music, Spotify, or Amazon Music.

3. The Court shall also order Counter-defendants to remove from the Internet and any and all online platforms any of the Los Originales Albums which Counter-defendants are presently exploiting, distributing, licensing, or selling. This includes removing all works described by Yellowcake in its Complaint as "Yellowcake's Copyrighted Works".

3. The Court shall also order Counter-defendants to reverse the strikes associated with any DMCA takedown notices as to the Los Originales Albums.

4. The Court shall order Counter-defendants to destroy all copies of the Los Originales Albums or works defined and/or described by Yellowcake in its Complaint as "Yellowcake's Copyrighted Works" that Counter-defendants have downloaded, uploaded, stored, or maintained in any way.

5. The Court shall order Counter-defendants from engaging in any other activity

constituting an infringement of Counterclaimants' Los Originales Albums and Cover Art.

6.      For Counter-defendant's profits from its infringement in an amount according to proof.

7.      For actual damages in an amount according to proof.

8.      For Counterclaimant's reasonable attorneys fee and costs.

9.      For such other relief as the Court deems just and proper.

### ON THE FOURTH CLAIM FOR RELIEF

1.      For actual and compensatory damages in an amount in excess of One Million Dollars ($1,000,000.00).

2.      For exemplary or punitive damages in an amount according to proof.

### ON THE FIFTH CLAIM FOR RELIEF

1.      For actual and compensatory damages in an amount according to proof.

2.      For exemplary or punitive damages in an amount according to proof.

### ON THE SIXTH CLAIM FOR RELIEF

1.      For actual and compensatory damages according to proof, and to pay statutory damages, and restitution

### ON THE SEVENTH CLAIM FOR RELIEF

1.      For actual and compensatory damages in an amount not less than $1,000,000.00

2.      For punitive damages.

### ON THE EIGHTH CLAIM FOR RELIEF

1.      For actual damages in an amount according to proof, but not less than $1,000,000.00

### ON ALL CLAIMS FOR RELIEF

1.      For all costs of suit herein.

2.      For such other relief as the Court deems just and proper.

///

///

///

**FIRST AMENDED COUNTERCLAIM**

- 17-

Dated: August 28, 2020
LOPEZ & PRAJIN

By: _George L. Prajin_
George L. Prajin, Attorney for
Counterclaimant

**FIRST AMENDED COUNTERCLAIM**
- 18-

# DEMAND FOR JURY TRIAL

Counterclaimant hereby demands a trial by jury.

Dated:   August 28,2020                    LOPEZ & PRAJIN


*George L. Prajin*
George L. Prajin, Esq.
Attorneys for the Counterclaimant

# EXHIBIT "A"

## Los Originales Albums

**1.  Los Originales de San Juan- Amigos y Contrarios**

        1) Amigos y Contrarios

        2) El Tucan

        3) El Buchon

        4) El Puma de Tlazazalca

        5) Custodio Alvarez

        6) Dos Perros Malnacidos

        7) Rolando Junior

        8) Javier Guerrero

        9) Hugo S. Salazar

        10) Hoy Que Mis Hijos Se Fueron

        11) Jesus Herrera

        12) Corrido de Monchis

        13) Hartate Mugroso

        14) La Carera

**2.  Los Originales de San Juan-Naci Con Suerte de Rey Con Mariachi**

        1) Naci Con Suerte de Rey

        2) Don Miguel Herrera

        3) Volver a Vivir

        4) Fiesta En Mi Rancho

        5) Que Bonito

        6) Que Vuelva Conmigo

7) Padre

8) Sin Llorar y Como Amigos

9) Devuelveme El Corazon

10) Que de Raro Tiene

11) Tarde Duo Con Paty Alvizo

12) Miraron Llorar A Este Hombre

**3.** **Los Originales de San Juan- Corridos de Poca M**

1) El Carlichi

2) Sin Fortuna

3) El Fantasma

4) Javier Fernandez

5) El Original

6) Manuel Gonzalez

7) Amanda Varela

8) Cuando No Se Nace Rico

9) Mi Viejo

10) Tan Solo Penas

**4.** **Los Originales de San Juan-El Campesino**

1) El Campesino

2) Solo Dios

3) El Arbol

4) El Paniqueado

5) Dinero Manchado

6) Corrido del Cach

**FIRST AMENDED COUNTERCLAIM**

- 21-

7) El Corrido de Camilo

8) El Martelito

9) Chicano Jaliciense

10) Miguel Fuentes

11) En Una Cajita de Oro

12) Mis Hijos Son Mi Tesoro

13) Marili

14) Suplica de Un Padre

**5.** **Los Originales de San Juan-Desde La Cantina de Mi Barrio CD/DVD**

1) Mi Ultimo Deseo

2) La Peda

3) Paloma En Su Nido

4) El Morralito

5) Me Llaman Lineas de A Metro

6) Naci Con Suerte de Rey

7) El Tequilero

8) El Clavo

9) El Jabali

10) Con Una Copa En Mi Mano

11) La Cantina de Mi Barrio

12) El Carlichi

13) Vida Prestada

14) Fuiste Todo Para Mi

15) Eladio Mora

**6.** **Los Originales de San Juan-Nuestra Historia CD/D**VD

1) El Rey del Cristal

2) El Aguacatero Michoacano

3) El Patas de Diablo

4) El Cara de Chango

5) La Raza Michoacana

6) La Caspa del Diablo Ft. El Sinaloa

7) La Troca del Mono Negro

8) Deje de Engordar Marranos

9) El Jardinero

10) El Grande de Michoacan

11) Rey de Reyes

12) Pakas de A Kilo

13) La Muerte de Manuelon

14) Corrido del Charapo

15) Los Cuatro Amigos

16) El Numero Gratis

# EXHIBIT "B"

## LOS ORIGINALES COPYRIGHTS

### Sound Recording

1.   **Los Originales de San Juan- El Campesino-**

     **SR 0000810777**

2.   **Los Originales de San Juan- Corridos de Poca M...-**

     **SR 0000869114**

3.   **Los Originales de San Juan- En Vivo Desde La Cantina de Mi Barrio – SR**

     **0000820139**

4.   **Los Originales de San Juan- Nuestra Historia En Vivo-**

     **SR 0000876925**


### AUDIOVISUAL WORKS

### Motion Picture DVDs

1.   **Los Originales de San Juan - Desde La Cantina de Mi Barrio –**

     **PA 0002117425**

2.   **Los Originales de San Juan- Nuestra Histeria (En Vivo)-**

     **PA 0002251974**

### Music Videos

1.   **Los Originales De San Suan- El Cara de Chango (En Vivo) –**

     **PA 0002198824**

2.   **Los Originales De San Juan- El Morralito (En Vivo)**

     **PA 0002204506)**


### LOS ORIGINALES

### COVER ART

1.   **Los Originales de San Juan "En Vivo Desde la Cantina de Mi Barrio" - VA**

     **0002204940**

**FIRST AMENDED COUNTERCLAIM**

- 24-

2.     **Los Originales de San Juan "El Campesino" - VA 0002204942**

3.     **Los Originales de San Juan "Corridos de Poca M..." –**
   **VA 0002204354**

4.     **Los Originales de San Juan "Amigos y Contrarios" –**
   **VA 0002204356**

5.     **Los Originales de San Juan "Naci Con Suerte de Rey" –**
   **VA 0002204941**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 28, 2020, I electronically filed the foregoing with the document with the Clerk of the Court using the CM/ECF filing system. I also certify that the foregoing document is being served this date on all counsel of record or pro se parties as follows:

THOMAS P. GRIFFIN, JR. Esq.
HEFNER, STARK & MAROIS, LLP
2150 RIVER PLAZA DRIVE, SUITE 450
SACRAMENTO, CA 95833

SETH L. BERMAN, sq.
ABRAMS, FENSTERMAN, FERNSTERMAN,
EISMAN, FORMATO, FERRARA, WOLF &
CARONE, LLP

In the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_George L. Prajin_
George L. Prajin

FIRST AMENDED COUNTERCLAIM
- 26-

# Exhibit "K"

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELLOWCAKE, INC., | CASE NO. 1:20-CV-0988 AWI BAM |
| Plaintiff | |
| v. | ORDER ON COUNTER-DEFENDANTS' MOTION TO DISMISS |
| HYPHY MUSIC, INC., | |
| Defendant | (Doc. No. 23) |
| ———————————————— | |
| HYPHY MUSIC, INC., | |
| Count-Plaintiff | |
| v. | |
| YELLOWCAKE, INC., COLONIZE MEDIA, INC., JOSE DAVID HERNANDEZ, and JESUS CHAVEZ, SR. | |
| Counter-Defendants | |

This is a copyright dispute involving seven musical albums by the artist Los Originales De San Juan. Counter-Plaintiff Hyphy Music, Inc. ("Hyphy") brings claims against Counter-Defendants Yellowcake, Inc. ("Yellowcake"), Colonize Media, Inc. ("Colonize"), Jose Hernandez ("Hernandez") (collectively "YCH") and Jesus Chavez, Sr. ("Chavez") for two copyright violations under the Copyright Act (17 U.S.C. § 100 et seq.) involving four of the albums and associated cover art of three of the albums, and state law claims for intentional interference with prospective economic advantage, intentional interference with contractual relations, unfair competition, conversion, and breach of contract. Currently before the Court is YCH's Rule 12(b)(6) motion to dismiss six of the seven counterclaims alleged against them. For the reasons that follow, Defendants' motion will generally be granted.

1                    **RULE 12(b)(6) FRAMEWORK**

2        Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

3    plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

4    Counterclaims are subject to Rule 12(b)(6) challenges. See Seismic Reservoir 2020, Inc. v.

5    Paulsson, 785 F.3d 330, 335 (9th Cir. 2015). A dismissal under Rule 12(b)(6) may be based on

6    the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a

7    cognizable legal theory. Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In

8    reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken

9    as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica,

10   Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more than "labels

11   and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

12   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793

13   F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that

14   contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or

15   allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

16   inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254

17   (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual

18   matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at

19   678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual

20   content that allows the court to draw the reasonable inference that the defendant is liable for the

21   misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir.

22   2013). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts

23   that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678;

24   Somers, 729 F.3d at 960. The Ninth Circuit has distilled the following principles for Rule

25   12(b)(6) motions: (1) to be entitled to the presumption of truth, allegations in a complaint or

26   counterclaim may not simply recite the elements of a cause of action, but must contain sufficient

27   allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

28   effectively; (2) the factual allegations that are taken as true must plausibly suggest entitlement to

                                                      2

1  relief, such that it is not unfair to require the opposing party to be subjected to the expense of

2  discovery and continued litigation.  Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014).  If a

3  motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to

4  amend the pleading was made . . . ."  Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016).

5  However, leave to amend need not be granted if amendment would be futile or the plaintiff has

6  failed to cure deficiencies despite repeated opportunities.  Garmon v. County of L.A., 828 F.3d

7  837, 842 (9th Cir. 2016).

8

9  **BACKGROUND**

10  Hyphy is a record label that is in the business of producing, manufacturing, distributing,

11  exploiting, selling, and licensing sound and audiovisual recordings and associated artwork.

12  Chavez is the founder and principal of the musical group Los Originales De San Juan, a popular

13  Mexican musical group.

14  In February 2013, Hyphy entered into an oral exclusive recording agreement with Chavez

15  whereby Hyphy commissioned Chavez, for a period of five (5) years, to exclusively provide

16  services as a recording artist in the making of sound and audio-visual recordings embodied in

17  albums.  Pursuant to the agreement, Hyphy agreed to:  (1) select the musical compositions to be

18  recorded on the albums; (2) produce the musical performances on the albums; (3) direct the

19  recording and filming of musical and audiovisual performances to be embodied on the albums;

20  and (4) pay Chavez a fixed amount per album.  Chavez agreed to follow Hyphy's artistic direction,

21  perform the recordings, and grant Hyphy the non-exclusive right to utilize Chavez's likeness and

22  his group's name.  Chavez also agreed that Hyphy would be the owner of all title, right, and

23  interest in and to the tangible masters of the albums and all property rights in the musical

24  performances embodied in the tangible masters (including the copyrights and any extensions and

25  renewals of the copyrights) from the inception of the creation of each album.  Hyphy performed

26  the above services and contributed sufficient originality to the albums such that Hyphy at a

27  minimum is a co-author, co-owner, or joint owner of the copyrights in the albums for purposes of

28  the Copyright Act.  Hyphy also produced, created, and designed the album cover art for the

1   albums.  Apparently, Hyphy and Chavez created four albums (Corridos de Poca M, Desde La

2   Cantina de Mi Barrio, El Campesino, and Nuestra Historia).  See FAC Ex. B.  Hyphy also

3   registered copyrights in the content of the four albums and in the cover art of three albums

4   (Corridos de Poca M, Desde la Cantina de Mi Barrio, and El Campesino).  Hyphy alleges that it is

5   the exclusive copyright owner of the four albums and the albums' cover art.  See id.

6        In April 2019, Hernandez had a meeting with Chavez wherein Hernandez expressed his

7   interest in exploiting the four Los Originales' albums.  Chavez advised Hernandez that he had

8   entered into a contract with Hyphy and that Hyphy was the owner of the four albums.  Hernandez

9   intentionally misled Chavez and wrongfully told Chavez that Hyphy had no rights in the four

10   albums and that Chavez was free to sell to Hernandez's companies, Colonize and Yellowcake.

11   Hernandez offered Chavez a significant sum of money purportedly to purchase the rights to the

12   four albums and also promised to indemnify Chavez if Hyphy sought legal redress from Chavez.

13   Hernandez engaged in this conduct individually and on behalf of Colonize and Yellowcake to

14   disrupt the contractual relations between Hyphy and Chavez.  Chavez purportedly entered into an

15   agreement with Yellowcake.  In exchange for money, Chavez wrongfully transferred his

16   ownership rights in the four albums and cover art to Yellowcake, even though Chavez had no such

17   rights to grant.

18        In May or June 2019, Hyphy discovered that Yellowcake and Colonize created or caused

19   the creation of copies of the four Los Originales albums and cover art and was distributing, selling

20   and exploiting these works through online platforms such as ITunes, Amazon Music, and

21   YouTube.  The only difference between the cover art created by Hyphy and the cover art being

22   utilized by Yellowcake and Colonize was that Yellowcake and Colonize removed the Hyphy logos

23   and replaced them with Yellowcake and Colonize's respective logos.  This was done without

24   Hyphy's authorization.  Yellowcake sent correspondences to Hyphy in which Yellowcake was

25   claiming ownership of the masters and sound recordings of the seven albums.  However,

26   Yellowcake and Colonize have no direct license from Hyphy to use or exploit the seven albums

27   and cover art.

28

1   Yellowcake and Colonize sent fraudulent takedown notices to YouTube that falsely

2   claimed that Hyphy had no right to post or upload the three albums and cover art.  Prior to the

3   takedown notices, Hyphy had received significant revenue from YouTube, and the YouTube

4   uploads provided an important and lucrative marketing channel for the four albums and cover art.

5   Now, YCH's uploads of the albums and cover art have generated substantial views and revenue on

6   their YouTube channels.  YCH's exploitation of the four albums is unlawful and a blatant

7   violation of California law and federal copyright law.

8       On June 4, 2020, Yellowcake filed a copyright infringement claim against Hyphy.  Hyphy

9   procured registered copyrights for the four albums on the following dates:  March 17, 2017 (El

10  Campesino), May 9, 2018 (Desde La Cantina de Mi Barrio), April 13, 2020 (Corridos De Poca

11  M), and August 2, 2020 (Nuestra Historia).  See Defendants' Request for Judicial Notice ("RJN")

12  (Doc. No. 29) Exs. 1, 2, 3, 4.[1]  On August 19, 2020, Hyphy filed its counterclaim, and on August

13  28, 2020, filed the active First Amended Counterclaim ("FAC").

14

15           **COUNTER-DEFENDANTS' MOTION TO DISMISS**

16  **I.**     **First Cause of Action – Copyright Infringement of Sound Recordings**

17          *Counter-Defendants' Arguments*

18      Yellowcake explains that in March 2019, it entered into an asset purchase agreement with

19  Chavez whereby Yellowcake purchased the entirety of Chavez's ownership in the rights, title, and

20  interest in the sound recordings that comprise the albums of Los Originales De San Juan.

21  Yellowcake then complied in all respects with the provisions of the Copyright Act by registering

22  copyrights for each of the sound recordings.  Yellowcake was issued a Certificate of Registration

23  for each copyrighted sound recording.

24      Yellowcake argues that Hyphy's first copyright claim fails because Hyphy cannot establish

25

26  [1] The RJN requests that the Court to take judicial notice of copies of registration information from the U.S. Copyright Office's Online Catalog regarding the seven albums.  See Doc. No. 29.  The Court takes judicial notice of these governmental records.  See Fed. R. Evid. 201; Basile v. Twneitieth Century Fox Film Corp., 678 F. App'x 576, 577

27  (9th Cir. 2017); Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1146 (9th Cir. 2008); Yellowcake, Inc. v. Morena Music, Inc., 2021 U.S. Dist. LEXIS 39127, *8 n.1 (E.D. Cal. Mar. 1, 2021); Kaseberg v. Conaco, LLC, 360

28  F.Supp.3d 1026, 1029 n.2 (S.D. Cal. 2018); Obodai v. YouTube LLC, 840 F.Supp.2d 714, 715 n.1 (S.D.N.Y. 2011).

1  that it has valid ownership of a copyright in the albums.  Hyphy purports to make its ownership

2  claim by alleging an oral agreement with Chavez.  However, ownership of copyrights cannot be

3  transferred by oral agreement.  At best, all that could arise from the oral agreement was a non-

4  exclusive license to use the albums/sound recordings.  In the absence of a writing between Hyphy

5  and Chavez, Chavez had the ability to transfer his ownership of the sound recordings to

6  Yellowcake.  Because Hyphy cannot rely on the oral agreement to establish exclusive rights in the

7  four albums, the first cause of action for infringement and the third cause of action for associated

8  injunctive relief should be dismissed.

9  *Counter-Plaintiff's Opposition*

10  Hyphy argues that, pursuant to Paragraph 17, the FAC alleges that Hyphy is a co-author of

11  the four albums with Chavez.  As a co-author, Hyphy has an equal undivided interest in the whole

12  of the works with Chavez.  This is the case regardless of whether the FAC in the alternative pleads

13  that Hyphy was granted an oral license from Chavez.  Therefore, YCH's arguments that Hyphy

14  does not possess a valid copyright in the sound recordings and masters, or that any claim thereto is

15  made only by way of an oral argument with Chavez, is misplaced.  As a co-author, Hyphy may

16  sue YCH for copyright infringement because Chavez never had the ability to grant the exclusive

17  rights that YCH believed it had obtained.

