**ABRAMS FENSTERMAN, LLP**
Seth L. Berman, Esq. (*admitted pro hac vice*)
  sberman@abramslaw.com
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Telephone: 516.328.2300
Facsimile: 516.328.6638

**HEFNER STARK & MAROIS, LLP**
Thomas P. Griffin Jr., Esq. (SBN 155133)
  tgriffin@hsmlaw.com
2150 River Plaza Drive, Suite 450
Sacramento, CA 95833
Telephone: 916.925.6620
Facsimile: 916.925.1127

Attorneys for Plaintiff YELLOWCAKE, INC., and Counterdefendants
YELLOWCAKE, INC., COLONIZE MEDIA, INC., and JOSE DAVID
HERNANDEZ

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELLOWCAKE, INC., a California corporation,<br><br>    Plaintiff,<br><br>v.<br><br>HYPHY MUSIC, INC.,<br><br>    Defendant. | **Case No.: 1:20-cv-00988-JLT-BAM**<br><br>Judge: Hon. Jennifer L. Thurston<br>Date: Sept. 15, 2023<br>Courtroom: Courtroom 4, 7th floor<br><br>**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT** |

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

HYPHY MUSIC, INC.,

                  Counterclaimant,

    v.

YELLOWCAKE, INC., A CALIFORNIA CORPORATION; COLONIZE MEDIA, INC.; JOSE DAVID HERNANDEZ; and JESUS CHAVEZ SR,

    Counterdefendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS ................................................................................... 3

    The Copyrighted Albums at Issue ..................................................................... 3

    The Oral Distribution Agreement between Chavez and Hyphy ......................... 4

    Yellowcake's Ownership of the Albums ........................................................... 4

    Hyphy's Unauthorized Exploitation of the Copyrighted Albums ..................... 5

III.  RELEVANT PROCEDURAL HISTORY ........................................................... 6

IV.   DISCOVERY ...................................................................................................... 7

APPLICABLE LEGAL STANDARD ......................................................................... 7

ARGUMENT ............................................................................................................... 8

V.    DEFENDANTS' ARGUMENT THAT YELLOWCAKE
    LACKS STANDING TO MAINTAIN THIS ACTION
    SHOULD BE REJECTED ................................................................................... 8

VI.   HYPHY IS NOT A CO-OWNER OR CO-AUTHOR OF THE
    ALBUMS, NOR DOES IT HAVE A LICENSE TO EXPLOIT THEM ........... 10

    A.    Hyphy Is not Entitled to Summary Judgment on the Ground
        that Hyphy Co-Owns the Albums .......................................................... 10

        1.    Hyphy Fails to Meet its Burden to Demonstrate that it is a
            Co-Author of the Albums ............................................................... 10

        2.    Hyphy Fails to Meet its Burden to Demonstrate that It
            Is Otherwise a Co-Owner of the Albums ...................................... 13

            a.    Hyphy's Binding Judicial Admissions Preclude it from
                Obtaining Summary Judgment on this Basis ......................... 13

            b.    Hyphy Fails to Demonstrate Torres' and Vargas
                Co-Authored the Albums in the First Instance ..................... 15

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Abrams Fensterman, LLP**
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

    B.    Hyphy Did Not Acquire an Irrevocable Non-Exclusive
        License to Exploit the Albums ...................................................... 19

VII.   HYPHY FAILS TO SHOW ITS INFRINGEMENT DID NOT
      DAMAGE YELLOWCAKE ........................................................ 20

VIII.  HYPHY HAS FAILED TO ESTABLISH *PRIMA FACIE*
      ENTITLEMENT TO SUMMARY JUDGMENT ON ITS CLAIM
      RELATED TO THE ARTWORK. ................................................. 22

CONCLUSION .................................................................................... 25

**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT**

1

# TABLE OF AUTHORITIES

2

## Cases

3

4
*Aalmuhammed v. Lee,*
    202 F.3d 1227 (9th Cir. 2000) ............................................................... 11, 12, 13, 14

5

6
*Am. Tit. Ins. Co. v. Lacelaw Corp.,*
    861 F.2d 224 (9th Cir. 1988) ................................................................................. 15

7

8
*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ............................................... 8

9

10
*Ashton-Tate v. Ross,*
    916 F.2d 516 (9th Cir. 1990) ............................................................................. 12, 13

11

12
*Burrow-Giles Lithographic Co. v. Sarony,*
    111 U.S. 53 (1884) ................................................................................................ 11

13

14
*Canada v. Blain's Helicopter, Inc.,*
    831 F.2d 920, 9 Fed. R. Serv.3d 727 ....................................................................... 25

15

16
*Cmty. for Creative Non-Violence v. Reid,*
    490 U.S. 730 (1989) .............................................................................................. 11

17

18
*Corbello v. DeVito,*
    777 F.3d 1058 (9th Cir. 2015) ............................................................................... 10

19

20
*Edward B. Marks Music Corp. v. Jerry Vogel Music Co.,*
    140 F.2d 266, 267 (2d Cir.), *modified by* 140 F.2d 268 (2d Cir. 1944) .................... 12

21

22
*Effects Assoc., Inc. v. Cohen,*
    908 F.2d 555 (9th Cir. 1990) ................................................................................. 20

23

24
*Estate of McNeil by and through Berkes v. FreestyleMX.com, Inc.,*
    13-CV-2703, 2015 WL 13567073 (S.D. Cal. Feb. 9, 2015) ...................................... 16

25

26
*Hoffman v. Constr. Protective Services, Inc.,*
    541 F.3d 1175 (9th Cir. 2008) ............................................................................... 23

27

28
*Ingenco Holdings, LLC v. Ace Am. Ins. Co.,*
    921 F.3d 803 (9th Cir. 2019) ................................................................................. 23

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT**

*Jones v. Williams*,
 791 F.3d 1023, 1030-31 (9th Cir. 2015) .................................................... 8

*Lawshe v. Amerus Life Ins. Co.*,
 19 Fed. Appx. 692 (9th Cir. 2001) ........................................................... 17

*Martini E Ricci Iamino S.P.A.-Consortile Societa Agricola v.*
 *Trinity Fruit Sales Co., Inc.*,
 30 F. Supp. 3d 954 (E.D. Cal. 2014) ........................................................ 16

*Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ............................... 7

*R & R Sails, Inc. v. Ins. Co. of Pennsylvania*,
 673 F.3d 1240 (9th Cir. 2012) .................................................................. 23

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
 531 F.3d 962 (9th Cir. 2008) .............................................................. 12, 13

*S.O.S. Inc. v. Payday Inc.*,
 886 F.2d 1081 (9th Cir. 1989) ............................................................ 12, 13

*Stillwater Ltd. v. Basilotta*, 2020 U.S. Dist. LEXIS 137746 ................................ 11, 12

*Studio S Imports, LLC v. Deutsch Imports, LLC*,
 CV1910666CJRAOX, 2021 WL 3598571, at *4-5 (CD Cal June 21, 2021) ........... 17

*Sybersound Records, Inc. v. UAV Corp.*
 517 F.3d 1137 (9th Cir. 2008) .................................................................. 10

*Undiscovered Corp. v. Heist Studios*,
 CV-18-5719, 2019 WL 8219489 (C.D. Cal Oct. 1, 2019) ........................... 22

