```
                                                                1
 1            IN THE UNITED STATES DISTRICT COURT
 2               EASTERN DISTRICT OF CALIFORNIA
 3    _____
 4    YELLOWCAKE, INC.,
 5         Plaintiff,
 6      v.                              Case No:
 7    HYPHY MUSIC, INC.,                1:20-CV-00988-DAD-BAM
 8         Defendant.
 9    _____
10          VIDEOTAPED DEPOSITION OF JOSE MARTINEZ
11    DATE:          Tuesday, July 26, 2022
12    TIME:          1:02 p.m.
13    REPORTED BY:   Lani Watts, CVR-CM
14    JOB No.:       11545
15
16    Conducted by videoconference via the Remote Legal
17    platform.
18
19
20
21
22
23
24
25
```

```
               JOSE MARTINEZ - JULY 26, 2022              23
 1   not to answer?
 2              MR. BEGAKIS:  Same objections.  The
 3   witness is not responding.
 4   BY MR. BERMAN:
 5      Q   Without telling me the substance of any
 6   communications with any lawyers, Mr. Martinez, were you
 7   ever involved in any capacity in negotiating any
 8   contracts between Hyphy and any artist from whom Hyphy
 9   obtained copyrights from?
10              MR. BEGAKIS:  I'll object to the extent
11   that it's outside of the scope of this deposition.  I'll
12   also object to the extent it requires the disclosure of
13   attorney-client privileged information.  To the extent
14   the witness can answer yes or no, I'll allow him to
15   answer yes or no.
16              THE WITNESS:  Yes.
17   BY MR. BERMAN:
18      Q   And you testified approximately Hyphy has used
19   written contracts in 80 percent of its deals with
20   artists and 20 percent of the time it does not use
21   contracts with artists; is that accurate?
22      A   Yes --
23              MR. BEGAKIS:  Objection to the extent it
24   mischaracterizes the witnesses prior testimony.
25   BY MR. BERMAN:
```



```
                JOSE MARTINEZ - JULY 26, 2022                24
 1      Q    What, if anything, is the deciding factor as
 2   to whether or not Hyphy uses a written contract or not
 3   when allegedly acquiring a copyright from an artist?
 4               MR. BEGAKIS:  Objection.  Vague as to
 5   deciding factor, and objection to the extent that it
 6   requires disclosure of attorney-client privilege
 7   information.  To the extent that the witness can answer
 8   without disclosing attorney-client privileged
 9   information, the witness is permitted to answer.
10               THE WITNESS:  I use -- like I stated
11   prior, I use a good-faith assessment, especially when
12   I'm working with individuals that will be working with
13   us long term.
14               In this particular case, Mr. Chavez
15   agreed to be the last pit stop.  In other words, we were
16   going to be his last record label of record.  We
17   mutually had an agreement for five years before it was
18   disrupted or interrupted.  So the good-faith effort
19   occurred because he was not only a close friend, but he
20   was also a person that, out of his own mouth, he said,
21   "My signature is my word."
22               And every time that I offered to pay for
23   his services and/or rights, he accepted compensation
24   accordingly, what he requested is what he received, and
25   that is the reason why I determined that in this
```



REMOTE LEGAL
COURT REPORTING
646-461-3400

```
                  JOSE MARTINEZ - JULY 26, 2022                125
 1      A    Yes.
 2      Q    And would you say that you have some knowledge
 3 of the sound recording process?
 4      A    Yes.
 5      Q    Okay.  So then would you agree with me, sir,
 6 based on your prior experience, that a digital sound
 7 recording could basically be copied an infinite amount
 8 of times without suffering any degradation and sound
 9 quality?
10           MR. BEGAKIS:  Same objections.
11           THE WITNESS:  I believe that the most
12 important piece of the sound recording is the actual
13 master, which holds all the stamps, all the individual
14 tracks.  From there, you can -- you can modify that,
15 and, yes, create endless numbers of copies off of the
16 mother master.
17 BY MR. BERMAN:
18      Q    Do you have any documents or any -- withdrawn.
19           Do you have any documents in writing that
20 would memorialize any agreement or understanding between
21 Hyphy and the band that Hyphy would own any master
22 recordings as you just described them of the albums?
23           MR. BEGAKIS:  Objection.  Objection.
24 Asked and answered.
25           MR. BERMAN:  Definitely not.  But you
```



```
                  JOSE MARTINEZ - JULY 26, 2022                126
 1   could answer.
 2              THE WITNESS:  I have a general and
 3   precise understanding of everyone involved as a
 4   contributor, that that was the situation.  It was not
 5   written, however, the agreement still exists.  That was
 6   everyone's mutual understanding that Hyphy was to be the
 7   owner under a buyout clause, which the band demanded a
 8   certain amount of money in exchange for their rights.
 9              And we have the check stubs to support
10   it.  Every single dollar was issued to the band in
11   exchange for the rights.
12   BY MR. BERMAN:
13       Q    Did you ever send any sort of correspondence
14   to Yellowcake demanding the return of any alleged master
15   recordings of the album?
16       A    No.  But we'd like them back.
17       Q    Well, you don't own them, so you're not
18   entitled to them.
19              MR. BEGAKIS:  Objection.  Argumentative,
20   badgering the witness.  Stick with your BS move to
21   strike statements that mean absolutely nothing, Counsel.
22   BY MR. BERMAN:
23       Q    Who created the artwork for the four albums
24   that were -- or for the albums that were -- withdrawn.
25       A    Marcelino Mendoza.
```

