**ABRAMS FENSTERMAN, LLP**
Seth L. Berman, Esq. (*admitted pro hac vice*)
    sberman@abramslaw.com
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Telephone: 516.328.2300
Facsimile: 516.328.6638

**HEFNER STARK & MAROIS, LLP**
Thomas P. Griffin Jr., Esq. (SBN 155133)
    tgriffin@hsmlaw.com
2150 River Plaza Drive, Suite 450
Sacramento, CA  95833
Telephone: 916.925.6620
Facsimile: 916.925.1127

Attorneys for Plaintiff YELLOWCAKE, INC., and Counterdefendants
YELLOWCAKE, INC., COLONIZE MEDIA, INC., and JOSE DAVID
HERNANDEZ

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELLOWCAKE, INC., California corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>HYPHY MUSIC, INC.,<br><br>                    Defendant. | **Case No.: 1:20-cv-00988-AWI-BAM**<br><br>[Assigned to the Hon. Jennifer L. Thurston]<br><br>**PLAINTIFF'S AND COUNTER-DEFENDANTS' RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED FACTS** |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| HYPHY MUSIC, INC., | Date:  June 27, 2023 |
| | Time: 9:00 a.m. |
| Counterclaimant, | Dept.: Courtroom 4 (7th Floor) |
| | 2500 Tulare Street |
| v. | Fresno, CA 93721 |
| | Judge: Hon. Jennifer L. Thurston |
| YELLOWCAKE, INC.; COLONIZE MEDIA, INC; JOSE DAVID HERNANDEZ; and JESUS CHAVEZ SR, | |
| Counter-Defendants. | |

In accordance with Local Rule 56-260(a) of this Court, Plaintiff and Counterdefendant, Yellowcake, Inc. ("Yellowcake"), and Counterdefendants, Colonize Media, Inc. ("Colonize") and Jose David Hernandez ("Hernandez"), submit the following Response (the "Response") to Defendant and Counterplaintiff Hyphy Music, Inc.'s ("Hyphy") Separate Statement of Undisputed Facts In Support of Defendant/Counterclaimant's Motion for Summary Judgment.  For the Court's convenience Yellowcake, Colonize and Hernandez will adopt Hyphy's defined terms unless otherwise indicated for the purpose of this Response only.

## I.    THE COMPLAINT MUST BE DISMISSED

### A.    Yellowcake's First Claim For Copyright Infringement Fails Because Yellowcake Does Not Have Standing to Sue Hyphy

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 1.  Defendant/Counterclaimant HYPHY MUSIC, INC. ("***Hyphy***") | Undisputed. |

2

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings, coupled with artwork.<br><br>Declaration of John Begakis ("**Begakis Decl.**") at ¶ 8, Exhibit "G" thereto, Jose Martinez Deposition Transcript ("**Martinez Depo**") at 13:6-14:6. | |
| 2. Counter-Defendant JESUS CHAVEZ, SR ("**Chavez**") is the lead singer of the Spanish-language musical group Los Originales De San Juan (the "**Group**").<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Jesus Chavez, Sr. Deposition, Volume I ("**Chavez Depo I**") at 25:13-14; Begakis Decl. at ¶ 14, Exhibit "M" thereto, Jesus Chavez, Sr. Deposition, Volume II ("**Chavez Depo II**") at 16:22-17:5. | Undisputed that Chavez is the lead singer when he performs with his backing band, Los Originales De San Juan, and he recorded the six albums that is the subject of this action, titled: (i) *Los Originales de San Juan- "El Campesino"*; (ii) *Los Originales de San Juan-"Corridos de Poca M"*; (iii) *Los Originales de San Juan-"En Vivo Desde La Cantina de Mi Barrio"*; (iv) *Los Originales de San Juan-"Nuestra Historia En Vivo"*; (v) *Los Originales de San Juan- "Amigos y Contrarios"*; and (vi) *Los Originales de San Juan-"Naci Con Suerte de Rey Con Mariachi"* (collectively "Albums").<br><br>Disputes to the extent it implies lead singer was Chavez's only role in Los Originales De San Juan. Chavez is Los Originales De San Juan's sole founder, and principal. Chavez Decl., Dkt. 46-2 at ¶ 3; Defendants' Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same).<br><br>Chavez was the sole producer, sole |

3

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Declaration of Jesus Chavez, Sr. (the "Chavez Decl."), Dkt. 46-2 at ¶¶ 8-21; Declaration of Hector Rosales (the "Rosales Decl."), Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*). |
| 3.  The Group operates as a co-equal partnership comprised of Chavez and fellow band members Domingo Torres Flores ("***Flores***"), who plays the accordion, and Alfonso Vargas ("***Vargas***"), who plays the drums.  Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:16-19:3, 20:8-16, 21:16-19; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Deposition Transcript of Alfonso Vargas ("***Vargas Depo***") at 17:16-19, 27:17-22, 143:14-16; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Deposition Transcript of Domingo Torres Flores ("***Flores Depo***") at 47:15-25, 48:19-23. | Undisputed Flores formerly played the accordion, and that Vargas formerly played the drums at times for Chavez when Chavez performed with his backing band, Los Originales De San Juan.  Disputes that either Flores or Vargas were co-equal partners in Los Originales De San Juan.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*). |
| 4.  In or about February 2013, Hyphy and the Group began working together to co-create various sound recordings to be embodied on | Disputes the Albums were created pursuant to the alleged Agreement.  In or about 2013, Chavez, and Chavez alone, entered into an oral distribution |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| multiple albums, which they orally agreed were to be owned by Hyphy (the "**Agreement**"). | agreement, not an oral recording agreement, with Hyphy.  Chavez Decl., Dkt. 46-2 at ¶ 7. |
| Declaration of Jose Martinez ("**Martinez Decl.**") at ¶ 3; Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 34:7-11; Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 19:14-17, 32:16-20, 35:12-21. | The cited deposition testimony of Chavez does not support statement #4 inasmuch as Chavez's testimony that an Album was recorded "with Hyphy" refers to such Album as being part of the distribution agreement between Chavez and Hyphy. |
| | Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez.  Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17. |
| | Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, <u>repeatedly</u>, under penalty of perjury, in his Declaration in support of Reply to Counter-Defendants' Challenge to the Validity of Certain Copyright Registrations (the "August 2021 Martinez Reply Decl."), that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8. |
| | Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims (the "Hyphy |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Opp. To MTD"), Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; Hyphy's Reply to Counterdefendants' Challenge to the Validity of Certain Copyright Registrations (the "August 2021 Hyphy Reply"), Dkt. 45 at pg. 1 lns. 16-18.

Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).

Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.

Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 5.  The albums created pursuant to the Agreement were entitled (1) "Amigos y Contrarios"; (2) | Disputes.  Six, not five, albums are the subject of Yellowcake's claims, *i.e.*, the six "Albums" identified in Yellowcake's |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La Cantina de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the ***Los Originales Albums***" or "***Albums***").<br><br>Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23, 51:22-25. | response #2 above.  Further disputes the Albums were created pursuant to the alleged Agreement.  In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy.  Chavez Decl., Dkt. 46-2 at ¶ 7.<br><br>Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez.  Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17.<br><br>Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, <u>repeatedly</u>, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez.  August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8.<br><br>Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18.<br><br>Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 6. One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded by Chavez.<br><br>Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:24:-9, 154:11-155:25. | Undisputed. |
| 7. Though this Agreement was not initially memorialized in writing, Flores and Vargas understood that such Agreement existed. | Disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, entered into an oral distribution |

8

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Martinez Decl. at ¶ 5. Declaration of Domingo Torres Flores ("**Flores Decl.**") at ¶ 3; Declaration of Alfonso Vargas ("**Vargas Decl.**") at ¶ 3. | agreement, not an oral recording agreement, with Hyphy.  Chavez Decl., Dkt. 46-2 at ¶ 7.<br><br>Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez.  Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17.<br><br>Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, <u>repeatedly</u>, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8.<br><br>Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18.<br><br>Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Albums. Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 8.  Flores and Vargas, as co-equal members of the Group, also intended that all rights in and to their recording services rendered pursuant to the Agreement be conveyed Hyphy.<br><br>Martinez Decl. at ¶ 4. Flores Decl. at ¶¶ 3-5; Vargas Decl. at ¶¶ 3-5. | Disputes that either Flores or Vargas were co-equal partners in Los Originales De San Juan.<br><br>Disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy. Chavez Decl., Dkt. 46-2 at ¶ 7.<br><br>The Vargas Decl. and the Flores Decl. cited by Hyphy does not support statement # 8 inasmuch as neither declarant states he is a "co-equal" member of Los Originales de San Juan, or state anything else therein that has a |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
|  | similar meaning to the quoted language. They merely state they provided backing musician services by playing their instrument in the creation of the Albums; they do not state that they personally provided any original or creative material that was incorporated into the sound recordings of the Albums, or provide any description of same.  *See generally* Florez Decl.; Vargas Decl.<br><br>Chavez is Los Originales De San Juan's sole founder, and principal.  Chavez Decl., Dkt. 46-2 at ¶ 3; Defendants' Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same).<br><br>Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*). |
| 9.  Flores and Vargas also later confirmed their belief and intent to convey all rights to Hyphy by executing enforceable Copyright Assignment Agreements on or about March 22, 2022 (collectively, the "***Assignments***"). | Disputes Florez and Vargas possessed any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Martinez Decl. at ¶ 5, Exhibit "A" thereto. | Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*). |
| | Prior to 2019 Chavez had never agreed to alienate any of his ownership interest in the Albums to anyone.  Chavez Decl., Dkt. 46-2 at ¶¶ 14.  On or about March 21, 2019, Chavez sold the entirety of his rights, title and interest in the copyrights of the sound recordings of the Albums to Yellowcake. Chavez Decl., Dkt. 46-2 at ¶¶ 15; Asset Purchase Agreement, Dkt. 83-3. |
| 10. It should be noted here that Flores and Vargas were plainly joint authors of the Albums, including based on the fact that Flores and Vargas were equally involved in all activities of the Band, which existed as an unincorporated partnership in which all Band members were joint owners, participants and contributors.<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:23-19:3; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | Disputes that either Flores or Vargas were joint authors in the Albums, that they were equally involved in all of Los Originales De San Juan's activities or that same existed as an unincorporated partnership in which all members were joint owners, participants and contributors, and any of their related testimony is self-serving and conclusory.<br><br>Disputes the Albums were created pursuant to the alleged Agreement.  In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy.  Chavez Decl., Dkt. 46-2 at ¶ 7.<br><br>The testimony cited by Hyphy does not support statement # 10 inasmuch as neither Flores nor Vargas testifies they were involved in all activities of Los |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Originales de San Juan, or that they personally provided any original or creative material that was incorporated into the sound recordings of the Albums, or provide any description of same.

Chavez is Los Originales De San Juan's sole founder, and principal. Chavez Decl., Dkt. 46-2 at ¶ 3; Defendants' Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same).

Florez and Vargas did not possess any alienable right, title or interest in the Albums. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| 11. It should be noted here that Flores and Vargas were plainly joint authors of the Albums, including based on the fact that Flores and Vargas were equally credited on all Albums in which each of them made contributions.

*See* Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at | Disputes that either Flores or Vargas were joint authors in the Albums or contributed to their creation, or that they were equally credited on the Albums and any of their related testimony is self-serving and conclusory.

Disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording |

13
SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| ¶ 12, Exhibit "K" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | agreement, with Hyphy.  Chavez Decl., Dkt. 46-2 at ¶ 7. The testimony cited by Hyphy does not support statement # 11 inasmuch as neither Flores nor Vargas testifies they personally provided any original or creative material that was incorporated into the sound recordings of the Albums, or provide any description of same.<br><br>Chavez is Los Originales De San Juan's sole founder, and principal.  Chavez Decl., Dkt. 46-2 at ¶ 3; Defendants' Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same).<br><br>Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| 12. It should be noted here that Flores and Vargas were plainly joint authors of the Albums, including based on the fact that Flores and Vargas shared equally in all profits of the Band, and were granted equal access to inspect all records related | Disputes that either Flores or Vargas were joint authors in the Albums, or that they shared equally in the profits of Los Originales De San Juan or were granted equal access to inspect records.<br><br>Disputes the Albums were created |

14

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| to the Band's receipt of all such profits.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 20:20-21:16, 26:13-20, 31:8-16, 33:18-34:1, 38:8-18, 41:13-42:2; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | pursuant to the alleged Agreement.  In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy.  Chavez Decl., Dkt. 46-2 at ¶ 7.<br><br>The Vargas Decl. and the Flores Decl. cited by Hyphy does not support statement # 8 inasmuch as neither declarant states he is a "co-equal" member of Los Originales de San Juan, or state anything else therein that has a similar meaning to the quoted language. They merely state they provided backing musician services by playing their instrument in the creation of the Albums; they do not state that they personally provided any original or creative material that was incorporated into the sound recordings of the Albums, or provide any description of same.  *See generally* Florez Decl.; Vargas Decl.<br><br>Chavez is Los Originales De San Juan's sole founder, and principal.  Chavez Decl., Dkt. 46-2 at ¶ 3; Defendants' Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same).<br><br>Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*).<br><br>The cited deposition testimony of Chavez does not support statement #12 inasmuch as he testified that he paid Vargas and Flores a weekly salary. |
| 13. Yellowcake is a competing record label and distributor of sound recordings, utilizing Colonize as its "distribution arm" to release and exploit rights that Yellowcake acquires.<br><br>Begakis Decl. at ¶ 9, Exhibit "H" thereto, Deposition Transcript of Kevin Berger (***"Berger Depo"***) at 91:19-23; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Deposition Transcript of Jose David Hernandez, Volume I (***"Hernandez Depo I"***) at 77:19-21. | Disputes. Yellowcake is primarily engaged in the business of, among other things, purchasing, owning, licensing and exploiting intellectual property rights. Declaration of Kevin Berger (the "Berger Decl."), Dkt. 82-14 at ¶ 3. Colonize is a digital music distributor that enters into contracts with numerous different record labels and performers. Declaration of Jose David Hernandez (the "Hernandez Decl."), Dkt. 82-16 at ¶¶ 3-6. Yellowcake and Colonize are two completely separate entities with two different owners. |
| 14. Hernandez is a co-owner of both Yellowcake and Colonize.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 51:9-11, 116:18-117:14. | Undisputed that Hernandez is an owner of Colonize and that he once was an owner of Yellowcake. |
| 15. In his position as co-owner of both Yellowcake and Colonize, Hernandez has admitted that both entities have operated – and continue to operate – as one single economic entity, with common ownership, common business operations, common office space, | Disputes. The cited deposition testimony of Hernandez does not support statement #15 inasmuch as Hernandez testified that Colonize "gets some stuff of value" for distributing Yellowcake's music. Hernandez Depo I at 80:13. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| common staff, and many other common resources.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 80:3-20. | |
| 16. In or about March 2019, Hernandez approached Chavez about selling the Los Originales Albums to Yellowcake.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 148:24-149:5. | Disputes.  The cited deposition testimony of Chavez does not support statement #16 inasmuch as Chavez testified he does not remember when Hernandez approached him, but it was in the year 2020 (Chavez Depo I at 78:9-25).  The cited deposition testimony of Hernandez does not support statement #16 inasmuch as Hernandez does not testify that he approached Chavez, and he testifies "it could have been 2018" when he first discussed with Chavez purchasing the Albums (Hernandez Depo I at 148:24-149:5).<br><br>On or about March 21, 2019, Chavez sold the entirety of his rights, title and interest in the copyrights of the sound recordings of the Albums to Yellowcake. Chavez Decl., Dkt. 46-2 at ¶¶ 15; Asset Purchase Agreement, Dkt. 83-3. |
| 17. Hernandez had previously worked with Hyphy and had secretly gained valuable information on Hyphy's business and relationship with Chavez. Hernandez therefor knew that Hyphy only had an oral agreement with the Group.<br><br>Martinez Decl. at ¶ 3; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 26:2-12. | Disputes.  Hernandez never worked for Hyphy, and statement # 17 is unsubstantiated and self-serving.<br><br>The cited paragraph in the Martinez Decl. stating that Hernandez "used to work with Hyphy" and therefore "obtained valuable information . . . including the knowledge Hyphy's Agreement with the Group was oral" is misleading because Martinez testified Hernandez was merely an initial third-party distributor of Hyphy music |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | (Martinez Depo. at 26:6-12), and such statement is pure speculation as Martinez also testified that Hyphy's business dealings with Hernandez began and ended in 2010, <u>approximately three years prior to the existence of the alleged oral agreement</u> (Martinez Depo. at 15:10-15, 26:20-23). |
| 18. Hernandez approached and convinced Chavez, without Hyphy or the rest of the Group's knowledge, to assign the Albums to Yellowcake in exchange for payment of $500,000.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 80:5-13, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 107:4-20. | Disputes.  The cited testimony of Chavez does not refer to any knowledge his backing musicians may or may not have had regarding the alleged conversation.  Moreover, Chavez testified that the alleged transaction was a purchase, not an assignment.  The cited testimony of Hernandez is unrelated to statement #18.<br><br>Further disputes to the extent statement # 18 implies that anyone other than Chavez possessed the right to convey any right in the Albums.  Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez.  Defendant's Counterclaim, Dkt. 17 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17.<br><br>Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, <u>repeatedly</u>, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8. |

18

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18. |
| | Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| | Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10. |
| | Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 19. Chavez and Yellowcake codified their purported agreement via an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019 (the "***Asset Purchase Agreement***"). <br><br> Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF000021-PLF000039). | Undisputed Chavez and Yellowcake entered into the Asset Purchase Agreement set forth at Dkt. 83-3. |
| 20. In Section 13.e. of the Asset Purchase Agreement, Chavez represented and warranted to Yellowcake that Chavez was "the only owner of" the Albums, and possessed "good and marketable title" thereto at the time of sale. <br><br> Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF00024). | Undisputed. |
| 21. Chavez, however, never obtained signed written agreements from Flores, Vargas or Hyphy acquiring each party's respective contributions to, and rights in, the Albums and sound recordings embodied thereon. <br><br> Begakis Decl. at ¶ 6, Exhibit "E" thereto, Yellowcake Interrogatory Responses at pp. 4-5; Begakis Decl. at ¶ 7, Exhibit "F" thereto, Yellowcake Responses to Request for Production at p. 4. | Disputes statement #21 because it incorrectly assumes Flores, Vargas and Hyphy possessed "respective contributions to, and rights in, the Albums and sound recordings embodied thereon"; which they did not. <br><br> Further disputes to the extent statement # 21 implies that anyone other than Chavez possessed the right to convey any right in the Albums.  Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez.  Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ |

20

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | 15-17.

Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, repeatedly, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8.

Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18.

Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).

Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |

**B.    Yellowcake's First Claim for Copyright Infringement Fails Because Hyphy Is A Joint Owner In The Albums**

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 22. Defendant/Counterclaimant HYPHY MUSIC, INC. ("*Hyphy*") is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings, coupled with artwork.<br><br>Declaration of John Begakis ("*Begakis Decl.*") at ¶ 8, Exhibit "G" thereto, Jose Martinez Deposition Transcript ("*Martinez Depo*") at 13:6-14:6. | Undisputed. |
| 23. Counter-Defendant JESUS CHAVEZ, SR ("*Chavez*") is the lead singer of the Spanish-language musical group Los Originales De San Juan (the "*Group*"). | Undisputed that Chavez is the lead singer when he performs with his backing band, Los Originales De San Juan, and he recorded the six albums that is the subject of this action, titled: (i) *Los Originales de San Juan- "El* |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Begakis Decl. at ¶ 13, Exhibit "L" thereto, Jesus Chavez, Sr. Deposition, Volume I ("***Chavez Depo I***") at 25:13-14; Begakis Decl. at ¶ 14, Exhibit "M" thereto, Jesus Chavez, Sr. Deposition, Volume II ("***Chavez Depo II***") at 16:22-17:5. | *Campesino"*; (ii) *Los Originales de San Juan-"Corridos de Poca M"*; (iii) *Los Originales de San Juan-"En Vivo Desde La Cantina de Mi Barrio"*; (iv) *Los Originales de San Juan-"Nuestra Historia En Vivo"*; (v) *Los Originales de San Juan- "Amigos y Contrarios"*; and (vi) *Los Originales de San Juan-"Naci Con Suerte de Rey Con Mariachi"* (collectively "Albums"). |
| | Disputes to the extent it implies lead singer was Chavez's only role in Los Originales De San Juan. Chavez is Los Originales De San Juan's sole founder, and principal. Chavez Decl., Dkt. 46-2 at ¶ 3; Defendants' Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same). |
| | Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Declaration of Jesus Chavez, Sr. (the "Chavez Decl."), Dkt. 46-2 at ¶¶ 8-21; Declaration of Hector Rosales (the "Rosales Decl."), Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| 24. The Group operates as a co-equal partnership comprised of Chavez and fellow band members Domingo | Undisputed Flores formerly played the accordion, and that Vargas formerly played the drums at times for Chavez |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Torres Flores ("**Flores**"), who plays the accordion, and Alfonso Vargas ("**Vargas**"), who plays the drums.<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:16-19:3, 20:8-16, 21:16-19; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Deposition Transcript of Alfonso Vargas ("**Vargas Depo**") at 17:16-19; 27:17-22; 143:14-16; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Deposition Transcript of Domingo Torres Flores ("**Flores Depo**") at 47:15-25, 48:19-23. | when Chavez performed with his backing band, Los Originales De San Juan.<br><br>Disputes that either Flores or Vargas were co-equal partners in Los Originales De San Juan. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| 25. In or about February 2013, Hyphy and the Group began working together to co-create various sound recordings to be embodied on multiple albums, which they orally agreed were to be owned by Hyphy (the "**Agreement**").<br><br>Declaration of Jose Martinez ("**Martinez Decl.**") at ¶ 3; Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 34:7-11; Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 19:14-17, 32:16-20, 35:12-21. | Disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy. Chavez Decl., Dkt. 46-2 at ¶ 7.<br><br>The cited deposition testimony of Chavez does not support statement #4 inasmuch as Chavez's testimony that an Album was recorded "with Hyphy" refers to such Album as being part of the distribution agreement between Chavez and Hyphy.<br><br>Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez. Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; |

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17.

Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, repeatedly, under penalty of perjury, in his Declaration in support of Reply to Counter-Defendants' Challenge to the Validity of Certain Copyright Registrations (the "August 2021 Martinez Reply Decl."), that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8.

Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez. Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims (the "Hyphy Opp. To MTD"), Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; Hyphy's Reply to Counterdefendants' Challenge to the Validity of Certain Copyright Registrations (the "August 2021 Hyphy Reply"), Dkt. 45 at pg. 1 lns. 16-18.

Florez and Vargas did not possess any alienable right, title or interest in the Albums. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7- |

25

SEPARATE STATEMENT OF UNDISPUTED FACTS

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | 10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| | Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10. |
| | Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 26. The albums created pursuant to the Agreement were entitled (1) "Amigos y Contrarios"; (2) "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La Cantina de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the "***Los Originales Albums***" or "***Albums***").<br><br>Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23, 51:22-25. | Disputes.  Six, not five, albums are the subject of Yellowcake's claims, *i.e.*, the six "Albums" identified in Yellowcake's response #2 above.  Further disputes the Albums were created pursuant to the alleged Agreement.  In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy. Chavez Decl., Dkt. 46-2 at ¶ 7.<br><br>Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez.  Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17. |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, <u>repeatedly</u>, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8.

Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez. Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18.

Florez and Vargas did not possess any alienable right, title or interest in the Albums. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).

Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 27. One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded by Chavez.<br><br>Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:24:-9, 154:11-155:25. | Undisputed. |
| 28. Unlike larger record labels, however, Hyphy closely collaborated with the Group to create the Albums.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-76:25, 83:11-84:22, 84:24-85:8, 85:14-86:16. | Disputes.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 29. For the first three (of five) of the Los Originales Albums, Hyphy helped determine the "theme" and overall creative direction of each Album.<br><br>Martinez Decl. at ¶ 6. | Disputes. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 30. For the first three (of five) of the Los Originales Albums, Hyphy | Disputes. The deposition transcript testimony cited by Hyphy does not |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| selected the songs to be included in each Album.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 83:11-84:22. | support statement # 30 inasmuch as such testimony relates only to the album titled, "*Corridos de Poca M.*"<br><br>Moreover, Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -"*Naci Con Suerte de Rey Con Mariachi*").<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 31. For the first three (of five) of the Los Originales Albums, Hyphy selected the recording studio, and paid for all costs associated with the recording of each Album.<br><br>Martinez Decl. at ¶ 6. | Disputes.  In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy (Chavez Decl., Dkt. 46-2 at ¶ 7) whereby Hyphy paid for recording costs as part of such agreement. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Moreover, Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| | Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10. |
| | Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 32.  For the first three (of five) of the Los Originales Albums, Hyphy hired the sound engineer.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 59:21-60:7, 61:10-16. | Disputes.  The deposition transcript testimony cited by Hyphy does not support statement # 32 inasmuch as it does not refer to who hired Hector Rosales, who was the audio engineer for the recording of "Amigos y Contrarios," "Corridos de Poca M," and "El Campesino."<br><br>Hector Rosales was engaged by Chavez |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | to act as audio engineer for the Albums. Rosales Decl., Dkt. 46-1 at ¶ 5. |
| 33. For the first three (of five) of the Los Originales Albums, Hyphy paid the Group a substantial amount for recording the Albums.<br><br>Martinez Decl. at ¶ 6. | Disputes.  In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy, who paid Chavez in accordance with the terms of their oral distribution agreement (Chavez Decl., Dkt. 46-2 at ¶ 7). |
| 34. And for the first three (of five) of the Los Originales Albums, Hyphy oversaw and generally supervised the recording and production of each Album.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 85:14-86:16. | Disputes.  The cited deposition testimony of Martinez does not support statement #34 inasmuch as he testified Hyphy was merely "engaged" in production.  Martinez Depo. at 86:7, 86:15.<br><br>Moreover, Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10. |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 35.  For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also selected and paid for the venue of the live performance.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | Disputes.  The cited deposition testimony of Martinez does not support statement #35 inasmuch as such testimony does not relate to the selection and payment for any venue.<br><br>Moreover, Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 36. For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also selected the songs to be performed at the live performance and recorded for the Albums.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | Disputes.  The cited deposition testimony of Martinez does not support statement #36 inasmuch as such testimony does not relate to the selection of songs at a live performance.<br><br>Moreover, Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums.  Chavez Decl., Dkt. Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 37. For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also directly employed, supervised, and directed | Disputes.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| the services of the sound engineer and videographer who each recorded the audio and video of the live performance, respectively.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19.<br><br>Disputes.  Statement #38 constitutes a self-serving and unsubstantiated statement, which is also inadmissible because there is no evidence of Hyphy's personal knowledge of the activities of any sound engineer or videographer who recorded any live performances. |
| 38. For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also wrote a script for the history of the band as presented at the live performance, and hired a "MC"/commentator who narrated the script. | Disputes.  Statement #38 constitutes a self-serving and unsubstantiated statement.  The cited deposition testimony of Martinez does not support statement #38 inasmuch as such testimony does not relate to the writing or narration of any script. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | |
| 39. For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also re-recorded whole portions of the guitarist's contributions to the live performance afterwards, using a new guitarist selected, hired and paid for by Hyphy.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | Disputes.  Statement #39 constitutes a self-serving and unsubstantiated statement, which is also irrelevant to Hyphy's claims of ownership of the recordings.  The cited deposition testimony of Martinez does not support statement #39 inasmuch as such testimony does not relate to the re-recording of any guitarist's contributions. |
| 40. In addition to its original creative contributions to the production, recording and overall creation of the Los Originales Albums, Hyphy also designed and created the artwork featured on the cover of each Album (the "***Album Artwork***").<br><br>Martinez Decl. at ¶ 7; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 127:12-21. | Disputes.  The cited deposition testimony of Martinez, and the interrogatory response referred to therein, does not support statement #40 inasmuch as such testimony states the Album Artwork  was designed and created by Marcelino Mendoza, an independent contractor.<br><br>Further disputes to the extent statement #40 claims that Hyphy provided "original creative contributions to the production, recording and overall creation of the Los Originales Albums." Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 41. Yellowcake is a competing record label and distributor of sound recordings, utilizing Colonize as its "distribution arm" to release and exploit rights that Yellowcake acquires.<br><br>Begakis Decl. at ¶ 9, Exhibit "H" thereto, Deposition Transcript of Kevin Berger ("***Berger Depo***") at 91:19-23; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Deposition Transcript of Jose David Hernandez, Volume I ("***Hernandez Depo I***") at 77:19-21. | Disputes. Yellowcake is primarily engaged in the business of, among other things, purchasing, owning, licensing and exploiting intellectual property rights. Declaration of Kevin Berger (the "Berger Decl."), Dkt. 82-14 at ¶ 3. Colonize is a digital music distributor that enters into contracts with numerous different record labels and performers. Declaration of Jose David Hernandez (the "Hernandez Decl."), Dkt. 82-16 at ¶¶ 3-6. Yellowcake and Colonize are two completely separate entities with two different owners. |
| 42. Hernandez is a co-owner of both Yellowcake and Colonize.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 51:9-11, 116:18-117:14. | Undisputed that Hernandez is an owner of Colonize and that he once was an owner of Yellowcake. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 43. In his position as co-owner of both Yellowcake and Colonize, Hernandez has admitted that both entities have operated – and continue to operate – as one single economic entity, with common ownership, common business operations, common office space, common staff, and many other common resources.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 80:3-20. | Disputes. The cited deposition testimony of Hernandez does not support statement #43 inasmuch as Hernandez testified that Colonize "gets some stuff of value" for distributing Yellowcake's music. Hernandez Depo I at 80:13. |
| 44. In or about March 2019, Hernandez approached Chavez about selling the Los Originales Albums to Yellowcake.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 148:24-149:5. | Disputes. The cited deposition testimony of Chavez does not support statement #44 inasmuch as Chavez testified he does not remember when Hernandez approached him, but it was in the year 2020 (Chavez Depo I at 78:9-25). The cited deposition testimony of Hernandez does not support statement #44 inasmuch as Hernandez does not testify that he approached Chavez, and he testifies "it could have been 2018" when he first discussed with Chavez purchasing the Albums (Hernandez Depo I at 148:24-149:5).<br><br>On or about March 21, 2019, Chavez sold the entirety of his rights, title and interest in the copyrights of the sound recordings of the Albums to Yellowcake. Chavez Decl., Dkt. 46-2 at ¶¶ 15; Asset Purchase Agreement, Dkt. 83-3. |
| 45. Hernandez had previously worked with Hyphy and had secretly gained valuable information on Hyphy's business and relationship with | Disputes. Hernandez never worked for Hyphy, and statement # 45 is unsubstantiated and self-serving. |

38

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Chavez. Hernandez therefor knew that Hyphy only had an oral agreement with the Group.<br><br>Martinez Decl. at ¶ 3; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 26:2-12. | The cited paragraph in the Martinez Decl. stating that Hernandez "used to work with Hyphy" and therefore "obtained valuable information . . . including the knowledge Hyphy's Agreement with the Group was oral" is misleading because Martinez testified Hernandez was merely an initial third-party distributor of Hyphy music (Martinez Depo. at 26:6-12), and such statement is pure speculation as Martinez also testified that Hyphy's business dealings with Hernandez began and ended in 2010, <u>approximately three years prior to the existence of the alleged oral agreement</u> (Martinez Depo. at 15:10-15, 26:20-23). |
| 46. Hernandez approached and convinced Chavez, without Hyphy or the rest of the Group's knowledge, to assign the Albums to Yellowcake in exchange for payment of $500,000.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 80:5-13, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 107:4-20. | Disputes.  The cited testimony of Chavez does not refer to any knowledge his backing musicians may or may not have had regarding the alleged conversation.  Moreover, Chavez testified that the alleged transaction was a purchase, not an assignment.  The cited testimony of Hernandez is unrelated to statement #46.<br><br>Further disputes to the extent statement # 46 implies that anyone other than Chavez possessed the right to convey any right in the Albums.  Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez.  Defendant's Counterclaim, Dkt. 17 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, <u>repeatedly</u>, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8.

Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18.

Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).

Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 47. Chavez and Yellowcake codified their purported agreement via an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019 (the "**Asset Purchase Agreement**").<br><br>Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF000021-PLF000039). | Undisputed Chavez and Yellowcake entered into the Asset Purchase Agreement set forth at Dkt. 83-3. |
| 48. Chavez may have been the lead singer, but the instrumentation of the recordings is a major factor in their appeal, as Hyphy has confirmed.<br><br>Martinez Decl. at ¶ 3; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo. at 111:24-112:3. | Disputed. This is a self-serving opinion and characterization. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - "*Naci Con Suerte de Rey Con Mariachi*").<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.

Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |

**C.    Yellowcake's First Claim For Copyright Infringement Fails Because Yellowcake Has No Provable Damages**

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 49. Defendant/Counterclaimant HYPHY MUSIC, INC. ("*Hyphy*") is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings, coupled with artwork.

