**ALTVIEW LAW GROUP, LLP**
JOHN M. BEGAKIS (SBN 278681)
john@altviewlawgroup.com
12100 Wilshire Blvd., Suite 800
Los Angeles, California 90025
Telephone: (310) 230-5580
Facsimile: (562) 275-8954

**SHERMAN LAW GROUP, LLP**
RICHARD LLOYD SHERMAN (SBN 106597)
richard@shermanlawgroup.com
9454 Wilshire Blvd., Suite 850
Beverly Hills, California 90212
Telephone: (310) 246-0321
Facsimile: (310) 246-0305

*Attorneys for Defendant/Counterclaimant* HYPHY MUSIC, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELLOWCAKE, INC., California corporation,<br><br>               Plaintiff,<br><br>      v.<br><br>HYPHY MUSIC, INC.,<br><br>              Defendant. | **Case No.: 1:20-cv-00988-JLT-BAM**<br><br>[Assigned to the Hon. Jennifer L. Thurston]<br><br>**HYPHY MUSIC, INC.'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION** |
| HYPHY MUSIC, INC.,<br><br>              Counterclaimant,<br><br>      v.<br><br>YELLOWCAKE, INC.; COLONIZE MEDIA, INC; JOSE DAVID HERNANDEZ; and JESUS CHAVEZ SR,<br><br>              Counter-Defendants. | Date:  September 29, 2023<br>Time: 9:00 a.m.<br>Dept.: Courtroom 4 (7th Floor)<br>       2500 Tulare Street<br>       Fresno, CA 93721<br>Judge: Hon. Jennifer L. Thurston |

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rule of Civil Procedure 56 and Eastern District of California Local Rule 260, Defendant Hyphy Music, Inc. ("**Hyphy**") hereby responds to the Separate Statement of Undisputed Facts submitted by Plaintiff Yellowcake, Inc. ("**Yellowcake**"), and Counter-Defendants Yellowcake, Colonize Media, Inc. ("**Colonize**"), and Jose David Hernandez ("**Hernandez**") (collectively, "**Counter-Defendants**"), in support of their Motion for Summary Judgment filed on or about July 14, 2023 (the "**Motion**").

| | Plaintiff/Counterdefendants, Undisputed Facts | Evidence in Support of Plaintiff/ Counterdefendants' Undisputed Facts | Defendant's Response and Supporting Evidence |
|---|---|---|---|
| 1 | Jesus Chavez Sr. ("Chavez") is the founder of the band Los Originales de San Juan (the "Band"). | Dkt. 46-2, ¶ 3-4. | Disputed. Jesus Chavez Sr. ("**Chavez**") was the lead singer and co-equal member of the Spanish-language musical group Los Originales De San Juan (the "**Group**"), which operated as an unincorporated partnership comprised of Chavez and fellow band members Domingo Torres Flores ("**Flores**") and Alfonso Vargas ("**Vargas**"). Begakis Decl. at ¶ 11, Exhibit "Q" thereto, Deposition Transcript of Alfonso Vargas ("**Vargas Depo**") at 17:16-19, 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "R" thereto, Deposition Transcript of Domingo Torres Flores ("**Flores Depo**") at 47:15-25, 48:19-23, 82:13-15, 82:22-83:2, 83:4-13, 85:25- |

1

HYPHY MUSIC'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO YELLOWCAKE AND COLONIZE MEDIA' MOTION FOR SUMMARY JUDGMENT / ADJUDICATION

| | | | |
|---|---|---|---|
| | | | 86:11, 86:13-21; Begakis Decl. at ¶ 13, Exhibit "S" thereto, Jesus Chavez, Sr. Deposition, Volume I ("**Chavez Depo I**") at 18:16-19:3, 20:8-16, 21:16-19, 25:13-14; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Jesus Chavez, Sr. Deposition, Volume II ("**Chavez Depo II**") at 16:22-17:5, 20:20-21:16, 26:13-20, 31:8-16, 33:18-34:1, 38:8-18, 41:13-42:2. |
| 2 | Chavez was always the bandleader, principal performer, principal songwriter of the Band. | Dkt. 46-2, ¶ 3-4. | Disputed.  Chavez was the lead singer and co-equal member of the Group, which operated as an unincorporated partnership comprised of Chavez and fellow band members Flores and Vargas.<br><br>Begakis Decl. at ¶ 11, Exhibit "Q" thereto, Vargas Depo at 17:16-19, 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "R" thereto, Flores Depo at 47:15-25, 48:19-23, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21; Begakis Decl. at ¶ 13, Exhibit "S" thereto, Chavez Depo I at 18:16-19:3, 20:8-16, 21:16-19, 25:13-14; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 16:22-17:5, 20:20-21:16, 26:13-20, 31:8-16, 33:18-34:1, 38:8-18, 41:13-42:2. |
| 3 | Chavez owned all intellectual property produced by the Band including all copyrights in its sound recordings and trademarks. | Dkt. 46-2, ¶ 3-4. | Disputed. Flores and Vargas were plainly joint authors of the sound recording albums at issue in this dispute (the "**Albums**"), as evidenced by the facts that they: (a) along with Chavez, were equally credited as "Los Originales De San Juan"; (b) shared equally in all profits generated by the Group and |

2

| | | | | |
|---|---|---|---|---|
| 1 | | | | were granted equal access to inspect all records related to the Group's receipt of profits; and (c) were equally involved in all Group activities. Additionally, no paperwork exists to establish that Flores and Vargas are anything other than co-equal, co-controlling members of the Group, and at no point has Chavez ever obtained signed written agreements granting Chavez all rights in the respective Albums from Flores, Vargas, or any other third party who may have creatively contributed to the creation and/or production thereof. |
| 11 | | | | Begakis Decl. at ¶ 11, Exhibit "Q" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "R" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21; Begakis Decl. at ¶ 13, Exhibit "S" thereto, Chavez Depo I at 18:23-19:3; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 20:20-21:16, 26:13-20, 31:8-16, 33:18-34:1, 38:8-18, 41:13-42:2. |
| 21 | 4 | 2013 and 2015, Chavez, recording under the moniker Los Originales de San Juan, recorded six albums titled: (i) *Los Originales de San Juan-"El Campesino"*; (ii) *Los Originales de San Juan-"Corridos de Poca M"*; (iii) *Los Originales de San Juan-"En Vivo Desde La Cantina de Mi Barrio"*; (iv) *Los Originales de San Juan-"Nuestra Historia En* | Dkt. 46-2, ¶ 7 | Disputed, to the extent that Chavez was merely the lead singer, and a co-equal member of, the Group, which operated as an unincorporated partnership comprised of Chavez and fellow band members Flores and Vargas, who themselves were plainly joint authors of the Albums based on their contributions to the recording of such Albums. |

3

| | | | | |
|---|---|---|---|---|
| | | *Vivo"*; (v) *Los Originales de San Juan- "Amigos y Contrarios"*; and (vi) *Los Originales de San Juan- "Naci Con Suerte de Rey Con Mariachi"* (collectively "Albums"). | | Declaration of Jose Martinez ("**Martinez Decl.**") at ¶ 4; Begakis Decl. at ¶ 11, Exhibit "Q" thereto, Vargas Depo at 17:16-19, 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "R" thereto, Flores Depo at 47:15-25, 48:19-23, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21; Begakis Decl. at ¶ 13, Exhibit "S" thereto, Chavez Depo I at 18:16-19:3, 20:8-16, 21:16-19, 25:13-14; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 16:22-17:5, 20:20-21:16, 26:13-20, 31:8-16, 33:18-34:1, 38:8-18, 41:13-42:2. |
| 5 | Hector Omar Rosales ("Rosales") acted as the audio engineer for four (4) of the Albums recorded in his studio. | Rosales Dec. Dkt. 46-1, ¶ 5; Chavez Dec Dkt. 46-2, ¶ 11. | Undisputed. |
| 6 | Chavez was the sole producer of the Albums and no employee or anybody else affiliated with Morena produced any songs on the Albums or provided any original creative input into the recording of the Albums. | Rosales Dec. Dkt. 46-1, ¶ 9; Chavez Dec. Dkt. 46-2, ¶ 8. | Disputed. Hyphy closely collaborated with the Group to produce the Albums. For the first three (of five) Albums, Hyphy: (a) helped determine the "theme" and overall creative direction of each Album; (b) crucially selected the songs to be included in each Album; (c) selected the recording studio and paid for all costs associated with the recording of each Album; (d) hired the sound engineer; (e) paid the Group a substantial mount for recording the Albums; and (f) Oversaw and generally supervised the recording and production of each Album. For the final two (of five) Albums (which are each comprised of recordings from a previous |

