**ALTVIEW LAW GROUP, LLP**
JOHN M. BEGAKIS (SBN 278681)
john@altviewlawgroup.com
12100 Wilshire Blvd., Suite 800
Los Angeles, California 90025
Telephone: (310) 230-5580
Facsimile: (562) 275-8954

**SHERMAN LAW GROUP, LLP**
RICHARD LLOYD SHERMAN (SBN 106597)
richard@shermanlawgroup.com
9454 Wilshire Blvd., Suite 850
Beverly Hills, California 90212
Telephone: (310) 246-0321
Facsimile: (310) 246-0305

*Attorneys for Defendant/Counterclaimant* HYPHY MUSIC, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELLOWCAKE, INC., California corporation,<br><br>Plaintiff,<br><br>v.<br><br>HYPHY MUSIC, INC.,<br><br>Defendant. | **Case No.: 1:20-cv-00988-JLT-BAM**<br><br>[Assigned to the Hon. Jennifer L. Thurston]<br><br>**HYPHY MUSIC INC.'S OPPOSITION TO JESUS CHAVEZ, SR.'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| HYPHY MUSIC, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>YELLOWCAKE, INC.; COLONIZE MEDIA, INC; JOSE DAVID HERNANDEZ; and JESUS CHAVEZ SR,<br><br>Counter-Defendants. | Date: September 29, 2023<br>Time: 9:00 a.m.<br>Dept.: Courtroom 4 (7th Floor)<br>      2500 Tulare Street<br>      Fresno, CA 93721<br>Judge: Hon. Jennifer L. Thurston |

## **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. HYPHY'S SUMMARY OF FACTS ....................................................................1

   A. Hyphy's Agreement With The Group To Record The Albums........................1

   B. Counter-Defendants' Surreptitious "Acquisition" Of The Albums And Infringement Of The Album Artwork .................................................................4

III. HYPHY AND CHAVEZ WERE PARTIES TO AN ENFORCEABLE AGREEMENT THAT CHAVEZ BREACHED.......................................................4

   A. Chavez has Misconstrued the Relevant Breach ................................................4

   B. Chavez has Ignored this Court's Previous Orders ............................................6

IV. ALL OF CHAVEZ'S OTHER ARGUMENTS ARE IRRELEVANT.............7

V. CONCLUSION ......................................................................................................8

# TABLE OF AUTHORITIES

**CASES**

*Altera Corp. v. Clear Logic, Inc.*, 424 F. 3d 1079 (9th Cir. 2005) ..............................5

*Comunale v. Traders & Gen. Ins. Co.* (1958) 50 Cal. 2d 654 ...................................5

*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal. App. 4th 999 ........................................................................................................7


**STATUTES**

17 U.S.C. § 106 ........................................................................................6, 7

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendant/Counterclaimant Hyphy Music, Inc. ("***Hyphy***") hereby opposes the Motion for Summary Judgment (the "***Motion***") filed on or about July 14, 2023, by Counter-Defendant Jesus Chavez, Sr. ("***Chavez***"), on the following grounds.

## I. INTRODUCTION

Chavez's Motion predictably copies (in many cases word-for-word) the arguments made by Yellowcake in its concurrently filed Motion for Summary Judgment ("***Yellowcake's Motion***"). In the process, the Motion makes no new arguments that could possibly be convincing, particularly given that Hyphy's oral agreement with the Group to create the Albums was breached by Chavez for reasons not dealing with the copyrights transferred thereby. Accordingly, this Motion – like the Yellowcake Motion that it parrots – should be denied.

## II. HYPHY'S SUMMARY OF FACTS

### A. Hyphy's Agreement With The Group To Record The Albums

Hyphy is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings, coupled with artwork. Separate Statement in Opposition ("***SSIO***") No. ¶¶ 1, 33. Chavez is the lead singer of the Spanish-language musical group Los Originales De San Juan (the "***Group***"). SSIO No. ¶¶ 2, 34. The Group operates as a co-equal partnership comprised of Chavez, accordion player Domingo Torres Flores ("***Flores***"), and drummer Alfonso Vargas ("***Vargas***"). SSIO No. ¶¶ 3, 35.

