**ABRAMS FENSTERMAN, LLP**
Seth L. Berman, Esq. (*admitted pro hac vice*)
   sberman@abramslaw.com
3 Dakota Drive, Suite 300
Lake Success, NY 11042
Telephone: 516.328.2300
Facsimile: 516.328.6638

**HEFNER STARK & MAROIS, LLP**
Thomas P. Griffin Jr., Esq. (SBN 155133)
   tgriffin@hsmlaw.com
2150 River Plaza Drive, Suite 450
Sacramento, CA 95833
Telephone: 916.925.6620
Facsimile: 916.925.1127

Attorneys for Plaintiff YELLOWCAKE, INC., and Counterdefendants YELLOWCAKE, INC., COLONIZE MEDIA, INC., and JOSE DAVID HERNANDEZ

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELLOWCAKE, INC., a California corporation,<br><br>              Plaintiff,<br><br>   v.<br><br>HYPHY MUSIC, INC.,<br><br>              Defendant. | **Case No.: 1:20-cv-00988-DJC-JDP**<br><br>**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S REPLY TO DEFENDANTS' OPPOSITION**<br><br>Judge: Hon. Daniel J. Calabretta<br>Date: September 29, 2023<br>Courtroom: Courtroom 10, 13th floor |

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S REPLY TO DEFENDANTS' OPPOSITION**

| | |
|---|---|
| HYPHY MUSIC, INC., | ) |
| Counterclaimant, | ) |
| v. | ) |
| YELLOWCAKE, INC., A CALIFORNIA CORPORATION; COLONIZE MEDIA, INC.; JOSE DAVID HERNANDEZ; and JESUS CHAVEZ SR, | ) |
| Counterdefendants. | ) |

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S REPLY TO DEFENDANTS' OPPOSITION**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.    STANDARD ON OPPOSITION TO SUMMARY JUDGMENT ................................. 1

III.    ARGUMENT ........................................................................................................ 2

    A.    HYPHY FAILS TO REBUT YELLOWCAKE'S *PRIMA FACIE* CASE ........................ 2

        i.    No Genuine Dispute Exists that Yellowcake Is the Albums' Sole Owner ............................................................................................. 2

        ii.    Yellowcake Proved its Damages; Hyphy Failed to Prove its Expenses ................................................................................................. 6

    B.    HYPHY DOES NOT HAVE AN IRREVOCABLE LICENSE IN THE ALBUMS .......... 7

CONCLUSION ................................................................................................................ 10

**Abrams Fensterman, LLP**
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Meiling*,
  20-16688, 2022 WL 1797332 (9th Cir. June 2, 2022) ......................................... 5

*American Title Ins. Co. v. Lacelaw Corp.*,
  861 F.2d 224 (9th Cir. 1988) ................................................................................ 5

*Blue Ridge Ins. Co. v. Stanewich*,
  142 F.3d 1145 (9th Cir. 1998) .............................................................................. 2

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) .............................................................................. 1

*Corbello v. DeVito*,
  777 F.3d 1058 (9th Cir. 2015) ......................................................................... 3, 8

*Effects Assoc., Inc. v. Cohen*,
  908 F.2d 555 (9th Cir. 1990) ............................................................................ 7, 9

*HiRel Connectors, Inc. v. United States*,
  CV01-11069, 2006 WL 3618011 (C.D. Cal. Jan. 25, 2006) ............................... 2

*I.A.E., Inc. v. Shaver*,
  74 F.3d 768 (9th Cir. 1996) ................................................................................. 8

*Japan Telecom, Inc. v. Japan Telecom America, Inc.*,
  287 F.3d 866 (9th Cir. 2004) ............................................................................... 1

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ............................................................................................ 1

*N. Face Apparel Corp. v. Niman*,
  CV-053628, 2007 WL 9700729 (C.D. Cal. Jan. 29, 2007) ................................ 2

*Nissan Fire & Mar. Ins. Co., Ltd. v. Fritz Companies, Inc.*,
  210 F.3d 1099 (9th Cir 2000) .............................................................................. 1

