**ALTVIEW LAW GROUP, LLP**
JOHN M. BEGAKIS (SBN 278681)
john@altviewlawgroup.com
12100 Wilshire Blvd., Suite 800
Los Angeles, California 90025
Telephone: (310) 230-5580
Facsimile: (562) 275-8954

**SHERMAN LAW GROUP, LLP**
RICHARD LLOYD SHERMAN (SBN 106597)
richard@shermanlawgroup.com
9454 Wilshire Blvd., Suite 850
Beverly Hills, California 90212
Telephone: (310) 246-0321
Facsimile: (310) 246-0305

*Attorneys for Defendant/Counterclaimant* HYPHY MUSIC, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELLOWCAKE, INC., California corporation,<br><br>Plaintiff,<br><br>v.<br><br>HYPHY MUSIC, INC.,<br><br>Defendant. | **Case No.: 1:20-cv-00988-DJC-JDP**<br><br>[Reassigned to the Hon. Daniel J. Calabretta]<br><br>**DEFENDANT/COUNTERCLAIMANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| HYPHY MUSIC, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>YELLOWCAKE, INC.; COLONIZE MEDIA, INC; JOSE DAVID HERNANDEZ; and JESUS CHAVEZ SR,<br><br>Counter-Defendants. | Date: June 27, 2023<br>Time: 9:00 a.m.<br>Dept.: Courtroom 4 (7th Floor)<br>      2500 Tulare Street<br>      Fresno, CA 93721<br>Judge: Hon. Jennifer L. Thurston |

DEFENDANT/COUNTERCLAIMANT'S REPLY RE: SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

I.   YELLOWCAKE DOES NOT HAVE STANDING TO SUE HYPHY .............. 1

II.  HYPHY IS A CO-AUTHOR OF THE ALBUMS ............................................ 3

III.   HYPHY IS A CO-OWNER OF THE ALBUMS ............................................ 4

IV.   AN IMPLIED LICENSE IS FATAL TO AN INFRINGEMENT CLAIM ..... 6

V.  YELLOWCAKE HAS NO PROVABLE DAMAGES ....................................... 7

VI.  SUMMARY JUDGMENT IS PROPER FOR THE COUNTERCLAIMS ...... 9

VII.  CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

**CASES**

*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988) ........................ 2, 4

*Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748 (9th Cir.2008) ............................ 6, 7

*Bangkok Broad. & T.V. Co., Ltd. v. IPTV Corp.*, 742 F.Supp.2d 1101 (C.D. Cal. 2010) ............................................................................................................................ 7

*Heritage Bank v. Redcom Lab'ys, Inc.*, 250 F.3d 319 (5th Cir. 2001) ....................... 2

*I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996) .................................................... 7

*Michaels v. Internet Entm't Grp., Inc.*, 5 F.Supp.2d 823 (C.D. Cal. 1998) ............... 7

*Pierce v. Underwood*, 487 U.S. 552 (1988) .............................................................. 7

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) .................. 3

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F. 3d 1255 (9th Cir. 2011) ........... 6

**STATUTES**

17 U.S.C. § 204 ........................................................................................................... 6

17 U.S.C. § 504(b) ...................................................................................................... 8

FRCP 26(a)(1) .......................................................................................................... 7, 8

**OTHER AUTHORITIES**

Copyright Circular 56A, Copyright Registration of Musical Compositions and Sound Recordings ................................................................................................... 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. YELLOWCAKE DOES NOT HAVE STANDING TO SUE HYPHY

In its Motion for Summary Judgment, or, in the alternative, Summary Adjudication (the "*Motion*"), Defendant/Counterclaimant Hyphy Music, Inc. ("*Hyphy*") explained that Plaintiff/Counter-Defendant Yellowcake, Inc. ("*Yellowcake*") lacks standing to sue Hyphy because Yellowcake only acquired rights in the relevant Albums from Jesus Chavez, Sr. ("*Chavez*"), but Chavez was not the sole owner of those rights. In response, Yellowcake argues that Chavez (1) purportedly *is* the sole owner, and (2) transferred "the 'entirety of ownership'" of his rights therein. Opposition at 9:8-11, 9:14-17. Both arguments are without merit.

*First*, Yellowcake's claims that Chavez was "the founder of the Band" and "was always the bandleader, principal performer, and principal songwriter of the Band" (Opposition at 3:6-7) are both factually inaccurate and legally irrelevant.

