UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELLOWCAKE, INC., a California corporation,<br><br>    Plaintiff,<br><br> v.<br><br>HYPHY MUSIC, INC.,<br><br>    Defendant. | Case No. 1:20-CV-00988-JLT-BAM<br><br>ORDER GRANTING COUNTER-DEFENDANT JESUS CHAVEZ MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 83) |
| HYPHY MUSIC, INC.,<br><br>    Counterclaimant,<br><br> v.<br><br>YELLOCAKE, INC., COLONIZE MEDIA, INC., JOSE DAVID HERNANDEZ, and JESUS CHAVEZ SR.,<br><br>    Counter-Defendants. | |

///

///

///

///

1

The pending motion for summary judgment arises from the on-going copyright infringement dispute initiated by Yellowcake, Inc. against Hyphy Music Inc: In filing an answer to Yellowcake's complaint, Hyphy Music alleged counterclaims against Yellowcake, Inc., Colonize Media Inc., Jose David Hernandez, and Jesus Chavez Sr.  Before the Court is Counter-Defendant Jesus Chavez's motion for summary judgment (Doc. 83) on Counterclaimant Hyphy Music's breach of oral contract counterclaim.  For reasons discussed below, the Court finds summary judgment is warranted and **GRANTS** Chavez's motion.

## BACKGROUND

### A. Procedural Posture

Yellowcake Inc. (Yellowcake) initiated suit against Hyphy Music, Inc. (Hyphy) by filing a complaint (Doc. 1) alleging copyright infringement on July 16, 2020.  Hyphy filed its answer with initial counterclaims against Jesus Chavez Sr. (Chavez), Colonize Media Inc. (Colonize), Jose David Hernandez (Hernandez), and Yellowcake (collectively Counter-Defendants) on August 19, 2020 (*see* Doc. 7), and amended its countercomplaint on August 28, 2020 (*see* Doc. 15).  Hyphy alleged breach of oral contract against Chavez.  (*See* Doc. 15 at 14-15.)  Specifically, Hyphy alleged the following:

> Counter-defendant Chavez is the founder and principal of a musical group by the name of Los Originales De San Juan. Los Originales De San Juan is a popular musical group in the genre of Spanish-language Regional Mexican music.
>
> On February 2013, Counterclaimant Hyphy Music entered into an oral exclusive recording agreements with Jesus Chavez (hereinafter, "Agreement") whereby Counterclaimant commissioned Chavez, for a period of five (5) years, to exclusively provide services as a recording artist in the making of sound and audio-visual recordings embodied in albums (hereinafter, "Los Originales Albums").
>
> Pursuant to the Agreement, Counterclaimant agreed to: 1) select the musical compositions to be recorded on the Los Originales Albums; 2) commission and/or provide the sound engineers and audio visual directors; 2) produce the musical performances to be embodied on the Los Originales Albums; 3) direct the recording and filming of musical and the audio visual performances to be embodied on the Los Originales Albums; and 4) pay Chavez a fixed amount per Los Originales Album.
>
> In turn, Chavez agreed to follow Hyphy's artistic direction, perform and record the sound and audiovisual recordings embodying the

2

> musical compositions chosen and produced by Hyphy Music, as well as to grant Counterclaimant the non-exclusive right to utilize Counter-defendant Chavez's name and likeness as well as his musical group's name in connection with the exploitation of the Los Originales Albums in perpetuity. In consideration for the services provided and payment thereto, Chavez agreed that Counterclaimant would be the owner of all title, right, and interest in and to the Los Originales Albums (including without limitation the copyrights and any extensions and renewals thereto) from the inception of the creation of each Los Originales Album.
>
> On April 2019, Counter-defendant Chavez breached the agreement by without limitation, purportedly transferring, licensing, selling, and/or authorizing Counter-defendants Yellowcake Colonize to exploit the Los Originales Albums and Cover Art.

(*Id.*) [1]  Chavez's counsel filed a stipulation and proposed order for extension of time to respond to the counterclaim (*see* Doc. 31), and the Court granted an extension (*see* Doc. 32). On May 4, 2021, this case was deemed related to case *Yellowcake, Inc. v. Morena Music, Inc., et al*, 1:20-cv-00787.  Chavez filed its answer to Hyphy's first amended countercomplaint on August 17, 2021. (Doc. 48).

**B. The Court's Prior Order**

On July 20, 2021, the Court issued an Order (Doc. 41) "generally granting" Yellowcake's "12(b)(6) motion to dismiss six of the seven counterclaims alleged against them." (*Id.* at 1.)  The Court dismissed Hyphy's "first cause of action for copyright infringement based on an oral transfer agreement between Chavez and Hyphy" without leave to amend; "first cause of action for copyright infringement based on a work for hire" through a special order or commission without leave to amend; "first cause of action for copyright infringement based on a co-author/joint owner, work for hire through an employer-employee relationship, or written transfer agreement" with leave to amend; "third cause of action for preliminary injunction" without prejudice; "fourth cause of action for intentional interference with prospective economic advantage" with leave to amend "only with respect to a claim based on the tangible masters"; "fifth cause of action for intentional interference with contractual relations to the extent that it is based on an oral contract involving the transfer of copyrights in the three albums" without leave to amend but GRANTED

---

[1] Hyphy Music re-alleged and incorporated by reference the allegations set forth in Paragraphs 1 through 75.  (*See* Doc. 15 at 14.)

