UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELLOWCAKE, INC., a California corporation,<br><br>           Plaintiff,<br><br>      v.<br><br>HYPHY MUSIC, INC.,<br><br>           Defendant. | Case No. 1:20-CV-00988-JLT-BAM<br><br>ORDER DENYING PLAINTIFF COUNTER-DEFENDANTS YELLOWCAKE'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 82) |
| HYPHY MUSIC, INC.,<br><br>           Counterclaimant,<br><br>      v.<br><br>YELLOCAKE, INC., COLONIZE MEDIA, INC., JOSE DAVID HERNANDEZ, and JESUS CHAVEZ SR.,<br><br>           Counter-Defendants. | ORDER DENYING DEFENDANT-COUNTERCLAMAINT HYPHY MUSIC'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 78) |

This case arises from the ongoing copyright infringement dispute initiated by Yellowcake Inc. against Hyphy Music Inc: In filing an answer to Yellowcake's complaint, Hyphy Music alleged counterclaims against Yellowcake, Inc., Colonize Media Inc., Jose David Hernandez, and Jesus Chavez Sr.  Before the Court are the parties' cross-motions for summary judgment: (1)

1

Hyphy Music's motion for summary judgment on Yellowcake's copyright infringement and injunctive relief claims (Doc. 78) and Yellowcake's motion for summary judgement on Hyphy's copyright infringement counterclaim (Doc. 82).  Because the Court finds there are genuine disputes of material facts precluding summary judgment, the Court **DENIES** both parties' motions.

## BACKGROUND

### A. Procedural Posture

Yellowcake Inc. initiated suit against Hyphy Music, Inc. by filing a complaint (Doc. 1) alleging copyright infringement on July 16, 2020.  Hyphy filed its answer with initial counterclaims against Jesus Chavez Sr., Colonize Media Inc., Jose David Hernandez, and Yellowcake (collectively Counter-Defendants) on August 19, 2020 (*see* Doc. 7), and amended its countercomplaint on August 28, 2020 (*see* Doc. 15).  On May 4, 2021, this case was deemed related to case *Yellowcake, Inc. v. Morena Music, Inc., et al*, 1:20-cv-00787.  (*See* Doc. 48.)

### B. The Court's Prior Order

On July 20, 2021, the Court issued an order (Doc. 42) "generally granting" Yellowcake's "12(b)(6) motion to dismiss six of the seven counterclaims alleged against them." (*Id.* at 1.)  The Court dismissed Hyphy's "first cause of action for copyright infringement based on an oral transfer agreement between Chavez and Hyphy" without leave to amend; "first cause of action for copyright infringement based on a work for hire" through a special order or commission without leave to amend; "first cause of action for copyright infringement based on a co-author/joint owner, work for hire through an employer-employee relationship, or written transfer agreement" with leave to amend; "third cause of action for preliminary injunction" without prejudice; "fourth cause of action for intentional interference with prospective economic advantage" with leave to amend "only with respect to a claim based on the tangible masters"; "fifth cause of action for intentional interference with contractual relations to the extent that it is based on an oral contract involving the transfer of copyrights in the three albums" without leave to amend but granted leave to amend "with respect to alleging a claim based on a written transfer from Chavez to Hyphy in the album El Campesino"; "sixth cause of action for Cal. Bus. & Prof. Code § 17200 UCL

2

against Yellowcake and Colonize" without leave to amend as preempted; "sixth cause of action for Cal. Bus. & Prof. Code § 17200 UCL against Hernandez based on inducement to breach an oral agreement relating to copyright ownership in the album" without leave to amend but granted leave "with respect to alleging a claim based on a written transfer from Chavez to Hyphy in the album El Campesino"; and "seventh cause of action for conversion based on actions directed against the tangible masters" without leave to amend. (*See* Doc. 42 at 35-36.)