18  *Legal Standard*

19  "The Copyright Act affords copyright owners the 'exclusive rights' to display, perform,

20  reproduce, or distribute copies of a copyrighted work, to authorize others to do those things, and to

21  prepare derivative works based upon the copyrighted work."  Maloney v. T3Media, Inc., 853 F.3d

22  1004, 1010 (9th Cir. 2017); see 17 U.S.C. § 106.  Only the "legal or beneficial owner of an

23  exclusive right under a copyright" has standing to sue for infringement of that right.  Righthaven

24  LLC v. Hoehn, 716 F.3d 1166, 1169 (9th Cir. 2013).  Further, while one can own a copyright and

25  have property rights in a work without a registration, the owner needs to register the copyright

26  before he can sue for infringement.  See 17 U.S.C. §§ 408(a), 411(a); Gold Value Int'l Textile, Inc.

27  v. Sanctuary Clothing, Ltd. Liab. Co., 925 F.3d 1140, 1144 (9th Cir. 2019); Alaska Stock, LLC v.

28  Houghton Mifflin Harcourt Publ'g Co., 747 F.3d 673, 678 (9th Cir. 2014).  A claim for copyright

1  infringement has two basic elements:  (1) ownership of a valid copyright, and (2) copying of

2  constituent elements of the work that are original.  <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499

3  U.S. 340, 351 (1991); <u>Great Minds v. Office Depot, Inc.</u>, 945 F.3d 1106, 1110 (9th Cir. 2019);

4  <u>Seven Arts</u>, 733 F.3d at 1254.  "To plead ownership, [a plaintiff] must plausibly allege it owns a

5  valid copyright registration for its works."  <u>Malibu Textiles, Inc. v. Label Lane Int'l, Inc.</u>, 922

6  F.3d 946, 951 (9th Cir. 2019).

7      *Discussion*

8      Hyphy's opposition focuses on allegations in Paragraph 17 to contend that it is a co-author

9  and therefore a joint owner of the three albums.  This is a reasonable reading of Paragraph 17.

10 However, the FAC also alleges an agreement between Hyphy and Chavez for the intellectual

11 property rights in the four albums.  Further, documents from the Copyright Office indicate that

12 Hyphy named itself as the author of the albums as an "employer" in a work for hire arrangement.

13 Finally, although not mentioned in the opposition, Copyright Office documents for the El

14 Campesino album identify Hyphy as the copyright claimant through a written transfer agreement.

15 <u>See</u> RJN Ex. 4. Therefore, the opposition, the Counterclaim, and the judicially noticed documents

16 indicate four potential theories of ownership by Hyphy.  The Court will examine each theory

17 separately.

18     1.    <u>Oral Transfer from Chavez to Hyphy</u>

19     "Copyright owners may transfer '[a]ny exclusive rights comprised in a copyright,

20 including any subdivision of any of the rights specified in [17 U.S.C. § 106],' . . . so long as the

21 transfer is evidenced by a signed writing."  <u>Corbello v. Devito</u>, 777 F.3d 1058, 1062 (9t h Cir.

22 2015) (citing 17 U.S.C. §§ 201(d)(2) and 204(a); <u>see also</u> <u>Jules Jordan Video, Inv. v. 144942</u>

23 <u>Canada, Inc.</u>, 617 F.3d 1146, 1156 (9th Cir. 2010).  Specifically, the Copyright Act provides that a

24 "transfer of copyright ownership, other than by operation of law, is not valid unless an instrument

25 of conveyance, or a note or memorandum of transfer, is in writing and signed by the owner of the

26 rights conveyed or such owner's duly authorized agent."  17 U.S.C. § 204(a).  "[S]ection 204 of

27 the Copyright Act invalidates a purported transfer of ownership unless it is in writing."  <u>Effects</u>

28 <u>Assocs. v. Cohen</u>, 908 F.2d 555, 556 (9th Cir. 1990); <u>see</u> <u>Radio TV Espanola S.A. v. New World</u>

1  Entm't Ltd., 183 F.3d 922, 926-27 (9th Cir. 1999); Konigsberg Int'l, Inc. v. Rice, 16 F.3d 355,

2  356-57 (9th Cir. 1994).

3               a.    Ability to Raise Compliance with § 204(a)

4         The general rule in the Ninth Circuit is that a third party may not raise noncompliance with

5  17 U.S.C. § 204(a)'s writing requirement as a defense to a copyright transfer. DRK Photo, 870

6  F.3d at 986. Section 204(a) is "designed to resolve disputes between owners and transferees and

7  to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or

8  copyright ownership." Jules Jordan Video, 617 F.3d at 1157; see Billy-Bob Teeth, Inc. v.

9  Novelty, Inc., 329 F.3d 586, 592 (7th Cir. 2003). In the absence of a dispute between the

10 copyright owner and transferee, "it would be unusual and unwarranted to permit a third-party

11 infringer to invoke § 204(a) to avoid suit for copyright infringement." Jules Jordan Video, 617

12 F.3d at 1157 (quoting Billy-Bob Teeth, 329 F.3d at 592). "Although a third party may not raise

13 noncompliance with [§ 204(a)]'s writing requirement as a defense to a copyright transfer where

14 the parties to the transfer do not dispute it existence, a third party is not foreclosed from

15 challenging a plaintiff's ownership for purposes of standing." DRK Photo v. McGraw-Hill Global

16 Educ. Holdings, LLC, 870 F.3d 978, 986 (9th Cir. 2017) (citing Jules Jordan Video, 617 F.3d at

17 1157 and Righthaven, 716 F.3d at 1169). The copyright plaintiff bears the burden of establishing

18 a qualifying ownership interest in the copyright both as a substantive element of the infringement

19 claim and also as a necessary predicate for standing to bring the claim. DRK Photo, 870 F.3d at

20 986. The absence of standing to bring a copyright infringement claim is a jurisdictional failure.

21 Righthaven, 716 F.3d at 1172-73.

22        Here, no party has raised YCH's ability to raise § 204(a) with respect to the oral agreement

23 between Chavez and Hyphy. Despite this failure, the Court finds that YCH's invocation of

24 § 204(a) is appropriate. First, as DRK Photo expressly makes clear, YCH may invoke § 204(a) as

25 a challenge to standing. Second, the express allegations in the FAC identify the only agreement

26 between Hyphy and Chavez as an oral one. Thus, the express allegations by Hyphy plainly and

27 clearly demonstrate a failure to meet § 204(a)'s requirements. Third, the Court does not find that

28 the general rule against third parties raising § 204(a) applies in this situation. This is not a case in

8

1 which there is no dispute between the copyright holder and the transferee. Chavez is a named

2 counter-defendant. The single claim alleged against Chavez by Hyphy is for breach of oral

3 agreement based on Chavez's transfer of his rights in the four albums to Yellowcake. Further, the

4 fact that Chavez entered into a written agreement with YCH for the interest in the four albums

5 indicates that Chavez believed that he had not transferred his ownership interests to Hyphy. This

6 is contrary to Hyphy's alleged position that it held all exclusive rights by virtue of its oral

7 agreement with Chavez. Thus, the counterclaim against Chavez and the nature of Chavez's

8 actions towards the four albums clearly demonstrate a dispute between Chavez and Hyphy.

9 Ultimately, the Court is faced with competing claims from two entities who claim ownership in

10 copyrights through a common transferee and counter-defendant who transferred the copyrights

11 twice. Under these circumstances, the Court finds that it is appropriate for YCH to raise the issue

12 of compliance with § 204(a).

13               **b.**     **Effect of § 204(a)**

14       The Counterclaim affirmatively states that Hyphy and Chavez entered into oral recording

15 agreements that included the transfer to Hyphy of all intellectual property rights that Chavez had

16 in the four albums. See FAC ¶ 16. There are no allegations in the FAC that Hyphy and Chavez

17 entered into any kind of written agreement whatsoever.

18       The absence of a written agreement is a key argument made in YCH's motion, yet

19 Hyphy's opposition does not address the argument in terms of answering the writing requirement.

20 That is, Hyphy does not argue that it has a written agreement with Chavez or that a written

21 agreement is somehow unnecessary to effect a transfer of Chavez's copyright interests. Instead,

22 the opposition regarding the first cause of action mentions the oral agreement with Chavez one

23 time, and only then in an attempt to recharacterize the agreement or the agreement's effect.

24 Specifically, after stating the legal proposition that a co-author shares an equal undivided interest

25 in a copyrighted work, Hyphy states: "This is the case regardless of whether Hyphy also pleads in

26 the alternative that it was granted an oral license to such rights." Doc. No. 27 at 4:20-21.

27       It is noteworthy that the FAC never uses the term "license" or expressly alleges any claim

28 or theory "in the alternative." Nevertheless, accepting that the FAC is alleging that a license

9

1  exists, that does not aid Hyphy.  A non-exclusive license may be granted orally or implied from

2  conduct.  Effects Assocs., 908 F.2d at 558.  The granting of a non-exclusive license waives the

3  right of the copyright owner to sue the licensee for copyright infringement.  Graham v. Jones, 144

4  F.3d 229, 236 (2d Cir. 1998).  Critically, a "mere 'non-exclusive license' does not constitute a

5  'transfer of copyright ownership' and therefore cannot confer standing to assert [a copyright]

6  infringement claim."  DRK Photo, 870 F.3d at 983; see Sybersound Records, Inc. v. UAV Corp.,

7  517 F.3d 1137, 1146 (9th Cir. 2008).  Therefore, even if the Court accepts Hyphy's

8  characterization of its agreement with Chavez, the license that would be created is non-exclusive

9  only, the license could only serve as a defense to a claim by Chavez, and it would not form an

10  ownership interest sufficient to confer standing under the first cause of action.  The first cause of

11  action is in no way furthered by the contention that the oral agreement created a license in the

12  albums as between Chavez and Hyphy.  Yellowcake, Inc. v. Morena Music, Inc., 2021 U.S. Dist.

13  LEXIS 39127, *16 (E.D. Cal. Mar. 1, 2021).

14      The absence of a written transfer agreement defeats both Hyphy's standing to pursue, and

15  substantive claim of, copyright infringement based on an oral transfer of ownership between

16  Chavez and Hyphy.  See 17 U.S.C. § 204(a); DRK Photo, 870 F.3d at 986; Righthaven, 716 F.3d

17  at 1172; Radio TV Espanola, 183 F.3d at 926-27; Konigsberg, 16 F.3d at 356-57; Effects Assocs.,

18  908 F.2d at 556-57.  To the extent a non-exclusive license may be involved or pled in the FAC,

19  that non-exclusive license does not give Hyphy standing to pursue a copyright infringement claim.

20  DRK Photo, 870 F.3d at 983; Morena Music, 2021 U.S. Dist. LEXIS 39127 at *17.  Therefore, the

21  first cause of action does not allege a valid or plausible ownership interest in the copyrights of the

22  three albums based on an oral contractual transfer between Hyphy and Chavez.  Morena Music,

23  2021 U.S. Dist. LEXIS 39127 at *17.

24      2.    Joint Owner/Co-Author

25      A "joint work" is "a work prepared by two or more authors with the intention that their

26  contributions be merged into inseparable or interdependent parts of a unitary whole."  17 U.S.C. §

27  101; Aalmuhammed v. Lee, 202 F.3d 1227, 1231 (9th Cir. 2000); Ashton-Tate Corp. v. Ross, 916

28  F.2d 516, 520 (9th Cir. 1990).  "The authors of a joint work are co-owners of the copyright in that

1   work." 17 U.S.C. § 201(a); <u>Richlin v. MGM Pictures, Inc.</u>, 531 F.3d 962, 968 (9th Cir. 2008);

2   <u>Ashton-Tate</u>, 916 F.2d at 521. Each author must make an "independently copyrightable

3   contribution," which is a contribution that "represents original expression that could stand on its

4   own as the subject matter of copyright." <u>Ashton-Tate</u>, 916 F.2d at 521 (quoting P. Goldstein,

5   *Copyright: Principles, Law and Practice*, § 4.2.1 p.379 (1989)); <u>see also</u> <u>Richlin</u>, 531 F.3d at 968.

6   That is, "to be an author, one must supply more than mere direction or ideas; one must 'translate

7   an idea into a fixed tangible expression entitled to copyright protection." <u>S.O.S., Inc. v. Payday,</u>

8   <u>Inc.</u>, 886 F.2d 1081, 1087 (9th Cir. 1989); <u>Ashton-Tate</u>, 916 F.2d at 521. Therefore, in the Ninth

9   Circuit, a "joint work" has four elements: (1) a copyrightable work, (2) two or more authors, (3)

10  the authors intend for their contributions to be merged into inseparable or interdependent parts of a

11  unitary whole, and (4) each author made an independently copyrightable contribution to the work.

12  <u>Aalmuhammed</u>, 202 F.3d at 1231. In determining whether individuals are co-authors of a joint

13  work, a contract that defines relationship as one of co-authors is dispositive. <u>See</u> <u>Richlin</u>, 531

14  F.3d at 968; <u>Aalmuhammed</u>, 202 F.3d at 1234. In the absence of a contract, courts consider

15  whether: (1) a purported author "superintends" the work by exercising control; (2) the putative

16  co-authors make objective manifestations of a shared intent to be co-authors; and (3) the audience

17  appeal of the work turns on both contributions and the share of each in its success cannot be

18  appraised. <u>Aalmuhammed</u>, 202 F.3d at 1234; <u>see also</u> <u>Richlin</u>, 531 F.3d at 968. The first factor,

19  control, will often be the most important consideration. <u>Richlin</u>, 531 F.3d at 968; <u>Aalmuhammed</u>,

20  202 F.3d at 1234. Additionally, because each co-author of a "joint work" has an independent right

21  to use or license the copyright, a co-author cannot be liable to another co-author for infringement

22  of copyright, but co-authors must account to other co-authors for any profits earned from licensing

23  or using the copyright. <u>See</u> <u>Ashton-Tate</u>, 916 F.2d at 522; <u>Oddo v. Ries</u>, 743 F.3d 630, 632-33

24  (9th Cir. 1984). Further, unless all co-authors of a "joint work" join in granting an exclusive

25  license, a single co-author (acting on its own behalf) can grant only a non-exclusive license in the

26  copyright work because one co-author cannot limit the other co-authors' independent right to

27  exploit the copyright. <u>Sybersound</u>, 517 F.3d at 1146. However, a co-owner of a copyright is free

28  to transfer his ownership interest to another, as long as the transfer is only of the exclusive

11

copyright interests that the transferring co-owner himself possesses.  Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n, 953 F.3d 638, 645 n.2 (9th Cir. 2020).

Here, YCH does not argue that the relevant allegations in the FAC (Paragraphs 16 and 17) do not plausibly allege that the albums are joint works and that Chavez and Hyphy are co-authors. Additionally, recent Ninth Circuit authority indicates some of the requirements for a joint ownership as co-authors can at least be plausibly inferred from the Counterclaim.  In *Abs Entertainment*, the Ninth Circuit addressed the copyright claims of remastering engineers in remastered sound recordings.  See Abs Entm't v. CBS Corp., 908 F.3d 405, 410-11 (9th Cir. 2018).  As relevant here, the Ninth Circuit made a distinction between remastering engineers and recording engineers/record producers:

> Nothing in this opinion should be construed to question or limit the creative contributions of the recording engineers and/or record producers responsible for the recording session that led to the initial fixation of the sound recording. The initial producer/engineer's role is often to work in collaboration with the performing artists to make many of the creative decisions that define the overall sound of the recording as fixed, including such things as microphone choice, microphone placement, setting sound levels, equipment used, processing filters employed, tapes selected, session structure, and other similar decisions analogous to the creative choices of photographers that courts have consistently held to be original. See *United States Copyright Office and Sound Recordings as Works Made for Hire: Hearing Before the Subcomm. on Courts and Intellectual Property of the H. Comm. on the Judiciary*, 106th Cong. 2nd Sess. (2000) (statement of Marybeth Peters, Register of Copyrights) ("The copyrightable elements in a sound recording will usually, though not always, involve 'authorship' both on the part of the performers whose performance is captured and on the part of the record producer responsible for setting up the recording session, capturing and electronically processing the sounds, and compiling and editing them to make the final sound recording."); cf. Burrow-Giles, 111 U.S. at 60 (holding that photographs are copyrightable to the extent of the photographer's decisions with respect to costume, accessories, pose of subjects, light and shade and evoking the desired expression).

Id. at 423.  Given *Abs Entm't*'s observations regarding the contributions of record producers, and the absence of any substantive arguments against the relevant allegations of the FAC, for purposes of this motion, dismissal based on the absence of an ownership interest is inappropriate.

However, accepting the allegation of co-authorship, and thus joint ownership, of the four albums would appear to defeat Hyphy's claim of copyright infringement.  Morena Music, 2021 U.S. Dist. LEXIS 39127 at *21.  Hyphy's theory means that it was a co-owner of the copyrights in the albums with Chavez.  See id.  There is no dispute that Chavez entered into a written transfer

agreement with YCH. <u>See</u> Complaint at Ex. A; FAC ¶¶ 22, 23. Because it is clear that Hyphy was not a party to that transfer, Chavez could not transfer exclusive rights to YCH. <u>See</u> <u>Sybersound</u>, 517 F.3d at 1146. However, Chavez could transfer his ownership interest in the albums to YCH. <u>See</u> <u>Tresona Multimedia</u>, 953 F.3d at 645 n.2. Therefore, the agreement between Chavez and YCH could have transferred Chavez's interests in the album to YCH. The ultimate result would be that Hyphy is now a joint owner of the copyrights in the albums with YCH. One joint owner of a copyright cannot sue another joint owner of a copyright for copyright infringement. <u>See</u> <u>Ashton-Tate</u>, 916 F.2d at 522; <u>Oddo</u>, 743 F.3d at 632-33. Given the current state of the briefing before the Court, Hyphy's theory of co-authorship/joint ownership defeats its claim of copyright infringement because the other joint owner is Yellowcake. <u>See</u> <u>id.</u>; <u>Morena</u> <u>Music</u>, 2021 U.S. Dist. LEXIS 39127 at *22.

       <u>3.</u>     <u>Work for Hire</u>

       A work made for hire is defined as either:

       (1) a work prepared by an employee within the scope of his or her employment; or

       (2) a work specially ordered or commissioned for use as a contribution to a collective work, as part of a motion picture or other audio visual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the works shall be considered a work made for hire.