*Unicon Fin. Services, Inc. v. InterCept, Inc*,
 CV-0407965, 2006 WL 8431500 (C.D. Cal. Jan. 17, 2006),
 *affd sub nom. Unicon Fin. Services, Inc. v. InterCept, Inc.*,
 256 Fed. Appx. 27 (9th Cir. 2007) ............................................................ 21

*Wool v. Tandem Computers, Inc.*,
 818 F.2d 1433 (9th Cir. 1987) ................................................................... 8

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT**

## **Statutes**

17 U.S.C. § 101, *et seq.* .................................................................................5, 11

17 U.S.C. § 504(b) .....................................................................................20, 22

17 U.S.C. § 512 *et seq.* ..................................................................................5, 6

Copyright Act of 1976 § 106 ..............................................................................23

Fed. R. Civ. P. 56 .................................................................................... passim

Fed.R.Civ.P. 56(a) ...........................................................................................7

Fed.R.Civ.P. 56(c) ...........................................................................................8

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This is a straightforward case of copyright infringement concerning six copyrighted "Albums" (defined below) of sound recordings owned by Plaintiff-Counterdefendant Yellowcake, Inc. ("Yellowcake"), that were recorded by the artist and Counterdefendant Jesus Chavez, Sr. ("Chavez"), founder, principal performer, and manager of the band known as Los Originales De San Juan (the "Band"). Defendant-Counterclaimant Hyphy Music, Inc. ("Hyphy"), a record label and music distributor, knowingly continued to exploit these Albums after they were lawfully sold by Chavez to Yellowcake after Chavez had terminated a prior oral distribution agreement with Hyphy. Despite Yellowcake's demands, Hyphy refused to stop exploiting the Albums necessitating the filing of this action.

Hyphy's motion seeks summary judgment (i) dismissing Yellowcake's Complaint, which alleges two causes of action against Hyphy for its infringement of the copyright Albums; (ii) on Hyphy's Second Claim for Relief that alleges Yellowcake and Colonize infringed on Hyphy's copyright in album cover art related to the Albums; and (iii) on Hyphy's Sixth Claim for Relief for unfair competition against Yellowcake, Colonize and David Hernandez ("Hernandez"), the principal of Colonize.  *See* Notice of Motion, Dkt. 78 at Pgs. ii-iii.

The prong of Hyphy's motion to dismiss Yellowcake's causes of action for infringement, which is entirely grounded in Hyphy's fictitious claim that it is either a co-owner or nonexclusive licensee of the copyrights in the Albums' sound recordings, should be denied because Hyphy fall far short of meeting its burden.  Additionally, this prong of the motion must be denied regarding "Naci Con Suerte de Rey Con Mariachi," one of the six Albums that are the subjects of Yellowcake's Complaint, for the simple

/ / /

/ / /

/ / /

**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT**

fact that Hyphy excluded that Album from the scope of its motion.[1]

The second prong of Hyphy's motion, for summary judgment on its own claim of infringement of album cover artwork, should be denied because Hyphy fails to show that Yellowcake or Colonize committed the alleged acts of infringement in the first place. Indeed, Hyphy's "evidence" on this prong is patently defective, constituting, *inter alia*, speculation or inadmissible hearsay.

Finally, the third prong of Hyphy's motion, for summary judgment on its state law unfair competition claim, must be denied because this Court already dismissed it, in granting Yellowcake's prior motion to dismiss. *See* Order dated July 20, 2021 (the "MTD Order"), Dkt. 42 at Pg. 36, Lns. 1-7. In fact, as reflected in the MTD Order, the Court previously dismissed *all* of Hyphy's counterclaims against Yellowcake, Colonize and/or Hernandez except for the Second Claim for Relief related to the artwork, which was not at issue in that motion.

Based on the foregoing, and as further detailed below, Hyphy's motion must be denied in its entirety and, moreover, the summary judgment motion filed by Yellowcake on July 14, 2023 (Dkt. 82), for summary judgment on its two causes of action and dismissing Hyphy's Second Claim for Relief lone surviving counterclaim, should be granted in its entirety.

/ / /

/ / /

/ / /

---

[1] Hyphy does not include *Naci Con Suerte de Rey Con Mariachi* within Hyphy's definition of the "Albums" at issue in its motion. *See* Hyphy's Memorandum of Points and Authorities in support of same ("MPA"), Dkt. 78 at Pg. 3, Lns. 4-7; Hyphy's Separate Statement of Undisputed Facts ("Hyphy SUF"), Dkt. 78-20 at statement nos. 5, 26, 53, 94, 130, 160). Furthermore, Hyphy does not proffer any specific arguments, facts or evidence regarding that Album and, in fact, the motion does not refer to that Album at all. Consequently, Hyphy failed to satisfy its initial legal burden to show it is entitled to summary judgment. Its decision not to do so was obviously purposeful. *See* MPA, Dkt. 78 at Pg. 3 Lns. 1-10) (immediately after defining the five Albums that are the subject of its motion, Hyphy states "[o]ne of the other two albums identified in Yellowcake's Complaint . . . has no connection to this dispute . . . ."); Hyphy SUF, Dkt. 78-20 at statement nos. 6, 27, 54, 95, 131, 161) (same).

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT**

## II.    <u>STATEMENT OF FACTS</u>

### <u>The Copyrighted Albums at Issue</u>

Chavez is a legendary Mexican musical artist and the founder of the Band. *See* Declaration of Jesus Chavez, Sr. in Support of Plaintiff and Counterdefendants' Motion to Dismiss Defendant's Counterclaims and Supplemental Brief ("Chavez Decl."), Dkt. 46-2, ¶ 3-4.   Chavez was always the bandleader, principal performer, and principal songwriter of the Band.   This has been acknowledged by Hyphy.   *See* Hyphy's Counterclaim (the "Counterclaim"), Dkt. 7 at ¶ 15; FAC, Dkt. 15 at ¶ 15; Hyphy's Opposition to Plaintiff-Counterdefendants' Notice of Motion and Motion to Dismiss Defendant-Counterclaimant's Counterclaims Pursuant to Federal Rules of Civil Procedure 12(b)(6) (the "Opp. to MTD"), Dkt. 27, Pg. 1, Ln. 27 - Pg. 2, Ln. 1. Chavez had always owned all intellectual property produced by the Band including all copyrights in its sound recordings and trademarks until he later sold them to Yellowcake. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21.

Between 2013 and 2015, Chavez, recording under the name Los Originales de San Juan, recorded six albums titled: (i) Los Originales de San Juan- "El Campesino"; (ii) Los Originales de San Juan-"Corridos de Poca M"; (iii) Los Originales de San Juan-"En Vivo Desde La Cantina de Mi Barrio"; (iv) Los Originales de San Juan-"Nuestra Historia En Vivo"; (v) Los Originales de San Juan- "Amigos y Contrarios"; and (vi) Los Originales de San Juan-"Naci Con Suerte de Rey Con Mariachi" (collectively, the "Albums").   Chavez Decl. Dkt. 46-2 at ¶ 7.   Hector Omar Rosales ("Rosales") was the audio engineer for three (3) of the Albums recorded in his studio.   *See* Declaration of Hector O. Rosales in Support of Plaintiff and Counterdefendants' Motion to Dismiss Defendants' Counterclaims and In Support of Supplemental Brief ("Rosales Decl.") Dkt. 46-1, ¶ 5; Chavez Decl. Dkt. 46-2, ¶ 11. The Albums' sound recordings are listed by track on Exhibit "A" to the Complaint.  See Dkt. 1.   Chavez was the sole producer of the Albums and no employee or anyone else affiliated with Hyphy produced or co-authored any songs on the Albums, or provided any original creative input into the

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

recording of the Albums. Chavez Decl., Dkt. 46-2, ¶ 8; Rosales Decl. Dkt. 46-1 at ¶¶ 7-10.