Declaration of John Begakis ("*Begakis Decl.*") at ¶ 8, Exhibit "G" thereto, Jose Martinez Deposition Transcript ("*Martinez Depo*") at 13:6-14:6. | Undisputed. |
| 50. Counter-Defendant JESUS CHAVEZ, SR ("*Chavez*") is the lead singer of the Spanish-language musical group Los Originales De San Juan (the "*Group*"). | Undisputed that Chavez is the lead singer when he performs with his backing band, Los Originales De San Juan, and he recorded the six albums that is the subject of this action, titled: (i) *Los* |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Begakis Decl. at ¶ 13, Exhibit "L" thereto, Jesus Chavez, Sr. Deposition, Volume I ("*Chavez Depo I*") at 25:13-14; Begakis Decl. at ¶ 14, Exhibit "M" thereto, Jesus Chavez, Sr. Deposition, Volume II ("*Chavez Depo II*") at 16:22-17:5. | *Originales de San Juan- "El Campesino"*; (ii) *Los Originales de San Juan-"Corridos de Poca M"*; (iii) *Los Originales de San Juan-"En Vivo Desde La Cantina de Mi Barrio"*; (iv) *Los Originales de San Juan-"Nuestra Historia En Vivo"*; (v) *Los Originales de San Juan- "Amigos y Contrarios"*; and (vi) *Los Originales de San Juan-"Naci Con Suerte de Rey Con Mariachi"* (collectively "Albums").<br><br>Disputes to the extent it implies lead singer was Chavez's only role in Los Originales De San Juan. Chavez is Los Originales De San Juan's sole founder, and principal. Chavez Decl., Dkt. 46-2 at ¶ 3; Defendants' Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same).<br><br>Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Declaration of Jesus Chavez, Sr. (the "Chavez Decl."), Dkt. 46-2 at ¶¶ 8-21; Declaration of Hector Rosales (the "Rosales Decl."), Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*). |
| 51. The Group operates as a co-equal partnership comprised of Chavez and | Undisputed Flores formerly played the accordion, and that Vargas formerly |

43
SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| fellow band members Domingo Torres Flores ("**Flores**"), who plays the accordion, and Alfonso Vargas ("**Vargas**"), who plays the drums. | played the drums at times for Chavez when Chavez performed with his backing band, Los Originales De San Juan. |
| Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:16-19:3, 20:8-16, 21:16-19; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Deposition Transcript of Alfonso Vargas ("**Vargas Depo**") at 17:16-19; 27:17-22; 143:14-16; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Deposition Transcript of Domingo Torres Flores ("**Flores Depo**") at 47:15-25, 48:19-23. | Disputes that either Flores or Vargas were co-equal partners in Los Originales De San Juan. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - "*Naci Con Suerte de Rey Con Mariachi*"). |
| 52. In or about February 2013, Hyphy and the Group began working together to co-create various sound recordings to be embodied on multiple albums, which they orally agreed were to be owned by Hyphy (the "**Agreement**"). | Disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy. Chavez Decl., Dkt. 46-2 at ¶ 7. |
| Declaration of Jose Martinez ("**Martinez Decl.**") at ¶ 3; Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 34:7-11; Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 19:14-17, 32:16-20, 35:12-21. | The cited deposition testimony of Chavez does not support statement #52 inasmuch as Chavez's testimony that an Album was recorded "with Hyphy" refers to such Album as being part of the distribution agreement between Chavez and Hyphy. |
| | Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez. Defendant's |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Counterclaim, Dkt. 7 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17.

Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, repeatedly, under penalty of perjury, in his Declaration in support of Reply to Counter-Defendants' Challenge to the Validity of Certain Copyright Registrations (the "August 2021 Martinez Reply Decl."), that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8.

Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims (the "Hyphy Opp. To MTD"), Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; Hyphy's Reply to Counterdefendants' Challenge to the Validity of Certain Copyright Registrations (the "August 2021 Hyphy Reply"), Dkt. 45 at pg. 1 lns. 16-18.

Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). <br><br> Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10. <br><br> Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 53. The albums created pursuant to the Agreement were entitled (1) "Amigos y Contrarios"; (2) "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La Cantina de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the "***Los Originales Albums***" or "***Albums***"). <br><br> Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23, 51:22-25. | Disputes. Six, not five, albums are the subject of Yellowcake's claims, *i.e.*, the six "Albums" identified in Yellowcake's response #2 above. Further disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy. Chavez Decl., Dkt. 46-2 at ¶ 7. <br><br> Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez. Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; Defendant's First Amended |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Counterclaim, Dkt. 15 at ¶¶ 15-17.<br><br>Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, repeatedly, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8.<br><br>Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18.<br><br>Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 54. One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded by Chavez.<br><br>Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:24:-9, 154:11-155:25. | Undisputed. |
| 55. Though this Agreement was not initially memorialized in writing, Flores and Vargas understood that such Agreement existed.<br><br>Martinez Decl. at ¶ 5. Declaration of Domingo Torres Flores ("*Flores Decl.*") at ¶ 3; Declaration of Alfonso Vargas ("*Vargas Decl.*") at ¶ 3. | Disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy. Chavez Decl., Dkt. 46-2 at ¶ 7.<br><br>Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez. Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, <u>repeatedly</u>, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8.

Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18.

Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).

Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 56. Flores and Vargas, as co-equal members of the Group, also intended that all rights in and to their recording services rendered pursuant to the Agreement be conveyed Hyphy.<br><br>Martinez Decl. at ¶ 4. Flores Decl. at ¶¶ 3-5; Vargas Decl. at ¶¶ 3-5. | Disputes that either Flores or Vargas were co-equal partners in Los Originales De San Juan.<br><br>Disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy. Chavez Decl., Dkt. 46-2 at ¶ 7.<br><br>The Vargas Decl. and the Flores Decl. cited by Hyphy does not support statement # 56 inasmuch as neither declarant states he is a "co-equal" member of Los Originales de San Juan, or state anything else therein that has a similar meaning to the quoted language. They merely state they provided backing musician services by playing their instrument in the creation of the Albums; they do not state that they personally provided any original or creative material that was incorporated into the sound recordings of the Albums, or provide any description of same. *See generally* Florez Decl.; Vargas Decl. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Chavez is Los Originales De San Juan's sole founder, and principal. Chavez Decl., Dkt. 46-2 at ¶ 3; Defendants' Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same). |
| | Florez and Vargas did not possess any alienable right, title or interest in the Albums. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| 57. Flores and Vargas also later confirmed their belief and intent to convey all rights to Hyphy by executing enforceable Copyright Assignment Agreements on or about March 22, 2022 (collectively, the "***Assignments***"). <br><br> Martinez Decl. at ¶ 5, Exhibit "A" thereto. | Disputes Florez and Vargas possessed any alienable right, title or interest in the Albums. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). <br><br> Prior to 2019 Chavez had never agreed to alienate any of his ownership interest |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | in the Albums to anyone.  Chavez Decl., Dkt. 46-2 at ¶¶ 14.  On or about March 21, 2019, Chavez sold the entirety of his rights, title and interest in the copyrights of the sound recordings of the Albums to Yellowcake. Chavez Decl., Dkt. 46-2 at ¶¶ 15; Asset Purchase Agreement, Dkt. 83-3. |
| 58. Unlike larger record labels, however, Hyphy closely collaborated with the Group to create the Albums.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-76:25, 83:11-84:22, 84:24-85:8, 85:14-86:16. | Disputes.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 59. For the first three (of five) of the Los Originales Albums, Hyphy helped determine the "theme" and overall creative direction of each | Disputes.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Album.<br><br>Martinez Decl. at ¶ 6. | interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 60.  For the first three (of five) of the Los Originales Albums, Hyphy selected the songs to be included in each Album.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 83:11-84:22. | Disputes.  The deposition transcript testimony cited by Hyphy does not support statement # 60 inasmuch as such testimony relates only to the album titled, *"Corridos de Poca M."*<br><br>Moreover, Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | recording of -*"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 61.  For the first three (of five) of the Los Originales Albums, Hyphy selected the recording studio, and paid for all costs associated with the recording of each Album.<br><br>Martinez Decl. at ¶ 6. | Disputes.  In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy (Chavez Decl., Dkt. 46-2 at ¶ 7) whereby Hyphy paid for recording costs as part of such agreement.<br><br>Moreover, Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 62.  For the first three (of five) of the Los Originales Albums, Hyphy hired the sound engineer.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 59:21-60:7, 61:10-16. | Disputes.  The deposition transcript testimony cited by Hyphy does not support statement # 62 inasmuch as it does not refer to who hired Hector Rosales, who was the audio engineer for the recording of "Amigos y Contrarios," "Corridos de Poca M," and "El Campesino."<br><br>Hector Rosales was engaged by Chavez to act as audio engineer for the Albums. Rosales Decl., Dkt. 46-1 at ¶ 5. |
| 63.  For the first three (of five) of the Los Originales Albums, Hyphy paid the Group a substantial amount for recording the Albums.<br><br>Martinez Decl. at ¶ 6. | Disputes.  In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy, who paid Chavez in accordance with the terms of their oral distribution agreement (Chavez Decl., Dkt. 46-2 at ¶ 7). |
| 64.  And for the first three (of five) of the Los Originales Albums, Hyphy oversaw and generally supervised the recording and production of | Disputes.  The cited deposition testimony of Martinez does not support statement #64 inasmuch as he testified Hyphy was merely "engaged" in |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| each Album.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 85:14-86:16. | production.  Martinez Depo. at 86:7, 86:15.<br><br>Moreover, Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 65.  For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also selected and paid for the venue of the live performance.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at | Disputes.  The cited deposition testimony of Martinez does not support statement #65 inasmuch as such testimony does not relate to the selection and payment for any venue.<br><br>Moreover, Chavez was the sole producer, sole author and sole creator of |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - "*Naci Con Suerte de Rey Con Mariachi*").

Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.

Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 66.  For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also selected the songs to be performed at the live performance and recorded for the Albums.

Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | Disputes.  The cited deposition testimony of Martinez does not support statement #66 inasmuch as such testimony does not relate to the selection of songs at a live performance.

Moreover, Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*). |
| | Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10. |
| | Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 67. For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also directly employed, supervised, and directed the services of the sound engineer and videographer who each recorded the audio and video of the live performance, respectively.<br><br> Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | Disputes.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19.<br><br>Disputes.  Statement #41 constitutes a self-serving and unsubstantiated statement, which is also inadmissible because there is no evidence of Hyphy's personal knowledge of the activities of any sound engineer or videographer who recorded any live performances. |
| 68. For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also wrote a script for the history of the band as presented at the live performance, and hired a "MC"/commentator who narrated the script.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | Disputes.  Statement #68 constitutes a self-serving and unsubstantiated statement.  The cited deposition testimony of Martinez does not support statement #68 inasmuch as such testimony does not relate to the writing or narration of any script. |
| 69. For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also re-recorded whole portions of the guitarist's contributions to the live performance afterwards, using a new guitarist selected, hired and paid for by Hyphy. | Disputes.  Statement #69 constitutes a self-serving and unsubstantiated statement, which is also irrelevant to Hyphy's claims of ownership of the recordings.  The cited deposition testimony of Martinez does not support statement #69 inasmuch as such testimony does not relate to the re-recording of any guitarist's contributions. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | |
| 70. It should be noted here that Flores and Vargas were plainly joint authors of the Albums, including based on the fact that Flores and Vargas were equally involved in all activities of the Band, which existed as an unincorporated partnership in which all Band members were joint owners, participants and contributors.<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:23-19:3; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | Disputes that either Flores or Vargas were joint authors in the Albums, that they were equally involved in all of Los Originales De San Juan's activities or that same existed as an unincorporated partnership in which all members were joint owners, participants and contributors, and any of their related testimony is self-serving and conclusory.<br><br>Disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy. Chavez Decl., Dkt. 46-2 at ¶ 7.<br><br>The testimony cited by Hyphy does not support statement # 70 inasmuch as neither Flores nor Vargas testifies they were involved in all activities of Los Originales de San Juan, or that they personally provided any original or creative material that was incorporated into the sound recordings of the Albums, or provide any description of same.<br><br>Chavez is Los Originales De San Juan's sole founder, and principal. Chavez Decl., Dkt. 46-2 at ¶ 3; Defendants' Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same). |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
|  | Florez and Vargas did not possess any alienable right, title or interest in the Albums. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| 71. It should be noted here that Flores and Vargas were plainly joint authors of the Albums, including based on the fact that Flores and Vargas were equally credited on all Albums in which each of them made contributions.<br><br>*See* Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | Disputes that either Flores or Vargas were joint authors in the Albums or contributed to their creation, or that they were equally credited on the Albums and any of their related testimony is self-serving and conclusory.<br><br>Disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy. Chavez Decl., Dkt. 46-2 at ¶ 7.<br>The testimony cited by Hyphy does not support statement # 71 inasmuch as neither Flores nor Vargas testifies they personally provided any original or creative material that was incorporated into the sound recordings of the Albums, or provide any description of same.<br><br>Chavez is Los Originales De San Juan's sole founder, and principal. Chavez |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Decl., Dkt. 46-2 at ¶ 3; Defendants' Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same).<br><br>Florez and Vargas did not possess any alienable right, title or interest in the Albums. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*). |
| 72. It should be noted here that Flores and Vargas were plainly joint authors of the Albums, including based on the fact that Flores and Vargas shared equally in all profits of the Band, and were granted equal access to inspect all records related to the Band's receipt of all such profits.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 20:20-21:16, 26:13-20, 31:8-16, 33:18-34:1, 38:8-18, 41:13-42:2; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "K" thereto, | Disputes that either Flores or Vargas were joint authors in the Albums, or that they shared equally in the profits of Los Originales De San Juan or were granted equal access to inspect records.<br><br>Disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy. Chavez Decl., Dkt. 46-2 at ¶ 7.<br><br>The Vargas Decl. and the Flores Decl. cited by Hyphy does not support statement # 72 inasmuch as neither declarant states he is a "co-equal" |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | member of Los Originales de San Juan, or state anything else therein that has a similar meaning to the quoted language. They merely state they provided backing musician services by playing their instrument in the creation of the Albums; they do not state that they personally provided any original or creative material that was incorporated into the sound recordings of the Albums, or provide any description of same.  *See generally* Florez Decl.; Vargas Decl.

Chavez is Los Originales De San Juan's sole founder, and principal.  Chavez Decl., Dkt. 46-2 at ¶ 3; Defendants' Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same).

Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).