4

HYPHY MUSIC'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO YELLOWCAKE AND COLONIZE MEDIA' MOTION FOR SUMMARY JUDGMENT / ADJUDICATION

| | | | |
|---|---|---|---|
| | | | live performance by the Group), Hyphy also: (a) selected and paid for the venue of the live performance; (b) selected the songs to be performed at the live performance (and then recorded for the Albums); (c) directly employed, supervised, and directed the services of the sound engineer and videographer who each recorded the audio and video of the live performance, respectively; (d) wrote a script for the history of the Group as presented as part of the Group's live performance, and hired an "MC"/commentator who narrated the script; and (e) re-recorded portions of the guitarist's contributions to the live performance afterwards using a new guitarist selected, hired and paid for by Hyphy.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Deposition Transcript of Jose Martinez ("**Martinez Depo**") at 75:6-76:25, 83:11-84:22, 84:24-85:8, 85:14-86:16. |
| 7 | At no time during their recording or subsequent existence were there any other co-owners of the Copyrighted sound recordings in the albums besides Chavez. | Chavez Dec. Dkt. 46-2, ¶¶ 8-19. | Disputed. Flores and Vargas were plainly joint authors of the Albums, as evidenced by the facts that they: (a) along with Chavez, were equally credited as "Los Originales De San Juan"; (b) shared equally in all profits generated by the Group and were granted equal access to inspect all records related to the Group's receipt of profits; and (c) were equally involved in all Group activities. Additionally, no |

| | | | | paperwork exists to establish that Flores and Vargas are anything other than co-equal, co-controlling members of the Group, and at no point has Chavez ever obtained signed written agreements granting Chavez all rights in the respective Albums from Flores, Vargas, or any other third party who may have creatively contributed to the creation and/or production thereof. Disputed. Hyphy closely collaborated with the Group to produce the Albums. For the first three (of five) Albums, Hyphy: (a) helped determine the "theme" and overall creative direction of each Album; (b) crucially selected the songs to be included in each Album; (c) selected the recording studio and paid for all costs associated with the recording of each Album; (d) hired the sound engineer; (e) paid the Group a substantial mount for recording the Albums; and (f) Oversaw and generally supervised the recording and production of each Album. For the final two (of five) Albums (which are each comprised of recordings from a previous live performance by the Group), Hyphy also: (a) selected and paid for the venue of the live performance; (b) selected the songs to be performed at the live performance (and then recorded for the Albums); (c) directly employed, supervised, and directed the services of the sound engineer and videographer who each recorded the audio and |

6

| | | | | |
|---|---|---|---|---|
| | | | | video of the live performance, respectively; (d) wrote a script for the history of the Group as presented as part of the Group's live performance, and hired an "MC"/commentator who narrated the script; and (e) re-recorded portions of the guitarist's contributions to the live performance afterwards using a new guitarist selected, hired and paid for by Hyphy.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-76:25, 83:11-84:22, 84:24-85:8, 85:14-86:1; Begakis Decl. at ¶ 11, Exhibit "Q" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "R" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21; Begakis Decl. at ¶ 13, Exhibit "S" thereto, Chavez Depo I at 18:23-19:3; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 20:20-21:16, 26:13-20, 31:8-16, 33:18-34:1, 38:8-18, 41:13-42:2. |
| 8 | Martinez is the chief executive officer and owner of Hyphy Music, Inc. | *See* Martinez Trans, Pg. 12, Lns. 4-5. | Undisputed. | |
| 9 | In or around February 2013, Chavez and Hyphy entered into an *oral distribution agreement* for the Albums to be *recorded by Chavez* under the name Los Originales de San Juan and distributed by Hyphy ("Hyphy Distribution Agreement"). | Chavez Dec., Dkt. 46-2, Hyphy's Counterclaims, Dkt. 7, ¶ 16; and First Amended Counterclaim, Dkt. 15, ¶ 16; Opposition to Motion to Dismiss, Dkt. 27, Pg. 2 Lns. | Disputed. Hyphy closely collaborated with the Group to produce the Albums, which they orally agreed were to be owned by Hyphy.<br><br>Martinez Decl. at ¶¶ 3, 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, | |

7

| | | | | |
|---|---|---|---|---|
| 1 | | | 1-5. | Martinez Depo at 75:6-76:25, 83:11-84:22, 84:24-85:8, 85:14-86:1. |
| 2 | 10 | Moreover, Hyphy claimed on multiple occasions that it had allegedly "commissioned" Chavez, *and Chavez alone*, to record the Albums. | Hyphy's Counterclaims, Dkt. 7, ¶ 16; Hyphy's Amended Counterclaims, Dkt. 15, ¶ 16; Defendant's Opposition to Plaintiff-Counterdefendants' Motion to Dismiss Defendant-Counterclaimant's Counterclaims Dkt. 27, Pg. 1, Ln. 27-Pg. 2, Ln. 5; Hyphy's Reply to Counterdefendants' Challenge to The Validity of Certain Copyright Registrations Dkt. 45, Pg. 1, Lns. 16-18; Declaration of Jose Martinez in Support of Reply | Disputed. Hyphy closely collaborated with the Group to produce the Albums, which they orally agreed were to be owned by Hyphy. Martinez Decl. at ¶¶ 3, 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-76:25, 83:11-84:22, 84:24-85:8, 85:14-86:1. |

HYPHY MUSIC'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO YELLOWCAKE AND COLONIZE MEDIA' MOTION FOR SUMMARY JUDGMENT / ADJUDICATION

| | | | | |
|---|---|---|---|---|
| 1 | | | to | |
| 2 | | | Counterdefendants | |
| 3 | | | ' Challenge to the | |
| 4 | | | Validity of Certain | |
| 5 | | | Copyright | |
| 6 | | | Registrations , Dkt. | |
| 7 | | | 45-1, Pg. 1, Lns. 8- | |
| 8 | | | 16. | |
| 9 | 1 1 | Chavez had no intent to transfer any ownership interest in the Albums to Hyphy nor is there any evidence in the record to suggest that he did. | Chavez Dec. Dkt. 46-2, ¶ 14. | Disputed. Chavez's intention to record the works on behalf of Hyphy is evidenced by the Group's close collaboration with Hyphy to produce the Albums, and by the oral agreement entered into between and among the parties in exchange for valuable consideration that the Albums would be owned by Hyphy. Hyphy also subsequently distributed and otherwise exploited the Albums for years pursuant to the Agreement, without Chavez ever making any claim for further payment as a result of such distribution or exploitation. |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | Martinez Decl. at ¶¶ 3, 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-76:25, 83:11-84:22, 84:24-85:8, 85:14-86:1. |
| 21 | | | | |
| 22 | | | | |
| 23 | 1 2 | Jose Martinez, as a sophisticated music business executive, testified that he intentionally entered into an oral-only agreement | Pg. 114, Ln. 25-Pg. 115, Lns. 1-3 of the Deposition Transcript of Jose Martinez | Disputed. Jose Martinez ("*Martinez*"), through Hyphy, entered into an oral agreement with the Group, through Chavez, for the parties to co-create various sound recordings embodied on multiple albums to be owned by Hyphy, in |
| 24 | | | | |
| 25 | | | | |
| 26 | | | | |
| 27 | | | | |