In or about February 2013, Hyphy and the Group began working together to co-create various sound recordings to be embodied on multiple albums, which they orally agreed were to be owned by Hyphy (the "***Agreement***"). SSIO No. ¶¶ 4, 36. The albums created pursuant to the Agreement were entitled (1) "Amigos y Contrarios"; (2) "Corridos de Poca M"; (3) "El Campesino"; (4) "Desde La Cantina de Mi Barrio (En Vivo)"; and (5) "Nuestra Historia (En Vivo)" (collectively, the "***Los Originales Albums***" or "***Albums***"). SSIO No. ¶¶ 5, 37. One of the other two

albums identified in Yellowcake's Complaint, entitled "Chuy Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded by Chavez. SSIO No. ¶¶ 6, 38.

Though the Agreement was not initially memorialized in writing, Flores and Vargas understood that it existed. SSIO No. ¶¶ 7, 39. Such co-equal members of the Group also intended that all rights in and to their recording services rendered pursuant to the Agreement be conveyed to Hyphy. *Id.* Flores and Vargas also later confirmed their belief and intent to convey all rights to Hyphy by executing enforceable Copyright Assignment Agreements on or about March 22, 2022 (collectively, the "***Assignments***"). SSIO No. ¶¶ 8, 40.

Unlike larger record labels, however, Hyphy closely collaborated with the Group to create the Albums, including as follows:

- For the first three (of five) of the Los Originales Albums, Hyphy:
    - Helped determine the "theme" and overall creative direction of each Album;
    - Selected the songs to be included in each Album;
    - Selected the recording studio, and paid for all costs associated with the recording of each Album;
    - Hired the sound engineer;
    - Paid the Group a substantial amount to record the Albums; and
    - Oversaw and generally supervised the recording and production of each Album. SSIO No. ¶¶ 9-15, 41-47.
- For the final two (of five) Albums (which are each comprised of recordings from a previous live performance by the Group), Hyphy also:
    - Selected and paid for the venue of the live performance;
    - Selected the songs to be performed at the live performance (and then recorded for the Albums);

///

- Directly employed, supervised, and directed the services of the sound engineer and videographer who each recorded the audio and video of the live performance, respectively;
- Wrote a script for the history of the Group as presented as part of the live performance, and hired an "MC"/commentator who narrated the script; and
- Re-recorded whole portions of the guitarist's contributions to the live performance afterwards, using a new guitarist selected, hired and paid for by Hyphy. SSIO No. ¶¶ 16-20, 48-52.

It should also be noted here that Flores and Vargas were plainly joint authors of the Albums:

- Flores and Vargas were equally involved in all activities of the Group, which existed as an unincorporated partnership in which all Band members were joint owners, participants and contributors;
- Flores and Vargas were equally credited on all Albums in which each of them made contributions; and
- Flores and Vargas shared equally in all profits of the Group, and were granted equal access to inspect all records related to the Group's receipt of all such profits. SSIO No. ¶¶ 21-23, 53-55.

In addition to its original creative contributions to the production, recording and overall creation of the Los Originales Albums, Hyphy also designed and created the artwork featured on the cover of each Album (the "***Album Artwork***"). SSIO No. ¶¶ 24, 56. Hyphy released the Albums, with the Album Artwork, for distribution through all available digital service providers ("***DSPs***") between 2013 and 2017. SSIO No. ¶¶ 25, 57. Thereafter, Hyphy obtained copyright registrations for all Album Artwork. SSIO No. ¶¶ 26, 58.

///

///

### B. Counter-Defendants' Surreptitious "Acquisition" Of The Albums And Infringement Of The Album Artwork

Plaintiff/Counter-Defendant Yellowcake, Inc. ("***Yellowcake***") is a competing record label and distributor of sound recordings, utilizing Counter-Defendant Colonize Media, Inc. ("***Colonize***") as its "distribution arm" to release and exploit rights acquired by Yellowcake. SSIO No. ¶¶ 27, 59. Counter-Defendant Jose David Hernandez ("***Hernandez***"), who is a co-owner in both Yellowcake and Colonize (SSIO No. ¶¶ 28, 60), knew that Hyphy only had an oral agreement with the Group (*Id.*), and therefore approached Chavez, in or about March 2019, about selling the Los Originales Albums to Yellowcake (*Id.*). Chavez, who at this time was advanced in age and suffering from significant health problems, which prevented him from performing or generating income, therefore agreed to accept $500,000 for the Albums. SSIO No. ¶¶ 29, 61.