*Reinicke v. Creative Empire, LLC*,
  669 Fed.Appx. 470 (9th Cir. 2016) ...................................................................... 8

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F3d 1137 (9th Cir. 2008)......................................................................................3

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
  52 F.4th 1054 (9th Cir. 2022).....................................................................................6

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001)....................................................................................6

**Statutes**

17 U.S.C. 204(a) ............................................................................................................7

Fed. R. Civ. P. 26 ..........................................................................................................6

Fed. R. Civ. P. 37 ..........................................................................................................6

Fed. R. Civ. P. 37(c) .....................................................................................................6

Fed. R. Civ. P. 56 ........................................................................................................10

Fed. R. Civ. P. 56(c) .....................................................................................................1

**Other Authorities**

Copyright Circular 56A .................................................................................................3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Yellowcake's motion made a *prima facie* showing it is entitled to summary judgment on its infringement claim because: (i) Chavez was the Albums'[1] sole author as Hyphy has judicially admitted; (ii) Chavez terminated his oral distribution agreement with Hyphy and lawfully sold the Albums to Yellowcake; (iii) Hyphy refused to stop selling the Albums; and (iv) Yellowcake's resulting damages are proved by Hyphy's own admissions. The motion also made a *prima facie* showing Yellowcake is entitled to summary judgment dismissing Hyphy's infringement claim because no proof exists that Counterdefendants infringed Hyphy's album cover artwork or that Hyphy suffered any damages.  In opposition, Hyphy merely relies on unsubstantiated self-serving statements, inadmissible hearsay and documents, and inconsistent legal theories in a desperate attempt to create the appearance of an issue of fact which does not exist.

### II.     STANDARD ON OPPOSITION TO SUMMARY JUDGMENT

Where "a moving party carries its burden of production" on a summary judgement motion, as Yellowcake has done, "the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire & Mar. Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir 2000).  In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must tender evidence in the form of affidavits, and/or admissible discovery material to show the existence of a factual dispute. *See id.* at 586; Fed. R. Civ. P. 56(c); *see also Japan Telecom, Inc. v. Japan Telecom America, Inc.*, 287 F.3d 866, 875 nl (9th Cir. 2004) (holding hearsay statements found in affidavits are inadmissible).  Indeed, "[t]o survive summary judgment, a [party] must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011); *N. Face*

---

[1] Any capitalized but undefined terms used herein shall have the same meaning ascribed to them in Plaintiff-Counterclaim Defendants' Memorandum of Points and Authorities dated July 14, 2023.

1  *Apparel Corp. v. Niman*, CV-053628, 2007 WL 9700729, at *4 (C.D. Cal. Jan. 29, 2007) ("[A]
2  genuine issue does not exist when the only evidence presented is "uncorroborated and self-
3  serving" testimony.") (citation omitted).
4      Finally, and particularly appropriate considering Hyphy's ever-changing factual claims
5  and legal theories, and untimely production of clearly fabricated assignments, "[i]f the factual
6  context makes the non-moving party's claim of a disputed fact implausible, then that party
7  must come forward with more persuasive evidence than otherwise would be necessary to
8  show that there is a genuine issue for trial." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145,
9  1147 (9th Cir. 1998); *HiRel Connectors, Inc. v. United States*, CV01-11069, 2006 WL
10 3618011, at *5 (C.D. Cal. Jan. 25, 2006) ("The non-movant's burden to demonstrate a genuine
11 issue of material fact increases when the factual context renders the claim implausible.").