*Factually*, Chavez was **not** the Group's "founder" or "principal performer" – Flores and Vargas both set forth in sworn declarations that they were also founding members, and performed instruments (the accordion and drums, respectively) that contributed musical elements critical to the particular genre of music the Group performs. Dkts. 86-3, 86-4. Crucially, Yellowcake has also not presented any evidence that disputes these claims. In fact, even ***Chavez's own testimony*** reveals that all of the members of the Group contributed to the Group's recording of various albums throughout the years. Dkt. 46-2 at ¶¶ 5, 11.

*Legally*, this argument is frivolous because, *even if* Chavez was the "bandleader" and "principal songwriter," such roles do not have any legal bearing on, or relevance to, whether Flores and Vargas contributed to the creation of the sound recordings comprising the Albums at issue. The "bandleader" of a sound recording is not its sole author, as Yellowcake implies – the "authors" of a sound recording include ***all*** of its performers and producers. *See, e.g.,* Copyright Circular

1

56A, Copyright Registration of Musical Compositions and Sound Recordings ("The author of a sound recording is the performer(s) featured in the recording").

Yellowcake's claim that Hyphy's allegation in Paragraph 16 of its Counterclaim that it entered into an oral agreement with Chavez constitutes a "binding judicial admission" that Chavez was the sole owner of the Albums is also flawed. Yellowcake's own cited authority in support of this argument sets forth that "inadvertent statements of fact made by counsel in briefs or memoranda should not be conclusively binding on the client in a summary judgment motion." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (internal citation omitted); *see also Heritage Bank v. Redcom Lab'ys, Inc.*, 250 F.3d 319, 329 (5th Cir. 2001) (to qualify as a judicial admission, the admission must be "deliberate, clear, and unequivocal.") Hyphy's averment to an oral agreement with Chavez is not an "deliberate, clear, and unequivocal" assertion that Chavez was the sole owner of the Albums, but, rather, evidence that Hyphy merely preferred to communicate with the Group ***through*** Chavez.

Yellowcake also ignores the objective evidence in the record establishing Flores and Vargas' co-authorship. Namely, Chavez admitted in his deposition that: (1) the Group is an unincorporated partnership with no partnership paperwork in place to establish that Flores and Vargas are anything other than co-equal, co-controlling members; (2) there are no session agreements or other documents showing that Flores or Vargas gave Chavez the written right to solely own their creative contributions to the Albums; and (3) Flores and Vargas shared in the proceeds generated by the Albums. Dkt. 86 at 8:8-11; 14:4-10; 14:16-23. Just as importantly, all of the members of the Group – including Flores, Vargas *and Chavez* – are equally credited as "Los Originales De San Juan." Dkt. 86 at 4:5-16; 4:23-25.

***Second***, Yellowcake puts forth the tautology that "Chavez did not merely assign…his rights" because he "assigned…the 'entirety of ownership' of [his] rights" to Yellowcake. Opposition at 9:14-17. This illogical, circular reasoning is

DEFENDANT/COUNTERCLAIMANT'S REPLY RE: SUMMARY JUDGMENT

not based in any facts other than the language of the Asset Purchase Agreement – which is not conclusive of anything since such Agreement just incorrectly assumed that Chavez's representations regarding ownership were truthful. More importantly, this flawed analysis avoids any analysis of whether Yellowcake actually received exclusive rights in the Albums from Chavez via the Asset Purchase Agreement. And therein lies Hyphy's actual argument: **that Yellowcake never received exclusive rights to begin with because a transfer of exclusive rights cannot be effective unless <u>all</u> owners agree, and Flores and Vargas never agreed to assign their rights via the Asset Purchase Agreement**. <u>Sybersound Records, Inc. v. UAV Corp.</u>, 517 F.3d 1137, 1146 (9th Cir. 2008).

It also makes no difference if *Sybersound* "addresses whether a co-owner…can unilaterally grant an exclusive license," as Yellowcake contends, because *Sybersound* still holds that an exclusive right may only be transferred if all co-owners agree. *Id.* at 1146 ("unless all the other co-owners of the copyright joined in granting an exclusive right to Sybersound, TVT, acting solely as a co-owner of the copyright, could grant only a nonexclusive license to Sybersound because TVT may not limit the other co-owners' independent rights to exploit the copyright.").

Yellowcake has therefore failed to establish a genuine issue of material fact, as Yellowcake did not have standing to sue Hyphy just because it supposedly acquired rights from Chavez.

## II. <u>HYPHY IS A CO-AUTHOR OF THE ALBUMS</u>

Yellowcake also argues that Hyphy has not established that it co-created the Albums. Opposition at 10:25-11:1. This argument, however, merely attempts to manufacture a question of fact where none exists.