3

leave to amend "with respect to alleging a claim based on a written transfer from Chavez to Hyphy in the album El Campesino"; "sixth cause of action for Cal. Bus. & Prof. Code § 17200 UCL against Yellowcake and Colonize" without leave to amend as preempted; "sixth cause of action for Cal. Bus. & Prof. Code § 17200 UCL against Hernandez based on inducement to breach an oral agreement relating to copyright ownership in the album" without leave to amend but GRANTED leave "with respect to alleging a claim based on a written transfer from Chavez to Hyphy in the album El Campesino"; and "seventh cause of action for conversion based on actions directed against the tangible masters" without leave to amend. (*See* Doc. 41 at 35-36.)

### C. Parties' Motions for Summary Judgment

On May 19, 2023, Hyphy filed a motion for summary judgment (Doc. 78) and Counter-Defendants Colonize, Hernandez, and Yellowcake filed a cross motion for summary judgment (Doc. 82). Counter-defendant Chavez filed a separate motion for summary judgment on Hyphy's counterclaim for breach of oral contract. (*See* Doc. 83.) The Court's Order only addresses Counter-defendant Chavez motion for summary judgment (Doc. 83) and considers only the Opposition (Doc. 87) and related documents (Docs. 90, 91) filed in response.

**STANDARD OF DECISION**

Federal Civil Procedure Rule 56(a) requires the Court to grant summary judgment as to any claim or defense when the movant, by citing to specific materials in the summary judgment record, shows there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c); *see Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247- 48 (1986). A general dispute exists if a rational factfinder considering the evidence in the record, could find in favor of the non-moving party. *Id.* at 248-9. A fact is material if, under the substantive law governing the claim or defense at issue, the fact might affect the outcome of the case. *Id.* at 248.

In evaluating a party's motion for summary judgment, the Court's role is narrowly limited to assessing the threshold issue of whether a genuine dispute exists as to material facts requiring trial. The court never weighs evidence or finds facts. *See Anderson*, 477 U.S. at 255. The Court "view[s] the facts and draw reasonable inferences in the light most favorable" to the nonmoving

4

party, without making credibility determinations or weighing conflicting evidence. *See Walls v. Cent. Contra Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011); *see also Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted). A party is entitled to summary judgment "only if, taking the evidence and all reasonable inferences in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law." *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020) (quoting *Tauscher v. Phx. Bd. of Realtors, Inc.*, 931 F.3d 959, 962 (9th Cir. 2019)).

The party moving for summary judgment bears the initial burden of identifying the materials in the summary judgment record, including portions of the pleadings, discovery and disclosures on file, and affidavits, that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the non-moving party has the burden of proof at trial, the movant may carry its burden by merely pointing out that there is "an absence of evidence" in support of the non-moving party's claims or defenses. *Id.* at 325. If the movant carries its initial burden, the burden of going forward shifts to the non-moving party to show a genuine dispute of material fact remains for the factfinder to resolve. *Id.* at 324. The non-moving party must go beyond the pleadings and show adequately probative evidence-by its own affidavits or discovery- set forth specific facts creating a genuine issue for trial. *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]here is no issue for trial unless there is sufficient evidence [supporting] the non-moving party" to the extent that a jury could return a verdict in its favor. *Anderson*, 477 U.S. at 249. "In determining whether the non-moving party has presented sufficient evidence to proceed to trial, the Court is bound by the traditional allocation of function between judge and jury." *Id.* at 255. Credibility determinations and the weighing of the evidence are functions of a jury, not a judge. *Id.* If the non-moving party does not produce evidence to show a genuine dispute as to a material fact, the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587.

Thus, when parties file cross-motions for summary judgment, the Court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006). The Court considers each party's cited evidence, "regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

### A. Judicial Notice

The court may take judicial notice of facts not subject to reasonable dispute because they are either: (1) generally known within the trial court's territorial jurisdiction, or (2) capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). If the content of the document is subject to varying interpretations, then there is no fact "not subject to reasonable dispute," and the fact does not qualify for judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1000 (9th Cir. 2018).

## FACTUAL BACKGROUND

### A. Undisputed Facts

In accordance with Civil Procedure Rule 56 and Eastern District of California Local Rule 260, the parties submitted separate statements of undisputed facts and responses with references to the supporting evidence. (*See* Docs. 83, 87, 91.) The parties agreed and indicated the following facts as undisputed (*see generally* Docs. 83-4, 87-5):

1. Counterclaimant alleges that it entered into an oral, exclusive recordings agreement (the "Oral Agreement") with Chavez in or about February 2013.
2. Counterclaimant alleges that, in or about April 2019, Chavez breached the Oral Agreement by without limitation, purportedly transferring, licensing, selling, and/or authorizing Counterdefendants Yellowcake, Inc. and Colonize Media, Inc. to exploit the Los Originales Albums and Cover Art.
3. Counterclaimant admits that Chavez was not an employee of Counterclaimant.
4. Counterclaimant admits that none of the Los Originales band members were employees of Counterclaimant.
5. There is no written agreement between Counterclaimant and Chavez substantiating an

alleged work for hire relationship between the parties.