**C. Parties' Motions for Summary Judgment**

On May 19, 2023, Hyphy filed a motion for summary judgment (Doc. 78) and Counter-Defendants Colonize, Hernandez, and Yellowcake filed a cross motion for summary judgment (Doc. 82). Counter-defendant Chavez filed a separate motion for summary judgment on Hyphy's counterclaim for breach of oral contract (Doc. 83), and this Court granted Chavez's motion on August 1, 2025 (*see* Doc. 101). On August 4, 2023, Plaintiff Counter-Defendants Yellowcake filed its Opposition (Doc. 85) to Defendant-Counterclaimant Hyphy's motion for summary judgment (Doc. 78.) and Defendant Counterclaimant Hyphy filed its Opposition (Doc. 86) on August 15, 2023. Hyphy filed a Reply (Doc. 92) to Yellowcake's Opposition (Doc. 85) on September 15, 2023. Now, the Court addresses the remaining motions for summary judgment (Docs. 78, 82) and considers only the Oppositions (Docs. 85, 86) and related responsive document (Doc. 92).

*a. Evidentiary Objections*

Pursuant to L.R. 260(a)-(b), both parties may file evidentiary objections and responses in support of, and in opposition to, the parties' motions for summary judgment (Doc. 78, 82). (*See generally* Docs. 78-7, 85-3, 82-18, 86-9.) Before proceeding to the summary judgment arguments, the Court must first evaluate the parties' evidentiary objections.

A party may object that the material used to "dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). In evaluating the merits of a motion for summary judgment, a court may only consider admissible evidence. Fed. R. Civ. P. 56. "A court must rule on material evidentiary objections." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). At the summary judgment stage, district courts consider evidence

3

with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial. *See Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006) (even if evidence is presented in form that is currently inadmissible, it may be considered on motion for summary judgment so long as admissibility defects could be cured at trial); *Sali Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018) ("the court must review the evidence in light of what would be admissible before either the court or jury" [citation omitted]).

The Court has reviewed the parties' evidentiary objections and responses. To the extent the Court does not address the parties' objections, the Court did not rely on the objected-to evidence in reaching its ruling. Any objections to such evidence are **OVERRULED**.

## STANDARD OF DECISION

The Court grants summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court must view the facts and draw inferences in the manner most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry its burden of production, the moving party must either: (1) produce evidence negating an essential element of the nonmoving party's claim or defense; or (2) show that there is an absence of evidence to support the nonmoving party's case. *Id.*

If the moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything. *Id.* at 1102-03. Even where the nonmoving party would have

the ultimate burden of persuasion at trial. *Id.* Thus, the nonmoving party may defeat the motion for summary judgment without producing anything. *Id.* at 1103. On the other hand, where the moving party carries its burden of production, the burden shifts to the nonmoving party to produce evidence showing a genuine dispute of material fact for trial. *Anderson*, 477 U.S. at 248-49. To carry this burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the Court must grant the motion for summary judgment. *Id.* at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment…." *Id.* Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c).

When parties file cross-motions for summary judgment, "each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court "must rule on each party's motion on an individual and separate

basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Id.* In other words, the Court must consider all evidence properly submitted in support of each motion "to determine whether [the evidence] present[s] a disputed issue of material fact precluding summary judgment." *Id.* at 1135.

## I. DEFENDANT COUNTERCLAIMANT HYPHY'S MOTION FOR SUMMARY JUDGMENT

Hyphy moves for summary judgment, "or in the alternative, summary adjudication in its favor (a) as to each of the two Causes of Action asserted by Plaintiff/Counter-Defendant Yellowcake" in its July 16, 2020, Complaint (Doc. 1), and "(b) as to Hyphy's Second Cause of Action asserted against Yellowcake and Counter-Defendant Colonize Media" and "its Sixth Cause of Action asserted against Yellowcake, Colonize, and Jose David Hernandez" in Hyphy's First Amended Countercomplaint (Doc. 15). (Doc. 78 at 8.) Specifically, Hyphy seeks (1) summary judgment dismissing Yellowcake's complaint (Doc. 1) alleging claims for copyright infringement and injunctive relief (*see generally* Doc. 78 at 14-26) and (2) summary judgment on its (a) counterclaim against Yellowcake and Colonize for copyright infringement regarding the Albums Artwork and (b) counterclaim against Yellowcake, Colonize, and Hernadez for unfair competition (*see generally* Doc. 78 at 22-28).