17 U.S.C. 101; <u>Hendricks & Lewis PLLC v. Clinton</u>, 766 F.3d 991, 998 n.5 (9th Cir. 2014); <u>Jules</u> <u>Jordan Video</u>, 617 F.3d at 1156. With respect to the first definition, the terms "employee" and "scope of employment" are construed according to common law agency principles. <u>Community</u> <u>for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 740-41 (1989); <u>U.S. Auto Parts Network, Inc. v.</u> <u>Parts Geek, Ltd. Liab. Co.</u>, 692 F.3d 1009, 1015 (9th Cir. 2012); <u>JustMed, Inc. v. Byce</u>, 600 F.3d 1118, 1125 (9th Cir. 2010). The central question for determining whether a person is an "employee" is "the hiring party's right to control the manner and means by which the product is accomplished." <u>Reid</u>, 490 U.S. at 751; <u>JustMed</u>, 600 F.3d at 1125. Factors that a court should consider for determining "employee" status include: the skill required for that occupation, the source of the instrumentalities and tools, the location of the work, the duration of the relationship

1 between the parties, whether the hiring party has the right to assign additional projects to the hired
2 party, the extent of the hired party's discretion over when and how long to work, the method of
3 payment, the hired party's role in hiring and paying assistants, whether the work is part of the
4 regular business of the hiring party, whether the hiring party is in business, the provision of
5 employee benefits, and the tax treatment of the hired party.  Reid, 490 U.S. at 751-52; JustMed,
6 600 F.3d at 1125.  An employee's "scope of employment" is determined by examining three
7 factors:  (1) the work is of the kind the employee is employed to perform; (2) the work occurs
8 substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a
9 purpose to serve the employer.  U.S. Auto Parts, 692 F.3d at 1015.  With respect to the second
10 definition, "[w]orks 'specially ordered or commissioned' can only be made after the execution of
11 an express agreement between the parties."  Gladwell Gov't Servs., Inc. v. County of Marin, 265
12 F. App'x 624, 626 (9th Cir. 2008); Schiller & Schmidt, Inc. v. Nordisco Corp., 969 F.2d 410, 413
13 (7th Cir. 1992); Sisyphus Touring, Inc. v. TMZ Prods., 208 F.Supp.3d 1105, 1111-12 (C.D. Cal.
14 2016).  No specific wording need be used in order for a writing to constitute a "work for hire"
15 agreement."  Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1141 (9th Cir. 2003).
16 However, if there is no written instrument at all, then the work cannot be a commissioned or
17 specially ordered "work for hire."  Jules Jordan Video, 617 F.3d at 1155.  If a work is made for
18 hire, "the employer or other person for whom the work was prepared is considered the author" and
19 owns the copyright "unless the parties have expressly agreed otherwise in a written instrument
20 signed by them."  17 U.S.C. § 201(b); see U.S. Auto Parts, 692 F.3d at 1015.

21      As indicated above, there are only two ways that a work can be deemed a "work for hire."
22 17 U.S.C. § 101.  The FAC's allegations are insufficient to demonstrate either method.

23      First, there are no allegations that a written agreement exists between Chavez and Hyphy
24 that states that the albums are commissioned works that are to be considered works for hire.  In
25 fact, the FAC alleges that the agreement with Chavez was oral.  See Counterclaim ¶ 16.  As a
26 result of this allegation, the albums categorically cannot be specially ordered or commissioned
27 works for hire under § 101(2).  Jules Jordan Video, 617 F.3d at 1155; Morena Music, 2021 U.S.
28 Dist. LEXIS 39127 at *24.

14

1

2       Second, with respect to "employee" status, Paragraph 16 of the Counterclaim describes the

3   relationship with Chavez.  Some aspects of Paragraph 16 may be supportive of "employee" status

4   under *Reid*, e.g. providing sound engineers and audio/visual directors, while others do not, e.g.

5   Chavez was paid a fixed rate per album for the albums.  Cf. FAC ¶ 16 with Reid, 490 U.S. at 751-

6   53.  However, neither Paragraph 16 nor the remainder of the FAC address all of the *Reid* factors.

7   Further, unlike the express allegation that Hyphy did enough to be considered a co-author, or the

8   express allegation that Chavez granted Hyphy all rights in the three albums, there are no express

9   allegations that Chavez was an employee of Hyphy.  Given who Chavez is (the founder and

10  musical principal of Los Originales De San Juan), and the limited allegations made in the FAC,

11  the Court finds it more plausible that Chavez is an independent contractor, particularly in the

12  absence of an express allegation that Chavez was an employee of Hyphy.  In the absence of an

13  actual allegation that Chavez was an employee of Hyphy, supported by sufficient factual

14  allegations that indicate employee status, there is not a sufficiently plausible indication that

15  Chavez was an employee of Hyphy who was acting int the scope of his employment for Hyphy.

16  See Morena Music, 2021 U.S. Dist. LEXIS 39127 at *26.

17      4.      Written Agreement

18      As indicated above, the copyright registration for the album/sound recording El Campesino

19  identifies the "Copyright Claimant" as "Hyphy Music, Inc., Transfer: By written agreement."

20  RJN Ex. 4.  Thus, a judicially noticed document suggests that a written agreement for a transfer of

21  the interest in El Campesino exists.  Such an agreement would fatally undercut the basis for

22  YCH's argument that no valid transfer or ownership interest exists.  However, the Court finds it

23  troubling that the written agreement was not alleged to exist in the original Counterclaim, the now

24  operative FAC, or even the opposition to this motion to dismiss.  Instead, each of these documents

25  identify the existence of an oral agreement only.  Considering the importance a written agreement

26  would have to Hyphy's claims and its defense of those claims, the failure of Hyphy to allege or

27  describe in any fashion a written agreement, and the FAC's clear factual allegation of only an oral

28  agreement, the Court cannot conclude that a written transfer agreement exists.

5.   Conclusion

The Counterclaim does not plausibly allege a valid transfer between Chavez and Hyphy, nor does the Counterclaim plausibly allege that the four albums were works for hire.  Accepting that there are sufficient plausible allegations that indicate co-authorship between Hyphy and Chavez, the allegations in the FAC and the Complaint indicate that Chavez transferred at least his ownership interests in the albums to YCH.   As a co-owner, Hyphy cannot sue YCH for copyright infringement.  Since no plausible infringement claim is stated, dismissal is appropriate.  See Morena Music, 2021 U.S. Dist. LEXIS 39127 at *26.

**II.   Third Cause of Action – Injunctive Relief under the Copyright Act**

The Copyright Act provides that a court "may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 501(a); Flexible Lifeline sys. v. Precision Lift, Inc., 654 F.3d 989, 994 (9th Cir. 2011).  The plain language of § 501(a) presupposes either a plausibly pled or an adequately proven copyright infringement claim.  This is consistent with the nature of an injunctive relief, which is not a standalone cause of action but a remedy that must be supported by a viable substantive cause of action.  Morena Music, 2021 U.S. Dist. LEXIS 39127 at *26-*27; TYR Sport Inc. v. Warnaco Swimwear, Inc., 679 F.Supp.2d 1120, 1141 n.13 (C.D. Cal. 2009).  Dismissal of the claim for injunctive relief as a distinct cause of action is appropriate, but Hyphy is free to request injunctive relief under § 501(a) in the prayer or as part of the allegations under an infringement cause of action.  Morena Music, 2021 U.S. Dist. LEXIS 39127 at *26-*27.

**III.   Fourth, Fifth & Sixth Causes of Action –Intentional Interference with Prospective Business Advantage, Intentional Interference with Contractual Relations, UCL, & Conversion**

*Counter-Defendants' Arguments*

YCH argues that the state law claims fail because they are preempted by the Copyright Act and fail to satisfy the California statute of frauds requirement.  With respect to preemption, the

16

state law claims are preempted by the Copyright Act because they are equivalent to the rights protected by the Copyright Act and the albums fall within the subject matter of the Copyright Act. Each cause of action depends on a valid transfer of a copyright interest from Chavez to Hyphy.

*Counter-Plaintiff's Opposition*

With respect to preemption, Hyphy argues that the Copyright Act does not preempt any of the state law claims. Each claim is at least partly based on YCH's wrongdoing affecting Hyphy's right to own and possess the tangible masters. Copyright law protects intangible sound recordings but does not protect the material object in which the work is embodied. The tangible embodiment of intangible rights, like the tangible masters here, are qualitatively different than what is protected by the Copyright Act. YCH cites no case in which the Copyright Act preempts a claim based on property rights in tangible embodiments like the masters. Therefore, there is no preemption.

With respect to the statute of frauds, full performance of the contract is an exception to the writing requirement. Hyphy argues that it has fully performed under the terms of the oral agreement. Therefore, the California statute of frauds requirement has been met. Additionally, YCH's reliance on 17 U.S.C. § 204(a)'s requirement for a writing is misplaced because that section only involves transfers of a copyright. That section can have no application to the masters, which are tangible property and not copyrights. Finally, Hyphy argues that each state law claim incorporates by reference allegations regarding its co-authorship of the albums. Thus, contrary to YCH's arguments, not one counterclaim relies solely on Hyphy being able to establish ownership of the copyrights at issue through a written contract.

*Discussion*

YCH's arguments against the state law counterclaims are primarily based on either Copyright Act preemption or state law statute of frauds.

1.    California Statute of Frauds

YCH invokes Cal. Civ. Code § 1624(a)(1), which applies to agreements that by their terms are not to be performed within one year of making the agreement. See Cal. Civ. Code § 1624(a)(1); Zakk v. Diesel, 33 Cal.App.5th 431, 449 (2019). However, even if a contract cannot be completely performed within one year of execution, if the contract has been fully performed by

1   one party, the remaining promise is taken out of the statute of frauds and may be enforced by the

2   performing party.  See Dutton v. Interstate Investment Corp., 19 Cal.2d 65, (1941); Dougherty v.

3   California Kettleman Oil Royalties, 9 Cal.2d 58, 81 (1937); Zakk, 33 Cal.App.5th 449-54; Secrest

4   v. Security Nat'l Morg. Loan Trust 2002-2, 167 Cal.App.4th 544, 556 (2008).

5          Here, the allegations in the Counterclaim generally describe the 2013 oral agreement with

6   Chavez as being one for the completion of musical albums over a period of five years in exchange

7   for a fixed monetary amount per album.  See Counterclaim ¶¶ 16, 17.  There are no allegations

8   that indicate that Chavez has additional contractual promises to perform.  While there are no

9   allegations that address the statute of frauds expressly, that is hardly surprising as the statute of

10  frauds is an affirmative defense.  See Fed. R. Civ. P. 8(c)(1); Corbin v. Time Warner Entm't-

11  Advance/Newhouse P'ship, 821 F.3d 1069, 1079-80 (9th Cir. 2016); Walton v. City of Red Bluff,

12  2 Cal.App.4th 117, 131 (1991).  Further, YCH does not address in its reply Hyphy's "full

13  performance" argument.  In the absence of any response from YCH, and because the applicability

14  of the statute of frauds is not apparent from the face of the counterclaims, dismissal of any state

15  law claim based on the potential application of the statue of frauds is inappropriate.  See

16  McCalden v. California Library Ass'n, 955 F.2d 1214, 1219 (9th Cir. 1990) (holding that a

17  complaint may be dismissed on the basis of an affirmative defense if the defense clearly appears

18  by the face of the complaint); Morena Music, 2021 U.S. Dist. LEXIS 39127 at *30; Williams v.

19  Alhambra Sch. Dist. No. 68, 234 F.Supp.3d 971, 985 (D. Ariz. 2017) (declining to dismiss a claim

20  where the allegations did not clearly demonstrate the applicability of the statute of frauds).

21         2.     Copyright Act Preemption

22         All state laws that are "equivalent to any of the exclusive rights within the general scope of

23  copyright as specified by [§ 106] in works of authorship that are fixed in a tangible medium of

24  expression and come within the subject matter of copyright as specified in [§ 102 and § 103] . . .

25  are governed exclusively by [the Copyright Act]."  17 U.S.C. § 301(a); see also Maloney v. T3

26  Media, Inc., 853 F.3d 1004, 1010 (9th Cir. 2017); Sybersound, 517 F.3d at 1150.  A two part test

27  is used to determine whether a state law claim is preempted by § 301(a).  Maloney, 853 F.3d at

28  1010; Sybersound, 517 F.3d at 1150.  First, whether the subject matter of the state law claim falls

within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103.  Maloney, 853

F.3d at 1010; Sybersound, 517 F.3d at 1150.  Second, assuming that it does, whether the rights

asserted under the state law are equivalent to the rights contained in 17 U.S.C. § 106, which

identifies the exclusive rights of copyright holders.  Maloney, 853 F.3d at 1010; Sybersound, 517

F.3d at 1150.  Under the second prong, courts determine whether the state law claim contains an

element not shared by a copyright claim; "an element which changes the nature of the action so

that it is qualitatively different from the [copyright claim]."  Summit Mach. Tool Manufacturing.

Corp. v. Victor CNC Sys., 7 F.3d 1434, 1439-40 (9th Cir. 1993) (quotation omitted); see Laws v.

Sony Music Entm't, Inc., 448 F.3d 1134, 1143 (9th Cir. 2006); Altera Corp. v. Clear Logic, Inc.,

424 F.3d 1079, 1089 (9th 2005).  In essence, courts should "engage in a fact-specific inquiry into

the actual allegations underlying the claims at issue in the case, so as to determine whether the

'gravamen' of the state law claim asserted is the same as the rights protected by the Copyright

Act."  Crafty Prods. v. Michaels Cos., 424 F.Supp.3d 983, 995 (S.D. Cal. 2019); Idema v.

Dreamworks, Inc., 162 F.Supp.2d 1129, 1190 (C.D. Cal. 2001).

a.      Intentional Interference with Prospective Economic Advantage ("IIPEA")

The elements of an IIPEA claim are:  (1) the existence, between the plaintiff and some

third party, of an economic relationship that contains the probability of future economic benefit to

the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts

designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic

harm proximately caused by the defendant's action.  Roy Allan Slurry Seal, Inc. v. Am. Asphalt S.,

Inc., 2 Cal. 5th 505, 512 (2017).  The third element, a wrongful act, refers to an unlawful act that

is proscribed by a constitutional, statutory, regulatory, common law, or other determinable

standard such that it is independently wrongful of its interfering character.  Edwards v. Arthur

Anderson LLP, 44 Cal.4th 937, 944 (2008).  IIPEA claims are more inclusive than intentional

interference with contractual relations claims and do not require the existence of a valid contract.

Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1159 (2003).

The Counterclaim alleges that Hyphy was in an economic relationship with YouTube that

would have resulted in economic benefit through uploading and commercially exploiting the

albums and cover art (advertisements would be placed in the videos which would generate revenue). See Counterclaim ¶ 56. Yellowcake and Colonize knew about Hyphy's economic relationship with YouTube and intended to disrupt it. Yellowcake and Colonize sent fraudulent DMCA takedown notices[2] to YouTube, knowing that the notices would likely interfere with the economic relationship between Hyphy and YouTube. See id. at ¶ 57. The relationship was disrupted as YouTube agreed to clock Hyphy's video postings and to cease paying advertising revenues to Hyphy for the videos embodying the albums and cover art. See id. at ¶ 58. This disruption caused economic loss and harm to Hyphy. See id.

First, the albums are sound recordings and thus, are entitled to copyright protection. See 17 U.S.C. § 102(a)(7); Morena Music, 2021 U.S. Dist. LEXIS 39127 at *33. Further, the albums' respective cover art appears to be the subject of registered copyrights as visual material. See FAC Ex. B (listing Copyright registrations numbers); cf. Morena Music, 2021 U.S. Dist. LEXIS 39127 at *33 (finding cover art for sound recording was the subject of a registered copyright).[3] The registration indicates that the cover art is "artwork and photograph for digital sound recordings." The Copyright Office permits registration of cover art as an associated image of sound recordings. EMI Christian Music Grp., Inc. v. MP3tunes, LLC, 844 F.3d 79, 96-97 (2d Cir. 2016); Morena Music, 2021 U.S. Dist. LEXIS 39127 at *33 (citing EMI Christian). Therefore, the cover art is also subject to copyright protection.

Second, the IIPEA claim is based on Yellowcake and Colonize utilizing § 512 of the DMCA/Copyright Act to enforce what they believe to be their exclusive rights in the albums and cover art. This led to YouTube prohibiting Hyphy from using YouTube's platform in connection with videos involving the albums and cover art. In other words, Yellowcake and Colonize

---

[2] "DMCA" refers to the Digital Millennium Copyright Act, and the takedown procedures of the DMCA are found at 17 U.S.C. § 512(c). See Vernor v. Autodesk, Inc., 621 F.3d 1102, 1105 & n.3 (9th Cir. 2010).

[3] The FAC lists the copyrights in the cover art for three albums that are at issue. See FAC Ex. B. However, the Court was unable to locate these registrations on the Copyright Office website. In the absence of any challenges by YCH, the Court will assume that Hyphy has simply made typographical errors while attempting to convey the cover art registration numbers. Nevertheless, Hyphy is expected to review the registration information provided and make appropriate corrections in any amended counterclaims. If Hyphy has no registrations in the cover art, then Hyphy must correct the FAC by dropping all allegations of registered cover art. Pursuing infringement claims based on non-existent registrations (as opposed to incorrectly entered existing registration numbers) is sanctionable.

interfered with Hyphy's ability to exploit the albums by reproducing, distributing, displaying, and/or performing the albums through YouTube. Hyphy's allegations call into question who has the ability to decide whether and how to display, copy, or make available the albums. This is conduct within the ambit of § 106. See 17 U.S.C. § 106; Morena Music, 2021 U.S. Dist. LEXIS 39127 at *34; McGowan, 2020 U.S. Dist. LEXIS 229408 at *39-*40; Hoff, 2019 U.S. Dist. LEXIS 140343 at *17-*18; Worth, 5 F.Supp.2d at 822-23.

Hyphy argues that its IIPEA claim is qualitatively different because it includes allegations that Yellowcake and Colonize interfered with Hyphy's right to possess and exploit the tangible masters of the albums. The Court agrees with Hyphy that claims based on the tangible masters of the sound recordings, as opposed to the copyrighted albums, would be qualitatively different from a copyright infringement claim. However, the allegations under the IIPEA claim do not reasonably indicate that the tangible masters have any relevance.

It is unknown how the tangible masters could have been affected by the § 512 takedown notices and YouTube's corresponding decision to not permit Hyphy to post *videos* on YouTube. To the Court's understanding, the tangible masters are not videos, they are sound/audio recordings. If anything, the videos being posted on YouTube would appear to be some form of copy of the masters, not the tangible masters themselves. Without additional allegations, it is unreasonable to infer that the tangible masters form the basis of any IIPEA claim as alleged in the Counterclaim. See Seven Arts, 733 F.3d at 1254; Morena Music, 2021 U.S. Dist. LEXIS 39127 at *35.