At no time during their recording or subsequent existence were there any other co-owners with Chavez of the copyrighted sound recordings in the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21.

**The Oral Distribution Agreement between Chavez and Hyphy**

In or around September 2013, Chavez and Hyphy entered into an oral distribution agreement for the Albums recorded by Chavez under the name Los Originales de San Juan. Chavez Decl., Dkt. 46-2 at ¶ 6; Counterclaims, Dkt. 7 at ¶ 16; FAC, Dkt. 15 at ¶ 16; Opp. to MTD, Dkt. 27, Pg. 2 Lns. 1-5.  Although Hyphy misrepresents the nature of that oral agreement as one where Hyphy "commissioned" sound recordings, up until very recently, Hyphy has consistently pled and averred in sworn submissions to the Court that Hyphy "commissioned" Chavez, and *Chavez alone*, to record the Albums. *See* Counterclaim, Dkt. 7 at ¶ 16; FAC, Dkt. 15 at ¶ 16; Opp. to MTD, Dkt. 27 at Pg. 2, Lns. 1-5; Hyphy's Reply to Counterdefendants' Challenge to The Validity of Certain Copyright Registrations Dkt. 45, Pg. 1 at Lns. 16-18; Declaration of Jose Martinez in Support of Reply to Counterdefendants' Challenge to the Validity of Certain Copyright Registrations (the "2021 Martinez Decl."), Dkt. 45-1 at Pg. 1, Lns. 8-16.  According to Hyphy's sole owner and chief executive officer, Jose Martinez ("Martinez"), Hyphy used written agreements with artists about 80 percent of the time, but did not do so with Chavez.  *See* Martinez's deposition transcript ("Martinez Trans.") at Pg. 23, Ln. 18 - Pg. 24, Ln. 18 annexed as **Exhibit "A"** to the Declaration of Seth L. Berman ("Berman Decl.").  In connection with his agreement with Hyphy, Chavez had no intent to transfer any ownership interest in the Albums to Hyphy, and there is no evidence in the record to suggest that he did.  Chavez Decl. Dkt. 46-2 at ¶ 14.

**Yellowcake's Ownership of the Albums**

Yellowcake is primarily engaged in the business of owning, managing, and exploiting various intellectual property rights. *See* Declaration of Kevin Berger

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

("Berger Decl."), Dkt. 82-14 at ¶ 2. Colonize is a company engaged in the business of digital music distribution and distributes the Albums on behalf of Yellowcake. *See* Berger Decl., Dkt. 82-14 at ¶ 13. Hernandez is a principal of Colonize. *See* Declaration of Jose David Hernandez ("Hernandez Decl."), Dkt. 82-16 at ¶ 1.

On or about March 21, 2019, Yellowcake and Chavez entered into an Asset Purchase and Assignment Agreement ("APA Agreement"), whereby Yellowcake purchased Chavez's entire ownership of the rights, title and interests in all sound recordings of Los Originales De San Juan, including the Albums. *See* Berger Decl., Dkt. 82-14 ¶ 9; APA Agreement, Dkt. 82-3. In the agreement, Chavez represented that he owned all rights transferred to Yellowcake therein. APA Agreement, Dkt. 82-3 at ¶ 13(e).

Prior to entering into the APA Agreement, Yellowcake searched the United States Copyright Office ("USCO") to determine if any potential competing copyright registrations filed for the Albums existed. It found none because there were none. *See* Berger Decl., Dkt. 82-14 at ¶¶ 7-8. Following its execution of the APA Agreement, Yellowcake complied with all requirements set forth by the Copyright Act, 17 U.S.C. § 101, *et seq*., by registering copyrights for each sound recording acquired by the APA Agreement, and also recorded the APA Agreement with the USCO. *See* Berger Decl., Dkt. 82-14 at ¶¶ 11-12. The USCO then issued Yellowcake a Certificate of Registration for each copyrighted Album. Complaint, Dkt. 1 at ¶ 2.

**Hyphy's Unauthorized Exploitation of the Copyrighted Albums**

Sometime after receiving the Certificates of Registration, Yellowcake learned that Hyphy had been distributing copies of sound recordings from the Albums and created and/or uploaded videos containing unauthorized derivative works of the sound recordings to www.YouTube.com. *See* Complaint, Dkt. 1 at ¶¶ 15-16; Berger Decl., Dkt. 82-14 at ¶ 18.

Shortly thereafter, in or about June 2020, Yellowcake filed "Takedown Notices" pursuant to 17 U.S.C. § 512 *et seq*., through YouTube claiming ownership of the songs

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

and notified Hyphy's distributor, The Orchard, that Hyphy was infringing Yellowcake's copyrighted Albums. *See* said correspondence, Dkt. 82-4.

Hyphy disregarded these notices and continued to exploit the Albums, including but not limited to selling and streaming them on  multiple digital service provider platforms such as Spotify, Apple Music, and Amazon Music, even after Yellowcake filed this lawsuit. *See* Hyphy's royalty reports extending to 2022 subpoenaed from The Orchard, Dkt. 82-5.  As such, Yellowcake was required under 17 U.S.C. § 512 *et seq.* and YouTube's protocols to file this action to protect its rights and to resolve any conflicts with the digital service provider platforms.

## III.    **RELEVANT PROCEDURAL HISTORY**

Yellowcake commenced this action for copyright infringement on July 16, 2020 (Complaint, Dkt. 1). Defendant, Hyphy Music, filed its answer (Dkt. 8)[2] and its Counterclaim (Dkt. 7) against Yellowcake, Colonize and Hernandez on August 19, 2020. On August 28, 2020, Hyphy, filed its FAC (Dkt. 15).

On October 2, 2020, Yellowcake, Colonize, and Hernandez moved to dismiss Hyphy's Claims for Relief numbered 1, 3, 4, 5, 6 and 7 of the FAC. (Dkt. 23), Hyphy opposed such motion on October 16, 2020 (Dkt. 27). Yellowcake, Colonize, and Hernandez replied to such opposition on October 27, 2020 (Dkt. 28), and also filed with the Court a Request for Judicial Notice in support of their motion (Dkt. 29).

In the MTD Order, dated July 20, 2021 (Dkt. 42), the Court (i) dismissed all of the Claims for Relief subject to the motion with leave to amend several of them; and (ii) ordered the parties to submit additional briefing to address inconsistencies between Hyphy's FAC and copyright registrations Hyphy had filed with the United States Register of Copyrights.  Hyphy did not file a second amended counterclaim, leaving only Hyphy's Second Claim for Relief against Yellowcake and Colonize for copyright infringement of certain copyrighted album artwork.  Also, as a result of the motion to

---

2 Hyphy apparently filed an answer at Dkt. 6 but mislabeled it "Counterclaim," and then filed the same document at Dkt. 8 and labeled it "Answer."

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

dismiss, there are no remaining counterclaims against Hernandez.  On August 3, 2021, Hyphy filed the supplemental briefing ordered by the Court (Dkt. 45), and on August 10, 2021, Yellowcake, Colonize, and Hernandez filed their response thereto (Dkt. 46).