The cited deposition testimony of Chavez does not support statement #72 inasmuch as he testified that he paid |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Vargas and Flores a weekly salary. |
| 73. In addition to its original creative contributions to the production, recording and overall creation of the Los Originales Albums, Hyphy also designed and created the artwork featured on the cover of each Album (the "**Album Artwork**").<br><br>Martinez Decl. at ¶ 7; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 127:12-21. | Disputes.  The cited deposition testimony of Martinez, and the interrogatory response referred to therein, does not support statement #73 inasmuch as such testimony states the Album Artwork  was designed and created by Marcelino Mendoza, an independent contractor.<br><br>Further disputes to the extent statement #73 claims that Hyphy provided "original creative contributions to the production, recording and overall creation of the Los Originales Albums." Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
|  | else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 74. Hyphy released the Albums, with the Album Artwork, for distribution through all available digital service providers (the "**DSPs**") between 2013 and 2017.<br><br>Martinez Decl. at ¶ 8, Exhibit "B" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23; 51:18-25; 67:24-69:5. | Undisputed. |
| 75. Thereafter, Hyphy obtained copyright registrations for all of such Album Artwork.<br><br>Martinez Decl. at ¶ 9, Exhibit "C" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 133:9-136:5. | Disputes to the extent that statement #75 implies that the release dates of the various Albums through DSPs between 2013 and 2017 was proximate in time to the dates that Hyphy obtained copyright registration for the Album Artwork. Hyphy obtained all such registration in May 2020.  Martinez Depo at 133:9-136:5. |
| 76. Yellowcake is a competing record label and distributor of sound recordings, utilizing Colonize as its "distribution arm" to release and exploit rights that Yellowcake acquires.<br><br>Begakis Decl. at ¶ 9, Exhibit "H" thereto, Deposition Transcript of Kevin Berger ("**Berger Depo**") at 91:19-23; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Deposition Transcript of Jose David Hernandez, Volume I ("**Hernandez Depo I**") at 77:19-21. | Disputes.  Yellowcake is primarily engaged in the business of, among other things, purchasing, owning, licensing and exploiting intellectual property rights.  Declaration of Kevin Berger (the "Berger Decl."), Dkt. 82-14 at ¶ 3. Colonize is a digital music distributor that enters into contracts with numerous different record labels and performers. Declaration of Jose David Hernandez (the "Hernandez Decl."), Dkt. 82-16 at ¶¶ 3-6.  Yellowcake and Colonize are two completely separate entities with two different owners. |
| 77. Hernandez is a co-owner of both Yellowcake and Colonize. | Undisputed that Hernandez is an owner of Colonize and that he once was an |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 51:9-11, 116:18-117:14. | owner of Yellowcake. |
| 78. In his position as co-owner of both Yellowcake and Colonize, Hernandez has admitted that both entities have operated – and continue to operate – as one single economic entity, with common ownership, common business operations, common office space, common staff, and many other common resources.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 80:3-20. | Disputes.  The cited deposition testimony of Hernandez does not support statement #78 inasmuch as Hernandez testified that Colonize "gets some stuff of value" for distributing Yellowcake's music.  Hernandez Depo I at 80:13. |
| 79. In or about March 2019, Hernandez approached Chavez about selling the Los Originales Albums to Yellowcake.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 148:24-149:5. | Disputes.  The cited deposition testimony of Chavez does not support statement #79 inasmuch as Chavez testified he does not remember when Hernandez approached him, but it was in the year 2020 (Chavez Depo I at 78:9-25).  The cited deposition testimony of Hernandez does not support statement #79 inasmuch as Hernandez does not testify that he approached Chavez, and he testifies "it could have been 2018" when he first discussed with Chavez purchasing the Albums (Hernandez Depo I at 148:24-149:5).<br><br>On or about March 21, 2019, Chavez sold the entirety of his rights, title and interest in the copyrights of the sound recordings of the Albums to Yellowcake. Chavez Decl., Dkt. 46-2 at ¶¶ 15; Asset Purchase Agreement, Dkt. 83-3. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 80. Hernandez had previously worked with Hyphy and had secretly gained valuable information on Hyphy's business and relationship with Chavez. Hernandez therefor knew that Hyphy only had an oral agreement with the Group.<br><br>Martinez Decl. at ¶ 3; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 26:2-12. | Disputes.  Hernandez never worked for Hyphy, and statement # 80 is unsubstantiated and self-serving.<br><br>The cited paragraph in the Martinez Decl. stating that Hernandez "used to work with Hyphy" and therefore "obtained valuable information . . . including the knowledge Hyphy's Agreement with the Group was oral" is misleading because Martinez testified Hernandez was merely an initial third-party distributor of Hyphy music (Martinez Depo. at 26:6-12), and such statement is pure speculation as Martinez also testified that Hyphy's business dealings with Hernandez began and ended in 2010, <u>approximately three years prior to the existence of the alleged oral agreement</u> (Martinez Depo. at 15:10-15, 26:20-23). |
| 81. Hernandez approached and convinced Chavez, without Hyphy or the rest of the Group's knowledge, to assign the Albums to Yellowcake in exchange for payment of $500,000.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 80:5-13, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 107:4-20. | Disputes.  The cited testimony of Chavez does not refer to any knowledge his backing musicians may or may not have had regarding the alleged conversation. Moreover, Chavez testified that the alleged transaction was a purchase, not an assignment.  The cited testimony of Hernandez is unrelated to statement #81.<br><br>Further disputes to the extent statement # 81 implies that anyone other than Chavez possessed the right to convey any right in the Albums.  Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez.  Defendant's Counterclaim, Dkt. |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | 17 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17. |
| | Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, repeatedly, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8. |
| | Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18. |
| | Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
|  | Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 82. Chavez and Yellowcake codified their purported agreement via an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019 (the "***Asset Purchase Agreement***").<br><br>Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF000021-PLF000039). | Undisputed Chavez and Yellowcake entered into the Asset Purchase Agreement set forth at Dkt. 83-3. |
| 83. In Section 13.e. of the Asset Purchase Agreement, Chavez represented and warranted to Yellowcake that Chavez was "the only owner of" the Albums, and possessed "good and marketable title" thereto at the time of sale.<br><br>Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF00024). | Undisputed. |
| 84. Chavez, however, never obtained | Disputes statement #84 because it |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| signed written agreements from Flores, Vargas or Hyphy acquiring each party's respective contributions to, and rights in, the Albums and sound recordings embodied thereon.<br><br>Begakis Decl. at ¶ 6, Exhibit "E" thereto, Yellowcake Interrogatory Responses at pp. 4-5; Begakis Decl. at ¶ 7, Exhibit "F" thereto, Yellowcake Responses to Request for Production at p. 4. | incorrectly assumes Flores, Vargas and Hyphy possessed "respective contributions to, and rights in, the Albums and sound recordings embodied thereon"; which they did not.<br><br>Further disputes to the extent statement # 84 implies that anyone other than Chavez possessed the right to convey any right in the Albums. Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez. Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17.<br><br>Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, repeatedly, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8.<br><br>Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez. Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Florez and Vargas did not possess any alienable right, title or interest in the Albums. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| | Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10. |
| | Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 85. Since commencing this litigation, Yellowcake entirely failed to serve any Initial Disclosures.<br><br>Begakis Decl. at ¶ 3. | Disputes that Hyphy experienced any harm by not receiving initial disclosures containing damages information, and same was justified, because Yellowcake was not in possession of information regarding the damages it is seeking in this case until Hyphy disclosed same to Yellowcake; moreover, inasmuch as 17 U.S.C. 504(c) permits profits to be calculated on gross amounts, Hyphy |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | itself has already calculated and provided Yellowcake with such amounts. |
| 86. Since commencing this litigation, Yellowcake has also never claimed that it is entitled to any damages besides alleged actual and punitive damages.<br><br>Begakis Decl. at ¶ 4. | Disputed.  Pursuant to 17 U.S.C. 504(c) Yellowcake is entitled to elect between statutory damages and actual damages at anytime final judgment is rendered; and Yellowcake has elected to seek Hyphy's profits which are a category of actual damages pursuant to 17 U.S.C. §§ 504(a)(1) and 504(b)(c). |
| 87. Since commencing this litigation, Yellowcake failed to submit any evidence, whether in discovery or by way of the opinion of any expert as to what a willing buyer would pay for the Albums.<br><br>Begakis Decl. at ¶ 5. | Disputes that such evidence is necessary or relevant for Yellowcake to prove damages; pursuant to 17 U.S.C. 504(c) Yellowcake is entitled to elect between statutory damages and actual damages at anytime final judgment is rendered; and Yellowcake has elected to seek Hyphy's profits which are a category of actual damages pursuant to 17 U.S.C. §§ 504(a)(1) and 504(b)(c), and fair market value is not the only measure of damages under 17 U.S.C 504. |
| 88. Hyphy has been exploiting each of the Albums since their respective publication between 2013 and 2017.<br><br>See Martinez Decl. at ¶ 8, Exhibit "B" thereto. | Undisputed. |
| 89. Yellowcake did not obtain copyright registrations in the albums until March of 2020.<br><br>Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF000001-PLF000021). | Disputed.  The effective dates of Yellowcake's copyright registrations, as reflected thereon, are in February 2020. |

SEPARATE STATEMENT OF UNDISPUTED FACTS

**D.** **Yellowcake's Second Claim for Injunctive Relief Fails Because Yellowcake's First Claim For Copyright Infringement Fails**

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 90. Defendant/Counterclaimant HYPHY MUSIC, INC. ("*Hyphy*") is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings, coupled with artwork.<br><br>Declaration of John Begakis ("*Begakis Decl.*") at ¶ 8, Exhibit "G" thereto, Jose Martinez Deposition Transcript ("*Martinez Depo*") at 13:6-14:6. | Undisputed. |
| 91. Counter-Defendant JESUS CHAVEZ, SR ("*Chavez*") is the lead singer of the Spanish-language musical group Los Originales De San Juan (the "*Group*").<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Jesus Chavez, Sr. Deposition, Volume I ("*Chavez Depo I*") at 25:13-14; Begakis Decl. at ¶ 14, Exhibit "M" thereto, Jesus Chavez, Sr. Deposition, Volume II ("*Chavez Depo II*") at 16:22-17:5. | Undisputed that Chavez is the lead singer when he performs with his backing band, Los Originales De San Juan, and he recorded the six albums that is the subject of this action, titled: (i) *Los Originales de San Juan- "El Campesino"*; (ii) *Los Originales de San Juan-"Corridos de Poca M"*; (iii) *Los Originales de San Juan-"En Vivo Desde La Cantina de Mi Barrio"*; (iv) *Los Originales de San Juan-"Nuestra Historia En Vivo"*; (v) *Los Originales de San Juan- "Amigos y Contrarios"*; and (vi) *Los Originales de San Juan-"Naci Con Suerte de Rey Con Mariachi"* (collectively "Albums").<br><br>Disputes to the extent it implies lead singer was Chavez's only role in Los Originales De San Juan.  Chavez is Los Originales De San Juan's sole founder, and principal.  Chavez Decl., Dkt. 46-2 |

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | at ¶ 3; Defendants' Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same). |
| | Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Declaration of Jesus Chavez, Sr. (the "Chavez Decl."), Dkt. 46-2 at ¶¶ 8-21; Declaration of Hector Rosales (the "Rosales Decl."), Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| 92. The Group operates as a co-equal partnership comprised of Chavez and fellow band members Domingo Torres Flores ("***Flores***"), who plays the accordion, and Alfonso Vargas ("***Vargas***"), who plays the drums.<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:16-19:3, 20:8-16, 21:16-19; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Deposition Transcript of Alfonso Vargas ("***Vargas Depo***") at 17:16-19; 27:17-22; 143:14-16; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Deposition Transcript of Domingo Torres Flores ("***Flores Depo***") at 47:15-25, 48:19-23. | Undisputed Flores formerly played the accordion, and that Vargas formerly played the drums at times for Chavez when Chavez performed with his backing band, Los Originales De San Juan.<br><br>Disputes that either Flores or Vargas were co-equal partners in Los Originales De San Juan. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey* |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Con Mariachi"*). |
| 93. In or about February 2013, Hyphy and the Group began working together to co-create various sound recordings to be embodied on multiple albums, which they orally agreed were to be owned by Hyphy (the "***Agreement***").<br><br>Declaration of Jose Martinez ("***Martinez Decl.***") at ¶ 3; Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 34:7-11; Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 19:14-17, 32:16-20, 35:12-21. | Disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy. Chavez Decl., Dkt. 46-2 at ¶ 7.<br><br>The cited deposition testimony of Chavez does not support statement #93 inasmuch as Chavez's testimony that an Album was recorded "with Hyphy" refers to such Album as being part of the distribution agreement between Chavez and Hyphy.<br><br>Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez. Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17.<br><br>Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, <u>repeatedly</u>, under penalty of perjury, in his Declaration in support of Reply to Counter-Defendants' Challenge to the Validity of Certain Copyright Registrations (the "August 2021 Martinez Reply Decl."), that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8. |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims (the "Hyphy Opp. To MTD"), Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; Hyphy's Reply to Counterdefendants' Challenge to the Validity of Certain Copyright Registrations (the "August 2021 Hyphy Reply"), Dkt. 45 at pg. 1 lns. 16-18.

Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*).

Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.

Chavez never had an agreement or |

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
| --- | --- |
| | understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 94. The albums created pursuant to the Agreement were entitled (1) "Amigos y Contrarios"; (2) "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La Cantina de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the "***Los Originales Albums***" or "***Albums***"). <br><br> Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23, 51:22-25. | Disputes. Six, not five, albums are the subject of Yellowcake's claims, *i.e.*, the six "Albums" identified in Yellowcake's response #2 above. Further disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy. Chavez Decl., Dkt. 46-2 at ¶ 7. <br><br> Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez. Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17. <br><br> Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, <u>repeatedly</u>, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8. <br><br> Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez. Hyphy's Opposition to Yellowcake's Motion to Dismiss |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18. |
| | Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| | Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10. |
| | Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 95. One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even | Undisputed. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| recorded by Chavez.<br><br>Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:24:-9, 154:11-155:25. | |
| 96. Though this Agreement was not initially memorialized in writing, Flores and Vargas understood that such Agreement existed.<br><br>Martinez Decl. at ¶ 5. Declaration of Domingo Torres Flores ("***Flores Decl.***") at ¶ 3; Declaration of Alfonso Vargas ("***Vargas Decl.***") at ¶ 3. | Disputes the Albums were created pursuant to the alleged Agreement.  In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy.  Chavez Decl., Dkt. 46-2 at ¶ 7.<br><br>Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez.  Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17.<br><br>Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, <u>repeatedly</u>, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8.<br><br>Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18. |
| | Florez and Vargas did not possess any alienable right, title or interest in the Albums. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| | Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10. |
| | Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 97. Flores and Vargas, as co-equal members of the Group, also intended that all rights in and to their recording services rendered pursuant to the Agreement be conveyed Hyphy. | Disputes that either Flores or Vargas were co-equal partners in Los Originales De San Juan.<br><br>Disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Martinez Decl. at ¶ 4. Flores Decl. at ¶¶ 3-5; Vargas Decl. at ¶¶ 3-5. | entered into an oral distribution agreement, not an oral recording agreement, with Hyphy.  Chavez Decl., Dkt. 46-2 at ¶ 7.<br><br>The Vargas Decl. and the Flores Decl. cited by Hyphy does not support statement # 93 inasmuch as neither declarant states he is a "co-equal" member of Los Originales de San Juan, or state anything else therein that has a similar meaning to the quoted language. They merely state they provided backing musician services by playing their instrument in the creation of the Albums; they do not state that they personally provided any original or creative material that was incorporated into the sound recordings of the Albums, or provide any description of same.  *See generally* Florez Decl.; Vargas Decl.<br><br>Chavez is Los Originales De San Juan's sole founder, and principal.  Chavez Decl., Dkt. 46-2 at ¶ 3; Defendants' Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same).<br><br>Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ |

81

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| 98. Flores and Vargas also later confirmed their belief and intent to convey all rights to Hyphy by executing enforceable Copyright Assignment Agreements on or about March 22, 2022 (collectively, the "***Assignments***").<br><br>Martinez Decl. at ¶ 5, Exhibit "A" thereto. | Disputes Florez and Vargas possessed any alienable right, title or interest in the Albums. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Prior to 2019 Chavez had never agreed to alienate any of his ownership interest in the Albums to anyone. Chavez Decl., Dkt. 46-2 at ¶¶ 14. On or about March 21, 2019, Chavez sold the entirety of his rights, title and interest in the copyrights of the sound recordings of the Albums to Yellowcake. Chavez Decl., Dkt. 46-2 at ¶¶ 15; Asset Purchase Agreement, Dkt. 83-3. |
| 99. Unlike larger record labels, however, Hyphy closely collaborated with the Group to create the Albums.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-76:25, 83:11-84:22, 84:24-85:8, 85:14-86:16. | Disputes. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci* |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Con Suerte de Rey Con Mariachi"*). Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10. Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 100.   For the first three (of five) of the Los Originales Albums, Hyphy helped determine the "theme" and overall creative direction of each Album. Martinez Decl. at ¶ 6. | Disputes.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*). Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10. |

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 101.   For the first three (of five) of the Los Originales Albums, Hyphy selected the songs to be included in each Album.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 83:11-84:22. | Disputes.  The deposition transcript testimony cited by Hyphy does not support statement # 101 inasmuch as such testimony relates only to the album titled, "*Corridos de Poca M.*"<br><br>Moreover, Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | at ¶¶ 8-13, 19. |
| 102.   For the first three (of five) of the Los Originales Albums, Hyphy selected the recording studio, and paid for all costs associated with the recording of each Album.<br><br>Martinez Decl. at ¶ 6. | Disputes.  In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy (Chavez Decl., Dkt. 46-2 at ¶ 7) whereby Hyphy paid for recording costs as part of such agreement.<br><br>Moreover, Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 103.   For the first three (of five) of the Los Originales Albums, Hyphy | Disputes.  The deposition transcript testimony cited by Hyphy does not |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| hired the sound engineer.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 59:21-60:7, 61:10-16. | support statement # 103 inasmuch as it does not refer to who hired Hector Rosales, who was the audio engineer for the recording of "Amigos y Contrarios," "Corridos de Poca M," and "El Campesino."<br><br>Hector Rosales was engaged by Chavez to act as audio engineer for the Albums. Rosales Decl., Dkt. 46-1 at ¶ 5. |
| 104.   For the first three (of five) of the Los Originales Albums, Hyphy paid the Group a substantial amount for recording the Albums.<br><br>Martinez Decl. at ¶ 6. | Disputes.  In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy, who paid Chavez in accordance with the terms of their oral distribution agreement (Chavez Decl., Dkt. 46-2 at ¶ 7). |
| 105.   And for the first three (of five) of the Los Originales Albums, Hyphy oversaw and generally supervised the recording and production of each Album.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 85:14-86:16. | Disputes.  The cited deposition testimony of Martinez does not support statement #105 inasmuch as he testified Hyphy was merely "engaged" in production.  Martinez Depo. at 86:7, 86:15.<br><br>Moreover, Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 106.  For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also selected and paid for the venue of the live performance.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | Disputes.  The cited deposition testimony of Martinez does not support statement #106 inasmuch as such testimony does not relate to the selection and payment for any venue.<br><br>Moreover, Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 107.   For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also selected the songs to be performed at the live performance and recorded for the Albums.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | Disputes.  The cited deposition testimony of Martinez does not support statement #107 inasmuch as such testimony does not relate to the selection of songs at a live performance.<br><br>Moreover, Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums.  Chavez Decl., Dkt. Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 108.   For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also directly employed, supervised, and directed the services of the sound engineer and videographer who each recorded the audio and video of the live performance, respectively. | Disputes.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10. |
| | Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| | Disputes.  Statement #108 constitutes a self-serving and unsubstantiated statement, which is also inadmissible because there is no evidence of Hyphy's personal knowledge of the activities of any sound engineer or videographer who recorded any live performances. |
| 109.   For the final two (of five) | Disputes.  Statement #109 constitutes a |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also wrote a script for the history of the band as presented at the live performance, and hired a "MC"/commentator who narrated the script.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | self-serving and unsubstantiated statement.  The cited deposition testimony of Martinez does not support statement #109 inasmuch as such testimony does not relate to the writing or narration of any script. |
| 110.   For the final two (of five) Albums (which are comprised of recordings from a previous live performance by the Group), Hyphy also re-recorded whole portions of the guitarist's contributions to the live performance afterwards, using a new guitarist selected, hired and paid for by Hyphy.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 75:6-25. | Disputes.  Statement #110 constitutes a self-serving and unsubstantiated statement, which is also irrelevant to Hyphy's claims of ownership of the recordings.  The cited deposition testimony of Martinez does not support statement #110 inasmuch as such testimony does not relate to the re-recording of any guitarist's contributions. |
| 111.   It should be noted here that Flores and Vargas were plainly joint authors of the Albums, including based on the fact that Flores and Vargas were equally involved in all activities of the Band, which existed as an unincorporated partnership in which all Band members were joint owners, participants and contributors.<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:23-19:3; | Disputes that either Flores or Vargas were joint authors in the Albums, that they were equally involved in all of Los Originales De San Juan's activities or that same existed as an unincorporated partnership in which all members were joint owners, participants and contributors, and any of their related testimony is self-serving and conclusory.<br><br>Disputes the Albums were created pursuant to the alleged Agreement.  In or about 2013, Chavez, and Chavez alone, |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | entered into an oral distribution agreement, not an oral recording agreement, with Hyphy.  Chavez Decl., Dkt. 46-2 at ¶ 7.<br><br>The testimony cited by Hyphy does not support statement # 111 inasmuch as neither Flores nor Vargas testifies they were involved in all activities of Los Originales de San Juan, or that they personally provided any original or creative material that was incorporated into the sound recordings of the Albums, or provide any description of same.<br><br>Chavez is Los Originales De San Juan's sole founder, and principal.  Chavez Decl., Dkt. 46-2 at ¶ 3; Defendants' Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same).<br><br>Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*). |
| 112.   It should be noted here that Flores and Vargas were plainly joint | Disputes that either Flores or Vargas were joint authors in the Albums or |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| authors of the Albums, including based on the fact that Flores and Vargas were equally credited on all Albums in which each of them made contributions.<br><br>*See* Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | contributed to their creation, or that they were equally credited on the Albums and any of their related testimony is self-serving and conclusory.<br><br>Disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy. Chavez Decl., Dkt. 46-2 at ¶ 7.<br>The testimony cited by Hyphy does not support statement # 112 inasmuch as neither Flores nor Vargas testifies they personally provided any original or creative material that was incorporated into the sound recordings of the Albums, or provide any description of same.<br><br>Chavez is Los Originales De San Juan's sole founder, and principal. Chavez Decl., Dkt. 46-2 at ¶ 3; Defendants' Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same).<br><br>Florez and Vargas did not possess any alienable right, title or interest in the Albums. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 |