9

HYPHY MUSIC'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO YELLOWCAKE AND COLONIZE MEDIA' MOTION FOR SUMMARY JUDGMENT / ADJUDICATION

| | | | | |
|---|---|---|---|---|
| | | with to distribute the Albums. | | exchange for valuable consideration paid to the Group by Hyphy through Chavez. Martinez Decl. at ¶¶ 3, 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-76:25, 83:11-84:22, 84:24-85:8, 85:14-86:1. |
| | 13 | Plaintiff Yellowcake, Inc. ("Yellowcake") is primarily engaged in the business of exploiting various intellectual property rights. | Kevin Berger Declaration, ¶ 2 | Undisputed. |
| | 14 | Colonize is a company engaged in the business of digital music distribution and distributes the Albums on behalf of Yellowcake. | Berger Dec., ¶ 13 | Disputed. Yellowcake utilizes Counter-Defendant Colonize as its "distribution arm" to release and exploit rights acquired by Yellowcake, but for all intents and purposes Yellowcake and Colonize operated – and continue to operate – as one single economic entity, with common ownership, common business operations, common office space, common staff, and many other common resources. Begakis Decl. at ¶ 10, Exhibit "P" thereto, Hernandez Depo I at 80:3-20. |
| | 15 | Counter-defendant Jose David Hernandez ("Hernandez") is a principal of Colonize. | Hernandez Dec., ¶ 1. | Undisputed. |
| | 16 | On or about March 21, 2019, Yellowcake and Chavez entered into an Asset Purchase and Assignment Agreement ("APA Agreement"), whereby Yellowcake purchased Chavez's entire ownership of the rights, title and interests in the sound recordings which comprised the works of Los Originales | Berger Dec., ¶ 9. | Disputed. After Counter-Defendant Hernandez approached and convinced Chavez, without Hyphy or the rest of the Group's knowledge, to assign the Albums to Yellowcake in exchange for payment of $500,000, Chavez and Yellowcake codified their purported agreement via an "Asset Purchase and |

| | | De San Juan, including the Albums. | | Assignment Agreement executed on or about March 21, 2019 (the "Asset Purchase Agreement"). Although Section 13.e. of the Asset Purchase Agreement sets forth Chavez's purported representation and warranty to Yellowcake that Chavez "was the only owner of" the Albums with "good and marketable title" thereto, Chavez never obtained signed written agreements granting Chavez all rights in the respective Albums from Flores, Vargas, or any other third party who may have creatively contributed to the creation and/or production thereof. |
| | | | | Martinez Decl. at ¶ 5; Begakis Decl. at ¶ 7, Exhibit "M" thereto, Plaintiff/Counter-Defendant's Document Production (PLF000021-PLF000039); Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 26:2-12; Begakis Decl. at ¶ 10, Exhibit "P" thereto, Hernandez Depo I at 51:9-11, 107:4-20, 116:18-117:14, 148:24-149:5; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16. |
| 17 | In the APA, Chavez represented that he owned all rights transferred to Yellowcake therein. | Berman Dec. Exh. "B" ¶ 13(e). | Undisputed. |
| 18 | Prior to entering into the APA, Yellowcake did due diligence and searched the United States Copyright Office ("USCO") to determine whether there were any potential competing copyright registrations filed for the | Berger Dec., ¶¶ 7-8 | Disputed. Yellowcake did not conduct any due diligence with the respect to the Albums or the transaction contemplated by the Asset Purchase Agreement. Begakis Decl. at ¶ 10; |

11

| | | | | |
|---|---|---|---|---|
| 1 | | Albums and found none, *because there were none.* | | Exhibit "P" thereto, Hernandez Depo I at 109:22-110:11. |
| 2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17 | 1<br>9 | Following its execution of the APA Agreement, Yellowcake complied with all requirements set forth by the Copyright Act, 17 U.S.C. § 101, *et seq.*, by registering copyrights for each sound recording acquired by the APA Agreement in addition to recording the APA with the USCO. | Dkt. 1, Exh. "A" | Disputed. Although the Asset Purchase Agreement contains Chavez's purported representation and warranty that he was "the only owner of" the Albums with "good marketable title" thereto, Chavez never obtained signed written agreements granting him all rights in the respective Albums from Flores, Vargas, or any other third party who may have creatively contributed to the creation and/or production thereof.<br><br>Begakis Decl. at ¶ 6, Exhibit "L" thereto, Yellowcake Interrogatory Responses at pp. 4-5; Begakis Decl. at ¶ 7, Exhibit "M" thereto, Yellowcake Responses to Request for Production at p. 4; Begakis Decl. at ¶ 7, Exhibit "M" thereto, Plaintiff/Counter-Defendant's Document Production (PLF00024). |
| 18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27 | 2<br>0 | Sometime after execution of the APA Agreement and the issuance of the copyright registrations by the USCO, Yellowcake learned that Morena had been distributing copies of songs on the Albums and created and/or uploaded videos containing unauthorized derivative works of songs on the Albums to www.YouTube.com when Colonize found that YouTube was reporting "conflicts" between Yellowcake and Morena because both were distributing videos with the same sound recordings on | Complaint, Dkt. 1, Exh. "A", ¶ 1. Berger Dec. at ¶ 18. | Disputed. Neither Yellowcake nor any of the other Counter-Defendants could have "learned" (i.e., obtained information for the first time) that Hyphy had been distributing the Albums when "Colonize found that YouTube was reporting 'conflicts'" because Hernandez, an owner and executive of both Yellowcake and Colonize: (a) had known about Chavez since he was a child; and (b) had been working with Chavez through Yellowcake and Colonize since 2016. |

HYPHY MUSIC'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO YELLOWCAKE AND COLONIZE MEDIA' MOTION FOR SUMMARY JUDGMENT / ADJUDICATION

| | | | | |
|---|---|---|---|---|
| 1 2 3 | | the Albums. | | Begakis Decl. at ¶ 10, Exhibit "P" thereto, Hernandez Depo I at 134:2-25; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 62:3-6. |
| 4 5 6 | 2 1 | This Court already took judicial notice of Yellowcake's copyright registrations in the Albums in its prior Order dated March 1, 2021. | Dkt. 42, Pg. 5, fn. 1. | Undisputed. |
| 7 8 9 10 11 12 | 2 2 | Shortly thereafter, in or about June 2020, Yellowcake filed "Takedown Notices" pursuant to 17 U.S.C. § 512 *et seq.* through YouTube claiming ownership of the songs and notified Hyphy's distributor, The Orchard, that Hyphy was infringing Yellowcake's copyrighted Albums. | Berman Dec. **Exh. "C"**. | Undisputed. |
| 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 | 2 3 | Hyphy completely disregarded these notices and continued to exploit the copyrighted Albums, including but not limited to selling and streaming them on multiple digital service providers like Spotify, Apple Music, iTunes and Amazon Music, even after Yellowcake filed this lawsuit. As such, Yellowcake was required under 17 U.S.C. § 512 *et seq.* and YouTube's protocols to file this action | Hyphy's royalty reports extending to 2022 annexed to Berman Dec. as **Exh. "D"**. | Disputed. Yellowcake does not own exclusive rights in and to the Albums because Yellowcake did not acquire exclusive rights from Chavez when Yellowcake and Chavez entered into the Asset Purchase Agreement. Begakis Decl. at ¶ 7, Exhibit "M" thereto, Plaintiff/Counterdefendant's Document Production (PLF000024); Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 22:20-23:3, 23:11-15. |

HYPHY MUSIC'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO YELLOWCAKE AND COLONIZE MEDIA' MOTION FOR SUMMARY JUDGMENT / ADJUDICATION

28

| | | | | |
|---|---|---|---|---|
| | | to protect its rights and prevent further conflicts with the digital service providers. | | |
| | 2 4 | Hyphy admitted to receiving the following gross amounts for the exploitation of each Album: (i) "*El Campesino*," – approximately $20,000; (ii) *Des de la Cantina de Mi Barrio*," – approximately $20,000; (iii) "*Nuestra Historia en Vivo*," – approximately $20,000; (iv) "*Corridos de Poca M*," – approximately $20,000; (v) "*Amigos y Contrarios*" – approximately $20,000; and (vi) "*Naci Con Suerte de Rey (Mariachi)*" – approximately $20,000. | Berman Dec. <u>Exh. "E"</u>, Response 2(vii) and 4(iii) | Disputed, to the extent that The Orchard's most recent revenue report, which was produced directly to Counter-Defendants via business record subpoena, evidence that Hyphy has only generated a total of $104,131 from the exploitation of all of the Albums combined. Martinez Decl. at ¶ 11. |