Chavez and Yellowcake attempted to codify their purported agreement via an "Asset Purchase and Assignment Agreement" executed on or about March 21, 2019 (the "***Asset Purchase Agreement***"). SSIO No. ¶¶ 30, 62. In Section 13.e. thereof, Chavez represented and warranted to Yellowcake that Chavez was "the only owner of" the Albums, and possessed "good and marketable title" thereto at the time of sale. SSIO No. ¶¶ 31, 63. However, Chavez never obtained signed written agreements from Flores, Vargas or Hyphy acquiring each party's respective contributions to, and rights in, the Albums and sound recordings embodied therein. SSIO No. ¶¶ 32, 64.

### III. HYPHY AND CHAVEZ WERE PARTIES TO AN ENFORCEABLE AGREEMENT THAT CHAVEZ BREACHED

#### A. Chavez has Misconstrued the Relevant Breach

The gravamen of Chavez's Motion is that a work for hire agreement must be in writing under the Copyright Act, and Hyphy's Eighth Counterclaim for Breach of Contract is, therefore, "defective" because Hyphy did not have a written agreement

with Chavez. Chavez, however, has mischaracterized what is at issue in Hyphy's Eighth Counterclaim for relief. It is true that an entity suing for copyright infringement must have a valid ownership claim to the copyright at issue – but the oral contract was breached for reasons not dealing with the copyrights transferred.

As Hyphy sets forth in paragraph 78 of the Amended Counterclaims (Dkt. No. 15), Chavez was not only being commissioned, along with the other members of the Group, to create sound recordings, but also was paid (a) "to follow Hyphy's artistic direction", and (b) grant Hyphy a non-exclusive right to use his name and likeness "in perpetuity."

By purportedly entering into the subsequent Asset Purchase Agreement with Yellowcake, Chavez denied Hyphy all of the benefits of its bargain with Chavez. Hyphy paid for a right to supervise the creation and promotion of the Albums, but such contractual right has been rendered worthless by Chavez's actions. At a minimum, this constitutes an unmistakable breach of the implied covenant of good faith and fair dealing. *See,* <u>Comunale v. Traders & Gen. Ins. Co</u>. (1958) 50 Cal. 2d 654, 658 (California imposes an implied covenant to every agreement that requires that "neither party will do anything which will injure the right of the other to receive the benefits of the agreement").

Chavez may claim he is free to transfer his ownership of the copyrights in the sound recordings embodied on the Albums, but he is not free to breach related arrangements also codified within the Agreement. *See, e.g.*, <u>Altera Corp. v. Clear Logic, Inc.</u>, 424 F. 3d 1079, 1089 (9th Cir. 2005) ("most courts have held that the Copyright Act does not preempt the enforcement of contractual rights").

As an analogy, if Hyphy had orally agreed to lend Chavez money to create the Albums, Chavez could not argue that Hyphy's loan was unenforceable because it was oral and involved the transfer of copyrights. But that is essentially what Chavez is arguing here, by claiming that he cannot breach the Agreement and its related terms requiring him to, for example, grant Hyphy a non-exclusive right to use his

5
OPPOSITION TO JESUS CHAVEZ'S MOTION FOR SUMMARY JUDGMENT

name and likeness "in perpetuity." Such other terms reflect a larger business relationship between Hyphy and Chavez (and, through him, the Group) regarding the creation of the Albums and codified via the Agreement, which Chavez disregarded (and, therefore, breached) when he purportedly entered into the Asset Purchase Agreement.