**III.    ARGUMENT**

**A.    HYPHY FAILS TO REBUT YELLOWCAKE'S *PRIMA FACIE* CASE**

    Hyphy attempts to avoid summary judgment with a hodgepodge of arguments, claiming that (i) itself and former backing musicians of Los Originales de San Juan (Flores and Vargas) are co-owners and/or co-creators of the sound recordings on the Albums (*see* Hyphy's Memorandum of Points and Authorities in opposition to Yellowcake's motion ("Opp. MPA"), Dkt. 86 at Point III.); (ii) a co-owner of a copyright can only enforce it with the consent of the other co-owners (*see* Opp. MPA, Dkt. 86 at Point IV.A); and (iii) Yellowcake has no provable damages (*see* Opp. MPA Dkt. 86 at Point IV.C).

    i.    No Genuine Dispute Exists that Yellowcake Is the Albums' Sole Owner

    Yellowcake proved that it owns the sound recordings in the Albums by acquiring them from their sole author, Chavez, pursuant to a written agreement and then by applying for and receiving copyright registrations for such recordings. Moreover, such registrations constitute *prima facie* proof of Yellowcake's ownership. In the face of such showings, the burden shifted to Hyphy to raise a genuine issue of fact with admissible evidence which, of course, they could not do.

    Hyphy claims Torres and Vargas co-authored the sound recordings with Chavez, and

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

then transferred their own rights in same to Hyphy via an oral agreement in 2013 and written assignments in 2022. However, the only "evidence" produced of Torres' and Vargas' co-authorship were conclusory and self-serving declarations from each. Critically, neither person claims he authored or created the recordings. Instead, each one vaguely claims, without any detail that he "performed and/or contributed *such services necessary* as an accordion player [or drummer] in the creation of each [Album]." Dkt. 86-5 at ¶ 4; Dkt. 86-6 at ¶ 4 (emphasis added). This is consistent with Chavez's position – Torres and Vargas provided backing musician services for Chavez in his creation of the recordings.

Hyphy also cites Torres's and Vargas's declarations in the Opp. MPA (Dkt. 86 at Pgs. 8-9) and Separate Statement of Undisputed Facts in Opposition ("SSUFO") (Dkt. 86-7) to assert that Chavez, Torres and Vargas were an unincorporated partnership and "co-equal" and "co-controlling" members who shared profits equally and had equal involvement in all group activities. These are blatant misrepresentations of the contents of their declarations; they merely make the bald and conclusory claim they were owners of Los Originales.[2] To the extent the SSUFO makes similar claims, to say that Hyphy has taken liberties in mischaracterizing the cited testimony would be an understatement. Further, Hyphy's supposedly "clear evidence" that Chavez acknowledged Torres' and Vargas' "valuable contributions to the Albums" (whatever that means) appears to be inadmissible hearsay statements made by Martinez (Dkt. 86 at Pg. 8, Lns. 4-11) which cannot even be found in the citation provided by Hyphy.

Hyphy also mistakenly cites Copyright Circular 56A as authority that a performer featured in a recording is its author. *See* Opp. MPA, Dkt. 86 at Pg. 9, Ln. 5. They are incorrect, the Circular merely lists categories of persons, including producers and engineers, *who could be an author* of a sound recording. It does not state that a performer on a sound recording is

---

[2] Point IV.A. of the Opp. MPA is moot because Yellowcake owns the subject copyrights. Further, The legal conclusion Hyphy makes in Point IV.A is clearly incorrect because "one joint-owner [possesses the right] to sue third-party infringers without joining any of his fellow co-owners, a right *Sybersound Records, Inc. v. UAV Corp.*, 517 F3d 1137 (9th Cir. 2008) itself expressly recognizes." *Corbello v. DeVito*, 777 F.3d 1058, 1065 (9th Cir. 2015). In other words, according the Ninth Circuit Court of Appeals Hyphy plainly misreads

automatically an author.³

In sum, Hyphy's attempt to refute Chavez's sole authorship of the Albums relies on conclusory and/or vague statements made by Torres and Vargas in their Declarations or testimony that do not raise a *genuine* issue of fact. Tellingly, they do not describe any original or creative material that is copyrightable, much less identify any that they provided to Chavez or that was incorporated into the sound recordings of the Albums.

Hyphy further asserts it acquired its rights in the Albums from Torres and Vargas. This assertion fails for the reasons stated above – these two backing musicians had no rights to transfer. Separately, Hyphy must be precluded from maintaining any argument or defense based on its claim that it acquired rights in the Albums from Torres and Vargas because same contradicts Hyphy's prior judicial admissions. Yellowcake implores the Court to scrutinize Hyphy's pleadings and subsequent sworn statements of fact and put a stop to Hyphy's charade.