***First***, Yellowcake asserts that the declarations of Chavez and Rosales "dispute" Hyphy's factual assertions evidencing ownership. But Chavez and Rosales' statements are improper legal conclusions made by individuals who are neither lawyers nor designated experts, and are contradicted by Vargas and Flores'

statements. Chavez is also a party to this action and has every motivation to provide self-serving "evidence" in support of his own position, regardless of its invalidity.

Yellowcake asserts that "Hyphy fails to meet its burden to demonstrate 'objective manifestations of shared intent' among Chavez and Hyphy or Martinez to be co-authors. Opposition at 12:26-27. However, Chavez's inaction for the approximately six (6) years Hyphy exploited at least some of the Albums (before executing the Asset Purchase Agreement) constitutes more than sufficient objective evidence that Chavez knew Hyphy to be his co-author. Dkt. 86, at 2:23-3:4, 5:22-24.

***Second***, Hyphy did contribute more than a modicum of creativity to the creation of the Albums, and Yellowcake's assertion to the contrary ignores the evidence proving it. Hyphy provided the creative direction for each Album, selected the songs to be included in each, paid for the recording studio or venue where each Album was recorded, hired the sound engineer(s) who recorded the Albums, and even hired a guitarist to re-record portions of certain Albums. Dkt. 86 at 11:1-4. Hyphy also "superintended" the creation of the Albums, overseeing the entire production thereof, including the work of the sound engineer(s). Dkt. 86 at 11:12-17.

### III. **HYPHY IS A CO-OWNER OF THE ALBUMS**

***First***, and as set forth above, even Yellowcake's authority for the proposition that Hyphy's allegation of an oral agreement with Chavez amounts to a "binding judicial admission" contains a major caveat: that allegations cannot amount to any such "admission" if they are "inadvertent." Am. Title Ins. Co., 861 F.2d at 226. It also makes no difference if "the Court understood that the gravamen of Hyphy's claims was an alleged oral agreement between Hyphy and Chavez" because whether an oral agreement existed has no bearing on whether Hyphy contributed enough creatively to be a co-owner of the Albums. Yellowcake also undercuts is own argument that Hyphy made a "deliberate, clear and unequivocal" "admission" by setting forth how Hyphy's theory of ownership has logically evolved over the course of this litigation, as more facts have come to light. *See* Opposition at 13:20-24.

***Second***, Yellowcake argues that Flores and Vargas were somehow not co-authors because (1) Hyphy filed a copyright registration for the Albums mistakenly identifying Hyphy as an owner under a work-for-hire agreement with Chavez (Opposition at 16:6-10); and because (2) "the terms, circumstances, and timing of the disclosure" of the Assignments "proves" they are "fraudulent" (Opposition at 16:14-15). Notwithstanding the fact that Hyphy has already addressed its inadvertent mistake in submitting inconsistent information in a copyright application (*see* Dkt. 45), Yellowcake's attacks on Flores and Vargas' credibility are merely intended to distract from the real issue of whether Flores and Vargas owned rights in the Albums that Chavez could not assign without their consent.

The timing of *Hyphy's* production of the Assignments also has zero impact on whether *Flores and Vargas* possessed an interest in the Albums that they assigned to Hyphy. Relatedly, whether *Hyphy's principal* failed to mention the existence of the Assignments at his deposition proves nothing with respect to whether they are authentic documents transferring real rights.

The fact that Flores and Vargas executed the Assignments for one dollar also does not mean that they did not each have an interest in the Albums. To the contrary, this sum is reflective of the fact that Hyphy had ***already provided*** the Group with valuable consideration for the Albums, under what Flores and Vargas believed to be an enforceable agreement – and Yellowcake apparently concedes that one dollar was sufficient consideration (because it does not argue the contrary). Furthermore, just because Flores and Vargas relied on the representations of others as to the Assignments, rather than electing to read them (just as they relied on Chavez when he negotiated with Hyphy on their behalf), does not mean the Assignments are invalid.

Yellowcake also attempts to smear Flores and Vargas by suggesting that they had a "motive" to help Hyphy and take advantage of Chavez, who apparently had two strokes. But this is offensive speculation: Chavez's "health" has no bearing on

5
DEFENDANT/COUNTERCLAIMANT'S REPLY RE: SUMMARY JUDGMENT

whether Flores and Vargas contributed enough to the creation of the Albums, and similarly, a dispute between Chavez, Flores and Vargas does not invalidate their rights in the Albums, or mean that Flores and Vargas have testified falsely.