6. There is no written agreement between Counterclaimant and Chavez whereby Chavez agreed that Counterclaimant would be the owner of all title, right, and interest in the Los Originales Albums.

Hyphy Music submitted a "Separate Statement of Undisputed Facts"[2] (*see* Doc. 87-5) to which Chavez also agreed were undisputed (*see generally* Doc. 91-1 at 6):[3]

1. Thereafter, Hyphy obtained copyright registrations for all of such Album Artwork.
2. In Section 13.e. of the Asset Purchase Agreement, Chavez represented and warranted to Yellowcake that Chavez was "the only owner of" the Albums, and possessed "good and marketable title" thereto at the time of sale.
3. Chavez never obtained signed written agreements from Flores, Vargas or Hyphy acquiring each party's respective contributions to, and rights in, the Albums and sound recordings embodied thereon.
4. Hyphy is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings by such artists, coupled with artwork.
5. Counter-Defendant Jesus Chavez Sr. ("Chavez") is the lead singer of the Spanish-language musical group Los Originales De San Juan (the "Group").

**B. Judicially Noticed Documents**

Chavez request the Court take judicial notice of the following:

---

[2] In response to Hyphy Music's undisputed fact, "One of the other two albums identified in Yellowcake's Complaint, entitled 'Chuy Chavez y Sus Amigos,' has no connection to this dispute and wasn't even recorded by Chavez [;]" Chavez does not appear to dispute the fact but simply states, "Immaterial to the breach of contract claim asserted by Hyphy against Chavez." (*See* Doc. 91-1 at 8.)

[3] Chavez replied, "[it] lacks sufficient information to admit to or dispute this 'fact,' however, it is immaterial to the breach of contract claim asserted by Hyphy against Chavez" to the following additional undisputed facts: Plaintiff/Counter-Defendant Yellowcake, Inc. ("Yellowcake") is a competing record label and distributor of sound recordings, utilizing Counter- Defendant Colonize Media, Inc. ("Colonize") as its "distribution arm" to release and exploit rights acquired by Yellowcake [; and] Counter-Defendant Jose David Hernandez ("Hernandez"), who is a coowner of both Yellowcake and Colonize, knew that Hyphy only had an oral agreement with the Group, and therefore approached Chavez, in or about March 2019, about selling the Los Originales Albums to Yellowcake" (*see* Doc. 91-1 at 13-14) (external quotations omitted).

> Counterclaimant's Counterclaim filed on August 19, 2020 (Ex. A); Counterclaimant's First Amended Counterclaim filed on August 28, 2020 (Ex. B); The July 20, 2021, Order on Counter-Defendants' Motion to Dismiss (Ex. K); Declaration of Jose Martinez in Support of Reply to Counter-Defendants' Challenge to the Validity of Certain Copyright Registrations filed on August 3, 2021 (Ex. L); Declaration of Hector O. Rosales in Support of Plaintiff and Counter-Defendants' Motion to Dismiss Defendant's Counterclaims and in Support of Supplemental Brief filed on August 10, 2021 (Ex. M); Declaration of Jesus Chavez, Sr. in Support of Plaintiff and Counter-Defendants' Motion to Dismiss Defendant's Counterclaims and Supplemental Brief filed on August 10, 2021 (Ex. N);
>
> Scheduling Order issued by the court on November 30, 2021 (Ex. O); Defendant/Counterclaimant's Ex Parte Application for Leave to Supplement Initial Disclosures and Responses to Requests for Production of Documents filed on October 12, 2022 (Ex. P); [and] copy of the Copyright Assignment Agreement submitted to the court on October 12, 2022 (Ex. Q).

(*See* Doc. 83-2 at 1-2.) The Court takes judicial notice that these documents were filed.

### C. Evidentiary Objections

Pursuant to L.R. 260(a)-(b), both parties filed evidentiary objections and responses in support of, and in opposition to, Chavez's motion for summary judgment (Doc. 83). (*See also* Docs. 87, 91.) Before proceeding to the summary judgment arguments, the Court must first evaluate the parties' evidentiary objections.

A party may object that the material used to "dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). In evaluating the merits of a motion for summary judgment, a court may only consider admissible evidence. Fed. R. Civ. P. 56. "A court must rule on material evidentiary objections." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). At the summary judgment stage, district courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial. *See Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006) (even if evidence is presented in form that is currently inadmissible, it may be considered on motion for summary judgment so long as admissibility defects could be cured at trial); *Sali Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018) ("the court must review the evidence in light of what would be admissible before either the court or jury" [citation omitted]).

a. Chavez's Objections

Chavez objects to several statements within the Declarations of Begaki, Vargas, Flores, and Martinez on the grounds of "hearsay"; "relevance"; "improper use of interrogatory response . . ."; "improper use of response to demand for production…"; "testimony speaks for itself; paraphrasing of witness testimony"; "argumentative"; "lacks foundation"; "improper legal opinion"; and "lack of authentication."  (*See* Doc. 91-2 at 2-19.)