### A. Undisputed Facts

In accordance with Civil Procedure Rule 56 and Eastern District of California Local Rule 260, the parties submitted separate statements of undisputed facts and responses with references to the supporting evidence. (*See* Docs. 78-20, 85-3.) The parties agreed and indicated the following facts as undisputed (*see generally* Docs. 78-20, 85-3):

- Defendant Counterclaimant Hyphy is a record label in the business of collaborating with recording artists to produce, distribute, and otherwise exploit sound and audiovisual recordings, coupled with artwork.
- Jesus Chavez is the lead singer of the musical group Los Originales De San Juan (the "Group").
- The Group was comprised of Jesus Chavez and fellow band members Torres Flores,

1     who plays the accordion, and Alfonso Vargas, who plays the drums.

2 • The albums subject to the claims are (1) "Amigos y Contrarios"; (2) "Corridos de
3     Poca M"; (3) "El Campesino"; (4) "Desde La Cantina de Mi Barrio (En Vivo)";
4     and (5) "Nuestra Historia (En Vivo)" (collectively, the "Los Originales Albums" or
5     "Albums").[1]

6 • One of the other two albums identified in Yellowcake's Complaint, entitled "Chuy
7     Chavez y Sus Amigos," has no connection to this dispute and wasn't even recorded
8     by Chavez.

9 • On or about March 21, 2029, Chavez and Yellowcake entered into the Asset
10     Purchase Agreement.

11     Based on this Court's prior Orders (Doc. 42, 101), the Court supplements the proceeding
12 undisputed fact and finds undisputed also, as it pertains to Chavez and Hyphy, that: Yellowcake
13 and bandmember Chavez entered into an Assets Purchase and Assignment Agreement (APA)
14 wherein Yellowcake purchased Chavez's ownership interest and rights in the Band's sound
15 recordings, which included the three Albums. The Court's finding is limited and only serves to
16 establish the following as undisputed: (1) Yellowcake and Chavez entered into an APA
17 agreement; (2) Chavez intended to transfer his ownership interest and rights in the Band; (3)
18 Yellowcake purchased Chavez's ownership interest and rights; and (4) Chavez transferred its
19 ownership interest and rights to Yellowcake. (*See* Doc. 42 at 12-13 stating, "There is no dispute
20 that Chavez entered into a written transfer agreement with YCH. See Complaint at Ex. A;
21 Counterclaim ¶¶ 21, 22.")

22 • In Section 13.e. of the Asset Purchase Agreement, Chavez represented and
23     warranted to Yellowcake that Chavez was "the only owner of" the Albums and
24     possessed "good and marketable title" thereto at the time of sale.

25 • Hernandez is a co-owner of both Yellowcake and Colonize.[2]

---

[1] Yellowcake disputes six, not five albums are the subject of its claims. (*See* Doc. 85-3 at 106 citing "Yellowcake's response #2.)

[2] Yellowcake identifies Hernandez as an owner of Colonize and "once was an owner of Yellowcake." (*See* Doc. 85-3 at 16.)

- Hyphy released the Albums, with the Album Artwork, for distribution through all available digital service providers (the "DSPs") between 2013 and 2017.
- Hyphy obtained copyright registrations for the Album Artwork.[3]
- Hyphy has been exploiting each of the Albums since their respective publication between 2013 and 2017.

**B. Judicial Notice**

The Court may take judicial notice sua sponte and must take notice if a party requests it and supplied the Court with the necessary information. But the Court need not take notice of documents that do not provide any additional relevant information, even if they would otherwise be the proper subject of judicial notice. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1410 n.2 (9th Cir. 1990) (declining to take judicial notice of another action "not relevant" to the case).

The Court previously issued an Order (Doc. 101) granting Plaintiff Counter-defendant Chavez's motion for summary judgment on Defendant Counterclaimant Hyphy's breach of oral contract and breach of implied covenant of good faith and fair dealing counterclaims (Doc. 83). The Court takes judicial notice of its previous Order sua sponte (Doc. 101). *See* Fed. R. Evid. 201; *Basile v. Twneitieth Century Fox Film Corp.*, 678 F. App'x 576, 577 (9th Cir. 2017); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008); *Kaseberg v. Conaco, LLC*, 360 F.Supp.3d 1026, 1029 n.2 (S.D. Cal. 2018); *Obodai v. YouTube LLC*, 840 F.Supp.2d 714, 715 n.1 (S.D. N.Y. 2011).