In sum, because Hyphy's IIPEA claim as pled is preempted by the Copyright Act, dismissal is appropriate. See Morena Music, 2021 U.S. Dist. LEXIS 39127 at *35; Crafty Prods., 424 F.Supp.3d at 995-96; Idema, 162 F.Supp.2d at 1193.

### b. Intentional Interference with Contractual Relations ("IICR")

The elements of a cause of action for IICR are: (1) a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Quelimane Co. v. Stewart

Title Guaranty Co., 19 Cal.4th 26, 55 (1998); Ghazarian v. Magellan Health, Inc., 53 Cal.App.5th 171, 191 (2020). "To state a claim for disruption of a contractual relation, the plaintiff need not show the defendant induced an actual or inevitable breach of the contract. It is sufficient to show the defendant's conduct made the plaintiff's performance, and inferentially enjoyment, under the contract more burdensome or costly." Ghazarian, 53 Cal.App.5th at 191 (quoting Golden West Baseball Co. v. City of Anaheim, 25 Cal.App.4th 11, 51 (1994)).

The Counterclaim alleges that Hernandez met with Chavez and expressed interest in exploiting the albums. See Counterclaim ¶ 62. Although Chavez advised Hernandez that Hyphy owned the albums, Hernandez intentionally misled Chavez by telling Chavez that Hyphy had no rights in the albums. See id. at ¶ 63. Hernandez offered to Chavez significant money for Chavez's rights in the albums and further induced Chavez to ignore his contractual obligations through an offer to indemnify Chavez in the event Hyphy brought suit. See id. As a result, Chavez entered into an agreement with Yellowcake for the transfer of his ownership and rights in the albums and cover art even though Chavez had no such rights to grant. See id. at ¶ 64. This interference with Hyphy's agreement with Chavez caused Hyphy harm. See id. at ¶ 65.

(1)     Preemption

First, the albums and cover art are protected by the copyrights. See 17 U.S.C. § 102(a); EMI Christian Music, 844 F.3d at 96-97; Morena Music, 2021 U.S. Dist. LEXIS 39127 at *37; FAC Ex. B.

Second, the allegations in essence complain that YCH induced Chavez to sell rights in the albums that he did not have, presumably because Chavez had already transferred all of his rights to Hyphy. See Counterclaim ¶¶ 16, 17, 62, 63, 64. In other words, the contract that was allegedly breached involved the ownership of the albums and cover art. These allegations do not identify or involve any of the rights listed in § 106. Section 106 of the Copyright Act grants exclusive rights to a copyright holder to reproduce, prepare derivative works, distribute, perform, and display the copyrighted work. See 17 U.S.C. § 106; Maloney, 853 F.3d at 1010; Morena Music, 2021 U.S. Dist. LEXIS 39127 at *37. Because Hyphy's IICR claim is qualitatively different from a copyright infringement claim because none of the rights listed in § 106 are the subject of the IICR

22

1  claim. Dismissal of this claim on the basis of preemption is inappropriate. See Morena Music,

2  2021 U.S. Dist. LEXIS 39127 at *37.

3             (2)    Pleading Deficiency[4]

4       "Section 204(a) not only bars copyright infringement actions but also breach of contract

5  claims based on oral agreements." Valente-Kritzer Video v. Pinckney, 881 F.2d 772, 774 (9th Cir.

6  1989); Morena Music, 2021 U.S. Dist. LEXIS 39127 at *39; Johnson v. Altamirano, 418

7  F.Supp.3d 530, 556 (S.D. Cal. 2019). Here, Hyphy's IICR claim is based on YCH inducing

8  Chavez to transfer his copyright interests to YCH, even though those transfers were the subject of

9  an oral agreement between Chavez and Hyphy. Therefore, in order for YCH's conduct in

10 inducing the transfer of copyrights from Chavez to YCH to be wrongful, a valid contract between

11 Hyphy and Chavez for the transfer of those copyrights is an essential element of Hyphy's IICR

12 claim. See Morena Music, 2021 U.S. Dist. LEXIS 39127 at *39; Johnson, 418 F.Supp.3d at 555-

13 56; Quelimane, 19 Cal.4th at 55. However, as explained above, § 204(a) operates to invalidate the

14 oral contract between Hyphy and Chavez to the extent that the oral contract included the transfer

15 of copyright ownership in the albums.[5] See Valente-Kritzer Video, 881 F.2d at 774; Morena

16 Music, 2021 U.S. Dist. LEXIS 39127 at *39; Johnson, 418 F.Supp.3d at 556. That is, through

17 operation of § 204(a), there is no valid contract between Chavez and Hyphy for the transfer of

18 Chavez's copyright interests in the albums. See Morena Music, 2021 U.S. Dist. LEXIS 39127 at

19 *39; Johnson, 418 F.Supp.3d at 555-56. Therefore, any IICR claim based on the purported

20 transfer of Chavez's ownership of the copyrights in the four albums fails because Hyphy cannot

21 establish the first essential element of an IICR claim. See id.; Bed, Bath & Beyond of La Jolla,

22 Inc. v. La Jolla Village Square Venture Partners, 52 Cal.App.4th 867, 879 (1997); A-Mark Coin

23 Co. v. General Mills, Inc., 148 Cal.App.3d 312, 322 (1983). Dismissal of the IICR claim is

24

25 [4] YCH's motion did not argue that the IICR cause of action was not plausibly pled. However, the pleading deficiency identified in this section necessarily follows from the Court's analysis of the first cause of action. Because a failure to state a claim can be raised even at trial, see Fed. R. Civ. P. 12(h)(2), and because the deficiency is fatal to part of the

26 IICR cause of action, the Court addresses the matter sua sponte at this time. See Omar v. Sea Land Service, Inc., 813 F.2d 986, 991 (9th Cir. 1987).

27 [5] YCH did not move to dismiss the second cause of action for copyright infringement based on the three albums'

28 cover art. Therefore, the analysis in this section and ultimate dismissal does not apply to issues surrounding the cover art.

1  appropriate to the extent that the claim is based on ownership interests or the transfer thereof in the

2  four albums.  See Valente-Kritzer Video, 881 F.2d at 774; Morena Music, 2021 U.S. Dist. LEXIS

3  39127 at *40; Johnson, 418 F.Supp.3d at 556; Bed, Bath & Beyond, 52 Cal.App.4th at 879; A-

4  Mark Coin Co., 148 Cal.App.3d at 322.

5           c.      UCL

6         The UCL broadly proscribes the use of any "unlawful, unfair or fraudulent business act or

7  practice."  Cal. Bus. & Prof. Code. § 17200; Beaver v. Tarsadia Hotels, 816 F.3d 1170, 1177 (9th

8  Cir. 2016). "The UCL operates as a three-pronged statute: 'Each of these three adjectives

9  [unlawful, unfair, or fraudulent] captures a 'separate and distinct theory of liability.'" Beaver, 816

10  F.3d at 1177 (citation omitted).  The UCL's "unlawful" prong "borrows violations of other laws . .

11  . and makes those unlawful practices actionable under the UCL," and "virtually any law or

12  regulation — federal or state, statutory or common law — can serve as a predicate . . . ."

13  Candelore v. Tinder, Inc., 19 Cal.App.5th 1138, 1155 (2018).  When the underlying legal claim

14  that supports a UCL cause fails, however, "so too will the [the] derivative UCL claim."  AMN

15  Healthcare, Inc. v. Aya Healthcare Services, Inc., 28 Cal.App.5th 923, 950 (2018).  "A business

16  practice is 'fraudulent" under the UCL if members of the public are likely to be deceived."  Davis

17  v. HSBC Bank, 691 F.3d 1152, 1169 (9th Cir. 2012); Puentes v. Wells Fargo Home Morg., Inc.,

18  160 Cal.App.4th 638, 645 (2008).  Unless a particular disadvantaged or vulnerable group is

19  targeted, whether conduct is "fraudulent" is judged by the effect the conduct would have on a

20  reasonable consumer.  Puentes, 160 Cal.App.4th at 645.  Finally, California law with respect to

21  "unfair" conduct is currently "in flux."  Hodsdon v. Mars, Inc., 891 F.3d 857, 866 (9th Cir. 2018).

22  Conduct is "unfair" either when it "threatens an incipient violation of an antitrust law, or violates

23  the policy or spirit of one of those laws because its effects are comparable to or the same as a

24  violation of the law, or otherwise significantly threatens or harms competition," or when it

25  'offends an established public policy or when the practice is immoral, unethical, oppressive,

26  unscrupulous or substantially injurious to consumers." Id.

27         The Counterclaim alleges that Yellowcake and Colonize are reproducing and performing,

28  or benefitting financially from, aiding, encouraging, enabling, inducing causing, materially

24

contributing to, or otherwise facilitating the reproduction and performance of Hyphy's statutory and common law rights in the albums and cover art and have engaged in common law misappropriation.  See Counterclaim ¶ 68.  Hernandez also induced Chavez to breach his agreement with Hyphy in order to obtain rights which Chavez had no right to give.  See id.  The Counterclaim alleges that this conduct is unfair and constitutes unfair, unlawful, or deceptive practices under Cal. Bus. & Prof. Code § 17200.  See id. at ¶ 68.

(1)    Yellowcake and Colonize

First, as discussed above, the albums and cover art are protected by the copyright act.  See 17 U.S.C. § 102; Morena Music, 2021 U.S. Dist. LEXIS 39127 at *41; EMI Christian Music, 844 F.3d at 96-97.

Second, the conduct alleged in Paragraph 68 involves reproducing and performing the albums and cover art and engaging in common law misappropriation.  Reproducing and performing are actions that are expressly listed as exclusive rights in § 106.  See 17 U.S.C. § 106; Maloney, 853 F.3d at 1010.

Common law misappropriation is covered under the umbrella of unfair competition and is "normally invoked in an effort to protect something of value not otherwise covered by patent or copyright law, trade secret law, breach of confidential relationship, or some other form of unfair competition."  City Solutions, Inc. v. Clear Channel Communications, 365 F.3d 835, 842 (9th Cir. 2004).  The elements of a California common law misappropriation claim are:  (1) the plaintiff made a substantial investment of time, effort and money into creating the thing misappropriated such that the court can characterize that "thing" as a kind of property right; (2) the defendant appropriated the "thing" at little or no cost, such that the court can characterize defendant's actions as "reaping where it has not sown;" and (3) the defendant injured plaintiff by the misappropriation.  Hollywood Screentest of Am., Inc. v. NBC Universal, Inc., 151 Cal. App. 4th 631, 650 (2007).  The only "things" that are identified as "misappropriated" are the albums and cover art, see Counterclaim ¶ 68, both of which are protected by the Copyright Act.  Further, the only alleged conduct that could readily be considered appropriation are the acts of reproducing, displaying, and performing, all of which are exclusive rights that belong to a copyright owner under § 106.

25

1    Hyphy's opposition generally argues that the involvement of the tangible masters makes

2    all of its claims qualitatively different from an infringement claim.  The term "tangible masters" is

3    not used under this cause of action, but the term does appear in Paragraph 16.  Paragraph 67 of the

4    UCL claim incorporates by reference all of the prior 66 paragraphs, including paragraphs that

5    make up five other causes of action.  See Counterclaim ¶ 67.  This is an improper shotgun

6    pleading technique that does not give proper notice to either YCH or the Court that the tangible

7    masters are intended to play a role in the UCL claim.[6]  See Weiland v. Palm Beach Cnty. Sheriff's

8    Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015); Deerpoint Grp., Inc. v. Agrigenix, LLC, 345

9    F.Supp.3d 1207, 1234 n.14 (E.D. Cal. 2018).  Further, apart from the notice concerns, it is unclear

10   how the tangible masters truly fit within the conduct alleged under the UCL and particularly

11   Paragraph 68 given the other allegation involving the involvement of digital mediums such as

12   YouTube.  That is, it is unclear how tangible masters can play by utilized through YouTube.

13   Therefore, Hyphy's reliance on the tangible masters does not reasonably fit within the allegations

14   actually made within the FAC and the claim as pled is implausible.

15   Because the Court finds that the acts of reproducing, performing, and "misappropriating"

16   are actions covered by § 106, the UCL claims against Yellowcake and Colonize are preempted by

17   the Copyright Act.  See Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1213 (9th Cir. 1998);

18   Media.net Adver. FZ-LLC v. NetSeer, Inc., 156 F.Supp.3d 1052, 1074-75 (N.D. Cal. 2016).

19                    (2)    Hernandez

20   The Counterclaim alleges that Hernandez induced Chavez to breach his agreement with

21   Hyphy.  No other conduct by Hernandez is expressly identified under the UCL claim.  See

22   Counterclaim ¶¶ 68-71.

23                    (A)    Preemption

24   Inducing a breach of contract by facilitating a transfer of copyrighted works does not

25   encompass any exclusive right under § 106.  See Morena Music, 2021 U.S. Dist. LEXIS 39127 at

26   _____

27   [6] For any cause of action, not just the IIPEA claim, if prior paragraphs are intended to support that cause of action, then Hyphy should incorporate by reference only those specific paragraphs, e.g. "paragraphs 14 through 17, 27, 38 and 42 are hereby incorporates by reference."  The wholesale incorporation by reference of all prior paragraphs, when

28   not all prior paragraphs are relevant and intended to support a cause of action, is improper.  Weiland, 792 F.3d at 1321-23; Deerpoint Grp., 345 F.Supp.3d at 1234 n.14.

1   *44.  Therefore, the UCL claim against Hernandez is qualitatively different from a copyright

2   infringement claim and not preempted by § 301.  See id.

3                              (B)     Pleading Defect[7]

4          Inducing a breach of contract is part of an IICR claim, specifically it is one of two ways to

5   satisfy the third element of that cause of action.  As discussed above, through operation of

6   § 204(a), there is no valid oral contract between Hyphy and Chavez for the transfer of a copyright

7   in the albums.  See Valente-Kritzer Video, 881 F.2d at 774; Johnson, 418 F.Supp.3d at 556.

8   Without a valid contract, no breach can be induced.  See Morena Music, 2021 U.S. Dist. LEXIS

9   39127 at *44; Johnson, 418 F.Supp.3d at 556; Bed, Bath & Beyond, 52 Cal.App.4th at 879; A-

10  Mark Coin Co., 148 Cal.App.3d at 322.  In other words, Hernandez did not and could not induce

11  Chavez to breach a valid oral agreement for the transfer of copyrights in the four albums.  Without

12  inducement, there is no wrongful conduct that could be considered "unfair," "fraudulent," or

13  "unlawful."  Thus, because there is no plausible or viable claim, dismissal of any UCL claim that

14  relates to the seven albums or transfer thereof is proper.[8]  See Morena Music, 2021 U.S. Dist.

15  LEXIS 39127 at *44-*45; AMN Healthcare, 28 Cal.App.5th at 950.

16                      d.     Conversion

17         Conversion is "an act of willful interference with a chattel, done without lawful

18  justification, by which any person thereto is deprived of use and possession."  De Vries v.

19  Brumback, 53 Cal.2d 643, 647 (1960).  Stated differently, conversion is "the wrongful exercise of

20  dominion over the property of another."  Lee v. Hanley, 61 Cal.4th 1225, 1240 (2015); Hester v.

21  Public Storage, 49 Cal.App.5th 668, 680 (2020).  The elements of conversion are:  (1) the

22  plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a

23  wrongful act or disposition of property rights; and (3) damages.  Lee, 61 Cal.4th at 1240; Hester,

24  49 Cal.App.5th at 680.  To establish conversion, a plaintiff must show an actual and substantial

---

[7] Like the IICR claim, YCH's motion did not argue that the UCL cause of action was not plausibly pled.  However, the pleading deficiency identified in this section necessarily follows from the Court's analysis of the first cause of action and the IICR claim.  Because the deficiency is fatal to part of the UCL claim, the Court addresses the matter sua sponte at this time.  See Omar, 813 F.2d at 991.

[8] Because YCH does not address any issues surrounding the cover art, the analysis of this subsection is limited to actions involving the three albums.

interference with his ownership or right to posses the property.  Zaslow v. Kroenert, 29 Cal.2d

541, 550-51 (1946).  The measure of damages for a conversion claim is the full value of the

property converted.  General Security Servs. Corp. v. County of Fresno, 815 F.Supp.2d 1123,

1143 (E.D. Cal. 2011); Intel Corp. v. Hamidi, 30 Cal.4th 1342, 1350 (2003): Irwin v. McDowell,

91 Cal. 119, 122 (1891).

The Counterclaim in relevant part alleges that Hyphy owns the tangible master recordings

for the three albums and that Yellowcake intentionally interfered with Hyphy's ownership in that

property by exercising dominion over the masters, exploiting the masters, claiming ownership in

the masters, and interfering with Hyphy's ability to commercially exploit the masters.  See

Counterclaim ¶¶ 73, 74.

The Ninth Circuit has recognized that claims for the conversion of tangible property

involve actions different from those proscribed in the copyright laws and thus, are not preempted.

Oddo, 743 F.2d at 635.  "While conversion is generally immune from preemption because it

involves tangible property, conversion actions seeking only damages for reproduction of the

property – not return of tangible property – are preempted by the Copyright Act."  Doody v.

Penguin Group (USA), Inc., 673 F.Supp.2d 1144, 1164-65 (D. Haw. 2009); Marketing Info.

Masters, Inc. v. Board of Trs. of Cal. St. Univ. Sys., 552 F.Supp.2d 1088, 1098 (S.D. Cal. 2008);

Firoozye v. Earthlink Network, 153 F.Supp.2d 1115, 1130 (N.D. Cal. 2001).

Hyphy's invocation of the tangible masters, as opposed to the albums/sound recordings

embodied within the masters which are subject to copyright protection, see 17 U.S.C. § 102(a)(7),

is clearly an attempt to fit this claim within Oddo.  However, the Court is not satisfied that Hyphy

has alleged a viable claim, either in terms of Oddo or pleading the elements of conversion.

First, the FAC nowhere requests the return of the tangible masters.  Instead, Hyphy alleged

that it was harmed according to proof.  This is indicative of a preempted copyright claim.  Morena

Music, 2021 U.S. Dist. LEXIS 39127 at *46; Doody, 673 F.Supp.2d at 1164-65.

Second, the Court understands that Hyphy is alleging that Yellowcake "exploited" the

masters by reproducing them and making them available on platforms such as YouTube.  The

Court takes this to mean copying and distributing or displaying them through YouTube.