On August 17, 2021, Yellowcake, Colonize, and Hernandez filed their Answer to Hyphy's FAC (Dkt. 47).

Hyphy filed an *ex parte* application seeking to supplement its initial disclosure and to further respond to document production on October 12, 2022 (Dkt. 55).  The Court issued an order dated October 20, 2022, granting Hyphy's ex parte application (Dkt. 59).

On May 19, 2023, Hyphy filed its motion for summary judgment (Dkt. 78) and on July 14, 2023, Yellowcake and Colonize filed their motion for summary judgment.

## IV.    DISCOVERY

Yellowcake served its first set of interrogatories on November 24, 2021, and Hyphy served its response to same on March 31, 2022 (Dkt. 82-6).  Yellowcake served two sets of requests for production, on November 24, 2021, and October 27, 2022, respectively.  Hyphy served its responses to same on January 18, 2022 (Dkt. 82-7), and March 31, 2022 (Dkt. 82-8), respectively, and served supplemental responses to same on October 10, 2022 (Dkt. 82-9), and November 28, 2022 (Dkt. 82-10), respectively. On February 4, 2022, Yellowcake served a subpoena to produce documents on The Orchard, who produced documents in response to same on April 13, 2022, May 4 and 6, 2022, and May 11, 2022 (Dkt. 82-5).

## APPLICABLE LEGAL STANDARD

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

Hyphy, as the party seeking summary judgment, bore the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). Where, as here, the moving party seeks summary judgment on a claim or defense on which the opposing party bears the burden of persuasion at trial "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Jones v. Williams*, 791 F.3d 1023, 1030-31 (9th Cir. 2015). A moving party demonstrates summary judgment is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323 (quoting Fed.R.Civ.P. 56(c)). Where the moving party's version of events differs from the non-moving party's version, a "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation and alteration omitted).

## ARGUMENT

## V.    DEFENDANTS' ARGUMENT THAT YELLOWCAKE LACKS STANDING TO MAINTAIN THIS ACTION SHOULD BE REJECTED

In Point V.A. of Hyphy's MPA, Hyphy argues that Yellowcake lacks standing to sue Hyphy, or anyone else, for copyright infringement of the Albums because Yellowcake is merely a non-exclusive licensee of Chavez's rights in the Albums, and non-exclusive licensees lack standing to sue for infringement. *See* MPA, Dkt. 78 at Pg.

OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT

7, Ln. 17 – Pg. 10, Ln. 5. Specifically, Hyphy reasons that: (i) because Alfonso Vargas ("Vargas"), a former drummer in the Band, and Domingo Torres Flores ("Torres"), a former accordion player in the Band, allegedly co-authored the Albums with Chavez, (ii) and Yellowcake obtained an assignment of only Chavez's rights in the Albums via the APA Agreement, (iii) then Yellowcake did not acquire exclusive rights in the Albums, (iv) and therefore Yellowcake has no standing to sue anyone for copyright infringement.

It first must be noted that Hyphy's reasoning and conclusion presumes Vargas and Torres possessed copyright rights in the Albums on the alleged basis that they co-authored the Albums. This is a completely fictitious presumption which is disproven in detail below. Leaving that issue aside for the moment, the argument Hyphy is really trying to make in Point V.A. of its MPA is that Yellowcake, as an assignee of one co-author's copyright, lacks standing to sue others for infringing that copyright.

Hyphy is patently incorrect on the facts and law. Chavez did not merely assign or license his rights in the Albums to Yellowcake. Instead, pursuant to the APA Agreement, Chavez sold, assigned, transferred, conveyed, and delivered to Yellowcake the "entirety of ownership" of Chavez's rights, title, and interest in the Albums, and a "legal or beneficial owner of an exclusive right under a copyright" is "entitled to sue for copyright infringement." *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 884 (9th Cir 2005) (A) (citation omitted). Hyphy's blunder in believing Yellowcake to be an assignee of Chavez's copyright rights, as opposed to being their owner, is also coupled by Hyphy's misreading of *Sybersound Records, Inc. v. UAV Corp.* 517 F.3d 1137 (9th Cir. 2008). *Sybersound Records* addresses whether a co-owner of a copyright interest can unilaterally grant an exclusive license to that interest to a third party. That is not the factual scenario present here, *i.e.*, the copyright owner (Chavez) sold his entire interest in the copyright to another (Yellowcake). Furthermore, *Sybersound Records* does not hold that a co-owner requires the permission of the other co-owners to sue a third party for copyright infringement. As the Ninth Circuit stated a few years after

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT**

deciding *Sybersound Records*:  "[T]he [*Sybersound*] Court's emphasis on the word 'exclusive' in the [statutory] provisions cannot mean that only sole owners possess 'exclusive' rights, as such a rule would run directly contrary to another well-settled principle of copyright law: the right of one joint-owner to sue third-party infringers without joining any of his fellow co-owners, a right *Sybersound* itself expressly recognizes." *Corbello v. DeVito*, 777 F.3d 1058, 1065 (9th Cir. 2015).

Based on the foregoing, Hyphy's request for summary judgment on Yellowcake's copyright infringement claims for lack of standing must be denied.

## VI.    HYPHY IS NOT A CO-OWNER OR CO-AUTHOR OF THE ALBUMS, NOR DOES IT HAVE A LICENSE TO EXPLOIT THEM

### A.  Hyphy Is not Entitled to Summary Judgment on the Ground that Hyphy Co-Owns the Albums

Hyphy asserts it co-owns the Albums "for two indisputable reasons": (1) it is a co-creator of the Albums (Hyphy Motion, Dkt. 78 at Pg. 10, Ln. 14 – Pg. 11, Ln. 19) and/or (2) Torres and Vargas co-created the Albums and then assigned their rights in the Albums to Hyphy (*id*. at Pg. 11, Ln. 20 – Pg. 11, Ln. 27).

### 1.  Hyphy Fails to Meet its Burden to Demonstrate that it is a Co-Author of the Albums

Hyphy asserts it "contributed more than a modicum of creativity to the creation of the Albums." *Id*. at Pg. 10, Ln. 14.  Hyphy claims it provided the creative direction for the Albums, selected the songs to be included in each, paid for the recording costs (and cost of the venue for the live recordings) costs of recording two of the Albums, and hired the sound engineer (and videographer for the live recordings) who recorded all of the Albums."  *Id*. at Pg. 10, Ln. 27 – Pg. 11, Ln. 2.

Summary judgment on this claim must be denied for two reasons.  First, Chavez and Rosales, who possess personal knowledge of the Albums' recording, dispute these facts. Second, and more critical, is that even if such claims were true, which they are not, Hyphy simply describes general record label activities. Such activities are not sufficient

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

works of original authorship to deem Hyphy a co-owner with Chavez as a matter of law.

Under the Copyright Act, a "joint work" is a work prepared by two or more authors with the *intention* that their contributions be merged into inseparable or interdependent parts of a unitary whole. 17 U.S.C. § 101. An "author" is "the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence v. Reid,* 490 U.S. 730, 737 (1989).

*Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000) sets forth three factors for determining whether a work is jointly authored. "First, an author superintend[s] the work by exercising control." *Id. at 1234* (quoting *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 61 (1884)). "Second, putative coauthors make objective manifestations of a shared intent to be coauthors . . . ." *Id.*  "[T]hird, the audience appeal of the work turns on both contributions and 'the share of each in its success cannot be appraised.'" *Id.* (*quoting Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 266, 267 (2d Cir.), modified by 140 F.2d 268 (2d Cir. 1944)).