92
SEPARATE STATEMENT OF UNDISPUTED FACTS

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| 113.  It should be noted here that Flores and Vargas were plainly joint authors of the Albums, including based on the fact that Flores and Vargas shared equally in all profits of the Band, and were granted equal access to inspect all records related to the Band's receipt of all such profits.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 20:20-21:16, 26:13-20, 31:8-16, 33:18-34:1, 38:8-18, 41:13-42:2; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | Disputes that either Flores or Vargas were joint authors in the Albums, or that they shared equally in the profits of Los Originales De San Juan or were granted equal access to inspect records.<br><br>Disputes the Albums were created pursuant to the alleged Agreement.  In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy.  Chavez Decl., Dkt. 46-2 at ¶ 7.<br><br>The Vargas Decl. and the Flores Decl. cited by Hyphy does not support statement # 113 inasmuch as neither declarant states he is a "co-equal" member of Los Originales de San Juan, or state anything else therein that has a similar meaning to the quoted language. They merely state they provided backing musician services by playing their instrument in the creation of the Albums; they do not state that they personally provided any original or creative material that was incorporated into the sound recordings of the Albums, or provide any description of same.  *See generally* Florez Decl.; Vargas Decl.<br><br>Chavez is Los Originales De San Juan's sole founder, and principal.  Chavez Decl., Dkt. 46-2 at ¶ 3; Defendants' |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same). |
| | Florez and Vargas did not possess any alienable right, title or interest in the Albums. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*). |
| | The cited deposition testimony of Chavez does not support statement #12 inasmuch as he testified that he paid Vargas and Flores a weekly salary. |
| 114.    In addition to its original creative contributions to the production, recording and overall creation of the Los Originales Albums, Hyphy also designed and created the artwork featured on the cover of each Album (the "***Album Artwork***"). <br><br> Martinez Decl. at ¶ 7; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 127:12-21. | Disputes.  The cited deposition testimony of Martinez, and the interrogatory response referred to therein, does not support statement #114 inasmuch as such testimony states the Album Artwork  was designed and created by Marcelino Mendoza, an independent contractor. <br><br> Further disputes to the extent statement #114 claims that Hyphy provided "original creative contributions to the production, recording and overall creation of the Los Originales Albums." Chavez was the sole producer, sole |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
|  | author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
|  | Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10. |
|  | Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 115.   Hyphy released the Albums, with the Album Artwork, for distribution through all available digital service providers (the "**DSPs**") between 2013 and 2017.<br><br>Martinez Decl. at ¶ 8, Exhibit "B" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23; 51:18-25; 67:24-69:5. | Undisputed. |
| 116.   Thereafter, Hyphy obtained copyright registrations for all of such Album Artwork. | Disputes to the extent that statement #116 implies that the release dates of the various Albums through DSPs between |

95
SEPARATE STATEMENT OF UNDISPUTED FACTS

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| Martinez Decl. at ¶ 9, Exhibit "C" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 133:9-136:5. | 2013 and 2017 was proximate in time to the dates that Hyphy obtained copyright registration for the Album Artwork. Hyphy obtained all such registration in May 2020. Martinez Depo at 133:9-136:5. |
| 117.   Yellowcake is a competing record label and distributor of sound recordings, utilizing Colonize as its "distribution arm" to release and exploit rights that Yellowcake acquires.<br><br>Begakis Decl. at ¶ 9, Exhibit "H" thereto, Deposition Transcript of Kevin Berger ("***Berger Depo***") at 91:19-23; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Deposition Transcript of Jose David Hernandez, Volume I ("***Hernandez Depo I***") at 77:19-21. | Disputes. Yellowcake is primarily engaged in the business of, among other things, purchasing, owning, licensing and exploiting intellectual property rights. Declaration of Kevin Berger (the "Berger Decl."), Dkt. 82-14 at ¶ 3. Colonize is a digital music distributor that enters into contracts with numerous different record labels and performers. Declaration of Jose David Hernandez (the "Hernandez Decl."), Dkt. 82-16 at ¶¶ 3-6. Yellowcake and Colonize are two completely separate entities with two different owners. |
| 118.   Hernandez is a co-owner of both Yellowcake and Colonize.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 51:9-11, 116:18-117:14. | Undisputed that Hernandez is an owner of Colonize and that he once was an owner of Yellowcake. |
| 119.   In his position as co-owner of both Yellowcake and Colonize, Hernandez has admitted that both entities have operated – and continue to operate – as one single economic entity, with common ownership, common business operations, common office space, common staff, and many other common resources.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" | Disputes. The cited deposition testimony of Hernandez does not support statement #119 inasmuch as Hernandez testified that Colonize "gets some stuff of value" for distributing Yellowcake's music. Hernandez Depo I at 80:13. |

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| thereto, Hernandez Depo I at 80:3-20. | |
| 120.    In or about March 2019, Hernandez approached Chavez about selling the Los Originales Albums to Yellowcake.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 148:24-149:5. | Disputes.  The cited deposition testimony of Chavez does not support statement #120 inasmuch as Chavez testified he does not remember when Hernandez approached him, but it was in the year 2020 (Chavez Depo I at 78:9-25).  The cited deposition testimony of Hernandez does not support statement #120 inasmuch as Hernandez does not testify that he approached Chavez, and he testifies "it could have been 2018" when he first discussed with Chavez purchasing the Albums (Hernandez Depo I at 148:24-149:5).<br><br>On or about March 21, 2019, Chavez sold the entirety of his rights, title and interest in the copyrights of the sound recordings of the Albums to Yellowcake.  Chavez Decl., Dkt. 46-2 at ¶¶ 15; Asset Purchase Agreement, Dkt. 83-3. |
| 121.    Hernandez had previously worked with Hyphy and had secretly gained valuable information on Hyphy's business and relationship with Chavez.  Hernandez therefor knew that Hyphy only had an oral agreement with the Group.<br><br>Martinez Decl. at ¶ 3; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 26:2-12. | Disputes.  Hernandez never worked for Hyphy, and statement # 121 is unsubstantiated and self-serving.<br><br>The cited paragraph in the Martinez Decl. stating that Hernandez "used to work with Hyphy" and therefore "obtained valuable information . . . including the knowledge Hyphy's Agreement with the Group was oral" is misleading because Martinez testified Hernandez was merely an initial third-party distributer of Hyphy music (Martinez Depo. at 26:6-12), and such statement is pure speculation as Martinez also testified that Hyphy's business |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | dealings with Hernandez began and ended in 2010, <u>approximately three years prior to the existence of the alleged oral agreement</u> (Martinez Depo. at 15:10-15, 26:20-23). |
| 122.   Hernandez approached and convinced Chavez, without Hyphy or the rest of the Group's knowledge, to assign the Albums to Yellowcake in exchange for payment of $500,000.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 80:5-13, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 107:4-20. | Disputes.  The cited testimony of Chavez does not refer to any knowledge his backing musicians may or may not have had regarding the alleged conversation. Moreover, Chavez testified that the alleged transaction was a purchase, not an assignment.  The cited testimony of Hernandez is unrelated to statement #122.<br><br>Further disputes to the extent statement # 122 implies that anyone other than Chavez possessed the right to convey any right in the Albums.  Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez.  Defendant's Counterclaim, Dkt. 17 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17.<br><br>Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, <u>repeatedly</u>, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8.<br><br>Defendant confirmed in other of its |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18.<br><br>Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 123.  Chavez and Yellowcake codified their purported agreement via an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019 (the "***Asset Purchase Agreement***").<br><br>Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF000021-PLF000039). | Undisputed Chavez and Yellowcake entered into the Asset Purchase Agreement set forth at Dkt. 83-3. |
| 124.  In Section 13.e. of the Asset Purchase Agreement, Chavez represented and warranted to Yellowcake that Chavez was "the only owner of" the Albums, and possessed "good and marketable title" thereto at the time of sale.<br><br>Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF00024). | Undisputed. |
| 125.  Chavez, however, never obtained signed written agreements from Flores, Vargas or Hyphy acquiring each party's respective contributions to, and rights in, the Albums and sound recordings embodied thereon.<br><br> Begakis Decl. at ¶ 6, Exhibit "E" thereto, Yellowcake Interrogatory Responses at pp. 4-5; Begakis Decl. at ¶ 7, Exhibit "F" thereto, Yellowcake Responses to Request for Production at p. 4. | Disputes statement #125 because it incorrectly assumes Flores, Vargas and Hyphy possessed "respective contributions to, and rights in, the Albums and sound recordings embodied thereon"; which they did not.<br><br>Further disputes to the extent statement # 125 implies that anyone other than Chavez possessed the right to convey any right in the Albums.  Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez.  Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; Defendant's First |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Amended Counterclaim, Dkt. 15 at ¶¶ 15-17. |
| | Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, <u>repeatedly</u>, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8. |
| | Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18. |
| | Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*). |
| | Neither Hyphy nor anyone affiliated with Hyphy provided any original creative |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10. |
| | Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |

## II.    SUMMARY ADJUDICATION IS PROPER AS FOR THE SECOND AND SIXTH COUNTERCLAIMS OF THE COUNTERCLAIM

### A.    Summary Adjudication Is Proper As To Hyphy's Second Counterclaim For Copyright Infringement Because Yellowcake And Colonize Infringed Upon Hyphy's Album Artwork

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 126.   Defendant/Counterclaimant HYPHY MUSIC, INC. ("***Hyphy***") is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings, coupled with artwork.<br><br>Declaration of John Begakis ("***Begakis Decl.***") at ¶ 8, Exhibit "G" thereto, Jose Martinez Deposition Transcript ("***Martinez Depo***") at 13:6-14:6. | Undisputed. |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| 127.   Counter-Defendant JESUS CHAVEZ, SR ("***Chavez***") is the lead singer of the Spanish-language musical group Los Originales De San Juan (the "***Group***").<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Jesus Chavez, Sr. Deposition, Volume I ("***Chavez Depo I***") at 25:13-14; Begakis Decl. at ¶ 14, Exhibit "M" thereto, Jesus Chavez, Sr. Deposition, Volume II ("***Chavez Depo II***") at 16:22-17:5. | Undisputed that Chavez is the lead singer when he performs with his backing band, Los Originales De San Juan, and he recorded the six albums that is the subject of this action, titled: (i) *Los Originales de San Juan- "El Campesino"*; (ii) *Los Originales de San Juan-"Corridos de Poca M"*; (iii) *Los Originales de San Juan-"En Vivo Desde La Cantina de Mi Barrio"*; (iv) *Los Originales de San Juan-"Nuestra Historia En Vivo"*; (v) *Los Originales de San Juan- "Amigos y Contrarios"*; and (vi) *Los Originales de San Juan-"Naci Con Suerte de Rey Con Mariachi"* (collectively "Albums").<br><br>Disputes to the extent it implies lead singer was Chavez's only role in Los Originales De San Juan.  Chavez is Los Originales De San Juan's sole founder, and principal.  Chavez Decl., Dkt. 46-2 at ¶ 3; Defendants' Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same).<br><br>Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Declaration of Jesus Chavez, Sr. (the "Chavez Decl."), Dkt. 46-2 at ¶¶ 8-21; Declaration of Hector Rosales (the "Rosales Decl."), Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*). |
| 128.  The Group operates as a co-equal partnership comprised of Chavez and fellow band members Domingo Torres Flores ("*Flores*"), who plays the accordion, and Alfonso Vargas ("*Vargas*"), who plays the drums.

Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:16-19:3, 20:8-16, 21:16-19; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Deposition Transcript of Alfonso Vargas ("*Vargas Depo*") at 17:16-19; 27:17-22; 143:14-16; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Deposition Transcript of Domingo Torres Flores ("*Flores Depo*") at 47:15-25, 48:19-23. | Undisputed Flores formerly played the accordion, and that Vargas formerly played the drums at times for Chavez when Chavez performed with his backing band, Los Originales De San Juan.

Disputes that either Flores or Vargas were co-equal partners in Los Originales De San Juan.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci Con Suerte de Rey Con Mariachi"*). |
| 129.  In or about February 2013, Hyphy and the Group began working together to co-create various sound recordings to be embodied on multiple albums, which they orally agreed were to be owned by Hyphy (the "*Agreement*").

Declaration of Jose Martinez ("*Martinez Decl.*") at ¶ 3; Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 34:7-11; Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 19:14-17, 32:16-20, 35:12-21. | Disputes the Albums were created pursuant to the alleged Agreement.  In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy.  Chavez Decl., Dkt. 46-2 at ¶ 7.

The cited deposition testimony of Chavez does not support statement #129 inasmuch as Chavez's testimony that an Album was recorded "with Hyphy" refers to such Album as being part of the distribution agreement between Chavez and Hyphy. |

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez.  Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17.

Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, <u>repeatedly</u>, under penalty of perjury, in his Declaration in support of Reply to Counter-Defendants' Challenge to the Validity of Certain Copyright Registrations (the "August 2021 Martinez Reply Decl."), that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8.

Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims (the "Hyphy Opp. To MTD"), Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; Hyphy's Reply to Counterdefendants' Challenge to the Validity of Certain Copyright Registrations (the "August 2021 Hyphy Reply"), Dkt. 45 at pg. 1 lns. 16-18.

Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).

Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.

Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 130. The albums created pursuant to the Agreement were entitled (1) "Amigos y Contrarios"; (2) "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La Cantina de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the "***Los Originales Albums***" or "***Albums***").

Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo | Disputes. Six, not five, albums are the subject of Yellowcake's claims, *i.e.*, the six "Albums" identified in Yellowcake's response #2 above. Further disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy. Chavez Decl., Dkt. 46-2 at ¶ 7.

Defendant consistently confirmed in |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| at 44:7-23, 51:22-25. | both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez.  Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17.

Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, repeatedly, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8.

Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18.

Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of - *"Naci* |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Con Suerte de Rey Con Mariachi"*). Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10. Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 131.   One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded by Chavez. Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:24:-9, 154:11-155:25. | Undisputed. |
| 132.   In addition to its original creative contributions to the production, recording and overall creation of the Los Originales Albums, Hyphy also designed and created the artwork featured on the cover of each Album (the "***Album Artwork***"). Martinez Decl. at ¶ 7; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 127:12-21. | Disputes.  The cited deposition testimony of Martinez, and the interrogatory response referred to therein, does not support statement #132 inasmuch as such testimony states the Album Artwork  was designed and created by Marcelino Mendoza, an independent contractor. Further disputes to the extent statement #132 claims that Hyphy provided |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | "original creative contributions to the production, recording and overall creation of the Los Originales Albums." Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 133.   Hyphy released the Albums, with the Album Artwork, for distribution through all available digital service providers (the "***DSPs***") between 2013 and 2017.<br><br>Martinez Decl. at ¶ 8, Exhibit "B" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23; | Undisputed. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 51:18-25; 67:24-69:5. | |
| 134.   Thereafter, Hyphy obtained copyright registrations for all of such Album Artwork.<br><br>Martinez Decl. at ¶ 9, Exhibit "C" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 133:9-136:5. | Disputes to the extent that statement #134 implies that the release dates of the various Albums through DSPs between 2013 and 2017 was proximate in time to the dates that Hyphy obtained copyright registration for the Album Artwork. Hyphy obtained all such registration in May 2020.  Martinez Depo at 133:9-136:5. |
| 135.   Yellowcake is a competing record label and distributor of sound recordings, utilizing Colonize as its "distribution arm" to release and exploit rights that Yellowcake acquires.<br><br>Begakis Decl. at ¶ 9, Exhibit "H" thereto, Deposition Transcript of Kevin Berger ("***Berger Depo***") at 91:19-23; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Deposition Transcript of Jose David Hernandez, Volume I ("***Hernandez Depo I***") at 77:19-21. | Disputes.  Yellowcake is primarily engaged in the business of, among other things, purchasing, owning, licensing and exploiting intellectual property rights.  Declaration of Kevin Berger (the "Berger Decl."), Dkt. 82-14 at ¶ 3. Colonize is a digital music distributor that enters into contracts with numerous different record labels and performers. Declaration of Jose David Hernandez (the "Hernandez Decl."), Dkt. 82-16 at ¶¶ 3-6.  Yellowcake and Colonize are two completely separate entities with two different owners.. |
| 136.   Hernandez is a co-owner of both Yellowcake and Colonize.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 51:9-11, 116:18-117:14. | Undisputed that Hernandez is an owner of Colonize and that he once was an owner of Yellowcake. |
| 137.   In his position as co-owner of both Yellowcake and Colonize, Hernandez has admitted that both entities have operated – and continue to operate – as one single economic entity, with common ownership, common business operations, common office space, | Disputes.  The cited deposition testimony of Hernandez does not support statement #137 inasmuch as Hernandez testified that Colonize "gets some stuff of value" for distributing Yellowcake's music.  Hernandez Depo I at 80:13. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| common staff, and many other common resources.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 80:3-20. | |
| 138.  In or about March 2019, Hernandez approached Chavez about selling the Los Originales Albums to Yellowcake.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 148:24-149:5. | Disputes.  The cited deposition testimony of Chavez does not support statement #138 inasmuch as Chavez testified he does not remember when Hernandez approached him, but it was in the year 2020 (Chavez Depo I at 78:9-25).  The cited deposition testimony of Hernandez does not support statement #138 inasmuch as Hernandez does not testify that he approached Chavez, and he testifies "it could have been 2018" when he first discussed with Chavez purchasing the Albums (Hernandez Depo I at 148:24-149:5).<br><br>On or about March 21, 2019, Chavez sold the entirety of his rights, title and interest in the copyrights of the sound recordings of the Albums to Yellowcake.  Chavez Decl., Dkt. 46-2 at ¶¶ 15; Asset Purchase Agreement, Dkt. 83-3. |
| 139.  Hernandez had previously worked with Hyphy and had secretly gained valuable information on Hyphy's business and relationship with Chavez. Hernandez therefor knew that Hyphy only had an oral agreement with the Group.<br><br>Martinez Decl. at ¶ 3; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 26:2-12. | Disputes.  Hernandez never worked for Hyphy, and statement # 139 is unsubstantiated and self-serving.<br><br>The cited paragraph in the Martinez Decl. stating that Hernandez "used to work with Hyphy" and therefore "obtained valuable information . . . including the knowledge Hyphy's Agreement with the Group was oral" is misleading because Martinez testified Hernandez was merely an initial third- |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
|  | party distributor of Hyphy music (Martinez Depo. at 26:6-12), and such statement is pure speculation as Martinez also testified that Hyphy's business dealings with Hernandez began and ended in 2010, <u>approximately three years prior to the existence of the alleged oral agreement</u> (Martinez Depo. at 15:10-15, 26:20-23). |
| 140.   Hernandez approached and convinced Chavez, without Hyphy or the rest of the Group's knowledge, to assign the Albums to Yellowcake in exchange for payment of $500,000.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 80:5-13, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 107:4-20. | Disputes.  The cited testimony of Chavez does not refer to any knowledge his backing musicians may or may not have had regarding the alleged conversation. Moreover, Chavez testified that the alleged transaction was a purchase, not an assignment.  The cited testimony of Hernandez is unrelated to statement #140.<br><br>Further disputes to the extent statement # 140 implies that anyone other than Chavez possessed the right to convey any right in the Albums.  Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez.  Defendant's Counterclaim, Dkt. 17 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17.<br><br>Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, <u>repeatedly</u>, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8.

Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18.

Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).

Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.

Chavez never had an agreement or |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 141. Chavez and Yellowcake codified their purported agreement via an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019 (the "**Asset Purchase Agreement**"). Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF000021-PLF000039). | Undisputed Chavez and Yellowcake entered into the Asset Purchase Agreement set forth at Dkt. 83-3. |
| 142. Hyphy distributed the Albums with the Album Artwork during all times in which Hyphy believed it possessed the exclusive right to distribute the Albums. Martinez Decl. at ¶ 8, Exhibit "B" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 67:24-68:24. | Disputes because on or about March 21, 2019, Chavez sold the entirety of his rights, title and interest in the copyrights of the sound recordings of the Albums to Yellowcake; at that point in time Hyphy lost whatever rights it may have had to distribute the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 14-15; Asset Purchase Agreement, Dkt. 83-3. |
| 143. Counter-Defendants engaged in the unauthorized distribution of their own, pirated version of the Albums with such Album Artwork. Martinez Decl. at ¶ 12, Exhibit "D" thereto. | Disputed. Neither Yellowcake, nor Colonize nor Hernandez has ever used the Album Artwork. Berger Decl. at ¶¶ 25-33; Dkt. 82-16, Hernandez Decl. at ¶¶ 10-19. |
| 144. When first distributed by Hyphy, each Album was assigned a unique International Standard Recording Code ("**ISRC**") and Universal Product Code ("**UPC**"). | Disputes. Katz's opinion is inadmissible. His opinion constitutes an unsubstantiated legal conclusion and unsubstantiated opinion. Katz is neither qualified as an expert nor does his report comply with Federal Rule of Civil |

114

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Begakis Decl. at ¶ 15, Exhibit "N" thereto, Deposition Transcript of Lawrence H. Katz, Esq. ("***Katz Depo***") at 68:8-18. | Procedure 26(a)(2) nor is his report admissible under Federal Rule of Evidence 702. Katz is delinquent in his attorney registration with New York. Katz Depo. 14:4-15:4. His expert report did not include exhibits reflecting the results of his research. *See id.* at 72:11-73:2. He did not cite to any specific documents or testimony in his report. *See, e.g., id.* at 89:6-10. He did not use any particular methodology to reach his conclusions. *See. e.g., id.* at 93:3-10. He is not familiar with the concept of scientific peer review. *See id.* at 94:3-5. He wrote the report "pretty much off the top of [his] head." *See id.* at 95:13-96:3. He did not cite to any third party sources in his report. *See id.* at 96:5-17. He did not know why it would be relevant to this action if Yellowcake or Colonize had changed the Albums' ISRC Codes. *See id.* at 96:18-97:15.<br><br>Moreover, the cited deposition testimony of Katz does not support statement #144 inasmuch as Katz specifically testified he has no personal knowledge of whether each Album was assigned an ISRC or UPC when it was first distributed, or if any such codes were procured by Hyphy or The Orchard. Katz Depo. at 68:2-69:1, 69:22-70:7. |
| 145.   It is standard for a new sound recording placed into the stream of distribution to be assigned a unique ISRC and UPC.<br><br>Begakis Decl. at ¶ 15, Exhibit "N" | Disputes for the same reasons and objections set forth in the first paragraph of Yellowcake's response to statement # 144.<br><br>Moreover, the cited deposition testimony |

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| thereto, Katz Depo at 46:1-47:4. | of Katz does not support statement #145 inasmuch as Katz admitted he lacks personal knowledge of how ISRCs are assigned or if they are unique; he testified that "many years ago" he called the isrc.net company and that is what was explained to him (Katz Depo. at 46:21-47:4), and his understanding is that UPCs serve a similar purpose (Katz depo at 47:15-18).<br><br>The cited deposition testimony of Katz also does not support statement #145 inasmuch as Katz admitted that ISRCs are not necessarily unique to a sound recording because digital service providers may "accept a new ISRC code from a new owner of a sound recording that is different from the previous ISRC code" (Katz Depo 63:12-64:5), and that ISRC assigned to a sound recording can change (Katz Depo. 165:18-22). |
| 146.   ISRCs and UPCs are sometimes referred to as "digital social security numbers" for products, and are used to track data regarding the distribution and exploitation of each respective Albums, and the sound recordings thereon.<br><br>Begakis Decl. at ¶ 15, Exhibit "N" thereto, Katz Depo at 46:1-47:4, 46:23-47:4, 47:5-18. | Disputes for the same reasons and objections set forth in the first paragraph of Yellowcake's response to statement # 144.<br><br>Moreover, the cited deposition testimony of Katz does not support statement #146 inasmuch as Katz admitted he lacks personal knowledge of how ISRCs are assigned or if they are unique; he testified that "many years ago" he called the isrc.net company and that is what was explained to him (Katz Depo. at 46:21-47:4).  Katz did not testify that UPCs are referred to as "digital social security numbers." |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | The cited deposition testimony of Katz also does not support statement #146 inasmuch as Katz admitted that ISRCs are not necessarily unique to a sound recording because digital service providers may "accept a new ISRC code from a new owner of a sound recording that is different from the previous ISRC code" (Katz Depo 63:12-64:5), and that ISRC assigned to a sound recording can change (Katz Depo. 165:18-22). |
| 147.   Because ISRCs and UPCs are used to track data regarding each Album, and all sound recordings contained thereon, such codes should not have ever been duplicated.<br><br>Begakis Decl. at ¶ 15, Exhibit "N" thereto, Katz Depo at 48:23-49:14. | Disputes for the same reasons and objections set forth in the first paragraph of Yellowcake's response to statement # 144.<br><br>Moreover, the cited deposition testimony of Katz does not support statement #147 inasmuch as Katz admitted he lacks personal knowledge of how ISRCs and UPCs were assigned to the Albums (Katz Depo. at 68:2-69:1, 69:22-70:7) and he does not testify that "ISRCs and UPCs are used to track data regarding each Album." |
| 148.   Yellowcake should have requested that Hyphy transfer Albums and their assigned ISRCs and UPCs to Yellowcake, in the event Yellowcake actually acquired the Albums lawfully.<br><br>Begakis Decl. at ¶ 15, Exhibit "N" thereto, Katz Depo at 74:1-22. | Disputes for the same reasons and objections set forth in the first paragraph of Yellowcake's response to statement # 144.<br><br>Moreover, the cited deposition testimony of Katz does not support statement #148 inasmuch as such testimony constitutes Katz's personal speculation and conclusions as to Yellowcake's and Colonize's knowledge and motives; and moreover such testimony does not |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | reference the lawfulness of Yellowcake's acquisition of the Albums. |
| 149.   Yellowcake ignored established industry norms governing how the Albums should have been transferred, and instead simply re-released unauthorized duplicate (i.e., pirated) versions with the Album Artwork, and with newly assigned ISRC and UPCs.<br><br>Martinez Decl. at ¶ 11; Begakis Decl. at ¶ 15, Exhibit "N" thereto, Katz Depo at 70:23-71:9, 74:1-22, 74:23-75:17. | Disputes for the same reasons and objections set forth in the first paragraph of Yellowcake's response to statement # 144.<br><br>Moreover, neither Yellowcake, nor Colonize nor Hernandez has ever used the Album Artwork.  Berger Decl. at ¶¶ 25-33; Dkt. 82-16, Hernandez Decl. at ¶¶ 10-19.<br><br>Moreover, the cited deposition testimony of Katz does not support statement #149 inasmuch as Katz specifically testified he has no personal knowledge of whether each Album was assigned an ISRC or UPC when it was first distributed, or if any such codes were procured by Hyphy or The Orchard, and he makes no reference to the Album Artwork whatsoever.  Katz Depo. at 68:2-69:1, 69:22-70:7. |
| 150.   Although Counter-Defendants later attempted to scrub the internet of their initial, infringing distribution of the Albums, Hyphy obtained proof of such distribution via one of the DSPs located at <daddykoolrecords.com>.<br><br>Martinez Decl. at ¶ 12, Exhibit "D" thereto. | Disputed.  Yellowcake created its own new Album covers after acquiring the sound recordings of the Albums and never used, uploaded or distributed Hyphy's artwork to anyone; Neither Colonize nor Yellowcake has ever had Daddy Kool Records as an account or client or sold any sound recordings to it; and the Daddy Kool Records website screenshots relied on by Hyphy do not mention or identify either Yellowcake or Colonize in any way.  Berger Decl., Dkt. 82-14 at ¶¶ 26-29; Hernandez Decl., Dkt. 82-16 at ¶¶ 11-14.  Moreover, |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
|  | Yellowcake and Colonize conducted an investigation of the alleged infringement of Hyphy's Album Artwork and discovered that in fact it was Hyphy, in corroboration with Morena Music, Inc. doing business as Long Play Music, Inc., who uploaded the albums to Daddy Kool Records (thus Hyphy's accusations of infringement are knowingly false). Berger Decl., Dkt. 82-14 at ¶ 30; Hernandez Decl., Dkt. 82-16 at ¶ 15. Daddy Kool Records received the Albums with the Album Artwork from Morena, through Hyphy and Morena's distributor, The Orchard, which is a fact that is confirmed in an email chain between Colonize and one of Daddy Kool Records' digital distributors, Audible Magic, who acknowledged that it had acquired the Albums with the Album Artwork from The Orchard, who in turn had received them from Morena d/b/a Long Play Music and uploaded them to Daddy Kool Records. Berger Decl., Dkt. 82-14 at ¶ 31; Hernandez Decl., Dkt. 82-16 at ¶¶ 16-17 and Exhibit "A" thereto.<br><br>Moreover, the cited paragraph in the Martinez Decl. constitutes nothing more than self-serving hearsay. |
| 151.  With respect to the Album entitled "Corridos de Poca M", Hyphy's originally assigned UPC Code is 889176663055. Yellowcake's later-acquired UPC Code is 758381471406. Yellowcake distributed this Album with | Disputed.  Yellowcake created its own new Album covers after acquiring the sound recordings of the Albums and never used, uploaded or distributed Hyphy's artwork to anyone; Neither Colonize nor Yellowcake has ever had Daddy Kool Records as an account or |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Hyphy's Album Artwork, as confirmed by the display of such Album with Hyphy's Album Artwork and Yellowcake's later-acquired UPC Code offered for download on <daddykoolrecords.com>.<br><br>Martinez Decl. at ¶¶ 8, 12, Exhibits "B" and "D" thereto. | client or sold any sound recordings to it; and the Daddy Kool Records website screenshots relied on by Hyphy do not mention or identify either Yellowcake or Colonize in any way.  Berger Decl., Dkt. 82-14 at ¶¶ 26-29; Hernandez Decl., Dkt. 82-16 at ¶¶ 11-14.  Moreover, Yellowcake and Colonize conducted an investigation of the alleged infringement of Hyphy's Album Artwork and discovered that in fact it was Hyphy, in corroboration with Morena Music, Inc. doing business as Long Play Music, Inc., who uploaded the albums to Daddy Kool Records (thus Hyphy's accusations of infringement are knowingly false).  Berger Decl., Dkt. 82-14 at ¶ 30; Hernandez Decl., Dkt. 82-16 at ¶ 15.  Daddy Kool Records received the Albums with the Album Artwork from Morena, through Hyphy and Morena's distributor, The Orchard, which is a fact that is confirmed in an email chain between Colonize and one of Daddy Kool Records' digital distributors, Audible Magic, who acknowledged that it had acquired the Albums with the Album Artwork from The Orchard, who in turn had received them from Morena d/b/a Long Play Music and uploaded them to Daddy Kool Records.  Berger Decl., Dkt. 82-14 at ¶ 31; Hernandez Decl., Dkt. 82-16 at ¶¶ 16-17 and Exhibit "A" thereto. |
| 152.    With respect to the Album entitled "El Campesino", Hyphy's originally assigned UPC Code is 190374798310. Yellowcake's later- | Disputed.  Yellowcake created its own new Album covers after acquiring the sound recordings of the Albums and never used, uploaded or distributed |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| acquired UPC Code is 758381471420. Yellowcake distributed this Album with Hyphy's Album Artwork, as confirmed by the display of such Album with Hyphy's Album Artwork and Yellowcake's later-acquired UPC Code offered for download on <daddykoolrecords.com>.<br><br>Martinez Decl. at ¶¶ 8, 12, Exhibits "B" and "D" thereto. | Hyphy's artwork to anyone; Neither Colonize nor Yellowcake has ever had Daddy Kool Records as an account or client or sold any sound recordings to it; and the Daddy Kool Records website screenshots relied on by Hyphy do not mention or identify either Yellowcake or Colonize in any way.  Berger Decl., Dkt. 82-14 at ¶¶ 26-29; Hernandez Decl., Dkt. 82-16 at ¶¶ 11-14.  Moreover, Yellowcake and Colonize conducted an investigation of the alleged infringement of Hyphy's Album Artwork and discovered that in fact it was Hyphy, in corroboration with Morena Music, Inc. doing business as Long Play Music, Inc., who uploaded the albums to Daddy Kool Records (thus Hyphy's accusations of infringement are knowingly false). Berger Decl., Dkt. 82-14 at ¶ 30; Hernandez Decl., Dkt. 82-16 at ¶ 15. Daddy Kool Records received the Albums with the Album Artwork from Morena, through Hyphy and Morena's distributor, The Orchard, which is a fact that is confirmed in an email chain between Colonize and one of Daddy Kool Records' digital distributors, Audible Magic, who acknowledged that it had acquired the Albums with the Album Artwork from The Orchard, who in turn had received them from Morena d/b/a Long Play Music and uploaded them to Daddy Kool Records.  Berger Decl., Dkt. 82-14 at ¶ 31; Hernandez Decl., Dkt. 82-16 at ¶¶ 16-17 and Exhibit "A" thereto. |
| 153.   With respect to the Album | Disputed.  Yellowcake created its own |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| entitled "Desde La Cantina De Mi Barrio", Hyphy's originally assigned UPC Code is 191018998417. Yellowcake's later-acquired UPC Code is 758381471413. Yellowcake distributed this Album with Hyphy's Album Artwork, as confirmed by the display of such Album with Hyphy's Album Artwork and Yellowcake's later-acquired UPC Code offered for download on <daddykoolrecords.com>.<br><br>Martinez Decl. at ¶¶ 8, 12, Exhibits "B" and "D" thereto. | new Album covers after acquiring the sound recordings of the Albums and never used, uploaded or distributed Hyphy's artwork to anyone; Neither Colonize nor Yellowcake has ever had Daddy Kool Records as an account or client or sold any sound recordings to it; and the Daddy Kool Records website screenshots relied on by Hyphy do not mention or identify either Yellowcake or Colonize in any way. Berger Decl., Dkt. 82-14 at ¶¶ 26-29; Hernandez Decl., Dkt. 82-16 at ¶¶ 11-14. Moreover, Yellowcake and Colonize conducted an investigation of the alleged infringement of Hyphy's Album Artwork and discovered that in fact it was Hyphy, in corroboration with Morena Music, Inc. doing business as Long Play Music, Inc., who uploaded the albums to Daddy Kool Records (thus Hyphy's accusations of infringement are knowingly false). Berger Decl., Dkt. 82-14 at ¶ 30; Hernandez Decl., Dkt. 82-16 at ¶ 15. Daddy Kool Records received the Albums with the Album Artwork from Morena, through Hyphy and Morena's distributor, The Orchard, which is a fact that is confirmed in an email chain between Colonize and one of Daddy Kool Records' digital distributors, Audible Magic, who acknowledged that it had acquired the Albums with the Album Artwork from The Orchard, who in turn had received them from Morena d/b/a Long Play Music and uploaded them to Daddy Kool Records. Berger Decl., Dkt. 82-14 at ¶ 31; Hernandez |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Decl., Dkt. 82-16 at ¶¶ 16-17 and Exhibit "A" thereto. |
| 154.   Before Counter-Defendants knew that Hyphy had discovered proof of their infringement, Hernandez lied under oath during his deposition as the person most knowledgeable for Colonize by claiming that Yellowcake and Colonize would never distribute the Albums with Hyphy's Album Artwork (even though they had).<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 211:24-212:6. | Disputed.  Neither Yellowcake, nor Colonize nor Hernandez has ever used or infringed upon the Album Artwork. Berger Decl., DKT. 82-14 at ¶¶ 25-33; Hernandez Decl., 82-16 at ¶¶ 10-19. |
| 155.   If Counter-Defendants are able to avoid liability for their infringement of Hyphy's Album Artwork, by arguing that only Colonize distributed the Albums, Hyphy will suffer significant injustice by not have any recourse in response to such wrongdoing.<br><br>Martinez Decl. at ¶ 14. | Disputed.  Neither Yellowcake, nor Colonize nor Hernandez has ever used or infringed upon the Album Artwork. Berger Decl. at ¶¶ 25-33; Dkt. 82-16, Hernandez Decl. at ¶¶ 10-19. |