///

///

///

## **HYPHY'S ADDITIONAL UNDISPUTED MATERIAL FACTS**

HYPHY MUSIC'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO YELLOWCAKE AND COLONIZE MEDIA' MOTION FOR SUMMARY JUDGMENT / ADJUDICATION

## I. <u>YELLOWCAKE IS NOT THE ALBUMS' SOLE OWNER</u>

| <u>Hyphy's Undisputed Material Facts and Supporting Evidence</u> | <u>Counter-Defendants' Response and Supporting Evidence</u> |
|---|---|
| 1. Hyphy is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings by such artists, coupled with artwork.<br><br>Declaration of John Begakis (***"Begakis Decl."***) at ¶ 8, Exhibit "N" thereto, Jose Martinez Deposition Transcript (***"Martinez Depo"***) at 13:6-14:6. | |
| 2. Counter-Defendant Jesus Chavez Sr. (***"Chavez"***) is the lead singer of the Spanish-language musical group Los Originales De San Juan (the ***"Group"***).<br><br>Begakis Decl. at ¶ 13, Exhibit "S" thereto, Jesus Chavez, Sr. Deposition, Volume I (***"Chavez Depo I"***) at 25:13-14; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Jesus Chavez, Sr. Deposition, Volume II (***"Chavez Depo II"***) at 16:22-17:5. | |
| 3. The Group operates as a co-equal partnership comprised of Chavez, accordion player Domingo Torres Flores (***"Flores"***), and drummer Alfonso Vargas (***"Vargas"***).<br><br>Begakis Decl. at ¶ 11, Exhibit "Q" thereto, Deposition Transcript of Alfonso | |

15

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| Vargas ("***Vargas Depo***") at 17:16-19, 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "R" thereto, Deposition Transcript of Domingo Torres Flores ("***Flores Depo***") at 47:15-25, 48:19-23, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21; Begakis Decl. at ¶ 13, Exhibit "S" thereto, Chavez Depo I at 18:16-19:3, 20:8-16, 21:16-19; Begakis Decl. at ¶14, Exhibit "T" thereto, Chavez Depo II at 20:20-21:16, 26:13-20, 31:8-16, 33:18-34:1, 38:8-18, 41:13-42:2. | |
| 4.   In or about February 2013, Hyphy and the Group began working together to co-create various sound recordings to be embodied on multiple albums, which the parties had orally agreed were to be owned by Hyphy (the "***Agreement***").<br><br>Declaration of Jose Martinez ("***Martinez Decl.***") at ¶ 3; Begakis Decl. at ¶ 13, Exhibit "S" thereto, Chavez Depo I at 34:7-11; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 19:14-17, 32:16-20, 35:12-21. | |
| 5.   The albums created pursuant to the Agreement were entitled (1) "Amigos y Contrarios"; (2) "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La Cantina de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the "Los Originales Albums" or "Albums"). | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 44:7-23, 51:22-25. | |
| 6. One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded by Chavez. | |
| Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 44:24:-9, 154:11-155:25. | |
| 7. Though this Agreement was not initially memorialized in writing, Flores and Vargas understood that such Agreement existed, and therefore intended that all rights in and to their recording services, and the five Albums produced under the Agreement and pursuant to such services, be conveyed to Hyphy. | |
| Martinez Decl. at ¶ 7. Declaration of Domingo Torres Flores ("*Flores Decl.*") at ¶¶ 3-5; Declaration of Alfonso Vargas ("*Vargas Decl.*") at ¶¶ 3-5 | |
| 8. Flores and Vargas later confirmed their belief and intent to convey all rights in the Albums to Hyphy by executing enforceable Copyright Assignment Agreements on or about March 22, 2022 (collectively the "*Assignments*"). | |
| Martinez Decl. at ¶ 7, Exhibit "D" | |

HYPHY MUSIC'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO YELLOWCAKE AND COLONIZE MEDIA' MOTION FOR SUMMARY JUDGMENT / ADJUDICATION

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| thereto. | |
| 9. Unlike larger record labels, however, Hyphy closely collaborated with the Group to create the Albums.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-76:25, 83:11-84:22, 84:24-85:8, 85:14-86:16. | |
| 10. For the first three (of five) of the Los Originales Albums, Hyphy helped determine the "theme and overall creative direction of each Album.<br><br>Martinez Decl. at ¶ 8. | |
| 11. For the first three (of five) of the Los Originales Albums, Hyphy crucially selected the songs to be included in each Album.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 83:11-84:22. | |
| 12. For the first three (of five) of the Los Originales Albums, Hyphy selected the recording studio, and paid for all costs associated with the recording of each Album.<br><br>Martinez Decl. at ¶ 8. | |
| 13. For the first three (of five) of the Los Originales Albums, Hyphy hired the sound engineer.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ | |

18

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| 8, Exhibit "N" thereto, Martinez Depo at 59:21-60:7, 61:10-16. | |
| 14. For the first three (of five) of the Los Originales Albums, Hyphy paid the Group a substantial amount to record the Albums.<br><br>Martinez Decl. at ¶ 8. | |
| 15. For the first three (of five) of the Los Originales Albums, Hyphy oversaw and generally supervised the recording and production of each Album.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 85:14-86:16. | |
| 16. For the final two (of five) of the Los Originales Albums, Hyphy also selected and paid for the venue of the live performance.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-25. | |
| 17. For the final two (of five) of the Los Originales Albums, Hyphy also selected the songs to be performed at the live performance (which were recorded and subsequently include in the Albums).<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-25. | |
| 18. For the final two (of five) of the Los Originales Albums, Hyphy also | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| directly employed, supervised, and directed the services of the sound engineer and videographer who each recorded the audio and video of the live performance.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-25. | |
| 19. For the final two (of five) of the Los Originales Albums, Hyphy also wrote a script for the history of the Group as presented as part of the live performance, and hired an "MC"/commentator who narrated the script.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-25. | |
| 20. For the final two (of five) of the Los Originales Albums, Hyphy also re-recorded portions of the guitarist's contributions to the live performance afterwards, using a new guitarist selected, hired and paid for by Hyphy.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-25. | |
| 21. It should also be noted here that Flores and Vargas were plainly joint authors of the Albums because they were equally involved in all activities of the Band, which existed as an unincorporated partnership in | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| which all Band members were joint owners, participants and contributors.<br><br>Begakis Decl. at ¶ 11, Exhibit "Q" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "R" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21; Begakis Decl. at ¶ 13, Exhibit "S" thereto, Chavez Depo I at 18:23-19:3. | |
| 22. It should also be noted here that Flores and Vargas were plainly joint authors of the Albums because they were equally credited on all Albums in which each of them made contributions.<br><br>*See* Begakis Decl. at ¶ 11, Exhibit "Q" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "R" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | |
| 23. It should also be noted here that Flores and Vargas were plainly joint authors of the Albums because they shared equally in all profits of the Band, and were granted equal access to inspect all records related to the Band's receipt of all such profits.<br><br>Begakis Decl. at ¶ 11, Exhibit "Q" | |

HYPHY MUSIC'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO YELLOWCAKE AND COLONIZE MEDIA' MOTION FOR SUMMARY JUDGMENT / ADJUDICATION

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "R" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 20:20-21:16, 26:13-20, 31:8-16, 33:18-34:1, 38:8-18, 41:13-42:2. | |
| 24. Indeed, Flores and Vargas's co-equal status in the Group is how the Group is known to the public because, for example, none of the individual members of the Group – including Chavez – are individually identified on the Group's "biography" page located at the website <https://www.AllMusic.com> (the "***Website***"). Furthermore, the Group's "credits" page on the Website indicates that the credited "Artist" on all albums produced by the Group is "Los Originales De San Juan." Martinez Decl. at ¶ 18. | |
| 25. In addition to its original creative contributions to the production, recording and overall creation of the Los Originales Albums, Hyphy also designed and created the artwork featured on the cover of each Album (the "Album Artwork"). Martinez Decl. at ¶ 9; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at | |