### B. Chavez has Ignored this Court's Previous Orders

Chavez's Motion also ignores this Court's July 20, 2021 order granting, in part, and dismissing, in part, Counter-Defendants' previous Motion to Dismiss (the "Order"). Dkt. No. 41. In that Order, the Court recognized that Hyphy's Fifth Counterclaim for Intentional Interference with Contractual Relations essentially complained that "[Yellowcake] induced Chavez to *sell rights in the albums that he did not have*…" Thus, the Court found that dismissal of this Counterclaim on the basis that it was supposedly preempted by federal copyright law because it involved copyrights was inappropriate because the claim was "qualitatively different from a copyright infringement claim because none of the rights listed in § 106 are the subject [thereof]." Dkt. No. 41.

To the extent Yellowcake now needs the Court to view Hyphy's Eighth Counterclaim for Breach of Contract as *only* involving the transfer of copyrights, in order to argue that such claim should be dismissed because an oral agreement transferring copyrights is unenforceable and therefore cannot be breached, this Counterclaim should be viewed no differently. As set forth herein and in Hyphy's concurrent Motion for Summary Judgment, both Hyphy and the other members of the Group (by way of their respective creative contributions to the creation of the Albums) **were co-owners** who possessed rights that could not be transferred without consent by Chavez via the Asset Purchase Agreement. Thus, the Court must find that Hyphy's Eighth Counterclaim is "qualitatively different" from a claim involving the simple breach of an agreement to transfer copyrights because it alleges

OPPOSITION TO JESUS CHAVEZ'S MOTION FOR SUMMARY JUDGMENT

that Chavez breached the Agreement when he transferred "all rights" in the Albums, including the rights of others not listed in § 106.

In the event Yellowcake manages to successfully argue that it possesses right in and to the entirety of the Albums as a result of Chavez's purported execution of the Asset Purchase Agreement with Yellowcake (though the Court should not accept such argument), Hyphy will have been harmed by Chavez's transfer of Hyphy's rights in the Albums to Yellowcake. Indeed, California law understands this concept well in other arenas, including, as an example, cases of trespass to chattel or slander of title. *See*, <u>Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC</u> (2012) 205 Cal. App. 4th 999, 1030 ("Slander or disparagement of title occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes the owner thereof some special pecuniary loss or damage", which includes attorneys' fees and litigation costs).

In other words, Chavez's argument that Hyphy cannot sue him for breach of oral contract because it involves the transfer of copyrights ignores the fact that Hyphy's Eighth Counterclaim for Breach of Contract is based upon Chavez's purported transfer of "all rights" – including the rights of others not listed in § 106 that Chavez had no right or permission to transfer.

## IV. ALL OF CHAVEZ'S OTHER ARGUMENTS ARE IRRELEVANT

Finally, Chavez asserts several arguments also simultaneously asserted in Yellowcake's Motion, but which are irrelevant or were already resolved by this Court. It seems that Counter-Defendants hope to (a) distract the Court from the real arguments establishing Chavez's breach of the Agreement and/or (b) use Chavez's Motion for "additional pages" to argue *Yellowcake's* Motion (in disregard for this Court's page limits and local rules relating thereto).

For example, Hyphy does not contend that Chavez was an employee who created the Albums as works-made-for-hire. Chavez, however, dedicates essentially an entire page of his Motion to argue against that position.

Therefore, and to the extent the Court decides to acknowledge any of such unrelated arguments in the context of evaluating Chavez's Motion, Hyphy incorporates each and every argument made in opposition to Yellowcake's Motion.

## V. CONCLUSION

Accordingly, Hyphy respectfully requests that Chavez's Motion be denied in its entirety.

DATED: August 15, 2023      **ALTVIEW LAW GROUP, LLP**

By: _____
JOHN M. BEGAKIS
*Attorneys for Defendant/Counterclaimant*
HYPHY MUSIC, INC., a California corporation

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing electronically filed document has been served via a "Notice of Electronic Filing" automatically generated by the CM/ECF System and sent by e-mail to all attorneys in the case who are registered as CM/ECF users and have consented to electronic service pursuant to L.R. 5-3.3.

Dated: August 15, 2023 By: /s/ John Begakis
John M. Begakis