Hyphy unambiguously pleads in both versions of its Counterclaims that the alleged oral agreement that gave Hyphy rights in the Albums was between only Hyphy and Chavez alone. *See* Defendant's Counterclaim, Dkt. 7 at ¶¶ 15-17; and Defendant's First Amended Counterclaim (the "AC"), Dkt. 15, alleging that:

> "*Chavez is the founder and principal* of [Los Originales de San Juan]" (*id*. at ¶ 15) (emphasis added);

> "On or about February 2013, [Hyphy] entered into an oral exclusive recording agreement *with Jesus Chavez* . . . to exclusively provide services as a recording artist in the making of [the Albums]. . . . Pursuant to the Agreement [Hyphy] agreed to . . . *pay Chavez* a fixed amount per Los Originales Album. In turn, Chavez agreed to . . . *perform and record the sound and audiovisual recordings . . . as well as to grant [Hyphy] the exclusive right to utilize Counterdefendant Chavez's name and likeness as well as his musical group's name and likeness*" (*id*. at ¶ 16) (emphasis added);

> "In reliance on the above Agreement, in addition to *commissioning Counter-*

---

³ Hyphy's citation to www.allmusic.com, a user-generated content website as proof of co-authorship is meritless and inadmissible (as unauthenticated and/or hearsay). In fact, a review of the official Los Originales de San Juan website makes clear that it is Chavez's band and that Vargas and Torres were not key members of the band. *See* https://originalesdesanjuan.com/bio (last visited September 14, 2023).

> *defendant Chavez to perform* the musical performances embodies on the masters *and paying Chavez for all right title and interest in the [Albums]* . . . . (*id*. at ¶ 17) (emphasis added).

These admissions are unambiguous and constitute "judicial admissions conclusively binding on [Hyphy]." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). The admissions "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact" (*id*.) and the judicial admissions doctrine is squarely applicable here to bar Hyphy's duplicitous claims that it made the oral agreement at issue with Chavez, Torres and Vargas. Indeed, the Ninth Circuit has explained "[t]he Supreme Court has endorsed this standard in the context of a party's attempt to assert arguments contrary to its initial pleadings, finding that such factual concessions are binding." *Alexander v. Meiling*, 20-16688, 2022 WL 1797332, at *2 (9th Cir. June 2, 2022). Moreover, it must be emphasized that after filing its amended pleading and before its epiphany, Hyphy had long maintained that the alleged oral agreement was only between Chavez and Hyphy, as reflected in a sworn Declaration of Martinez (the person who negotiated the alleged oral contract) and Hyphy's legal memoranda.[4] August 2021 Martinez Reply Declaration ("Martinez 2021 Decl."), Dkt. 45-1 at ¶¶ 2, 4, 7, 8; Hyphy Opp. To MTD, Dkt. 27 at pg. 1 ln. 27 – pg. 2 ln. 5; August 2021 Hyphy Reply, Dkt. 45 at pg. 1 lns. 16-18. Hyphy's desperate recharacterizations of these prior admissions (*see* Dkt. 86 at Pgs. 14-15) are patently disingenuous.

Finally, Hyphy does not and cannot directly address the straightforward evidence adduced by Yellowcake proving Hyphy fabricated the Alleged Assignments: (i) Martinez, Tores and Vargas supposedly signed the Alleged Assignments in Hyphy's office on March 22, 2022; (ii) they purportedly all agreed that Vargas and Tores would transfer all rights in the Albums to Hyphy (its acquisition of any rights in the Albums is patently at issue); but (iii) on July 26, 2022, Martinez repeatedly testified at his deposition that no writing ever existed between any Los Originales member and Hyphy regarding any Albums stating, e.g., "[t]he true story that I recited over and over to you, in which there was a mutual understanding of the

---

[4] "[S]tatements of fact contained in a brief may be considered admissions" in the court's discretion. *American Title*, 861 F.2d at 227.