Finally, Yellowcake claims that Flores and Vargas could not be co-authors because they never (1) filed any copyright registrations, (2) demanded any royalties from the sale of the Albums, or (3) filed any action for declaratory relief as to their rights. However, copyright registration only creates a *rebuttable* "presumption" of ownership, and an infringement defendant can rebut such a presumption simply by offering "some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." United Fabrics Int'l, Inc. v. C&J Wear, Inc., 630 F. 3d 1255, 1257 (9th Cir. 2011). Furthermore, Flores and Vargas did not need to file a declaratory relief claim, or formally demand royalty payments because Chavez shared in the Albums' proceeds with Flores and Vargas.

## IV. AN IMPLIED LICENSE IS FATAL TO AN INFRINGEMENT CLAIM

Yellowcake attempts to convert Hyphy's argument that an implied copyright license existed into an argument that an "oral license" existed between Hyphy and Chavez instead. Yellowcake does this to then attack the validity of Hyphy's implied license on contract formation grounds, even stating that the facts proffered fail "to establish a contract was formed…" Opposition at 19:11-12. This, however, is not the proper analysis for whether an implied copyright license exists.

While an exclusive license must be in writing, pursuant to 17 U.S.C. § 204, a copyright owner may grant a nonexclusive license ***impliedly through conduct***. Asset Mktg. Sys., Inc. v. Gagnon, 542 F.3d 748, 754 (9th Cir.2008). Courts recognize this is not the same as expressly forming a contract, and, instead, look to whether "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and

distribute his work." *Id.* at 754-755. In other words, Courts look *beyond* the parties' discussions, to what their conduct reveals about what they ***actually intended***.

In assessing intent, Courts consider whether the *totality* of the parties' conduct indicates that the licensor intended to grant permission to use the work. *Michaels v. Internet Entm't Grp., Inc.*, 5 F.Supp.2d 823, 831 (C.D. Cal. 1998). **The relevant intent is "the licensor's objective intent at the time of the creation and delivery," not their subjective intent**. *Asset Mktg. Sys. Inc.*, 542 F.3d at 756. Intent to create a license exists when an author creates a work with the knowledge and intention that it will be used by the licensee for a specific purpose. *Bangkok Broad. & T.V. Co., Ltd. v. IPTV Corp.*, 742 F.Supp.2d 1101, 1111 (C.D. Cal. 2010).

Chavez's objective intent is clear from his conduct. He allowed Hyphy to exploit at least some of the Albums *without objection* for nearly six (6) years. Dkt. 86 at 2:17-22, 5:22-24. The Group delivered the Albums at Hyphy's request, in exchange for valuable consideration, and an irrevocable, non-exclusive Copyright license was therefore created. *See also*, *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996). Accordingly, no genuine question of fact exists because the implied license defeats Yellowcake's copyright infringement claim.

## V. YELLOWCAKE HAS NO PROVABLE DAMAGES

Yellowcake failed and refused to identify or quantify damages via the service of Rule 26(a)(1) initial disclosures. Yellowcake attempts to argue that this failure was "substantially justified," but fails to cite any binding authority from the Ninth Circuit adopting this standard. And, even if the Court were to adopt such a standard, a party's conduct is substantially justified only if there is a "genuine dispute" or "if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Here, there is no "genuine dispute" regarding Yellowcake's obligation to serve complete initial disclosures. This requirement is unmistakable, explained by

countless treatises, and even relied upon by Yellowcake in support of its efforts to attack the validity of the Assignments that Flores and Vargas executed.

Yellowcake's failure to identify or quantify damages is also not harmless. As set forth in Hyphy's Opposition, Yellowcake now claims that its "actual damages" are "Defendants' profits," but very little (if any) discovery was taken when the discovery period was open to obtain evidence supporting Hyphy's "deductible expenses and the elements of profits attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Therefore, Hyphy has clearly been prejudiced by Yellowcake's apparently intentional act of "hiding the ball."

Yellowcake's failure to provide complete Rule 26(a)(1) initial disclosures was also willful and in bad faith when viewed in conjunction with its aggressive posturing on the issue of damages throughout this dispute. From the moment it filed its Complaint for "up to One Hundred Thousand Dollars ($150,000.00) in statutory damages" in July 2020, Yellowcake has insisted it was entitled to significant statutory damages. Dkt. 1 at 5:26-28, 6:4-6, 6:26-7:1.

Now, only with discovery closed, does Yellowcake suddenly admit in its Opposition that it cannot seek statutory damages. But Yellowcake's gamesmanship cannot be denied in light of its failure to provide initial disclosures. Yellowcake's entire strategy has been to use the fear of statutory damages to scare Hyphy into complying with Yellowcake's uncompromising demands, and it should not be rewarded for its misconduct.