The Court does not rely on irrelevant evidence when evaluating motions for summary judgment, and objections premised on relevancy are redundant and "duplicative of the summary judgment standard itself." *Burch*, 433 F.Supp.2d at 1119.  "A court can award summary judgment only when there is no genuine dispute of material fact.  It cannot rely on irrelevant facts, . . . thus relevance objections are redundant" to the practice of summary judgment and unnecessary to consider in the context summary judgment. *Anderson*, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted."); *see also US E.E.O.C. v. Placer ARC*, 114 F. Supp. 3d 1048, 1052 (E.D. Cal. 2015).  Accordingly, Chavez's objections to evidence on the grounds that it constitutes an improper legal conclusion/opinion are duplicative and improper for summary judgment and cannot be sustained on these grounds.  *Burch*, 433 F.Supp.2d at 1119.  These objections are **DENIED as MOOT.**

The Court also declines to consider any objections premised on "improper use of interrogatory response" or "improper use of response to demand for production."  Such objections are guised as "mischaracterization" or "misrepresentation" of the evidence represented and "objections should be directed at the evidence supporting [the] statements." *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic*, Inc., 556 F.Supp.2d 1122, 1126 n.1 (E.D. Cal. 2008).  To the extent Chavez argues any declarant's statements misstate the evidence, those objections also are **OVERRULED** as "go[ing] to the weight of the evidence, not the admissibility of the testimony." *Galvan v. City of La Habra*, No. SACV 12–2103, 2014 WL 1370747, at *4 (C.D. Cal. 2014); *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F.Supp.2d 1023, 1034 (C.D. Cal. 2013).  "[S]tatements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for

9

1  summary judgment." *See Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 1155
2  (S.D. Cal. 2022). As for Chavez's hearsay objections, the Court "may not grant a summary
3  judgment motion on the basis of hearsay evidence, but it may deny a summary judgment motion
4  on the basis of hearsay evidence as long as it finds that the hearsay evidence would be admissible
5  at trial." *Herbalife,* 2024 WL 1158344, at *4 (citing Fed. R. Civ. P. 56(e)); *see also Fraser v.*
6  *Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). Chavez's hearsay objections are
7  **OVERRULED**.
8            b.  <u>Hyphy Music's Objections</u>
9       Hyphy Music objects to the specific statements contained in Chavez's Declaration
10 asserting the declaration "makes a number of conclusory allegations unsupported by facts, and
11 which are therefore insufficient to create a genuine issue of material fact." (Doc. 87-6 at 2.)
12 Specifically, Hyphy Music objects to the following statements from Chavez: "he is 'the founder
13 and principal of the band Los Orignales de San Juan," on the grounds the statement is
14 contradicted by Chavez's deposition testimony and conclusory, and "[i]n or around 2013, I
15 entered into an oral distribution agreement with Counterclaimant pursuant to which
16 Counterclaimant agreed to distribute three albums to be recorded by the Band;" "I never entered
17 into a written agreement with Counterclaimant agreeing to sell the entirety of all rights, title, and
18 interest in the Albums to Counterclaimant;" "[i]n or around 2019, I sold the entirety of all rights,
19 title, and interest in the Albums to Counter-Defendant YELLOWCAKE, INC. ("Yellowcake")
20 pursuant to a written agreement;" and "[d]uring that same time period, I advised Counterclaimant
21 of my sale to Yellowcake to ensure that Counterclaimant would stop distributing the Albums that
22 were subject to our oral agreement" all on the ground of the statements being conclusory. (*Id.* at
23 2-4.) "[S]tatements in declarations based on speculation or improper legal conclusions, or
24 argumentative statements, are not facts and likewise will not be considered on a motion for
25 summary judgment." *See Cherewick*, 578 F. Supp. 3d at 1155. Likewise, Hyphy Music's
26 objections are **OVERRULED**.
27                                       **DISCUSSION**
28      Chavez moves for summary judgment on Hyphy's eighth claim for relief alleging breach

of oral contract[4] (*see generally* Doc. 15 at 14) arguing the "claim is fatally defective, and fails as a matter of undisputed fact and law, because the purported transfer championed by Counterclaimant (the transfer of right, title, and interest to the albums) could only be effected by way of a written agreement [;]" and "[n]o such written agreement exists. . . ." (Doc. 83 at 5.) Chavez also contends "none of the narrow exceptions" to the "well-settled rule applies" because "(1) the Los Originales Albums are not a work made for hire as Chavez, and the other Band members, were admittedly not employees of Counterclaimant, and (2) Chavez did not have a written work for hire agreement with Counterclaimant." (*Id.* at 6.)