**DISCUSSION**

Hyphy seeks dismissal of Yellowcake's Complaint alleging copyright infringement and injunctive relief on the grounds Yellowcake lacks standing to sue Hyphy. Specifically, Hyphy argues Alfonso Vargas, a former drummer in the Group, and Domingo Torres Flores, former accordion player in the Group, co-authored the Albums with Chavez. In addition, Hyphy asserts itself as a co-owner of the Albums and argues Yellowcake's failure to prove damages warrants summary judgment as well.

---

[3] Yellowcake disputes this to the extent the "statement … implies the release dates of various Albums through DSPs between 2013-2017 was proximate in time to the dates Hyphy obtained copyright registration for the Album Artwork." (*See* Doc. 85-3 at 65.)

### A. Legal Standards

The Copyright Act affords copyright owners the 'exclusive rights' to display, perform, reproduce, or distribute copies of a copyrighted work, to authorize others to do those things, and to prepare derivative works based upon the copyrighted work." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017); *see* 17 U.S.C. § 106.  Only the "legal or beneficial owner of an exclusive right under a copyright" has standing to sue for infringement of that right.  *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013).  Though one can own a copyright and have property rights in a work without a registration, the owner needs to register the copyright before he can sue for infringement.  *See* 17 U.S.C. §§ 408(a), 411(a); *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, Ltd. Liab. Co.,* 925 F.3d 1140, 1144 (9th Cir. 2019); *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 678 (9th Cir. 2014).

   *a. Copyright Infringement*

To prevail on a copyright infringement claim, a plaintiff must show "(1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant. *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 351 (1991); *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019).  "To plead ownership, [a plaintiff] must plausibly allege it owns a valid copyright registration for its works." *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019).  There is a presumption of copyright validity and ownership if there is a certificate of registration from the United States Copyright Office ("USCO"). *Pasillas*, 927 F.2d at 442 (quoting *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017)).  A certificate from the U.S. Register of Copyrights "constitute[s] prima facie evidence of the validity of the copyright." 17 U.S.C. § 410(c).  A plaintiff may meet the second element of copying by demonstrating that "(a) the defendant had access to the allegedly infringed work and (b) the two works are substantially similar in both idea and expression of that idea." *Pasillas*, 927 F.2d at 442.

   *b. Injunctive Relief*

The Copyright Act authorizes courts to grant final injunctions "on such terms as it may

1  deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502.  A party
2  seeking a permanent injunction must demonstrate: (1) that it has suffered an irreparable injury;
3  (2) that remedies available at law, such as monetary damages, are inadequate to compensate for
4  that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a
5  remedy in equity is warranted; and (4) that the public interest would not be disserved by a
6  permanent injunction.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

**B. Yellowcake's Claim for Copyright Infringement**

*a. Standing*

Hyphy argues Yellowcake lacks standing to sue because "Yellowcake obtained an assignment of rights in the Albums only from Chavez, and not any of the other members of Group."  (Doc. 78 at 14.)  In other words, Hyphy contends, "the Group operated as a co-equal partnership wherein each member possessed co-equal rights in each of the Albums" asserting band members Flores and Vargas "were [] joint authors of the Albums" and "Chavez never acquired any rights in the Albums from any of the Group's other members."  (*Id.* at 11, 14.)  Hyphy states Flores and Vargas (1) "were equally involved in all activities of the Band'" (2) "equally credited on all Albums in which each of them made contributions;" (3) "shared equally in all profits of the Band [;]" and (4) "granted equal access to inspect all records related to the Band's receipt of all such profits."  (*Id.* at 11.)  Thus, the Assets Purchase Agreement with Chavez did not "result in a transfer of exclusive rights in the copyright."  (*Id.* at 15.)  Hyphy explains, at minimum, "Yellowcake may have received an Assignment from Chavez, but a transfer from one co-owner does not and cannot result in a transfer of exclusive rights in copyright."  (*Id.*)

*i. Genuine Dispute of Material Fact*

To meet its burden of production, the moving party must "produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan* Fire, 210 F.3d at 1102. If the movant carries its initial burden, the burden of going forward shifts to the non-moving party to show a genuine dispute of material fact remains

10

for the factfinder to resolve. *See Celotex*, 477 U.S. at 324.