1  Otherwise, it is unclear how tangible masters can be utilized through YouTube or other digital and

2  on-line mediums since, to the Court's knowledge, the tangible masters are not videos.  Similarly,

3  the Court understands that Hyphy was attempting to exploit the masters in the same way as

4  Yellowcake, but Yellowcake interfered through takedown notices and threats of litigation.

5        Hyphy's allegations regarding exploiting the tangible masters on digital platforms like

6  YouTube seem like a copyright infringement claim.  Section 106 grants "copyright owners the

7  'exclusive rights' to display, perform, reproduce, or distribute copies of a copyrighted work, to

8  authorize others to do those things, and to prepare derivative works based upon the copyrighted

9  work." Maloney, 853 F.3d at 1010.  The only difference between the conversion cause of action

10 and copyright infringement appears to be that the tangible masters are the "works" at issue.

11 Hyphy appears to be treating the tangible masters the same as or interchangeably with the

12 copyrighted albums.  Without additional allegations that adequately distinguish between the

13 tangible masters and the copyrighted albums, as well as clarification of how the tangible masters,

14 as opposed to the copyrighted albums, were being "exploited" on digital platforms like YouTube,

15 the Court cannot find that Hyphy has affectively pled around § 301 preemption with respect to

16 "exploitation" of the masters.  See Morena Music, 2021 U.S. Dist. LEXIS 39127 at *46.

17       Third, and relatedly, it is unclear what exactly Hyphy means by the allegation of

18 "exercising dominion."  While it is possible to read this as an allegation that Yellowcake

19 physically possessed Hyphy's masters, that is not what is expressly alleged, nor do the

20 circumstances surrounding this case reasonably indicate that Yellowcake took physical possession

21 of, or took any actions directly against, Hyphy's tangible masters.  Additional allegations are

22 necessary to explain how exactly Yellowcake "exercised dominion" over the tangible masters.

23       Fourth, it is unclear how Yellowcake claimed ownership of the tangible masters (or how

24 merely claiming ownership in general) constitutes such a substantial interference with the tangible

25 masters that Yellowcake would be required to pay Hyphy the full value of the tangible masters.

26 Additional allegations are necessary because the allegations in the Counterclaim do not reasonably

27 suggest that Yellowcake somehow took the tangible masters or actually interfered with the

28 tangible masters.  Instead, it appears that Hyphy is attempting to rebrand an infringement claim

into a conversion claim by relying on the tangible masters instead of the copyrighted albums.

Finally, interfering with Hyphy's ability to commercially exploit the tangible masters does not appear to be an act of conversion.  Such interference does not affect either actual ownership of the tangible masters or Hyphy's right to possess the tangible masters.  The ability to commercially exploit the masters is perhaps a benefit of ownership, but it is not the same as ownership and also would not appear to justify the full value of the tangible masters as damages.

In sum, because the factual allegations do not plausibly indicate that Yellowcake converted the physical/tangible masters, and because the allegations do not sufficiently remove the conversion claim from § 301 preemption, dismissal of the conversion claim is appropriate.

## IV.    Conclusion

YCH has moved to dismiss all claims, except for the second cause of action for copyright infringement involving the cover art and the eighth cause of action against Chavez.

With respect to the first cause of action, a valid ownership interest has not been pled.  First, the agreement to transfer between Chavez and Hyphy that is pled in the FAC is an oral agreement and thus, invalid under § 204(a).  This defect cannot be remedied, so the dismissal of any infringement claim based on a transfer of copyrights through the oral agreement will be without leave to amend.  Second, the co-author/joint owner theory does not yield a plausible claim because the pleadings indicate that the joint owners of the copyright in the four albums would be Hyphy and Yellowcake, and joint owners may not sue each other for copyright infringement.  Dismissal of this infringement claim will be with leave to amend.  However, Hyphy must be able to explain why Yellowcake is not a joint owner of the copyrights in the albums.  Third, the allegations categorically show that the albums were not works for hire as specially commissioned works.  The allegations are also insufficient to show that the albums were a work for hire based on Chavez being an employee who was acting within the scope of his employment for Hyphy when the albums were created.  Because it is not clear that amendment of this employee work for hire theory would be futile, dismissal will be with leave to amend.  Finally, while no pleading or opposition identifies a written agreement, judicially noticed documents identify a written

1  agreement for the transfer of Chavez's interest in the El Campesino album to Hyphy. Because it is

2  unclear that granting leave to add such a theory would be futile, Hyphy will be permitted to amend

3  their first counterclaim to include a written agreement for the transfer of the El Campesino album.

4        With respect to the third cause of action, a preliminary injunction is not a cause of action, it

5  is a remedy. Therefore, dismissal of the request as a standalone cause of action is appropriate.

6        With respect to the IIPEA cause of action, that claim as pled is preempted by the Copyright

7  Act. However, because it is not entirely clear that amendment would be futile with respect to a

8  claim based on the tangible masters, dismissal will be with leave to amend to add such a claim.

9        With respect to the IICR claim, YCH has not adequately shown that this cause of action is

10  preempted by the Copyright Act. However, application of § 204(a) invalidates any oral contract

11  for the transfer of Chavez's copyrights in the albums to Hyphy. Without a valid contract, there is

12  no plausible IIRC claim. Therefore, dismissal of the IIRC claim to the extent that it is based on an

13  oral contract for the transfer of copyrights in the albums between Chavez and Hyphy will be

14  without leave to amend. However, because it is unclear whether a written contract exists for the

15  transfer of El Campesino from Chavez to Hyphy, dismissal of the IIRC claim will be with leave to

16  amend with respect to the El Campesino album and only to the extent that a written transfer

17  agreement actually exists and is alleged in an amended counterclaim.

18        With respect to the UCL cause of action, the claims against Yellowcake and Colonize are

19  preempted by the Copyright Act. With respect to Hernandez, while the Copyright Act does not

20  preempt the UCL claim, no plausible UCL claim based on Hernandez inducing Chavez to transfer

21  his interests in the copyrights of the albums can be stated because of application of § 204(a).

22  Therefore, dismissal of the UCL claim against Hernandez to the extent that it is based on inducing

23  a breach of the oral contract for the transfer of copyrights in the three albums between Chavez and

24  Hyphy will be without leave to amend. However, because it is unclear whether a written contract

25  exists for the transfer of El Campesino from Chavez to Hyphy, dismissal of the UCL claim will be

26  with leave to amend with respect to the El Campesino album and only to the extent that a written

27  transfer agreement actually exists and is alleged in an amended counterclaim.

28        With respect to the conversion cause of action, no plausible claim is alleged. Additional

allegations are necessary to clarify what actions Yellowcake took with respect to the tangible masters that would rise to the level of conversion and justify the full value of the tangible masters as damages. Further, the allegations in the Complaint suggest that Hyphy is attempting to artfully plead a copyright infringement claim as a conversion claim, and thus avoiding preemption, by focusing on the tangible masters instead of the copyrighted albums. Thus, the claim appears to be preempted. However, because it is not clear that amendment would be futile, dismissal will be with leave to amend.

## V.  Validity of Hyhphy's Copyright Registrations in the Four Albums

The Copyright Act in relevant part provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with [the Copyright Act]." 17 U.S.C. § 411(a). While this section does not impose a precondition to copyright protection, it does expressly prohibit "copyright owners from bringing infringement actions without first properly registering their work." Unicolors, Inc. v. H&M Hennes & Mauritz, L.P., 959 F.3d 1194, 1197 (9th Cir. 2020); see also Alaska Stock, 747 F.3d at 678.

The Ninth Circuit has explained that, "once a defendant alleges that (1) a plaintiff's certificate of registration contains inaccurate information; (2) 'the inaccurate information was included on the application for copyright registration'; and (3) the inaccurate information was included on the application 'with knowledge that it was inaccurate,' a district court is then required to submit a request to the Register of Copyrights 'to advise the court whether the inaccurate information, if known, would have caused [it] to refuse registration.'" Unicolors, 959 F.3d at 1197 (quoting 17 U.S.C. § 411(b)(1)-(2)).  Courts may "not consider in the first instance whether the Register of Copyrights would have refused registration due to the inclusion of known inaccuracies in a registration application." Id.  Additionally, "inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless . . . the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement." Jules Jordan Video, 617 F.3d at 1156 (quoting

32

1  Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1145 (9th Cir. 2003)); see also

2  Gold Value, 925 F.3d at 1146.  If it is determined that a registration contains inaccurate

3  information, and that the inaccurate information was included in the registration application with

4  knowledge that the information was incorrect, and that the inaccurate information would have

5  caused the Copyright Office to refuse registration, then a district court may declare the registration

6  invalid.  See Gold Value, 925 F.3d at 1148; see also Unicolors, 959 F.3d at 1200.

7       Here, the work for hire theory and written agreement theory for Hyphy's ownership

8  interest in the albums was brought to the Court's attention by YCH through judicially noticed

9  documents from the U.S. Copyright Office's Public Catalog website, i.e. the registration

10  information for the four albums.  The registration information indicates that Hyphy is the author of

11  three of the albums as an "employer for hire," see RJN Exs. 1, 2, 3, and for one album through a

12  written transfer.  See RJN Ex. 4.  Neither Chavez nor Yellowcake are mentioned on the

13  registration for the three work for hire albums, but Chavez is mentioned as an "author" on the

14  "transfer agreement" album.  See RJN Exs. 1, 2, 3, 4.  YCH argues that absence of an allegation of

15  a written agreement or reliance on a written agreement in the opposition makes the work for

16  hire/"employer for hire" and "written transfer" status of Hyphy false.  YCH argues that Hyphy had

17  knowledge that these two copyright theories of ownership were false, and also knew of

18  Yellowcake's registration in the Nuestra Historia album at the time that Hyphy filed for its

19  registration in that album.  YCH contends that because Hyphy knew of the falsity of its

20  representations to the Copyright Office, and because the Copyright Office would not have granted

21  registration with knowledge of the true information, Hyphy's registrations are invalid.

22       After review, the Court agrees that the judicially noticed registration information is

23  inconsistent with the FAC.  The FAC does not claim an ownership interest in any of the albums

24  through either a work for hire or written transfer theory.  Instead, the FAC attempts to claim

25  ownership through either an oral transfer agreement with Chavez or as a co-author/joint owner.

26  The FAC therefore indicates that the registrations contain incorrect information in terms of

27  authorship and basis for copyright interest.  Further, YCH is clearly alleging that Hyphy knew that

28  it was submitting false information to the Copyright Office as part of the registration application.

1   Under *Unicolors*, these allegations and the judicially noticed documents are sufficient to put the

2   validity of Hyphy's copyright registrations at issue.

3          At this point, however, noting that the validity of the registrations is as far as the Court will

4   go.  First, no inquiry has been sent to the Copyright Office regarding inaccurate information.  As

5   *Unicolors* expressly states, this Court cannot invalidate a copyright until it receives word from the

6   Copyright Office regarding what effect the known inaccuracy would have had on the registration

7   decision.  See id. at 1197.  Therefore, invalidating the registrations at this point is clearly

8   improper.  See id.  Second, and more fundamentally, YCH's arguments have been made for the

9   first time as part of a reply.  Hyphy has not had an opportunity to explain what was actually

10  submitted in its application to the Copyright Office, explain the inconsistency between the FAC

11  and the registration information, address the issue of knowledge or inadvertence, or otherwise

12  respond to YCH's allegations.[9]

13         Under these circumstances, the Court will order the parties to submit additional briefing.

14  Hyphy will be permitted to respond to the challenges to the validity of its registrations.  Of

15  particular import, Hyphy should attempt to explain the apparent inaccuracies in the registration

16  information and explain what information was presented as part of its registration application.

17  The Court will then permit YCH to reply to Hyphy's supplemental response.  If, after reviewing

18  the supplemental information, the Court is satisfied that there is inaccurate information that is part

19  of the registrations and that was included in the applications to the Copyright Office, the Court

20  will send an inquiry as required by § 411/*Unicolors* to determine how the Copyright Office would

21  have reacted.  However, once the Court receives the response of the Copyright Office, and

22  depending on the response, the Court will not invalidate the registration until the issue of Hyphy's

23  knowledge/inadvertence has been decided.

24         The issue of the registrations' validity is not one that should delay proceedings further.

25  Assuming that the Court sends an inquiry to the Copyright Office, that inquiry will not affect the

26  second or eighth causes of action.  Further, even if Hyphy files an amended counterclaim and

27

28  [9] Relatedly, while the submissions at this time suggest knowledge by Hyphy, the issue of knowledge has not been
    litigated or decided.

continues to pursue an infringement claim with respect to any of the albums, it seems unlikely that the issue of knowledge or inadvertence will be able to be decided before either a summary judgment motion or a trial. Therefore, the pre-trial and scheduling process will not be stayed pending either receipt of the supplemental briefing or a possible response from the Copyright Office.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1. Counter-Defendants' Rule 12(b)(6) motion to dismiss is GRANTED in part as follows:

   a. The first cause of action for copyright infringement based on an oral transfer agreement between Chavez and Hyphy is DISMISSED without leave to amend;

   b. The first cause of action for copyright infringement based on a work for hire through a special order or commission is DISMISSED without leave to amend;

   c. The first cause of action for copyright infringement based on a co-author/joint owner, work for hire through an employer-employee relationship, or written transfer agreement is DISMISSED with leave to amend;

   d. The third cause of action for preliminary injunction is DISMISSED without prejudice as this is a remedy and not a cause of action;[10]

   e. The fourth cause of action for intentional interference with prospective economic advantage is DISMISSED and leave to amend is granted only with respect to a claim based on the tangible masters;

   f. The fifth cause of action for intentional interference with contractual relations to the extent that it is based on an oral contract involving the transfer of copyrights in the three albums is DISMISSED without leave to amend, but leave to amend is GRANTED with respect to alleging a claim based on a written transfer from Chavez to Hyphy in the album El Campesino;

---

[10] To be clear, Hyphy is free to request a preliminary injunction under the Copyright Act either in its Prayer for Relief or as part of the allegations under a copyright infringement cause of action.

35

g.    The sixth cause of action for Cal. Bus. & Prof. Code § 17200 UCL against Yellowcake and Colonize is DISMISSED without leave to amend as preempted;

h.    The sixth cause of action for Cal. Bus. & Prof. Code § 17200 UCL against Hernandez based on inducement to breach an oral agreement relating to copyright ownership in the albums is DISMISSED without leave to amend, but leave to amend is GRANTED with respect to alleging a claim based on a written transfer from Chavez to Hyphy in the album El Campesino; and

i.    The seventh cause of action for conversion based on actions directed against the tangible masters is DISMISSED with leave to amend;

2.    Within twenty-one (21) days of service of this order, Hyphy may file an amended counterclaim that is consistent with the analysis of this order;

3.    If Hyphy fails to timely file an amended Counterclaim, leave to amend shall be automatically withdrawn without further notice, and Defendants shall file an answer to the Counterclaim within twenty-eight (28) days of service of this order;

4.    Within fourteen (14) days of service of this order, Hyphy shall file supplemental briefing, as discussed above, that addresses and responds to the arguments made in the Counter-defendants' reply brief concerning the validity of Hyphy's copyright registrations in the four albums; and

5.    Within seven (7) days of service of Hyphy's supplemental briefing, Counter-defendants shall file a response.

IT IS SO ORDERED.

Dated:   July 20, 2021

_____

SENIOR  DISTRICT  JUDGE

36

Exhibit "L"

1　ALTVIEW LAW GROUP, LLP
　　JOHN M. BEGAKIS CASBN 278681
2　john@altviewlawgroup.com
　　12100 Wilshire Blvd., Suite 800
3　Los Angeles, California 90025
　　Telephone: (310) 230-5580
4　Facsimile: (562) 275-8954

5　Attorneys for Defendant/Counterclaimant HYPHY MUSIC, INC.

6　　　　　　　UNITED STATES DISTRICT COURT

7　　　　　　　EASTERN DISCTRICT OF CALIFORNIA

8

| | |
|---|---|
| 9　YELLOWCAKE, INC., California corporation, | **CASE NO.:** |
| 10 | **1:20-CV-00988-DAD-BAM** |
| 11　　　　　　　　　　　　Plaintiff, | |
| 12　　　v. | **DECLARATION JOSE MARTINEZ IN SUPPORT OF REPLY TO COUNTER-DEFENDANTS'** |
| 13　HYPHY MUSIC, INC., | **CHALLENGE TO THE VALIDITY OF CERTAIN COPYRIGHT** |
| 14 | **REGISTRATIONS** |
| 15　　　　　　　　　　　　Defendant. | |

16

17

18

19

20

21

22

23

24

25

26

27

28　　　　　　**DECLARATION OF JOSE MARTINEZ**

| | |
|---|---|
| HYPHY MUSIC, INC., | |
| Counterclaimant, | |
| v. | |
| YELLOWCAKE, INC.; COLONIZE MEDIA, INC; JOSE DAVID HERNANDEZ; and JESUS CHAVEZ SR, | |
| Counterdefendants. | |

**DECLARATION OF JOSE MARTINEZ**

## DECLARATION OF JOSE MARTINEZ

I, Jose Martinez, declare and state as follows:

1.      I am an individual currently residing in the County of Los Angeles, State of California, and am over 18 years of age. I am an employee for Defendant/Counterclaimant HYPHY MUSIC, INC., a California corporation ("Hyphy"). I know all of the following facts of my own personal knowledge and, if called up and sworn as a witness, could and would competently testify thereto.

2.      As evidenced in Hyphy's Amended Counterclaim, in or about February 2013, Hyphy entered into an oral recording agreement whereby it commissioned Jesus Chavez to provide services as a recording artist on the Works. Under this agreement, Hyphy agreed to provide certain services, commission others to provide other services, and to pay Chavez a fixed amount, in exchange for Chavez's agreement to follow Hyphy's artistic direction, perform and record the sound and audiovisual recordings embodying the musical compositions, and grant Hyphy the non-exclusive right to utilize Chavez's name and likeness in connection with the exploitation of the Works in perpetuity.

3.      In commissioning others to provide certain services to Chavez, at least two such individuals, Javier Elizondo and Marcelino Mendoza, signed employment agreements with Hyphy that included standard work-for-hire language conveying all rights in and to each employee's creative contributions to Hyphy. I have searched for these employment agreements and believe I will be able to find them in due course, but the employee who has access to these agreements is out of the Country right now, which is making it difficult to locate such agreements.

4.      Based on Hyphy's February 2013 agreement with Chavez, Hyphy's written employment agreement with Mr. Elizondo and Mr. Mendoza who Hyphy commissioned to provide services, and the actual control Hyphy itself exerted over the arrangement as the one paying Chavez to render services in the creation of the

## DECLARATION OF JOSE MARTINEZ
- 1 -

1   Works at its request, Hyphy genuinely believed that it had acquired ownership of the

2   Works as works-made-for-hire.

3       5.      Accordingly, on or about May 5, 2018, I prepared and submitted

4   applications with the United States Copyright Office ("USCO") to register

5   Copyrights in the sound recordings entitled (a) *Los Originales de San Juan- El*

6   *Campesino*, bearing Registration No. SR 0000810777, (b) *Los Originales de San*

7   *Juan- Corridos de Poca M...*, bearing Registration No. SR 0000869114, (c) *Los*

8   *Originales de San Juan- En Vivo Desde La Cantina de Mi Barrio*, bearing

9   Registration No. SR 0000820139; (d) *Los Originales de San Juan- Nuestra Historia*

10  *En Vivo*, bearing Registration No. SR 0000876925; and (e) various other audiovisual

11  works and cover art for such albums (collectively, the "Works").