The creativity one must contribute to be an author must be more than merely de minimis. *Stillwater Ltd. v. Basilotta*, 2020 U.S. Dist. LEXIS 137746. Even if there is an agreement to collaborate, if there is only a non-copyrightable contribution made by the party in question that contribution will not be enough, in the Ninth Circuit, to meet the requirements for joint authorship. *Ashton-Tate v. Ross*, 916 F.2d 516 (9th Cir. 1990); *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962 (9th Cir. 2008).

In *Stillwater Ltd.*, three parties attempted to argue joint authorship of the songs in question, Radialchoice Ltd. (a recording company formed by Lait), Stillwater (the recording company Lait transferred ownership of the disputed sound recordings and the "Mix and Spanish Recordings" to), and Greg Mathieson (music producer of the songs). *Stillwater Ltd.*, 2020 U.S. Dist. LEXIS 137746 (C.D. Cal. 2020). The court determined it was not enough of a contribution for Radialchoice, as the record label, to be considered a co-author just because it financed, approved, marketed, and distributed the work. *Id.*

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

The court also found that Lait's direction, vision, or idea for the songs did not amount to a copyrightable contribution because they were not "fixed" in a "tangible medium of expression" and the mere supply of direction or ideas was not enough. *Stillwater Ltd.*, 2020 U.S. Dist. LEXIS 137466 (C.D. Cal. 2020); *S.O.S. Inc. v. Payday Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989). Finally, the court concluded Mathieson's contributions failed to meet the *Aalmuhammed* criteria.

Again, "[T]o be an author, one must supply more than mere direction or ideas; one must 'translate an idea into a fixable tangible expression entitled to copyright protection." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989); *Ashton-Tate*, 916 F.2d at 521. "[A] person who merely describes to an author what the commissioned work should do or look like is not a joint author for the purposes of the Copyright Act." *See S.O.S., Inc.*, 886 F.2d at 1087. In *S.O.S., Inc.*, the Ninth Circuit found that the defendant, Payday, Inc., "did nothing more than describe the sort of programs Payday wanted S.O.S. to write." *See id.* Even if there is an agreement to collaborate, if there is only a noncopyrightable contribution made by the party in question that contribution will not be enough, in the Ninth Circuit, to meet the requirements for joint authorship. *Ashton-Tate v. Ross*, 916 F.2d 516 (9th Cir. 1990); *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962 (9th Cir. 2008).

Clearly, Hyphy was not a co-author of the Albums. Chavez and Rosales, the audio engineer, declared that Chavez had complete control over the production and recording of the Albums. *See* Chavez Decl. Dkt. 46-2 and Rosales Decl. Dkt. 46-1. Furthermore, Hyphy admits in the FAC that *Chavez alone* was the original author of the albums and that Hyphy only offered nominal artistic direction typical of a record label or distributor and not that anyone affiliated with Hyphy made any copyrightable contribution. FAC, Dkt. 15 at ¶¶ 16-17.

Further Hyphy fails to meet its burden to demonstrate "objective manifestations of a shared intent" among Chavez and Hyphy or Martinez to be co-authors. Instead, Hyphy merely proffers Martinez's self-serving descriptions of his own actions – which

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

---

**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT**

themselves appear to be the mundane activities engaged in by any record label.

Additionally, since Hyphy provided no performance or other creative contributions to the Albums, Hyphy has failed to meet its burden to establish that it provided a copyrightable contribution to the Albums that contributed to their success. As such, there can be no audience appeal associated with Hyphy.

Based on the foregoing, Hyphy had failed to establish as a matter of law that it is a joint author of the Albums under the *Aalmuhammed* criteria and, therefore, this prong of Hyphy's Motion must be denied.

### 2. Hyphy Fails to Meet its Burden to Demonstrate that It Is Otherwise a Co-Owner of the Albums

Hyphy argues that "even if Hyphy did not contribute enough creatively to the creation of some or all of the Albums, Hyphy became a co-owner when it acquired all of Torres's and Vargas's respective interests in their creative contributions thereto." *See* Hyphy Motion, Dkt. 78 at Pg. 11, Lns. 20-22.

### a. Hyphy's Binding Judicial Admissions Preclude it from Obtaining Summary Judgment on this Basis

Knowing that it had no legitimate excuse for its actions, Hyphy, only after getting sued by Yellowcake, manufactured the theories that Hyphy owned the Albums because it "commissioned" Chavez to record them via an oral agreement and/or because Hyphy co-authored the Albums. Hyphy pled the "facts" supporting these theories in its Counterclaim and FAC. Years later, after the Court had dismissed most of Hyphy's counterclaims, Hyphy realized that its theory of ownership was defective and began claiming the alleged oral agreement with Chavez was not really an agreement with him at all! All this time, Hyphy now claims, the oral agreement was really with Chavez, Torres and Vargas, and all this time they were also co-authors of the Albums. Several months after Hyphy asserted these claims, in October 2022, only one month before dispositive motions were due, Hyphy altered its position yet again, this time conjuring-up unnotarized assignments, which were purportedly executed by Vargas and Torres and

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

counter-signed by Martinez seven months before-hand on March 22, 2022 (the "Alleged Assignments"). *See* Dkt. 55-4 (copies of same). All of these brand-new positions are irreconcilable with the facts pled by Hyphy in the FAC in support of its claim to an ownership interest in the Albums. Those facts pled are binding judicial admissions.

"[A]dmissions in the pleadings are generally binding on the parties and the Court. *Am. Tit. Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (citation omitted). "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Id.* (citation omitted). "*Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.*" *Id.* (emphasis supplied).

Hyphy's FAC alleges the purported facts and circumstances of Hyphy's acquisition of rights to the Albums' sound recordings. In that context, Hyphy unambiguously claimed that its alleged rights were derived from an oral agreement with Chavez, and Chavez alone: "Hyphy entered into an oral exclusive recording agreements [sic] with Jesus Chavez . . . whereby [Hyphy] commissioned Chavez . . . to exclusively provide services as a recording artist in the making of [the recordings in the Albums]." FAC, Dkt. 15 at ¶ 16; *see also* Counterclaim, Dkt. 7 at ¶ 16 (same). Hyphy then outlined the alleged terms of the agreement it made with Chavez:

> "Pursuant to the Agreement, [Hyphy] agreed to: . . . pay Chavez a fixed amount per Los Originales Album"; "[i]n turn, Chavez agreed to [, *inter alia*,] follow Hyphy's artistic direction [and] perform and record [various] sound and audiovisual recordings"; and "[i]n consideration for the services provided and payment thereto, Chavez agreed that [Hyphy] would be the *owner of all title, right, and interest in [the Albums]*."

*Id.*; *see also* Counterclaim at ¶ 16 (same).

Several paragraphs later, in casting aspersions on the legality of the APA Agreement, Hyphy again confirmed that Chavez was the direct source of Hyphy's purported rights in the sound recordings:

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

"[Hyphy] is informed and believes that at that time, [Chavez] advised [Hernandez] that he had entered into a contract with [Hyphy] and that [Hyphy] was the owner of the Los Originales Albums. [Hernandez] intentionally and willfully misled [Chavez] when he wrongfully and mistakenly told him that [Hyphy] had no rights to the Los Originales Albums, was free to sell the subject works to Hernandez's companies, Yellowcake and Colonize, and offered Chavez a significant sum of money to purportedly purchase the rights in the Los Originales Albums."