### B.    Summary Adjudication Is Proper As To Hyphy's Sixth Counterclaim For Unfair Competition Because Hyphy Has Established That Yellowcake And Colonize Engaged In Copyright Infringement

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 156.   Defendant/Counterclaimant HYPHY MUSIC, INC. ("*Hyphy*") | Undisputed. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings, coupled with artwork.<br><br>Declaration of John Begakis ("**Begakis Decl.**") at ¶ 8, Exhibit "G" thereto, Jose Martinez Deposition Transcript ("**Martinez Depo**") at 13:6-14:6. | |
| 157.   Counter-Defendant JESUS CHAVEZ, SR ("**Chavez**") is the lead singer of the Spanish-language musical group Los Originales De San Juan (the "**Group**").<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Jesus Chavez, Sr. Deposition, Volume I ("**Chavez Depo I**") at 25:13-14; Begakis Decl. at ¶ 14, Exhibit "M" thereto, Jesus Chavez, Sr. Deposition, Volume II ("**Chavez Depo II**") at 16:22-17:5. | Undisputed that Chavez is the lead singer when he performs with his backing band, Los Originales De San Juan, and he recorded the six albums that is the subject of this action, titled: (i) *Los Originales de San Juan- "El Campesino"*; (ii) *Los Originales de San Juan-"Corridos de Poca M"*; (iii) *Los Originales de San Juan-"En Vivo Desde La Cantina de Mi Barrio"*; (iv) *Los Originales de San Juan-"Nuestra Historia En Vivo"*; (v) *Los Originales de San Juan- "Amigos y Contrarios"*; and (vi) *Los Originales de San Juan-"Naci Con Suerte de Rey Con Mariachi"* (collectively "Albums").<br><br>Disputes to the extent it implies lead singer was Chavez's only role in Los Originales De San Juan.  Chavez is Los Originales De San Juan's sole founder, and principal.  Chavez Decl., Dkt. 46-2 at ¶ 3; Defendants' Counterclaim, Dkt. 7 at ¶ 15 (referring to Chavez as "the founder and principal"); Defendants' First Amended Counterclaim, Dkt. 15 at ¶ 15 (same). |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Declaration of Jesus Chavez, Sr. (the "Chavez Decl."), Dkt. 46-2 at ¶¶ 8-21; Declaration of Hector Rosales (the "Rosales Decl."), Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| 158.   The Group operates as a co-equal partnership comprised of Chavez and fellow band members Domingo Torres Flores ("***Flores***"), who plays the accordion, and Alfonso Vargas ("***Vargas***"), who plays the drums.<br><br>Begakis Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 18:16-19:3, 20:8-16, 21:16-19; Begakis Decl. at ¶ 11, Exhibit "J" thereto, Deposition Transcript of Alfonso Vargas ("***Vargas Depo***") at 17:16-19; 27:17-22; 143:14-16; Begakis Decl. at ¶ 12, Exhibit "K" thereto, Deposition Transcript of Domingo Torres Flores ("***Flores Depo***") at 47:15-25, 48:19-23.. | Undisputed Flores formerly played the accordion, and that Vargas formerly played the drums at times for Chavez when Chavez performed with his backing band, Los Originales De San Juan.<br><br>Disputes that either Flores or Vargas were co-equal partners in Los Originales De San Juan. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| 159.   In or about February 2013, Hyphy and the Group began working together to co-create various sound recordings to be embodied on multiple albums, | Disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| which they orally agreed were to be owned by Hyphy (the "**Agreement**"). <br><br> Declaration of Jose Martinez ("**Martinez Decl.**") at ¶ 3; Decl. at ¶ 13, Exhibit "L" thereto, Chavez Depo I at 34:7-11; Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 19:14-17, 32:16-20, 35:12-21. | agreement, with Hyphy.  Chavez Decl., Dkt. 46-2 at ¶ 7. <br><br> The cited deposition testimony of Chavez does not support statement #159 inasmuch as Chavez's testimony that an Album was recorded "with Hyphy" refers to such Album as being part of the distribution agreement between Chavez and Hyphy. <br><br> Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez.  Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17. <br><br> Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, <u>repeatedly</u>, under penalty of perjury, in his Declaration in support of Reply to Counter-Defendants' Challenge to the Validity of Certain Copyright Registrations (the "August 2021 Martinez Reply Decl."), that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8. <br><br> Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims (the "Hyphy |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Opp. To MTD"), Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; Hyphy's Reply to Counterdefendants' Challenge to the Validity of Certain Copyright Registrations (the "August 2021 Hyphy Reply"), Dkt. 45 at pg. 1 lns. 16-18.<br><br>Florez and Vargas did not possess any alienable right, title or interest in the Albums. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*).<br><br>Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.<br><br>Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 160. The albums created pursuant to the Agreement were entitled (1) | Disputes. Six, not five, albums are the subject of Yellowcake's claims, *i.e.*, the |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| "Amigos y Contrarios"; (2) "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La Cantina de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the ***Los Originales Albums***" or "***Albums***"). <br><br> Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23, 51:22-25. | six "Albums" identified in Yellowcake's response #2 above. Further disputes the Albums were created pursuant to the alleged Agreement. In or about 2013, Chavez, and Chavez alone, entered into an oral distribution agreement, not an oral recording agreement, with Hyphy. Chavez Decl., Dkt. 46-2 at ¶ 7. <br><br> Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez. Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; Defendant's First Amended Counterclaim, Dkt. 15 at ¶¶ 15-17. <br><br> Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, <u>repeatedly</u>, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8. <br><br> Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez. Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18. <br><br> Florez and Vargas did not possess any |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | alienable right, title or interest in the Albums. Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums. Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). |
| | Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10. |
| | Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 161. One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded by Chavez.<br><br>Martinez Decl. at ¶ 4; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:24:-9, 154:11-155:25. | Undisputed. |
| 162. In addition to its original creative | Disputes. The cited deposition |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| contributions to the production, recording and overall creation of the Los Originales Albums, Hyphy also designed and created the artwork featured on the cover of each Album (the "**Album Artwork**"). Martinez Decl. at ¶ 7; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 127:12-21. | testimony of Martinez, and the interrogatory response referred to therein, does not support statement #162 inasmuch as such testimony states the Album Artwork was designed and created by Marcelino Mendoza, an independent contractor. Further disputes to the extent statement #162 claims that Hyphy provided "original creative contributions to the production, recording and overall creation of the Los Originales Albums." Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -*"Naci Con Suerte de Rey Con Mariachi"*). Neither Hyphy nor anyone affiliated with Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10. Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums.  Chavez Decl., Dkt. 46-2 |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | at ¶¶ 8-13, 19. |
| 163. Hyphy released the Albums, with the Album Artwork, for distribution through all available digital service providers (the "***DSPs***") between 2013 and 2017.<br><br>Martinez Decl. at ¶ 8, Exhibit "B" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 44:7-23; 51:18-25; 67:24-69:5. | Undisputed. |
| 164. Thereafter, Hyphy obtained copyright registrations for all of such Album Artwork.<br><br>Martinez Decl. at ¶ 9, Exhibit "C" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 133:9-136:5. | Disputes to the extent that statement #164 implies that the release dates of the various Albums through DSPs between 2013 and 2017 was proximate in time to the dates that Hyphy obtained copyright registration for the Album Artwork. Hyphy obtained all such registration in May 2020. Martinez Depo at 133:9-136:5. |
| 165. Yellowcake is a competing record label and distributor of sound recordings, utilizing Colonize as its "distribution arm" to release and exploit rights that Yellowcake acquires.<br><br>Begakis Decl. at ¶ 9, Exhibit "H" thereto, Deposition Transcript of Kevin Berger ("***Berger Depo***") at 91:19-23; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Deposition Transcript of Jose David Hernandez, Volume I ("***Hernandez Depo I***") at 77:19-21. | Disputes. Yellowcake is primarily engaged in the business of, among other things, purchasing, owning, licensing and exploiting intellectual property rights. Declaration of Kevin Berger (the "Berger Decl."), Dkt. 82-14 at ¶ 3. Colonize is a digital music distributor that enters into contracts with numerous different record labels and performers. Declaration of Jose David Hernandez (the "Hernandez Decl."), Dkt. 82-16 at ¶¶ 3-6. Yellowcake and Colonize are two completely separate entities with two different owners. |
| 166. Hernandez is a co-owner of both Yellowcake and Colonize.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" | Undisputed that Hernandez is an owner of Colonize and that he once was an owner of Yellowcake. |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| thereto, Hernandez Depo I at 51:9-11, 116:18-117:14. | |
| 167.   In his position as co-owner of both Yellowcake and Colonize, Hernandez has admitted that both entities have operated – and continue to operate – as one single economic entity, with common ownership, common business operations, common office space, common staff, and many other common resources.<br><br>Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 80:3-20. | Disputes.  The cited deposition testimony of Hernandez does not support statement #167 inasmuch as Hernandez testified that Colonize "gets some stuff of value" for distributing Yellowcake's music.  Hernandez Depo I at 80:13. |
| 168.   In or about March 2019, Hernandez approached Chavez about selling the Los Originales Albums to Yellowcake.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 148:24-149:5. | Disputes.  The cited deposition testimony of Chavez does not support statement #168 inasmuch as Chavez testified he does not remember when Hernandez approached him, but it was in the year 2020 (Chavez Depo I at 78:9-25).  The cited deposition testimony of Hernandez does not support statement #168 inasmuch as Hernandez does not testify that he approached Chavez, and he testifies "it could have been 2018" when he first discussed with Chavez purchasing the Albums (Hernandez Depo I at 148:24-149:5).<br><br>On or about March 21, 2019, Chavez sold the entirety of his rights, title and interest in the copyrights of the sound recordings of the Albums to Yellowcake. Chavez Decl., Dkt. 46-2 at ¶¶ 15; Asset Purchase Agreement, Dkt. 83-3. |
| 169.   Hernandez had previously worked with Hyphy and had | Disputes.  Hernandez never worked for Hyphy, and statement # 169 is |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| secretly gained valuable information on Hyphy's business and relationship with Chavez. Hernandez therefor knew that Hyphy only had an oral agreement with the Group.<br><br>Martinez Decl. at ¶ 3; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 26:2-12. | unsubstantiated and self-serving.<br><br>The cited paragraph in the Martinez Decl. stating that Hernandez "used to work with Hyphy" and therefore "obtained valuable information . . . including the knowledge Hyphy's Agreement with the Group was oral" is misleading because Martinez testified Hernandez was merely an initial third-party distributer of Hyphy music (Martinez Depo. at 26:6-12), and such statement is pure speculation as Martinez also testified that Hyphy's business dealings with Hernandez began and ended in 2010, <u>approximately three years prior to the existence of the alleged oral agreement</u> (Martinez Depo. at 15:10-15, 26:20-23). |
| 170.   Hernandez approached and convinced Chavez, without Hyphy or the rest of the Group's knowledge, to assign the Albums to Yellowcake in exchange for payment of $500,000.<br><br>Begakis Decl. at ¶ 14, Exhibit "M" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 80:5-13, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 107:4-20. | Disputes.  The cited testimony of Chavez does not refer to any knowledge his backing musicians may or may not have had regarding the alleged conversation. Moreover, Chavez testified that the alleged transaction was a purchase, not an assignment.  The cited testimony of Hernandez is unrelated to statement #170.<br><br>Further disputes to the extent statement # 170 implies that anyone other than Chavez possessed the right to convey any right in the Albums.  Defendant consistently confirmed in both versions of its Counterclaims that the alleged oral agreement was between only Hyphy and Chavez.  Defendant's Counterclaim, Dkt. 17 at ¶¶ 15-17; Defendant's First |

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Amended Counterclaim, Dkt. 15 at ¶¶ 15-17.<br><br>Moreover, Martinez, the person who made the alleged oral agreement on behalf of Defendant, further confirmed, _repeatedly_, under penalty of perjury, in the August 2021 Martinez Reply Decl., that the alleged oral agreement was between only Hyphy and Chavez. August 2021 Martinez Reply Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8.<br><br>Defendant confirmed in other of its filings with the Court that the alleged oral agreement was between only Hyphy and Chavez.  Hyphy's Opposition to Yellowcake's Motion to Dismiss Hyphy's Counterclaims. Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18.<br><br>Florez and Vargas did not possess any alienable right, title or interest in the Albums.  Chavez was the sole producer, sole author and sole creator of the sound recordings of the Albums and therefore possessed all original rights, title and interest in the sound recordings of the Albums.  Chavez Decl., Dkt. 46-2 at ¶¶ 8-21; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10; Martinez Depo. at 60:5-61:2 (disclaiming Hyphy's involvement in the recording of -_"Naci Con Suerte de Rey Con Mariachi"_).<br><br>Neither Hyphy nor anyone affiliated with |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Hyphy provided any original creative input into the recording of the Albums, provided any original material for the sound recordings of the Albums or exercised any artistic, production or recording control over the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19; Rosales Decl., Dkt. 46-1 at ¶¶ 7-10.

Chavez never had an agreement or understanding with Hyphy, or anyone else, that it would be deemed a co-author of the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 8-13, 19. |
| 171.  Chavez and Yellowcake codified their purported agreement via an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019 (the "**Asset Purchase Agreement**").