HYPHY MUSIC'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO YELLOWCAKE AND COLONIZE MEDIA' MOTION FOR SUMMARY JUDGMENT / ADJUDICATION

| | Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|---|
| | 127:12-21. | |
| | 26.  Hyphy released the Albums, with the Album Artwork, for distribution through all available digital service providers ("**DSPs**") between 2013 and 2017.<br><br>Martinez Decl. at ¶ 13, Exhibit "H" thereto; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 44:7-23; 51:18-25; 67:24-69:5. | |
| | 27.  Thereafter, Hyphy obtained copyright registrations for all of such Album Artwork.<br><br>Martinez Decl. at ¶ 14, Exhibit "X" thereto; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 133:9-136:5. | |
| | 28.  Plaintiff/Counter-Defendant Yellowcake, Inc. ("Yellowcake") is a competing record label and distributor of sound recordings, utilizing Counter-Defendant Colonize Media, Inc. ("Colonize") as its "distribution arm" to release and exploit rights acquired by Yellowcake.<br><br>Begakis Decl. at ¶ 9, Exhibit "O" thereto, Deposition Transcript of Kevin Berger ("**Berger Depo**") at 91:19-23; Begakis Decl. at ¶ 10, Exhibit "P" thereto, Deposition Transcript of Jose David Hernandez, Volume I ("**Hernandez Depo I**") at 77:19-21. | |
| | 29.  Counter-Defendant Jose David | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| Hernandez ("Hernandez") is a co-owner of both Yellowcake and Colonize.<br><br>Begakis Decl. at ¶ 10, Exhibit "P" thereto, Hernandez Depo I at 51:9-11, 116:18-117:14, 148:24-149:5; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16. | |
| 30.  In that position, Hernandez has admitted that both corporations have operated – and continue to operate – as a single economic entity, with common ownership, business operations, office space, staff, and many other resources.<br><br>Begakis Decl. at ¶ 10, Exhibit "P" thereto, Hernandez Depo I at 80:3-20. | |
| 31.  In or about March 2019, Hernandez approached Chavez about selling the Los Originales Albums to Yellowcake.<br><br>Begakis Decl. at ¶ 10, Exhibit "P" thereto, Hernandez Depo I at 51:9-11, 116:18-117:14, 148:24-149:5; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16. | |
| 32.  Hernandez had previously worked with Hyphy and had secretly gained valuable information on Hyphy's business and relationship with Chavez. | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| Martinez Decl. at ¶ 5; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 26:2-12. | |
| 33. Hernandez thus knew that Hyphy only had an oral agreement with the Group, and approached and convinced Chavez, without Hyphy or the rest of the Group's knowledge, to assign the Albums to Yellowcake in exchange for payment of $500,000. | |
| Martinez Decl. at ¶ 5; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 26:2-12; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 80:5-13, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "P" thereto, Hernandez Depo I at 107:4-20. | |
| 34. Chavez and Yellowcake attempted to codify their purported agreement via an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019 (the "*Asset Purchase Agreement*"). | |
| Begakis Decl. at ¶ 7, Exhibit "M" thereto, Plaintiff/Counter-Defendant's Document Production (PLF000021-PLF000039). | |
| 35. In Section 13.e. of the Asset Purchase Agreement, Chavez represented and warranted to Yellowcake that Chavez was "the only owner of" the Albums, and possessed "good and marketable title" thereto at the time of sale. | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| Begakis Decl. at ¶ 7, Exhibit "M" thereto, Plaintiff/Counter-Defendant's Document Production (PLF00024). | |
| 36. Chavez never obtained signed written agreements from Flores, Vargas or Hyphy acquiring each party's respective contributions to, and rights in, the Albums and sound recordings embodied thereon.<br><br>Begakis Decl. at ¶ 6, Exhibit "L" thereto, Yellowcake Interrogatory Responses at pp. 4-5; Begakis Decl. at ¶ 7, Exhibit "M" thereto, Yellowcake Responses to Request for Production at p. 4. | |
| 37. Based on musical contributions alone, Flores and Vargas contributed *more* to the creation of the Albums than Chavez (who only sang) because they performed the accordion and drums, which are musical elements that are critical to the particular genre of music at issue (especially the accordion).<br><br>Martinez Decl. at ¶ 4. | |
| 38. Chavez repeatedly acknowledged Flores and Vargas' valuable contributions to the Albums, which were, in fact, so valuable to Chavez, that Chavez paid Flores royalties for his "[y]ears working for the band," and paid Vargas following Chavez's re-sale of the Works to Yellowcake because "[Vargas] was a good musician…" | |

26

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| Martinez Decl. at ¶ 4. | |