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S REPLY TO DEFENDANTS' OPPOSITION**

arrangement . . . was not put in writing. Reply Declaration of Seth L. Berman ("Reply Decl."), **Ex. "A"** (excerpts of Martinez' deposition) at Pg. 88, Ln. 10-14; *see also id*. at Pg. 33, Ln. 15 – Pg. 34, Ln. 7; Pg. 81, Ln. 12 – Pg. 82, Ln. 13; Pg. 83, Ln. 15-25; Pg. 125, Ln. 19 – Pg. 126, Ln. 11; Pg. 136, Ln. 22 – Pg. 137, Ln. 6. Months later, on October 10, 2022, Hyphy conjured up the Alleged Assignments in a post-discovery supplemental disclosure, without explanation.

Based on the foregoing, Hyphy failed to raise a genuine issue of material facts that Chavez is not the sole author by virtue of any contributions by Torres or Vargas.

    ii.    <u>Yellowcake Proved its Damages; Hyphy Failed to Prove its Expenses</u>

Hyphy's argument that Yellowcake cannot prove its damages must be rejected. Tellingly, Hyphy supports this argument with cases that do not involve copyright infringement actions. *See* Opp. MPA, Dkt. 86 at Pg. 20. Yellowcake amply established its "actual damages" under 17 U.S.C. 504(b) by proving Hyphy's gross revenue emanating from its infringing conduct, which was a dollar figure admitted by Hyphy in its interrogatory responses. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P*., 52 F.4th 1054, 1075, n. 9 (9th Cir. 2022).

Even assuming, *arguendo*, that Yellowcake untimely disclosed this information (which it did not), sanctions under Fed. R. Civ. P. 37(c) are clearly inappropriate here because the allegedly late disclosure was substantially justified or harmless. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106 (9th Cir. 2001). The purpose of the discovery rules cited by Hyphy (*e.g*., Fed. R. Civ. P. 26 and 37) is to prevent litigants from withholding evidence until the proverbial "eleventh hour" when doing so would prejudice and/or hinder its adversaries' own trial preparation. Tellingly, Hyphy's opposition does not articulate any prejudice suffered, nor could it, as Yellowcake's computation of Hyphy's gross revenue adopts Hyphy's own admitted numbers. Finally, contrary to Hyphy's disjointed and legally unsupported arguments, the disgorgement of Hyphy's profits is an appropriate measure of actual damages under 17 U.S.C. 504(b) and there is no legal requirement that disgorgement be separately pled in a complaint.

After the copyright owner proves the infringer's gross revenue, the latter is "required to prove his or her deductible expenses." 17 U.S.C. 504(b). Hyphy submits a declaration from

Martinez (Dkt. 86-2 at ¶¶ 10(a)-(j), 11) purportedly showing that Hyphy's expenses exceed its gross revenue. However, his assertions, which are almost entirely conclusory, are woefully inadequate for Hyphy to "prove[its] deductible expenses." First, as no expenses are proffered for *Naci Con Suerte de Rey*, Hyphy is liable to Yellowcake for the full $20,000 of gross revenue generated by Hyphy's infringement of that Album. Regarding the other five Albums, the supposed cash "expenses" for each Album are stated as conveniently round lump sums without explanation, detail, breakdown, payment dates, background circumstances, or even payee. Their existence is not only unsubstantiated, it is also impossible to discern whether the alleged payments were made for things that qualify as allowable expenses under 17 U.S.C. 504(b). Similarly, Hyphy provides copies of checks that supposedly evidence its payment of "expenses" for each Album - payable to either Chavez, "Pedro Chavez," "Los Originales De San Juan" or two other individuals. However, no information correlates any check to any particular Album other than Martinez's conclusory statements, and no details, explanation or background circumstances are provided for any of the checks whatsoever and, therefore, it is unknowable whether the checks evidence payments that qualify as "expenses" under 17 U.S.C. 504(b). Hyphy has not even bothered to differentiate the expenses for each of the two live Albums. *See* Dkt. 86-2 at ¶¶ 10(d).