Finally, even if this Court chooses to overlook Yellowcake's failure to provide initial disclosures, Yellowcake still has no damages. It contends that it is entitled to Hyphy's gross profits derived from the Albums, but Hyphy incurred approximately $1247,000 to create, distribute and market the Albums, against current revenue totaling $104,131 – resulting in a net loss to Hyphy of $20,569. Dkt. 86 at 22:18-20; Dkt. 86-2, at ¶¶ 10-12. In other words, there are no "profits," even if Hyphy is liable for infringement (which it is not).

## VI. SUMMARY JUDGMENT IS PROPER FOR THE COUNTERCLAIMS

*First*, Counter-Defendants make various technical arguments in an attempt to exclude Hyphy's evidence of infringement – including that Hyphy's evidence "lacks foundation." However, Hyphy *has* established in its Motion exactly how the evidence was obtained, and why it constitutes verifiable proof that Counter-Defendants uploaded the Albums with Hyphy's copyrighted Album Artwork. Counter-Defendants also claim that the evidence is inadmissible because it was "not produced pursuant to a valid subpoena or accompanied by a business records certification," but Counter-Defendants provide no authority for the suggestion that documentary evidence is never admissible unless it is produced via a subpoena.

*Second*, Counter-Defendants claim that Hyphy's evidence of infringement "do[es] not reference either Yellowcake or Colonize anywhere." This claim, however, ignores Hyphy's detailed explanation of how Yellowcake's UPC numbers **definitively prove** Counter-Defendants' distribution of the Albums with Hyphy's Album Artwork. *Counter-Defendants don't even address the UPC numbers at all*, or the expert testimony presented by Hyphy to establish exactly how such numbers prove Yellowcake's involvement.

*Third*, Counter-Defendants argue that "Hyphy and nonparty Morena have essentially committed a fraud on this Court" through their introduction of the UPC evidence. In making such argument, Counter-Defendants rely on a single e-mail from an unrelated third party who they claim was "one of Daddy Kool Records' digital distributors". Notwithstanding the fact that *this* email lacks foundation and, more importantly, was never produced via Initial Disclosures or through discovery, this argument is utterly baseless: in the e-mail, the alleged "distributor" was shown three UPC numbers (821691353127, 821691351628, and 821691350324) and asked who distributed the Albums for *those* numbers. However, those UPC numbers are **not** the same UPC numbers at issue in this case and identified in Hyphy's Motion.

The Motion makes clear that the UPC numbers proving Yellowcake's infringement are **758381471406**, **758381471420**, and **758381471413**.

If any party is attempting to perpetrate a fraud, it is Counter-Defendants, by referencing inapplicable UPC Codes in a bad-faith attempt to mislead the Court.

Additionally, Counter-Defendants are essentially accusing Morena Music (a non-party) of somehow distributing Hyphy's music and then trying to conceal a relationship between them without any evidence for such a baseless theory. In response, Hyphy obtained a Declaration from Eduardo Leon, Morena Music's principal, who denies every accusation Counter-Defendants have lobbed at Morena Music. Dkt. 86-4 at ¶¶ 2-6. Hyphy and non-party Morena Music are <u>competitors</u>, and have **<u>no</u>** working relationship, other than that both have been targeted by the copyright trolls at Yellowcake. Dkt. 86-4 at ¶ 4.

Lastly, Counter-Defendants' specious claim of fraud on the Court fatally relies on uncorroborated, self-serving declarations of Counter-Defendants' principals, Kevin Berger and Jose David Hernandez. Mr. Berger's Declaration is particularly incredible, given that he appears to miraculously remember specific, and conveniently favorable, details regarding Counter-Defendants' distribution practices that he failed to remember during his deposition *as the person most knowledgeable for Yellowcake*. Similarly, Mr. Hernandez has already lied under oath.

## VII. <u>CONCLUSION</u>

Hyphy thus respectfully requests that the Motion be granted.

DATED: September 15, 2023  **ALTVIEW LAW GROUP, LLP**

By: _____
JOHN M. BEGAKIS
*Attorneys for Defendant/Counterclaimant*
HYPHY MUSIC, INC., a California corporation

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing electronically filed document has been served via a "Notice of Electronic Filing" automatically generated by the CM/ECF System and sent by e-mail to all attorneys in the case who are registered as CM/ECF users and have consented to electronic service pursuant to L.R. 5-3.3.

Dated: September 15, 2023      By:  /s/ John Begakis
                                                                        John M. Begakis