Hyphy opposes summary judgment contending Chavez "has mischaracterized what is at issue in [its] Eighth Counterclaim for relief." (Doc. 87 at 8.) Hyphy Music does not dispute the underlying law "that an entity suing for copyright infringement must have a valid ownership claim to the copyright at issue." (*Id.*) Instead, Hyphy argues "the oral contract was breached for reasons not dealing with the copyrights transferred." (*Id.*) Hyphy directs the Court to its amended counterclaims (Doc. 15), paragraph 78, stating, "Chavez was not only being commissioned, along with the other members of the Group, to create sound recordings, but also was paid (a) 'to follow Hyphy's artistic direction', and (b) grant Hyphy a non-exclusive right to use his name and likeness 'in perpetuity'." (Doc. 87 at 8.) Accordingly, "[b]y purportedly entering into the subsequent Asset Purchase Agreement with Yellowcake, Chavez denied Hyphy all of the benefits of its bargain with Chavez. Hyphy paid for a right to supervise the creation and promotion of the Albums, but such contractual right has been rendered worthless by Chavez's actions." (*Id.*) Hyphy asserts, "Chavez may claim he is free to transfer his ownership of the copyrights in the sound recordings embodied on the Albums, but he is not free to breach related arrangements also codified within the Agreement." (*Id.*) Hyphy proffers the following "analogy" in support: "if Hyphy had orally agreed to lend Chavez money to create the Albums, Chavez could not argue that Hyphy's loan was unenforceable because it was oral and involved the transfer of copyrights. But that is essentially what Chavez is arguing here . . . ." (*Id.*)

---

[4] This is the only cause of action asserted against Chavez in the counterclaim. (Doc. 15)

1      Hyphy also directs the Court to its order (Doc. 41) issued on July 20, 2021, "granting, in
2 part, and dismissing, in part, Counter-Defendants' previous Motion to Dismiss" as supporting its
3 contention that Chavez "mischaracterizes" its breach of oral contract counterclaim as "only
4 involving the transfer of copyrights." (Doc. 87 at 9.) Hyphy explains, "the Court recognized" its
5 fifth counterclaim for intentional interference with contractual relations "essentially complained
6 that '[Yellowcake] induced Chavez to sell rights in the albums that he did not have…'" and
7 dismissal of the counterclaim "on the basis that it was supposedly preempted by federal copyright
8 law because it involved copyrights was inappropriate because the claim was 'qualitatively
9 different from a copyright infringement claim because none of the rights listed in § 106 are the
10 subject [thereof].'" (*Id.*) Hyphy also requests the Court refer to the arguments raised in its
11 concurrent motion for summary judgment contending, "Hyphy and the other members of the
12 Group (by way of their respective creative contributions to the creation of the Albums) were co-
13 owners who possessed rights that could not be transferred without consent by Chavez via the
14 Asset Purchase Agreement." (*Id.*) Therefore, "the Court must find that Hyphy's Eighth
15 Counterclaim is 'qualitatively different' from a claim involving the simple breach of an
16 agreement to transfer copyrights because it alleges that Chavez breached the Agreement when he
17 transferred 'all rights' in the Albums, including the rights of others not listed in § 106." (*Id.*)
18 Stated differently, "Chavez's argument that Hyphy cannot sue him for breach of oral contract
19 because it involves the transfer of copyrights ignores the fact that Hyphy's Eighth Counterclaim
20 for Breach of Contract is based upon Chavez's purported transfer of 'all rights' – including the
21 rights of others not listed in § 106 that Chavez had no right or permission to transfer." (*Id.* at 10.)
22 Alternatively, Hyphy appears to argue "[a]t a minimum, [Chavez's action in] entering into a
23 subsequent Asset Purchase Agreement with Yellowcake [constitutes] an unmistakable breach of
24 the implied covenant of good faith and fair dealing." (*Id.* at 8, citing *Comunale v. Traders & Gen.*
25 *Ins. Co.* (1958) 50 Cal. 2d 654, 658 (California imposes an implied covenant to every agreement
26 that requires that "neither party will do anything which will injure the right of the other to receive
27 the benefits of the agreement).")
28      The Court notes Hyphy does not provide the Court specific citations when referencing its

concurrent motion for summary judgment and the arguments it intends to incorporate by reference. Nor does Hyphy provide the Court with page numbers when paraphrasing and quoting the Court's prior order (Doc. 41) as evidence supporting its Opposition. (*See* Doc. 87 at 9.) "As the nonmoving party, Hyphy must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The district court may limit its review to the documents submitted for purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). "We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan*, 91 F.3d at 1279. Therefore, the court need not "scour the record in search of a genuine issue of triable fact." *Id.* (citing *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995)). In addition, the Court finds Hyphy's counterargument incomplete and deficit because it lacks an explanation, sufficient argument, and evidence of "the harm" it "will have" suffered by "Chavez's transfer." (Doc. 87 at 8.) Notwithstanding these deficiencies, the Court considers the arguments.

### A. Breach of Oral Contract

In the eighth cause of action in first amended counterclaim, Hyphy alleges that, "On February 2013, Counterclaimant Hyphy Music entered into an oral exclusive recording agreements with Jesus Chavez (hereinafter, "Agreement") whereby Counterclaimant commissioned Chavez, for a period of five (5) years, to exclusively provide services as a recording artist in the making of sound and audio-visual recordings embodied in albums (hereinafter, "Los Originales Albums"). (Doc. 15 at 15, ¶ 78, emphasis added) In exchange for Hyphy's acts toward producing the album and paying Chavez, the oral agreement required, Chavez, in relevant part, to grant Hyphy "the non-exclusive right to utilize . . . Chavez's name and likeness as well as his musical group's name in connection with the exploitation of the Los Originales Albums in perpetuity." *Id*. The allegation continues,

> In consideration for the services provided and payment thereto, Chavez agreed that Counterclaimant **would be the owner of all title, right, and interest in and to the Los Originales Albums (including without limitation the copyrights and any extensions and renewals thereto)** from the inception of the creation of each Los Originales Album."