Yellowcake contends Hyphy is "patently incorrect on the facts and law" because "Chavez did not merely assign or license his rights in the Albums to Yellowcake." (Doc. 85 at 16.) Yellowcake explains, "pursuant to the APA Agreement, Chavez sold, assigned, transferred, conveyed, and delivered to Yellowcake the 'entirety of ownership' of Chavez's rights, title, and interest in the Albums, and a 'legal or beneficial owner of an exclusive right under a copyright' is 'entitled to sue for copyright infringement'." (Doc. 85 at 16) Indeed, a single co-author (acting on his own behalf) can grant only a non-exclusive license in the copyright work because one co-author cannot limit the other co-authors' independent right to exploit the copyright. (See judicially noticed Doc. 101 citing *Sybersound*, 517 F.3d at 1146); *see also* related case *Yellowcake, Inc. v. Morena Music, Inc., et al*, 1:20-cv-00787.) Accordingly, a genuine dispute regarding ownership remains for the jury to resolve, and Hyphy's argument fails. The Court finds **DENIES** Hyphy's motion with respect to standing.

      *b. Co-Owner*

Hyphy contends it is a co-owner in the Albums "for two indisputable reasons": (1) Hyphy contributed more than a modicum of creativity to the creation of the Albums and (2) Hyphy "acquired all of Flores and Vargas' respective interests in their creative contributions . . . via the Assignments." (Doc. 78 at 17-18.) Alternatively, Hyphy argues "even if [the] Agreement is unenforceable and the Assignments are somehow disregarded," it "still had [] at a minimum, an oral and irrevocable non-exclusive license from the very outset of the parties' Agreement and at all relevant times thereafter to exploit the Albums." (*Id.* at 19.)

          *i. Modicum of Creativity*

Hyphy contends it closely collaborated with the Group to create the Los Originales Albums as follows: For Albums 1-3, "Amigos y Contrarios", "Corridos de Poca M", and "El Campesino", Hyphy "[h]elped determine the "theme" and overall creative direction of each Album; [s]elected the songs to be included in each Album; [s]elected the recording studio, and paid for all costs associated with the recording of each Album; [h]ired the sound engineer; [p]aid

11

the Group a substantial amount for recording the Albums; and [o]versaw and generally supervised the recording and production of each Album. (Doc. 78 at 10-11.) For Albums 4-5, "Desde La Cantina de Mi Barrio (En Vivo)" and "Nuestra Historia (En Vivo)," Hyphy "[s]elected and paid for the venue of the live performance; [s]elected the songs to be performed at the live performance (and then recorded for the Albums); [d]irectly employed, supervised, and directed the services of the sound engineer and videographer who each recorded the audio and video of the live performance, respectively; [w]rote a script for the history of the Group as presented as part of the Group's live performance, and hired a "MC"/commentator who narrated the script; and [r]e-recorded whole portions of the guitarist's contributions to the live performance afterwards, using a new guitarist selected, hired and paid for by Hyphy." (*Id.* at 11.)

Hyphy relies on the related case *Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747, 763 (E.D. Cal. 2021) stating, "in the absence of a contract, courts consider whether (1) a purported author superintends the work by exercising control; (2) the putative co-authors make objective manifestations of a shared intent to be co-authors; and (3) the audience appeal of the work turns on both contributions and the share of each in its success cannot be appraised. The first factor, control, will often be the most important consideration." (*Id.* at 18.) Accordingly, Hyphy contends it "superintended" "the work of the sound engineer who record the studio Albums," and "with respect to the live Albums, it was Hyphy that decided to re-record the original guitarist's contributions, oversaw those alterations to the sound recording, and paid all of the expenses in connection therewith." (*Id.*)

Yellowcake asserts, "Hyphy fails to meet its burden to demonstrate that it is a co-author of the Albums" for the following reasons: (1) "Chavez and Rosales, who possess personal knowledge of the Albums' recording, dispute these facts;" and (2) Hyphy simply describes general record label activities" which "are not sufficient works of original authorship to deem Hyphy a co-owner with Chavez as a matter of law." (Doc. 85 at 17-18.)

> ii. *Genuine Dispute of Material Fact*

There is a dispute related to the co-ownership resulting from the Asset Purchase Agreement between Yellowcake and Chavez, which transferred Chavez's rights in the Albums to

12

1 Yellowcake. A robust analysis is not necessary because an essential element of copyright
2 infringement, ownership, remains disputed. The Court need not address Hyphy's "oral and
3 irrevocable non-exclusive license" alternative upon this finding. Accordingly, the Court
4 **DENIES** Hyphy's motion with respect to joint ownership.