12      6.      Javier Elizondo, in his role as an employee commissioned by Hyphy to

13  perform services pursuant to a written employment agreement, contributed musical

14  direction, editing, and musical arrangement services, and performed base guitar,

15  added vocals and co-produced the albums *Los Originales de San Juan- En Vivo*

16  *Desde La Cantina de Mi Barrio*, bearing Registration No. SR 0000820139 and *Los*

17  *Originales de San Juan- Nuestra Historia En Vivo*, bearing Registration No. SR

18  0000876925. Additionally, Marcelino Mendoza, in his role as an employee

19  commissioned by Hyphy to perform services pursuant to a written employment

20  agreement, contributed musical direction and arrangement services, as well as

21  filmed, edited and produced all related audiovisual works for the albums *Los*

22  *Originales de San Juan- En Vivo Desde La Cantina de Mi Barrio*, bearing

23  Registration No. SR 0000820139 and *Los Originales de San Juan- Nuestra Historia*

24  *En Vivo*, bearing Registration No. SR 0000876925.

25      7.      At the time that I submitted the applications for the Works, I simply

26  submitted applications that contained information derived from my knowledge of

27  the arrangement between Hyphy and Chavez as alleged in the Amended

28  Counterclaim.

**DECLARATION OF JOSE MARTINEZ**

8. Therefore, and although Hyphy believes that the applications for *Los Originales de San Juan -En Vivo Desde la Cantina de Mi Barrio*, bearing Registration No. SR. 0000820139, and *Los Originales de San Juan -Nuestra Historia En Vivo*, bearing Registration No. SR 0000876925, are already valid because Hyphy possessed at least two employment agreements containing work-made-for-hire language that assigned all of the employee's creative contributions to to Hyphy, neither I nor anyone else at Hyphy consulted with Hyphy's attorneys regarding all of the applications before I submitted them. Therefore, neither I, nor anyone else at Hyphy, was aware that Hyphy could not be an owner of certain of the Works under either an assignment of rights or work-made-for-hire theory if Hyphy's agreement with Chavez was not in writing.

9. Further, neither I, nor anyone else at Hyphy, were aware that Hyphy possesses an ownership interest in all of the Works under a joint authorship theory, due to its artistic contributions thereto, or that the applications have inadvertently and mistakenly failed to indicate Hyphy's ownership on such grounds. If I or anyone else for Hyphy had known this, I likely would have filed the applications to indicate that Hyphy was an owner of the Works via another legal theory, which would then make such applications consistent with the truthful allegations contained in Hyphy's Amended Counterclaim.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on August 3, 2021, at Fresno, California.

_____
Jose Martinez

**DECLARATION OF JOSE MARTINEZ**

- 3 -

I HEREBY CERTIFY that on August 3, 2021, I electronically filed the foregoing with the document with the Clerk of the Court using the CM/ECF filing system.  I also certify that the foregoing document is being served this date on all counsel of record or pro se parties as follows:

THOMAS P. GRIFFIN, JR. Esq.
HEFNER, STARK & MAROIS, LLP
2150 RIVER PLAZA DRIVE, SUITE 450
SACRAMENTO, CA 95833

SETH L. BERMAN, sq.
ABRAMS, FENSTERMAN, FERNSTERMAN,
EISMAN, FORMATO, FERRARA, WOLF &
CARONE, LLP

In the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_____/s/ John Begakis_____
John M. Begakis

**DECLARATION OF JOSE MARTINEZ**
- 4 -

Exhibit "M"

**ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO, FERRARA, WOLF & CARONE, LLP**

Seth L. Berman, Esq. (*admitted pro hac vice*)
  sberman@abramslaw.com
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Telephone: 516.328.2300
Facsimile: 516.328.6638

**HEFNER STARK & MAROIS, LLP**

Thomas P. Griffin Jr., Esq. (SBN 155133)
  tgriffin@hsmlaw.com
2150 River Plaza Drive, Suite 450
Sacramento, CA 95833
Telephone: 916.925.6620
Facsimile: 916.925.1127

Attorneys for Plaintiff YELLOWCAKE, INC., and Counterdefendants YELLOWCAKE, INC., COLONIZE MEDIA, INC., and JOSE DAVID HERNANDEZ

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELLOWCAKE, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>HYPHY MUSIC, INC.,<br><br>Defendant. | Case No.:<br>**1:20-cv-00988-DAD-BAM**<br>**DECLARATION OF HECTOR O. ROSALES IN SUPPORT OF PLAINTIFF AND COUNTERDEFENDANTS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS AND IN SUPPORT OF SUPPLEMENTAL BRIEF**<br>Judge: Hon. Anthony W. Ishii<br>Date: August 10, 2021<br>Time:9:30 A.M.<br>Courtroom: Courtroom 2, 8th Floor |

Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

DECLARATION OF HECTOR O. ROSALES IN SUPPORT OF PLAINTIFF AND
COUNTERDEFENDANTS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

| | |
|---|---|
| HYPHY MUSIC, INC., | ) |
| Counterclaimant, | ) |
| v. | ) |
| YELLOWCAKE, INC., COLONIZE MEDIA, INC., JOSE DAVID HERNANDEZ, and JESUS CHAVES, SR., | ) |
| Counterdefendants. | ) |

OMAR ROSALES, declares under penalty of perjury the following to be true and correct pursuant to 28 U.S.C. § 1746:

1. I make this declaration in further support of Plaintiff/Counterclaim Defendants' motion to dismiss Defendant/Counterclaim Plaintiff Hyphy Music, Inc's ("Hyphy") counterclaims and in connection with Plaintiff/Counterclaim Defendants' supplemental briefing.

2. I make this declaration from my own personal knowledge of the facts and circumstances of this matter.

3. Hyphy's allegations regarding the co-authorship and ownership of three albums by the band Los Originales de San Juan (the "Band") as works for hire are completely untrue.

4. I have been a professional audio engineer for approximately 28 years.

5. Between September 2013 and sometime in 2015, I was engaged by Jesus Chaves, Sr. ("Chavez") to act as audio engineer for the recording of a number albums by the Band including: (i) Los Originales de San Juan- El Campesino (ii) Los Originales de San Juan- Corridos de Poca M... and (iii) Los Originales de San Juan- Amigos y Contrarios (the "Albums").

Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

DECLARATION OF HECTOR O. ROSALES IN SUPPORT OF PLAINTIFF AND COUNTERDEFENDANTS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

6.     I was intimately involved in the recording process for all of the Albums from the first day of recording through final mastering, which is the process of making the sound recording as clear as possible and ready for distribution.

7.     Contrary to Defendant's allegations, Jesus Chavez, Sr., ("Mr. Chavez") was the sole producer of the Albums and no employee or anybody else affiliated with Hyphy produced any songs on the Albums or provided any original creative material input into the recording of the Albums.

8.     Contrary to Defendant's misrepresentations, neither Javier Elizando nor Marcelino Mendoza performed as a musician or vocalist on any of the Albums. Nor did they cowrite any of the music, contribute any musical direction, provide any arrangement services or otherwise provide any creative input or contribute any original authorship to the Albums.

9.     It is my opinion that Jesus Chavez, Sr. was the sole producer and author of the sound recordings in the Albums.

10.    At no time was I under the impression that anyone other than Mr. Chavez was the sole producer and author of the sound recordings of the Albums.

11.    I would also like to advise the Court that all of the Albums were recorded digitally. As such, there is no one final physical master recording of any of the Albums and an infinite number of copies can be reproduced from the final version of the Albums that I recorded for the Band that were later distributed by Hyphy.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: AUGUST , 2021

HECTOR O. ROSALES

**DECLARATION OF HECTOR O. ROSALES IN SUPPORT OF PLAINTIFF AND COUNTERDEFENDANTS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

Exhibit "N"

**ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO, FERRARA, WOLF & CARONE, LLP**

Seth L. Berman, Esq. (*admitted pro hac vice*)
  sberman@abramslaw.com
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Telephone: 516.328.2300
Facsimile: 516.328.6638

**HEFNER STARK & MAROIS, LLP**

Thomas P. Griffin Jr., Esq. (SBN 155133)
  tgriffin@hsmlaw.com
2150 River Plaza Drive, Suite 450
Sacramento, CA 95833
Telephone: 916.925.6620
Facsimile: 916.925.1127

Attorneys for Plaintiff YELLOWCAKE, INC., and Counterdefendants COLONIZE MEDIA, INC., and JOSE DAVID HERNANDEZ

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELLOWCAKE, INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> HYPHY MUSIC, INC., <br><br> Defendant. | Case No.: **1:20-cv-00988-DAD-BAM** <br><br> **DECLARATION OF JESUS CHAVEZ, SR. IN SUPPORT OF PLAINTIFF AND COUNTERDEFENDANTS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS AND SUPPLEMENTAL BRIEF** <br> Judge: Hon. Dale A. Drozd <br> Date: August 10, 2021 <br> Time: 9:30 A.M. <br> Courtroom: Courtroom 5, 7th floor |

DECLARATION OF JESUS CHAVEZ, SR. IN SUPPORT OF PLAINTIFF AND COUNTERDEFENDANTS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

*Abrams, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP*
*3 Dakota Drive, Suite 300*
*Lake Success, NY 11042*
*Phone: (516) 328-2300 / Fax: (516) 328-6638*

| | |
|---|---|
| HYPHY MUSIC, INC., | ) |
| Counterclaimant, | ) |
| | ) |
| v. | ) |
| | ) |
| YELLOWCAKE, INC., COLONIZE MEDIA, INC., JOSE DAVID HERNANDEZ, JESUS CHAVEZ, SR., | ) |
| | ) |
| Counterdefendants. | ) |

Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Phone (516) 328-2300 / Fax: (516) 328-6638

JESUS CHAVEZ, SR., declares under penalty of perjury the following to be true and correct pursuant to 28 U.S.C. § 1746:

1. I make this declaration in further support of the Plaintiff/Counterdefendants' motion to dismiss and supplemental briefing concerning Defendant/Counterclaim Plaintiff, Hyphy Music, Inc.'s, ("Hyphy") counterclaims.

2. I make this declaration based on my firsthand knowledge of the facts and circumstances of this matter. Further, I have reviewed all of the pleadings filed in this matter as well as the supplemental briefing documents submitted by Defendant Hyphy.

3. I am the founder and principal of the band Los Originales de San Juan (the "Band").

4. I founded the Band in approximately 1987.

5. Since its founding, the band has recorded approximately 39 albums and over 900 songs.

6. On or about September 16, 2013, I entered into an oral distribution agreement with Hyphy whereby Hyphy agreed to distribute three albums to be recorded by the Band.

7. Between September 2013 and sometime in 2015, the Band recorded the six albums including: (i) Los Originales de San Juan- El Campesino (ii) Los Originales

**DECLARATION OF JESUS CHAVEZ, SR. IN SUPPORT OF PLAINTIFF AND COUNTERDEFENDANTS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

1  de San Juan- Corridos de Poca M... (iii) Los Originales de San Juan- En Vivo Desde
2  La Cantina de Mi Barrio; (iv) Los Originales de San Juan- Nuestra Historia En Vivo;
3  (v) Los Originales de San Juan- Amigos y Contrarios and (vi) Los Originales de San
4  Juan- Naci Con Suerte de Rey Con Mariachi (the "Albums") which were subsequently
5  distributed by Hyphy.

6      8.    I was the primary producer and the sole author of the sound recordings of
7  the Albums. At no time during the recording of the Albums did any shareholder
8  principal, employee, or anybody else affiliated with Hyphy provide any creative input
9  into the recording of the Albums or provide any original material with regards to the
10 sound recordings of the Albums.

11     9.    Hyphy's allegations in their counterclaim, amended counterclaim and
12 supplemental briefing regarding the alleged artistic control they exerted over the
13 albums is false. At no point did Hyphy select the musical compositions to be recorded
14 on the Albums, commission and/or provide the sound engineers and audio-visual
15 directors for the albums, produce the musical performances to be embodied on the
16 albums, nor direct the recording and filming of musical and audiovisual performances
17 to be embodied on the Albums. No employee of Hyphy contributed any creative input
18 that could deem Hyphy a coauthor of any of the Albums.

19     10.    Also, Contrary to the Declaration of Jose Martinez, neither Javier
20 Elizando nor Marcelino Mendoza provided any services to me in connection with the
21 recording or performance of the Albums and made no creative contributions that can
22 be considered some sort of co-authorship. They were not members of my Band and
23 were not involved with the recording of the Albums.

24     11.    The only other person involved with the recording of the Albums other
25 than the Band was an independent audio recording engineer named Omar Rosales who
26 the Band engaged to record the Albums. Omar Rosales was not engaged,
27 commissioned, nor hired by Hyphy.

28

Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**DECLARATION OF JESUS CHAVEZ, SR. IN SUPPORT OF PLAINTIFF AND
COUNTERDEFENDANTS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

12.   I have never been employed by Hyphy, nor did Hyphy have control over the recording and production of the Albums. I never received any compensation from Hyphy other than as a royalty from net sales of the Albums.

13.   The Albums were never produced as a "work-for-hire" for Hyphy nor was it ever understood or agreed that Hyphy would be deemed or agreed to be a co-author of the Albums.

14.   Prior to 2019, I never agreed to transfer, sell or otherwise alienate any of my ownership interest in the sound recordings of the Albums to Hyphy or anyone else or deem anyone else a coauthor.

15.   In or about 2019, I sold the entirety of all rights, title and interest in the copyrights of the sound recordings of the Albums to Plaintiff Yellowcake, Inc. ("Yellowcake") pursuant to a written agreement. Yellowcake is the sole and exclusive owner of the copyrights in the sound recordings of the Albums and has been since 2019.

16.   Furthermore, I would like to advise the Court that Hyphy's claims regarding the master copies of the Albums have no merit whatsoever. The Albums were recorded via digital medium and there are no particular physical master recordings of the Albums. When I sold the rights to the sound recordings of the Albums to Yellowcake, I provided Yellowcake with digital copies of the final recordings of the Albums. I never delivered any original, unreproducible, physical master recordings of the Albums to either Yellowcake or Counterclaim Defendant Jose David Hernandez ("Mr. Hernandez").

17.   Digital copies of the Albums are completely fungible and an infinite number of copies of the Albums can be reproduced in the same quality that is equal to the final copy produced at the original recording sessions and delivered to Hyphy for distribution.

18.   To the best of my knowledge, Hyphy continues to possess digital copies of the master recordings of the Albums as they were recorded at the initial recording

Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

---

4

**DECLARATION OF JESUS CHAVEZ, SR. IN SUPPORT OF PLAINTIFF AND COUNTERDEFENDANTS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

sessions and could easily make copies of the Albums without any issue if it owned the rights to the sound recordings, although it does not. As such, Hyphy's allegations that Mr. Hernandez somehow converted the original master recordings of the Albums or interfered with Hyphy's ability to exploit the master recordings of the Albums, are blatantly false.

19.    Lastly, Jose Martinez, the person who submitted a declaration in support of Hyphy's supplemental briefing, was never involved in the recording of the Albums and therefore has no firsthand knowledge regarding the true authorship of the Albums. He was never present in the recording studio and had absolutely no involvement in the recording of the Albums.  Nor have I ever made any agreements with Mr. Martinez regarding ownership of the Albums.

20.    I believe that the defendants in this action only filed copyright registrations in the sound recordings of the Albums, seven years after first publication and after they were sued by Yellowcake for copyright infringement, to countersue Yellowcake as part of a litigation strategy devised by their counsel to try and offset Defendants strict liability to Yellowcake.

21.    I respectfully request that the Court determine that the copyright registrations filed by Hyphy in connection with the sound recordings of the Albums be canceled and that the Court grant Plaintiff/Counterdefendants' motion to dismiss the counterclaims in their entirety and grant Plaintiff/Counterdefendants judgment on their claims against the Defendants.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: August 9, 2021

JESUS CHAVEZ, SR.

DECLARATION OF JESUS CHAVEZ, SR. IN SUPPORT OF PLAINTIFF AND
COUNTERDEFENDANTS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

# Exhibit "O"

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

YELLOWCAKE, INC., a California Corporation,

        Plaintiff,

v.

HYPHY MUSIC, INC.,

        Defendant.

_____/

HYPHY MUSIC, INC.;

        Counterclaimant,

v.

YELLOWCAKE INC., a California Corpooration; COLONIZE MEDIA, INC.; JOSE DAVID HERNANDEZ; JESUS CHAVEZ, SR.

        Counter-Defendants.

_____/

Case No. 1:20-cv-00988-AWI-BAM

**SCHEDULING ORDER**

| | |
|---|---|
| Amendment to Pleadings: | March 18, 2022 |
| Initial Disclosures: | Completed |
| Expert Disclosure: | August 29, 2022 |
| Supplemental Expert Disclosure: | September 16, 2022 |
| Non-Expert Discovery Deadline: | July 28, 2022 |
| Expert Discovery Deadline: | October 17, 2022 |
| Dispositive Motion Filing Deadline: | November 15, 2022 |
| Pretrial Conf.: | Date:  April 20, 2023<br>Time:  10:00 a.m.<br>Dept.:  2 (AWI) |
| Jury Trial:<br>(8-10 days) | Date:  June 27, 2023<br>Time: 8:30 a.m.<br>Dept.:  2 (AWI) |

      This Court conducted a scheduling conference on November 29, 2021.  Counsel Seth Berman and Tomas Griffin appeared by Zoom video conference on behalf of Plaintiffs/Counter-Defendants Yellowcake Inc., Colonize Media, Inc., and Jose David Hernandez.  Counsel John Begakis appeared by Zoom video conference on behalf of Defendants/Counterclaimants Hyphy Music, Inc. Counsel

Mandy Jeffcoach appeared by Zoom video conference on behalf of Counter-Defendant Jesus Chavez, Sr. Pursuant to Federal Rule of Civil Procedure 16(b), this Court sets a schedule for this action.

**1.      Consent to the Magistrate Judge Jurisdiction**

Pursuant to 28 U.S.C. § 636(c), the parties have not consented to conduct all further proceedings in this case, including trial, before the Honorable Barbara A. McAuliffe, U.S. Magistrate Judge.