Dkt. 15 at ¶¶ 21-22; *see also* Counterclaim Dkt. 7 at ¶ 21-22 (same).

It is also critical that, in its decision granting Yellowcake's prior motion to dismiss, the Court understood that the gravamen of Hyphy's claims was an alleged oral agreement between Hyphy and Chavez. *See, e.g.*, MTD Order, Dkt. 42 at Pg. 8, Lns. 25-26 ("[T]he express allegations in the FAC identify the only agreement between Hyphy and Chavez as an oral one."); *id.* at Pg. 9, Lns. 3-7 (Chavez's belief that he had not transferred his ownership interest to Hyphy "is contrary to *Hyphy's alleged position that it held all exclusive rights by virtue of its oral agreement with Chavez*."); *id.* at Pg. 33, Lns. 24-25 ("[T]he FAC attempts to claim ownership through either an oral transfer agreement with Chavez or as a co-author/joint owner.").

As the foregoing constitute binding judicial admissions by Hyphy that it acquired its rights in the Albums via its oral agreement with Chavez (just as the Court previously understood Hyphy to be alleging), Hyphy's motion must be denied to the extent it seeks summary judgment under the theory that Vargas or Torres were co-owners of the sound recordings and/or transferred such purported interest to Hyphy. *See Estate of McNeil by and through Berkes v. FreestyleMX.com, Inc.*, 13-CV-2703, 2015 WL 13567073, at *5 (S.D. Cal. Feb. 9, 2015); *Martini E Ricci Iamino S.P.A.-Consortile Societa Agricola v. Trinity Fruit Sales Co.*, Inc., 30 F. Supp. 3d 954, 971 (E.D. Cal. 2014).

**b.    Hyphy Fails to Demonstrate Torres' and Vargas Co-Authored the Albums in the First Instance**

First, separate and apart from the judicial admission doctrine, the fact that Hyphy's current position inexplicably contradicts it prior position in and of itself creates a genuine

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

issue of fact as to whether Torres and Vargas co-authored the Albums (notably, Hyphy's position as pled in the FAC was reiterated by Martinez in the 2021 Martinez Decl. filed with the Court (*see* Dkt. 45-1)). Therefore, summary judgment must be denied for that reason as well.  *See Lawshe v. Amerus Life Ins. Co.*, 19 Fed. Appx. 692, 694 (9th Cir. 2001).

Second, after years of allegedly co-creating the Albums, in 2020, Hyphy filed its baseless copyright registrations for the Albums.  Those registrations state that Hyphy owns the Albums under a work-for-hire agreement with Chavez, and do not sate anywhere that Vargas or Torres co-authored the Albums (the law requires copyright registrant to identify its co-authors).  *See* Counterclaim Dkt. 7.  Therefore, the registrations contradict Hyphy's newly fabricated theories and Alleged Assignments. *Studio S Imports, LLC v. Deutsch Imports, LLC*, 19-CV-10666, 2021 WL 3598571, at *4-5 (C.D. Cal. Jun. 21, 2021).

Third, the terms, circumstances, and timing of the disclosure of the Alleged Assignments proves that they are fraudulent and were contrived by Hyphy to fend off Yellowcake's obvious right to summary judgment on its claims for copyright infringement.  Specifically, *the unnotarized Alleged Assignments were allegedly signed on March 22, 2022, but they were not disclosed by Hyphy until October 10, 2022*, well after the July 28, 2022, cutoff for fact discovery under the Court's initial scheduling order and only thirty-six days before the November 15, 2022, cutoff for filing summary judgment motions. *See* Initial Scheduling Order, Dkt. 50.  Notably, when Hyphy moved to supplement its disclosures with the Alleged Assignment and other documents, Hyphy's motion did not provide an excuse for why the seemingly critical assignments were not produced seven months beforehand when they were supposedly executed. *See generally* Hyphy's *Ex Parte* Application for Leave to Supplement Initial Disclosures and Responses to Request for Production of Documents, Dkt. 55.

Most telling that the Alleged Assignments are fabrications are the facts that (1) they purportedly transfer "100%" of Vargas' and Torres' "undivided right, title and

---

**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

interest in and to" the Albums including, for example "all audio-only and audiovisual master recordings" – in fact, rights in the master recordings are a focal point of the assignments (*see* Alleged Assignments, Dkt. 55 at §§ (a), (b), (c), (d), (e)); *but* (2) four months after Martinez purportedly executed the Alleged Assignments, when he was deposed, (i) he was asked if he has any written documents that "would memorialize any agreement or understanding between Hyphy and the band that Hyphy would own any master recordings," and responded, in part, "it was not written" (*see* Martinez Trans., Berman Decl., **Ex. "A"** at Pg. 125, Ln. 18 – Pg. 126, Ln. 1), and (ii) *he made no mention of these Alleged Assignments at all,* even though Vargas and Torres testified that Martinez gave them the Alleged Assignments and they executed them in Hyphy's office. *See* Vargas Trans., Dkt. 82-11 at Pg. 55 Lns. 8-13 - Pg. 56, Lns. 8-12; Torres Trans., Dkt. 82-12 at Pg. 57, Ln. 9-11, and Pg. 58, Lns. 1-19; Pg. 60, Lns. 11-16. Considering the central disputes and issues in this case, it is impossible to believe that Martinez forgot he had signed the assignments acquiring all of Torres' and Vargas' rights in the masters or never mention the assignments in his testimony if they actually existed at that time, and impossible to believe that if they existed while discovery was open that Hyphy simply forgot to produce them.

Furthermore, the terms of the Alleged Assignments are inherently suspect. Vargas and Torres allegedly assigned their alleged interests in the Albums to Hyphy for only one dollar ($1.00) each. *See* Dkt. 55-4. Meanwhile, Yellowcake paid Chavez fair-market value in the amount of Five Hundred Thousand Dollars ($500,000.00) for the entire interest in the Albums. *See* Berger Decl., Dkt. 82-14 at ¶ 10. It is hard to believe that Vargas and Torres would assign their alleged interest in such valuable copyrights to Hyphy for only one dollar ($1.00) each if they truly owned such interests. Torres and Vargas also testified that they never even read the Alleged Assignment before they executed them and did not know what they were for. *See* Torres Trans., Dkt. 82-12 at Pg. 60, Lns. 11-16; and Vargas Trans., Dkt. 82-11 at Pg. 56, Lns. 8-12. Furthermore, the Alleged Assignments do not state what percentage of the Albums Vargas and Torres

**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

allegedly own and, therefore, would be unenforceable on their face as vague.