Begakis Decl. at ¶ 7, Exhibit "F" thereto, Plaintiff/Counterdefendant's Document Production (PLF000021-PLF000039). | Undisputed Chavez and Yellowcake entered into the Asset Purchase Agreement set forth at Dkt. 83-3. |
| 172.  Hyphy distributed the Albums with the Album Artwork during all times in which Hyphy believed it possessed the exclusive right to distribute the Albums.

Martinez Decl. at ¶ 8, Exhibit "B" thereto; Begakis Decl. at ¶ 8, Exhibit "G" thereto, Martinez Depo at 67:24-68:24. | Disputes because on or about March 21, 2019, Chavez sold the entirety of his rights, title and interest in the copyrights of the sound recordings of the Albums to Yellowcake; at that point in time Hyphy lost whatever rights it may have had to distribute the Albums. Chavez Decl., Dkt. 46-2 at ¶¶ 14-15; Asset Purchase Agreement, Dkt. 83-3. |
| 173.  Counter-Defendants engaged in the unauthorized distribution of their own, pirated version of the | Disputed.  Neither Yellowcake, nor Colonize nor Hernandez has ever used the Album Artwork.  Berger Decl. at ¶¶ |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Albums with such Album Artwork.  Martinez Decl. at ¶ 12, Exhibit "D" thereto. | 25-33; Dkt. 82-16, Hernandez Decl. at ¶¶ 10-19. |
| 174.   When first distributed by Hyphy, each Album was assigned a unique International Standard Recording Code ("***ISRC***") and Universal Product Code ("***UPC***").  Begakis Decl. at ¶ 15, Exhibit "N" thereto, Deposition Transcript of Lawrence H. Katz, Esq. ("***Katz Depo***") at 68:8-18. | Disputes for the same reasons and objections set forth in the first paragraph of Yellowcake's response to statement # 144.  Moreover, the cited deposition testimony of Katz does not support statement #174 inasmuch as Katz specifically testified he has no personal knowledge of whether each Album was assigned an ISRC or UPC when it was first distributed, or if any such codes were procured by Hyphy or The Orchard.  Katz Depo. at 68:2-69:1, 69:22-70:7. |
| 175.   It is standard for a new sound recording placed into the stream of distribution to be assigned a unique ISRC and UPC.  Begakis Decl. at ¶ 15, Exhibit "N" thereto, Katz Depo at 46:1-47:4. | Disputes for the same reasons and objections set forth in the first paragraph of Yellowcake's response to statement # 144.  Moreover, the cited deposition testimony of Katz does not support statement #175 inasmuch as Katz admitted he lacks personal knowledge of how ISRCs are assigned or if they are unique; he testified that "many years ago" he called the isrc.net company and that is what was explained to him (Katz Depo. at 46:21-47:4), and his understanding is that UPCs serve a similar purpose (Katz depo at 47:15-18).  The cited deposition testimony of Katz also does not support statement #175 |

| **Hyphy's Undisputed Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | inasmuch as Katz admitted that ISRCs are not necessarily unique to a sound recording because digital service providers may "accept a new ISRC code from a new owner of a sound recording that is different from the previous ISRC code" (Katz Depo 63:12-64:5), and that ISRC assigned to a sound recording can change (Katz Depo. 165:18-22). |
| 176.   ISRCs and UPCs are sometimes referred to as "digital social security numbers" for products, and are used to track data regarding the distribution and exploitation of each respective Albums, and the sound recordings thereon.<br><br>Begakis Decl. at ¶ 15, Exhibit "N" thereto, Katz Depo at 46:1-47:4, 46:23-47:4, 47:5-18. | Disputes for the same reasons and objections set forth in the first paragraph of Yellowcake's response to statement # 144.<br><br>Moreover, the cited deposition testimony of Katz does not support statement #176 inasmuch as Katz admitted he lacks personal knowledge of how ISRCs are assigned or if they are unique; he testified that "many years ago" he called the isrc.net company and that is what was explained to him (Katz Depo. at 46:21-47:4).  Katz did not testify that UPCs are referred to as "digital social security numbers."<br><br>The cited deposition testimony of Katz also does not support statement #176 inasmuch as Katz admitted that ISRCs are not necessarily unique to a sound recording because digital service providers may "accept a new ISRC code from a new owner of a sound recording that is different from the previous ISRC code" (Katz Depo 63:12-64:5), and that ISRC assigned to a sound recording can change (Katz Depo. 165:18-22). |
| 177.   Because ISRCs and UPCs are | Disputes for the same reasons and |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| used to track data regarding each Album, and all sound recordings contained thereon, such codes should not have ever been duplicated.<br><br>Begakis Decl. at ¶ 15, Exhibit "N" thereto, Katz Depo at 48:23-49:14. | objections set forth in the first paragraph of Yellowcake's response to statement # 144.<br><br>Moreover, the cited deposition testimony of Katz does not support statement #177 inasmuch as Katz admitted he lacks personal knowledge of how ISRCs and UPCs were assigned to the Albums (Katz Depo. at 68:2-69:1, 69:22-70:7) and he does not testify that "ISRCs and UPCs are used to track data regarding each Album." |
| 178.   Yellowcake should have requested that Hyphy transfer Albums and their assigned ISRCs and UPCs to Yellowcake, in the event Yellowcake actually acquired the Albums lawfully.<br><br>Begakis Decl. at ¶ 15, Exhibit "N" thereto, Katz Depo at 74:1-22. | Disputes for the same reasons and objections set forth in the first paragraph of Yellowcake's response to statement # 144.<br><br>Moreover, the cited deposition testimony of Katz does not support statement #178 inasmuch as such testimony constitutes Katz's personal speculation and conclusions as to Yellowcake's and Colonize's knowledge and motives; and moreover such testimony does not reference the lawfulness of Yellowcake's acquisition of the Albums. |
| 179.   Yellowcake ignored established industry norms governing how the Albums should have been transferred, and instead simply re-released unauthorized duplicate (i.e., pirated) versions with the Album Artwork, and with newly assigned ISRC and UPCs.<br><br>Martinez Decl. at ¶ 11; Begakis Decl. at ¶ 15, Exhibit "N" thereto,  Katz Depo at | Disputes for the same reasons and objections set forth in the first paragraph of Yellowcake's response to statement # 144.<br><br>Moreover, neither Yellowcake, nor Colonize nor Hernandez has ever used the Album Artwork.  Berger Decl. at ¶¶ 25-33; Dkt. 82-16, Hernandez Decl. at ¶¶ 10-19. |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 70:23-71:9, 74:1-22, 74:23-75:17. | Moreover, the cited deposition testimony of Katz does not support statement #179 inasmuch as Katz specifically testified he has no personal knowledge of whether each Album was assigned an ISRC or UPC when it was first distributed, or if any such codes were procured by Hyphy or The Orchard, and he makes no reference to the Album Artwork whatsoever.  Katz Depo. at 68:2-69:1, 69:22-70:7. |
| 180.   Although Counter-Defendants later attempted to scrub the internet of their initial, infringing distribution of the Albums, Hyphy obtained proof of such distribution via one of the DSPs located at <daddykoolrecords.com>.<br><br>Martinez Decl. at ¶ 12, Exhibit "D" thereto. | Disputed.  Yellowcake created its own new Album covers after acquiring the sound recordings of the Albums and never used, uploaded or distributed Hyphy's artwork to anyone; Neither Colonize nor Yellowcake has ever had Daddy Kool Records as an account or client or sold any sound recordings to it; and the Daddy Kool Records website screenshots relied on by Hyphy do not mention or identify either Yellowcake or Colonize in any way.  Berger Decl., Dkt. 82-14 at ¶¶ 26-29; Hernandez Decl., Dkt. 82-16 at ¶¶ 11-14.  Moreover, Yellowcake and Colonize conducted an investigation of the alleged infringement of Hyphy's Album Artwork and discovered that in fact it was Hyphy, in corroboration with Morena Music, Inc. doing business as Long Play Music, Inc., who uploaded the albums to Daddy Kool Records (thus Hyphy's accusations of infringement are knowingly false).  Berger Decl., Dkt. 82-14 at ¶ 30; Hernandez Decl., Dkt. 82-16 at ¶ 15.  Daddy Kool Records received the Albums with the Album Artwork from |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Morena, through Hyphy and Morena's distributor, The Orchard, which is a fact that is confirmed in an email chain between Colonize and one of Daddy Kool Records' digital distributors, Audible Magic, who acknowledged that it had acquired the Albums with the Album Artwork from The Orchard, who in turn had received them from Morena d/b/a Long Play Music and uploaded them to Daddy Kool Records. Berger Decl., Dkt. 82-14 at ¶ 31; Hernandez Decl., Dkt. 82-16 at ¶¶ 16-17 and Exhibit "A" thereto.

Moreover, the cited paragraph in the Martinez Decl. constitutes nothing more than self-serving hearsay. |
| 181.    With respect to the Album entitled "Corridos de Poca M", Hyphy's originally assigned UPC Code is 889176663055. Yellowcake's later-acquired UPC Code is 758381471406. Yellowcake distributed this Album with Hyphy's Album Artwork, as confirmed by the display of such Album with Hyphy's Album Artwork and Yellowcake's later-acquired UPC Code offered for download on <daddykoolrecords.com>.

Martinez Decl. at ¶¶ 8, 12, Exhibits "B" and "D" thereto. | Disputed. Yellowcake created its own new Album covers after acquiring the sound recordings of the Albums and never used, uploaded or distributed Hyphy's artwork to anyone; Neither Colonize nor Yellowcake has ever had Daddy Kool Records as an account or client or sold any sound recordings to it; and the Daddy Kool Records website screenshots relied on by Hyphy do not mention or identify either Yellowcake or Colonize in any way. Berger Decl., Dkt. 82-14 at ¶¶ 26-29; Hernandez Decl., Dkt. 82-16 at ¶¶ 11-14. Moreover, Yellowcake and Colonize conducted an investigation of the alleged infringement of Hyphy's Album Artwork and discovered that in fact it was Hyphy, in corroboration with Morena Music, Inc. doing business as Long Play Music, Inc., |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | who uploaded the albums to Daddy Kool Records (thus Hyphy's accusations of infringement are knowingly false). Berger Decl., Dkt. 82-14 at ¶ 30; Hernandez Decl., Dkt. 82-16 at ¶ 15. Daddy Kool Records received the Albums with the Album Artwork from Morena, through Hyphy and Morena's distributor, The Orchard, which is a fact that is confirmed in an email chain between Colonize and one of Daddy Kool Records' digital distributors, Audible Magic, who acknowledged that it had acquired the Albums with the Album Artwork from The Orchard, who in turn had received them from Morena d/b/a Long Play Music and uploaded them to Daddy Kool Records.  Berger Decl., Dkt. 82-14 at ¶ 31; Hernandez Decl., Dkt. 82-16 at ¶¶ 16-17 and Exhibit "A" thereto. |
| 182.   With respect to the Album entitled "El Campesino", Hyphy's originally assigned UPC Code is 190374798310. Yellowcake's later-acquired UPC Code is 758381471420. Yellowcake distributed this Album with Hyphy's Album Artwork, as confirmed by the display of such Album with Hyphy's Album Artwork and Yellowcake's later-acquired UPC Code offered for download on <daddykoolrecords.com>.

Martinez Decl. at ¶¶ 8, 12, Exhibits "B" and "D" thereto. | Disputed.  Yellowcake created its own new Album covers after acquiring the sound recordings of the Albums and never used, uploaded or distributed Hyphy's artwork to anyone; Neither Colonize nor Yellowcake has ever had Daddy Kool Records as an account or client or sold any sound recordings to it; and the Daddy Kool Records website screenshots relied on by Hyphy do not mention or identify either Yellowcake or Colonize in any way.  Berger Decl., Dkt. 82-14 at ¶¶ 26-29; Hernandez Decl., Dkt. 82-16 at ¶¶ 11-14.  Moreover, Yellowcake and Colonize conducted an investigation of the alleged infringement of Hyphy's Album Artwork and |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
|  | discovered that in fact it was Hyphy, in corroboration with Morena Music, Inc. doing business as Long Play Music, Inc., who uploaded the albums to Daddy Kool Records (thus Hyphy's accusations of infringement are knowingly false). Berger Decl., Dkt. 82-14 at ¶ 30; Hernandez Decl., Dkt. 82-16 at ¶ 15. Daddy Kool Records received the Albums with the Album Artwork from Morena, through Hyphy and Morena's distributor, The Orchard, which is a fact that is confirmed in an email chain between Colonize and one of Daddy Kool Records' digital distributors, Audible Magic, who acknowledged that it had acquired the Albums with the Album Artwork from The Orchard, who in turn had received them from Morena d/b/a Long Play Music and uploaded them to Daddy Kool Records.  Berger Decl., Dkt. 82-14 at ¶ 31; Hernandez Decl., Dkt. 82-16 at ¶¶ 16-17 and Exhibit "A" thereto. |
| 183.   With respect to the Album entitled "Desde La Cantina De Mi Barrio", Hyphy's originally assigned UPC Code is 191018998417. Yellowcake's later-acquired UPC Code is 758381471413. Yellowcake distributed this Album with Hyphy's Album Artwork, as confirmed by the display of such Album with Hyphy's Album Artwork and Yellowcake's later-acquired UPC Code offered for download on | Disputed.  Yellowcake created its own new Album covers after acquiring the sound recordings of the Albums and never used, uploaded or distributed Hyphy's artwork to anyone; Neither Colonize nor Yellowcake has ever had Daddy Kool Records as an account or client or sold any sound recordings to it; and the Daddy Kool Records website screenshots relied on by Hyphy do not mention or identify either Yellowcake or Colonize in any way.  Berger Decl., Dkt. 82-14 at ¶¶ 26-29; Hernandez Decl., Dkt. 82-16 at ¶¶ 11-14.  Moreover, |

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| <daddykoolrecords.com>.<br><br>Martinez Decl. at ¶¶ 8, 12, Exhibits "B" and "D" thereto. | Yellowcake and Colonize conducted an investigation of the alleged infringement of Hyphy's Album Artwork and discovered that in fact it was Hyphy, in corroboration with Morena Music, Inc. doing business as Long Play Music, Inc., who uploaded the albums to Daddy Kool Records (thus Hyphy's accusations of infringement are knowingly false). Berger Decl., Dkt. 82-14 at ¶ 30; Hernandez Decl., Dkt. 82-16 at ¶ 15. Daddy Kool Records received the Albums with the Album Artwork from Morena, through Hyphy and Morena's distributor, The Orchard, which is a fact that is confirmed in an email chain between Colonize and one of Daddy Kool Records' digital distributors, Audible Magic, who acknowledged that it had acquired the Albums with the Album Artwork from The Orchard, who in turn had received them from Morena d/b/a Long Play Music and uploaded them to Daddy Kool Records.  Berger Decl., Dkt. 82-14 at ¶ 31; Hernandez Decl., Dkt. 82-16 at ¶¶ 16-17 and Exhibit "A" thereto. |
| 184.   Before Counter-Defendants knew that Hyphy had discovered proof of their infringement, Hernandez lied under oath during his deposition as the person most knowledgeable for Colonize by claiming that Yellowcake and Colonize would never distribute the Albums with Hyphy's Album Artwork (even though they had). | Disputed.  Neither Yellowcake, nor Colonize nor Hernandez has ever used or infringed upon the Album Artwork. Berger Decl., DKT. 82-14 at ¶¶ 25-33; Hernandez Decl., 82-16 at ¶¶ 10-19. |

SEPARATE STATEMENT OF UNDISPUTED FACTS

| Hyphy's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Begakis Decl. at ¶ 10, Exhibit "I" thereto, Hernandez Depo I at 211:24-212:6. | |
| 185. If Counter-Defendants are able to avoid liability for their infringement of Hyphy's Album Artwork, by arguing that only Colonize distributed the Albums, Hyphy will suffer significant injustice by not have any recourse in response to such wrongdoing.<br><br>Martinez Decl. at ¶ 14. | Disputed. Neither Yellowcake, nor Colonize nor Hernandez has ever used or infringed upon the Album Artwork. Berger Decl. at ¶¶ 25-33; Dkt. 82-16, Hernandez Decl. at ¶¶ 10-19. |

Dated:  August 4, 2023

Respectfully submitted,

**ABRAMS FENSTERMAN, LLP**
By: /s/ Seth L. Berman
Seth L. Berman, Esq. (*admitted pro hac vice*)
***Attorneys for Plaintiff Yellowcake, Inc., and Counterdefendants Yellowcake, Inc., Colonize Media, Inc., and  Jose David Hernandez***

SEPARATE STATEMENT OF UNDISPUTED FACTS

1

## **CERTIFICATE OF SERVICE**

2

    I hereby certify that this document filed through the ECF system on this ___
3

day of August 2023, will be sent electronically to the registered participants as
4

identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to
5

those that are indicated as non-registered participants, if any.

6

7

8                                    /s/ Seth L. Berman
                           Seth L. Berman, Esq.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SEPARATE STATEMENT OF UNDISPUTED FACTS