## II. YELLOWCAKE DOES NOT HAVE A TENABLE CLAIM FOR COPYRIGHT INFRINGEMENT

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| 39. Hyphy is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings by such artists, coupled with artwork.<br><br>Declaration of John Begakis (**"*Begakis Decl.*"**) at ¶ 8, Exhibit "N" thereto, Jose Martinez Deposition Transcript (**"*Martinez Depo*"**) at 13:6-14:6. | |
| 40. Counter-Defendant Jesus Chavez Sr. (**"*Chavez*"**) is the lead singer of the Spanish-language musical group Los Originales De San Juan (the **"*Group*"**).<br><br>Begakis Decl. at ¶ 13, Exhibit "S" thereto, Jesus Chavez, Sr. Deposition, Volume I (**"*Chavez Depo I*"**) at 25:13-14; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Jesus Chavez, Sr. Deposition, Volume II (**"*Chavez Depo II*"**) at 16:22-17:5. | |
| 41. The Group operates as a co-equal | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| partnership comprised of Chavez, accordion player Domingo Torres Flores ("*Flores*"), and drummer Alfonso Vargas ("*Vargas*"). Begakis Decl. at ¶ 11, Exhibit "Q" thereto, Deposition Transcript of Alfonso Vargas ("*Vargas Depo*") at 17:16-19, 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "R" thereto, Deposition Transcript of Domingo Torres Flores ("*Flores Depo*") at 47:15-25, 48:19-23, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21; Begakis Decl. at ¶ 13, Exhibit "S" thereto, Chavez Depo I at 18:16-19:3, 20:8-16, 21:16-19; Begakis Decl. at ¶14, Exhibit "T" thereto, Chavez Depo II at 20:20-21:16, 26:13-20, 31:8-16, 33:18-34:1, 38:8-18, 41:13-42:2. | |
| 42.  In or about February 2013, Hyphy and the Group began working together to co-create various sound recordings to be embodied on multiple albums, which the parties had orally agreed were to be owned by Hyphy (the "*Agreement*"). Declaration of Jose Martinez ("*Martinez Decl.*") at ¶ 3; Begakis Decl. at ¶ 13, Exhibit "S" thereto, Chavez Depo I at 34:7-11; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 19:14-17, 32:16-20, 35:12-21. | |
| 43.  The albums created pursuant to the Agreement were entitled (1) | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| "Amigos y Contrarios"; (2) "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La Cantina de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the "Los Originales Albums" or "Albums"). <br><br> Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 44:7-23, 51:22-25. | |
| 44. One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded by Chavez. <br><br> Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 44:24:-9, 154:11-155:25. | |
| 45. Though this Agreement was not initially memorialized in writing, Flores and Vargas understood that such Agreement existed, and therefore intended that all rights in and to their recording services, and the five Albums produced under the Agreement and pursuant to such services, be conveyed to Hyphy. <br><br> Martinez Decl. at ¶ 7. Declaration of Domingo Torres Flores ("*Flores Decl.*") at ¶¶ 3-5; Declaration of Alfonso Vargas ("*Vargas Decl.*") at ¶¶ 3-5 | |
| 46. Flores and Vargas later confirmed their belief and intent to convey all | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| rights in the Albums to Hyphy by executing enforceable Copyright Assignment Agreements on or about March 22, 2022 (collectively the "**Assignments**").<br><br>Martinez Decl. at ¶ 7, Exhibit "D" thereto. | |
| 47. Unlike larger record labels, however, Hyphy closely collaborated with the Group to create the Albums.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-76:25, 83:11-84:22, 84:24-85:8, 85:14-86:16. | |
| 48. For the first three (of five) of the Los Originales Albums, Hyphy helped determine the "theme and overall creative direction of each Album.<br><br>Martinez Decl. at ¶ 8. | |
| 49. For the first three (of five) of the Los Originales Albums, Hyphy crucially selected the songs to be included in each Album.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 83:11-84:22. | |
| 50. For the first three (of five) of the Los Originales Albums, Hyphy selected the recording studio, and paid for all costs associated with the recording of each Album. | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| Martinez Decl. at ¶ 8. | |
| 51.  For the first three (of five) of the Los Originales Albums, Hyphy hired the sound engineer.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 59:21-60:7, 61:10-16. | |
| 52.  For the first three (of five) of the Los Originales Albums, Hyphy paid the Group a substantial amount to record the Albums.<br><br>Martinez Decl. at ¶ 8. | |
| 53.  For the first three (of five) of the Los Originales Albums, Hyphy oversaw and generally supervised the recording and production of each Album.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 85:14-86:16. | |
| 54.  For the final two (of five) of the Los Originales Albums, Hyphy also selected and paid for the venue of the live performance.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-25. | |
| 55.  For the final two (of five) of the Los Originales Albums, Hyphy also selected the songs to be performed at the live performance (which were recorded and subsequently include | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| in the Albums).<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-25. | |
| 56.  For the final two (of five) of the Los Originales Albums, Hyphy also directly employed, supervised, and directed the services of the sound engineer and videographer who each recorded the audio and video of the live performance.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-25. | |
| 57.  For the final two (of five) of the Los Originales Albums, Hyphy also wrote a script for the history of the Group as presented as part of the live performance, and hired an "MC"/commentator who narrated the script.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-25. | |
| 58.  For the final two (of five) of the Los Originales Albums, Hyphy also re-recorded portions of the guitarist's contributions to the live performance afterwards, using a new guitarist selected, hired and paid for by Hyphy.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| 75:6-25. | |
| 59. It should also be noted here that Flores and Vargas were plainly joint authors of the Albums because they were equally involved in all activities of the Band, which existed as an unincorporated partnership in which all Band members were joint owners, participants and contributors. | |
| Begakis Decl. at ¶ 11, Exhibit "Q" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "R" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21; Begakis Decl. at ¶ 13, Exhibit "S" thereto, Chavez Depo I at 18:23-19:3. | |
| 60. It should also be noted here that Flores and Vargas were plainly joint authors of the Albums because they were equally credited on all Albums in which each of them made contributions. | |
| *See* Begakis Decl. at ¶ 11, Exhibit "Q" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "R" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | |
| 61. It should also be noted here that Flores and Vargas were plainly joint authors of the Albums because they | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| shared equally in all profits of the Band, and were granted equal access to inspect all records related to the Band's receipt of all such profits.<br><br>Begakis Decl. at ¶ 11, Exhibit "Q" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "R" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 20:20-21:16, 26:13-20, 31:8-16, 33:18-34:1, 38:8-18, 41:13-42:2. | |
| 62. Indeed, Flores and Vargas's co-equal status in the Group is how the Group is known to the public because, for example, none of the individual members of the Group – including Chavez – are individually identified on the Group's "biography" page located at the website <https://www.AllMusic.com> (the "***Website***"). Furthermore, the Group's "credits" page on the Website indicates that the credited "Artist" on all albums produced by the Group is "Los Originales De San Juan."<br><br>Martinez Decl. at ¶ 18. | |
| 63. In addition to its original creative contributions to the production, recording and overall creation of the | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| Los Originales Albums, Hyphy also designed and created the artwork featured on the cover of each Album (the "Album Artwork"). <br><br> Martinez Decl. at ¶ 9; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 127:12-21. | |
| 64.  Hyphy released the Albums, with the Album Artwork, for distribution through all available digital service providers ("*DSPs*") between 2013 and 2017. <br><br> Martinez Decl. at ¶ 13, Exhibit "H" thereto; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 44:7-23; 51:18-25; 67:24-69:5. | |
| 65.  Thereafter, Hyphy obtained copyright registrations for all of such Album Artwork. <br><br> Martinez Decl. at ¶ 14, Exhibit "X" thereto; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 133:9-136:5. | |
| 66.  Plaintiff/Counter-Defendant Yellowcake, Inc. ("Yellowcake") is a competing record label and distributor of sound recordings, utilizing Counter-Defendant Colonize Media, Inc. ("Colonize") as its "distribution arm" to release and exploit rights acquired by Yellowcake. <br><br> Begakis Decl. at ¶ 9, Exhibit "O" | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| thereto, Deposition Transcript of Kevin Berger ("**Berger Depo**") at 91:19-23; Begakis Decl. at ¶ 10, Exhibit "P" thereto, Deposition Transcript of Jose David Hernandez, Volume I ("**Hernandez Depo I**") at 77:19-21. | |
| 67.  Counter-Defendant Jose David Hernandez ("Hernandez") is a co-owner of both Yellowcake and Colonize.<br><br>Begakis Decl. at ¶ 10, Exhibit "P" thereto, Hernandez Depo I at 51:9-11, 116:18-117:14, 148:24-149:5; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16. | |
| 68.  In that position, Hernandez has admitted that both corporations have operated – and continue to operate – as a single economic entity, with common ownership, business operations, office space, staff, and many other resources.<br><br>Begakis Decl. at ¶ 10, Exhibit "P" thereto, Hernandez Depo I at 80:3-20. | |
| 69.  In or about March 2019, Hernandez approached Chavez about selling the Los Originales Albums to Yellowcake.<br><br>Begakis Decl. at ¶ 10, Exhibit "P" thereto, Hernandez Depo I at 51:9-11, 116:18-117:14, 148:24-149:5; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 77:13-17, 79:7-9, | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| 79:17-80:2, 81:7-16. | |
| 70. Hernandez had previously worked with Hyphy and had secretly gained valuable information on Hyphy's business and relationship with Chavez.<br><br>Martinez Decl. at ¶ 5; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 26:2-12. | |
| 71. Hernandez thus knew that Hyphy only had an oral agreement with the Group, and approached and convinced Chavez, without Hyphy or the rest of the Group's knowledge, to assign the Albums to Yellowcake in exchange for payment of $500,000.<br><br>Martinez Decl. at ¶ 5; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 26:2-12; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 80:5-13, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "P" thereto, Hernandez Depo I at 107:4-20. | |
| 72. Chavez and Yellowcake attempted to codify their purported agreement via an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019 (the "***Asset Purchase Agreement***").<br><br>Begakis Decl. at ¶ 7, Exhibit "M" thereto, Plaintiff/Counter-Defendant's Document Production (PLF000021-PLF000039). | |

HYPHY MUSIC'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO YELLOWCAKE AND COLONIZE MEDIA' MOTION FOR SUMMARY JUDGMENT / ADJUDICATION

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| 73. In Section 13.e. of the Asset Purchase Agreement, Chavez represented and warranted to Yellowcake that Chavez was "the only owner of" the Albums, and possessed "good and marketable title" thereto at the time of sale.<br><br>Begakis Decl. at ¶ 7, Exhibit "M" thereto, Plaintiff/Counter-Defendant's Document Production (PLF00024). | |
| 74. Chavez never obtained signed written agreements from Flores, Vargas or Hyphy acquiring each party's respective contributions to, and rights in, the Albums and sound recordings embodied thereon.<br><br>Begakis Decl. at ¶ 6, Exhibit "L" thereto, Yellowcake Interrogatory Responses at pp. 4-5; Begakis Decl. at ¶ 7, Exhibit "M" thereto, Yellowcake Responses to Request for Production at p. 4. | |
| 75. Based on musical contributions alone, Flores and Vargas contributed *more* to the creation of the Albums than Chavez (who only sang) because they performed the accordion and drums, which are musical elements that are critical to the particular genre of music at issue (especially the accordion).<br><br>Martinez Decl. at ¶ 4. | |
| 76. Chavez repeatedly acknowledged Flores and Vargas' valuable contributions to the Albums, which | |

HYPHY MUSIC'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO YELLOWCAKE AND COLONIZE MEDIA' MOTION FOR SUMMARY JUDGMENT / ADJUDICATION