### B. HYPHY DOES NOT HAVE AN IRREVOCABLE LICENSE IN THE ALBUMS

As no written agreement between Chavez and Hyphy exists, as an alternative to their duplicitous reliance on the Alleged Assignments, Hyphy desperately tries to manufacture issues of fact by arguing if the Court finds Hyphy does not co-own the Albums, the Court should find that Hyphy received "an oral and irrevocable license from the very outset of the Agreement, and at all relevant times thereafter, to exploit the Albums." Opp. MPA, Dkt. 86 at Pg. 9.

It is axiomatic that a transfer of copyrights must be in writing, or it is void *ab initio*. 17 U.S.C. 204(a). A "narrow exception" to this canon permits the transfer of an implied nonexclusive license, *not an ownership transfer*, in a copyright. *Effects Assoc., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990). This implied license "permits the use of a copyrighted work in a

particular manner." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (9th Cir. 1996). An implied nonexclusive license may be created when (i) the licensee requests the creation of a work; (ii) the licensor makes that particular work and delivers it to the licensee who requested it; and (iii) the licensor intends that the licensee copy and distribute the work. *Id.* at 776.

Hyphy fails, however, to address each factor and instead makes the conclusory statement that Hyphy "requested that the Group create the Albums (and Hyphy superintended their creation), and the Group thus delivered the Albums to Hyphy at its request with the knowledge and intention that Hyphy would copy and distribute them." Opp. MPA, Dkt. 86 at Pg. 19, Lns. 12-15. Such conclusory statements do not satisfy the elements for a nonexclusive implied license for the following reasons.

First, Hyphy's alleged request for the Albums' creation is meritless. The record is barren of evidence suggesting Hyphy did anything to request that Los Originales create the Albums. In fact, the evidence demonstrates the opposite. Chavez testified that Los Originales has never recorded an album "at the direction of Hyphy Music." Reply Decl., **Ex. "B"** (excerpts from Chavez' deposition) at Pg. 17, Lns. 18-25. Thus, Hyphy fails to satisfy the first element of the test. The law is clear – where a purported licensee does not request the creation of the work from the licensor, there is no implication of the creation of a nonexclusive license.

The Ninth Circuit courts have repeatedly held that the scope of an implied license is determined from the parties' conduct. *See e.g. I.A.E., Inc. v. Shaver*, 74 F.3d 768 (9th Cir 1996); *see also Reinicke v. Creative Empire, LLC*, 669 Fed.Appx. 470 (9th Cir. 2016) (holding that "The relevant intent is [Reinicke's] objective intent at the time of the creation and delivery of the [work] as manifested by the parties' conduct); *Corbello*, 777 F.3d at 1067 (holding that "courts should focus primarily on "the licensor's objective intent at the time of the creation and delivery of the software as manifested by the parties' conduct."). Accordingly, even if a nonexclusive implied license was created the parties intended that it be terminable at will. Thus, Chavez's termination of the oral distribution agreement terminated the purported implied license and, consequently, Hyphy's subsequent exploitation of the Albums constituted infringement.

Further, Hyphy's arguments are blatantly inconsistent. On the one hand, Hyphy argues Yellowcake could not have canceled Hyphy's implied license "because Flores and Vargas also had input, by virtue of their respective interests in the Albums," in the "granting and revocation" of such license. Opp. MPA, Dkt. 86 at Pg. 19, Lns. 23-26. On the other hand, Hyphy has consistently claimed that it acquired rights to exploit the Albums by "commissioning" Chavez, *and Chavez alone*, to record them. *See* Counterclaim, Dkt. 7 at ¶ 15; AC, Dkt. 15 at ¶ 14; Martinez 2021 Decl., Dkt. 45-1 at ¶¶ 2, 4, 7, 8.  Hyphy cannot have it both ways.  If it takes the position that the alleged license cannot be terminated because all of the purported licensors have not agreed to do same, then it cannot simultaneously take the position that an alleged license was created solely because of an alleged agreement with just one of the purported licensors.  Another inconsistency is apparent in Hyphy's post-discovery cutoff introduction of the Alleged Assignments from Vargas and Torres, which purportedly assigned "their" rights in the Albums - *for one dollar* - to Hyphy. If Hyphy is correct on its faulty assumption that it received a nonexclusive implied irrevocable license to exploit the Albums as of 2013, then why would it be necessary for it to have Vargas and Torres to make such assignments? Ostensibly, they would be superfluous, or, more likely, would be indicative of Hyphy's state of mind as of March 8, 2022 (the assignments' date) that it did not have any rights to exploit the Albums without the permission of someone whom Hyphy believed to be a rights holder at that point in time.