13

*Id.*, emphasis added. Hyphy alleges that Chavez breached the oral agreement as follows:

> On April 2019, Counter-defendant Chavez breached the agreement by without limitation, purportedly transferring, licensing, selling, and/or authorizing Counter-defendants Yellowcake Colonize to exploit the Los Originales Albums and Cover Art.

(Doc. 15 at 15, ¶ 79) The eighth cause of action does not contend that Chavez breached the oral agreement in any other manner. *Id*. Rather, the counterclaim limits the breach to acts inconsistent with Hyphy's ownership of the copyright. *Id*.

### i. The oral nature of the agreement is dispositive

"Copyright owners may transfer '[a]ny exclusive rights comprised in a copyright, including any subdivision of any of the rights specified in [17 U.S.C. § 106],' . . . so long as the transfer is evidenced by a signed writing." *Corbello v. Devito*, 777 F.3d 1058, 1062 (9th Cir. 2015) (citing 17 U.S.C. §§ 201(d)(2) and 204(a)); *see also Jules Jordan Video, Inv. v. 144942 Canada, Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010). The Copyright Act provides that a "transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). "[S]ection 204 of the Copyright Act invalidates a purported transfer of ownership unless it is in writing." *Effects Assocs. v. Cohen*, 908 F.2d 555, 556 (9th Cir. 1990); *see Radio TV Espanola S.A. v. New World Entm't Ltd.*, 183 F.3d 922, 926-27 (9th Cir. 1999); *Konigsberg Int'l, Inc. v. Rice*, 16 F.3d 355, 356-57 (9th Cir. 1994). The Act defines "transfer of copyright ownership" as "an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect but not including a nonexclusive license."[5] 17 U.S.C. § 101.

---

[5] Thus, a nonexclusive license is excluded from the writing requirement of 17 U.S.C. § 204 and can be granted orally or by implication. *See Effects Assocs. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990). *See also Foad Consulting Grp., Inc. v. Musil Govan Azzalino*, 270 F.3d 821, 826 (9th Cir. 2001) ("[a] nonexclusive copyright license may be granted orally or by implication"). The Ninth Circuit has held, "[t]he existence of a nonexclusive license may be implied from the manner in which the parties conducted their relationship if a licensee 'created work at [the licensor's] request and handed it over, intending that the [licensor] copy and distribute it.'" *Effects Assoc.*, 908 F.2d at 558-59 (emphasis added; citing *Offley v. Activision, Inc.*, 273 F. App'x 610 (9th Cir. 2008)); see also *ESC-Toy Ltd. v. Sony Interactive Ent. LLC*,

It is undisputed that "There is no written agreement between Counterclaimant [Hyphy] and Chavez whereby Chavez agreed that [Hyphy] would be the owner of all title, right, and interest in the Los Originales Albums." (*See generally* Docs. 83-4, 87-5) Chavez contends Hyphy Music's "eighth claim for [breach of oral contract] should be adjudicated" in its favor "because copyright ownership requires a signed writing." (Doc. 83 at 9.) Chavez argues "[the] claim is fatally defective, and fails as a matter of undisputed fact and law, because the purported . . . transfer of right, title and interest to the albums . . . could only be effectuated by way of a written agreement" and "[n]o such written agreement exists." (*Id.* at 7.) Moreover, "none of the narrow exceptions to" 17 U.S.C. § 204(a) writing requirement are applicable because "the Los Originales albums are not a work for hire" and the "alleged co-ownership or co-authorship of the copyrighted albums is both factually and legally infirm." (*Id.* at 7-8.) The allegation of the cause of action and Chavez's additional showing, demonstrate that Chavez orally agreed transfer ownership of the copyright to the Los Originales Albums to Hyphy without a writing.[6]

### a. No Genuine Dispute as to Material Fact

Because Chavez carried its initial burden, the burden of going forward shifts to the Hyphy to show a genuine dispute of material fact remains for the factfinder to resolve. *See Celotex*, 477 U.S. at 324. Toward this end, Hyphy contends Chavez "mischaracterize[s] what is at issue" in its breach of oral contract counterclaim because "the oral contract was breached for reasons not dealing with the copyrights transferred." (Doc. 87 at 8.) However, Hyphy fails to proffer the alleged "reasons" or provide the Court an alternate legal standard or rule. Hyphy refers only to its first amended countercomplaint (Doc. 15) explaining, "By purportedly entering into the subsequent Asset Purchase Agreement with Yellowcake, Chavez denied Hyphy all of the benefits of its bargain with Chavez. Hyphy paid for a right to supervise the creation and promotion of the Albums, but such contractual right has been rendered worthless by Chavez's actions." (Doc. 87 at 7-8.) In essence, Hyphy argues its breach of oral contract counterclaim is "qualitatively

---

No. 21-CV-00778-EMC, 2021 WL 4817793, at *5 (N.D. Cal. 2021).