      *c. Damages*

6       Lastly, Hyphy argues summary judgment is warranted as to Yellowcake's copyright
7 infringement claim because Yellowcake "has no provable damages." (Doc. 78 at 19.) Hyphy
8 asserts Yellowcake is not entitled to any damages because it "(a) failed to disclose the basis for,
9 or a computation of, any damage claim in its Initial Disclosures, or otherwise, (b) failed to
10 produce any evidence in discovery of actual damages incurred as to Yellowcake; and (c) failed to
11 timely obtain registered copyrights that would allow for statutory damages." (*Id.*)

12       Under the Copyright Act, a plaintiff may elect to recover actual or statutory damages.
13 17 U.S.C. § 504(b). A copyright owner may seek "an award of statutory damages for all
14 infringements involved in the action, with respect to any one work, for which any one infringer is
15 liable individually, or for which any two or more infringers are liable jointly and severally."
16 17 U.S.C. § 504(c)(1). "The number of awards available under this provision depends not on the
17 number of separate infringements, but rather on (1) the number of individual works infringed and
18 (2) the number of separate infringers." *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1264
19 (9th Cir. 2021) (internal quotation marks omitted). Statutory damages are recoverable "whether or
20 not there is adequate evidence of the actual damages suffered by the plaintiff or of the profits
21 reaped by defendant." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).
22 Courts enjoy "wide discretion in determining the amount of statutory damages to be awarded,
23 constrained only by the specified maxima and minima." *Harris*, 734 F.2d at 1335. In applying
24 its discretion, a district court is guided by "what is just in the particular case, considering the
25 nature of the copyright, the circumstances of the infringement and the like." *Id.*

26       The Court need not address Hyphy's argument regarding damages (*see generally* Doc. 78
27 at 19-22) as it has already found summary judgment precluded and there exists a genuine dispute
28 of material fact as to Yellowcake's copyright infringement claim. For reasons articulated above,

the Court **DENIES** Hyphy's motion with respect to damages.

### C. Yellowcake's Claim for Injunctive Relief

Hyphy also moves for summary judgment on Yellowcake's injunctive relief claim. Arguing the remedy is not available to Yellowcake "because it is predicated on Yellowcake having a valid copyright infringement claim, and Yellowcake does not have such a claim because it does not have standing to sue Hyphy." (Doc. 78 at 22.) A court may grant injunctive relief in a copyright infringement action to prevent or restrain further infringement of a copyright. 17 U.S.C. § 502(a); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.2d 1146, 1158 (9th Cir. 2007). Having found a genuine dispute of material fact regarding copyright ownership, Hyphy is not entitled to such relief at this time. Accordingly, the Court **DENIES** Hyphy's motion with respect to injunctive relief.

### D. Hyphy's Counterclaims for Copyright Infringement and Unfair Competition

Hyphy moves for summary judgment on its second counterclaim for copyright infringement of Album Artwork and sixth counterclaim for unfair competition. (*See* Doc 78 at 22-28.)

#### a. Copyright Infringement

Hyphy asserts it "designed and created the artwork featured on the cover of each Album ("Album Artwork") . . . released the Albums, with the Album Artwork for distribution through all available digital service providers ("DSPs") between 2013 and 2017;" and "obtained copyright registrations for all Album Artwork." (Doc. 78 at 11-12.) However, a co-owner of a copyright cannot be liable to another co-owner for infringement." *Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1034 (9th Cir. 2000) (quoting *Oddo v. Ries*, 743 F.2d 630, 632–33 (9th Cir. 1984)). Ownership of a copyright vests initially in the author of the work, see 17 U.S.C. § 201(a); therefore, co-owners are required to account to each other for their use of a co-owned copyrights, *See Corbello v. Devito*, 777 F.3d 1058, 1062 (9th Cir. 2015); *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 522 (9th Cir. 1990).

The Court already addressed ownership and determined a genuine issue still exists as to whether Hyphy's contributions rise to the level of authorship and whether Chavez, Vargas, and

Torres were co-authors and co-owners of the Albums. Since a genuine dispute of ownership exists, the Court need not address Yellowcake's counter arguments. Summary judgment is precluded, and Hyphy's motion is **DENIED**.