**2.      Amendment to the Parties' Pleadings**

All stipulated amendments or motions to amend shall be filed by **March 18, 2022.**

**3.      Fed. R. Civ. P. 26(a)(1) Initial Disclosures**

Initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) have been completed.

**4.      Discovery Cutoffs and Limits**

Initial expert witness disclosures by any party shall be served no later than **August 29, 2022.** Supplemental expert witness disclosures by any party shall be served no later than **September 16, 2022**. Such disclosures must be made pursuant to Fed. R. Civ. P. 26(a)(2)(A) and (B) and shall include all information required thereunder.  In addition, Fed. R. Civ. P. 26(b)(4) and Fed. R. Civ. P. 26(e) shall specifically apply to all discovery relating to expert witnesses and their opinions.  Each expert witness must be prepared fully to be examined on all subjects and opinions included in the designations.  Failure to comply with these requirements will result in the imposition of appropriate sanctions, which may include the preclusion of testimony or other evidence offered through the expert witness.  In particular, this Court will enforce preclusion of testimony or other evidence if Fed. R. Civ. P. 26(e) is not strictly complied with.

All non-expert discovery, including motions to compel, shall be completed no later than **July 28, 2022.**  All expert discovery, including motions to compel, shall be completed no later than **October 17, 2022.**  Compliance with these discovery cutoffs requires motions to compel be filed and heard sufficiently in advance of the cutoff so that the Court may grant effective relief within the allotted discovery time.  A parties' failure to have a discovery dispute heard sufficiently in advance of the discovery cutoff may result in denial of the motion as untimely.

**5.**     **Pre-Trial Motion Schedule**

All pre-trial motions, both dispositive and non-dispositive (except motions to compel, addressed above), shall be served <u>and filed</u> on or before **November 15, 2022**. Non-dispositive motions are heard on Fridays at 9:00 a.m., before the Honorable Barbara A. McAuliffe, United States Magistrate Judge, in Courtroom 8. Before scheduling such motions, the parties shall comply with Local Rule 230 or Local Rule 251.

Counsel must comply with Local Rule 251 with respect to discovery disputes or the motion will be denied without prejudice and dropped from calendar. In addition to filing a joint statement electronically, a copy of the joint statement shall also be sent Judge McAuliffe's chambers by email to bamorders@caed.uscourts.gov. Counsel for the parties are additionally required to conduct at least one **telephonic or in person conference** as part of their obligations to meet and confer in good faith to resolve their discovery dispute prior to seeking judicial intervention. The parties are further cautioned that boilerplate objections to written discovery will be summarily denied.

Upon stipulation of the parties, Judge McAuliffe will resolve discovery disputes by informal telephonic conference outside the formal procedures of the Local Rules and Federal Rules of Civil Procedure governing noticed motions to compel. The procedures for requesting an informal telephonic conference are set forth in Judge McAuliffe's Case Management Procedures located on the Court's website, http://www.caed.uscourts.gov. If the parties stipulate to an informal ruling on a discovery dispute that arises during a deposition, they may request an informal ruling during the deposition by contacting Judge McAuliffe's Courtroom Deputy, Esther Valdez, by telephone at (559) 499-5788.

The parties are advised that unless prior leave of the Court is obtained, all moving and opposition briefs or legal memorandum in civil cases before Judge McAuliffe shall not exceed twenty-five (25) pages. Reply briefs by the moving party shall not exceed ten (10) pages. These page limitations do not include exhibits. Briefs that exceed this page limitation, or are sought to be filed without leave, may not be considered by the Court.

Counsel or pro se parties may appear and argue non-dispositive motions before Judge McAuliffe by telephone by dialing the court's teleconference line at (877) 411-9748 and entering

access code 3190866, provided they indicate their intent to appear telephonically on their pleadings or by email to evaldez@caed.uscourts.gov at least one week prior to the hearing.

Dispositive Pre-Trial Motions are heard in Courtroom 2 before the Honorable Anthony W. Ishii, Chief United States District Court Judge.  In scheduling such motions, the parties shall comply with Local Rules 230 and 260.

### Motions for Summary Judgment or Summary Adjudication

Prior to filing a motion for summary judgment or motion for summary adjudication the parties are ORDERED to meet, in person or by telephone, and confer to discuss the issues to be raised in the motion.

The purpose of meeting shall be to: 1) avoid filing motions for summary judgment where a question of fact exists; 2) determine whether the respondent agrees that the motion has merit in whole or in part; 3) discuss whether issues can be resolved without the necessity of briefing; 4) narrow the issues for review by the court; 5) explore the possibility of settlement before the parties incur the expense of briefing a summary judgment motion; and 6) to arrive at a joint statement of undisputed facts.

The moving party shall initiate the meeting and provide a draft of the joint statement of undisputed facts.  In addition to the requirements of Local Rule 260, the moving party shall file a joint statement of undisputed facts.

In the notice of motion, the moving party shall certify that the parties have met and conferred as ordered above and set forth a statement of good cause for the failure to meet and confer.

**6.  Settlement Conference**

A Settlement Conference has not been scheduled.  The parties are advised to contact the Court if they determine that a settlement conference would be beneficial.  If a settlement conference is set, the parties are advised that unless otherwise permitted in advance by the Court, the attorneys who will try the case shall appear at the settlement conference with the parties and the person or persons having full authority to negotiate and settle the case, on any terms, at the conference.

**7.  Pre-Trial Conference Date**

The pre-trial conference will be held on **April 20, 2023, at 10:00 a.m. in Courtroom 2** before

the Honorable Anthony W. Ishii.

The parties are ordered to file a Joint Pretrial Statement pursuant to Local Rule 281. The parties are further directed to submit an electronic copy of their pretrial statement in Word format, directly to Senior District Judge Ishii's chambers by emailing it to awiorders@caed.uscourts.gov.

The parties' attention is directed to this Court's Local Rules 281 and 282. The parties must identify all exhibits and witnesses, including those for rebuttal and/or impeachment purposes. No exhibit or witness other than those listed in the joint pretrial statement and included in the Pretrial Order may be used at trial. This Court will insist upon strict compliance with those rules.

At the pretrial conference, the Court will set deadlines, among others, to file motions in limine, final witness lists, exhibits, jury instructions, objections, and other trial documents.

**8. Trial Date**

A five-to-seven-day jury trial is set for **June 27, 2023, at 8:30 a.m.** in Courtroom 2 before United States Senior District Judge Anthony W. Ishii.

**9. Effect of this Order**

This order represents the best estimate of the court and counsel as to the agenda most suitable to dispose of this case. The trial date reserved is specifically reserved for this case. If the parties determine at any time that the schedule outlined in this order cannot be met, counsel are ordered to notify the court immediately of that fact so that adjustments may be made, either by stipulation or by subsequent status conference.

**The dates set in this Order are considered to be firm and will not be modified absent a showing of good cause even if the request to modify is made by stipulation. Requests to alter the deadlines contained herein will not be considered unless they are accompanied by affidavits or declarations, and where appropriate, attached exhibits, which establish good cause for granting the relief requested.**

///

////

///

///

5

The failure to comply with this order shall result in the imposition of sanctions, including but not limited to, dismissal of this action.

IT IS SO ORDERED.

Dated: __**November 30, 2021**__          ___/s/ Barbara A. McAuliffe___

UNITED STATES MAGISTRATE JUDGE

# Exhibit "P"

1  ALTVIEW LAW GROUP, LLP
   JOHN M. BEGAKIS CASBN 278681
2  john@altviewlawgroup.com
   12100 Wilshire Blvd., Suite 800
3  Los Angeles, California 90025
   Telephone: (310) 230-5580
4  Facsimile: (562) 275-8954

5  *Attorneys for Defendant/Counterclaimant* HYPHY MUSIC, INC.

6

7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9  YELLOWCAKE, INC., California          Case No.: 1:20-cv-00988-AWI-BAM
   corporation,
10                                       **DEFENDANT/COUNTERCLAIMANT'S**
11              Plaintiff,               ***EX PARTE* APPLICATION FOR LEAVE**
                                         **TO SUPPLEMENT INITIAL**
12       v.                              **DISCLOSURES AND RESPONSES TO**
                                         **REQUESTS FOR PRODUCTION OF**
13  HYPHY MUSIC, INC.,                   **DOCUMENTS**

14              Defendant.               [*Declarations of Jose Martinez and John
                                         Begakis; and [Proposed] Order Filed
15                                       Concurrently Herewith*]

16  HYPHY MUSIC, INC.,

17              Counterclaimant,

18       v.

19  YELLOWCAKE, INC.; COLONIZE
    MEDIA, INC; JOSE DAVID
20  HERNANDEZ; and JESUS
    CHAVEZ SR,
21
22  Counterdefendants.

23

24

25

26

27

28

       DEFENDANT/COUNTERCLAIMANT'S *EX PARTE* APPLICATION FOR
   LEAVE TO SUPPLEMENT INITIAL DISCLOSURES AND RESPONSES TO
            REQUESTS FOR PRODUCTION OF DOCUMENTS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

      **PLEASE TAKE NOTICE** that, pursuant to Rules 16, 26 and 37 of the Federal Rules of Civil Procedure ("FRCP"), and this Court's Standing Order, Defendant/Counterclaimant HYPHY MUSIC, INC., a California corporation ("Hyphy"), by and through its attorneys of record, hereby respectfully requests, via this *ex parte* application, that the Court grant leave for Hyphy to supplement its Initial Disclosures and Reponses to Request Nos. 5, 12, 26, 29 and 31 of the first set of Requests for Production of Documents served on it (the "Application").

      This Application is made on the grounds that Hyphy just discovered evidence that, for the first time, proves its counterclaim for infringement by YELLOWCAKE, INC., a California corporation ("Yellowcake"), COLONIZE MEDIA, INC., a California corporation ("Colonize"), JOSE DAVID HERNANDEZ, an individual ("Hernandez"), and JESUS CHAVEZ SR., an individual ("Chavez") (collectively, "Counter-Defendants") of certain album cover art owned by Hyphy. Given that Counter-Defendants have attempted to scrub the internet of all signs of their prior infringement, and have been less than forthcoming in discovery when probed on the same topic, Hyphy's recent discovery and request to supplement the record with such evidence, in addition to evidence of Hyphy's claim to co-ownership of certain rights in the albums at issue, is reasonable and justifiable. Counter-Defendants will also not be prejudiced if the Court permits such supplementation because Counter-Defendants have known such evidence exists (they were simply hoping Defendants wouldn't find it), and the Court can easily continue the discovery and dispositive motion cut-off dates without disturbing the June 27, 2023 trial date, if the Court believes it must do so in order to not prejudice Counter-Defendants by granting Hyphy's request via this Application.

      Hyphy's request for such relief is also appropriate and necessarily brought on an *ex parte* basis because the deadline for Hyphy to supplement discovery has

DEFENDANT/COUNTERCLAIMANT'S *EX PARTE* APPLICATION FOR LEAVE TO SUPPLEMENT INITIAL DISCLOSURES AND RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

passed, but such supplemental evidence is essential to Hyphy's success in this action. Declaration of John Begakis ("Begakis Decl.") at ¶ 8. Furthermore, such supplemental evidence will have an impact on both parties' anticipated motions for summary judgment, but the deadline for all parties to file such dispositive motions is November 15, 2022. *Id*. at ¶¶ 8, 10. It is therefore critical and indeed necessary that the Court rule on this issue prior to such dispositive motion deadline.

On October 12, 2022, Hyphy's counsel gave counsel for Counter-Defendants notice of this Application. *Id*. at ¶ 10; Exhibit "E" thereto. Based on prior email communications exchanged with counsel for Counter-Defendants, it is Hyphy's understanding that Counter-Defendants will not stipulate to allow for Hyphy to supplement the record with the evidence it possesses and will oppose this Application. *Id*.

The Application is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Jose Martinez and John Begakis filed concurrently herewith, all pleadings, files and records in this proceeding, all matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling hereon.

DATED: October 12, 2022      **ALTVIEW LAW GROUP, LLP**

By: _____
         JOHN M. BEGAKIS
         *Attorneys for Defendant/Counterclaimant*
         HYPHY MUSIC, INC., a California
         corporation

3

DEFENDANT/COUNTERCLAIMANT'S *EX PARTE* APPLICATION FOR LEAVE TO SUPPLEMENT INITIAL DISCLOSURES AND RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant/Counterclaimant HYPHY MUSIC, INC., a California corporation ("Hyphy") hereby brings this *ex parte* application for an order from the Court, pursuant to Rules 16, 26 and 37 of the Federal Rule of Civil Procedure ("FRCP"), granting Hyphy leave to supplement its Initial Disclosures and Responses to Request Nos. 5, 12, 26, 29 and 31 of the first set of Requests for Production of Documents (the "Application").

## I.   INTRODUCTION

Both sides to this dispute have asserted claims for copyright infringement. Within the past week, Hyphy has discovered evidence proving its claim for infringement against Counter-Defendants, and is also in possession of copyright assignment agreements undercutting Counter-Defendants' ability to assert their own claims for infringement. Accordingly, Hyphy brings this Application, and respectfully requests that the Court issue an order permitting Hyphy to introduce evidence essential to its counterclaims and defenses.

Hyphy expects Counter-Defendants to argue that the admission of such supplemental evidence will prejudice them because the matter has been pending since 2020 and Hyphy is attempting to introduce such supplemental evidence only now. But, as this Application will establish, Hyphy is taking action to supplement the evidentiary record promptly, given that it just discovered the evidence it seeks to introduce, which discovery proved difficult as a result of Counter-Defendants' efforts to scrub any evidence of their infringing activities from the internet. Furthermore, Counter-Defendants cannot be prejudiced by the disclosure of such supplemental information because they have known about its existence since at least the commencement of this lawsuit, and the Court can make adjustments to the case calendar without continuing the actual trial, which is not set to commence until June 27, 2023.

DEFENDANT/COUNTERCLAIMANT'S *EX PARTE* APPLICATION FOR
LEAVE TO SUPPLEMENT INITIAL DISCLOSURES AND RESPONSES TO
REQUESTS FOR PRODUCTION OF DOCUMENTS

## II.   **RELEVANT FACTS**

Hyphy is a record label in the business of producing, distributing, and otherwise exploiting sound and audiovisual recordings, coupled with artwork, in the U.S. Declaration of Jose Martinez ("Martinez Decl.") at ¶ 2. Plaintiff/Counter-Defendant YELLOWCAKE, INC., a California corporation ("Yellowcake") is a competing record label, which distributes rights through Counter-Defendant COLONIZE MEDIA, INC., a California corporation ("Colonize") – a company wholly owned and controlled by the same individuals who own Yellowcake. *Id.* Counter-Defendant JESUS CHAVEZ, SR. ("Chavez") is the lead singer of the Spanish-language musical group *Los Originales De San Juan* (the "Group"), which at all relevant times included band members Domingo Torres Flores ("Flores") and Alfonso Vargas ("Vargas"). *Id.*

In its Complaint, Yellowcake alleges that it acquired all rights in the sound recordings contained in multiple albums (collectively, the "Los Originales Albums" or "Albums") and Hyphy subsequently infringed Yellowcake's rights therein by distributing the Albums without authorization. Dkt. No. 1. Hyphy, however, asserts in its operative Amended Counterclaims that it acquired rights in the Albums first, and that is why Hyphy was exploiting them at the time Yellowcake discovered such use. Dkt. No. 15. Furthermore, Hyphy contends that when Yellowcake and Colonize first uploaded such Albums, they did so with Album cover art that Hyphy exclusively owns (the "Album Artwork") and did not grant rights to Yellowcake or Colonize to exploit. *Id.*

Yellowcake commenced this action on July 16, 2020. Dkt. No. 1. Hyphy filed Counterclaims on August 19, 2020, and thereafter Amended Counterclaims on August 28, 2020. Dkt. Nos. 7, 15. In response to Hyphy's Amended Counterclaims, Counter-Defendants filed a Motion to Dismiss on October 2, 2020. Dkt. No. 23. The matter was therefore not at issue until August 17, 2021, when Counter-Defendants

DEFENDANT/COUNTERCLAIMANT'S *EX PARTE* APPLICATION FOR
LEAVE TO SUPPLEMENT INITIAL DISCLOSURES AND RESPONSES TO
REQUESTS FOR PRODUCTION OF DOCUMENTS

1   filed Answers to Hyphy's Amended Counterclaims, and fact discovery between the

2   parties did not commence until November 24, 2021, when Counter-Defendants

3   served their first sets of Special Interrogatories and Requests for Production of

4   Documents. Declaration of John Begakis ("Begakis Decl.") at ¶¶ 2-3.

5       Throughout the discovery process, Counter-Defendants have stymied

6   Hyphy's efforts to obtain evidence of Counter-Defendants' unauthorized upload of

7   the Albums with Hyphy's Album Artwork. First, Counter-Defendants scrubbed

8   (what they believed was) all evidence of such use from the internet. Martinez Decl.

9   at ¶ 5. Then, Counter-Defendant JOSE DAVID HERNANDEZ, an individual

10  ("Hernandez"), who is a co-owner of Yellowcake and Colonize, flat-out lied under

11  oath when asked in his deposition whether Hyphy's Album Artwork was originally

12  uploaded with the Albums. Martinez Decl. at ¶¶ 7-8; Exhibit "A" thereto; and

13  Begakis Decl. at ¶¶ 4-5.

14      However, on or about Wednesday, October 5, 2022, Defendants discovered –

15  **for the first time** – evidence of Counter-Defendants' infringement of Defendants'

16  Album Artwork. Martinez Decl. at ¶¶ 7-8; Exhibit "A" thereto. Hyphy has also

17  come into possession of Copyright Assignment Agreements from two members of

18  the Group (collectively, the "Assignments"), which serve as critical evidence of

19  Count-Defendants lack of standing to sue Hyphy for copyright infringement of the

20  Albums for which members were co-authors. Martinez Decl. at ¶ 9; Exhibit "B"

21  thereto. Accordingly, Hyphy must be allowed to supplement its Initial Disclosures

22  with the identities of the Group members who assigned rights in the Albums to

23  Hyphy, and to supplement their Responses to Counter-Defendants' first set of

24  Requests for Production of Documents with copies of such Assignments and

25  Hyphy's recently discovered evidence of infringement of the Album Artwork.

26  ///

27  ///

28

6

DEFENDANT/COUNTERCLAIMANT'S *EX PARTE* APPLICATION FOR
LEAVE TO SUPPLEMENT INITIAL DISCLOSURES AND RESPONSES TO
REQUESTS FOR PRODUCTION OF DOCUMENTS

### III.   <u>LEGAL STANDARD</u>

Rule 26 requires all parties who have made disclosures or responded to discovery to supplement their disclosures or responses "in a timely matter if the party learns that in some material respect the disclosure or response is incomplete…" FRCP 26(e)(1). Rule 37 further sets forth that a party who fails to provide information pursuant to Rule 26(e) "is not allowed to use that information…unless the failure was substantially justified or is harmless." FRCP 37(c)(1). In determining whether the automatic exclusion provision of Rule 37 should apply, the Court should consider the following four (4) factors in assessing whether the perceived failure to disclose was substantially justified or harmless: (1) the importance of the excluded material; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the material to be used on a motion; and (4) the availability of a continuance to cure such prejudice. *Transclean Corp. v. Bridgewood Services, Inc.*, 77 F.Supp.2d 1045, 1064 (D. Minn. 1999).