Vargas also admitted to having a motive in helping Hyphy with this farce. Unfortunately, Chavez has had two strokes that left him unable to perform anymore. Vargas and Torres then attempted to tour and release new music as Los Originales De San Juan through Hyphy without Chavez, even though it was his band. In response, Chavez, as owner Los Originales De San Juan's trademark, sent a cease and desist letter to Vargas and Torres who acknowledged Chavez's ownership of the mark by complying with the cease and desist letter. *See* Dkt. 82-13.  Vargas also then admitted that they went to Martinez, who said that he would help them release new music for their new band if they signed the Alleged Assignments for both Hyphy and Morena Music, Inc. ("Morena") and helped Hyphy and Morena, who was also sued by Yellowcake for similar acts of copyright infringement, in their lawsuits with Yellowcake. *See* Vargas Trans., Dkt. 82-11 at Pg. 56, Ln. 25 - Pg. 58, Ln. 17, Pg, 59, Lns. 8-21.[3]

Furthermore, Hyphy never produced any written co-author agreement or partnership agreement amongst Chavez, Torres, and Vargas, and never produced any objective evidence whatsoever that there was an understanding that Vargas and Torres were coauthors of the Albums with Chavez.  Nor did Vargas or Torres ever file any copyright registrations for their alleged ownership of the Albums or demanded any royalties from Chavez from the sale of the Albums which obviously they would have had they truly believed that they were co-owners.  Lastly, notably, neither Vargas nor Torres ever filed an action for declaratory judgment or otherwise against Chavez or Yellowcake claiming to be a co-owner of the Albums even though they were released between 2013 and 2015.  Simply put, there is not a shred of credible objective evidence to prove that either Vargas or Torres were ever co-authors of the Albums.

Based on the foregoing, Hyphy's request for summary judgment on Yellowcake's copyright infringement claims must be denied.

---

[3] It should be noted Vargas and Torres admitted their depositions occurred in Hyphy's conference room.  *See* Vargas Trans, Dkt. 82-11 at Pg. 55, Lns. 14-17, Torres Trans., Dkt. 82-12 at Pg. 58, Lns. 10-19.

**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT**

**B.  Hyphy Did Not Acquire an Irrevocable Non-Exclusive License to Exploit the Albums**

Hyphy also asserts it held "at a minimum, an oral and irrevocable non-exclusive license from the very outset of the parties' Agreement and at all relevant times thereafter to exploit the Albums."  Hyphy Motion, Dkt. 78 at Pg. 12, Lns. 1-9.

Hyphy fails to establish entitlement to summary judgment on this prong of its Motion for several reasons.  First, Hyphy's judicial admissions bar it from arguing the existence of an oral agreement with Vargas and Torres. Second, Chavez disputes the existence of the alleged oral agreement.  *See* Chavez Decl. Dkt. 46-2, ¶ 14.  Third, the "facts" proffered by Hyphy to establish the alleged "oral and irrevocable non-exclusive license" (*see* Hyphy SUF, Dkt. 78-20 at ¶¶ 25-28) are patently inadequate to establish a contract was formed in the first instance or the terms thereof, in particular, that the supposed oral license would be "irrevocable."  Finally, nothing in *Effects Assoc., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990), cited by Hyphy, supports its claim that an implied license is irrevocable or would insulate Hyphy from a claim by Yellowcake. This is because any such a license would only insulate Hyphy from being sued by Chavez, Vargas, and Torres as a result of Hyphy's prior distribution of the Albums.  *Id*. However, it would not insulate Hyphy for its acts of copyright infringement that occurred after the ownership of the copyrights were sold to Yellowcake.

At best, Hyphy would arguably have a breach of contract and indemnification claim against Chavez, Vargas, and Torres but not a defense against a copyright infringement claim by Yellowcake as the lawful owner of the copyrights in the Albums which were infringed by Hyphy's exploitation of the Albums after they were sold to Yellowcake.

Based on the foregoing, Defendants fail to demonstrate the absence of a genuine issue of material fact as to the existence of an "oral and irrevocable non-exclusive license" entitling Hyphy to exploit the Albums and, therefore, this prong of the Hyphy Motion must be rejected.

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT**

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

## VII.  HYPHY FAILS TO SHOW ITS INFRINGEMENT DID NOT DAMAGE YELLOWCAKE

This prong of Hyphy's Motion attacks the damages element of Yellowcake's copyright infringement claim, and proffers three reasons why the Court should award Hyphy summary judgment on damages.  *See* Hyphy Motion, Dkt. 78 at Pg. 12, Ln. 13 – Pg. 15, Ln. 2.  All three should be rejected.

First, Hyphy argues that Yellowcake did not identify or quantify damages in its Rule 26(a)(1) disclosures and, therefore, pursuant to Rule 37(c)(1) Yellowcake cannot present proof of actual damages at trial.  However, this rule is inapplicable where the party's failure to disclose the required information is substantially justified or harmless. Both substantial justification and harmlessness are manifest in this case because all information to measure Yellowcake's damages has been in the possession of Hyphy and within its knowledge since the beginning of the case. *See Unicon Fin. Services, Inc. v. InterCept, Inc*, CV-0407965, 2006 WL 8431500, at \*15 (C.D. Cal. Jan. 17, 2006), *affd sub nom. Unicon Fin. Services, Inc. v. InterCept, Inc*., 256 Fed. Appx. 27 (9th Cir. 2007)* ("The court concludes that Unicon's failure to disclose its damages computation did not prejudice InterCept, since InterCept has, since the beginning of the litigation, been in possession of records that would have permitted it to conduct the calculation itself."); *Undiscovered Corp. v. Heist Studios*, CV-18-5719, 2019 WL 8219489, at \*4 (C.D. Cal Oct. 1, 2019) (holding party is not expected to provide damages calculation which depends on information with the possession of another party).

The failure is also harmless because Yellowcake may establish its 17 U.S.C. § 504(b) damages by establishing the gross revenue that Hyphy derived from its infringing acts. In this case, Hyphy has provided this evidence in its very own interrogatory responses.  In its interrogatories, Plaintiff asked Hyphy to identify "the gross amount of revenue generated" from its exploitation of the Albums, and Hyphy responded by admitting it received the following gross amounts for the exploitation of each Album:

**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT**

(i) "*El Campesino*," –$20,000; (ii) "*Des de la Cantina de Mi Barrio (En Vivo)*," –$20,000; (iii) "*Nuestra Historia en Vivo*," –$20,000; (iv) "*Corridos de Poca M*," –$20,000; (v) "*Amigos y Contrarios*" –$20,000; and (vi) "*Naci Con Suerte de Rey (Mariachi)*" –$20,000.  *See* Dkt. 82-6, Response 2(vii) and 4(iii). Not surprisingly, Hyphy's motion does not reference this evidence and its existence is more than sufficient to defeat this prong of its Motion. Moreover, it is apparent that Hyphy will not be prejudiced in preparing for trial, or that any delay will result from the untimeliness of Yellowcake's identification of documents supporting its damages, because Yellowcake's actual damages are measured by gross dollar figures which Hyphy itself has already prepared, calculated, and disclosed to Yellowcake.

Even if the Court determines that Yellowcake's alleged failure to identify Hyphy's own documents to establish the damages was not substantially justified or harmless, that does not end the inquiry.  The Court is required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith . . . and also to consider the availability of lesser sanctions" *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012). We respectfully submit that there is no evidence of willfulness, fault, or bad faith here.

The cases cited by Hyphy in support of its point are inappropriate. *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 821 (9th Cir. 2019) was a complex insurance coverage case involving damages to components of a gas purification plant that eventually shut down.  The plaintiffs, the operators of the plant, did not merely fail to provide initial disclosures, they, inter alia, failed to respond to interrogatories requesting damages information or produce damages information until one day before the discovery cut-off date under circumstances found by the district court to involve "willfulness, fault or bad faith." *Hoffman v. Constr. Protective Services, Inc.*, 541 F.3d 1175, 1177-78 (9th Cir. 2008), as amended (Sept. 16, 2008), involved a 66-plaintiff class action under the Fair Labor Standards Act where "at no time prior to trial did [the two lead plaintiffs] disclose damage calculations either for each individual Opt–In

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York  11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

---

21

**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff other than themselves or for the group as a whole." Respectfully, these cases are not even remotely analogous. They involve extreme factual scenarios with complex damages calculations that were either disclosed "at the eleventh hour" or not at all. Those circumstances are a far cry from those present here.