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| were, in fact, so valuable to Chavez, that Chavez paid Flores royalties for his "[y]ears working for the band," and paid Vargas following Chavez's re-sale of the Works to Yellowcake because "[Vargas] was a good musician…"<br><br>Martinez Decl. at ¶ 4. | |
| 77. Counter-Defendants entirely failed to serve any Initial Disclosures, and the discovery cut-off date has come and gone.<br><br>Begakis Decl. at ¶ 3. | |
| 78. Yellowcake thus failed to identify any damages beyond the mere categories of damages set out in the Complaint.<br><br>Begakis Decl. at ¶¶ 4-5. | |
| 79. Hyphy incurred approximately $124,700 in verifiable costs, but only generated approximately $104,131 in verifiable revenue – establishing that Hyphy has taken a loss of $20,569 on the Albums.<br><br>Martinez Decl. at ¶¶ 10-12. | |

///

///

///

///

### III.     COUNTER-DEFENDANTS INFRINGED HYPHY'S COPYRIGHTS

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| 80. Hyphy is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings by such artists, coupled with artwork.<br><br>Declaration of John Begakis (**"Begakis Decl."**) at ¶ 8, Exhibit "N" thereto, Jose Martinez Deposition Transcript (**"Martinez Depo"**) at 13:6-14:6. | |
| 81. Counter-Defendant Jesus Chavez Sr. (**"Chavez"**) is the lead singer of the Spanish-language musical group Los Originales De San Juan (the "**Group**").<br><br>Begakis Decl. at ¶ 13, Exhibit "S" thereto, Jesus Chavez, Sr. Deposition, Volume I (**"Chavez Depo I"**) at 25:13-14; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Jesus Chavez, Sr. Deposition, Volume II (**"Chavez Depo II"**) at 16:22-17:5. | |
| 82. The Group operates as a co-equal partnership comprised of Chavez, accordion player Domingo Torres Flores (**"Flores"**), and drummer Alfonso Vargas (**"Vargas"**).<br><br>Begakis Decl. at ¶ 11, Exhibit "Q" thereto, Deposition Transcript of Alfonso Vargas (**"Vargas Depo"**) at 17:16-19, 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| Decl. at ¶ 12, Exhibit "R" thereto, Deposition Transcript of Domingo Torres Flores ("*Flores Depo*") at 47:15-25, 48:19-23, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21; Begakis Decl. at ¶ 13, Exhibit "S" thereto, Chavez Depo I at 18:16-19:3, 20:8-16, 21:16-19; Begakis Decl. at ¶14, Exhibit "T" thereto, Chavez Depo II at 20:20-21:16, 26:13-20, 31:8-16, 33:18-34:1, 38:8-18, 41:13-42:2. | |
| 83.  In or about February 2013, Hyphy and the Group began working together to co-create various sound recordings to be embodied on multiple albums, which the parties had orally agreed were to be owned by Hyphy (the "*Agreement*").<br><br>Declaration of Jose Martinez ("*Martinez Decl.*") at ¶ 3; Begakis Decl. at ¶ 13, Exhibit "S" thereto, Chavez Depo I at 34:7-11; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 19:14-17, 32:16-20, 35:12-21. | |
| 84.  The albums created pursuant to the Agreement were entitled (1) "Amigos y Contrarios"; (2) "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La Cantina de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the "Los Originales Albums" or "Albums").<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at | |

41

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| 44:7-23, 51:22-25. | |
| 85. One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded by Chavez.<br><br>Martinez Decl. at ¶ 6; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 44:24:-9, 154:11-155:25. | |
| 86. Though this Agreement was not initially memorialized in writing, Flores and Vargas understood that such Agreement existed, and therefore intended that all rights in and to their recording services, and the five Albums produced under the Agreement and pursuant to such services, be conveyed to Hyphy.<br><br>Martinez Decl. at ¶ 7. Declaration of Domingo Torres Flores ("***Flores Decl.***") at ¶¶ 3-5; Declaration of Alfonso Vargas ("***Vargas Decl.***") at ¶¶ 3-5 | |
| 87. Flores and Vargas later confirmed their belief and intent to convey all rights in the Albums to Hyphy by executing enforceable Copyright Assignment Agreements on or about March 22, 2022 (collectively the "***Assignments***").<br><br>Martinez Decl. at ¶ 7, Exhibit "D" thereto. | |
| 88. Unlike larger record labels, however, Hyphy closely | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| collaborated with the Group to create the Albums.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-76:25, 83:11-84:22, 84:24-85:8, 85:14-86:16. | |
| 89. For the first three (of five) of the Los Originales Albums, Hyphy helped determine the "theme and overall creative direction of each Album.<br><br>Martinez Decl. at ¶ 8. | |
| 90. For the first three (of five) of the Los Originales Albums, Hyphy crucially selected the songs to be included in each Album.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 83:11-84:22. | |
| 91. For the first three (of five) of the Los Originales Albums, Hyphy selected the recording studio, and paid for all costs associated with the recording of each Album.<br><br>Martinez Decl. at ¶ 8. | |
| 92. For the first three (of five) of the Los Originales Albums, Hyphy hired the sound engineer.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 59:21-60:7, 61:10-16. | |
| 93. For the first three (of five) of the | |

HYPHY MUSIC'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN
OPPOSITION TO YELLOWCAKE AND COLONIZE MEDIA' MOTION FOR
SUMMARY JUDGMENT / ADJUDICATION

| | Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|---|
| | Los Originales Albums, Hyphy paid the Group a substantial amount to record the Albums.<br><br>Martinez Decl. at ¶ 8. | |
| | 94.  For the first three (of five) of the Los Originales Albums, Hyphy oversaw and generally supervised the recording and production of each Album.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 85:14-86:16. | |
| | 95.  For the final two (of five) of the Los Originales Albums, Hyphy also selected and paid for the venue of the live performance.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-25. | |
| | 96.  For the final two (of five) of the Los Originales Albums, Hyphy also selected the songs to be performed at the live performance (which were recorded and subsequently include in the Albums).<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-25. | |
| | 97.  For the final two (of five) of the Los Originales Albums, Hyphy also directly employed, supervised, and directed the services of the sound engineer and videographer who | |

44

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| each recorded the audio and video of the live performance.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-25. | |
| 98. For the final two (of five) of the Los Originales Albums, Hyphy also wrote a script for the history of the Group as presented as part of the live performance, and hired an "MC"/commentator who narrated the script.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-25. | |
| 99. For the final two (of five) of the Los Originales Albums, Hyphy also re-recorded portions of the guitarist's contributions to the live performance afterwards, using a new guitarist selected, hired and paid for by Hyphy.<br><br>Martinez Decl. at ¶ 8; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 75:6-25. | |
| 100. It should also be noted here that Flores and Vargas were plainly joint authors of the Albums because they were equally involved in all activities of the Band, which existed as an unincorporated partnership in which all Band members were joint owners, participants and contributors. | |

45

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| Begakis Decl. at ¶ 11, Exhibit "Q" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "R" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21; Begakis Decl. at ¶ 13, Exhibit "S" thereto, Chavez Depo I at 18:23-19:3. | |
| 101. It should also be noted here that Flores and Vargas were plainly joint authors of the Albums because they were equally credited on all Albums in which each of them made contributions. *See* Begakis Decl. at ¶ 11, Exhibit "Q" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit "R" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21. | |
| 102. It should also be noted here that Flores and Vargas were plainly joint authors of the Albums because they shared equally in all profits of the Band, and were granted equal access to inspect all records related to the Band's receipt of all such profits. Begakis Decl. at ¶ 11, Exhibit "Q" thereto, Vargas Depo at 27:17-22, 143:7-10, 143:14-16, 143:17-20, 143:25-144:3, 144:4-7; Begakis Decl. at ¶ 12, Exhibit | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| "R" thereto, Flores Depo at 47:15-25, 82:13-15, 82:22-83:2, 83:4-13, 85:25-86:11, 86:13-21; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 20:20-21:16, 26:13-20, 31:8-16, 33:18-34:1, 38:8-18, 41:13-42:2. | |
| 103. Indeed, Flores and Vargas's co-equal status in the Group is how the Group is known to the public because, for example, none of the individual members of the Group – including Chavez – are individually identified on the Group's "biography" page located at the website <https://www.AllMusic.com> (the "**Website**"). Furthermore, the Group's "credits" page on the Website indicates that the credited "Artist" on all albums produced by the Group is "Los Originales De San Juan."