Furthermore, nothing in *Effects Assoc., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990), cited by Hyphy, indicates such a license would insulate Hyphy from liability to Yellowcake for Hyphy's acts of copyright infringement occurring after Yellowcake acquired copyrights in the Albums.  The case only indicates that such a license would insulate Hyphy from a copyright infringement claim by Chavez, Vargas, and Torres as a result of Hyphy's *prior* distribution of the Albums. *Id*.

Lastly, Point V. of the Opp. MPA presents a bizarre, but easily resolvable scenario. Hyphy's motion for summary judgment is currently pending (Dkt. 78), but in Point V., Hyphy brazenly states it has arrogated new federal rules of procedure unto itself.  Specifically, Hyphy

appears to believe Yellowcake's motion makes arguments in response to Hyphy's motion (respectfully, this is our best guess in interpreting Hyphy's explanation), and therefore Hyphy is allowed to further prop-up its own motion with the arguments raised in Point V. As Point V. admittedly pertains to a different motion sequence, it is improper and should not be considered. However, Yellowcake observes the following. Hyphy's reliance on the UPC numbers as proof of infringement is self-serving and meritless. Hyphy has not adduced one shred of proof that Yellowcake or Colonize uploaded, or caused to be uploaded, or distributed, the allegedly infringed Hyphy's copyrighted album cover art to Daddy Kool Records even if the UPCs belonged to Yellowcake, which they do not. So, not only does Hyphy fail to prop-up its own motion, Hyphy fails to refute Yellowcake's prima facie showing (Dkt. 82 at Pg. 27, Ln. 27 – Pg. 24, Ln. 17) that it is entitled to summary judgment dismissing Hyphy's infringement claim. Regarding Hyphy's odd attempt to claim it has "no working relationship" with Morena, we note that Torres and Vargas both testified they signed the declarations submitted in support of Morena's case in Hyphy's offices. Dkt. 82-11 at Pg. 55, Ln. 8-13; Pg. 56, Ln. 8-12; and Dkt. 82-12 at Pg. 57, Ln. 9-11; Pg. 58, Ln. 1-19; Pg. 60, Ln. 11-16. We also respectfully submit the coordination of legal strategy between Hyphy and Morena, who are both represented by the same counsel, is manifest throughout their papers submitted to this Court. Lastly, Hyphy submits no evidence that it suffered any damages from Yellowcake or Colonize's alleged infringement of its cover artwork and statutory damages are not available to Hyphy due to its registration after the alleged infringement.

## CONCLUSION

Accordingly, it is respectfully requested that this Court grant Plaintiff and Counterclaim-Defendants' Fed. R. Civ. P. 56 motion for summary judgment.

Dated: September 14, 2023                   Respectfully submitted,

**ABRAMS FENSTERMAN, LLP**
By: /s/ Seth L. Berman
Seth L. Berman, Esq. (*admitted pro hac vice*)
***Attorneys for Plaintiff Yellowcake, Inc., and Counterdefendants Yellowcake, Inc., and Colonize Media, Inc.***

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S REPLY TO DEFENDANTS' OPPOSITION**

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system on this ___ day of September 2023, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those that are indicated as non-registered participants, if any.

/s/ Seth L. Berman
Seth L. Berman, Esq.

Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
Phone: (516) 328-2300 / Fax: (516) 328-6638

11

**PLAINTIFF AND COUNTERDEFENDANTS YELLOWCAKE, INC., AND COLONIZE MEDIA, INC.'S REPLY TO DEFENDANTS' OPPOSITION**