[6] Because this determines the validity of the eighth cause of action, the Court need no consider the alternate arguments proffered.

15

1  different" from "a claim involving the simple breach of an agreement to transfer copyrights," but
2  Hyphy fails to provide a legal argument or evidence demonstrating this contention. (*See
3  generally* Doc. 87 at 7-9.)

4  Rather, Hyphy, implicitly and repeatedly, relies upon the oral transfer of the copyright in
5  alleging its breach of oral contract counterclaim: "Chavez . . . was paid 'to follow Hyphy's artistic
6  direction' and grant Hyphy a non-exclusive right to use his name and likeness 'in perpetuity [;]'"
7  thus by "entering into the subsequent Asset Purchase Agreement with Yellowcake, Chavez
8  denied Hyphy all of the benefits of its bargain with Chavez."[7] (Doc. 87 at 8.) Hyphy's argument
9  is premised on the oral transfer of the copyright, but it avoids using the term "breach" in arguing
10 the contention and only uses "breach" when asserting conclusory arguments such as "Chavez may
11 claim he is free to transfer his ownership of the copyrights in the sound recordings embodied on
12 the Albums, **but he is not free to breach related arrangements also codified within the**
13 **Agreement**." (*Id.*).

14 First, Hyphy fails to cite to any fact or any evidence to support the contention that it
15 provided Chavez "artistic direction," that Chavez agreed to follow Hyphy's artistic direction or
16 that Chavez failed to follow Hyphy's artistic direction. Second, Hyphy seems to argue that its
17 non-exclusive license to use Chavez's name and likeness was breached by Chavez, but it does not
18 explain how. Indeed, Hyphy offers no authority for its implied assertion that its non-exclusive
19 license prevented Chavez from allowing Yellowcake—or anyone else—to use his name and
20 likeness or that it prevented him from transferring ownership of the copyright. Third, assuming
21 *arguendo* that the oral contract as to the "related arrangements" is valid and enforceable and
22 Chavez breached these arrangements, that is a question not presented in the amended
23 counterclaim. As noted above, the breach alleged was as to the transfer of the copyright and the
24 associated benefits that ownership of the copyright implies, not a breach of any other obligations.
25 (Doc. 15 at 15, ¶¶ 78-79)

26 Hyphy's creative writing to the contrary, Hyphy cannot defeat summary judgment merely

---

[7] Hyphy fails to cite to any fact or any evidence to support the contention that it provided Chavez "artistic direction" or that Chavez agreed to follow Hyphy's artistic direction.

16

1  by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*
2  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Hyphy must go beyond the
3  pleadings and provide **evidence**—whether in the form of affidavits or discovery—that sets forth
4  specific facts creating a genuine issue for trial. *Id.* at 586-87. Though Hyphy includes
5  declarations and an "Exhibit List" in support of its Opposition (*see* Doc. 87-8), it fails to
6  incorporate, reference, or cite any of this within its Opposition (Doc. 87). "[T]here is no issue for
7  trial unless there is sufficient evidence [supporting] the non-moving party" to the extent that a
8  jury could return a verdict in its favor. *Anderson*, 477 U.S. at 249; *United States v. Dunkel*, 927
9  F.2d 955, 956 (7th Cir. 1991) (["Judges are not like pigs hunting for truffles buried in briefs."]). If
10  the non-moving party does not produce evidence to show a genuine dispute as to a material fact,
11  the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

12  Chavez has "produce[d] evidence negating an essential element of the nonmoving party's
13  claim or defense or show[n] that the nonmoving party does not have enough evidence of an
14  essential element to carry its ultimate burden of persuasion at trial," in that Chavez has
15  demonstrated that the oral agreement cannot give rise to liability on the eighth cause of action.
16  *Nissan Fire*, 210 F.3d at 1102. Hyphy has done no more than make a conclusory allegation of
17  "some metaphysical doubt as to the material facts," and this is insufficient to defeat summary
18  judgment. *Tellone Pro. Ctr., LLC v. Allstate Ins. Co.*, 562 F. Supp. 3d 757, 765 (C.D. Cal. 2022).
19  Thus, Hyphy has failed to "produce admissible evidence to show that a genuine issue of material
20  fact exists." *Bernstein*, 365 F. Supp. 3d at 984 (citing *Nissan Fire*, 210 F.3d at 1102). Having
21  failed to make this showing, Chavez is entitled to summary judgment. *Id.* (citing *Celotex*, 477
22  U.S. 317 at 322-23.)