### b. *Unfair Competition*

Hyphy's argument for unfair competition is premised on its copyright infringement argument. (Doc. 78 at 28.) "[C]ounterclaimant may allege a violation of California Business and Professions Code § 17200, et seq. predicated on the violation of any state or federal law. Here, Hyphy has established copyright infringement on the part of Yellowcake and Colonize, as set forth in detail above. Accordingly, Counter-Defendants are liable under Hyphy's Sixth Cause of Action for Unfair Competition." (Doc. 78 at 28.)

Notably, the Court dismissed Hyphy's "sixth cause of action for Cal. Bus. & Prof. Code § 17200 UCL" against Yellowcake and Colonize" without leave to amend as preempted; "sixth cause of action for Cal. Bus. & Prof. Code § 17200 UCL against Hernandez based on inducement to breach an oral agreement relating to copyright ownership in the album" without leave to amend but granted leave to amend "with respect to alleging a claim based on a written transfer from Chavez to Hyphy in the album El Campesino." (Doc. 42 at 35-36.) Though the Court granted 21 days to file an amended complaint (Doc. 42 at 36), Hyphy did not do so and, instead, the defendants answered the counterclaim (Docs. 47-48). Thus, Hyphy may not proceed on the Sixth Cause of Action. Even still, a genuine issue of material fact exists as to whether Yellowcake or Colonize used/uploaded the alleged infringing Album Artwork to the online record store Daddy Kool Records. (*See* Doc. 85 at 29-32.) Accordingly, the Court **DENIES** Hyphy's motion for summary judgment on its unfair competition counterclaim.

## II. PLAINTIFF COUNTER-DEFENDANT YELLOWCAKE'S MOTION FOR SUMMARY JUDGMENT

Yellowcake moves for summary judgment on its first cause of action for copyright infringement against Hyphy on the following grounds: (1) "Yellowcake possesses valid copyright registrations in the albums of sound recordings at issue and [] Yellowcake is the sole and exclusive owner of the albums;" (2) Defendant Counterclaimant Hyphy "unlawfully infringed

those copyrighted albums by, inter alia, selling, distributing and making unauthorized derivative works of the sound recordings comprising the albums;" and (3) Yellowcake "is entitled to $120,000 in damages from Hyphy in the form of profits received by Hyphy as a result of its acts of infringement." (Doc. 82 at 3.) Yellowcake also moves for summary judgment on Defendant Counterclaimant Hyphy's "second cause of action for copyright infringement of certain artwork on the grounds that:" (1) Yellowcake never used Hyphy's album artwork; (2) Hyphy failed to produce admissible evidence showing Yellowcake used Hyphy's album artwork; and (3) Hyphy "did not produce any evidence of damages from the alleged infringement of its artwork." (*Id.*)

Hyphy argues Yellowcake failed to carry its burden of proof as to its "purported ownership of the Albums." (Doc. 86 at 10.) Hyphy contends Chavez was not the sole owner of the Albums because Bandmates Flores and Torres were co-authors "thus co-owners" and Hyphy, itself, is a co-author, thus "co-owner" as well. (*Id.* 10-14.)

The Court has reviewed the summary judgment record and notes both parties have repurposed and incorporated prior legal arguments. In ruling on Defendant Counterclaimant Hyphy's motion for summary judgment, the Court found Yellowcake satisfied its burden of showing a genuine dispute as to co-ownership of the Albums. The dispute still exists. Accordingly, the Court **DENIES** Yellowcake's motion for summary judgement.

## CONCLUSION

For reasons discussed, the Court **ORDERS**:

1. Defendant Counterclaimant's motion for summary judgment (Doc. 78) is **DENIED**;

2. Plaintiff Counter-Defendant Yellowcake's motion for summary judgment (Doc. 82) is **DENIED**.

///
///
///
///
///

16

1    3.    <u>Within 21 days,</u> the parties **SHALL** submit a joint status statement proposing a
2 trial date. They **SHALL** also discuss whether settlement of the action is possible and, if so, to
3 propose a date for a settlement conference. After the Court reviews the joint statement, it will set
4 the date for the pretrial conference and trial.

IT IS SO ORDERED.

Dated:    **December 15, 2025**                                    _/s/ Jennifer L. Thurston_
                                                                                    UNITED STATES DISTRICT JUDGE