### V.   <u>ARGUMENT</u>

#### A.   <u>Hyphy's Supplemental Evidence Is Critical To Its Counterclaims And Defenses</u>

Hyphy's supplemental evidence of Counter-Defendants' infringement, and its acquisition of rights in the Albums is critical to Hyphy's ability to establish liability against Counter-Defendants, and to establish Counter-Defendants' lack of standing to bring their own claims for infringement. Accordingly, Hyphy would be severely prejudiced both in its opposition to Counter-Defendants' anticipated Motion for Summary Judgment, and in subsequently preparing its case for trial. Importantly, though, such supplemental evidence is <u>not</u> so far afield from the existing facts and allegations in the record that its introduction would prejudice Counter-Defendants by fundamentally changing the factual and legal landscape of the case.

DEFENDANT/COUNTERCLAIMANT'S *EX PARTE* APPLICATION FOR LEAVE TO SUPPLEMENT INITIAL DISCLOSURES AND RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**B.** **Hyphy Has A Justifiable Explanation For Why Its Supplemental Evidence Was Not Produced Until Recently**

Hyphy discovered its supplemental evidence of Counter-Defendants' infringement of Hyphy's Album Artwork less than a week ago, which fully justifies Hyphy's efforts to supplement its Initial Disclosures and Responses to Counter-Defendants' first set of Requests for Production of Documents this week. In their anticipated opposition, Counter-Defendants will likely lean on the fact that this case has been pending since 2020, but the reality is that discovery did not commence until less than a year ago (i.e., November 2021). Furthermore, **Counter-Defendants' misrepresentations under oath during deposition regarding the alleged non-existence of evidence that Hyphy just found**, is a significant contributing factor in such delayed discovery.

**C.** **Counter-Defendants Will Not Be Prejudiced By Hyphy's Disclosure Of Supplemental Evidence**

Most importantly, Counter-Defendants will not be prejudiced if the Court were to permit such supplemental evidence. This is the case for two reasons.

*First*, Hyphy's supplemental evidence could not possibly be a surprise to Counter-Defendants. They have known about their own infringement since at least the moment Hyphy asserted a counterclaim for copyright infringement and then took active steps to scrub evidence of such infringement from the internet. Counter-Defendants have also known that Flores and Vargas were members of the Group at all relevant times alleged, and therefore cannot possibly claim ignorance to the fact that such individuals might at some point claim to be co-authors of the Albums.

*Second*, trial in this matter is not set to commence until **June 27, 2023**, and just last week Counter-Defendants' counsel expressed a willingness to continue the trial calendar in exchange for Hyphy's cooperation in a wholly unrelated matter. Begakis Decl. at ¶ 9; Exhibit "D" thereto. Therefore, even Counter-Defnedants

8

DEFENDANT/COUNTERCLAIMANT'S *EX PARTE* APPLICATION FOR LEAVE TO SUPPLEMENT INITIAL DISCLOSURES AND RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

understand that discovery could be briefly re-opened with there being any prejudice to Counter-Defendants **and without having to even move the trial date**. If the Court believes that re-opening the discovery period is the only way it will grant this Application, Hyphy will gladly agree to any such re-opening and adjustment to the discovery and dispositive motion cut-off dates. Martinez Decl. at ¶ 10.

## VI.   <u>CONCLUSION</u>

Accordingly, Hyphy respectfully requests that the Court grant leave, via this Application, to allow Hyphy to supplement its Initial Disclosures and Responses to Request Nos. 5, 12, 26, 29 and 31 of Counter-Defendants' first set of Requests for Production of Documents.

DATED:  October 12, 2022            **ALTVIEW LAW GROUP, LLP**

By: _____
        JOHN M. BEGAKIS
*Attorneys for Defendant/Counterclaimant*
HYPHY MUSIC, INC., a California
corporation

DEFENDANT/COUNTERCLAIMANT'S *EX PARTE* APPLICATION FOR
LEAVE TO SUPPLEMENT INITIAL DISCLOSURES AND RESPONSES TO
REQUESTS FOR PRODUCTION OF DOCUMENTS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing electronically filed document has been served via a "Notice of Electronic Filing" automatically generated by the CM/ECF System and sent by e-mail to all attorneys in the case who are registered as CM/ECF users and have consented to electronic service pursuant to L.R. 5-3.3.

Dated: October 12, 2022                    By:  /s/ John Begakis
                                                John M. Begakis

Exhibit "Q"

# EXHIBIT "B"

## COPYRIGHT ASSIGNMENT AGREEMENT

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and a payment of _____ $ 1.⁰⁰ _____ effective as of March 22, 2022 (the "Effective Date"), the undersigned Alfonso Vargas, an individual ("Assignor"), hereby irrevocably sells, assigns and transfers to and sets over to Hyphy Music, Inc., a California corporation ("Assignee"), in perpetuity, all of the following:

(a)     One hundred percent (100%) of all of Assignor's undivided right, title and interest in and to all audio-only and audiovisual master recordings, sound recordings and phonorecords embodying the musical performances of the musical group Los Originales De San Juan (individually and collectively, "Artist") (whether alone or together with other recording artists) and set forth on Schedule A annexed hereto and by this reference made a part hereof, or any direct or indirect interests therein or other rights arising therefrom, including without limitation all rights under United States federal or state copyright or foreign copyright and all renewals, extensions, continuations, restorations, revivals and reversions thereof (whether vested, contingent or inchoate, whether registered or unregistered and whether such renewals, extensions, continuations, restorations, revivals and reversions are now in existence or come into existence for any reason, including without limitation as a result of future legislation or the interpretation thereof) in all countries of the world or otherwise throughout the universe, as well as all United States or foreign applications for copyright registration and all causes of action and defenses, including without limitation those for infringement, arising from the date of creation of the work subject to such copyright, whether now known or unknown to Assignor or Assignee in all events, respecting which Assignor owns or controls any right, title or interest anywhere in the world, whether resulting from sole or partial ownership of the copyrights therein, a contract granting a right to participate in the proceeds of exploitation thereof, or otherwise (the "Masters");

(b)     with respect to any one or more of the Masters, the right to distribute, license, exploit, or otherwise exercise, or to permit or authorize any other entity to distribute, license, exploit, or otherwise exercise, an undivided one hundred percent (100%) interest in and to Assignor's interest in the Masters (including the right to reproduce, publish, rent, lease, lend, publicly perform or publicly display the Masters, the right to create derivative works based thereon, and all other rights reserved to the legal or beneficial owner of the copyrights in the Masters under the United States Copyright Act, 17 U.S.C. § 101, et. seq., or the copyright laws of any other country in the world), in whole or in part, on behalf of the copyright owner thereof, and to collect an undivided one hundred percent (100%) of any and all earnings, income, revenues, remuneration, royalties, advances, fees, monies, advances, settlement amounts and any other sums or amounts of any kind or description derived in connection therewith in any territory of the world or universe;

(c)     the sole and exclusive right to collect an undivided one hundred percent (100%) of any and all royalties, fees, credits, earnings, income, revenues, remuneration, monies, advances, settlement amounts and any other sums or amounts of any kind or description payable by any entity from and after anywhere in the universe to Assignor with respect to Assignor's interest in the Masters, whether pursuant to the Master Agreements (as defined below) or otherwise in connection with the use or exploitation of the Masters (the "Master Royalties");

(d)     all of Assignor's rights under any and all contracts entered into by Assignor relating to the acquisition, ownership, use or exploitation of the Masters (the "Master Agreements"), including without limitation the sole and exclusive right to exercise any and all of Assignor's approval rights and audit rights thereunder throughout the universe in perpetuity;

(e)     the sole and exclusive right to collect an undivided one hundred percent (100%) of any and all royalties, fees, credits, earnings, income, revenues, remuneration, monies, advances, settlement amounts and any other sums or amounts of any kind or description payable or becoming payable to Assignor by any neighboring rights or sound recording performing rights collection organization or society throughout the world or any other entity that licenses and collects income in respect of the public performance or broadcast of sound recordings in connection with the public performance of the Masters ("Neighboring Rights Organization"), including without limitation public performance by transmission, broadcast, digital broadcast, webcast, simulcast, satellite and cable transmission and retransmission and rental and lending communication, whether accorded pursuant to the laws and regulations currently in effect or hereinafter enacted in any country of the world or under any applicable agreement, including without limitation, the so-called "label share" and "artist share" of neighboring rights income from and after the Effective Date anywhere in the universe; and

(f)     all of Assignor's rights under any and all contracts entered into by Assignor, on the one hand, and any Neighboring Rights Organization, on the other hand, including without limitation the sole and exclusive right to exercise any and all of Assignor's approval rights and audit rights thereunder throughout the universe in perpetuity.

If any provision of this instrument of transfer shall be held void, invalid or inoperative, no other provision of this instrument of transfer shall be affected as a result thereof and, accordingly, the remaining provisions of this instrument of transfer shall remain in full force and effect.

IN WITNESS WHEREOF, the undersigned have duly executed this Assignment the date first stated above.

ASSIGNOR:

By: _____
An individual

ASSIGNEE:

By: _____
An authorized signatory of Hyphy Music, Inc.

Schedule A

El Campesino

1) El Campesino
2) Solo Dios
3) El Arbol
4) El Paniqueado
5) Dinero Manchado
6) Corrido del Cach
7) El Corrido de Camilo
8) El Martelito
9) Chicano Jalicience
10) Miguel Fuentes
11) En Una Cajita de Oro
12) Mis Hijos Son Mi Tesoro
13) Marili
14) Suplica De Un Padre

Corridos De Poca M

1) El Carlichi
2) Sin Fortuna
3) El Fantasma
4) Javier Fernandez
5) El Original
6) Manuel Gonzalez
7) Amanda Varela
8) Cuando No Se Nace Rico
9) Mi Viejo
10) Tan Solo Penas

Amigos y Contrarios

1) Amigos y Contrarios
2) El Tucan
3) El Buchon
4) El Puma de Tlazazalca
5) Custodio Alvarez
6) 2 Perros Malnacidos
7) Rolando Junior
8) Javier Guerrero
9) Hugo S. Salazar
10) Hoy Que Mis Hijos Se Fueron
11) Jesus Herrera
12) Corrido de Monchis
13) Hartate Mugroso
14) La Carera

En Vivo Desde La Cantina de Mi Barrio

1) Mi Ultimo Deseo
2) La Peda
3) Paloma En Su Nido
4) El Morralito
5) Me Llaman Lineas de A Metro
6) Naci Con Suerte de Rey
7) El Tequilero
8) El Clavo
9) El Jabali
10) Con Una Copa En Mi Mano
11) La Cantina de Mi Barrio
12) El Carlichi
13) Vida Prestada
14) Fuiste Todo Para Mi
15) Eladio Mora

Nuestra Historia En Vivo

1) El Rey del Cristal
2) El Aguacatero
3) El Patas de Diablo
4) El Cara de Chango
5) La Raza de Michoacan
6) La Caspa del Diablo
7) La Troca del Moño Negro
8) Deje de Engordar Maranos
9) El Jardinero
10) El Grande de Michoacan
11) Rey de Reyes
12) Pacas de A Kilo
13) La Muerte de Manuelon
14) El Corrido del Charapo
15) Los Cuatro Amigos
16) El Numero Gratis

## COPYRIGHT ASSIGNMENT AGREEMENT

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and a payment of $1.00 effective as of March 22, 2022 (the "Effective Date"), the undersigned Domingo Torres Flores, an individual ("Assignor"), hereby irrevocably sells, assigns and transfers to and sets over to Hyphy Music, Inc., a California corporation ("Assignee"), in perpetuity, all of the following:

(a)      One hundred percent (100%) of all of Assignor's undivided right, title and interest in and to all audio-only and audiovisual master recordings, sound recordings and phonorecords embodying the musical performances of the musical group Los Originales De San Juan (individually and collectively, "Artist") (whether alone or together with other recording artists) and set forth on Schedule A annexed hereto and by this reference made a part hereof, or any direct or indirect interests therein or other rights arising therefrom, including without limitation all rights under United States federal or state copyright or foreign copyright and all renewals, extensions, continuations, restorations, revivals and reversions thereof (whether vested, contingent or inchoate, whether registered or unregistered and whether such renewals, extensions, continuations, restorations, revivals and reversions are now in existence or come into existence for any reason, including without limitation as a result of future legislation or the interpretation thereof) in all countries of the world or otherwise throughout the universe, as well as all United States or foreign applications for copyright registration and all causes of action and defenses, including without limitation those for infringement, arising from the date of creation of the work subject to such copyright, whether now known or unknown to Assignor or Assignee in all events, respecting which Assignor owns or controls any right, title or interest anywhere in the world, whether resulting from sole or partial ownership of the copyrights therein, a contract granting a right to participate in the proceeds of exploitation thereof, or otherwise (the "Masters");

(b)      with respect to any one or more of the Masters, the right to distribute, license, exploit, or otherwise exercise, or to permit or authorize any other entity to distribute, license, exploit, or otherwise exercise, an undivided one hundred percent (100%) interest in and to Assignor's interest in the Masters (including the right to reproduce, publish, rent, lease, lend, publicly perform or publicly display the Masters, the right to create derivative works based thereon, and all other rights reserved to the legal or beneficial owner of the copyrights in the Masters under the United States Copyright Act, 17 U.S.C. § 101, et. seq., or the copyright laws of any other country in the world), in whole or in part, on behalf of the copyright owner thereof, and to collect an undivided one hundred percent (100%) of any and all earnings, income, revenues, remuneration, royalties, advances, fees, monies, advances, settlement amounts and any other sums or amounts of any kind or description derived in connection therewith in any territory of the world or universe;

(c)      the sole and exclusive right to collect an undivided one hundred percent (100%) of any and all royalties, fees, credits, earnings, income, revenues, remuneration, monies, advances, settlement amounts and any other sums or amounts of any kind or description payable by any entity from and after anywhere in the universe to Assignor with respect to Assignor's interest in the Masters, whether pursuant to the Master Agreements (as defined below) or otherwise in connection with the use or exploitation of the Masters (the "Master Royalties");

(d)      all of Assignor's rights under any and all contracts entered into by Assignor relating to the acquisition, ownership, use or exploitation of the Masters (the "Master Agreements"), including without limitation the sole and exclusive right to exercise any and all of Assignor's approval rights and audit rights thereunder throughout the universe in perpetuity;

(e)      the sole and exclusive right to collect an undivided one hundred percent (100%) of any and all royalties, fees, credits, earnings, income, revenues, remuneration, monies, advances, settlement amounts and any other sums or amounts of any kind or description payable or becoming payable to Assignor by any neighboring rights or sound recording performing rights collection organization or society throughout the world or any other entity that licenses and collects income in respect of the public performance or broadcast of sound recordings in connection with the public performance of the Masters ("Neighboring Rights Organization"), including without limitation public performance by transmission, broadcast, digital broadcast, webcast, simulcast, satellite and cable transmission and retransmission and rental and lending communication, whether accorded pursuant to the laws and regulations currently in effect or hereinafter enacted in any country of the world or under any applicable agreement, including without limitation, the so-called "label share" and "artist share" of neighboring rights income from and after the Effective Date anywhere in the universe; and

(f)      all of Assignor's rights under any and all contracts entered into by Assignor, on the one hand, and any Neighboring Rights Organization, on the other hand, including without limitation the sole and exclusive right to exercise any and all of Assignor's approval rights and audit rights thereunder throughout the universe in perpetuity.

If any provision of this instrument of transfer shall be held void, invalid or inoperative, no other provision of this instrument of transfer shall be affected as a result thereof and, accordingly, the remaining provisions of this instrument of transfer shall remain in full force and effect.

IN WITNESS WHEREOF, the undersigned have duly executed this Assignment the date first stated above.

ASSIGNOR:

By: _DOMINGO T PLOVS_
    An individual

ASSIGNEE:

By: _____
    An authorized signatory of Hyphy Music, Inc.

Schedule A

El Campesino

1) El Campesino
2) Solo Dios
3) El Arbol
4) El Paniqueado
5) Dinero Manchado
6) Corrido del Cach
7) El Corrido de Camilo
8) El Martelito
9) Chicano Jalicience
10) Miguel Fuentes
11) En Una Cajita de Oro
12) Mis Hijos Son Mi Tesoro
13) Marili
14) Suplica De Un Padre

Corridos De Poca M

1) El Carlichi
2) Sin Fortuna
3) El Fantasma
4) Javier Fernandez
5) El Original
6) Manuel Gonzalez
7) Amanda Varela
8) Cuando No Se Nace Rico
9) Mi Viejo
10) Tan Solo Penas

Amigos y Contrarios

1) Amigos y Contrarios
2) El Tucan
3) El Buchon
4) El Puma de Tlazazalca
5) Custodio Alvarez
6) 2 Perros Malnacidos
7) Rolando Junior
8) Javier Guerrero
9) Hugo S. Salazar
10) Hoy Que Mis Hijos Se Fueron
11) Jesus Herrera
12) Corrido de Monchis
13) Hartate Mugroso
14) La Carera

En Vivo Desde La Cantina de Mi Barrio

1) Mi Ultimo Deseo
2) La Peda
3) Paloma En Su Nido
4) El Morralito
5) Me Llaman Lineas de A Metro
6) Naci Con Suerte de Rey
7) El Tequilero
8) El Clavo
9) El Jabali
10) Con Una Copa En Mi Mano
11) La Cantina de Mi Barrio
12) El Carlichi
13) Vida Prestada
14) Fuiste Todo Para Mi
15) Eladio Mora

Nuestra Historia En Vivo

1) El Rey del Cristal
2) El Aguacatero
3) El Patas de Diablo
4) El Cara de Chango
5) La Raza de Michoacan
6) La Caspa del Diablo
7) La Troca del Moño Negro
8) Deje de Engordar Maranos
9) El Jardinero
10) El Grande de Michoacan
11) Rey de Reyes
12) Pacas de A Kilo
13) La Muerte de Manuelon
14) El Corrido del Charapo
15) Los Cuatro Amigos
16) El Numero Gratis