Second, Hyphy asserts that Yellowcake is not entitled to any actual damages for infringement because Yellowcake has not disclosed any proof of its actual damages to date. Actual damages, according to Hyphy, are assessed by the extent of injury to the copyrighted work's market value. However, "market value" is not the only measurement of actual damages. 17 U.S.C. 504(b) provides, in relevant part, that: "The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue…" Accordingly, as a matter of law, Yellowcake may establish its 17 U.S.C. 504(b) damages by establishing Hyphy's gross revenue derived from its infringing acts. As noted above, Hyphy itself provided this information.

Third, Hyphy claims that, under 17 U.S.C. 412(2), Yellowcake cannot recover statutory damages for Hyphy's acts of infringement. This prong of the Hyphy Motion is moot inasmuch as Yellowcake has elected to seek actual damages as opposed to statutory damages as noted in Yellowcake's motion for summary judgment.

## VIII. HYPHY HAS FAILED TO ESTABLISH *PRIMA FACIE* ENTITLEMENT TO SUMMARY JUDGMENT ON ITS CLAIM RELATED TO THE ARTWORK.

In Section VI.A. of the Hyphy Motion, Hyphy proclaims its "smoking gun" evidence requires the grant of summary judgment on its own infringement claim. Such evidence, however, is not admissible and it is not credible. Moreover, neither Yellowcake nor Colonize ever used this artwork, and Hyphy failed to provide any admissible or credible proof to the contrary or that it suffered any damages. *See* Berger

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

Decl., [Dkt. 82-14](#) at ¶ 26; Hernandez Decl., [Dkt. 82-16](#) ¶ 11.

Further and almost unbelievably, Yellowcake and Colonize came to discover that Hyphy, in collusion with Morena, a defendant in another action *Yellowcake, Inc. v. Morena Music, Inc., et al.,* Case No. 1:0-cv-787-JLT-BAM, who has colluded with Hyphy and is represented by the same counsel, have committed a fraud on the Court. Specifically, Yellowcake discovered that in fact it was Hyphy and Morena who were the parties who uploaded the alleged infringing uses of Hyphy's artwork to the online record store even though it is Hyphy who is trying to blame Yellowcake for doing so. *See*, Hernandez Decl., [Dkt. 82-16](#) at ¶¶ 11-19.

It is Hyphy's obligation to submit proof that Yellowcake and Colonize actually infringed one of Hyphy's rights under [§ 106 of the Copyright Act](#) and to prove damages. However, during the course of discovery, Hyphy never produced any legitimate evidence that either Yellowcake or Colonize had used any of Hyphy's copyrighted album cover artwork. The only alleged evidence of infringement produced by Hyphy was screenshots of Hyphy's alleged album covers on an online record store named Daddy Kool Records. *See* [Dkt. 55-3](#).

However, as set forth in the Berger and Hernandez Declarations, Yellowcake created its own artwork for the Albums after their acquisition, and neither Yellowcake nor Colonize ever sold or distributed any of the Albums through Daddy Kool Records. In fact, Daddy Kool Records was never a distribution customer of either Yellowcake or Colonize, and neither entity distributed any titles, let alone the Albums with Hyphy's artwork. *See* Berger Decl. [Dkt. 82-14](#), ¶¶ 25-33; Hernandez Decl. [Dkt. 82-16](#), ¶¶ 11-19.

Furthermore, the "evidence" relied on by Hyphy, which are screenshots of the Daddy Kool Records store, produced by Hyphy *do not reference either Yellowcake or Colonize anywhere on the documents*. Tellingly, Hyphy failed to authenticate any of the screenshots. There is no evidence in the record as to who actually uploaded the album artwork or sound recordings to the Daddy Kool Records website. The documents

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

were not produced pursuant to a valid subpoena or accompanied by a business records certification from Daddy Kool Records. Since there is no foundation to identify who created these documents or when they were created, they are unavailing to Hyphy's motion.  *See Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987) ("This court has consistently held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment.").

Most disturbingly, by submitting these documents as alleged proof of Yellowcake and Colonize's infringement of Hyphy's artwork, both Hyphy and Morena have essentially committed a fraud on this Court.  Specifically, when Hyphy first disclosed these screenshots and alleged that it was Yellowcake who uploaded the artwork to Daddy Kool Records online store, Yellowcake and Colonize decided to investigate these claims as they had no knowledge of or business dealings with Daddy Kool Records. Yellowcake and Colonize were able to track down the digital distributor who distributes to Daddy Kool Records and discovered that it was Morena Music, Inc. d/b/a Long Play Music who allegedly uploaded Hyphy's album covers and sound recordings to Daddy Kool Records' website, not Yellowcake or Colonize. *See* the Hernandez Declaration Dkt. 82-16, at ¶¶ 15-17 and Exh. "A" to the Hernandez Declaration.

As such, Hyphy and Morena knowingly uploaded the album artwork and sound recordings to Daddy Kool Records and then attempted to blame Yellowcake and Colonize for it. This is further supported by the fact that Hyphy did not produce these documents until after the initial close of discovery and on the verge of the prior deadline for filing summary judgment because they knew they had no evidence to support their claims of copyright infringement against Yellowcake or Colonize. *See* Hyphy's *Ex Parte* Application for Leave to Supplement Initial Disclosures and Responses to Request for Production of Documents Dkt. 55.

Furthermore, these screenshots also actually strengthen Yellowcake's claim of ownership of the sound recordings of these albums because under where it says "label"

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT**

it is followed by the letters "JC" which stands for Jesus Chavez, which means that Hyphy acknowledged that Jesus Chavez was the owner of the albums at the time they were being distributed by Hyphy and not owned by Hyphy. *See* Hyphy's *Ex Parte* Application for Leave to Supplement Initial Disclosures and Responses to Request for Production of Documents Dkt. 55-3.

Lastly, even if Yellowcake and Colonize did use Hyphy's album artwork, which they did not, Hyphy has failed to produce any admissible evidence to substantiate that they suffered any monetary damages as a result and statutory damages are not claimed or available since copyright registrations for the artwork were filed after the alleged acts of infringement. As such, Yellowcake and Colonize are entitled to Summary Judgment in their favor on Hyphy's Second Counterclaim for copyright infringement.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that this Court: (i) deny Hyphy's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 in its entirety; and (ii) grant Yellowcake such other and further relief as the court may deem just, proper and equitable.

Dated:  August 4, 2023                Respectfully submitted,

**ABRAMS FENSTERMAN, LLP**
By: /s/ Seth L. Berman
Seth L. Berman, Esq. (*admitted pro hac vice*)
***Attorneys for Plaintiff Yellowcake, Inc., and Counterdefendants Yellowcake, Inc., Colonize Media, Inc., and  Jose David Hernandez***

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system on this ___ day of August 2023, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those that are indicated as non-registered participants, if any.

/s/ Seth L. Berman
Seth L. Berman, Esq.

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

**OPPOSITION TO HYPHY MUSIC, INC.'S MOTION FOR SUMMARY JUDGMENT**