Martinez Decl. at ¶ 18. | |
| 104. In addition to its original creative contributions to the production, recording and overall creation of the Los Originales Albums, Hyphy also designed and created the artwork featured on the cover of each Album (the "Album Artwork").

Martinez Decl. at ¶ 9; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 127:12-21. | |
| 105. Hyphy released the Albums, with the Album Artwork, for distribution | |

| | Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|---|
| 1 2 | | |
| 3 4 | through all available digital service providers ("**DSPs**") between 2013 and 2017. | |
| 5 6 7 | Martinez Decl. at ¶ 13, Exhibit "H" thereto; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 44:7-23; 51:18-25; 67:24-69:5. | |
| 8 9 10 | 106. Thereafter, Hyphy obtained copyright registrations for all of such Album Artwork. | |
| 11 12 13 | Martinez Decl. at ¶ 14, Exhibit "X" thereto; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 133:9-136:5. | |
| 14 15 16 17 18 19 | 107. Plaintiff/Counter-Defendant Yellowcake, Inc. ("Yellowcake") is a competing record label and distributor of sound recordings, utilizing Counter-Defendant Colonize Media, Inc. ("Colonize") as its "distribution arm" to release and exploit rights acquired by Yellowcake. | |
| 20 21 22 23 24 | Begakis Decl. at ¶ 9, Exhibit "O" thereto, Deposition Transcript of Kevin Berger ("**Berger Depo**") at 91:19-23; Begakis Decl. at ¶ 10, Exhibit "P" thereto, Deposition Transcript of Jose David Hernandez, Volume I ("**Hernandez Depo I**") at 77:19-21. | |
| 25 26 27 | 108. Counter-Defendant Jose David Hernandez ("Hernandez") is a co-owner of both Yellowcake and Colonize. | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| Begakis Decl. at ¶ 10, Exhibit "P" thereto, Hernandez Depo I at 51:9-11, 116:18-117:14, 148:24-149:5; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16. | |
| 109. In that position, Hernandez has admitted that both corporations have operated – and continue to operate – as a single economic entity, with common ownership, business operations, office space, staff, and many other resources.<br><br>Begakis Decl. at ¶ 10, Exhibit "P" thereto, Hernandez Depo I at 80:3-20. | |
| 110. In or about March 2019, Hernandez approached Chavez about selling the Los Originales Albums to Yellowcake.<br><br>Begakis Decl. at ¶ 10, Exhibit "P" thereto, Hernandez Depo I at 51:9-11, 116:18-117:14, 148:24-149:5; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 81:7-16. | |
| 111. Hernandez had previously worked with Hyphy and had secretly gained valuable information on Hyphy's business and relationship with Chavez.<br><br>Martinez Decl. at ¶ 5; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 26:2-12. | |

HYPHY MUSIC'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO YELLOWCAKE AND COLONIZE MEDIA' MOTION FOR SUMMARY JUDGMENT / ADJUDICATION

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| 112. Hernandez thus knew that Hyphy only had an oral agreement with the Group, and approached and convinced Chavez, without Hyphy or the rest of the Group's knowledge, to assign the Albums to Yellowcake in exchange for payment of $500,000.<br><br>Martinez Decl. at ¶ 5; Begakis Decl. at ¶ 8, Exhibit "N" thereto, Martinez Depo at 26:2-12; Begakis Decl. at ¶ 14, Exhibit "T" thereto, Chavez Depo II at 77:13-17, 79:7-9, 79:17-80:2, 80:5-13, 81:7-16; Begakis Decl. at ¶ 10, Exhibit "P" thereto, Hernandez Depo I at 107:4-20. | |
| 113. Chavez and Yellowcake attempted to codify their purported agreement via an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019 (the "***Asset Purchase Agreement***").<br><br>Begakis Decl. at ¶ 7, Exhibit "M" thereto, Plaintiff/Counter-Defendant's Document Production (PLF000021-PLF000039). | |
| 114. In Section 13.e. of the Asset Purchase Agreement, Chavez represented and warranted to Yellowcake that Chavez was "the only owner of" the Albums, and possessed "good and marketable title" thereto at the time of sale.<br><br>Begakis Decl. at ¶ 7, Exhibit "M" thereto, Plaintiff/Counter-Defendant's | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| Document Production (PLF00024). | |
| 115. Chavez never obtained signed written agreements from Flores, Vargas or Hyphy acquiring each party's respective contributions to, and rights in, the Albums and sound recordings embodied thereon.<br><br>Begakis Decl. at ¶ 6, Exhibit "L" thereto, Yellowcake Interrogatory Responses at pp. 4-5; Begakis Decl. at ¶ 7, Exhibit "M" thereto, Yellowcake Responses to Request for Production at p. 4. | |
| 116. Based on musical contributions alone, Flores and Vargas contributed *more* to the creation of the Albums than Chavez (who only sang) because they performed the accordion and drums, which are musical elements that are critical to the particular genre of music at issue (especially the accordion).<br><br>Martinez Decl. at ¶ 4. | |
| 117. Chavez repeatedly acknowledged Flores and Vargas' valuable contributions to the Albums, which were, in fact, so valuable to Chavez, that Chavez paid Flores royalties for his "[y]ears working for the band," and paid Vargas following Chavez's re-sale of the Works to Yellowcake because "[Vargas] was a good musician…"<br><br>Martinez Decl. at ¶ 4. | |
| 118. Counter-Defendants entirely failed | |

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| to serve any Initial Disclosures, and the discovery cut-off date has come and gone.<br><br>Begakis Decl. at ¶ 3. | |
| 119. Yellowcake thus failed to identify any damages beyond the mere categories of damages set out in the Complaint.<br><br>Begakis Decl. at ¶¶ 4-5. | |
| 120. Hyphy incurred approximately $124,700 in verifiable costs, but only generated approximately $104,131 in verifiable revenue – establishing that Hyphy has taken a loss of $20,569 on the Albums.<br><br>Martinez Decl. at ¶¶ 10-12. | |
| 121. Hyphy's expert referred to UPC numbers as "digital social security numbers for products.<br><br>Begakis Decl. at ¶ 15, Exhibit "U" thereto, Deposition Transcript of Lawrence H. Katz, Esq. ("*Katz Depo*") at 46:1-47:4, 46:23-47:4, 47:5-18. | |
| 122. Eduardo Leon, the principal of Morena Music, flatly denies every accusation Counter-Defendants have improperly and untowardly lobbed at Morena Music.<br><br>Declaration of Eduardo Leon ("*Leon Decl.*") at ¶¶ 2-6. | |
| 123. It must also be pointed out that Hyphy and non-party Morena | |

52

HYPHY MUSIC'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO YELLOWCAKE AND COLONIZE MEDIA' MOTION FOR SUMMARY JUDGMENT / ADJUDICATION

| Hyphy's Undisputed Material Facts and Supporting Evidence | Counter-Defendants' Response and Supporting Evidence |
|---|---|
| Music are competitors, who have no working relationship, other than that both have been targeted by the copyright trolls at Yellowcake.<br><br>Martinez Decl. at ¶ 19; Leon Decl. at ¶ 4 | |
| 124. Mr. Hernandez has already lied under oath by claiming that Counter-Defendants would never distribute the Albums with Hyphy's Album Artwork, even though Hyphy has proven that they have.<br><br>Begakis Decl. at ¶ 10, Exhibit "P" thereto, Hernandez Depo I at 211:24-212:6. | |

DATED:  August 15, 2023          **ALTVIEW LAW GROUP, LLP**


By: _____
        JOHN M. BEGAKIS
*Attorneys for Defendant/Counterclaimant*
HYPHY MUSIC, INC., a California
corporation

HYPHY MUSIC'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO YELLOWCAKE AND COLONIZE MEDIA' MOTION FOR SUMMARY JUDGMENT / ADJUDICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that a copy of the foregoing electronically filed document has been served via a "Notice of Electronic Filing" automatically generated by the CM/ECF System and sent by e-mail to all attorneys in the case who are registered as CM/ECF users and have consented to electronic service pursuant to L.R. 5-3.3.

Dated: August 15, 2023       By:   /s/ John Begakis
                John M. Begakis