23  As for Hyphy's reliance on the earlier issued order (Doc. 42), Hyphy has misconstrued the
24  Court's reasoning and rationale. The Court explained: "Section 204(a) not only bars copyright
25  infringement actions but also breach of contract claims based on oral agreements. . . . Here,
26  Hyphy's IICR claim is based on YCH inducing Chavez to transfer his copyright interests to YCH,
27  even though those transfers were the subject of an oral agreement between Chavez and Hyphy.
28  Therefore, in order for YCH's conduct in inducing the transfer of copyrights from Chavez to YCH

to be wrongful, a valid contract between Hyphy and Chavez for the transfer of those copyrights is an essential element of Hyphy's IICR claim. . . However, as explained above, § 204(a) operates to invalidate the oral contract between Hyphy and Chavez to the extent that the oral contract included the transfer of copyright ownership in the albums. . . That is, through operation of § 204(a), there is no valid contract between Chavez and Hyphy for the transfer of Chavez's copyright interests in the albums. . . Therefore, any IICR claim based on the purported transfer of Chavez's ownership of the copyrights in the four albums fails because Hyphy cannot establish the first essential element of an IICR claim. . . Dismissal of the IICR claim is appropriate to the extent that the claim is based on ownership interests or the transfer thereof in the four albums." (*See* Doc. 42 at 23-24.) (quotations omitted) (internal citations omitted); *see also Yellowcake, Inc. v. Hyphy Music, Inc.*, No. 1:20-CV-0988 AWI BAM, 2021 WL 3052535, at *13 (E.D. Cal. 2021). Thus, the Court found that there was not alleged a "valid contract between Chavez and Hyphy for the transfer of Chavez's copyright interests in the albums. . . Therefore, any IICR claim based on the purported transfer of Chavez's ownership of the copyrights in the four albums fails because Hyphy cannot establish the first essential element of an IICR claim. . . Dismissal of the IICR claim is appropriate to the extent that the claim is based on ownership interests or the transfer thereof in the four albums." (Doc. 42 at 23-24.) As previously stated, Hyphy does not expand upon the Court's reasoning or proffer alternative arguments. For these reasons, the Court **GRANTS** Chavez's motion for summary judgment.

### B. Breach of Implied Covenant of Good Faith and Fair Dealing

#### a. No Genuine Dispute as to Material Fact

There is a covenant of good faith and fair dealing implied in every California contract. *Schertzer*, 109 F.4th at 1213 (citing *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 684 (1988). "This duty requires contracting parties to exercise discretion given to them under the contract in a way consistent with the parties' expectations at the time of contracting." *Boland, Inc. v. Rolf C. Hagen (USA) Corp.,* 685 F. Supp. 2d 1094, 1103 (E.D. Cal. 2010). "A claim for breach of the implied covenant of good faith and fair dealing requires the same elements" as breach of contract, but instead "of showing [the] defendant breached a contractual duty, the plaintiff must show, …

18

defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting." *Ramsey v. Farmers New World Life Insurance,* No. CV 1:19-405, 2024 WL 3967470, at *5 (E.D. Cal. 2024) (quoting *Boland*, 685 F. Supp. 2d at 1101 (citing *Carma Developers, Inc. v. Marathon Development California, Inc.,* 2 Cal. 4th 342, 372–73, (1992))). Thus, an implied covenant claim goes beyond a breach of contract and involves "a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Schertzer*, 109 F.4th at 1213 (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc*., 222 Cal. App. 3d 1371, 1394 (1990)).

As to its "alternate counterclaim" of breach of the implied covenant, Hyphy merely states it "paid for a right to supervise the creation and promotion of the Albums, but such contractual right has been rendered worthless by Chavez's actions. At a minimum, this constitutes an unmistakable breach of the implied covenant of good faith and fair dealing." (Doc. 87 at 8.) Hyphy cites *Comunale v. Traders & Gen. Ins. Co.* (1958) 50 Cal. 2d 654, 658 quoting "California imposes an implied covenant to every agreement that requires that "neither party will do anything which will injure the right of the other to receive the benefits of the agreement [;]" but fails to provide a legal argument or specific facts establishing a genuine dispute. Again, Hyphy must go beyond the pleadings and show adequately probative evidence-by its own affidavits or discovery-set forth specific facts creating a genuine issue for trial, and Hyphy has failed to cite to any evidence doing so. *Matsushita*, 475 U.S. at 586-87. Moreover, Hyphy's claim is solely predicated on its breach of oral contract claim. Hyphy does not identify what other duty the implied covenant protects. Breach of this covenant involves something beyond breach of the contractual duty. *See Schertzer*, 109 F.4th at 1213; *see also Nieto v. Blue Shield of Cal. Life & Health Ins. Co.,* 181 Cal.App. 4th 60, 86 (2010). Thus, any implied covenant claim based upon the same factual assertions must also fail. For these reasons, the Court **GRANTS** summary judgment on Hyphy's counterclaim for breach of the implied covenant of good faith and fair dealing in Chavez's favor.

**CONCLUSION**

For reasons discussed, the Court finds Chavez has carried its initial burden in showing no genuine dispute of material fact exist as to Hyphy's breach of oral contract counterclaim, but Hyphy, as the nonmoving party, fails to carry the shifted-burden and show a genuine dispute of material fact remains for the factfinder to resolve. Accordingly, Chavez's motion for summary judgment is **GRANTED.** Because this order terminates the counter-complaint in its entirety as to Chavez, he is entitled to judgment against Hyphy Music, Inc.

IT IS SO ORDERED.

Dated:   **July 31, 2025**

UNITED STATES DISTRICT JUDGE